United States Bankruptcy Court
Southern District of Texas
**ENTERED**
June 05, 2024
Nathan Ochsner, Clerk

IN THE UNITED STATED BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| IN RE: § | |
| § | CASE NO: 24-31596 |
| MMA LAW FIRM, PLLC, § | |
| § | |
| Debtor. § | |
| § | |
| § | CHAPTER 11 |

## MEMORANDUM OPINION

This Memorandum Opinion examines the nuanced differences between what may give rise to disciplinary action from the state bar of Texas as opposed to what standards of ethical conduct are mandated of attorneys appearing in federal courts in the Fifth Circuit and the perils of taking on representation adverse to a former prospective client. Here, MMA Law Firm, PLLC contends that Okin Adams Bartlett & Curry, LLP should be disqualified because it holds confidential information about MMA Law Firm, PLLC, who was a prospective client of Okin Adams Bartlett & Curry, LLP, that could now be used to the detriment of MMA Law Firm, PLLC, in this case.

For all of the reasons discussed herein, MMA Law Firm, PLLC's motion to disqualify is granted. Okin Adams Bartlett Curry, LLP is disqualified from representing the official committee of unsecured creditors in this case, thus the pending application to employ Okin Adams Bartlett Curry, LLP is summarily denied.

## I. BACKGROUND

1. On April 9, 2024, MMA Law Firm, PLLC ("*Debtor*") filed a voluntary petition under Chapter 11 of the Bankruptcy Code, thus initiating this case.[1]

2. On April 11, 2024, Debtor filed its, "Debtor's Application for Authority to Employ Walker & Patterson, P.C." ("*Debtor's Application to Employ*").[2]

3. On May 6, 2024, the United States Trustee ("*UST*") filed its, "Objection of the United States Trustee to Debtor's Application for Authority to Employ Walker & Patterson, P.C." ("*UST's Objection to Debtor's Application to Employ*").[3]

4. On May 20, 2024, the Official Committee of Unsecured Creditors ("*UCC*") filed its, "Committee's Objection to the Debtor's Application for Authority to Employ Walker & Patterson, P.C." ("*UCC's Objection to Debtor's Application to Employ*").[4]

5. On May 21, 2024, Debtor filed its, "Debtor's Emergency Motion to Disqualify Okin Adams Bartlett Curry, LLP as Counsel for the Official Committee of Unsecured Creditors" ("*Motion to Disqualify*").[5]

6. On May 24, 2024, the UCC filed its, "Committee's Objection to the Debtor's Emergency Motion to Disqualify Okin Adams Bartlett Curry, LLP as Counsel for the Official Committee of Unsecured Creditors" ("*Response to Motion to Disqualify*").[6]

7. On May 24, 2025, the UCC filed its, "Application for an Order Authorizing the Employment and Retention of Okin Adams Bartlett Curry, LLP as Counsel for the Official Committee of Unsecured Creditors" ("*UCC Application to Employ*").[7]

8. On May 28, 2024, this Court held a hearing ("*Hearing*") on the Debtor's Motion to Disqualify and now issues the instant Memorandum Opinion.

## II. JURISDICTION, VENUE, AND CONSTITUTIONAL AUTHORITY

This Court holds jurisdiction pursuant to 28 U.S.C. § 1334, which provides "the district courts shall have original and exclusive jurisdiction of all cases under title 11 or arising in or related to cases under title 11." Section 157 allows a district court to "refer" all bankruptcy and related

---

[1] ECF No. 1.
[2] ECF No. 3.
[3] ECF No. 32.
[4] ECF No. 56.
[5] ECF No. 59.
[6] ECF No. 67.
[7] ECF No. 71.

cases to the bankruptcy court, wherein the latter court will appropriately preside over the matter.[8] This Court determines that pursuant to 28 U.S.C. § 157(b)(2)(A) and (O) this proceeding to disqualify counsel is a core proceeding as it concerns the administration of the estate.[9] This proceeding is also core under the general "catch-all" language because an application to employ counsel pursuant to 11 U.S.C. §§ 328(a) and 330 is the type of proceeding that can only arise in the context of a bankruptcy case.[10] Furthermore, this Court may only hear a case in which venue is proper.[11] Pursuant to 28 U.S.C. § 1408(1), the Court finds that venue is proper in this case.

