United States Bankruptcy Court
Southern District of Texas
**ENTERED**
July 18, 2024
Nathan Ochsner, Clerk

IN THE UNITED STATED BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| IN RE: § | |
| § | CASE NO: 24-31596 |
| **MMA LAW FIRM, PLLC,** § | |
| § | |
| Debtor. § | |
| § | |
| § | **CHAPTER 11** |

### MEMORANDUM OPINION

MMA Law Firm, PLLC seeks to employ Walker & Patterson, P.C. as debtor's counsel pursuant to 11 U.S.C. §§ 327 & 328(a) on both a flat fee and a contingency fee basis and § 330(a)(1)(B) for reimbursement of actual and necessary expenses. Objections to such employment have been filed by Equal Access Justice Fund, L.P. and EAJF ESQ Fund, LP, the United States Trustee, and the Official Committee of Unsecured Creditors. On June 13, and 18, 2024, the Court held a hearing and for the reasons stated herein, all objections are overruled and the application to employ Walker & Patterson, P.C. is granted.

### I. BACKGROUND

1. On April 9, 2024 ("*Petition Date*") MMA Law Firm, PLLC ("*Debtor*") filed for bankruptcy protection under chapter 11 of the Bankruptcy Code[1] initiating the instant bankruptcy case.[2]

2. On April 11, 2024, Debtor filed "Debtor's Application for Authority to Employ Walker & Patterson, P.C." ("*Walker Patterson*") ("*Application to Employ*").[3]

3. On May 2, 2024, Equal Access Justice Fund, LP and EAJF ESQ Fund, LP (collectively, "*Equal Access*") filed its "Objection to Application for Authority to Employ Walker & Patterson, P.C." (*"Equal Access Objection"*).[4]

---

[1] Any reference to "Code" or "Bankruptcy Code" is a reference to the United States Bankruptcy Code, 11 U.S.C., or any section (i.e.§) thereof refers to the corresponding section in 11 U.S.C.
[2] ECF No. 1.
[3] ECF No. 3.
[4] ECF No. 28.

4. On May 6, 2024, the United States Trustee ("*UST*") filed its "Objection of The United States Trustee to Debtor's Application for Authority to Employ Walker & Patterson. P.C" ("*UST Objection*").[5]

5. On May 20, 2024, the Official Committee of Unsecured Creditors ("*UCC*" and together with Equal Access and the UST, the "*Objecting Parties*") filed its "Committee's Objection to The Debtor's Application for Authority to Employ Walker & Patterson, P.C." ("*UCC Objection*").[6]

6. On May 30, 2024, Debtor filed its, "Order Authorizing Employment of Walker & Patterson" ("*Amended Employment Order*").[7]

7. On June 11, 2024, Debtor filed its "Debtor's Reply to the Objections Filed to the Debtor's Application for Authority to Employ Walker & Patterson, P.C." ("*Debtor's Reply*").[8]

8. On June 13 and 18, 2024, the Court held an evidentiary hearing on the Application to Employ and all objections thereto, and now issues its instant Memorandum Opinion.

## II. JURISDICTION, VENUE, AND CONSTITUTIONAL AUTHORITY

This Court holds jurisdiction pursuant to 28 U.S.C. § 1334 and exercises its jurisdiction in accordance with Southern District of Texas General Order 2012–6.[9] Section 157 allows a district court to "refer" all bankruptcy and related cases to the bankruptcy court, wherein the latter court will appropriately preside over the matter.[10] This court determines that pursuant to 28 U.S.C. § 157(b)(2)(A) and (O) this proceeding contains core matters, as it involves proceedings concerning the administration of this estate.[11] This proceeding is also core under the general "catch-all" language because an application to employ counsel pursuant to 11 U.S.C. §§ 327, 328(a) and 330 is the type of proceeding that can only arise in the context of a bankruptcy case.[12]

---

[5] ECF No. 32.
[6] ECF No. 56.
[7] ECF No. 79.
[8] ECF No. 104.
[9] *In re*: *Order of Reference to Bankruptcy Judges*, Gen. Order 2012–6 (S.D. Tex. May 24, 2012).
[10] 28 U.S.C. § 157(a); *see also* In re: Order of Reference to Bankruptcy Judges, Gen. Order 2012-6 (S.D. Tex. May 24, 2012).
[11] *See* 11 U.S.C. § 157(b)(2)(A) & (O).
[12] *See Southmark Corp. v. Coopers & Lybrand (In re Southmark Corp.)*, 163 F.3d 925, 930 (5th Cir. 1999) ("[A] proceeding is core under § 157 if it invokes a substantive right provided by title 11 or if it is a proceeding that, by its

