**IN THE UNITED STATED BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| **MMA LAW FIRM, PLLC,** | § | **CASE NO: 24-31596** |
| | § | **(Chapter 11)** |
| Debtor. | § | |
| | § | |

**MOTION TO TRANSFER VENUE OF BANKRUPTCY CASE**
**PURSUANT TO 28 U.S.C. § 1412**

**THIS MOTION SEEKS AN ORDER THAT MAY ADVERSELY AFFECT YOU. IF YOU OPPOSE THE MOTION, YOU SHOULD IMMEDIATELY CONTACT THE MOVING PARTY TO RESOLVE THE DISPUTE. IF YOU AND THE MOVING PARTY CANNOT AGREE, YOU MUST FILE A RESPONSE AND SEND A COPY TO THE MOVING PARTY. YOU MUST FILE AND SERVE YOUR RESPONSE WITHIN 21 DAYS OF THE DATE THIS WAS SERVED ON YOU. YOUR RESPONSE MUST STATE WHY THE MOTION SHOULD NOT BE GRANTED. IF YOU DO NOT FILE A TIMELY RESPONSE, THE RELIEF MAY BE GRANTED WITHOUT FURTHER NOTICE TO YOU. IF YOU OPPOSE THE MOTION AND HAVE NOT REACHED AN AGREEMENT, YOU MUST ATTEND THE HEARING. UNLESS THE PARTIES AGREE OTHERWISE, THE COURT MAY CONSIDER EVIDENCE AT THE HEARING AND MAY DECIDE THE MOTION AT THE HEARING.**

**REPRESENTED PARTIES SHOULD ACT THROUGH THEIR ATTORNEY.**

**THERE WILL BE A HEARING ON THIS MATTER ON OCTOBER 9, 2024, AT 9:00 O'CLOCK A.M. BEFORE CHIEF JUDGE EDUARDO V. RODRIGUEZ, IN COURTROOM 402, AT THE UNITED STATES COURTHOUSE, 515 RUSK AVENUE, 4TH FLOOR, HOUSTON, TEXAS 77002.**

TO THE HONORABLE EDUARDO V. RODRIGUEZ, CHIEF BANKRUPTCY JUDGE:

COMES NOW, MORRIS BART, LLC ("Morris Bart" or the "Movant"), and makes this

its Motion to Transfer Venue of Bankruptcy Case Pursuant to 28 U.S.C. § 1412, and would show

as follows:

1

## I.

## RELIEF REQUESTED AND CERTIFICATE OF CONFERENCE

1. The Movant seeks an order transferring venue of the bankruptcy case to the United States Bankruptcy Court for the Eastern District of Louisiana.

2. Movant's counsel has conferred with Miriam Goott, counsel for MMA Law Firm, PLLC (the "Debtor"), and Ms. Goott stated that the Debtor opposes the motion.

## II.

## JURISDICTION AND VENUE

3. This Court has jurisdiction over this Motion pursuant to 28 U.S.C. § 1334. A motion for relief from the automatic stay is a core proceeding under 28 U.S.C. § 157(b)(2)(A). *In re Pope Vineyard,* 90 B.R. 252, 254 (Bankr. S.D. Tex. 1988). This Court has the constitutional authority to enter a final order on this motion to transfer venue of the bankruptcy case. If it is determined that the bankruptcy judge does not have constitutional authority to enter a final order or a judgment in this matter, Movant consents to entry of a final order or judgment on this motion.

## III.

## BACKGROUND FACTS

4. The Debtor was a law firm that specialized in bringing claims for insurance coverage for damages caused by hurricanes, floods, and other incidents. It was formed on May 6, 2016, as a Texas professional limited liability company under the name McClenny Moseley & Associates, PLLC. (Exhibit 1). Although the Debtor was initially based in Houston, Texas, it employed counsel and maintained offices in other states, including the State of Louisiana. The Debtor maintained an office in New Orleans, Louisiana at 1820 St. Charles Avenue, Suites 110 and 200.

5. The Debtor engaged in massive advertising and solicitation campaigns in Louisiana seeking out potential clients with claims arising from damage sustained during Hurricane Laura (landfall near Cameron, LA on August 27, 2020), Hurricane Delta (landfall near Creole, LA on October 9, 2020), Hurricane Zeta (landfall in Cocodrie, LA on October 28, 2020), and Hurricane Ida (landfall near Port Fourchon, LA on August 29, 2021).

6. The Debtor used an Alabama-based roofing company named Apex Roofing and Restoration, LLC ("Apex") as a "runner" to sign up clients in Louisiana. The Debtor also paid a marketing firm doing business as "Velawcity" over $13 million to act as a "runner" by advertising and communicating with potential hurricane clients in Louisiana.

