IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| MMA Law Firm, PLLC | § | CASE NO. 24-31596 |
| | § | |
| Debtor | § | |
| | § | |
| MMA LAW FIRM, PLLC, | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | |
| | § | |
| EQUAL ACCESS JUSTICE FUND, | § | |
| LP and EAJF ESQ FUND LP, | § | |
| Defendants. | § | ADVERSARY NO. 24-_____ |
| | § | |

## COMPLAINT

**COMES NOW**, MMA Law Firm, PLLC, and files this *Complaint,* and respectfully show the Court as follows:

**PARTIES AND JURISDICTION**

1. Plaintiff MMA Law Firm, PLLC (f/k/a McClenney Moseley & Associates, PLLC) is a Texas professional limited liability corporation and may be served through counsel.

2. Defendant Equal Access Justice Fund, LP is a Delaware limited partnership, not authorized to do business in Texas, with a business address of 777 South Flagler

Dr., Suite 800 West, West Palm Beach FL, 33401. Defendant Equal Access Justice Fund, LP may be served through its registered agent – Corporation Service Company, 251 Little Falls Dr., Wilmington, DE 19808.

3. Defendant EAJF ESQ Fund LP is a Delaware limited partnership, not authorized to do business in Texas, with a business address of 777 South Flagler Dr., Suite 800 West, West Palm Beach FL, 33401. Defendant EAJF ESQ Fund LP may be served through its registered agent – Corporation Service Company, 251 Little Falls Dr., Wilmington, DE 19808.

## FACTS

4. MMA Law Firm, PLLC (the, **"Debtor"**) is a Texas-based litigation law firm that filed a chapter 11 bankruptcy case on April 9, 2024 (**"Chapter 11 Case"**).

5. The Debtor represents clients on a contingent fee basis and therefore experiences a time delay in payment of fees and recognition of income. The Debtor must also provide for out-of-pocket expenses in some cases.

6. The Debtor was approached prepetition by EAJF ESQ Fund LP and Equal Access Justice Fund, LP (the "Litigation Funders" or "Defendants") with a proposal to provide funding to the Debtor in order to provide working capital and increased capability to capture additional clients.

7. The Litigation Funders ultimately provided funding to the Debtor, resulting in the following transactions:

| DATE | AGREEMENT | LITIGATION FUNDER | EXHIBIT |
|---|---|---|---|
| 9/30/2021 | Loan Agreement | Equal Access Justice Fund, LP | #1 |
| 3/10/22 | Amended & Restated Loan Agreement | Equal Access Justice Fund, LP | #2 |
| 6/10/2022 | Amendment of Loan Agreement | Equal Access Justice Fund, LP | #3 |

| | | | |
|---|---|---|---|
| 6/10/22 | Loan Agreement | EAJF ESQ Fund LP | #4 |
| 10/7/2022 | Amendment To Loan Agreement | EAJF ESQ Fund LP | #5 |
| 11/10/2022 | Amendment No. 2 of Loan Agreement | Equal Access Justice Fund, LP | #6 |

8. On August 13, 2024, Equal Access Justice Fund, LP filed its proof of claim (Claim #50), asserting a secured claim in the amount of $18,360,133.07

9. On August 13, 2024, EAJF ESQ Fund LP also filed a claim (Claim #51), asserting a secured claim in the amount of $19,187,499.24.

**CAUSE OF ACTION NO. 1: LOAN AGREEMENTS OF EQUAL ACCESS JUSTICE FUND AND EAJF ESQ ARE VOID AS AGAINST PUBLIC POLICY AND ARE UNENFORCEABLE**

10. Plaintiff incorporates the allegations stated in paragraphs 1 through 9 into Cause of Action No. 1.

11. The Litigation Funders are not attorneys, nor are they licensed in any state to practice law.

12. Each of the Litigation Funders have attempted to obtain a legal or equitable interest in future or pending causes of action of the Debtor's clients which renders the agreements void as against public policy.

13. The repayment terms of each of the Litigation Funders' notes are identical and are more appropriately described as fee-sharing.

14. Fee sharing among non-lawyers is prohibited and is against public policy, thereby voiding the agreements, making the loan agreements between the Debtor and the Litigation Funders unenforceable.

