**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| In re: | § | Chapter 11 |
| | § | |
| **MMA LAW FIRM, PLLC,** | § | |
| | § | Case No. 24-31596 |
| Debtor. | § | |

**EQUAL ACCESS JUSTICE FUND, LP AND EAJF ESQ FUND, LP'S**
**BRIEF REGARDING THE ATTORNEY-CLIENT PRIVILEGE**

Equal Access Justice Fund, LP and EAJF ESQ Fund, LP (collectively, "**the Funds**") file this Brief in support of the Attorney-Client Privilege as to communications between (i) the Funds' counsel and (ii) the Funds' representatives.

## I.   INTRODUCTION

1.   During a hearing relating to Debtor's improper use of cash collateral to pay a pre-petition tax debt without first receiving EAJF's consent and a prior Court Order, Debtor's counsel asserted that the Funds could not claim an attorney-client privilege in communications between the Funds' counsel and the Funds' corporate representative, David Childers. Debtor's counsel argued that the attorney-client privilege does not apply to communications with the Funds' corporate representative, David Childers, because he is not an employee of the Funds. Debtor's counsel also argued that because the Funds do not have any employees, that fact prevented any attorney-client privilege from existing because the individuals acting for the Funds were essentially "strangers" to the Funds. In fact, Debtor's counsel likened the situation to "Exxon's counsel saying a subcontractor on a job is covered by the attorney-client privilege." Debtor's assertions are wrong, the analogy is inapplicable to the facts of this case, and the attorney-client privilege attaches to communications between the Funds and their representatives.

2. The Funds are special purpose entities created for the purpose of making loans to law firms, and have made certain loans to Debtor. The Funds, by their nature, have no employees but nonetheless act through designated representatives/agents for the Funds. Communications with such representatives and agents are subject to and covered by the attorney-client privilege under both Texas state law and federal procedural law. This is confirmed by the rules applicable to the privilege and interpretive jurisprudence.

3. No Texas or federal case law exists in the last three decades rejecting the existence of an attorney-client privilege in any similar situation as urged by Debtor. Nor has Debtor cited any case law supporting Debtor's argument that an entity must have employees for any privilege to arise.

4. Such a contention defies logic and common sense. Numerous corporate entities in Texas exist and function without employees, through non-employee owners or designated agents—such as a management company. It is abundantly clear that Texas and federal law afford such entities a separate legal existence with the rights and privileges available to an individual citizen and an entity possessing direct employees. Debtor's proposition would foreclose all such entities from receiving the protections of the attorney-client privilege for no other reason than they chose to conduct their operations without employees. This is neither the law in Texas nor under federal common law. Debtor's arguments are wrong, and if accepted would deprive the Funds of the fundamental right to maintain the privilege with their legal counsel.

5. Mr. Childers and Mr. Blank, through their roles at B.E. Blank & Co, LP ("B.E. Blank") (i) have managerial capacity over the Funds; (ii) are responsible for making decisions on the Funds' behalf; and (iii) in that capacity, communicate with outside counsel and seek advice from counsel representing the Funds' interests in the Debtor's case and other legal matters. This

fact does not in any way ameliorate the privileged nature of those communications. In fact, the opposite is true. Mr. Childers and Mr. Blank fulfill their fiduciary duties to the Funds by retaining counsel to represent the Funds' interests. Their interactions with counsel which occur in that capacity are sacrosanct, and clearly protected by the expansive nature of the attorney-client privilege.

## II. ARGUMENT AND AUTHORITIES

### A. Regardless of whether Texas state or federal privilege law governs, the attorney-client privilege exists in this circumstance.

