IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| In re: | § | Chapter 11 |
| | § | |
| **MMA LAW FIRM, PLLC,** | § | |
| | § | Case No. 24-31596 |
| Debtor. | § | |

***AMENDED* MOTION FOR APPOINTMENT OF A CHAPTER 11 TRUSTEE
PURSUANT TO 11 U.S.C. § 1104**

**THIS MOTION SEEKS AN ORDER THAT MAY ADVERSELY AFFECT YOU. IF YOU OPPOSE THE MOTION, YOU SHOULD IMMEDIATELY CONTACT THE MOVING PARTY TO RESOLVE THE DISPUTE. IF YOU AND THE MOVING PARTY CANNOT AGREE, YOU MUST FILE A RESPONSE AND SEND A COPY TO THE MOVING PARTY. YOU MUST FILE AND SERVE YOUR RESPONSE WITHIN 21 DAYS OF THE DATE THIS WAS SERVED ON YOU. YOUR RESPONSE MUST STATE WHY THE MOTION SHOULD NOT BE GRANTED. IF YOU DO NOT FILE A TIMELY RESPONSE, THE RELIEF MAY BE GRANTED WITHOUT FURTHER NOTICE TO YOU. IF YOU OPPOSE THE MOTION AND HAVE NOT REACHED AN AGREEMENT, YOU MUST ATTEND THE HEARING. UNLESS THE PARTIES AGREE OTHERWISE, THE COURT MAY CONSIDER EVIDENCE AT THE HEARING AND MAY DECIDE THE MOTION AT THE HEARING.**

**REPRESENTED PARTIES SHOULD ACT THROUGH THEIR ATTORNEY.**

**TO THE HONORABLE EDUARDO V. RODRIGUEZ,
CHIEF UNITED STATES BANKRUPTCY JUDGE:**

Secured Prepetition Lenders Equal Access Justice Fund, LP and EAJF ESQ Fund, LP (collectively, "**EAJF**"), by and through their attorneys, hereby move this Court for an Order appointing a Chapter 11 Trustee for the Debtor's estate pursuant to 11 U.S.C. § 1104.

### I.    SUMMARY OF THE ARGUMENT

1.    EAJF requests that pursuant to 11 U.S.C. § 1104(a), the Court enter an order appointing a chapter 11 trustee to oversee and operate the Debtor. The facts and chronology reflect

the Debtor is owned and operated by John Zachary Moseley ("Moseley"). Moseley is a Texas licensed attorney. Moseley has been suspended by the Louisiana Federal Courts based on his operation of the Debtor, jeopardizing the Debtor's ability to operate. Postpetition, the Debtor has failed to comply with the Operating Guidelines established by the Office of the United States Trustee, evidencing its mismanagement, and it does not appear the Debtor is capable of reorganizing. EAJF lacks confidence that Moseley can carry out his duties for the Debtor as a debtor-in-possession.

2. Pre-petition, Moseley violated a court order and a stipulated injunction, by transferring the sum of $50,000 to himself on or about February 20, 2024. Further, on the eve of the petition date, Moseley also withdrew an additional $54,518.09 from the Debtor's coffers by virtue of an apparent fraudulent transfer, all at a time when he was actively seeking counsel to file this case. Since filing its case, the Debtor has not generated any revenue from new cases. It is subsisting on the cash collateral of EAJF but cannot replace the receivables it is using to fund operations with new cash collateral.

3. The Debtor is not trusted by the secured creditors such as Movants, and Moseley's behavior bolsters that lack of trust. The misdeeds, dishonesty, incompetence, and gross mismanagement of the Debtor by its current management, Moseley, coupled with the acrimony and general rancor which exists between the Debtor and the secured creditor body, require the appointment of a Chapter 11 Trustee. Nothing less is required in order to preserve the integrity of the bankruptcy process and to ensure that the interests of creditors are served.

## II. BACKGROUND

### A. The Debtor's Bankruptcy Case

4. The MMA Law Firm, PLLC ("**Debtor**") filed its voluntary petition for relief under Chapter 11 ("**Case**") on April 9, 2024 ("**Petition Date**"). The Debtor, a law firm, remains a debtor-in-possession.

5. The Committee of Unsecured Creditors was formed on April 30, 2024, and has since retained counsel.

6. EAJF are first lienholders on the Debtor's assets—which include but are not limited to, proceeds from accounts receivable for fees earned through its docket of contingency fee litigation (both mass tort and other individual cases).

7. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This Motion is a core proceeding pursuant to 28 U.S.C. §§ 157(b)(2)(A) and (O). The statutory predicate for the relief requested in the Motion is found in 11 U.S.C. § 1104.

### B. Equal Access Justice Fund LP's Senior Secured Loans to Debtor

8. Prior to the Petition Date, Equal Access Justice Fund LP made loans to the Debtor pursuant to a Loan Agreement, Note, Security Agreement, and amendments made thereto, as follows:

- Loan Agreement dated September 30, 2021;
- Note dated September 30, 2021;
- Security Agreement dated September 30, 2021;
- Amended and Restated Loan Agreement dated March 10, 2022;
- Amended and Restated Note dated March 10, 2022;
- Security Agreement dated March 10, 2022;

- Amendment to Loan Agreement dated June 10, 2022;

- Amendment No. 2 to Amended and Restated Loan Agreement dated November 10, 2022;

- Second Amended and Restated Note dated November 10, 2022; and

- Security Agreement dated November 10, 2022.

These agreements are referred to collectively as the "**EAJF Loan Agreement.**"

9. Pursuant to the EAJF Loan Agreement, Equal Access Justice Fund LP loaned to the Debtor a total of $15,000,000.00.

### C.     EAJF ESQ Fund LP's Senior Secured Loans to Debtor

10. Prior to the Petition Date, EAJF ESQ Fund LP made loans to the Debtor pursuant to a Loan Agreement, Note, Security Agreement, and amendments made thereto, as follows:

- Loan Agreement dated as of June 10, 2022;
- Note dated June 10, 2022;
- Security Agreement dated June 10, 2022;
- Amendment No. 1 to Loan Agreement;
- Amended and Restated Note dated October 7, 2022; and
- Amendment No. 1 to Loan Agreement dated October 7, 2022.

These agreements are referred to collectively as the "**ESQ Loan Agreement**" and together, the EAJF Loan Agreement and the ESQ Loan Agreement are jointly referred to as the "Loan Agreements."

11. Pursuant to the ESQ Loan Agreement, EAJF ESQ Fund LP loaned a total of $15,000,000.00 to the Debtor.

4

**D.     The Debtor's Defaults**

12.     Debtor is in default and has breached both Loan Agreements. As of March 15, 2024, the Debtor owed $17,755,425.64 on the EAJF Loan Agreement and $19,052,550.00 on the ESQ Loan Agreement.

**E.     EAJF's Liens**

13.     Pursuant to Section 10.1 of the EAJF Loan Agreement and the ESQ Loan Agreement, the Obligations of the Debtor as Borrower "shall be secured by valid, perfected, and enforceable Liens on all right, title, and interest of the Borrower in all of its real property, personal property, and fixtures, including all of the Law Firm Proceeds of all Cases, whether now owned or hereafter acquired, and all proceeds thereof, but excluding any Excluded Property." (EAJF Loan Agreement, ¶10.1).  The Debtor further acknowledged and agreed that the Liens on Collateral shall be granted to EAJF as Lenders and shall be valid and perfected priority Liens.

14.     The Debtor authorized EAJF as Lenders to file UCC-1 financing statements to establish and perfect their liens on all of Debtor's real property, personal property, and fixtures, including all Law Firm Proceeds of all Cases. EAJF perfected their security interests in all accounts, income, receipts, revenue, and other assets described in UCC Financing Statements and amendments to same filed of record with the Texas and Colorado Secretaries of State as to the Debtor. As a result, EAJF possesses valid liens on the contingent interest/attorneys' fees contractually agreed to and/or earned by the Debtor, resulting from, arising out of, or related to the Collateral, including Law Firm Proceeds from Cases for any lawsuits and client settlements to which the Debtor is entitled by virtue of its engagement and fee agreements with clients, referral firms, and co-counsel firms.

15. The Debtor has been in Chapter 11 since April 9, 2024, and has made no payments to Movants post-petition.

**F.     The Pre-petition Litigation**

16. On September 1, 2023, as a result of the Debtor's default and breaches of the respective Loan Agreements, EAJF commenced a lawsuit styled Cause No. 2023-59211 in the 80th Judicial District Court of Harris County, Texas against the Debtor and Moseley (the "**Harris County Suit**").  In the Harris County Suit, EAJF sought judgment for the indebtedness due on the Loan Agreements and related guarantees, which at the time was in the principal amounts of $17,755,425.64 and $19,052,550.00.

