UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| IN RE: | § § § | CASE NO. 24-31596 |
| MMA LAW FIRM, PLLC | § § | |
| DEBTOR | § § | |
| MMA LAW FIRM, PLLC | § § | ADVERSARY CASE NO. |
| Plaintiff | § § | |
| v. | § § | |
| BARCUS ARENAS, PLLC | § § | |
| Defendant | § § | |

## COMPLAINT

MMA Law Firm, PLLC Plaintiff and/or Debtor, files this Complaint against Barcus Arenas, PLLC, pursuant to FED. R. BANKR. P. 7001(1) and (7), requesting actual and punitive damages, equitable relief, and respectfully shows the Court as follows:

## JURISDICTION, VENUE AND PARTIES

1. This is an adversary proceeding brought by the Debtor seeking a declaratory judgment regarding the determination of property of the bankruptcy estate, turnover of estate property, and violation of the automatic stay.

2. This Court has subject matter jurisdiction over this adversary proceeding, pursuant to 28 U.S.C. §§ 157 and 1334(b).

3. This adversary proceeding is a core proceeding pursuant to 28 U.S.C. § 157(b)(1) and (2) and this Court may enter a final order consistent with these statutes and Article III of the United States Constitution.

4. Venue is proper in the Bankruptcy Court for the Southern District of Texas (the "**Bankruptcy Court**"), pursuant to 28 U.S.C. § 1409.

5. MMA Law Firm, PLLC is the Debtor in Case No. 24-31596 pending in the Southern District of Texas and can be served through its undersigned proposed counsel.

6. Barcus Arenas, PLLC can be served with this Complaint through its registered agent, CTO Corporation System at 1999 Bryan Street, Suite 900, Dallas, Texas 75201.

7. MMA Law Firm, PLLC (the, **"Debtor"**) hereby states that it consents to the entry of final orders or judgments by the Bankruptcy Court if it is determined that the Bankruptcy Court, absent the consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution.

## RELEVANT FACTS

### RELEVANT BACKGROUND FACTS

8. MMA Law Firm, PLLC (**"Debtor"** or **"MMA"**) is a litigation firm based in Texas.

9. The Debtor represented thousands of storm victims with property damage claims against their insurance companies (**"MMA Clients"**).

10. The Debtor entered into contingency fee contracts with the MMA Clients, entitling it to contingency fees and reimbursement of expenses (**"Contingency Fee Contracts"**).

11. The Debtor prosecuted claims and filed thousands of lawsuits on behalf of the MMA Clients pursuant to the Contingency Fee Contracts (**"MMA Cases"**).

### BARCUS ARENAS

12. Aaron Arenas and Michael Barcus were two attorneys employed by the Debtor. They worked for the Debtor for approximately two years on the MMA Cases, prosecuting claims against insurance companies on behalf of the Debtor's clients in Louisiana, Tennessee, Texas, and Pennsylvania.

13. On November 9, 2022, while still employed by the Debtor, Mr. Arenas and Mr. Barcus created a new law firm, Barcus Arenas, PLLC (**"Barcus Arenas"**).

14. Two days later, on November 11, 2022, Mr. Arenas informed the Debtor's principals that he and Mr. Barcus intended to leave the Debtor and start their own law firm, Barcus Arenas (**"Email"**).

15. The Email included an attachment: a spreadsheet of all the cases that Mr. Arenas and Mr.

Barcus had been working on as employees of the Debtor, which listed the status of each case (**"Spreadsheet"**).

16. Following this notification, the Debtor and Barcus Arenas began negotiating terms regarding their exit from the firm. It was agreed that Mr. Arenas and Mr. Barcus would cease being employees of the Debtor but would become "of counsel" to the Debtor, continuing to work on a specific set of MMA Cases (**"Identified Cases"**) under a new agreement.

17. The parties agreed that in exchange for continuing to work on the Identified Cases, Barcus Arenas would be paid a monthly "of-counsel" fee of $30,000.00 starting in January 2023, as well as 10% of all attorney's fees obtained by the Debtor in the Identified Cases (**"Agreement"**).

