**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| **IN RE:** | § | |
| | § | **CASE NO. 24-31596** |
| **MMA LAW FIRM, PLLC** | § | |
| | § | **CHAPTER 11** |
| **Debtor** | § | |

**DEBTOR'S *AMENDED* APPLICATION TO EMPLOY DAVID MIDDLEMAN AS
MARKETING CONSULTANT AND BROKER FOR THE SALE OF ESTATE ASSETS**

**Summary of Facts and Relief Requested**

| | |
|---|---|
| **Debtor:** | MMA Law Firm, PLLC (**"Debtor"**) |
| **Name of Professional to be employed:** | David Middleman |
| **Reason that employment is needed** | David Middleman will assist the Debtor in marketing and facilitating the potential sale or monetization in certain mass tort case proceeds (the **"Asset").** His responsibilities include helping the Debtor identify and organize case-level information relevant to the Asset, leveraging his industry relationships to identify and engage prospective purchasers, and advising the Debtor by providing informal, non-expert, layperson input on potential offers. |
| **Reason the Debtor selected this Professional** | The Debtor selected David Middleman due to his extensive experience in mass tort litigation having worked on high-profile cases and evaluated mass tort dockets for law firms and lenders. With over 20 years in the industry and an extensive network of contacts across the legal and financial sectors, Middleman has the expertise to market the estate's interest in these assets. His reputation for integrity and professionalism in this field makes him uniquely qualified to assist the Debtor in maximizing the value of these key assets. |
| **Professional's connection to the case** | David Middleman has no connection to the Debtor, or the United States Trustee in this case. However, he has extensive professional relationships with nearly all major mass tort firms that may be interested in acquiring the estate's assets. Middleman also has professional ties to certain defendant law firms that the Debtor has sued. Additionally, he is |

| | connected to the Debtor's counsel, who has sought to retain him in an unrelated, pending Chapter 7 case in which the Debtor's counsel represents the Chapter 7 Trustee. |
| --- | --- |
| **Compensation arrangement** | Middleman will receive a 5% contingency fee on any gross proceeds resulting from his services, with the fee and any reasonable, out-of-pocket expenses to be paid proportionately by EAJF and the Debtor. |

**TO THE HONORABLE CHIEF UNITED STATES BANKRUPTCY JUDGE:**

Comes now, MMA Law Firm, PLLC and files this *Application to Employ David Middleman as a Marketing Consultant and Broker for the Sale of Estate Asset* (the "**Application**"), respectfully showing the Court as follows:

BACKGROUND

1.      The Debtor is a Texas-based litigation law firm specializing in high-volume property damage insurance claims and mass tort litigation.

2.      The Debtor has an interest in numerous mass tort cases, including approximately 722 Roundup Exposure cases, 3,149 Zantac cases, 2,132 APAP Cases, and approximately 138 NEC Cases (the **"Mass Tort Cases"**).

3.      Pre-petition, the Debtor worked on the Mass Tort Cases with various co-counsel law firms, hereinafter referred to as the **"Handling Firms."**

4.      The Debtor entered into agreements with the Handling Firms to jointly litigate these cases and share in the contingency fees generated from successful resolutions of the underlying causes of action.  The bankruptcy estate has an interest in the attorney's fees and costs to be recovered in those cases. Specifically, the Debtor is owed money pursuant to these contingency fee agreements (the **"Mass Tort Docket"**). Specifically, the Debtor has a right to receive a percentage of the fees that are payable to the clients in these legal matters, and this right is owed to the Bankruptcy Estate.

5.     On April 9, 2024, the Debtor filed a Chapter 11 bankruptcy case.

6.     On March 19, 2025, the Debtor filed a motion under Rule 9019 seeking approval of a compromise with Equal Access Justice Fund, LP and EAJF Fund, LP (collectively, **"EAJF"**) to resolve a dispute concerning EAJF's lien on the Case Proceeds (the **"9019 Motion"**).

7.     Pursuant to the 9019 Motion, EAJF and the Debtor agreed that the Debtor may sell the entirety of the Mass Tort Dockets, subject to the employment of estate professionals and a final Court Order approving any such sale, and that the proceeds from the sale of the Mass Tort Dockets shall be distributed 75% to EAJF and 25% to the Bankruptcy Estate.  Furthermore, pursuant to the agreement reached between EAJF and MMA, the Debtor may, in the exercise of sound business judgment, sell each of the four Mass Tort Dockets separately.

8.     On May 14, 2025, the Court entered an Order approving the 9019 Motion, which specifically provides that the Debtor may sell the Mass Tort Dockets subject to the employment of estate professionals (the, **"Asset"**).

9.     The Debtor is now tasked with administering these significant assets, which specifically involves marketing and selling evaluating offers for the purchase of the Estate's interest in the Case Proceeds owed by the Handling Firms and determining how best to market and sell these assets for the benefit of creditors.

