**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| **In re:** | § | **Chapter 11** |
| | § | |
| **MMA LAW FIRM, PLLC,** | § | |
| | § | **Case No. 24-31596** |
| **Debtor.** | § | |

_____

**EAJF'S OBJECTION TO THE DEBTOR'S *AMENDED* APPLICATION TO EMPLOY**
**DAVID MIDDLEMAN AS MARKETING CONSULTANT AND BROKER**
**FOR THE SALE OF ESTATE ASSETS**

**TO THE HONORABLE EDUARDO V. RODRIGUEZ,**
**CHIEF UNITED STATES BANKRUPTCY JUDGE:**

Secured Prepetition Lenders Equal Access Justice Fund, LP and EAJF ESQ Fund, LP (collectively, "**EAJF**"), by and through their attorneys, hereby file this Objection (the "**Objection**") to the Debtor's *Amended* Application to Employ David Middleman as Marketing Consultant and Broker for the Sale of Estate Assets ("**Amended Application**") [ECF # 710] and respectfully show as follows.

**RELEVANT FACTS AND BACKGROUND**

1.      In April 2025, Debtor approached EAJF regarding the employment of David Middleman ("**Middleman**") based on the representation that Middleman would be evaluating the mass tort dockets, providing his opinions on value, and determining the best course to monetize the mass tort dockets and the timing of a sale of part or all of the mass tort dockets. Counsel for EAJF and the Debtor discussed the proposed role directly with Middleman as part of a cooperative effort.

2.      On June 2, 2025, the Debtor filed its Application to Employ David Middleman as an Asset Valuation and Marketing Consultant ("**Initial Application**"). ECF # 688. Among other things, the Debtor represented that Middleman would be "evaluating offers to purchase the estate's interest in attorney's fees from mass tort cases" and "providing an opinion on the value of those offers."  In addition, Middleman was to "support the Debtor by testifying as needed and ensuring that the asset values are maximized for the benefit of the estate." ECF # 688, p. 1.

3.      The deadline to file objections to the Initial Application was June 23, 2025.

4.      Due to alleged time constraints, the Debtor had filed the Initial Application without any agreement by EAJF to the 5% contingency fee for Middleman; however, Debtor's counsel sent an e-mail on June 2, 2025, stating that "if there are any concerns, please let me know and hopefully we can resolve them."

5.      Thereafter, EAJF raised concerns regarding (i) the total 5% contingency fee percentage; (ii) the lack of information sharing with EAJF so it could be kept fully informed of the valuation, marketing, and sales process; and (iii) the fact that the contingency fee proposed for Middleman's services did not include a compensation structure in the event Middleman's valuation opinion was that it would be in the estate's best interest to hold off on selling the mass tort dockets for a reasonable period of time to maximize value instead of quickly disposing of the dockets.

6.      During the discussions concerning Middleman's employment that occurred prior to June 20, 2025, counsel for EAJF and the Debtor (Ms. Goott and Mr. Zimmerman) understood that, whatever the contingency fee and expenses would be, the Debtor was requesting that they would be shared or split *equally* between the Debtor and EAJF. It was not until Mr. Patterson subsequently became involved on June 20, 2025 in sending redline revisions to a proposed

2

stipulation and agreed order, that the Debtor abruptly changed its position and sought that the contingency fee should be shared ***proportionally*** between EAJF and the Debtor. This was a significant change in what had been discussed between counsel for EAJF and the Debtor since April 2025 and directly contrary to the Initial Application and the engagement agreement signed by the Debtor's corporate representative and Middleman and attached thereto. ECF # 688, pp. 2 and 4; ECF # 688-1, p. 2.

7.      On June 20, 2025, EAJF and the Debtor filed a Stipulation and Agreed Order to extend the deadline for EAJF to object to the Initial Application to June 30, 2025. ECF # 699.[1] It thereafter became apparent that EAJF and the Debtor were at an impasse on reaching an agreement regarding Middleman's employment.

8.      On June 27, 2025, Debtor filed the Amended Application. ECF # 710. Instead of EAJF and the Debtor ***equally*** sharing or splitting the payment of Middleman's contingency fee and expenses, the Amended Application states that they shall be paid ***proportionally*** by EAJF and the Debtor[2].

9.      The Amended Application also recharacterizes Middleman's title from an "Asset Valuation and Marketing Consultant" to a "Marketing Consultant and Broker for the Sale of Estate Assets."

10.     The Amended Application also deleted "evaluating offers to purchase the estate's interest in attorney's fees from mass tort cases," "providing an opinion on the value of those

---

[1] The Court entered the Stipulation and Agreed Order on June 24, 2025. ECF # 703.
[2] The Debtor is now seeking that 75% be paid from EAJF's portion and 25% be paid by the Debtor's portion.

3

offers," and to "support the Debtor by testifying as needed and ensuring that the asset values are maximized for the benefit of the estate" as reasons that Middleman's employment is necessary.[3]

11.     A new engagement agreement between Middleman and the Debtor was executed on June 26 and 27, 2025 and is attached to the Amended Application.

