IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | CASE NO. 24-31596 |
| MMA LAW FIRM, PLLC | § | |
| | § | CHAPTER 11 |
| Debtor | § | |

### DEBTOR'S REPLY TO EAJF'S RESPONSE IN OPPOSITION TO MMA'S EMERGENCY MOTION TO EXTEND THE AUTOMATIC STAY TO JOHN ZACHARY MOSELEY

**TO THE HONORABLE CHIEF UNITED STATES BANKRUPTCY JUDGE:**

Comes now, MMA Law Firm, PLLC (**"MMA"**) and files this Reply to Equal Access Justice Fund, LP and EAJF ESQ Fund, LP's (together, **"EAJF"**) Objection to the Debtor's Emergency Motion to Extend the Automatic Stay to John Zachary Moseley Pursuant to 11 U.S.C. §362 and 105, respectfully showing the Court as follows:

**FACTUAL BACKGROUND**

1. On March 19, 2025, this Court entered an order approving a Rule 9019 settlement agreement between the Debtor and EAJF. The Settlement resolved all litigation between the parties and gave the Debtor sole authority to sell the Mass Tort Dockets, with EAJF entitled to 75% of the proceeds (the **"Settlement"**).

2. On June 26, 2025, the Debtor filed an Emergency Motion seeking to extend the automatic stay to its principal, John Zachary Moseley (the **"Emergency Motion"**).

3. The Emergency Motion was triggered by EAJF's coordinated effort to pursue Mr. Moseley personally in multiple courts simultaneously to destabilize the Debtor's operations by targeting the one individual central to implementation of the Settlement.

4. From the outset of this Chapter 11 case, EAJF has shown clear and persistent hostility toward Mr. Moseley. EAJF's conduct has been less about protecting its collateral and more about eliminating Mr. Moseley from the case through personal pressure and litigation.

5. At the time the Emergency Motion was filed the Debtor believed EAJF had resumed its campaign against Mr. Moseley out of the same personal animus it has shown throughout the case.

6. However, it is now clear based on EAJF's own recently filed pleading that its motivation was strategic. After realizing it had no control over the sale of the Mass Tort Dockets, the only significant asset from which it stands to recover, EAJF pivoted to direct attacks on Mr. Moseley in his divorce proceeding and in a separate state court action.

### THE MIDDLEMAN APPLICATION EXPOSES EAJF'S TRUE MOTIVES

7. After approval of the Settlement, the Debtor began the process of retaining a qualified professional to market and sell the Mass Tort Dockets. It selected David Middleman as the optimal candidate based on his experience and ability to maximize value for the estate.

8. On June 2, 2025, the Debtor filed its Application to Employ Middleman (the "**Middleman Application**"). That filing triggered an immediate and aggressive shift in EAJF's conduct and exposed its real agenda which was to stop the sale once it realized it had no power to control the process.

9. On June 16, 2025, after the Middleman Application was filed, EAJF reached out to the Debtor and asked whether Middleman would agree to reduce his commission.

10. On June 18, 2025, counsel for the Debtor and EAJF held a lengthy call in which EAJF made clear its dissatisfaction with the terms of the Middleman Application. EAJF wanted

Middleman to be financially disincentivized from conducting a near-term sale and instead perform a long-term valuation of the Mass Tort Dockets.

11. EAJF also demanded sweeping access to all communications between Middleman and the Debtor and full visibility into any information, opinions, offers, or data Middleman reviewed or exchanged, even including all *verbal* comments. These were not normal business terms. These were attempts to control and set the stage for objecting to any future sale.

12. The Debtor responded that although it preferred cooperation, the Settlement expressly gave the Debtor authority to select a professional and conduct the sale without EAJF's consent. If EAJF disagreed it could object through the Court process but it had no veto power.

13. The very next day, on June 19, 2025, EAJF sent the Debtor a proposed Stipulation and Agreed Order requesting a reduction in Middleman's commission and extraordinary disclosure obligations on both MMA and Middleman.

14. The Debtor rejected these overreaching demands on June 20, 2025.

15. On June 20, 2025, it appears EAJF came to the undeniable realization that it had no authority to control the Debtor's selection of an estate professional and that the Court-approved Settlement was final. Confronted with the fact that it could not dictate the terms or timing of the sale of the Mass Tort Dockets, EAJF immediately pivoted to retaliation by launching a personal attack campaign against Mr. Moseley. Its clear objective was to stop the sale by removing the one person responsible for implementing it.

