IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| IN RE: | § | Case No. 24-31596 |
| | § | |
| MMA LAW FIRM, PLLC | § | Chapter 11 |
| | § | |
| *Debtor*. | § | |

### DEBTOR'S EMERGENCY MOTION TO COMPROMISE CONTROVERSY WITH CRISTOBAL M. GALINDO, PC

**THIS MOTION SEEKS AN ORDER THAT MAY ADVERSELY AFFECT YOU. IF YOU OPPOSE THE MOTION, YOU SHOULD IMMEDIATELY CONTACT THE MOVING PARTY TO RESOLVE THE DISPUTE. IF YOU AND THE MOVING PARTY CANNOT AGREE, YOU MUST FILE A RESPONSE AND SEND A COPY TO THE MOVING PARTY. YOU MUST FILE AND SERVE YOUR RESPONSE WITHIN 21 DAYS OF THE DATE THIS WAS SERVED ON YOU. YOUR RESPONSE MUST STATE WHY THE MOTION SHOULD NOT BE GRANTED. IF YOU DO NOT FILE A TIMELY RESPONSE, THE RELIEF MAY BE GRANTED WITHOUT FURTHER NOTICE TO YOU. IF YOU OPPOSE THE MOTION AND HAVE NOT REACHED AN AGREEMENT, YOU MUST ATTEND THE HEARING. UNLESS THE PARTIES AGREE OTHERWISE, THE COURT MAY CONSIDER EVIDENCE AT THE HEARING AND MAY DECIDE THE MOTION AT THE HEARING.**

**EMERGENCY RELIEF HAS BEEN REQUESTED. IF THE COURT CONSIDERS THE MOTION ON AN EMERGENCY BASIS, THEN YOU WILL HAVE LESS THAN 21 DAYS TO ANSWER. IF YOU OBJECT TO THE REQUESTED RELIEF OR IF YOU BELIEVE THAT THE EMERGENCY CONSIDERATION IS NOT WARRANTED, YOU SHOULD FILE AN IMMEDIATE RESPONSE.**

**REPRESENTED PARTIES SHOULD ACT THROUGH THEIR ATTORNEY.**

TO THE HONORABLE CHIEF UNITED STATES BANKRUPTCY JUDGE:

MMA Law Firm, PLLC (the "**Debtor**" or **"MMA"**) hereby files this *Motion to Compromise Controversy with Cristobal M. Galindo, PC* (**"GLF"**), (the "**9019 Motion**"), and respectfully shows the Court the following:

**RELEVANT FACTS**

1. MMA files this 9019 Motion seeking Bankruptcy Court approval to settle multiple disputes with GLF.

2. MMA is a Texas-based litigation firm that represented thousands of clients in insurance claims following Hurricanes Laura, Delta, Zeta, and Ida (collectively, the "**Hurricane Cases**").

3. In a substantial number of the Hurricane Cases, MMA entered into co-counsel agreements with GLF, under which both firms jointly represented clients on a contingency fee basis (the "**MMA/Galindo Cases**").

4. On March 3, 2023, the Honorable James D. Cain, Jr., United States District Judge for the Western District of Louisiana, issued an order suspending the licenses of all attorneys affiliated with MMA for a period of ninety (90) days (the "**Suspension Order**").

5. Following the entry of the Suspension Order, numerous third-party law firms (collectively, the "**Successor Firms**") assumed legal representation of thousands of clients previously jointly represented by MMA and GLF in the MMA/Galindo Cases. For the avoidance of doubt, for the purposes of this Agreement, "Successor Firms" does not include GLF.

6. On April 9, 2024, MMA filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code, initiating the above-captioned bankruptcy case (the "**Bankruptcy Case**").

7. Following the petition date, MMA began asserting claims against the Successor Firms, both through litigation and through negotiated settlements.

8. On August 13, 2024, GLF timely filed a proof of claim in the Bankruptcy Case (the "**POC**").

9. MMA filed an objection to GLF's POC on February 5, 2025 (the "**Claim Objection**").

10. On April 28, 2025, the Bankruptcy Court converted the Claim Objection into an adversary

proceeding and directed GLF to file a formal complaint, thereby initiating Adversary Proceeding No. 25-03310 (the "**Galindo Adversary**").

11. On August 15, 2025, MMA filed a *Motion to Approve Compromise under Rule 9019* with Irpino, Avin & Hawkins Law Firm, a Successor Firm (the "**Irpino Settlement**").

12. Under the Irpino Settlement, Irpino is required to deposit $81,413.21 into the registry of the Bankruptcy Court (the **"Irpino Registry Funds"**) and, on a going-forward basis, to deposit 25% of all attorneys' fees it receives in connection with the MMA/Galindo cases into the Bankruptcy Court's Registry (the "**Irpino Future Registry Funds**").

13. On the same date, MMA also filed a separate *Motion to Approve Compromise under Rule 9019* with Alvendia, Kelly & Demarest, LLC, a Successor Firm (the "**AKD Settlement**").

14. Pursuant to the AKD Settlement, AKD is required to deposit $153,743.52 into the registry of the Bankruptcy Court (the **"AKD Registry Funds"**). Additionally, AKD has agreed, on a going-forward basis, to deposit 25% of all attorneys' fees it receives in the MMA/Galindo cases into the Court's registry (the **"AKD Future Registry Funds"**).

15. On August 22, 2025, MMA filed a Complaint against GLF, initiating Adversary Proceeding No. 25-03633 (the "**MMA Adversary**").

16. The Galindo Adversary and the MMA Adversary are collectively referred to herein as the "**Adversaries**."

17. The Parties have reached a full and final global resolution of all disputes and claims related to the Adversaries, as set forth in this Agreement.

