# EXHIBIT A

## CONFIDENTIAL SETTLEMENT AND RELEASE AGREEMENT

This Confidential Settlement and Release Agreement ("Agreement") between Makkah Corporation d/b/a Habibi Shriners, It's Clubs and Units ("Makkah") and R. William Huye, III, Cameron Snowden, Grant Gardiner, and Allied World Insurance Company[1] (collectively, "Defendants") is made as of the date this Agreement is signed by all parties. Makkah and Defendants may be referred to individually as "Party" and collectively as "Parties" in this Agreement.

WHEREAS, Makkah filed a lawsuit against Defendants in the case captioned *Makkah Corporation d/b/a Habibi Shriners, It's Clubs and Units v. McClenny Moseley & Associates, PLLC, et al.*, pending in the 14th District Court for the Parish of Calcasieu, Case No. 2023-2874 (the "Lawsuit").

WHEREAS, Defendants deny the allegations in the Lawsuit, and deny that they are liable for any other claims alleged by Makkah;

WHEREAS, Makkah and Defendants mutually desire to resolve their disputes; and

NOW THEREFORE, in consideration of the foregoing, and of the promises and mutual covenants herein contained, Makkah and Defendants agree as follows:

1. **EFFECTIVE DATE.** The Effective Date of this Agreement shall be the date on which Makkah executes and delivers this Agreement to all other Parties, upon which this Agreement shall be binding and enforceable as to all Parties.

2. **PAYMENT.** Subject to the conditions set forth below, in consideration of the releases and discharges set forth in this Agreement, Allied World Insurance Company ("Allied World"), on behalf of the Defendants has agreed to pay to Makkah the total gross sum of Two Hundred Thousand and 00/100 dollars ($200,000.00) (the "Settlement Funds"), which the Parties acknowledge is good and sufficient consideration to support this Agreement. The check or draft for the Settlement Fund shall be made payable to: "Devereaux Law Firm and Makkah Corporation d/b/a/ Habibi Shriners, Its Clubs and Units".

    On or about April 9, 2024, MMA Law Firm, PLLC f/k/a McClenny Moseley & Associates, PLLC ("MMA") filed a Petition for Chapter 11 Bankruptcy in the United States Bankruptcy Court for the Southern District of Texas, Case No. 24-31596 ("Bankruptcy Court"). In that bankruptcy proceeding, Allied World and Makkah filed motions for relief from the automatic stay, to the extent applicable, so that Allied World could use the proceeds of an insurance policy issued to MMA to pay covered loss, including, but not limited to, the Settlement Funds. On September 10 and 11, 2025, the Bankruptcy Court entered Orders granting Allied World's and Makkah's motions. The

---

[1] *Allied World only makes and enters into this agreement on behalf of any companies controlled by Allied World Assurance Company Holdings, Ltd. For the avoidance of doubt, as applied to Allied World, the terms "related entities," "affiliates," "sister entities," "predecessors," "subsidiaries," "parents," and "successors" shall include only entities controlled by Allied World Assurance Company Holdings, Ltd.*

1

Parties to this Agreement now intend to obtain and agree to jointly cooperate to seek Bankruptcy Court approval of this Agreement, prior to Allied World's payment of the Settlement Funds and such funds being distributed. If the Bankruptcy Court does not approve this Agreement and the disbursement of the Settlement Funds as described herein, this Agreement shall be null and void.

To that end, the obligation to pay the Settlement Funds shall only arise after (1) all Parties to this Agreement have signed the same prior to submission to the Bankruptcy Court for approval; (2) the fully executed Agreement is submitted by counsel to the Bankruptcy Court for approval in that proceeding; and (3) the Agreement is approved by the Bankruptcy Court in the form of a signed Order. Payment of the Settlement Funds must be made within30 days have lapsed from the date the Bankruptcy Court issues a executed Order approving the disbursement of the Settlement Funds.

Notwithstanding the above, if any person or entity files an objection or opposition to the requested approval of this Agreement, but the Bankruptcy Court approves the Agreement over such objection/opposition, then the obligation to pay the Settlement Funds shall only arise 10 days after all appeal delays have lapsed and no appeal or writ application is filed. If an appeal or writ application is filed opposing the approval of this Agreement by the Bankruptcy Court, then the obligation to pay the Settlement Funds shall only arise 10 days after there is a final judgment denying such opposition.

In the event that the Bankruptcy Court rejects, in whole or in part, or in any way modifies or alters the terms of the fully executed Agreement submitted to it for approval, then all Parties understand and agree that this Agreement shall be null and void unless amended (or redrafted if an amendment is deemed impracticable by the Parties) to comport with the Court's Order, and approved and signed by all Parties, and resubmitted to the Court for approval. All Parties acknowledge and agree that the obligation to pay the Settlement Funds is only triggered upon Defendants being provided a copy of the signed Orders approving the final Agreement by the Bankruptcy Court and the denial of any opposition thereto as set forth above.