As discussed, the pending dispute before this Court is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A) and (O). Accordingly, this Court concludes that the narrow limitation imposed by *Stern* does not prohibit this Court from entering a final order here.[12] Alternatively, this Court has constitutional authority to enter a final order because all parties in interest have consented, impliedly if not explicitly, to adjudication of this dispute by this Court.[13] The parties have engaged in litigation in front of this Court, including numerous hearings and motions practice.

---

[8] 28 U.S.C. § 157(a); *see also In re Order of Reference to Bankruptcy Judges*, Gen. Order 2012-6 (S.D. Tex. May 24, 2012).

[9] 11 U.S.C. § 157(b)(2); s*ee also In re Southmark Corp.*, 163 F.3d 925, 930 (5th Cir. 1999) ("[A] proceeding is core under section 157 if it invokes a substantive right provided by title 11 or if it is a proceeding that, by its nature, could arise only in the context of a bankruptcy case.").

[10] *See Southmark Corp. v. Coopers & Lybrand (In re Southmark Corp.*), 163 F.3d 925, 930 (5th Cir. 1999) ("[A] proceeding is core under § 157 if it invokes a substantive right provided by title 11 or if it is a proceeding that, by its nature, could arise only in the context of a bankruptcy case.") (quoting *Wood v. Wood (In re Wood),* 825 F.2d 90, 97 (5th Cir. 1987)).

[11] 28 U.S.C. § 1408.

[12] See, e.g., *Badami v. Sears (In re AFY, Inc.),* 461 B.R. 541, 547-48 (8th Cir. BAP 2012) ("Unless and until the Supreme Court visits other provisions of Section 157(b)(2), we take the Supreme Court at its word and hold that the balance of the authority granted to bankruptcy judges by Congress in 28 U.S.C. § 157(b)(2) is constitutional."); see also *Tanguy v. West (In re Davis),* No. 00-50129, 538 F. App'x 440, 443 (5th Cir. 2013) ("[W]hile it is true that *Stern* invalidated 28 U.S.C. § 157(b)(2)(C) with respect to 'counterclaims by the estate against persons filing claims against the estate,' *Stern* expressly provides that its limited holding applies only in that 'one isolated respect' .... We decline to extend *Stern's* limited holding herein.") (Citing *Stern*, 564 U.S. at 475, 503, 131 S.Ct. 2594).

[13] *Wellness Int'l Network, Ltd. v. Sharif,* 575 U.S.655, 135 S. Ct. 1932, 1947, 191 L.Ed.2d 911 (2015) ("*Sharif* contends that to the extent litigants may validly consent to adjudication by a bankruptcy court, such consent must be expressed. We disagree. Nothing in the Constitution requires that consent to adjudication by a bankruptcy court be express. Nor does the relevant statute, 28 U.S.C. § 157, mandate express consent . . . .").

None of these parties has ever objected to this Court's constitutional authority to enter a final order or judgment. These circumstances unquestionably constitute implied consent. Thus, this Court wields the constitutional authority to enter a final order here.

### III. ANALYSIS

#### A. Debtor's Motion to Disqualify

Debtor seeks to disqualify the UCC's proposed counsel, Okin Adams Bartlett Curry, LLP ("*Okin Adams*"), for an alleged conflict of interest stemming from Debtor's pre-petition communications with Okin Adams as a prospective client.[14] Specifically, Debtor contends that its prepetition communications with Okin Adams to represent it in this case were confidential, and that those communications can be used to the detriment of the Debtor since the UCC is an adverse party in this bankruptcy.[15] Okin Adams maintains that they are not conflicted and that the pre-petition communications between it and the Debtor were not confidential.[16] In fact, Matthew Okin ("*Mr. Okin*") went as far as to testify on the witness stand that he believed he owed no duty to maintain the confidences of prospective clients who did not ultimately retain the firm and that prospective clients should know not to disclose anything confidential prior to paying a retainer.[17] The Court will now consider (1) the Fifth Circuit's approach to ethical issues, (2) what ethical obligations attorneys owe former prospective clients in federal court, and (3) whether Okin Adams must be disqualified from representing the UCC.

#### 1. The Fifth Circuit's approach to ethical issues

---

[14] ECF No. 59.
[15] *Id.*
[16] ECF No. 67.
[17] May 28, 2024, hearing testimony (testimony of Mr. Okin).