This Court may only hear a case in which venue is proper.[13] Pursuant to 28 U.S.C. § 1408(1), venue is appropriate in this case. While bankruptcy judges can issue final orders and judgments for core proceedings, absent consent, they can only issue reports and recommendations on non-core matters.[14] The employment of counsel is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A) and (O). Accordingly, this Court concludes that the narrow limitation imposed by *Stern* does not prohibit this Court from entering a final order here.[15] Alternatively, this Court has constitutional authority to enter a final order because all parties in interest have consented, impliedly if not explicitly, to adjudication of this dispute by this Court.[16] None of these parties has ever objected to this Court's constitutional authority to enter a final order or judgment. These circumstances unquestionably constitute implied consent. Thus, this Court wields the constitutional authority to enter a final order here.

### III.    ANALYSIS

#### A.    Debtor's Application to Employ Walker Patterson

The Debtor is a law firm generally representing consumers that have suffered property damage from natural disasters or defective or dangerous products sold to the public and maintains a large docket of property damage claims in Louisiana where it has recently faced allegations of

---

nature, could arise only in the context of a bankruptcy case.") (quoting *Wood v. Wood (In re Wood)*, 825 F.2d 90, 97 (5th Cir. 1987)).

[13] 28 U.S.C. § 1408.

[14] *See* 28 U.S.C. §§ 157(b)(1), (c)(1); *see also Stern v. Marshall*, 564 U.S. 462, 480 (2011); *Wellness Int'l Network, Ltd. v. Sharif*, 135 S. Ct. 1932, 1938–40 (2015).

[15] See, e.g., *Badami v. Sears (In re AFY, Inc.)*, 461 B.R. 541, 547-48 (8th Cir. BAP 2012) ("Unless and until the Supreme Court visits other provisions of Section 157(b)(2), we take the Supreme Court at its word and hold that the balance of the authority granted to bankruptcy judges by Congress in 28 U.S.C. § 157(b)(2) is constitutional."); see also *Tanguy v. West (In re Davis)*, No. 00-50129, 538 F. App'x 440, 443 (5th Cir. 2013) ("[W]hile it is true that *Stern* invalidated 28 U.S.C. § 157(b)(2)(C) with respect to 'counterclaims by the estate against persons filing claims against the estate,' *Stern* expressly provides that its limited holding applies only in that 'one isolated respect' .... We decline to extend *Stern's* limited holding herein.") (Citing *Stern*, 564 U.S. at 475, 503, 131 S.Ct. 2594).

[16] *Wellness Int'l Network, Ltd. v. Sharif,* 575 U.S.655, 135 S. Ct. 1932, 1947, 191 L.Ed.2d 911 (2015) ("*Sharif* contends that to the extent litigants may validly consent to adjudication by a bankruptcy court, such consent must be expressed. We disagree. Nothing in the Constitution requires that consent to adjudication by a bankruptcy court be express. Nor does the relevant statute, 28 U.S.C. § 157, mandate express consent . . . .").

improper solicitations of clients.[17] The Application to Employ Walker Patterson effective April 8, 2024, sets forth a hybrid approach for the payment of Walker Patterson's fees. Pursuant to the terms of the Amended Employment Order, Debtor proposes to pay Walker Patterson on an hybrid basis under § 328(a) in which Walker Patterson will receive a flat fee of $60,000.00 for prosecution of the Chapter 11 proceeding ("*Flat Fee*") and a 40% contingency fee "for all value obtained by W&P for the estate, including but not limited to money acquired, recovered and collected from the sale of estate property, and generally including any value brought into the estate available to pay claims (excluding secured claims)…" ("*Contingency Fee*").[18] Walker & Patterson will also seek reimbursement of actual and necessary expenses pursuant to 11 U.S.C. § 330(a)(1)(B).[19]

**B.    Standard of review for employment applications under § 328(a)**

Professionals in bankruptcy have the option to be employed and compensated under either §§ 328(a) or 330(a) of the Bankruptcy Code.[20] Section 328(a) provides:

> **(a)** The trustee, or a committee appointed under section 1102 of this title, with the court's approval, may employ or authorize the employment of a professional person under section 327 or 1103 of this title, as the case may be, on any reasonable terms and conditions of employment, including on a retainer, on an hourly basis, on a fixed or percentage fee basis, or on a contingent fee basis. Notwithstanding such terms and conditions, the court may allow compensation different from the compensation provided under such terms and conditions after the conclusion of such employment, if such terms and conditions prove to have been improvident in light of developments not capable of being anticipated at the time of the fixing of such terms and conditions.