7. In August of 2022, within a span of days, the Debtor filed thousands of lawsuits in the United States District Courts for the Western, Middle, and Eastern Districts of Louisiana on behalf of hurricane victims. The Debtor filed lawsuits without some clients' knowledge. The Debtor filed duplicate lawsuits in many instances. The Debtor filed lawsuits for property owners who had not even engaged the Debtor to represent them. Numerous hearings were held in these federal courts in Louisiana regarding the conduct of the Debtor and its attorneys.

8. On March 3, 2023, Judge Cain of the Western District of Louisiana issued an order suspending the Debtor and all its attorneys from practice before the United States District Court for the Western District of Louisiana for a period of ninety (90) days. (Exhibit 2). Judge Cain opened a miscellaneous case styled *In re: McClenny Moseley & Associates,* PLLC, Case No. 3:23-mc-00062, in the United States District Court for the Western District of Louisiana, Lake Charles Division (the "WD Miscellaneous Case") to conduct further hearings and make further rulings on the Debtor's (and the Debtor's attorneys') conduct.

9.   On June 8, 2023, Chief Judge Terry A. Doughty of the Western District of Louisiana entered an order in the WD Miscellaneous Case extending the suspension of certain of the Debtor's attorneys.

10. On August 22, 2023, Judge Cain entered an order ruling that "MMA and related parties have no property interest/ownership in the proceeds of any cases pending in this Court . . ." (Exhibit 3). This order was appealed, and in an unpublished opinion issued on June 7, 2024, the United States Court of Appeals for the Fifth Circuit vacated the order on due process grounds. *In re: McClenny, Moseley & Associates, P.L.L.C.*, 2024 WL 2874371 (5th Cir. June 7, 2024).

11. However, the Fifth Circuit recognized Judge Cain's inherent power as a district court to entertain the sanctions. *Id.* at *3.

12. Judge Cain was not the only federal judge in Louisiana who was disturbed by what he was seeing in the cases the Debtor had filed. Judge Michael North, a United States Magistrate Judge in the Eastern District of Louisiana, was also concerned with the filings. On February 1, 2023, Judge North held a hearing in a case styled *Franatovich v. Allied Trust Insurance Company*, Civil Action No. 22-2552 (consolidated with 22-4927), in the United States District Court for the Eastern District of Louisiana (the "Franatovich Case") on an order to resolve a motion to exclude and nullify an appraisal. (Exhibit 4, p. 4 of transcript). In the order, Judge North "indicated a number of general and specific questions that Mr. Huye, and perhaps Mr. Moseley, should be prepared to address." (Exhibit 4, p. 4 of transcript). In the hearing, evidence was presented showing that the Debtor used the marketing company Velawcity to solicit and sign Louisiana homeowners for property damages cases. (Exhibit 4, pp. 66-68 of transcript).

13. On February 13, 2023, in response to Judge North's orders requiring the Debtor to submit information about the hurricane cases, the Debtor sent a letter to Judge North admitting:

4

(a) in the Franatovich Case the Debtor filed the case without having any fee agreement, (b) in the Franatovich Case the Debtor actually represented Apex Roofing and Restoration, LLC or another roofing or construction company as opposed to or in addition to the plaintiff, (c) the Debtor had settled claims in 9 cases in which the Debtor represented Apex but not the named insured, (d) and through lists of clients had 856 cases in which it represented Apex and not the property owner/insured. (Exhibit 5).

14. On September 22, 2023, United States Magistrate Judge Kathleen Kay of the Western District of Louisiana entered an order denying the Debtor's motion for intervention to claims fees and costs in a case styled *Rhonda A. Jones-Bell v. Imperial Fire & Casualty Insurance Co.*, Civil Action No. 2:22-cv-3494, in the United States District Court for the Western District of Louisiana, Lake Charles Division (the "Jones-Bell Case"). (Exhibit 6). Judge Kay found that the Debtor had no legally protectible interest in the lawsuit and therefore could not intervene to claim fees.[1]

15. The federal courts in Louisiana (and Texas) were not the only governmental bodies acting against the Debtor for its conduct. The Louisiana Department of Insurance investigated the Debtor for insurance fraud. On February 17, 2023, the Louisiana Department of Insurance issued its Cease and Desist Order, Notice of Wrongful Conduct and Notice of Investigative Proceedings. (Exhibit 7). On May 1, 2023, the Louisiana Department of Insurance issued a Cease and Desist Order and Notice of Fine to McClenny, Moseley & Associates, PLLC. (Exhibit 8). In that order, the Louisiana Department of Insurance recited numerous findings of fraudulent conduct and fined the Debtor $500,000.00. (Exhibit 8).[2]

---

[1] Magistrate Judge Kay entered similar orders in other cases pending in the Western District of Louisiana. *See, e.g., Theriot v State Farm Fire &Cas. Co.*, 2023 WL 6206172 (W.D. La. Sept. 22, 2023). These orders were uniformly affirmed by Judge Cain. *See, e.g., Semmes v. Liberty Mut. Ins. Co.*, 2023 WL 7930203 (W.D. La. Nov. 15, 2023).