15. The repayment terms read as follows:

> *Section 2.4. Payments.*
>
> (a) *Optional Payments.* The Borrower may prepay in whole or in part (without penalty or premium) upon notice delivered by the Borrower to the Lender no later than 5:00 p.m. on the date of payment (Wilmington, Delaware time).

>(b) *Mandatory Payments.* The Borrower unconditionally agrees to prepay to the Lender on the tenth (10th) day after the end of each calendar quarter in each fiscal year, commencing with the calendar quarter ending June 30, 2022, and continuing each calendar quarter thereafter until the Maturity Date, the accrued interest then payable and owing on the Loan. Should Lender, in its sole discretion, agree to modify and extend the term of the Loan beyond the Maturity Date, Borrower shall pay to the Lender on the tenth (10th) day after the end of each calendar month, an amount equal to twenty percent (20.00%) (the "Mandatory Payment Percentage") of Law Firm Proceeds for any such calendar month subsequent to the original Maturity Date (the "Mandatory Payment"), *provided that:*
>
>(i) if the amount of interest due on the Loan is equal to or greater than fifty percent (50%) of the current principal balance of the Loan, then the Borrower shall pay an amount equal to one hundred percent (100%) of Law Firm Proceeds for such calendar month; or
>(ii) if the amount of the Obligations is equal to or greater than one hundred fifty percent (150%) of the original principal amount of the Loan, then the Borrower shall pay an amount equal one hundred percent (100%) of Law Firm Proceeds for such calendar month; or
>(iii) if the Borrower fails to provide the information required by Section 7.3 or, if the Lender believes, in its good faith judgment, that the information provided by the Borrower is inaccurate, then the Borrower shall pay an amount equal to one hundred percent (100%) of Revenues for such calendar month.
>
>(c) The Borrower acknowledges, understands and agrees that any optional payments or other amount repaid in addition to the Mandatory Payments required above (whether intentional or inadvertent, made by the Borrower or a third party on the Borrower's behalf) does not reduce the amount or percentage of any subsequent Mandatory Payment required under the terms of this Agreement. The Borrower agrees that the Lender is not required to credit or apply any optional payment amounts to the next Mandatory Payment amount, and any Mandatory Payments must be made in the full amount as set forth in this Section 2.4, without deduction or offset by the Borrower or otherwise.
>
>(d) All payments shall be applied according to Section 4.1.

16. Repayment tied to collection of earned attorney fees represents fee sharing, which is prohibited.

17. In addition, and in support of this reading of the payment terms, the Litigation Funders demanded and obtained an ongoing interest in client cases:

>**SECTION 10. COLLATERAL**.
>
>*Section 10.1.* Collateral. The Obligations shall be secured by valid, perfected, and enforceable Liens on all right, title, and interest of the Borrower in all of

its real property, personal property, and fixtures, including all of the *Law Firm Proceeds of all Cases*, whether now owned or hereafter acquired, and all proceeds thereof, but excluding any Excluded Property. . . .
(emphasis added)

. . .

*Section 10.3.* Additional Lender Protections. Upon request by Lender, Borrower shall, within ten (10) days, notify in writing the clients, the opposing parties' attorneys, the opposing parties' insurers, and also, if requested by Lender, the courts with respect to each of the Cases Borrower is handling *that Lender has a lien on and right to direct payment of Borrower's account receivable/contingency interest in any and all recoveries or settlement proceeds received or to be received by the clients. Lender shall also have the right, as attorney in fact for the Borrower, to give any or all of the foregoing notices on any or all Cases of the Borrower, and Lender shall also have the right to intervene in any Cases if Borrower is in Default solely to protect Lender's lien upon Borrower's interest in the lawsuit, subject to the terms of Section 2.8. Borrower further conveys and assigns to Lender all contractual, statutory, and common law rights to <u>charging liens</u> against Cases or proceeds of Cases.*
(emphasis added)

18. The repayment terms tie repayment directly to case outcomes and asserts an interest in the Debtor's cases and future earnings.

19. The alleged loans are impermissible fee sharing arrangements and cannot be enforced. The loans are void as against public policy.