6. Federal Rule of Evidence 501 states that federal common law generally governs a claim of privilege, except that "in a civil case, state law governs privilege regarding a claim or defense for which state law supplies the rule of decision." Fed. R. Evid. 501. Under this rule state privilege law applies in civil matters in federal court solely on the basis of diversity jurisdiction. But when a civil matter involves both state and federal claims, which law applies the applicable privilege law becomes more complicated. *Alpert v. Riley*, 2009 WL 1226767, * 9 (S.D. Tex. April 30, 2009); *See also Jaffee v. Redmond*, 518 U.S. 1, 15, n.15 (1996) (noting the disagreement concerning the proper rule in cases in which both federal and state claims are asserted in federal court, but declining to address the issue because it was not necessary). The application of privilege law similarly varies in bankruptcy court depending on the issue to which the privilege applies. *In Re Royce Homes*, 449 B.R. 709, 722 (Bankr. S.D. Tex. March 11, 2011).

7. A determination of which privilege law applies in this case depends on the specific nature of the privilege challenge asserted by Debtor which, as of the date of this brief, has not been provided in writing. There are many issues between Debtor and the Funds for which Texas state law applies the rule of decision. and Texas law protects the Funds' communications.

3

8. Debtor filed a Complaint initiating Adversary Proceeding No. 24-03208 in this Court seeking (1) to void its Loan Agreements with EAJF, (2) a declaration as to the extent of EAJF's lien interests, including the type of collateral subject to such lien interests, (3) to avoid EAJF's lien interests in the Debtor's accounts, and (4) disallowance of EAJF's claims. (Adversary Proceeding No. 24-03208, ECF No. 1.) Debtor's claims in that Adversary Proceeding expressly (and necessarily) apply Texas state law. Thus, Texas privilege law applies to any relevant communications.[1]

9. The case law confirming that the attorney-client privilege protects the Funds' communications among its non-employee representatives and legal counsel is consistent regardless of whether state or federal law is applied.

**B. The express language of Texas Rule of Evidence 503 protects as privileged communications with a "client representative" even if the "client representative" is not a party or an employee of a party.**

10. Texas law broadly includes within the attorney-client privilege the following types of communications made for the purpose of facilitating the rendition of professional legal services:

(A) between the client *or the client's representative and the client's lawyer* or the lawyer's representative;

(B) between the client's lawyer and the lawyer's representative;

(C) by the client, the client's representative, the client's lawyer, or the lawyer's representative to a lawyer representing another party in a pending action or that lawyer's representative, if the communications concern a matter of common interest in the pending action;

(D) *between the client's representatives* or between the client and the client's representative; or

(E) among lawyers and their representatives representing the same client.

---

[1] The nature of Debtor's challenge to the privilege determines which privilege rule might apply to a particular communication. But Debtor has not challenged the privilege relating to any particular communication. Instead, Debtor has (to date) vaguely asserted that no privilege is applicable because the Funds have no employees.

Tex. R. Evid. 503(b)(1) (emphasis added).

11. A "client's representative" is specifically defined as any person: (1) who has authority to obtain professional legal services on behalf of the client; (2) who has authority to act on legal advice rendered to the client; or (3) any other person who, for the purpose of facilitating the rendition of professional legal services to the client, makes or receives a confidential communication while acting within the scope of employment for the client. *Id.* There is nothing in the Rule 503(b)(1) that requires that the client representative be an employee if the client is a legal entity. And nothing in the rule limits the scope of who can serve as a "client representative" if the client is a legal entity. Indeed, 503(b)(1) speaks of "client representatives" while the word "employee" is absent from its terms. Thus, it should come as no surprise that case law interpreting Rule 503(b)(1) has consistently held that the attorney-client privilege exists and remains in full force with respect to communications made to and from non-employee client representatives and the attorneys representing the entities themselves. Cases are legion on this point.