17. On December 22, 2023, the court presiding over the Harris County Suit entered a Temporary Restraining Order against the Debtor restraining it from, among other things, transferring, spending, or assigning the Loan Collateral, and it further required the Debtor to deposit into its Operating Account (and not spend or withdraw without approval of Movants) all monies comprising the Loan Collateral. On January 11, 2024, an Agreed Temporary Injunction was entered in favor of EAJF ("**Agreed Injunction**").  Copies of the Agreed Injunction and the Temporary Restraining Order are attached hereto as **Exhibits A and B**.

18. In the Agreed Injunction, the Debtor agreed, in part that (i) Movants "hold a duly perfected security interest" in the Debtor's "litigation matters and other assets that are properly collateralized"; and that (ii) Moseley and the Debtor's actions have resulted in the forfeiture of some fees that are a part of Movant's collateral. See Exhibit B.

**G.     The 2024 Moseley Transfers.**

19. After the Agreed Injunction was entered, and without Movants' knowledge or the court's permission, Moseley clandestinely withdrew the sum of $50,000 from the Debtor's bank

6

accounts on February 20, 2024. (Statement of Financial Affairs, Docket No. 14, at pg. 4). The Agreed Injunction terminated on March 31, 2024. On April 3, 2024, days before the instant case was filed, Moseley further seized an additional $54,518.09 from the Debtor. (Statement of Financial Affairs, Docket No. 14, at pg. 4).

20. Moseley further violated the Agreed Injunction by diverting no less than $32,976.00 to James McClenny, his former partner and former part owner of the Debtor, so that James McClenny could pay an American Express card payment plan. *Id.*, at p. 4. Part 4.5 of the Statement of Financial Affairs further indicates a 2020 Land Rover was given to Mr. McClenny, but the dates and rationale for that transfer were left blank, and it is unknown whether that transfer occurred during the time the Agreed Injunction was in place. *Id.*, at p. 5.

**H.     Disciplinary Actions against Moseley and the Debtor.**

21. Moseley's pre-petition actions have caused the Debtor to be restricted from doing business in several jurisdictions, and he is the subject of multiple investigations and disciplinary actions, causing immense damage to the Debtor. Indeed, at the Debtor's 11 U.S.C. § 341(a) Meeting ("**341 Meeting**"), Moseley testified that the Debtor used to have over 250 employees. As a result of the mismanagement and malfeasance of the Debtor, most employees fled, Moseley is the only attorney employed by the Debtor, and there are only seven other employees remaining with the Debtor.

22. Moseley further testified at the 341 Meeting, and the Debtor has represented numerous times throughout its case, that it has no professional liability insurance. In part, the Debtor has been suspended from doing business in Louisiana Federal District Court. Moseley astonishingly testified that although the matter was on appeal (recently remanded on June 7, 2024),

he had not bothered to read the orders of suspension leading to that appeal. The idea that a licensed attorney would not review disciplinary orders issued against him is jarring.

23. There exists a laundry list of findings entered by the United States District Court and a governmental agency finding that Moseley engaged in misconduct while managing the Debtor which has destroyed the Debtor's reputation, and has resulted in administrative or court restrictions upon the Debtor and Moseley's ability to practice law, and that list includes, without limitation, the following:

- On February 17, 2023, the Louisiana Department of Insurance issued an order which recited, in pertinent part, that (i) on February 13, 2023, and in response to Orders issued by the Honorable Michael B. North, the Debtor admitted to 856 misrepresentations to Louisiana insurers that MMA was retained by the insureds/homeowners, when in fact it did not represent those insureds/homeowners relative to claims for payment and benefits under insurance policies; (ii) in one of the 856 files, wherein the Debtor admitted to misrepresenting themselves to have been retained by insureds Michael and Holly Caffarel, in relation to a claim for benefits following Hurricane Laura, the LDI has learned via a complaint filed by counsel retained by the Caffarels that the Caffarels only learned of the fraudulent claim representation when Chase Bank, the mortgage holder and listed payee on the insurance proceeds settlement check, endorsed the check for damages sustained from Hurricane Laura and sent the check to the Caffarel; (iii) in a separate admission in response to the Order issued by Judge North following a February 1, 2023 hearing, the Debtor admitted to the Court that it had settled nine (9) claims while it did not represent the insureds connected to those claims; and (iv) the Insurance Commissioner, based on the facts presented, found McClenny Moseley & Associates, PLLC, William Huye III, John Moseley and James McClenny in violation of multiple provisions of the Louisiana Insurance Code (Title 22, specifically La. R.S. 22:1924(A)(1)(a), and (2)(a) and (c) as defined by La. R.S. 22:1923). Its actions were declared as unfair trade practices under La. R.S. 22:1964 (12) and (13).