18. Beginning in January 2023, Barcus Arenas started working as "of counsel" for the Debtor on the Identified Cases, continuing to use the Debtor's office, staff, software, computers, supplies, and equipment.

19. As per the Agreement, the Debtor paid Barcus Arenas $30,000.00 in both January and February 2023.

### SUSPENSION ORDER AND BARCUS ARENAS TAKE OVER MMA CASES

20. On March 3, 2023, Judge James D. Cain, Jr., a United States district judge of the United States District Court for the Western District of Louisiana, issued an order suspending the licenses of all attorneys affiliated with the Debtor for ninety days (**"Suspension Order"**).

21. The Suspension Order not only suspended the licenses of the Debtor's attorneys but also extended to anyone affiliated with the firm.

22. Following the issuance of the Suspension Order, Barcus Arenas informed the Debtor that it was canceling the Agreement and would no longer be working with the firm. Barcus Arenas physically left the Debtor's office and began operating independently at a new location.

23. After this departure, Barcus Arenas executed new contingency fee agreements with at least 24 of the Debtor's former clients and subsequently settled these cases retaining the full contingency for themselves (**"BA/Debtor Cases"**).

24. The Debtor performed a significant amount of work in the BA/Debtor Cases and incurred expenses in prosecuting these cases. The significant work performed by the Debtor was acknowledged by Mr. Barcus and Mr. Arenas when they created the Spreadsheet in November 2022, while still employed by the Debtor, prior to taking over these clients for themselves.

25. In the Spreadsheet, Mr. Barcus and Mr. Arenas admitted that the following work was performed by MMA and identified the status of the BA/Debtor Cases as follows:

| Client Name | Worked Performed by the Debtor. | Amounts collected by Barcus Arenas |
|---|---|---|
| St Peter African Methodist Episcopal Chu v. Atain Specialty Insurance Company | MMA sent a Letter of Rep to the Carrier; acknowledgement and claim docs received from Carrier. Estimate of damages obtained by MMA. | Uknown at this time. |
| Adams Pointe Master Condominium Association | MMA Settled Case. | Uknown at this time. |
| Annadele's Plantation | LOR and estimate obtained by Debtor. | $16,500.00 |
| Kelso, Gerald | LOR and estimate obtained by Debtor | $2,372.80 |
| Speedee Oil Change & Tune Up, Kelso Investments | LOR and estimate obtained by Debtor. In addition, Debtor invoked appraisal. | $15,611.36 |
| Saint Paul Baptist Church | MMA filed lawsuit and negotiated settlement for $145,000.00. | $44,098.96 |
| Thomas, Tracy and John | MMA filed lawsuit. | $5,000.00 |
| Multi-Merchants, Inc. | MMA filed lawsuit and scheduled mediation. | $30,000.00 |
| Reese J. Broussard, Inc. d/b/a 90 One Stop | MMA filed lawsuit. | $7,000.00 |
| Lewis, Mark (v. North Light Specialty) | MMA filed lawsuit and settled case. | $7,000.00 |
| Tillman, Douglas | MMA filed lawsuit. | $3,500.00 |
| La Place Beauty, Inc. | MMA filed lawsuit. | $7,500.00 |

| Leger, Kyle | MMA filed lawsuit and obtained estimate. | $ 9,221.79 |
| --- | --- | --- |
| JLB Sales and Service | MMA obtained estimate. | $30,000.00 |
| S and T II, LLC | MMA initiated appraisal. | $3,520.72 |
| Burgundy Council of Co-Owners | MMA filed lawsuit. | $ 225,000.00 |
| Milne, Courtney | MMA obtained appraisal award. | $32,229.96 |
| Green, Liz | MMA obtained offer to settle case. | $38,066.08 |
| Nogales Produce, Inc. | MMA scheduled mediation. | $87,500.00 |
| Woodhouse, Robert | MMA filed lawsuit. | $18,750.00 |
| Patterson, Gavin J. | MMA obtained appraisal award. | $ 6,664.44 |
| Watters, Samuel W. | MMA obtained appraisal award. | $33,067.00 |
| Nigrini, Cullen | MMA obtained appraisal award. | $29,700.00 |
| Collelly, Peter | MMA filed Lawsuit filed. | $36,850.00 |