### EMPLOYMENT OF DAVID MIDDLEMAN

9.     The Debtor seeks to employ David Middleman to assist with the sale of the Asset. Specifically, Middleman will: (a) assist the Debtor in identifying and verifying the universe of recoveries in which the estate holds an interest, including reviewing and reconciling case lists provided by the Debtor with other available information; (b) support the Debtor in gathering case-level data as necessary from the law firms administering the underlying matters (the "Handling

Firms"), (c) market the Asset to potential buyers by leveraging his experience and extensive industry relationships; (d) assist the Debtor in evaluating offers; and (e) provide factual testimony before the Court, if necessary, regarding his efforts to identify, market, and facilitate any sale of the Asset. Middleman is not being retained to provide expert valuation services or formal opinions.

10.      Middleman's address is 801 West 5th Street, #1106, Austin, TX 78703 and his telephone phone number is (832) 274-2381.

**TERMS OF EMPLOYMENT**

11.      Middleman will provide services on a pure contingency basis, subject to the terms below and Bankruptcy Court approval under 11 U.S.C. § 328(a).

12.      Specifically:

1.  Middleman shall receive a 5% contingency fee on any gross funds generated as a direct result of his services for the Sale of the Asset or any portion of the Asset (the **"Contingency Fee"**).

2.  The Contingency Fee will be paid proportionately by EAJF and the Debtor, based on their respective ownership interests in the Asset.

3.  Middleman shall advance all reasonable out-of-pocket costs (the "Expenses"), provided he gives prior notice to the Debtor.

4.  All Expenses shall be subject to reimbursement, with reimbursement obligations shared proportionally by EAJF and the Debtor. However, Middleman understands that reimbursement of any expenses shall be subject to approval by the Bankruptcy Court, which may be sought as frequently as quarterly.

5. Payment of the Contingency Fee is subject to a further application by Middleman and approval by the Bankruptcy Court.

13. A copy of the Engagement Agreement outlining the terms of Middleman's services is attached hereto as **Exhibit A**.

14. All compensation and expense reimbursement shall be subject to proper application and approval under 11 U.S.C. §§ 328.

QUALIFICATIONS

15. Middleman has over 20 years of experience in mass tort litigation, having been involved in mass tort cases involving Asbestos, Accutane, Vioxx, Levaquin, and many others. His background provides him with deep industry knowledge and insight into the complexities of mass tort dockets which is critical in marketing and selling the Asset. Between 2019 and 2022, after retiring from the practice of law, Middleman assisted several lenders and law firms to evaluate the potential value of their mass tort dockets for purposes of establishing a lending relationship between the lenders and law firms. This hands-on experience in evaluating the ability of law firms to monetize claims uniquely qualifies him to not only market the Asset, but to assist the Debtor and provide guidance on any offers received. While there are other firms that are qualified to do this type of work, Middleman's vast network of industry contacts sets him apart. Over the course of his career, Middleman has developed an extensive and trusted network of relationships with law firms, attorneys, and other key players in the mass tort and legal sectors across the United States. His broad professional network provides him with direct access to potential buyers that may be interested in acquiring the estate's interest in attorneys' fees. This network will prove invaluable in marketing the asset to interested parties and maximizing recovery for the estate.

16.     After interviewing multiple individuals, the Debtor believes that Middleman's reputation for integrity and trust sets him apart from others. Middleman is highly regarded in the legal and financial communities for his professionalism, integrity, and reliability. He has maintained long-term, productive relationships with top law firms and institutional investors, such as Soros Family Fund, Fortress, Soli Capital, YieldStreet, and Esquire Bank, which further underscores his credibility and trustworthiness. The Debtor believes that Middleman's reputation will foster confidence among potential buyers and will ensure that the Asset is marketed and sold in a transparent, fair, and competitive manner.

17.     Middleman has a unique combination of skills, having worked directly with law firms, lenders, and other stakeholders related to mass tort claims. His ability to assess the dockets, identify which cases are most viable, and effectively negotiate and facilitate deals makes him an ideal choice to assist the Debtor in achieving the best possible outcome for the estate.

18.     In addition, Middleman was recently retained by Allison D. Byman, the Chapter 7 Trustee in *In re Akin Mears*, Case No. 25-30358 (Bankr. S.D. Tex.), to assist in marketing and selling proceeds from mass tort dockets in exchange for a 7% contingency fee. That application is currently pending approval by the Bankruptcy Court. Middleman believes that a 7% contingency fee is reasonable and appropriate compensation for this type of specialized work. Here, Middleman has agreed to accept a 5% contingency fee.

19.     For these reasons, the Debtor believes that Middleman's skill set, connections, experience, and reputation will enable him to effectively assist in maximizing the value of one of the estate's most important assets.

20.    Middleman's involvement will ensure that the Debtor can make well-informed decisions regarding the marketing, sale, and monetization of this asset, all while securing the highest return for the estate and its creditors.

21.    The Debtor has spoken with numerous individuals in the industry about this engagement, but none inspired the same level of confidence as David Middleman in their ability to perform the work required. Nearly everyone the Debtor consulted described Middleman as the most trustworthy and knowledgeable person in this highly specialized space. Given the nature of the Asset, where professional judgment, and market credibility are critical, Middleman's reputation for integrity and his longstanding relationships with mass tort firms make him uniquely suited for the role. His trustworthiness is particularly important in a transaction like this, where the Debtor and potential buyers must rely heavily on the accuracy and objectivity of the professional's assessment.