## OBJECTION

12.     The Debtor has not filed a motion seeking to surcharge EAJF's collateral and does not use the term "surcharge" in the Amended Application. However, the Amended Application is essentially an improper effort by the Debtor to surcharge EAJF without its consent and without filing the appropriate motion seeking relief pursuant to 11 U.S.C. § 506(c). Section 506(c) creates an exception—or, as more accurately stated by the Fifth Circuit Court of Appeals, a "***narrow exception***"—to the general rule that administrative expenses are paid out of the estate, not by secured creditors. *In re Houston Reg'l Sports Network, L.P.*, 886 F.3d 523, 533 (5th Cir. 2018) (emphasis added). This narrow exception allows for recovery of expenses from a creditor's collateral only if "the expenses are (1) necessary; (2) reasonable; and (3) benefit the creditor." *Houston Reg'l Sports Network*, 886 F.3d at 533. Furthermore, to benefit the creditor, the expenses must be "directly related to preserving or enhancing" that encumbered property. *Id*. While costs incurred to preserve the value of the estate are not categorically excluded, the Fifth Circuit requires a determination of "how much benefit the secured creditor actually received." *Id.*

13.     Any effort to surcharge EAJF is premature as the Debtor has not yet shown that the contingency fee and expenses of Middleman's employment increased the value that EAJF may realize from the sale of its collateral, the mass tort dockets. At this point in time, it is entirely

---

[3] Compare "Summary of Facts and Relief Requested" in ECF #'s 688 and 710.

HOU 6807325.1

speculative whether Middleman's services will benefit EAJF. It may be that, if Middleman's employment is approved and the Debtor files a motion seeking to sell one or more of the mass tort dockets for what constitutes a fire sale, EAJF will find themselves objecting to one or more sales that are proposed as the result of Middleman's services.  Even more alarming and inequitable, the Debtor seeks to have EAJF pay the majority of Middleman's contingency fee and expenses without EAJF having any information sharing or transparency into the process[4]. EAJF specifically objects to any implied surcharge effort.

14.     In addition, the Amended Application makes it clear that Middleman's employment as an estate professional is no longer sought by the Debtor for the purpose of "ensuring that the asset values are maximized for the benefit of the estate." The Amended Application essentially forecloses Middleman from now providing any opinions on the value of offers received for the mass tort dockets as was represented by the Debtor as a reason his employment was necessary in the first place.

15.     EAJF is concerned that the Amended Application requires Middleman to only quickly sell the mass tort dockets regardless of whether a higher value could be realized for the estate if they were held for a period of time and then sold or allowed to monetize through settlements or judgments at a later date. EAJF objects to Middleman's employment because it fails to include any analysis of whether it would be in the best interest of the estate to sell the dockets now or hold off until later. Essentially, the Debtor now wants Middleman to perform services with blinders on and not consider the value of the mass tort dockets if they are held for a reasonable time period and not sold or allowed to monetize through settlements or judgments at a later date.

---

[4] EAJF also have an interest in this process as unsecured creditors per the Settlement Agreement approved by the Court.

HOU 6807325.1

As an estate professional who will owe fiduciary duties to the estate, Middleman cannot determine what would be in the best interest of the estate if he does not evaluate the value of the mass tort dockets under both present and future scenarios. For this reason alone, the proposed employment of Middleman cannot be in the best interest of the estate and should not be approved.

<strong>RESERVATION OF RIGHTS</strong>

16.     EAJF reserves any and all rights and remedies to complement, supplement, augment, alter, substitute and/or modify this Objection, or seek any other relief deemed appropriate and necessary and to conduct any and all discovery as may be deemed necessary or as may be required and to assert such other grounds as may become apparent.

**WHEREFORE**, EAJF respectfully requests that the Court (1) sustain EAJF's objections to the Amended Application; (2) deny the employment of Middleman as currently proposed; and (3) grant such other and further relief as is equitable and just.

Dated: June 30, 2025.

Respectfully submitted,

**SPENCER FANE, LLP**

*/s/ David M. Miller*
David M. Miller
Colo. Bar No. 17915 (*pro hac vice*)
1700 Lincoln Street, Suite 2000
Denver, Colorado 80203
Telephone: (303) 839-3800
Fax: (303) 839-3838
E-mail: dmiller@spencerfane.com

By: */s/ Misty A. Segura*
MISTY A. SEGURA
TX Bar No. 24033174
Fed. No. 30751
3040 Post Oak Blvd., Ste. 1400
Houston, Texas 77056
Telephone: (713) 212-2643

6

HOU 6807325.1

E-mail: msegura@spencerfane.com

**COUNSEL FOR EQUAL ACCESS JUSTICE FUND, LP AND EAJF ESQ FUND, LP**

<u>**CERTIFICATE OF SERVICE**</u>

I certify that on June 30, 2025, a true and correct copy of the foregoing document was served by electronic service via the Court's ECF filing system on those parties registered to receive service via the Clerk of the Court through the ECF system.

*/s/ Misty A. Segura*
MISTY A. SEGURA

HOU 6807325.1