**EAJF'S LITIGATION TACTICS ARE RETALIATORY AND STRATEGIC**

16. On June 20, 2025, the same day its proposed Stipulation and Agreed Order was rejected by MMA, EAJF pivoted to litigation warfare and filed a surprise motion in Mr. Moseley's divorce proceeding, seeking to freeze his assets and impose a constructive trust.

17. EAJF claims this was motivated by concern over an alleged $1.9 million transfer from Mr. Moseley to his wife. But that excuse does not withstand scrutiny. The timing of its litigation, immediately after realizing it lost control over the sale process, makes its true motive transparent.

18. This is further evidenced by the fact that three days later, on June 23, 2025, EAJF revived a dormant summary judgment motion in a separate state court case against Mr. Moseley that had been inactive for over a year. The pattern is clear and calculated.

19. EAJF is a sophisticated lender and believes the Mass Tort Dockets are worth at least $18 million or more based on the terms in negotiated in the Settlement. If EAJF were truly concerned about protecting their collateral, it would not be jeopardizing the stability of the very estate it is poised to benefit from, over an alleged transfer of $1.9 million of which EAJF knows only $1.5 million remains. It would not be trying to eliminate the person responsible for executing the sale.

20. Instead, EAJF is litigating not to protect its rights in Mr. Moseley's divorce proceeding or in state court, but to regain leverage. EAJF regrets the Settlement it freely entered into and now seeks to eliminate Mr. Moseley to undo the result.

**EAJF'S OBJECTION TO MIDDLEMAN APPLICATION CONFIRMS ITS TRUE INTENT**

21. On July 2, 2025, EAJF filed its Objection to the Middleman Application and in doing so exposed the true extent of its frustration and intent:

- EAJF expressed frustration that Middleman would not be incentivized to delay a sale.

- EAJF complained that the Middleman Application was filed by the Debtor without a prior agreement on Middleman's commission.

- EAJF objected to a proposed proportional commission split now calling it a "significant change" and argued that the Debtor "abruptly" changed its position.

- It took issue with Middleman's role and characterized it as selling the dockets with "blinders on".

- EAJF labeled the payment of Middleman's fees "alarming" and "inequitable" without them having access to privileged and confidential information.

22. In short, EAJF's objection to Middleman Application was not about the qualifications of the professional or the integrity of the process. It was about regret. It was about control. And it was about removing Mr. Moseley.

23. EAJF admits in its Objection, that as of June 20 2025, it became apparent to them that EAJF and the Debtor were at an impasse over Middleman's employment. That is the same day it launched its first litigation attack against Mr. Moseley.

**THE STAY EXTENSION IS NECESSARY AND APPROPRIATE**

24. Mr. Moseley is the Debtor's sole attorney principal and fiduciary. He is responsible for executing the Settlement and managing the Debtor's ongoing operations. He is the only person capable of navigating the sale process for the Mass Tort Dockets.

25. The litigation EAJF is pursuing is not about enforcing legitimate claims over an alleged transfer by Mr. Moseley to his wife. It is about obstructing the Debtor's operations and forcing a leadership crisis that would justify appointment of a trustee or conversion of the case.

26. The Debtor's request for an extension of the automatic stay is narrowly tailored and entirely justified. EAJF's actions are a direct threat to estate value and the orderly administration of the case under this Court's supervision.

27. The Court should not permit EAJF to use parallel litigation in two other courts as a pressure tactic or as an end-run around the Settlement it voluntarily negotiated, and this Court approved. EAJF's objection should be overruled.

**CONCLUSION**

28. EAJF's actions over the last month have exposed its true motivations. It is no longer concerned with maximizing estate value or recovering its share of the proceeds. It is focused on tearing down the structure it helped create. It is using litigation as leverage. It is targeting the estate's fiduciary not for wrongdoing, but for being the only person standing in the way of its effort to reclaim control.

29. Therefore, the Debtor respectfully requests that the Court grant the Emergency Motion to Extend the Stay to Mr. Moseley to preserve the estate, uphold the Settlement, and ensure this Debtor has a chance of reorganization.

Dated: <u>7/3/2025</u>

                Respectfully submitted,

                By: */s/ Miriam T. Goott*
                Miriam T. Goott
                attorney-in-charge
                SBN 24048846
                **COUNSEL FOR THE DEBTOR**

OF COUNSEL:
Walker & Patterson, P.C.
P.O. Box 61301
Houston, TX 77208
(713) 956-5577 (telephone)
(713) 957-3358 (fax)
mgoott@walkerandpatterson.com

## CERTIFICATE OF SERVICE

    I, Miriam Goott, hereby certify that I served the Reply on counsel for EAJF on July 3, 2025.

                By: */s/ Miriam T. Goott*
                Miriam T. Goott