18. The Parties expressly acknowledge that this Settlement Agreement is subject to approval by the Bankruptcy Court.

**SETTLEMENT TERMS**

19. The Settlement Agreement attached hereto as **Exhibit A** sets forth the terms negotiated by the parties, subject to approval by the Bankruptcy Court. The key financial terms are summarized below:

   a. GLF will pay $250,000.00 to MMA on or before October 1, 2025.

   b. GLF acknowledges that MMA is entitled to retain, free and clear of any GLF claim: All funds previously deposited or to be deposited into the Court Registry by Irpino and AKD (collectively, the **"Irpino/AKD Funds"**), including both current and future deposits.

   c. GLF irrevocably waives all claims against any Successor Firm related to the MMA/Galindo Cases. Successor Firms may rely on this waiver as third-party beneficiaries.

   d. If GLF receives any additional funds from any Successor Firm related to the MMA/Galindo Cases after September 4, 2025, it must remit 100% of those funds to MMA within 14 calendar days of receipt.

   e. GLF will receive an allowed general unsecured claim in the Bankruptcy Case in the amount of $2,500,000.

**ARGUMENT AND AUTHORITIES**

15. FED. R. BANKR. P. 9019 governs compromises with the trustee. An analysis of the factors in *Protective Committee for Independent Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414 (1968), will aid the court's decision in granting the compromise. The factors include: (i) the probability of success in the litigation, (ii) difficulty of collection of any judgment, (iii) the

complexity of the litigation; and (iv) deference to the concerns of creditors. These factors will each be addressed in the paragraphs below.

16. The Debtor asserts that the proposed settlement satisfies each of these factors and should be approved.

### FACTOR 1: PROBABILITY OF SUCCESS IN THE LITIGATION

17. MMA believes it has strong legal and factual grounds in the ongoing Adversary Proceedings. However, litigation outcomes are inherently uncertain, particularly where both parties assert competing claims for fees, and factual disputes arise from co-counsel relationships involving thousands of clients. The settlement avoids the risk of adverse rulings on either side and brings finality to all pending disputes between MMA and GLF.

### FACTOR 2: DIFFICULTY OF COLLECTION ON A JUDGMENT

18. While GLF is a going concern, collection of any future judgment, particularly in light of potential offsets, appeals, or setoffs, could be delayed, expensive, and contested. The settlement provides certainty through an agreed, near-term payment of $250,000 and obviates the need for enforcement efforts.

### FACTOR 3: COMPLEXITY OF THE LITIGATION.

19. The factual and legal issues involved in the Adversary Proceedings are highly complex. They span questions of bankruptcy law, co-counsel fee-sharing, client entitlement, professional responsibility, and state law in numerous states including Louisiana and Texas.

20. The proceedings involve thousands of former clients, some represented by successor counsel, others not, across a wide range of case statuses and outcomes. Settlement avoids these burdens while producing tangible value.

**FACTOR 4: DEFERENCE TO CREDITORS**

21. The settlement directly benefits the estate and its creditors. It delivers an immediate cash payment of $250,000, eliminates GLF's competing claims to registry funds in excess of $235,000.00, and secures MMA's exclusive entitlement to 100% of future fee payments from all Successor Firms. These outcomes increase the estate's overall recoveries and reduce administrative complexity. The resolution also removes impediments to other pending settlements with Successor Firms, thereby enhancing overall estate value.

**RELIEF REQUESTED**

22. The Settlement Agreement is the product of arms-length negotiations between sophisticated parties, both represented by counsel, and reflects a full global resolution of all claims between MMA and GLF. It avoids uncertain litigation outcomes in two adversary proceedings, maximizes estate assets, and allows the Debtor to focus on plan confirmation, administration, and the 15 other pending adversary proceedings. The compromise is in the best interest of the estate, satisfies all applicable legal standards, and should be approved under Rule 9019.

**EMERGENCY RELIEF REQUESTED**

23. The Debtor respectfully requests that this Motion be considered on an emergency basis.

24. Expedited approval of the Settlement Agreement is requested because GLF has irrevocably waived all rights to receive funds from Successor Firms, thereby removing a major barrier to resolving numerous pending disputes. The Debtor currently has multiple adversary proceedings pending against Successor Firms, including two matters set for mediation in the coming weeks.

25. Prompt approval will confirm MMA's exclusive entitlement to the disputed funds, reduce uncertainty for counterparties, and support efforts to achieve additional settlements. This relief

will directly benefit the estate and its creditors by accelerating recoveries and minimizing litigation expense.

**WHEREFORE**, MMA Law Firm, PLLC prays that the court grant this Motion and approve the compromise of the controversy between the parties on substantially the same terms as set out in the Settlement Agreement attached hereto as Exhibit "A", authorize the parties to take all actions and execute all documents necessary to effectuate the compromise, and for such other relief as the court finds appropriate and just to grant.

                                                By: */s/ Miriam T. Goott*
                                                Miriam T. Goott
                                                attorney-in-charge
                                                SBN 24048846
                                                COUNSEL FOR DEBTOR

OF COUNSEL:
WALKER & PATTERSON, P.C.
P.O. Box 61301
Houston, TX 77208
mgoott@walkerandpatterson.com
713.956.5577 (telephone)
713.956.5570 (fax)

## CERTIFICATE OF SERVICE

I, Miriam Goott, hereby certify that I served a true and complete copy of the foregoing Motion to Approve Compromise was served on all parties listed in the attached Service List by first class mail and/or ECF on September 8, 2025.

                                                */s/Miriam T. Goott*
                                                Miriam T. Goott