3. **RELEASE.** It is expressly understood and agreed that this Agreement is a **FINAL SETTLEMENT AND A FULL AND COMPLETE RELEASE OF ANY AND ALL CLAIMS**, demands, causes of action, damages or allegations that were or could have been asserted by Makkah in the Lawsuit, which could have otherwise been asserted by Makkah against any of the other Parties to this Agreement, prior to the execution of this Agreement, and is made to fully, finally, and forever compromise and settle any and all claims of every nature and kind whatsoever which were or could have been asserted in the Lawsuit or otherwise by Makkah against any and all of the Defendants prior to the execution of this Agreement by any of the Parties to this Agreement.

Makkah, on behalf of itself, its agents, beneficiaries, heirs, executors, administrators, attorneys, agents, legal representatives, and representatives for and in consideration of the promises and agreements contained herein, the sufficiency of which is hereby acknowledged, do hereby voluntarily, knowingly and unconditionally release and forever discharge the Defendants, individually, along with all of their respective parents,

subsidiaries, affiliates, sister entities, related entities, divisions, predecessors, successors and assigns, and each of their respective officers, directors, shareholders, owners, partners, members, trustees, beneficiaries, heirs, executors, administrators, attorneys, insurers, reinsurers, agents and representatives (collectively the "Released Parties"), from any and all claims, demands, and causes of action of any nature, known and unknown, past and present, foreseen and unforeseen, which Makkah has or may have or which could have been asserted on its behalf resulting from or relating to any act or omission of any kind, whether relating to Defendants' legal representation of Makkah, the Lawsuit or otherwise, occurring on or before the date of the execution of this Agreement.

The Parties understand and expressly agree that this Release includes, but is not limited to, all claims, causes of action and appellate rights arising under contract, tort or common law, in law or in equity, including, without limitation each and all of the claims asserted by Makkah against any of the Defendants in the Lawsuit, as well as any alleged violation of any rules or regulations under any state or federal law in the United States or any other country, violation of any international laws, authorities or ordinances, any other torts, contracts, and any claims for declaratory relief, injunctive relief, monetary relief, exemplary damages, or any other equitable relief as a result of the representation of Makkah by Defendants William Huye, III, Cameron Snowden, and Grant Gardiner.

4. **DISMISSALS.** Within five (5) days of receipt of the Settlement Funds, Makkah agrees to file a Motion to Dismiss Claude Reynaud, III, with prejudice in the Lawsuit. Within ten (10) days after receipt of the Settlement Funds, Makkah agrees to file with the Court a signed Motion to Dismiss all claims in the Lawsuit with prejudice, with all parties to bear their own costs and attorneys' fees.

5. **AGREEMENT NOT TO SUE.** This Agreement is intended to express a full, complete and final compromise and settlement between all Parties to the Lawsuit, relative to any and all claims made or could have been made as a result of or relating in any way to Defendants' representation of Makkah and all claims in the Lawsuit, as they relate to claims made or that could have been made. Accordingly, Makkah agrees not to sue any of the Defendants named in the Lawsuit for any alleged act or omission occurring on or before the date of the execution of this Agreement.

6. **NOT AN ADMISSION OF LIABILITY.** This Agreement is intended to be and is a compromise among the Parties and shall not be construed as an admission of liability by either Party.

7. **NON-DISPARAGEMENT.** At no time shall any representative of Makkah: (i) make any statements, or take any other actions whatsoever, to disparage, defame, sully or compromise the goodwill, name, brand or reputation of the Defendants (the "Goodwill"); (ii) commit any other action that could likely injure, hinder or interfere with the business, business relationships or Goodwill of the Defendants or their respective affiliates and employees (current and past).

8. **UNDERSTANDING & REPRESENTATIONS.** The Parties each represent that they are represented by legal counsel, that they consulted with their attorneys regarding all

3

aspects of this Agreement, and that they understood all aspects and terms of this Agreement prior to executing it. No promise, inducement or agreement not herein expressed has been made to any of the Parties. The Parties represent that they have not previously assigned or otherwise transferred, or attempted to transfer, any of the claims released by this Agreement. The Parties each respectively represent that they are freely, knowingly, and voluntarily executing this Agreement in good faith for the reasons set forth herein. The Parties each respectively represent that they have the full right, power, legal capacity, mental capacity, and authority to enter into this Agreement.

This Agreement has been prepared by the combined efforts of the Parties and their respective attorneys. No party may claim that an ambiguity of any term, word, phrase, or provision of this Agreement is to be construed against the other party on the grounds that the other party is drafter of the term, word, phrase, or provision in question. Accordingly, the Parties expressly waive any rule of law or any legal decision that would require interpretation of any ambiguities in this Agreement against the party that has drafted it.