"The Fifth Circuit's approach to ethical issues has remained 'sensitive to preventing conflicts of interest.'"[18] A "district court is obliged to take measures against unethical conduct occurring in connection with any proceeding before it."[19] Yet, "depriving a party of the right to be represented by the attorney of his or her choice is a penalty that must not be imposed without careful consideration."[20] As such, disqualification is not automatic or mechanical, and is considered in light of "all of the facts particular to the case ... in the context of the relevant ethical criteria and with meticulous deference to the litigant's rights."[21] While the "relevant local and national ethical canons provide a useful guide for adjudicating motions to disqualify, they are not controlling."[22] "A court must take into account not only the various ethical precepts adopted by the profession but also the social interests at stake… [including] whether a conflict has (1) the appearance of impropriety in general, or (2) a possibility that a specific impropriety will occur, and (3) the likelihood of public suspicion from the impropriety outweighs any social interests which will be served by the lawyer's continued participation in the case."[23]

   2. **What ethical obligations attorneys owe former prospective clients in federal court**

Unlike disqualification brought by a former client, which requires only a showing that "the matters embraced within the pending suit are substantially related to the matters or cause of action wherein the attorney previously represented him[,]"[24] disqualification brought by a former prospective client has not squarely been addressed by the Fifth Circuit. Both the Debtor and the UCC suggest, in reliance on *B.F. Goodrich Co. v. Formosa Plastics Corp.*, that to disqualify Okin Adams Debtor has the burden to demonstrate that the firm "actually received confidential

---

[18] *In re ProEducation Int'l, Inc.*, 587 F.3d 296, 299–300 (5th Cir. 2009).
[19] *Id.*
[20] *Id.* (further citations omitted).
[21] *Id.*
[22] *F.D.I.C. v. U.S. Fire Ins. Co.*, 50 F.3d 1304, 1314 (5th Cir. 1995).
[23] *Id.*
[24] *In re Yarn Processing Pat. Validity Litig.*, 530 F.2d 83, 89 (5th Cir. 1976).

information which could now be used to the detriment" of the Debtor in its representation of the UCC.[25] However, review of *B.F. Goodrich Co.* reveals that the basis of this standard relies on an old version of what now appears as comment one to Texas Rule 1.05 (discussed *infra*) and an analogy to a Fifth Circuit case that does not discuss prospective clients.[26] Alternatively, as the Fifth Circuit directs, this Court will instead consult the applicable professional rules, the particular facts of this case, and competing social interests.[27]

Upon review, unlike the Model Rules of Professional Conduct ("*Model Rules*") which creates an express duty on attorneys to maintain the confidential information of prospective clients,[28] the current version of the Texas Disciplinary Rules of Professional Conduct ("*Texas Rules*") does not impose a direct duty to maintain the confidences of a prospective client.[29] The only language that appears in the current version of the Texas Rules that implies a duty to maintain the confidences of a prospective client appears in comment one to Texas Rule 1.05, which provides, "[b]oth the fiduciary relationship existing between lawyer and client and the proper functioning of the legal system require the preservation by the lawyer of confidential information of one who has employed *or sought to employ* the lawyer."[30] However, the preamble to the Texas Rules also provides that, "[t]he Comments do not, however, add obligations to the rules and no disciplinary action may be taken for failure to conform to the Comments."[31] As such, by itself, the current Texas Rules do not expressly impose a duty on lawyers to maintain prospective client

---

[25] ECF Nos. 59, 67; *B.F. Goodrich Co. v. Formosa Plastics Corp.*, 638 F. Supp. 1050, 1053 (S.D. Tex. 1986).
[26] *B.F. Goodrich Co.*, 638 F. Supp. at 1052-53 (citing *Wilson P. Abraham Const. v. Armco Corp.*, 559 F.2d 250 (5th Cir.1977) (discussing disqualification in the context of a co-defendant of a former client).
[27] *U.S. Fire Ins. Co.,* 50 F.3d at 1314.
[28] *See* Model Rule of Professional Conduct 1.18, https://www.americanbar.org/groups/professional_responsibility/publications/model_rules_of_professional_conduct/rule_1_18_duties_of_prospective_client/
[29] *See generally* Texas Disciplinary Rules of Professional Conduct (effective as of January 31, 2022), https://www.txcourts.gov/media/1453540/texas-disciplinary-rules-of-professional-conduct.pdf
[30] *See* Texas Disciplinary Rules of Professional Conduct 1.05, cmt 1 (emphasis added).
[31] *Id.* at 4-5, ¶ 10.