As the Fifth Circuit has noted on several occasions, the purpose of § 328(a) is to allow counsel the option to avoid the uncertainty of what constitutes reasonable compensation under § 330 after the fact and receive an advance approval of the reasonableness of the fee sought that will only be

---

[17] ECF No. 37 at 1, ¶ 1.
[18] ECF No. 79.
[19] *Id.* at ¶ 5.
[20] *In re Barron*, 325 F.3d 690, 693 (5th Cir. 2003).

disturbed later if developments not capable of being anticipated at the time of approval of employment occur.[21] Overall, the primary inquiry is assessing whether the terms and conditions in Walker Patterson's Application to Employ are reasonable under the circumstances.[22] With this said, in light of the limited review that can be rendered after the fact, strong attention must be given to whether or not the terms are truly reasonable.

Although the Fifth Circuit has not adopted an express standard for when an application is reasonable under § 328(a), several Texas bankruptcy courts have utilized the following non-exhaustive factors: (1) whether terms of an engagement agreement reflect normal business terms in the marketplace; (2) the relationship between the Debtor and the professionals, i.e., whether the parties involved are sophisticated business entities with equal bargaining power who engaged in an arms-length negotiation; (3) whether the retention, as proposed, is in the best interests of the estate; (4) whether there is creditor opposition to the retention and retainer provisions; and (5) whether, given the size, circumstances and posture of the case, the amount of the retainer is itself reasonable, including whether the retainer provides the appropriate level of "risk minimization," especially in light of the existence of any other "risk-minimizing" devices, such as an administrative order and/or a carve-out.[23] The Court does not give equal weight to these factors and certain factors may be more determinative than others on a case by case basis.

Prior to evaluating the Application to Employ, the Court will first consider each of the Objections.

C.   **The Equal Access Objection**

---

[21] *Matter of Nat'l Gypsum Co.*, 123 F.3d 861, 862 (5th Cir. 1997); *In re Barron*, 325 F.3d 690, 692 (5th Cir. 2003).
[22] 11 U.S.C. § 328(a).
[23] *See e.g.*, *In re Energy Partners, Ltd.*, 409 B.R. 211, 226 (Bankr. S.D. Tex. 2009).

Equal Access contends that the terms of Debtor's Application to Employ are impermissible and that the application should be denied because (1) Debtor failed to make adequate disclosures as to when the Flat Fee was paid, (2) Debtor failed to disclose what amount, if any, was owed to Walker Patterson when the Flat Fee was remitted to Walker Patterson, (3) generally that the Flat Fee is inappropriate, (4) that the Contingency Fee is an "end run" around the cash collateral rules, (5) that the 40% Contingency Fee would be unconscionable and in violation of Texas Disciplinary Rule of Professional Conduct ("*Texas Rules*") 1.04(a), (6) that the Contingency Fee would violate Texas Rule 1.04(f)(1) because Walker Patterson was not involved in the underlying mass tort docket, (7) that "value obtained for the estate" is vague and not clearly defined, (8) allowing a contingent fee on a reduction in liability is impermissible, and (9) that the Contingency Fee makes Walker Patterson not disinterested as required by § 327(a).[24] Arguments (4) and (8) have been rendered moot by Walker Patterson's stipulation on the record[25] and proposed Amended Employment Order which clarifies that the Contingent Fee does not apply to funds recovered for the estate that are subject to a valid security interest and that no Contingent Fee is sought on the reduction of liability.[26] The Court will briefly consider each remaining argument in turn.

1. **Whether Debtor failed to make adequate disclosures as to when the Flat Fee was paid**

First, Equal Access contends that Debtor failed to make adequate disclosures as to when the Flat Fee was paid to Walker Patterson.[27] This argument, in addition to lacking any legal analysis, is also clearly contradicted by Debtor's statement of financial affairs filed on April 23, 2024, which discloses the Flat Fee payment to Walker Patterson.[28] Furthermore, Equal Access

---

[24] ECF No. 28.
[25] June 18, 2024, hearing testimony.
[26] ECF No. 79.
[27] ECF No. 28.
[28] ECF No. 14 at 24.

contradicts itself in the very next sentence of its argument by acknowledging that the Flat Fee was paid April 8, 2024.[29] As such, this argument is without merit.