[2] Identical notices were issued to James McClenny, John Moseley, and William Huye, III fining each of them $500,000.00 as well.

16. All the Debtor's attorneys except for one of its founders, Zach Moseley, terminated their employment with the Debtor. The Debtor withdrew from representing the thousands of clients across Louisiana, leaving these Louisiana hurricane victims to represent themselves in their cases pending in federal court *pro se*.

17. After the Debtor's law firm imploded, many of the former clients of the Debtor signed engagement agreements with Morris Bart to have it represent them in their hurricane damage cases. Morris Bart currently has over 1,000 cases in Louisiana representing former clients of the Debtor. Other law firms are also now representing former clients of the Debtor in the Louisiana federal courts. There are literally thousands of these cases pending in Louisiana.

18. The Debtor is continuing to assert claims for attorneys' fees and costs in the thousands of cases pending in the Louisiana courts.

19. On April 9, 2024, the Debtor filed for bankruptcy protection under chapter 11 of the Bankruptcy Code initiating the instant bankruptcy case.

20. The Debtor's only remaining employees are Zach Moseley who resides in Houston, Texas and Katy Ohlsson, who resides in Metairie, Louisiana, outside New Orleans.

21. On April 23, 2024, the Debtor filed its initial Schedules and Statement of Financial Affairs.

22. In Schedule A,B, the Debtor listed extensive personal property "located in storage unit." That storage unit is listed in Schedule G as the Elmwood Storage Facility at 1004 S. Clearview Pkwy., New Orleans, Louisiana 70123.

23. The Debtor listed 214 nonpriority unsecured creditors in Schedule F of its schedules, 140 of which were listed with addresses in Louisiana.

24. The Debtor's corporate office is in a temporary sublease of space with KLX Energy

Services, LLC at 1415 Louisiana, 29th Floor, Houston, Texas. The Debtor listed that lease on Schedule G to be rejected. On Schedule G, the Debtor also listed a lease of office space at 1235 North Loop West, Suite 810, Houston, Texas 77008 and stated an intention to assume that lease. However, this is the office of a law firm named Bivona Law, operated by an attorney named Drew Bivona. Interestingly, in Part 4, Question 9, the Debtor disclosed that in November of 2023, it "gifted" to the Bivona Law Firm "28 computer monitors, 12 desktop monitors, mini fridge, keyboard, mice, docking stations, chairs, phones and laptops."

25. In Part 3, Question 7 of the Debtor's Statement of Financial Affairs, the Debtor listed 98 cases in which it is a party. Of those cases, 85 are pending in various courts in Louisiana. Of those Louisiana cases, 33 are for attorneys' fees pending in the Eastern District of Louisiana.

26. Although the United States Trustee organized an unsecured creditors' committee, this Court has denied applications to employ two law firms as counsel for the unsecured creditors' committee. On information and belief there is now a third law firm that has appeared as potential counsel for the committee, but no application to employ that law firm has been filed and no order has been entered approving that law firm's employment by the committee.

27. The deadline for filing proofs of claim in this case was set for August 13, 2024. To date, 39 proofs of claim have been filed. Of those claims filed, 25 were filed by creditors in Louisiana.

28. The Debtor is claiming a fee interest in thousands of cases involving former clients who are residents of the State of Louisiana.

## IV.

## **ARGUMENT AND AUTHORITIES**

29. Morris Bart requests that the Court transfer this suit to the United States District Court for the Eastern District of Louisiana pursuant to 28 U.S.C. § 1412. "A district court may transfer a case or proceeding under title 11 to a district court for another district, in the interest of justice or for the convenience of the parties." 28 U.S.C. § 1412. Bankruptcy Rule 1014(a) provides the procedure for transfer of venue of a bankruptcy case where the case was filed in a district with proper venue:

> (1) *Cases Filed in Proper District.* If a petition is filed in the proper district, the court, on the timely motion of a party in interest or on its own motion, and after hearing on notice to the petitioners, the United States trustee, and other entities as directed by the court, may transfer the case to any other district if the court determines that the transfer is in the interest of justice or for the convenience of the parties.