20. The contract to share fees is illegal and unenforceable.

21. Defendants are entitled to a return of all funds paid or collected by the Plaintiff.

**CAUSE OF ACTION NO. 2: DECLARATION OF THE SECURITY/LIEN INTEREST OF THE DEFENDANTS**

22. The Plaintiff incorporates paragraphs 1-9, 11, 12, 16-20 into Cause of Action No. 2.

23. The Debtor/Plaintiff is a law firm, with its only source of revenue being the representation of clients in litigation or potential litigation.

24. The Litigation Funders assert that they are secured parties to the Plaintiff/Debtor.

25. The Debtor has only limited classes of assets to which a security interest might attach, generally:
    a. Office furniture;
    b. Claims and causes of action against 3rd parties;

    c. Cash in bank accounts, etc.

26. And, the Debtor/Plaintiff routinely represents consumer clients in their pursuit to collect funds from their insurance companies for, *e.g.*, property damage, providing them legal representation *via* contingency fee arrangements.

27. The Litigation Funders are not lawyers, nor are they licensed to practice law in any state. However, they assert and allege that the cash in the Debtor's operating accounts are their "cash collateral", or proceeds from their collateral.

28. The only cash that ever gets deposited into the Debtor's/Plaintiff's bank account would be attorney fees, attorney fees earned in the successful recovery for a client pursuant to the contingency fee agreement.

29. As non-lawyers, the Litigation Funders can have no interest in the claims asserted by the Debtor's clients, they can have no interest in an attorney, yet the Litigation Funders assert that bank deposits are "proceeds of their collateral.

30. Debtor/Plaintiff asserts that the Litigation Funders can assert no lien or interest that would result in attorney fee recoveries by the Debtor/Plaintiff to be proceeds of the Litigation Funder's collateral.

31. Debtor/Plaintiff requests the Court for a declaratory judgment declaring that the Litigation Funders have no interest in any property related to the representation of clients as attorneys, and that the deposits of attorney fees cannot be proceeds of any of the Litigation Funders collateral.

32. In addition, the Litigation Funders assert an interest in the deposits generated by the Debtor/Plaintiff as their "cash collateral". As it has been shown that the funds cannot be proceeds of any legitimate collateral, the Litigation Funders have likewise failed to independently perfect their interest in funds located in a bank account.

33. The Debtor/Plaintiff requests the Court to declare that the Litigation Funders have no independent interest in any funds on deposit as collateral or as proceeds of collateral.

34. The Debtor/Plaintiff is entitled to its reasonable attorney fees and costs in prosecuting this declaratory judgment action.

### CAUSE OF ACTION NO. 3: AVOIDANCE OF UNPERFECTED SECURITY INTERESTS

35. Plaintiff incorporates the factual allegations contained in paragraph 1-9, 11, 12, 16-20, and 23-30 into Cause of Action No. 3.

36. To the extent the Litigation Funders assert an interest in the Debtor's bank account, the interests are unperfected. See Tex. Bus. & Comm. Code §§ 9.327 & 9.104.

37. Holding an unperfected interest in the bank accounts, the Debtor is entitled to avoid that interest. See 11 U.S.C. § 544.

### CAUSE OF ACTION NO. 4: OBJECTION TO PROOFS OF CLAIM

38. Plaintiff incorporates the factual allegations contained paragraphs 1-9, 11, 12, 16-20, 23-30 and 36-37.

39. Debtor/Plaintiff objects to the claims filed by the Litigation Funders – Claim #50 and Claim #51 for the reason stated in Causes of Action No.'s 1-3 of this Complaint.

40. Debtor/Plaintiff requests the Court to disallow the claims of the Litigation Funders, or in the alternative allow the claims as general unsecured claims.

**WHEREFORE**, Plaintiffs request the Court to enter judgment against the Litigation Funders, finding that the loan agreements are illegal and unenforceable, alternatively declaring the Litigation Funders are unsecured, for Plaintiffs reasonable attorney fees and costs and such other and further relief, at law or in equity, to which the Plaintiff may be justly entitled.

Dated:  October 6, 2024.

COMPLAINT

        Respectfully submitted,

        By: */s/ Johnie Patterson*
        Johnie Patterson
        SBN#15601700
        Miriam Goott
        SBN#24048846
        COUNSEL FOR PLAINTIFF

OF COUNSEL:
WALKER & PATTERSON, P.C.
P.O. Box 61301
Houston, TX 77208-1301
(713) 956-5577
(713) 956-5570 (fax)
**jjp@walkerandpatterson.com**