12. *In re Stephens Inc.*, 579 S.W.3d 438, 441 (Tex. App.—San Antonio 2019, orig. proceeding), is a case in point. Stephens Inc. was an investment banker hired by Consert Inc. to assist Consert with additional financing and later finding a purchaser for the company. Stephens and its legal counsel engaged in written communications with counsel for Consert related to its investment banking services. *Id.* In a later lawsuit by former Consert shareholders, the trial court compelled production of these communications over privilege objections. *Id.* at 441-42. The *Stephens* court acknowledged that neither Stephens nor its counsel fell within the description of "client representative" in Rule 503(a)(2)(A) because they were not expressly authorized to obtain legal services for Consert or act for Consert on the advice. *Id*. at 446. Nevertheless, the Texas

Appellate Court in *Stephens* held that the communications were privileged because Stephens and its counsel ***did*** fall within Rule 503(a)(2)(B) which broadly defines who qualifies as a "client representative." *Id.* at 446-47.

13. Similar to the argument Debtor makes here, the plaintiffs in *Stephens* argued that the attorney-client privilege did not protect the communications because Stephens and its counsel were not employees of Consert. *Id.* The *Stephens* court squarely rejected this argument as being irrelevant to application of the privilege, holding that Stephens and its counsel qualified as "client representatives" because they provided uncontroverted affidavits establishing that the communications were made by Stephens and its counsel to facilitate the rendition of legal services to Consert. *Id.* at 446-47. As a result, the court ordered the trial court to vacate its order compelling the production of the privileged communications. *Id.*

14. The Dallas Court of Appeals reached a similar result in *In re Segner*, a case ordering a trial court to vacate an order compelling production of privilege communications. *In re Segner*, 441 S.W.3d 409, 412 (Tex. App.—Dallas 2013, orig. proceeding.) In *Segner*, the relator was a trustee of a liquidating trust formed in bankruptcy. *Id.* at 410. Carter was an independent contractor that did work for the accounting firm in which the trustee was a member. *Id.* at 411. The trustee separately hired Carter to supervise trust employees and assist the trust's attorneys. *Id.* Carter was also authorized to obtain legal services and act on advice from counsel on behalf of the Trust. *Id.* A defendant sued by the trustee sought to compel communications between Carter and the trustee over a privilege objection, arguing that there was no privilege because Carter was not an employee of the Trust. *Id.* The *Segner* court rejected this argument because Carter qualified as an attorney's representative under multiple subsections of Rule 503. *Id.*

15. Federal courts applying Texas law have reached the same conclusion. In *Mckinney/Pearl Restaurant Partners, L.P. v Metro Life Insurance,* the case involved a landlord-tenant dispute between the plaintiff restaurant tenant, Sambuca, and its landlord. *McKinney/Pearl Rest. Partners, L.P. v. Metro. Life Ins. Co.*, 3:14-CV-2498-B, 2016 WL 2997744, at *2 (N.D. Tex. May 25, 2016). The defendants challenged Sambuca's assertion of the attorney-client privilege in relation to communications between a minority owner, employees of the minority owner's separate company, and Sambuca's counsel. *Id.* at 11. The court in *McKinney* held that the privilege applied to those communications despite none of the participants being employees of Sambuca because the participants were *agents authorized to act* for Sambuca with regard to the representation and qualified as "client representatives" under Rule 503(a)(2). *Id.* at *11-12. The same is true of Mr. Childers', Mr. Blank's, and other B.E. Blank employees' roles as "client representative" for the Funds.

16. As another example, the United States District Court in the Northern District of Texas applying Texas law upheld a magistrate judge's conclusion that the attorney-client privilege applied to communications between plaintiffs' counsel and the non-employee son of the plaintiffs' owner. *National Converting & Fulfillment Corp. v. Bankers Trust Corp.*, 134 F. Supp. 2d 804, 806 (N.D. Tex. 2001). In *National Converting,* the court expressly rejected the argument that the privilege could not apply because the son was not an employee of plaintiffs. *Id.* Similarly, the United States District Court in the Western District of Texas upheld the assertion of attorney-client privilege by a defendant for communications with a non-employee insurance broker because the defendant established the broker was a "client representative" as defined under Rule 503. *Homeland Ins. Co. of New York v. Clinical Pathology Laboratories, Inc.*, 643 F.Supp.3d 675, 682-83 (W.D. Tex. 2022).