- May 1, 2023, Cease and Desist Order and Notice of Fine, issued to the Debtor by the Louisiana Department of Insurance, wherein it stated the LDI has evidence that the Debtor and Moseley "participated in a fraudulent scheme and/or trade practice constituting unfair methods of competition and unfair or deceptive acts and practices in this State within the business of insurance." (C&D Order, ¶ 3).

- Order Suspending the Debtor, Moseley, and other of the Debtor's attorneys, issued unanimously from "the Article III Judges of the Western District of Louisiana." The suspension (originally for a ninety-day time period) was extended to one year on June 8, 2023.

- Disgorgement of all fees pertaining to suspension of all attorneys at the Debtor from practicing in the United States District Court for the Western District of Louisiana.[1]

24. In part, the Debtor filed roughly 1,572 cases in Louisiana District Court on the eve of the statute of limitations with respect to alleged personal injury claims which arose as a result of hurricane damages. Moseley videoed himself and others at the Debtor and posted the video on YouTube, claiming and celebrating that they allegedly "broke the system" by filing all of those cases on one day.

I. **Post-petition (and other) Failures.**

25. Moseley has not fulfilled his duties to the Debtor, the Court, or the estate prior to and since he caused this case to be filed. In this regard, and among other items set forth above:

- On May 10, 2024, The Department of Treasury – Internal Revenue Service filed Claim No. 7. The claim is estimated at $4,960,406.62. The Claim is estimated because the Debtor has not filed its 2023 corporate tax return and had not filed either or both of its FICA and FUTA tax returns for the third and fourth quarters of 2023, or for the first quarter of 2024. The claim also included a prospective claim for the second quarter of 2024.

- There is no evidence the Debtor has filed post-petition tax returns or paid any post-petition payroll taxes to date;

- The Debtor lacks insurance;

- The Debtor has not complied with the United States Trustee Operating Guidelines and testified at the 341 Meeting he had not yet read them;

- It failed to include in its April 2024, Monthly Operating Report ("**MOR**") any details pertaining to the funds in its various IOLTA Accounts, and the MOR further

---

[1] Case No. 23-30670; *McClenny Moseley & Associates, P.L.L.C.; J. Zachary Moseley*; In the United States Court of Appeals for the Fifth Circuit (June 7, 2024) (vacated and remanded).

> reflects the Debtor paid some pre-petition debts post-petition, without first receiving court authority to do so;

- The Debtor is not generating any new revenue from clients who engaged the Debtor post-petition;

- Moseley had kept a Porsche which was leased by the Debtor, but testified at the 341 Meeting he would return it sometime in June 2024;[2] and

- The Debtor had failed to open up any Debtor-In-Possession bank accounts upon filing its case, and only received court approval to keep its pre-petition accounts open on July 24, 2024.

### III. STANDARD OF REVIEW

26. The terms of 11 U.S.C. § 1104(a) state, in pertinent part:

> (a) At any time after the commencement of the case but before confirmation of a plan, on request of a party in interest or the United States trustee, and after notice and a hearing, the court shall order the appointment of a trustee—
>
> (1) for cause, including fraud, dishonesty, incompetence, or gross mismanagement of the affairs of the debtor by current management, either before or after the commencement of the case, or similar cause. . .; or
>
> (2) if such appointment is in the interests of creditors, any equity security holders, and other interests of the estate...

11 U.S.C. § 1104(a).

27. While the presumption is generally that a chapter 11 debtor remain in possession, the Court's ability to appoint a Chapter 11 trustee when appropriate is crucial to a court's exercise of "preserve[ing] the integrity of the bankruptcy process and to ensure that the interests of creditors are served." *In re Matter of Intercat, Inc.*, 247 B.R. 911, 920 (Bankr. S.D. Ga. 2000); *see also In re Rivermeadows Assocs.*, 185 B.R. 615, 617 (Bankr. D. Wyo. 1995); 11 U.S.C. §§ 1107, 1108.