**TOTAL FEES: $689,153.11**[1]

26.      In summary, Barcus Arenas assumed representation of the above-mentioned BA/Debtor Cases, performed only a portion of the legal work – sometimes minimal work as the cases were previously settled by the Debtor – and retained 100% of the attorney's fees and expenses which total $689,153.11.

### CHAPTER 11 BANKRUPTCY FILED AND NOTICE PROVIDED

27.      On April 9, 2024, the Debtor filed a Chapter 11 bankruptcy petition.

28.      In its bankruptcy schedules, the Debtor disclosed claims against Barcus Arenas for possession of attorney's fees and expenses that belong to the Debtor, among other related causes of action.

29.      On April 12, 2024, the Bankruptcy Noticing Center provided Barcus Arenas with notice of the

---

[1] This total figure does not include attorney's fees received by Barcus Arenas in the following two cases: Adams Pointe Master Condominium Association and St Peter African Methodist Episcopal Chu v. Atain Specialty Insurance Company, as these figures are unknown at this time.

Debtor's bankruptcy filing via U.S. mail.

30. On April 23, 2024, the Debtor provided notice of its bankruptcy filing to Barcus Arenas via email.

31. The Debtor has made demand on Barcus Arenas for turnover of its fair share of fees and costs in the BA/MMA Cases, but no fees or costs have been turned over.

## CAUSE OF ACTION #1 – DECLARATORY JUDGMENT

32. The Debtor incorporates Paragraphs 8 through 31 into Cause of Action #1.

33. Under Louisiana, when two attorneys provide legal services to the same client on a contingency-fee basis and one attorney is discharged before resolution, the client is obligated to pay only one contingency fee. The Court allocates the fee between the attorneys. *Saucier v. Hayes Dairy Products, Inc.*, 373 So.2d 102 at 108 (La. 1979).

34. The seminal decision of *Suacier* mandates the allocation of attorney's fees for a discharged attorney who had been retained pursuant to a contingency fee contract. The *Suacier Court* determined that the fee should be apportioned based on the services each attorney provided, considering factors outlined in Rule 1.5(a) of the LOUISIANA RULES OF PROFESSIONAL CONDUCT. These factors include: 1) the time and labor required; 2) novelty and difficulty of questions involved; 3) skill required to perform legal services; 4) the amount involved and the results obtained; and 5) nature and length of the professional relationship with the client. *Saucier v. Hayes Dairy Products, Inc.*, 373 So.2d 102 (La. 1979).

35. This ensures a reasonable division of fees based on each attorney's contributions. If the first attorney was not discharged for cause, this analysis concludes the determination. However, if discharged for cause, the court must assess the nature and gravity of the discharge to determine if the discharged attorney is entitled to any fees. *O'Rourke v. Cairns,* 683 So. 2d 697, 702 (La. 1996).

36. The Debtor asserts an entitlement to an apportionment of fees and costs in the BA/Debtor Cases pursuant to Saucier (the **"Fees and Costs"**).

37.     The Debtor seeks a declaratory judgment affirming the Debtor's interest in the Fees and Costs are property of the bankruptcy estate.

38.     When considering a declaratory judgment action, the Court must engage in a three-step inquiry: (1) whether an "actual controversy" exists between the parties in the case; (2) whether it has authority to grant declaratory relief; and (3) whether "to exercise its broad discretion to decide or dismiss a declaratory judgment action." *Orix Credit All., Inc. v. Wolfe*, 212 F.3d 891, 895 (5th Cir. 2000).