#### MIDDLEMAN'S CONNECTIONS TO THIS CASE

23.    Middleman is a "disinterested person" under 11 U.S.C. § 101(14) and holds no adverse interest to the Estate. A declaration of disinterestedness is attached as **Exhibit B.**

24.    Middleman has no prior connection to the Debtor, the Bankruptcy Court, or the United States Trustee in this case.

25.    Middleman is connected to the Debtor's counsel in an unrelated Chapter 7 bankruptcy case, *In re Akin Mears*, currently pending in the Southern District of Texas, where the Debtor's counsel represents the Chapter 7 Trustee. In that case, the Trustee is also seeking to employ Middleman to market and sell mass tort dockets.

26.     Middleman has extensive professional ties with nearly all major mass tort firms that may be interested in purchasing the estate's assets as a result of his prior employment and ownership interest in Pulaski & Middleman (**"PM"**) which was dissolved in approximately 2014.

27.     In addition, Middleman is a close personal friend and professional associate of John Black and Richard Daly, partners at Daly & Black.  Middleman is currently working with them through a company called National Claims Advisors which handles pre-litigation first-party insurance claims. These claims do not involve litigation, do not involve mass tort matters, and are entirely unrelated to MMA's claims against Daly & Black in the pending adversary proceeding.  In addition, Middleman has a professional relationship with Charles Brown, an attorney who works for Daly & Black.

28.     The Debtor is currently engaged in unrelated litigation against Daly & Black concerning fees and expenses the firm collected in connection with Louisiana hurricane cases. This litigation is entirely separate from the mass tort cases at issue. Middleman's role in the estate is strictly limited to the marketing and sale of mass tort dockets and is unrelated to the pending litigation against Daly & Black or any other parties in the adversary proceedings. Accordingly, no conflict of interest exists.

29.     The Debtor has provided Middleman with a list of all Handling Firms involved in the case. In addition, Middleman has reviewed all parties disclosed by the Debtor in the bankruptcy schedules, including creditors and attorneys. Based on this review, the following is a list of all known connections to the Debtor's case, including those related to the Handling Firms and other disclosed parties:

| Party-In-Interest | Connection to Debtor | Connection to Middleman |
|---|---|---|
| Keller Postman | Handling Firm | Middleman met Adam Gerchen, a partner at Keller Postman approximately three years ago at a conference and spoke for approximately 30 minutes. |
| Jason Webster | The Debtor has potential claims and causes of action related to Louisiana hurricane litigation. | Middleman, while working at Pulaski & Middleman ("PM") worked with a law firm where Mr. Webster was employed on multiple cases. This occurred over 10 years ago and there has been no communication since. |
| EAJF/Equal Access Justice Fund/ Brian Zimmerman | Creditor | Middleman has known Brian Zimmerman, counsel for EAJF for over 40 years and attended college together. No professional relationship. |
| Derek Potts | The Debtor has potential claims and causes of action related to Louisiana hurricane litigation. | Middleman, while working at PM, worked with a law firm where Mr. Potts was employed on multiple cases. This occurred over 10 years ago and there has been no communication since. |

30.     Middleman does not possess nor will he assert any economic interest at all that pertains to the debtor, creditors, the Bankruptcy Court, or any other party in interest, their respective attorneys and accountants, the United States Trustee, or any person employed in the office of the United States Trustee.

30.     In the process of pursuing employment, Middleman conducted a conflicts check related to the Debtor and all identified creditors and parties in interest. This conflicts check did not result in the identification of any connection to this case other than what is disclosed above. Therefore, based on this review, Middleman believes that there are no parties that he is connected to with any interests that are adverse to the proposed representation in this case.

31.     Based upon the forgoing, Middleman is a disinterested person.

**REQUESTED RELIEF**

33.     The Debtor does not currently anticipate the performance of work beyond the matters discussed above.  Based upon the forgoing, the employment of Middleman is justified and is necessary.

34.     The Debtor has identified specific and adequate reasons for the selection of Middleman.

35.     Therefore, the Debtor respectfully requests that the Court enter an order:

1.  Authorizing the employment of David Middleman as a marketing consultant, broker, and sales professional to sell estate property, pursuant to 11 U.S.C. §§ 327(a) and 328(a).

2.  Approving the terms of the engagement set forth in the Engagement Agreement attached hereto as Exhibit A; and

3.  Granting such other and further relief as the Court deems just and proper.


Dated: June 27, 2025

Respectfully submitted,


By: */s/ Miriam T. Goott*
Miriam T. Goott
attorney-in-charge
SBN 24048846
**COUNSEL FOR THE DEBTOR**

OF COUNSEL:
Walker & Patterson, P.C.
P.O. Box 61301
Houston, TX 77208
(713) 956-5577 (telephone)
(713) 957-3358 (fax)
mgoott@walkerandpatterson.com

## CERTIFICATE OF SERVICE

I, Miriam Goott, hereby certify that I served the Application on EAJF, the Committee, and

all parties receiving service via CM/ECF on June 27, 2025.

By: */s/ Miriam T. Goott*
Miriam T. Goott