It is understood by the Parties that the facts in respect of which this Agreement is made may subsequently prove to be other than or different from the facts now known by either of them or believed by either of them to be true, as set out in this Agreement. The Parties accept and assume the risk of the facts proving to be so different, and each of the Parties agrees that all the terms of this Agreement shall be in all respects effective and not subject to termination or rescission by any such difference in facts.

9. **ACCORD & SATISFACTION.** The Parties each respectively acknowledge full accord, satisfaction, and settlement of any and all causes of action, claims, demands, suits, liability, promises, losses, debts, expenses, costs, damages, or obligations that they have, had, or will in the future have against each other related to Defendants' legal representation of Makkah, the Lawsuit, and/or the Agreement.

10. **APPLICABLE LAW.** This Agreement and all matters relating thereto shall be governed by the laws of the State of Louisiana without regard to its principles of conflicts of law.

11. **CONSTRUCTION.** All recitals, representations, warranties, covenants, agreements, and acknowledgments contained in this Agreement are contractual in nature. The headings used in this Agreement are primarily for convenient organization and are not necessarily intended to have any substantive effect. This Agreement has been jointly drafted and negotiated at arms-length between parties knowledgeable in the matters dealt with herein. The provisions of this Agreement shall be interpreted in a reasonable manner to affect the intentions of the Parties.

12. **SURVIVAL.** If any provision or other portion of this Agreement shall be or become illegal, null or void, or against public policy, for any reason, or shall be held by any court of competent jurisdiction to be illegal, null or void, or against public policy, such provision shall be deemed stricken and the remainder of the Agreement shall remain in full force and effect.

13. **ENTIRE AGREEMENT.** This Agreement constitutes the full and final agreement among the Parties with respect to the subject matter hereof and replaces all prior negotiations, proposed agreements, and agreements, whether written or oral. The Parties further agree that this Agreement may not be altered, amended, modified, cancelled, or terminated except by express written agreement duly executed by all of the parties hereto. Except as expressly set forth in this Agreement, no promises, representations, warranties, agreements, or other understandings exist between the Parties with respect to the subject matter of this Agreement. This Agreement contains the entire agreement between the parties hereto and that the terms of this Agreement are contractual and not mere recitals.

14. **EXECUTION OF AGREEMENT.** This Agreement may be executed in any number of counterparts with the same effect as if all parties had signed the same document. Each counterpart shall be deemed to be an original and which counterparts together contain the signatures of all of the parties and shall constitute a single, binding, and complete Agreement. The Parties further agree that tele-copied or emailed signature pages are valid as originals.

**REMAINDER OF PAGE INTENTIONALLY LEFT BLANK**

**IN WITNESS WHEREOF,** Terrell D. Fowler as the duly authorized representative of Makkah Corporation d/b/a Habibi Shriners, It's Clubs and Units, understands, agrees to, and has hereto duly executed this Confidential Settlement and Release Agreement:

Read and signed on this 5th day of December 2025 at Lake Charles, Louisiana.

_____          Date: 12/5/2025
Authorized Representative of Makkah Corporation
d/b/a Habibi Shriners, It's Clubs and Units

Printed Name: Terrell D. Fowler

Title: Temple Attorney


**IN WITNESS WHEREOF,** R. William Huye, III, understands, agrees to, and has hereto duly executed this Confidential Settlement and Release Agreement:

Read and signed on this 3rd day of December 2025 at Austin, Texas.

R. William Huye III                                                 Date: 12/03/2025
R. William Huye, III

6

**IN WITNESS WHEREOF,** Cameron S. Snowden understands, agrees to, and has hereto duly executed this Confidential Settlement and Release Agreement:

Read and signed on this __5__ day of __December__ 2025 at Baton Rouge, Louisiana.

*Cameron Snowden*
Cameron S. Snowden

Date: __12/5/2025__

_____
Grant Gardiner

Date: _____

**IN WITNESS WHEREOF,** Grant Gardiner, understands, agrees to, and has hereto duly executed this Confidential Settlement and Release Agreement:

Read and signed on this __4th__ day of __December__ 2025 at New Orleans, Louisiana.

*Grant P. Gardiner*
Grant Gardiner

Date: __12/04/2025__

7

**IN WITNESS WHEREOF,** Adam J. Keating, as the duly authorized representative of Allied World Insurance Company, understands, agrees to, and has hereto duly executed this Confidential Settlement and Release Agreement:

Read and signed on this __5th__ day of __December__ 2025 at __Farmington__, Connecticut.

_____	Date: _____
Adam J. Keating, in his capacity as the Authorized
Representative of Allied World Insurance Company

8