confidences.[32] However, it is also notable that between April 1-30, 2024, voters in the Texas bar voted on and ultimately approved[33] a new rule, Texas Rule 1.18, that would in fact impose a duty to prospective clients that is similar to, but not identical to Model Rule 1.18.[34]

With this said, even though the new Texas Rule 1.18 was not effective at the time Okin Adams was communicating with the Debtor, there are numerous Fifth Circuit decisions that have held in no uncertain terms that the Model Rules are to also be consulted and considered in the context of a disqualification motion.[35] Looking to the Model Rules, Okin Adams does owe a duty to the Debtor to maintain client confidences as a prospective client in accordance with Model Rule 1.18, which provides:

> (a) A person who consults with a lawyer about the possibility of forming a client-lawyer relationship with respect to a matter is a prospective client.
> (b) Even when no client-lawyer relationship ensues, a lawyer who has learned information from a prospective client shall not use or reveal that information, except as Rule 1.9 would permit with respect to information of a former client.
> (c) A lawyer subject to paragraph (b) shall not represent a client with interests materially adverse to those of a prospective client in the same or a substantially related matter if the lawyer received information from the prospective client that could be significantly harmful to that person in the matter, except as provided in paragraph (d). If a lawyer is disqualified from representation under this paragraph, no lawyer in a firm with which that lawyer is associated may knowingly undertake or continue representation in such a matter, except as provided in paragraph (d).
> (d) When the lawyer has received disqualifying information as defined in paragraph (c), representation is permissible if:
> (1) both the affected client and the prospective client have given informed consent, confirmed in writing, or:
> (2) the lawyer who received the information took reasonable measures to avoid exposure to more disqualifying information than was reasonably necessary to determine whether to represent the prospective client; and
> (i) the disqualified lawyer is timely screened from any participation in the matter and is apportioned no part of the fee therefrom; and
> (ii) written notice is promptly given to the prospective client.

---

[32] *See generally* Texas Disciplinary Rules of Professional Conduct 1.05 (effective as of January 31, 2022).
[33] https://www.texasbar.com/Content/NavigationMenu/RulesVote/Rules_Vote_Results/RV_Results_Percentage_2024.pdf
[34] https://www.texasbar.com/Content/NavigationMenu/RulesVote/2024_Items/Rules-Vote-Summary-Final.pdf
[35] *In re Am. Airlines, Inc.*, 972 F.2d 605, 609 (5th Cir. 1992); *In re Dresser Indus., Inc.*, 972 F.2d 540, 543 (5th Cir. 1992).

### 3. Whether Okin Adams must be disqualified from representing the UCC

Although unargued by Okin Adams, Model Rule 1.18(d) does permit representation despite being in possession of confidential information if certain safeguards are taken, including taking reasonable measures to avoid exposure to more disqualifying information than was reasonably necessary to determine whether to represent the prospective client, that the lawyer is screened from any participation in the matter and is apportioned no fee, and written notice is promptly given to the prospective client. Here, however, Mr. Okin has not been screened from the case and no evidence was put on that prompt notice was given to the Debtor or that no fee would go to Mr. Okin. In light of Mr. Okin's testimony that he believed he owed no duty to maintain the confidential information of a prospective client, the Court finds that reasonable measures were not taken to avoid exposure to disqualifying information either.[36]

As such, the initial inquiry in light of Model Rule 1.18, is (1) if Okin Adams' client, the UCC, has interests materially adverse to those of the Debtor, (2) if this case is the same or a substantially related matter to that which the Debtor sought retention of Okin Adams, and (3) if Okin Adams received information that could be significantly harmful to the Debtor.[37] The Court easily concludes that the first two elements are met, as it is undisputed that this bankruptcy case is the same matter in which the Debtor previously sought to employ Okin Adams as its counsel[38] and a debtor's unsecured creditors necessarily have materially adverse interests to the Debtor, as, among other things, the Debtor and its creditors have inapposite goals of repayment and discharge. Particular to this case, Debtor has also been involved in litigation against Debtor's largest scheduled unsecured creditor, B.E. Blank/Equal Access for Justice, and has had a particularly