2. **Whether Debtor failed to disclose what amount, if any, was owed to Walker Patterson when the Flat Fee was remitted to Walker Patterson**

Equal Access next contends that Debtor failed to disclose what amount was owed to Walker Patterson by the Debtor, if anything, in its Application to Employ.[30] First, the Court notes that Debtor is under no obligation to create a list of every entity that it does not owe money to. Second, testimony at the hearing made clear that no pre-petition amount is owed to Walker Patterson,[31] which is also implicit in the hybrid fee structure that Walker Patterson seeks for representation in this case. As such, this argument is without merit.

3. **Whether generally that the Flat Fee is inappropriate**

Next, Equal Access generally argues that the Flat Fee is inappropriate.[32] However, it is notable that Equal Access does not actually argue that $60,000.00 is an unreasonable fee to be paid for the prosecution of this case.[33] Equal Access, in fact, provides no real substantive argument in opposition to the Flat Fee other than to baldly assert that it would be "inappropriate", "fraught with irreversible consequences", and that approval of the Flat Fee would deprive this Court of assessing the reasonableness of the fee later.[34] These bald conclusory arguments do not move this Court. Furthermore, Equal Access' assertion that approval of employment terms pursuant to § 328(a) limits this Court's ability to further assess reasonableness at a later date is not actually an argument

---

[29] ECF No. 28 at 2-3, ¶ 7.
[30] *Id.*
[31] June 13 & 18, 2024, hearing testimony.
[32] ECF No. 28.
[33] *See generally id.*
[34] *Id.*

at all, its simply a statement of the law.[35] The only substantive inquiry is if the Flat Fee is reasonable under the circumstances,[36] which Equal Access does not dispute in their Objection.[37]

4. **Whether a 40% Contingency Fee would be unconscionable and in violation of Texas Disciplinary Rule of Professional Conduct 1.04(a)**

Next, Equal Access briefly, and without substantive analysis, argues that it would be unconscionable for an attorney to agree to take a 40% contingency fee for recovery of fees it did not generate and in which it performed no work.[38] Specifically, Equal Access contends that the Contingency Fee would violate Texas Rule 1.04(a), which, *inter alia*, provides, "[a] fee is unconscionable if a competent lawyer could not form a reasonable belief that the fee is reasonable." Walker Patterson contends that this assertion mischaracterizes the terms of employment, and that Walker Patterson is not seeking fees for work performed in the underlying mass tort docket itself.[39] Walker Patterson is seeking a contingency fee for any value that can be obtained for the estate related to the mass tort cases.[40]

Upon review, the Court agrees with Walker Patterson that the terms of employment do not authorize a contingency fee on work performed in the mass tort cases in which Walker Patterson did not participate.[41] The terms of employment authorize a contingency fee on any value that Walker Patterson can bring into the estate,[42] most relevant of which being any recovery on the disputed contingent fee interests that Debtor asserts in the mass tort cases pending in Louisiana.[43] Currently, all other parties involved assert Debtor is not entitled to a fee in those cases and based

---

[35] *Barron*, 325 F.3d at 692.
[36] *Id.*
[37] *See generally* ECF No. 28.
[38] *Id.*
[39] ECF No. 104.
[40] *Id.*
[41] ECF No. 79.
[42] *Id.*
[43] June 13 & 18, 2024, hearing testimony; ECF No. 13.

on evidence received at the hearing it seems likely that recovery on these fees will require significant effort and litigation from Debtor's counsel to recover.[44] Equal Access' arguments on this point are without merit and this Court is not persuaded that a 40% contingency fee on recovery of these disputed fees would be unconscionable.

5. **Whether the Contingency Fee would violate Texas Rule 1.04(f)(1) because Walker Patterson was not involved in the underlying mass tort docket**

Next, Equal Access contends that a contingency fee on the recovery of unpaid fees would violate Texas Rule 1.04(f)(1) because Walker Patterson performed no work on the mass tort cases and a contingency fee in recovery of unpaid fees would constitute an impermissible fee sharing agreement.[45] Texas Rule 1.04(f)(1), requires, among other things, that the division of fees between lawyers who are not in the same firm can only be made if "the division is… in proportion to the professional services performed by each lawyer…" However, Walker Patterson is not seeking to create a fee sharing agreement with the Debtor as it pertains to the mass tort cases.[46] Debtor is seeking to retain Walker Patterson for, among other things, recovery of unpaid fees that Debtor asserts an interest in the mass tort cases.[47] Equal Access' interpretation of Texas Rule 1.04(f) would be to prevent law firms from hiring outside counsel to pursue unpaid fees on a contingency basis.[48] This is not the purpose of Texas Rule 1.04(f) and hiring counsel to pursue unpaid fees on its behalf does not constitute a fee sharing agreement. Thus, this argument is without merit.