Fed. R. Bankr. P. 1014(a).

30. Under section 1412, the movant must show the transfer is "in the interest of justice **or** for the convenience of the parties." Section 1412 is worded in the disjunctive allowing a case to be transferred under *either* the interest of justice rationale or the convenience of parties rationale. *Enron Corp. v, Arora (In re Enron)*, 317 B.R. 629, 637 (Bankr. S.D.N.Y. 2004).

31. "The party moving for change of venue bears the burden of proof and that burden must be carried by a preponderance of the evidence." *In re Dunmore Homes, Inc.*, 380 B.R. 663, 670-71 (Bankr. S.D. N.Y 2008), (*quoting Commonwealth of Puerto Rico v. Commonwealth Oil Refining, Inc. (Matter of Commonwealth Oil Refining, Inc.)*, 596 F.2d 1239, 1241 (5th Cir. 1979), *cert. denied*, 444 U.S. 1045, 100 S.Ct. 732 (1980)); *see also In re Pope Vineyards*, 90 B.R. 252, 254 (Bankr. S.D. Tex. 1988) (Judge Leal).

8

32. The decision to transfer venue is within the discretion of the court. *Enron*, 317 B.R. at 638 n. 8. Where the debtor has filed its bankruptcy case in a venue that is proper, its choice of forum is initially entitled to great weight. *In re Enron*, 284 B.R. 376, 386 (Bankr. S.D.N.Y. 2002). However, the court's discretion must be based "on an individualized case-by-case analysis of convenience and fairness." *Id.*; *see also In re Consol. Equity Prop., Inc.*, 136 B.R. 261 266 (D. Nev. 1991). A more elastic approach is necessary as "venue does not easily submit to hard and fast rules." *In re Abacus Broadcasting Corp.*, 154 B.R. 682, 685 (Bankr. W.D. Tex. 1993). The court should consider "whether transfer of venue will promote the efficient administration of the estate, judicial economy, timeliness and fairness." *In re Enron*, 284 B.R. at 387.

33. Under the "interests of justice" prong, courts should consider whether: (i) transfer would promote the economic and efficient administration of the bankruptcy estate; (ii) the interests of judicial economy would be served by the transfer; (iii) the parties would be able to receive a fair trial in each of the possible venues; (iv) either forum has an interest in having the controversy decided within its borders; (v) the enforceability of any judgment would be affected by the transfer; and (vi) the debtor's/plaintiff's original choice of forum should be disturbed. *Dunmore Homes*, 380 B.R. at 671-72 (*citing In re Enron*, 317 B.R. at 638-39).

34. Under the "convenience of the parties" prong, courts should consider: (i) proximity of creditors of every kind to the court; (ii) proximity of the debtor; (iii) proximity of witnesses necessary to the administration of the estate; (iv) location of the assets; (v) economic administration of the estate; and (vi) necessity for ancillary administration if liquidation should result. *In re B.L.of Miami, Inc.*, 294 B.R. 325, 329 (Bankr. D. Nev. 2003) (*citing Commonwealth of Puerto Rico*, 596 F.2d at 1247). The consideration given the most weight is the economic and efficient administration of the estate. *Enron*, 274 B.R. at 343. "Most cases do not consider

liquidation because it is illogical to focus on liquidation contingencies when the goal of the bankruptcy is reorganization." *Dunmore Homes*, 380 B.R. at 672.

35. Courts also consider the impact of the learning curve if the case is transferred. *In re Enron*, 274 B.R. at 349. In addition, courts consider the ability of interested parties to participate in the proceedings and the additional costs that might be incurred to do so. *In re B.L. of Miami*, 294 B.R. at 334.

36. The court does not have to retain venue if the forum chosen by the debtor is simply because the principals are located in that district. *Pope Vineyards*, 90 B.R. at 259 (Judge Leal transferring bankruptcy case to California writing "if the presence of the part-time executives . . . is necessary, they suffer only minor inconvenience in traveling to California.").