17. As established by the express language of Texas Rule of Evidence 503 and Texas interpretive jurisprudence, an individual or entity is not required to be an actual party to litigation or an employee of a party for their communications with an attorney to be privileged. The individual or entity need only fit within one or more subsections of the broad definition of "client representative" in Rule 503 for those communications to fall within the protections of the attorney-client privilege.

18. Here, specifically as to Mr. Childers, it is beyond dispute that he served as an authorized agent and representative of the Funds. He is charged with representing the Funds' interests. The Funds act through Mr. Childers, Mr. Blank, and others authorized by B.E. Blank and through no one else. As the Funds' Portfolio Manager, Mr. Childers qualifies as a representative of the Funds which is clearly a person entitled to maintain privilege with the attorneys representing the Funds' interests.

**C. The federal common law attorney-client privilege protects communications with client representatives regardless of whether they are a party or employee of a party, including an investment manager like B.E. Blank.**

19. The United States Supreme Court takes a very liberal view of the federal common law attorney-client privilege:

> Its purpose is to encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and administration of justice. The privilege recognizes that sound legal advice or advocacy serves public ends and that such advice or advocacy depends upon the lawyer's being fully informed by the client.

*Upjohn Co. v. U.S.*, 449 U.S. 383, 389 (1981). Based on the nature of the privilege, *Upjohn* rejected the "control group" test previously adopted by many federal courts. *Id.* at 390-91. The "control group" test had limited application of the attorney-client privilege to communications with individuals within an entity that had sufficient control or played a part in the process of acting on

8

the advice an attorney might give. *Id.* at 390. *Upjohn* rejected that limited approach to the privilege in favor of a broader application which covered communications by individuals representing the entity that supplied information to an attorney in relation to the legal services the attorney was providing to the entity. *Id.* at 391-95. That is the case here.

20. Debtor's challenge to the attorney-client privilege appears based on the antiquated "control group" test rejected by *Upjohn*. Debtor's argument is forty years out of date. Contrary to Debtor's outdated argument, where the issue has been addressed, the federal common law attorney-client privilege is largely co-extensive with the Texas rule:

> Consistent with these purposes, the attorney-client privilege is not limited to communications directly between the client and the attorney. Rather, if the purpose of the communication is to facilitate the rendering of legal services by the attorney, the privilege *may also cover communications between the client and his attorney's representative, between the client's representative and the attorney, and between the attorney and his representative*.

*Golden Trade, S.r.L. v. Lee Apparel Co.,* 143 F.R.D. 514, 518 (S.D.N.Y. 1992) (emphasis added).

21. Nothing about the federal common law privilege rule requires a person asserting the privilege to be the direct client or an employee of that client. In fact, like the instant case, federal courts have held that the attorney-client privilege applies to a non-employee investment manager acting on behalf of an entity. These cases require the Court to deny any attempt to intrude upon the attorney-client relationship existing between Mr. Childers in his official capacity as the Funds' Portfolio Manager and the counsel chosen to represent the Funds' interests.

22. The United States District Court case of *Columbus Life Ins. Co. v. Wilmington Tr., N.A.*, 344 F.R.D. 207, 219 (D.N.J. 2023) is illuminating in this context. That Federal Court held that non-employee third parties—company's investment manager and its investment advisor— qualified as the company's agents for purposes of the attorney-client privilege, where they

facilitated the company's communications with counsel by assisting counsel with pre-acquisition due diligence and legal risk analysis.