---

[2] It is incredulous that Moseley held onto the Porsche for so long, uninsured by the Debtor (Moseley testified at the 341 Meeting he is insuring it), while not making any post-petition payment thereon, thus creating an unnecessary administrative claim against the estate.

The decision as to whether to appoint a Chapter 11 trustee rests with in the Court's discretion, and appointment of a trustee is appropriate where "cause" has been shown to do so, or when granting such relief is in the interests of the estate and the Debtor's creditors to do so. *In re G–I Holdings, Inc.,* 385 F.3d 313,321 (3d. Cir. 2004); *See In re Celeritas Tech., LLC*, 446 B.R. 514, 519-20 (Bankr. D. Kan. 2011). "[T]he Court need not find any of the enumerated wrongs in the [section 1104(a)(1)] to find cause to appoint a trustee." *In re Colorado-Ute Elec. Ass'n, Inc.*, 120 B.R. 164, 174 (Bankr. D. Col. 1990). In fact, "[T]he court is vested with even broader discretionary powers under § 1104(a)(2) and may consider equitable factors to determine whether a trustee is in the interests of the estate and its creditors." *Celeritas Tech*, 446 B.R. at 518.

28. Courts will leave a debtor in possession in place only where current management "can be depended upon to carry out the fiduciary responsibilities of a trustee." *See Commodity Futures Trading Comm'n v. Weintraub*, 471 U.S. 343, 355 (1985) (quoting *Wolf v. Weinstein*, 372 U.S. 633, 651 (1963)). Where management is incapable of performing these duties, or where the confidence of creditors evaporates, a Chapter 11 trustee must be appointed. *See In re Marvel Entm't Group, Inc.* 140 F.3d 463, 473 (3rd Cir. 1998).

29. While the party seeking appointment of a trustee must prove its case by a clear and convincing standard based upon the particular facts before the court, "[i]f a court finds that the moving party has discharged this burden, it 'shall' appoint a trustee." *In re G-I Holdings, Inc.*, 385 F.3d 313, 318 (3d Cir. 2004) (citing 11 U.S.C. § 1104(a)(1)); *see also Marvel*, 140 F.3d 463, 471 (3rd Cir. 1998) (acrimony between debtor, conflicts of interest); *In re Celeritas Techs., LLC,* 446 B.R. at 514 (acrimony between the debtor and its creditor, failure to satisfy duties of disclosure and transparency, the debtor's management's competence); *In re Plaza de Retiro,*

*Inc.,* 417 B.R. 632, 641 (Bankr.D.N.M.2009) (perceived dishonesty of the debtor, acrimony between debtor and its creditors).

30. As a court of equity, "[S]ometimes, '[t]he protection of the integrity of the bankruptcy process is more important than the potential loss of assets for a particular estate.'" *In re Blair Oil Invs., LLC*, 588 B.R. 579, 597 (Bankr. D. Colo. 2018) (quoting *Colorado Nat'l Bank of Denver v. Ginco, Inc. (In re Ginco, Inc.)*, 105 B.R. 620, 622 (D. Colo. 1988).

### IV. ARGUMENT

#### A. Cause exists to appoint a Chapter 11 trustee under 11 U.S.C. § 1104(a)(1).

31. There is an immediate need to revoke the Debtor's status as a Debtor-in-Possession in this chapter 11 case. A neutral and independent fiduciary should be appointed to oversee its bankruptcy estate and manage the Chapter 11 process.

32. Cause for appointment of a chapter 11 trustee under 11 U.S.C. § 1104(a) is ample, reflected by the chronology of facts described herein, which indicates the Debtor has engaged in dishonesty, incompetence, gross mismanagement, and fraud prior to filing its case. Appointment of a Chapter 11 Trustee is required to protect the integrity of the bankruptcy process and the interests of creditors. Movants, who are the largest of the Debtors' secured creditors, have no faith or confidence that the Debtor can act as an appropriate steward for the estate.