39.     An actual controversy exists between the Debtor and Barcus Arenas regarding the Debtor's interest in the Fees and Costs as they have failed to turnover any funds owed to the Debtor. Here, the Debtor was not discharged for cause, however even if the Court were to determine that it was, the Debtor is still entitled to an apportionment of fees and costs collected or to be collected under the reasonableness factors described above in *Saucier*. Therefore, a live controversy exists between the Debtor and Barcus Arenas regarding the Fees and Costs.

40.     The Bankruptcy Court has authority to grant relief, and the Debtor respectfully requests that the Bankruptcy Court exercise its broad discretion to determine this declaratory judgment action. A bankruptcy court's jurisdiction is governed by 28 U.S.C. § 1334. District courts, and therefore bankruptcy courts, have exclusive jurisdiction over "all cases under title 11," including jurisdiction over "all the property, wherever located, of the debtor as of the commencement of such case, and of property of the estate." 28 U.S.C. § 1334(e); *In re TMT Procurement Corp.,* 764 F.3d 512, 523 (5th Cir. 2014).

**CAUSE OF ACTION #2: TURNOVER OF PROPERTY OF THE ESTATE**

41.     The Debtor incorporates Paragraphs 8 through 31 into Cause of Action No. 2.

42.     Pursuant to Section 541(a)(1) of the Bankruptcy Code, "property of the estate" encompasses "all legal and equitable interest of the debtor in property as of the commencement of the case". 11 U.S.C. §541.

43. Section 542(a) mandates that an entity possessing property of the estate must deliver and account for such property, or its equivalent value, to the bankruptcy estate. 11 U.S.C. § 542.

44. The Debtor is aware of 24 MMA Cases that Barcus Arenas acquired an interest in following the Suspension Order (**"BA/Debtor Cases"**).

45. The Debtor asserts that it is entitled to fee apportionment in the BA/Debtor Cases pursuant to the *Saucier Test,* which provides for fair fee apportionment between a discharged attorney and a current attorney, based on factors such as time, labor, skill, amount involved, results obtained, and the length of the professional relationship. *Saucier v. Hayes Dairy Products, Inc.*, 373 So.2d 102 (La. 1979).

46. The Debtor's interest in properly apportioned fees/costs in each of the BA/Debtor Cases is property of the estate which Barcus Arenas received and has failed to turnover to the Debtor, despite demand.

47. The Debtor respectfully requests that the Court issue an order compelling Barcus Arenas to provide a comprehensive accounting of all funds received in connection with the BA/Debtor Cases, to determine the estate's interest in those funds (determination of appropriate fees/costs of the Debtor and/or the proper apportionment of the collected fees/costs), and to order the Defendant to immediately deliver all estate property to the Debtor.

48. The Debtor also requests an order directing the turnover of the properly apportioned fees and costs associated with the BA/Debtor Cases.

**CAUSE OF ACTION NO. 3: VIOLATION OF THE AUTOMATIC STAY**

49. The Debtor incorporates Paragraphs 8 through 31 into Cause of Action No. 3.

50. The Debtor asserts that Barcus Arenas violated 11 U.S.C. § 362(a)(3) of the Bankruptcy Code.

51. Pursuant to 11 U.S.C §362(a)(3), any acts to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate is stayed.

52. The Debtor entered into contingency fee agreements with the BA/Debtor clients and performed work in these cases. As a result, the Debtor is entitled to fee apportionment and reimbursement of expenses from Barcus Arenas per the factors described in Paragraphs 33 through 35 and incorporated herein.

53. A portion of the fees collected by Barcus Arenas were earned by the Debtor prior to its Chapter 11 filing on April 9, 2024. Although Barcus Arenas finalized settlements in the BA/Debtor Cases, none of these funds have been paid to the Debtor pursuant to *Saucier*.

54. Section 541(a) of the Bankruptcy Code defines "property of the estate" to include all legal or equitable interests of the debtor in property as of the commencement of the case. 11 U.S.C. § 541(a)(1). Therefore, the Debtor's interest in the properly apportioned fees/costs pursuant to *Saucier* constitute property of the estate.