---

[36] *See* May 28, 2024, hearing testimony.
[37] Model Rule of Professional Conduct 1.18.
[38] *See* ECF Nos. 59 & 67; May 28, 2024, hearing testimony.

acrimonious pre-petition relationship with this creditor.[39] In fact, Debtor has scheduled the debt to B.E. Blank/Equal Access for Justice, in the amount of $38,000,000.00 as disputed and unliquidated.[40]

With respect to the third element, the most significant piece of evidence received was a text message exchange, admitted under seal, between Debtor's representative Zach Moseley ("*Mr. Moseley*"), and Mr. Okin on March 26, 2024, when prospective retention was still being negotiated between the Debtor and Okin Adams.[41] Okin Adams asserts that this text message chain contains nothing that could be used against the Debtor.[42] This Court disagrees. Mr. Moseley asked Mr. Okin to perform specific work on behalf of the Debtor against its litigation funder, B.E. Blank/Equal Access for Justice,[43] who is also Debtor's largest scheduled unsecured creditor.[44] More than just mere information was disclosed. Mr. Moseley communicated his clear litigation strategy to Mr. Okin for an upcoming mediation with B.E. Blank/Equal Access for Justice.[45] As counsel for the UCC, Mr. Okin has an undeniable conflicted duty of loyalty to maintain that confidence to the Debtor and to disclose it to B.E. Blank/Equal Access for Justice and the rest of the general unsecured creditor body.[46]

Furthermore, the Court also received substantial testimony from Mr. Moseley indicating that broad categories of information were discussed over the course of two hours of phone calls with Mr. Okin, including, among other things, litigation strategies and the details of claims held by and against the Debtor with respect to creditors and how to pursue/defend against them.[47] As

---

[39] May 28, 2024, hearing testimony; ECF No. 80; ECF No. 13 at 164.
[40] ECF No. 13 at 164.
[41] ECF No. 80. *See also* ECF No. 74-7.
[42] ECF No. 67; May 28, 2024 hearing testimony.
[43] ECF No. 80.
[44] May 28, 2024, hearing testimony at 2:12 pm; ECF No. 13 at 164.
[45] *Id.*
[46] Texas Disciplinary Rules of Professional Conduct 1.06; Model Rules of Professional Conduct 1.18.
[47] May 28, 2024, hearing testimony.

such, and having considered all other evidence in the record, the Court finds that Okin Adams does hold confidential information of the Debtor that could be significantly harmful to the Debtor. Thus, Okin Adams is clearly in violation of Model Rule 1.18 by representing the UCC.

However, as discussed, disqualification is not a mechanical process in the Fifth Circuit and "[a] court must take into account not only the various ethical precepts adopted by the profession but also the social interests at stake… [including] whether a conflict has (1) the appearance of impropriety in general, or (2) a possibility that a specific impropriety will occur, and (3) the likelihood of public suspicion from the impropriety outweighs any social interests which will be served by the lawyer's continued participation in the case."[48] Here, the Court finds that there is more than an appearance of impropriety, there is an express conflict of loyalty. Okin Adams is both required to maintain the confidences of the Debtor and disclose them to the UCC, who is adverse to the Debtor. The rules on prospective clients are designed to prevent exactly this kind of scenario and if the Court were to agree with Mr. Okin that no duty is owed to a client merely because they did not ultimately provide a retainer,[49] it would significantly erode the trust that the community places in lawyers when initially seeking their services. The social interests of disqualification far outweigh the social interests of Okin Adams' continued participation in this case.

Accordingly, Debtor's Motion to Disqualify is granted. Okin Adams Bartlett Curry, LLP is hereby disqualified from representing the unsecured creditor's committee in this case, thus the pending application to employ Okin Adams Bartlett Curry, LLP[50] is summarily denied.

---

[48] *Id.*
[49] May 28, 2024, hearing testimony (testimony of Mr. Okin).
[50] ECF No. 71.

## IV. CONCLUSION

An order consistent with this Memorandum Opinion will be entered on the docket simultaneously herewith.

SIGNED June 5, 2024

_____
Eduardo V. Rodriguez
Chief United States Bankruptcy Judge