6. **Whether "value obtained for the estate" is vague and not clearly defined**

Next, Equal Access contends that the concept of "value" is not clearly defined by Walker Patterson and that theoretically it could allow Walker Patterson to obtain a 40% contingency fee

---

[44] June 13 & 18, 2024, hearing testimony.
[45] ECF No. 28.
[46] *See* ECF No. 3, 79.
[47] *See id*.
[48] *See* ECF No. 28.

on the sale of real property, which would be unconscionable.[49] First, although a 40% contingency fee on the sale of real property could very well be problematic, it is also a hypothetical that is inapplicable to this case as Debtor has no real property, and is thus disregarded.[50] As far as whether "value" is clearly defined, this Court finds that under the circumstances of this case that it is. Mr. Patterson testified at the hearing that Walker Patterson would be entitled to 40% of any funds brought into the estate for distribution to unsecured creditors resulting from its efforts.[51] Furthermore, the only significant assets of the estate in which Walker Patterson could generate new value appear to be the unpaid contingency fees that Debtor asserts an interest in with respect to the Louisiana mass tort docket.[52] The Court finds that Equal Access' argument that value is not clearly defined to be without merit.

7. **Whether the Contingency Fee makes Walker Patterson not disinterested as required by § 327(a)**

Last, Equal Access argues that the Contingency Fee makes Walker Patterson not disinterested as required by § 327(a).[53] Specifically, Equal Access argues that:

> [a]uthorizing WP to proceed as main counsel to the Debtor with its contingency fee in hand makes it interested and conflicted, not disinterested as required. One can imagine innumerable opportunities for Debtor's counsel to refuse to resolve cases on terms which could impact its ability to get paid, even if such resolutions ultimately are in the best interest of the estate.[54]

As it turns out, this Court *cannot* "imagine" why this Contingency Fee would create an adverse interest between Walker Patterson and the estate, much less "innumerable opportunities" for a conflict as Equal Access suggests. Equal Access, once again, makes bald unexplained claims

---

[49] ECF No. 28.
[50] *See* ECF No. 13.
[51] June 13 & 18, 2024, hearing testimony. *See also* ECF No. 79.
[52] *See* ECF No. 13.
[53] ECF No. 28.
[54] *Id.*

without elaboration or citation to authority. Walker Patterson will only be entitled to a contingency fee if it brings value into the estate, and as such, Walker Patterson's interests are directly aligned with the interests of the estate. If the estate gets paid, Walker Patterson gets paid.

Accordingly, Equal Access' objections are overruled. The Court will next consider the UST's objections.

**D. The UST's Objections**

The UST also asserts several objections to the Application to Employ, to wit: (1) because the Flat Fee was paid for post-petition work, there is no legal or factual basis for approval of the Flat Fee under § 328(a), (2) if the Court approves the Flat Fee under § 328(a) it will deprive the Court of the ability to assess the reasonableness of the fee later, and (3) that the Contingency Fee is overly broad, excessive, and certain terms are vague and ill defined.[55] The Court will consider each in turn.

**1. Whether there is no legal or factual basis for approval of the Flat Fee under § 328(a)**

The UST contends that because the Flat Fee was tendered for post-petition work, it can only be approved pursuant to § 330(a) and not § 328(a).[56] The UST provides no citation to authority or supporting argument for this bald claim that clearly runs contrary to the plain language of § 328(a) that provides that compensation can be provided on a fixed fee basis.[57] There is nothing in the statute that supports the UST's contention that only pre-petition work can be approved on a fixed fee basis pursuant to § 328. As such, this argument is without merit.

**2. Whether if the Court approves the Flat Fee under § 328(a) it will deprive the Court of the ability to assess the reasonableness of the fee later**

---

[55] ECF No. 32.
[56] *Id.*
[57] *See id*. *See also* 11 U.S.C. § 328(a).