37. Courts are particularly receptive to a transfer of venue where there is forum shopping present. Judge Leif Clark expressed this best in *In re Abacus Broadcasting Corp.*, writing:

> Forum shopping has never been favored by federal courts, and courts are quick to discern the evil in all its disguises. *See, e.g., Wood v. Santa Barbara Chamber of Commerce, Inc.*, 705 F.2d 1515, 1523 (9th Cir. 1983), *cert. denied*, 465 U.S. 1081, 104 S.Ct. 1446, 79 L.Ed.2d 764 (1984); *Intern. Rectifyer Corp. v. American Cyanamid Co.*, 520 F.Supp. 635, 639 (D. Minn. 1981); *In re Heritage Wood'N Lakes Estates, Inc.*, 73 B.R. 511, 514 (Bankr. M.D. Fla. 1987). In bankruptcy, too often the tactic is masked by pious pronouncements about the debtor's "right" to select the most advantageous of several possible forums, in order to advance the prospects for reorganization. That rationale, however, should in the usual instance, be taken with several grains of salt. Too many corporations with familiar household names are operating in bankruptcy under the name of some obscure subsidiary whose venue happens to coincide with either the debtor's or the debtor's lawyers' perception of the most favorable judicial forum in which to operate.[8] This tactic is not simply unfair to the creditors of these estates. It is also unfair to the judges.
>
> In this case, the smell of forum shopping is strong indeed. Pursued by a chapter 7 trustee with obvious limitations on his resources, and having fared badly in the Utah bankruptcy courts, the debtor settles on El Paso, Texas, where its principal, Mr. Haston has enjoyed some (though not unalloyed) success, and is at least a known quantity. Never mind that the station's employees will never be able to attend a hearing (they were not even listed in the debtor's schedules as creditors), and never mind that the court has no earthly idea what the Salt Lake City market is like.

Indeed, the lawyer that filed the case for Abacus was from Salt Lake City. The attempt at forum shopping is obvious. It is also impermissible.

*In re Abacus Broadcasting Corp.*, 154 B.R. 682, 686-87 (Bankr. W.D. Tex. 1993).

There is no question that the Debtor in this case has engaged in forum shopping. Knowing that its assets consist primarily of the claims to attorneys' fees in courts throughout Louisiana, that its former clients in the thousands of hurricane cases were in Louisiana, that most of its creditors were in Louisiana, and that it had an office in Louisiana, it came to Houston to file its bankruptcy. Never mind that the Louisiana creditors and the Debtor's former clients cannot be compelled to attend hearings in Houston and that this Houston court is years behind Louisiana courts in terms of familiarity with the abuses and unlawful conduct that the Debtor and its attorneys engaged in throughout the State of Louisiana.

## The "Interest of Justice" Factors

**Transfer would promote the economic and efficient administration of the bankruptcy estate.**

38. Transfer of this case to the Eastern District of Louisiana would promote the economic and efficient administration of the bankruptcy estate. The Debtor's primary assets consist of its claims to a portion of attorneys' fees and costs in each of the thousands of hurricane cases pending in courts throughout Louisiana. The Debtor's former clients in those hurricane cases, if not necessary parties to the fee claims, are certainly necessary witnesses. In addition, the Debtor's staff person who has all the information regarding each of the cases, the documents, and the costs incurred, Ms. Katy Ohlsson, resides in Metairie, Louisiana, a 20-minute drive from the U.S. courthouse in New Orleans. The only other principal of the Debtor is Zach Moseley. Mr. Moseley is one hour plane ride away from New Orleans. He was certainly fine traveling on a regular basis to the Debtor's New Orleans office while the Debtor was still representing thousands of Louisiana residents in hurricane cases. In any event, convenience to one principal of the Debtor should not

11

be a deciding factor on transfer of venue to the Eastern District of Louisiana.

**The interests of judicial economy would be served by the transfer.**

39. Judicial economy would be served by a transfer of this case to the Eastern District of Louisiana. Where lawsuits are already pending against a debtor in the district to which the movant seeks to transfer the case and that district's law will likely apply, judicial economy favors transfer. *Dunmore Homes*, 380 B.R. at 674 (Bankruptcy court pointing to cases pending in California state courts against debtor's subsidiaries and issues in case likely governed by California law grounds for transfer). The receiving court in the Eastern District of Louisiana will have far greater familiarity with the Debtor and its operations, as hurricane litigation is pending in Louisiana and substantial hearings have occurred in that district. There will not only not be any substantial "learning curve" for the judge in the Eastern District of Louisiana, but there will also be substantial prior knowledge in that court of the Debtor and its operations. In addition, the Debtor is simply liquidating its assets in this bankruptcy case, so this court's familiarity is not pivotal to progress of the case. This favors transfer. *See Dunmore, id.* (Court stating "familiarity and knowledge gained by this Court is not as pivotal to the progress of the case").