23. In *Trustees of Elec. Workers Local No. 26 Pension Trust Fund v. Trust Fund Advisors, Inc.*, 266 F.R.D. 1, 8–9, 48 Employee Benefits Cas. (BNA) 2138 (D.D.C. 2010) the Washington, D.C. District Court applied the attorney-client privilege to apply to communications between a pension fund board's counsel and board that were shared with unpaid consultants to the pension fund. The court applied attorney-client privilege protections to those consultants because they had managerial responsibilities and provided guidance to the board as to its fiduciary duties and compliance with laws and regulations in connection with commencement of lawsuit. The Court reasoned that the fact that they were consultants, rather than employees, was irrelevant to the analysis. The Court stated:

> "[t]here is nothing in the 'reason and experience' used in the interpretation of a common law privilege under Federal Rule of Evidence 501 that suggests that extending the privilege to a paid employee but not a consultant is reasonable. The Plan is said to have had no full-time employees, but the uncontradicted record indicates that Porter and Godfrey performed functions that would have been performed by high-level managers with significant responsibilities had the Plan conducted its business in a more traditional corporate setting." As the Court held, "[s]uch arbitrary rules would resurrect the very method that the Supreme Court rejected in *Upjohn* of making the attorney-client privilege a function of uncertain 'tests,' as opposed to applying its purpose to the idiosyncratic facts of each case."

*Id.*

24. In *King Drug Co. of Florence, Inc. v. Cephalon, Inc.*, No. 2:06-CV-1797, 2013 WL 4836752, at *6–7 (E.D. Pa. Sept. 11, 2013), the federal district court applied the attorney-client privilege to outsider *non-employee* consultants performing a role for Cephalon substantially equivalent to that of employees. The court reasoned that focusing on whether the communication to the consultant was kept confidential and made for the purpose of providing or obtaining legal

10

advice is more consistent with the principles articulated by the United States Supreme Court in *Upjohn*. *Id.* "It makes little sense to impose additional requirements for extending the privilege to independent contractors merely because they are not on the corporate payroll." *Id.* "The difference is only one of formality, and does not in itself diminish the need for the attorney and non-lawyer to collaborate to ensure that the corporation is complying with the law." *Id.* "Extending the privilege to a consultant performing a role similar to that of an employee, to the same extent as it applies to a corporate employee, simply 'reflects the reality that 'corporations increasingly conduct their business not merely through regular employees but also through a variety of independent contractors retained for specific purposes.'" *Id.* (*citing In re Flonase*, 879 F.Supp.2d at 460). In light of this precedent, the idea that Childers', Blank's, and other B.E. Blank employees' communications with the Funds' counsel are somehow not privileged cannot be supported. When confronted with the issue, the Eighth Circuit expressly rejected the contention that the attorney-client privilege was limited to only employees of a client, holding that communications involving a nonemployee with a sufficient relationship to the client must be protected by the privilege. *In re Bieter Co.,* 16 F.3d 929, 937-38 (8th Cir. 1994). In *Bieter*, the District Court had concluded that the inclusion in communications of Dennis Klohs, a person who had worked closely with Bieter (a special purpose entity set up to develop a land parcel), had destroyed any privilege because Klohs was not the client or an employee of the actual client. *Id.* at 931. While Klohs was an independent contractor with no formalized relationship to Bieter, he had substantial responsibilities with Bieter's business and extensive interactions with counsel on Bieter's behalf and was viewed by counsel as Beiter's representative. *Id.* at 934. The Eighth Circuit in *Bieter* concluded:

> when applying the attorney-client privilege to a corporation or partnership, it is inappropriate to distinguish between those on the client's payroll and those who are instead, and for whatever reason, employed as independent contractors.

11

*Id.* at 937.

25. Ultimately, *Bieter* held that communications with Klohs were subject to the attorney-client privilege regardless of his non-employee status, and the Eight Circuit ordered the District Court to vacate the order it had entered which compelled disclosure of the privileged documents at issue. *Id.* at 939-41.

26. Similar decisions abound in other federal circuits. *U.S. v. Graf*, 610 F.3d 1148, 1159 (9th Cir. 2010) ("Graf was the company's primary agent in its communications with corporate counsel" and the privilege applied despite his not being an employee of the client company); *In re Qwest Communications International, Inc.*, 450 F.3d 1179, 1185 (10th Cir. 2006) (the focus is not on the formal employee relationship, but whether the communication "is made in confidence of the relationship and under circumstances from which it may reasonably be assumed that the communication will remain in confidence.").