33. The "[D]iversion of funds and misuse of corporate assets constitutes fraud or dishonesty sufficient to warrant appointment of a trustee under section 1104(a)(1)." *In re PRS Insurance Group, Inc.*, 274 B.R. 381, 385 (Bankr. D. Del. 2001); *see also In re Professional Accountants Referral Svcs., Inc.*, 142 B.R. 424, 428-29 (Bankr. D. Colo. 1992) (diversion of corporate assets for personal use constitutes dishonesty or gross mismanagement which required the appointment of a trustee); *In re Bibo, Inc.*, 76 F.3d 256, 257 (9th Cir. 1996) (court had

"ample basis" for appointing a trustee where management had siphoned funds from the debtor through kickbacks); *Sharon Steel*, 871 F.2d at 1228 (systemic syphoning of debtor's assets to other companies under shareholder's common control constituted cause for appoint of trustee).

34. In the case at bar, Moseley caused the Debtor to violate the Agreed Injunction and made what appear to be avoidable transfers in the week prior to the Debtor's case filing.

### B. Appointment of a trustee is warranted under § 1104(a)(2).

35. Courts have broad discretion to appoint a Chapter 11 trustee even absent a finding of "cause," when such "appointment is in the interests of creditors, any equity security holders, and other interests of the estate…." *See* 11 U.S.C. § 1104(a)(2). In making its determination of whether to exercise its equitable powers to appoint a trustee under Section 1104(a)(2), courts "look to the practical realities and necessities inescapably involved in reconciling competing interests." *See In re Hotel Assocs., Inc.*, 3 B.R. 343, 345 (Bankr. E.D. Pa. 1980).

36. Courts also commonly consider the following factors: (1) the debtor's trustworthiness; (2) past and present performance and the potential for reorganization; (3) whether creditors have confidence in present management; and (4) the benefits of appointing a trustee balanced against the cost of appointment. *See In re Morningstar Marketplace, Ltd.*, 544 B.R. 297, 304 (Bankr. M.D. Pa. 2016) (*citing Europark Indus., Inc.*, 424 B.R. at 621); *In re Ionosphere Clubs, Inc.*, 113 B.R. 164 (Bankr. S.D.N.Y. 1990); *see also Evans*, 48 B.R. at 48.

37. In this case, consideration of the factors weighs in favor of a trustee. As discussed above, various Orders have been entered against the Debtor that have destroyed its worth as a law firm. Separate and apart from the fact that the findings contained in these Orders demonstrate substantial wrongdoing by Moseley on behalf of his firm, they also demonstrate that Moseley simply is not a trustworthy and reliable steward of the Debtor. It makes no sense to leave someone

who has been found by governmental institutions to have caused a business to engage in fraud and other wrongful conduct in charge of that business after the alleged fraud and wrongful conduct have reduced that business to a shell of its former potential.

38. In addition, those findings undermine any confidence this Court should have in Moseley's judgment to conduct the business affairs of the Debtor. Ultimately, the course of conduct Moseley took on behalf of the Debtor led to a substantial loss of existing business, a mass flight of its employees, the destruction of the Debtor's ability to generate new business, and the Debtor's inability to obtain professional malpractice insurance. It is as a direct result of Moseley's stewardship that the Debtor's "business" has been reduced to nothing more than a mere recipient of fees from legacy matters. And given the circumstances, it is likely that the Debtor simply is no longer viable as an ongoing business. Moseley made terrible, business-destroying decisions at a time when he had an enormous profit-incentive. It would be the height of folly to think that his decisions will **improve** now that the benefits can be expected to mostly accrue to the Debtor's creditors.

39. The creditors of the estate would be far better off with a neutral third-party in charge of collecting the Debtor's accounts receivable, rather than leaving that task to the untrustworthy Moseley, which would be akin to "*Ovem lupo commitere*" (leaving the fox in charge of the henhouse). Where, as here, a debtor's "inherent conflicts extend beyond the healthy conflicts that always exist between debtor and creditor," a trustee is warranted. *See Marvel* 140 F.3d at 472-73 and 474 (*citing and relying on Cajun Elec.*, 74 F.3d at 600 (adopting dissent 69 F.3d at 751)).