55. On April 23, 2024, the Debtor sent an email notifying Barcus Arenas of the Debtor's bankruptcy.

56. Post-petition, after having received notice of the Debtor's Chapter 11 Case, Barcus Arenas retained possession of property of the estate and exercised control over this property.

57. Barcus Arenas's conduct was both intentional and willful, as they were financially motivated to secure the unportioned fees/costs to the exclusion of the Debtor.

58. In order to sustain an action for violation of Section 362, the Debtor must assert that: 1) a property interest in invoked; 2) the property interest is property of the estate; and 3) there occurred an act to obtain possession of the estate property or there existed an act to exercise control over estate property. 11 U.S.C. §362(a)(3).

59. In this case: 1) The Debtor holds an interest in the Fees and Costs and the properly apportioned fees/costs resulting from those claims; 2) these funds are property of the estate; and 3) Barcus Arenas has obtained and continues to exercise control over this property, failing to turn it over

to the Debtor.

60. Furthermore, Barcus Arenas, is a law firm, and should be held to a higher standard regarding compliance with the automatic stay.

61. Pursuant to Section 362(k), the Debtor is entitled to recover actual damages, including costs and attorney's fees, from Barcus Arenas for its intentional and willful violations of Section 362 of the Bankruptcy Code. The Debtor incurred attorney's fees and costs in filing this adversary proceeding, including the payment of filing fees.

62. Although Section 362(k) provides for recovery for individuals, courts in this district have employed their civil contempt powers under section 105(a) to address automatic stay violations, including damages, fees and punitive damages, when the plaintiff is not an individual. *Sanchez v. Ameriquest Mort. Co. ( In re Sanchez)*, 375 B.R. 289, 309 (Bankr. S.D. Tex. 2007).

63. Barcus Arenas's intentional violation of the automatic stay warrants the Court's intervention to determine the violation and utilize its equitable powers under Section 105(a) to enforce Section 362, and awarding appropriate damages and fees for violations.

64. The Court also possesses the authority under Section 105(a) to impose sanctions for civil contempt or as part of its equitable powers. As noted by the Fifth Circuit, "Judicial sanctions in civil contempt proceedings may, in proper case, be employed for either or both of two purposes: to coerce the defendant into compliance with the court's order, and to compensate the complainant for losses sustained." *Sanchez v. Ameriquest Mort. Co. (In re Sanchez)*, 375 B.R. 289, 309 (Bankr. S.D. Tex. 2007) (citing *American Airlines Inc. v. Allied Pilots Ass'n*, 228 F. 3d 574, 585 (5th Cir. 2000).

65. "The automatic stay is a self-executing injunction, and therefore for contempt purposes it constitutes an order of the bankruptcy court." *Sanchez v. Ameriquest Mort. Co. ( In re Sanchez),* 375 B.R. 289, 309 (Bankr. S.D. Tex. 2007)

66. Consequently, the Debtor seeks actual damages and sanctions against Barcus Arenas for its

intentional violations of the automatic stay.

**WHEREFORE**, Plaintiff respectfully requests that the Court: (i) grant the requested declarations; (ii) determine that the identified assets are property of the estate; (iii) order the delivery of estate funds as requested; (iv) determine that Defendant willfully and intentionally violated the automatic stay; (v) award actual and punitive damages, including attorney fees; (vi) declare that Defendant tortiously interfered with the Debtor's contract; and (vii) grant such further relief, at law or in equity, to which Plaintiff is entitled.

Dated: January 28, 2025.

Respectfully submitted,

By: */s/ Miriam T. Goott*
Miriam T. Goott
attorney-in-charge
SBN 24048846
COUNSEL FOR THE PLAINTIFF

OF COUNSEL:
WALKER & PATTERSON, P.C.
P.O. Box 61301
Houston, TX 77208
miriamgoott@yahoo.com
713.956.5577 (telephone)
713.956.5570 (fax)