Next, the UST generally asserts that the Court should not approve Walker Patterson's terms of employment under § 328(a) because it will deprive the Court of the ability to assess the reasonableness of earned fees later as would be the case for an employment application approved under § 330(a).[58] As discussed *supra*, this is not actually an argument, it is merely a statement of the law as it pertains to employment applications under § 328(a).[59] The Court's subsequent review of fees previously approved under § 328(a) is limited, but that alone is not a basis for denying an application.

### 3. Whether the Contingency Fee is overly broad, excessive, and certain terms are vague and ill defined

Last, the UST generally asserts that the terms are overly broad, excessive, and that certain terms are vague and ill defined.[60] Specifically, the UST contends that "value" and how the contingency fee would apply is not clearly defined, that a fee for the reduction in liability would be inappropriate, and that "value" as defined would allow Walker Patterson a contingency fee on the sale of real property, which would be inappropriate.[61]

First, although the UST baldly contends that the terms are excessive, it entirely fails to articulate how the terms of the Contingency Fee are excessive or what percentage would be appropriate.[62] Bald assertions lacking any citation or argument do not move this Court. Other arguments concerning the reduction of liability are moot as discussed *supra*. Concerning the sale of real property, this is a hypothetical that is inapplicable to this case as discussed, as the Debtor is a law firm with no real property.[63] With respect to how "value" is defined and when the

---

[58] ECF No. 32.
[59] *Barron*, 325 F.3d at 692.
[60] ECF No. 32.
[61] *Id.*
[62] *See id.*
[63] *See* ECF No. 13.

contingency fee would apply, as the Court already found *supra*, the terms are clear and the UST has failed to identify a concrete issue with the terms of employment.

Furthermore, while there has been significant concern from the UST and other Objecting Parties that Walker Patterson will be able to obtain a significant recovery with little effort, no evidence was presented at the hearing that this will in fact be true in this case.[64] In fact, the Fifth Circuit has noted that, "Congress enacted § 328(a) to eliminate the previous uncertainty associated with professional compensation in bankruptcy proceedings, even at the risk of potentially underpaying, or, conversely, providing a windfall to, professionals retained by the estate under § 328(a)."[65] Thus, both the possibility of underpayment or windfall to professionals were expressly contemplated by Congress in empowering courts to consider applications pursuant to § 328.

Accordingly, the UST's objections are overruled. The Court will now turn to the UCC's Objections.

**E.  The UCC's Objections**

Finally, The UCC's raises two objections to the Application to Employ, to wit: (1) the terms and conditions of Walker Patterson's employment and compensation structure set forth in the Application to Employ are so overbroad and vague as to render them unreasonable; and (2) approval of the Application to Employ under section 328 of the Bankruptcy Code is premature and not in the best interests of the estate and its creditors at this stage of the Chapter 11 Case.[66] The Court will consider each in turn.

   **1. Whether the terms and conditions of Walker Patterson's employment and compensation structure set forth in the Application to Employ are so overbroad and vague as to render them unreasonable**

---

[64] *See* June 13 & 18, 2024, hearing testimony.
[65] *In re ASARCO, L.L.C.*, 702 F.3d 250, 258 (5th Cir. 2012).
[66] ECF No. 56 at 1, ¶ 1.

The UCC's objections are largely duplicative of those already raised by Equal Access and the UST.[67] Broadly, the UCC takes issue with how "value" is defined and under what circumstances Walker Patterson would be entitled to a contingency fee.[68] However, the Court has already dispensed with these arguments *supra* and found that they are without merit.

   2. **Whether approval of the Application to Employ under section 328 of the Bankruptcy Code is premature and not in the best interests of the estate and its creditors at this stage of the Chapter 11 Case**

The UCC contends that approval of the Application to Employ is not in the best interests of the estate because one or more parties will likely move for the appointment of a Chapter 11 trustee, the primary assets of the estate have not been investigated thoroughly enough to determine what a reasonable contingency fee would be, and pre-approval of a contingency fee will limit the Debtor and creditor body's options for hiring alternative litigation counsel to pursue claims at a later stage on better terms.[69]

As discussed *supra*, the overall inquiry is assessing whether the terms of the Application to Employ are reasonable under the circumstances.[70] First, the UCC seems to take the position that because they will seek to remove the Debtor from possession, that it is premature to approve an employment application.[71] This argument is absurd, and whether or not certain parties in interest seek to dispossess the Debtor has no bearing on whether the terms of employment of counsel are reasonable. To accept this argument would be to allow the creditor body to hold the Debtor hostage by merely threatening to dispossess it, and ironically, by depriving it if counsel, ensure that it cannot reorganize successfully.