**The parties would be able to receive a fair trial in each of the possible venues**

40. The parties would be able to receive a fair trial in the Eastern District of Louisiana. There are concerns that Morris Bart would not receive a fair trial in the Southern District of Texas because the bankruptcy court is not familiar with the hurricane cases that caused the Debtor's implosion and need for bankruptcy and is not familiar with the Debtor's conduct and operations in Louisiana. This favors transfer.

12

**Louisiana has an interest in having the controversy decided within its borders**

41. Louisiana has a strong interest deciding the question whether the Plaintiff is entitled to attorneys' fees in cases filed in Louisiana courts. The Plaintiff and its attorneys, with the help of its runners Apex Roofing and Velawcity, preyed upon thousands of Louisiana homeowners in the wake of hurricanes that devastated the state and overwhelmed Louisiana federal court dockets with thousands of suits filed under those homeowners' names.   As one court put it, the Plaintiff, an "out-of-state opportunist[,]" engaged in "a pattern of misconduct on a scale likely never before seen" in Louisiana. *Franatovich v. Allied Tr. Ins. Co.*, 2023 WL 7005861, at *1 (E.D. La. Mar. 16, 2023).

42. Where the Debtor's assets, operations and conduct impact the transferee district, giving that district a strong interest in the impact of the disposition to its communities, transfer is favored. *Dunmore, supra.* There is no question that disposition of the issues in the Debtor's bankruptcy impact on communities in Louisiana far more than Texas. Further, the majority of creditors in this case are local to Louisiana. Many of those creditors have commenced proceedings against the Debtor in Louisiana based on Louisiana law. This favors transfer. *Id.*

43. The general issue of the familiarity of the bankruptcy court with the environment of the Debtor's operations is important and should be weighed. As the court in *Abacus Broadcasting* put it:

> But just as certainly, there are cases that have foundered in no small part due to the bankruptcy judge's lack of familiarity with that environment and his or her consequent inability to evaluate the enterprise's real chances for success in chapter 11. In bankruptcy, more than in most other kinds of federal proceedings, judges tend to draw on their experience to test the promises and platitudes floated up to the bench.
>
> . . .
>
> We do not evaluate cases in splendid isolation from the outside world, nor should we. The enterprise that seeks reorganization must satisfy the court that it is a likely

13

candidate for reorganization, that it has a fighting chance of surviving, even prospering, in the economic community in which it operates. How much more difficult it is for a judge to make such an evaluation without any personal experience with at least the general tenor of that economic community. What, for example, does a judge in Chicago, or Detroit, or Los Angeles, really know about the survivability of a restaurant on the Riverwalk in San Antonio? What do I know of the prospects of a small manufacturing enterprise in South Los Angeles? Can a judge in Pittsburgh have any real sense of the likelihood of reorganization of an oil drilling venture whose most valuable prospects are horizontal wells to be drilled in the Austin Chalk? What do I really know about the market for commercial boats operating out of Miami harbor? Granted a court cannot premise its decisions just on its "gut feel" for the community (nor should it). It still requires hard evidence, in the form of testimony and the like. But that is not to say that the court's familiarity with milieu is not highly relevant, for it is. Better, then, that in evaluating a request for transfer of venue, the court take into account the extent to which a judge "on the ground" as it were might more effectively and efficiently (and perhaps even more fairly) administer the case than might a judge far removed from the debtor's operations.

*Abacus Broadcasting*, 154 B.R. at 685-86.

In this case, a familiarity with the Debtor's operations and conduct in Louisiana is critical to assessing whether the Debtor will obtain attorneys' fees in the hurricane cases, and if so, how much. A bankruptcy judge in the Louisiana will be best familiar with this environment. This favors transfer.

**The enforceability of any judgment would be affected by the transfer.**

44. This factor is neutral, because there is no issue of the enforceability of a judgment by the transfer.

**The debtor's/plaintiff's original choice of forum should be disturbed.**

45. The Debtor's original choice of forum in Texas should be disturbed. The Debtor's choice of the Southern District of Texas as the forum for the bankruptcy case is rank forum shopping aimed at avoiding forums that are familiar with the Debtor's operations and conduct. Thus, transfer is favored. *In re Abacus Broadcasting Corp.*, 154 B.R. at 686-87.

14

## The "Convenience of the Parties" Factors

### Proximity of creditors of every kind to the court.

46. The Debtor's schedules and the claims register show that there are few creditors with proximity to this Court and a majority of creditors with proximity to the Eastern District of Louisiana. There are 140 of 214 creditors listed on the Debtor's schedules who reside in Louisiana, 25 of the 39 creditors who filed proofs of claim who reside in Louisiana, 33 lawsuits pending in Louisiana, and thousands of hurricane cases in Louisiana in which the Debtor has asserted a fee interest. This favors transfer.