27. The application of the attorney-client privilege is no different, here in the Fifth Circuit, and *Bieter* is cited in support of those decisions. For example, the United States District Court in the Eastern District of Texas held that Al Hurd, an owner of a separate engineering company not employed by the plaintiff was a client representative to which the attorney-client privilege applied, relying upon the Eighth Circuit's analysis in *Bieter*. *Utilities Optimization Group, LLC v. Temple-Inland, Inc.*, No. 1:08-CV-68-TH, 2009 WL 10677585, at *2–3 (E.D. Tex. July 13, 2009).

28. The bankruptcy court in the Northern District of Texas also expressly adopted the privilege standard described in *Bieter* based on its persuasive reasoning. *In re e2 Communications, Inc.*, No. 02-30574-BJH-11, 2006 WL 6510985, at *4 (Bankr. N.D. Tex. June 15, 2006). And, while not expressly referencing *Bieter*, courts in the Southern District of Texas have applied a

similar test. For example, the United States District Court for the Southern District of Texas held that the attorney-client privilege extended to communications between an insurer and insured made to assist counsel in the defense of a claim. *United States v. Hoeffner*, 254 F.R.D. 302, 306 (S.D. Tex. 2008). Similarly, the District Court held that communications made between defendants, insurance brokers, and counsel to facilitate the rendition of legal services were privileged even though the insurance brokers were clearly not employees of the defendants. *In re TETRA Techs., Inc Sec. Litig.* No. 4:08-CV-0965, 2010 WL 1335431, at *5 (S.D. Tex. April 5, 2010).

29. Federal case law uniformly holds that the federal common law attorney-client privilege provides the same extensive protections as with Texas' Rule 503. Under that privilege, an individual or entity is not required to be an actual party to litigation or an employee of a party for their communications to be privileged. The individual or entity need only qualify as a client representative—either as someone that can make or participate in decisions to act on advice of counsel or someone that provides information to facilitate the legal services.

**D. There is no legal or logical basis to limit the attorney-client privilege to clients or employees of clients as alleged by Debtor.**

30. Debtor has alleged that the Funds do not have any attorney-client privilege for communications between their counsel and their representatives because those representatives are not direct employees of the Funds. Aside from such an argument being contrary to well settled law, Debtor offers no rationale for such an artificial limitation in the applicability of the privilege because there is no logical rationale for such a rule.

31. Indeed, the *Beiter* opinion and numerous cases following the *Beiter* analysis present a compellingly persuasive rationale for an expansive definition of "client representative" that does not depend on their being an employee of a litigant. Texas adopts a similarly expansive definition of "client representative" under Rule 503, disregarding employee status. Numerous federal and

13

Texas state court opinions have applied that expansive test to protect non-employee communications under the privilege.

32. The language of Rule 503 and the federal case law extending the attorney-client privilege to "client representatives" who are not direct employees of a party recognize a fact of modern business practices, while the Debtor's position does not. There is nothing special about employee status in relation to the attorney-client privilege. It is common for business entities to operate without any employees. Entities operating as commercial landlords typically have no employees, relying instead on a management company to act as their agent with owner representatives (often employees of entities several layers deep in ownership) to make key decisions. So do hedge funds like the EAJF Funds present here. Entities set up to develop real estate rarely have any employees, relying on development partners, general contractors, and others to act as their agents. Hedge funds like these Funds are set up such that the investment manager makes decisions on behalf of the fund. Despite that fact of modern commercial business, the argument advocated by Debtor would preclude all such entities from receiving the protections of the attorney-client privilege for no other reason than they chose to conduct their operations without employees. These types of entities routinely hire counsel—including bankruptcy counsel—and reasonably expect communications among its human representatives and counsel to be privileged. The rule advocated by Debtor would destroy the privilege protections on which they have relied and which the rule and cases recognize apply.