40. Moreover, Moseley made several apparent insider avoidable transfers to himself and his former partner Mr. McClenney. Unlike a chapter 11 trustee, Moseley cannot reasonably

be expected to pursue those claims against himself and his former partner with any vigor. In *In re Fiesta Homes of Ga., Inc.*, 125 B.R. 321, 325 (Bankr.S.D.Ga.1990), for instance, the court recognized that a plan proponent's conflicts of interest rendered diligent pursuit of certain preference actions improbable, and that the specter of the appearance of impropriety was inescapable. Thus, it determined that the Debtor's proposed plan was unlikely to comport with the Code's mandate to seek "maximum recovery by and fair distribution to creditors." *Id.*, see also *In re Fox*, 305 B.R. 912, 915-16 (10th Cir. BAP 2004) (holding that conflicts of interest that prevent debtors from suing certain entities is cause for appointment of trustee). Consequently, pursuit of Chapter 5 avoidance actions is best left to a chapter 11 trustee, not the hopelessly conflicted Moseley.

41. The disciplinary proceedings involving the Debtor and Moseley, along with the existence of the Harris County Suit and the numerous legal actions to which the Debtor is a party-defendant as reflected in its Statement of Financial Affairs (Docket. No. 14; Response to Part III), plainly reflect there is deep-seeded conflict between the Debtor and its secured creditor body.[3]

## IV. CONCLUSION

42. The Debtor's actions and in particular the Orders reflected above, demonstrate attributes of fraud, dishonesty, incompetence, and gross mismanagement on behalf of its management. Moseley is a licensed attorney but appears unable to fulfill his obligations as evidenced by the disciplinary actions taken against himself and the Debtor and his conduct thus far in this case. Significant acrimony exists between the Debtor and its secured creditors, and

---

[3] The Court in *In re Plaza de Retiro* noted that "[d]eep-seeded conflict and animosity between a debtor and its creditors provides a basis for the appointment of a trustee. . . The need for a neutral party to mediate disputes between the debtor and its creditors is ground for a trustee's appointment." *In re Plaza de Retiro*, 417 B.R. 632, 641 (Bankr. D.N.M. 2009) (internal citations omitted).

Movants have no faith or confidence in the Debtor's ability to act honestly and successfully reorganize. Given the recitation of events which have transpired and led to the Debtor's case filing, neither should any other party to this case.

43. In light of the circumstances and events as detailed hereinabove, the totality of evidence regarding the Debtor's actions (pre-petition and post-petition) constitutes cause to appoint a chapter 11 trustee, for the benefit of and in the best interests of the Estate.

**WHEREFORE**, Movants respectfully request that the Court order the appointment of a Chapter 11 trustee for cause and in the interests of creditors, equity security holders, and other interests of the estate pursuant to 11 U.S.C. §§ 1104(a)(1) and (a)(2); in the alternative, should the Court decline to appoint a Chapter 11 trustee, Movants respectfully request the appointment of an examiner pursuant to 11 U.S.C. § 1104(c); and grant such other and further relief as the Court deems just and proper.

Dated: November 12, 2024.

    Respectfully submitted,

    SPENCER FANE, LLP

    */s/ David M. Miller*
    David M. Miller
    Colo. Bar No. 17915 (pro hac vice)
    1700 Lincoln Street, Suite 2000
    Denver, Colorado 80203
    Telephone: (303) 839-3800
    Fax: (303) 839-3838
    E-mail: dmiller@spencerfane.com

    By: */s/ Misty A. Segura*
    MISTY A. SEGURA
    TX Bar No. 24033174
    Fed. No. 30751
    3040 Post Oak Blvd., Ste. 1400
    Houston, Texas 77056
    Telephone: (713) 212-2643

E-mail: msegura@spencerfane.com

**COUNSEL FOR EQUAL ACCESS JUSTICE FUND, LP AND EAJF ESQ FUND, LP**

### CERTIFICATE OF CONFERENCE

The undersigned hereby certifies that on June 12, 2024, counsel for Movants conferred with Miriam Goott (proposed counsel for the Debtor) and Andrew Jimenez (counsel for the U.S. Trustee) via telephone regarding the relief requested in this Motion. Ms. Goott advised that the Debtor is opposed to the requested relief. Mr. Jimenez advised that the U.S. Trustee will advise of his position once the Motion has been filed and reviewed by his office.

*/s/ Misty A. Segura*
MISTY A. SEGURA

### CERTIFICATE OF SERVICE

I certify that on November 12, 2024, a true and correct copy of the foregoing document was served by electronic service via the Court's ECF filing system on those parties registered to receive service via the Clerk of the Court through the ECF system.

*/s/ Misty A. Segura*
MISTY A. SEGURA