---

[67] *Compare* ECF Nos. 28, 32 *with* 56.
[68] ECF No. 56.
[69] ECF No. 56.
[70] 11 U.S.C. § 328(a).
[71] ECF No. 56.

Next, although the UCC contends that the primary assets have not been investigated thoroughly enough to assess what a reasonable contingency fee would be, the UCC also fails to explain how any such investigation would be conducted without the Debtor retaining counsel or what sort of investigation needs to be conducted, or when it could be conducted by.[72] As has been a routine theme with the other objections raised against the Application to Employ, the UCC attempts to derail Debtor's retention of counsel by positing vague, abstract, and undefined hypotheticals that do not bear on the reasonableness of the terms of employment.

Last, the UCC contends that approval of Debtor's Application to Employ will restrict the Debtor and UCC's ability in the future "to bargain for and select a post-confirmation litigation trustee who may be better suited to pursue such claims and who may be able to retain counsel on better terms that would yield a greater recovery to creditors."[73] Again, the UCC fails to actually articulate why the terms proposed are unreasonable and merely posits hypotheticals that maybe some other firm will pursue these claims on better terms later.[74] The evidence elicited at the hearing, however, indicates the opposite. Debtor's representative spoke to dozens of law firms that refused to accept this representation on a contingency basis at all, and the Debtor lacked the funds to pay the requested retainers of these firms.[75] Furthermore, as discussed *infra*, a 40% contingency fee for recovery of unliquidated litigation claims is routine in this district.

Accordingly, the UCC's objections are overruled.

The Court will now consider whether Debtor's Application to Employ should be approved.

## F.    Whether Debtor's Application to Employ should be approved

---

[72] *See id*.
[73] *Id.*
[74] *Id.*
[75] June 13 & 18, 2024, hearing testimony.

As discussed, although there is no test that the Fifth Circuit has adopted to assess reasonableness under § 328(a), courts in the southern district have previously considered the following factors: (1) whether terms of an engagement agreement reflect normal business terms in the marketplace; (2) the relationship between the Debtor and the professionals, i.e., whether the parties involved are sophisticated business entities with equal bargaining power who engaged in an arms-length negotiation; (3) whether the retention, as proposed, is in the best interests of the estate; (4) whether there is creditor opposition to the retention and retainer provisions; and (5) whether, given the size, circumstances and posture of the case, the amount of the retainer is itself reasonable, including whether the retainer provides the appropriate level of "risk minimization," especially in light of the existence of any other "risk-minimizing" devices, such as an administrative order and/or a carve-out. The Court will consider each in turn.

1. **whether terms of an engagement agreement reflect normal business terms in the marketplace**

Walker Patterson seeks a fixed fee of $60,000.00 plus 40% of any value obtained for the estate, excluding value that is subject to a valid security interest.[76] First, the Court notes, as was made evident by testimony provided at the hearing by Debtor's counsel as well as this Court's own experience in approving employment applications, that $60,000.00 is an exceedingly small flat fee to take on representation of a complicated and exceedingly contested Chapter 11 case as is present here. The case is barely three months old and there are already one hundred seventy-one docket entries and four adversary proceedings.[77] Although objections were made as discussed *supra*, there was no actual argument made by any Objecting Party that the amount itself of the flat fee is

---

[76] ECF No. 79.
[77] *See generally* docket.

unreasonable.[78] Likewise, the Court finds that this amount is more than reasonable, and in all likelihood the work performed thus far already exceeds this flat fee.

With respect to the Contingency Fee, although there was significant fear mongering about hypotheticals at the hearing and in the objections as discussed *supra*, the reality of this case is that Debtor's only significant asset are millions of dollars in unpaid contingency fees in cases where Debtor was disqualified as counsel and whose cases were transferred to other firms that take the position that Debtor is entitled to no fee.[79] Although many hypotheticals were thrown around at the hearing, no evidence was presented that recovery of these fees will be simple or easy. To allow counsel a 40% contingency fee on the recovery of contingent, unliquidated, and highly disputed claims belonging to the estate is an extremely ordinary request that falls under the purview of ordinary business terms in the marketplace in the Southern District of Texas.