### Proximity of the debtor.

47. Although the Debtor is a Texas entity and its sole remaining attorney resides in Texas, the Debtor's staff person who maintains and handles the data and information needed for the Debtor's attorneys' fees and costs claims resides in Metairie, Louisiana. The Debtor had offices in New Orleans, Louisiana which are now shut down, just as its office in Houston is shut down. Mr. Moseley, the Debtor's remaining attorney, is subleasing temporary space from another attorney in Houston, but that is not a sufficient proximity to weigh against transfer of the venue. Further, Mr. Moseley spent years traveling regularly from Houston to New Orleans and other cities in Louisiana to handle the hurricane cases. Having Mr. Moseley travel from Houston to New Orleans for hearings in this case will present no burden on the Debtor, and having Ms. Ohlsson able to travel quickly to the bankruptcy court will lighten the burden on the Debtor. This weighs in favor of transfer. *See B.L. of Miami*, 294 B.R. 331 ("*only* employee of the Debtor located in Reno is its treasurer. Debtor's primary asset, a nightclub, is located in Florida and is the subject of extensive state court litigation.")

15

**Proximity of witnesses necessary to the administration of the estate.**

48. If the 1,524 former clients of MMA who are now Morris Bart clients are not necessary parties to MMA's claims for attorneys' fees in the hurricane cases, at the very least, they are critical witnesses for any trial of MMA's fee claims. Those hurricane victims nearly all reside in Louisiana, and therefore compulsory process is unavailable to secure their attendance in Houston, Texas. Moreover, the cost of attendance for those former clients is significantly higher for a trial in Texas as opposed to a trial in the very forum in which MMA asserted claims on their behalf. And testimony from these former clients is a critical source of proof, such that significant discovery will take place in Louisiana. This weighs in favor of transfer of the venue to the Eastern District of Louisiana. *In re B.L. of Miami*, 294 B.R. 331-332 (transfer warranted where only witnesses in Nevada were Debtor's president and treasurer, but case hinged on litigation in Florida, and witnesses for lawsuit resided in Florida).

**Location of the assets.**

49. The primary assets of the Debtor are claims for attorneys' fees in hurricane cases pending in courts in Louisiana. There are physical assets of inconsequential value (furniture, computers etc.) located at the Debtor's new temporary offices in Houston, but there are also physical assets of this type located in the Debtor's storage facility in Louisiana. The location of these physical assets is not determinative of venue, but the location of the attorneys' fees claims in Louisiana that the Debtor estimates are worth tens of millions of dollars is certainly determinative of venue. This favors a transfer of venue to the Eastern District of Louisiana.

**Economic administration of the estate.**

50. This factor is discussed at length above on page 11. There is no question that the Debtor's estate can be administered more economically in the Eastern District of Louisiana. This

16

weighs in favor of transfer.

**Necessity for ancillary administration if liquidation should result.**

51. This case will involve a liquidating plan of reorganization. There has already been a motion filed seeking appointment of a chapter 11 trustee. The case may well end up converted to a liquidation under Chapter 7. In a case involving liquidation of the assets, the case is best pending where the assets are located. *In re Pope Vineyard*, 90 B.R. at 259. As discussed above, the primary assets involved in this case are the Debtor's claims for attorneys' fees and costs under its alleged contingency fee contracts. The Debtor's claims for those fees must be asserted in the hurricane cases pending in Louisiana. The claims arose in Louisiana where the hurricane victims were solicited and engaged. Thus, transfer of this case to the Eastern District of Louisiana is proper.

WHEREFORE, PREMISES CONSIDERED, MORRIS BART, LLC, movant, respectfully requests that this Court enter an order transferring the bankruptcy case to the United States Bankruptcy Court for the Eastern District of Louisiana, New Orleans Division.

DATED:       September 4, 2024          Respectfully submitted,

**THE PROBUS LAW FIRM**

By:*/s/ Matthew B. Probus*
      **Matthew B. Probus**
      Tex. Bar No. 16341200
      Fed. ID No. 10915

10497 Town and Country Way, Suite 930
Houston, Texas 77024
(713) 258-2700 (Telephone)
(713) 258-2701 (Facsimile)
matthewprobus@theprobuslawfirm.com

-and-

17

**FISHMAN HAYGOOD, L.L.P.**

Tristan Manthey
Tex. Bar No. 24042731
Cherie Dessaur Nobles, *pro hac vice*
Rebekka C. Veith, *pro hac vice*
201 St. Charles Avenue, Suite 4600
New Orleans, Louisiana 70170
(504) 586-5252 (Telephone)
(504) 586-2520 (Facsimile)
tmanthey@fishmanhaygood.com
cnobles@fishmanhaygood.com
rveith@fishmanhaygood.com

*ATTORNEYS FOR MOVANT,*
*MORRIS BART, LLC*

### CERTIFICATE OF CONFERENCE

I hereby certify that on September 4, 2024, I conferred with Miriam Goott, counsel for the Debtor, by email and she stated that the Debtor is opposed to the motion.