33. Even in situations where entities have employees, application of the overly restrictive rule advocated by Debtor would create absurd gaps in the privilege. For example, professional service entities—law firms, accounting firms, and even doctor's offices—often have employees but also have key labor contributors and control focused among non-employee partners

or shareholders due to tax advantages. Under Debtor's theory, if those non-employee partners communicate with their lawyers about a lawsuit or bankruptcy proceeding, then those communications would not be privileged because the partners are not employees. The Court should not ignore such absurd implications.

**E. The Funds have sufficient evidence to support the existence of the privilege with regard to the Funds' representatives.**

34. All that is required for application of the privilege is evidence establishing a *prima facie* case that the privilege exists. *In re Living Centers of Texas, Inc.,* 175 S.W.3d 253, 261 (Tex. 2005) The proponent must provide sufficient facts by way of detailed affidavits or other evidence to enable the court to determine whether the privilege exists. *Id. See* also *Caruso v. The Coleman Co.*, 1995 WL 384602 at *1 (E.D.Pa. Jun.22, 1995)

35. B.E. Blank and the individuals who act on behalf of B.E. Blank in connection with the Funds' communications with counsel—including specifically David Childers, Joseph Fleming, and Benjamin Blank—all meet the definition of a "client representative" to be entitled to the attorney-client privilege for their communications with counsel.

36. The Funds are special purpose entities set up for the purpose of making loans to law firms, and have made certain loans to the Debtor. The Funds have no employees. (Childers Decl., Ex. A ¶ 3; Blank Decl., Ex. B ¶ 3). Instead, B.E. Blank performs a role for the Funds which is functionally equivalent to that of employees. All actions and decisions on behalf of the Funds, including asset management decisions, are made by B.E. Blank, by and through Mr. Childers, Mr. Fleming, and Mr. Blank. (Childers Decl., Ex. A ¶ 3; Blank Decl., Ex. B ¶ 3). Indeed, aside from the formal aspects of the relationship between the Funds and B.E. Blank, the role and actions of Mr. Childers, Mr. Blank, and Mr. Fleming are indistinguishable from that of direct employees of the Funds. The Funds specifically act through B.E. Blank who is authorized to and does, in fact,

make all decisions on behalf of the Funds including all management, oversight, day-day decisions, and operational decisions. (*Id.* ¶ 3). Further, one of the duties of B.E. Blank is participating in the communications with legal counsel for the Funds regarding legal decisions and advice on behalf of the Funds in the bankruptcy proceeding, the adversary proceeding, and all litigation matters. (*Id.* ¶ 3). The relationship for demonstrative purposes is as follows:



37. Mr. Childers is an employee and the Portfolio Manager for B.E. Blank (Childers Decl., Ex. A ¶ 2; Childers Depo, Ex. C, p. 22:12-19.). Each of the Funds have Investment Management Agreements between themselves and B.E. Blank, appointing B.E. Blank as their Investment Manager. (Childers Decl., Ex. A ¶ 4; Mgmt Agreements, Ex. D**.)** The Funds expressly delegated to the Investment Manager "responsibility for the management, operation and control of the investment and lending activities . . ." (Mgmt Agreement, Ex. D at 1.)

38. Mr. Childers reports to Joseph Fleming, the Chief Operating Officer and Chief Financial Officer of B.E. Blank. (Childers Decl., Ex. A ¶ 5; Childers Depo, Ex. C, 46:24 -47:3.). Mr. Fleming reports to Benjamin Blank, the Chief Investment Officer of BE Blank. (Childers Decl., Ex. A ¶ 5; Childers Depo, Ex. C, 47:6-7). Mr. Fleming, Mr. Blank, and Mr. Childers are the core decision making group with regard to all asset management functions and decisions on behalf

of the Funds. (Childers Decl., Ex. A ¶ 5). B.E. Blank is authorized to perform and does perform all management activities on behalf of the Funds that would ordinarily be performed by a company's officers or employees. (*Id*.). These management activities on behalf of the Funds are carried out and performed by the individuals who are officers or employees of B.E. Blank, including Mr. Childers, Mr. Blank, and Mr. Fleming. (*Id*.). This includes obtaining professional legal services for the Funds, communicating with counsel for the benefit of the Funds, seeking legal advice for the Funds, and acting on advice from counsel for the benefit of the Funds. (*Id*.).