As such, the Court finds that the terms of the engagement of Walker Patterson reflect normal business terms in the marketplace.

2. **Whether the relationship between the Debtor and the professionals, i.e., whether the parties involved are sophisticated business entities with equal bargaining power who engaged in an arms-length negotiation**

At the hearing, the Objecting Parties attempted to argue that Debtor's representative, Mr. Moseley, was not sophisticated because he is not an expert in bankruptcy, and did not have equal bargaining power because he was desperate to find counsel after being rejected by many firms for being unable to pay the requested retainer.[80] First and foremost, the Court wholeheartedly rejects the notion that unless a Debtor's representative is an expert in bankruptcy that they are not sophisticated. To accept this argument would mean that no Debtor whose representative was not a

---

[78] See ECF Nos. 28, 32, 56.
[79] *See* ECF No. 13, June 13 & 18, 2024, hearing testimony.
[80] June 13 & 18, 2024, hearing testimony.

bankruptcy lawyer would be considered a sophisticated business entity. Here, Debtor is a law firm and Mr. Moseley is an attorney. The Court finds that the Debtor is a sophisticated business entity more than capable of negotiating on its own behalf. The Court similarly rejects the Objecting Parties argument that there was a lack of equal bargaining power.[81] All debtors who are contemplating bankruptcy are, by the very nature of their financial circumstances, distressed. However, as stated previously, Debtor is a law firm, and its representative is an attorney that is more than capable of negotiating the terms of employing counsel on its behalf. Testimony in the record indicates that Mr. Moseley negotiated with dozens of firms before finalizing its agreement with Walker Patterson.[82] Furthermore, the Court also received testimony indicating this was an arms length transaction, as Walker Patterson has no prior ties or connection to the Debtor.[83]

As such, the Court finds that the Debtor is a sophisticated business entity with equal bargaining power who negotiated an arms length transaction with Walker Patterson.

### 3. Whether the retention, as proposed, is in the best interests of the estate

As it stands, most of the objections to the Application to Employ have been less about the terms of employment and more to do with not wanting the Debtor to continue to be in possession of the estate.[84] Many objections, as discussed *supra*, speculated about getting better employment terms from other professionals, or asserted in conclusory fashion that the terms are "excessive" or otherwise are premature.[85] Employment of Debtor's counsel is not a matter that traditionally is supposed to drag on for months from the inception of the case, and the suggestion from the Objecting Parties that the Court should wait some indefinite amount of time to "see what happens"

---

[81] *Id.*
[82] *Id.*
[83] *Id.*
[84] *See* ECF Nos. 28, 32, 56.
[85] *Id.*

in this case before approving an employment application is entirely without basis. The terms are simple, $60,000.00 plus 40% of any value obtained for the estate for the benefit of unsecured creditors.[86] As far as the Court can tell from the evidence presented at the hearing, recovering on the asserted contingency fees in the mass tort docket will not be an easy task, as is evident from the four adversary proceedings that have already been initiated.[87] As discussed, the flat fee is exceptionally modest for the work that has already been performed, and 40% recovery on unliquidated litigation claims is exceptionally routine in this district. The Court finds that it is in the best interests of the estate, and that approval of the Application to Employ will likely generate the highest recovery for the estate.

    **4. Whether there is creditor opposition to the retention and retainer provisions**

Although there has been significant opposition to Debtor's Application to Employ, the Court has also found all objections to be without merit. As such, the Court gives little weight to this factor.

    **5. Whether, given the size, circumstances and posture of the case, the amount of the retainer is itself reasonable, including whether the retainer provides the appropriate level of "risk minimization," especially in light of the existence of any other "risk-minimizing" devices, such as an administrative order and/or a carve-out.**

The Court finds that this factor is inapplicable since a retainer is not sought in this case.

Accordingly, having weighed all the factors as discussed *supra*, all objections are overruled and the Court finds that the terms of employment in the Application to Employ, and as modified by stipulations on the record from Debtor's counsel that a contingency fee is not sought on a reduction in liability or any funds received that are subject to a valid security interest, are reasonable under § 328(a) and the Application to Employ is granted.

---

[86] ECF No. 79.
[87] *See* Case nos. 24-3127, 24-3130, 24-3134, 24-3137.

## IV. CONCLUSION

An order consistent with this Memorandum Opinion will be entered on the docket simultaneously herewith.

SIGNED July 18, 2024

_____
Eduardo V. Rodriguez
Chief United States Bankruptcy Judge