By:/s/ Matthew B. Probus
Matthew B. Probus

### CERTIFICATE OF SERVICE

I hereby certify that on September 4, 2024, a true and correct copy of the foregoing was served on parties requesting notice electronically via the Court's CM/ECF system and on those parties listed below via United States regular mail, postage prepaid, first class:

**Debtor:**

MMA Law Firm, PLLC
1235 North Loop West
Suite 810
Houston, TX 77008-1764

**Debtor's Counsel:**

Johnie J. Patterson
Miriam Goott
Walker & Patterson, PC
P.O. Box 61301
Houston, TX 77208-1301

18

**Unsecured Creditors Committee:**

| | | |
|---|---|---|
| PCG Claims, LLC<br>2000 Mallory Lane<br>Suite 130 #239<br>Franklin, TN 37067 | Louisiana Farm Bureau<br>P.O. Box 95008<br>Baton Rouge, LA 70895 | Global Est. Services, Inc.<br>27657 Commerce Oaks Drive<br>Conroe, TX 77385 |
| FCC<br>3799 Country Road 4235<br>DeKalb, TX 75559 | Disaster Solutions<br>192 Solheim Ln.<br>Raleigh, NC 27603 | |

**Twenty Largest Unsecured Creditors:**

| | |
|---|---|
| Global Estimating Services, Inc.<br>25000 Pitkin Rd., Suite 201/202<br>Spring, TX 77386 | PCG - Property Loss Consultants<br>2000 Mallory Lane<br>Suite 130, #239<br>Franklin, TN 37067 |
| Exact Building Consultants<br>18702 69th Ave E<br>Bradenton, FL 34211 | Access Restoration Services US, Inc.<br>c/o Lisa Norman<br>1885 St. James Place, 15th Floor<br>Houston, TX 77056 |
| Scope Pros, LLC<br>8060 East Girard Avenue<br>Unit 619<br>Denver, CO 80231 | Bayou Adjusting<br>P.O. Box 837<br>Walker, LA 70785 |
| Louisiana Dept. of Insurance<br>P.O. Box 94214<br>Baton Rouge, LA 70804 | J.A. Consulting<br>7948 Davis Boulevard, Suite 100<br>North Richland Hills, TX 76182 |
| Caffery, Oubre, Campbell & Garrison, LLP<br>100 East Vermilion St., Suite 201<br>Lafayette, LA 70501 | Chamary, LLC<br>P.O. Box 113130<br>Metairie, LA 70011 |
| Locklin Consulting, LLC<br>2478 S 3rd Ave<br>Walla Walla, WA 99362 | SBA CESC - COVID EIDL<br>Service Center<br>C14925 Kingsport Rd.<br>Fort Worth, TX 76155 |
| Disaster Solutions<br>1301 Seminole Blvd, Suite 140<br>Largo, FL 33770 | FCC<br>3799 Country Road 4235<br>DeKalb, TX 75559 |
| Porsche Financial Services<br>One Porsche Dr.<br>Atlanta, GA 30354 | Dupont Claim Services<br>1721 Hwy 22W<br>Madisonville, LA 70447 |
| Coastal Claims<br>2650 N Dixie Fwy<br>New Smyrna Beach, FL 32168 | Thomson Reuters $57,022.52<br>610 Opperman Drive<br>Eagan, MN 55123 |

19

| Oakwoood Bank<br>LB 35<br>8411 Preston Rd, Suite 600<br>Dallas, TX 75225 | CapitalOne Spark<br>P.O. Box 30285<br>Salt Lake City, UT 84130 |
| --- | --- |

**Parties with Interest in Collateral:**

EAJF ESQ Fund, LP
Equal Access Justice Fund, LP
c/o Misty A. Segura
Spencer Fane, LLP
3040 Post Oak Blvd., Suite 1400
Houston, TX 77056-6584

**United States Trustee:**

Andrew Jiménez,
U.S. Department of Justice
United States Trustee Program
515 Rusk Street, Suite 3516
Houston, TX 77002

By:/s/ Matthew B. Probus
Matthew B. Probus

20