39. B.E. Blank retained Spencer Fane LLP to represent the Funds in relation to several matters involving their loans to Debtor, including this bankruptcy proceeding, the related adversary proceeding, and other lawsuits. (Childers Decl, Ex. A ¶ 6; Engagement Agreements, Ex. E). All communications between Mr. Childers, Mr. Fleming, Mr. Blank, and any other B.E. Blank employees and the Funds' attorneys at Spencer Fane have been for the purpose of facilitating legal services by Spencer Fane attorneys to the Funds. (Childers Decl, Ex. A ¶ 6). Mr. Childers, Mr. Fleming, and Mr. Blank are authorized to collectively make decisions for and direct the litigation activities and legal advice for and on behalf of the Funds through B.E. Blank. (Childers Decl, Ex. A ¶ 6). These individuals believed and expected their communications to be confidential. (*Id.*)

40. These facts are more than sufficient to establish that B.E. Blank, through Mr. Childers, Mr. Fleming, Mr. Blank, and any other employees and agents of B.E. Blank meet the definition of "client representative" for purposes of the attorney-client privilege under both Texas and federal law and the cases interpreting scope and persons covered by the attorney-client privilege. Similar evidence was sufficient to establish the privilege under the cases discussed by the Funds above. It is sufficient to establish the privilege here.

## CONCLUSION

41. Under both Texas and federal law, the attorney-client privilege specifically applies to communications with client representatives like Mr. Childers and Mr. Blank, regardless of whether they serve as direct employees of the client. As demonstrated above, B.E. Blank and its employees who serve as the Funds' authorized representatives and agents, meet the definition of a client representative under well-established law. The Funds have established that B.E. Blank has authority to obtain professional legal services for the Funds, communicate with counsel for the benefit of the Funds, seek legal advice for the Funds, and act on advice from counsel for the benefit of the Funds. Thus, the communications between B.E. Blank's employees and its agents and legal counsel such as Spencer Fane are protected by the attorney-client privilege.

Respectfully submitted,

**SPENCER FANE LLP**

 By: */s/ Misty A. Segura*
MISTY A. SEGURA
TX Bar No. 24033174
Fed. No. 30751
3040 Post Oak Blvd., Ste. 1400
Houston, TX 77056
Office: (713) 212-2643
E-mail: msegura@spencerfane.com

*Attorneys for Equal Access Justice Fund, LP and EAJF ESQ Fund, LP*

**CERTIFICATE OF SERVICE**

I certify that on November 6, 2024, a true and correct copy of the foregoing Brief was served by electronic service via the Court's ECF filing system on those parties registered to receive service and by electronic mail as indicated below:

*Counsel for United States Trustee –*
*via E-mail*
Andrew Jimenez
Trial Attorney
United States Trustee Program
515 Rusk Avenue, Suite 3516
Houston, TX 77002
andrew.jimenez@usdoj.gov

*Counsel for the Debtor - via E-mail*
Miriam Goott
Johnie J. Patterson
Walker & Patterson, PC
P.O. Box 61301
Houston, TX 77208
mgoott@walkerandpatterson.com
jjp@walkerandpatterson.com

*Counsel for the Official Committee of Unsecured Creditors*
*via E-mail*
Nick Lawson
Avi Moshenberg
Lawson & Moshenberg PLLC
801 Travis St.
Ste. 2101 # 838
Houston, TX 77002
nick.lawson@lmbusinesslaw.com
avi.moshenberg@lmbusinesslaw.com

Sunni P. Bellville
James V. Drew
Otterbourg, PC
230 Park Avenue
New York, NY 10169
sbeville@otterbourg.com
jdrew@otterbourg.com

                                                */s/ Misty A. Segura*
                                                MISTY A. SEGURA