# Supreme Court of Louisiana

EXHIBIT
1

FOR IMMEDIATE NEWS RELEASE

NEWS RELEASE #030

FROM: CLERK OF SUPREME COURT OF LOUISIANA

The Opinions handed down on the **29th day of June, 2026** are as follows:

**BY Penzato, J.:**

2026-CQ-00161       IN RE: MMA LAW FIRM, PLLC

CERTIFIED QUESTIONS ANSWERED. SEE OPINION.

Retired Judge Glen Wade Strong appointed Justice ad hoc, sitting for Justice Cole, recused.

SUPREME COURT OF LOUISIANA

No. 2026-CQ-00161

IN RE: MMA LAW FIRM, PLLC

On Certified Question from the United States District Court for the
Southern District of Texas

PENZATO, J.[*]

This case presents certified questions about an attorney's ability to recover fees and costs under a contingent fee contract when his representation is prematurely terminated. Premised on an assumption the attorney engaged in unethical or illegal conduct, the questions ask what effect that conduct has on the validity of the contract and the attorney's right to recover fees and costs. We find a contingent fee contract entered as the result of unethical or illegal conduct is absolutely null, and the responsible attorney is not entitled to fees or costs. If a valid contract is formed but the attorney engages in unethical or illegal conduct during its performance, the attorney's recovery of fees and costs is governed by the framework adopted in *Saucier v. Hayes Dairy Products, Inc.*, 373 So. 2d 102 (La. 1978), *on reh'g* (6/25/79), and *O'Rourke v. Cairns*, 95-3054 (La. 11/25/96), 683 So. 2d 697.

## FACTS AND PROCEDURAL HISTORY

Certified questions are decided on the facts presented by the federal court. *Pickard v. Amazon.com, Inc.*, 23-01596 (La. 6/28/24), 387 So. 3d 515, 518. Established facts are limited at this point, but the certification confirms the dispute is between the current and former attorneys of clients who sought recovery for damages caused by hurricanes and other storms along the Louisiana Gulf Coast. The

---

[*] Judge Allison H. Penzato, for the Court of Appeal, First Circuit, appointed as Justice *pro tempore*, sitting for the vacancy in the First District. She is now appearing as an *ad hoc* for Justice William Burris. Retired Judge Glen Wade Strong appointed Justice *ad hoc*, sitting for Justice Cole, recused.

clients were first represented by McClenny Moseley & Associates, PLLC ("MMA"), a Houston based law firm that entered contingent fee contracts with thousands of Louisiana residents in the wake of Hurricane Ida.  In response to concerns about the firm's handling of the claims, multiple courts entered orders staying MMA's cases or sanctioning the firm's attorneys, including actions by this Court suspending the license of MMA's lead attorney in Louisiana and staying the firm's cases in Louisiana state courts.[2]  A special trustee was also appointed to assist in identifying and notifying MMA's former clients "of the inability of MMA to represent them in pending hurricane or storm-related litigation."  *See In re: Richard William Huye*, 23-B-0277 (La. 5/18/23).

MMA filed for bankruptcy protection in 2024.  In a written declaration filed in the proceeding, the firm's managing member stated, "After negative orders were entered by Louisiana District Courts and the licenses of MMA's attorneys were suspended in Louisiana, MMA was no longer able to represent clients in that state." According to the federal court's certification, it is undisputed that MMA either withdrew from representation or was discharged from virtually all of the remaining cases.  Other law firms undertook the representation of MMA's former clients and ultimately resolved many of the claims.

MMA filed claims in the bankruptcy proceeding against some of the successor law firms, alleging it was owed attorney fees and costs out of the settlement proceeds from its prior cases. The successor firms denied the claims, arguing MMA's conduct rendered its contracts absolutely null and barred any recovery of fees or costs.  The particular claim giving rise to this certification was filed by MMA against Morris Bart, LLC., which requested a jury trial for the action.  As a result of the jury request,

---

[2]    *See In re Huye*, 23-0277 (La. 3/3/23), 356 So. 3d 1000, 1001; *In re: Richard William Huye*, 23-B-0277 (La. 5/10/23) (stay order) and (La. 5/18/23); *see also In re: McClenny Mosely & Associates PLLC*, 21-CV-2258 (W.D. La. 7/30/21) (suspending MMA attorneys from practicing in Western District for 90 days); *Franatovich v. Allied Tr. Ins. Co.*, 22-2552, (E.D. La. 3/16/23), 2023WL7005861 (imposing Rule 11 sanctions).

the claim was transferred from the bankruptcy court to the district court for the Southern District of Texas. *See MMA Law Firm, PLLC v. Morris Bart, LLC*, 4:24-CV-4446, 2024WL5088383, at *4 (S.D. Tex. 12/12/24) (withdrawing reference to bankruptcy court). The parties agree the merits of MMA's claim are governed by Louisiana substantive law.

Pursuant to Louisiana Supreme Court Rule XII, the district court certified five questions to this Court, which granted the certification. *See In re MMA Law Firm, PLLC*, 26-0161 (La. 3/13/26), 429 So. 3d 308. Before addressing the questions, it should be emphasized that no factual findings have been made in this proceeding concerning the allegations of misconduct against MMA. The district court made this clear:

> In this Certification Request, this Court frames the factual background and its questions hypothetically, as it has not yet had to decide whether MMA, its lawyers, or agents actually committed any acts of misconduct. Although the allegations referenced in this certification permeate the pleadings in the cases pending in this Court and in various courts in Louisiana, the parties dispute the allegations. The [managing member's declaration], however, recognizes that the allegations of misconduct—whether true or not—resulted in MMA being no longer able to continue its representation of its Louisiana clients . . ., but this Court has not made any findings of fact regarding the allegations of misconduct.

In our limited role, this Court likewise makes no factual findings regarding the allegations of misconduct. When a certified question is accepted, our task is limited to deciding "questions of Louisiana law." *See* La. S.Ct. Rule XII, § 1; La. R.S. 72.1A; *Pickard*, 387 So. 3d at 526. Any fact-finding responsibility is reserved to the federal court. *See Wightman v. Ameritas Life Ins. Corp.*, 22-0364 (La. 10/21/22), 351 So. 3d 690, 693.

## DISCUSSION

### Question 1: Who Can Assert Absolute Nullity of a Contract

In the first certified question, the district court asked:

3

Can a successor law firm, in a lawsuit filed against it by a predecessor law firm seeking fees and costs, who either no longer could continue the representation and withdrew or was discharged by the client or the court, raise the defense that the predecessor law firm's earlier misconduct renders the predecessor's contingent fee contract an absolute nullity?

Yes.  Under Louisiana Civil Code article 2030, an "[a]bsolute nullity may be invoked by **any person** or may be declared by the court on its own initiative." (Emphasis added.)  A "person" includes a juridical person, meaning an entity to which the law attributes personality.  *See* La. Civ. Code art. 24.  By allowing any person to raise a contract's absolute nullity, Article 2030 recognizes that absolute nullities "operate similarly with respect to all members of society, not just the parties to the transaction" and "should have no effect with respect to anyone."  Ronald J. Scalise Jr., *Rethinking the Doctrine of Nullity*, 74 La. L. Rev. 663, 671-72 (2014).

### Question 2(A): Does Attorney Misconduct Render Contract an Absolute Nullity

In Question 2(A), the district court asked:

If an attorney-client contingent fee contract was entered into as the result of either unethical or illegal means implemented by an attorney or someone acting on his or her behalf, or during the representation of the client the attorney practiced in an unethical or illegal manner, is that contingent fee contract a nullity?

This question addresses the effect of unethical or illegal conduct in two different time frames, during the formation of the agreement and during its performance. Each requires a separate answer. Given the district court's explanation in the certification, we construe the reference to "nullity" to mean an absolute nullity. As further explained below, we find that a contingent fee contract entered as the result of unethical or illegal conduct is absolutely null.  If the misconduct occurs after the parties enter a valid contract, the agreement may terminate by dissolution but is not absolutely null.

Louisiana Civil Code article 7 establishes the basic premise that the civil law does not sanction unlawful agreements:

4

> Persons may not by their juridical acts derogate from laws enacted for the protection of the public interest. Any act in derogation of such laws is an absolute nullity.

Similarly, Article 2030 provides:

> A contract is absolutely null when it violates a rule of public order, as when the object of a contract is illicit or immoral. A contract that is absolutely null may not be confirmed.

The cause of an obligation is unlawful "when the enforcement of the obligation would produce a result prohibited by law or against public policy." La. Civ. Code art. 1967.

While the basic relationship between client and lawyer is contractual, the parties' association has also been described as *sui generis* given this Court's constitutional authority to regulate the practice of law. *See* La. Const. art. V, § 5(B); *Chittenden v. State Farm Mut. Auto. Ins. Co.*, 00-0414 (La. 5/15/01), 788 So. 2d 1140, 1147-48, 51. This Court has exclusive and plenary power to define and regulate all facets of the practice of law, including the admission of attorneys to the bar, the professional responsibility and conduct of lawyers, the discipline, suspension and disbarment of lawyers, and the attorney-client relationship. *Succession of Wallace*, 574 So. 2d 348, 350 (La. 1991).

Thus, for applicable directives of public order and policy in the formation of the attorney-client contract, we also look to the Rules of Professional Conduct. *See* La. R.S. 37, Ch. 4, Appendix, Art. XIV. Adopted by this Court as "regulatory laws in the interests of the public, the courts, and the legal profession," the Rules of Professional Conduct have the force and effect of substantive law and permeate all facets of the practice of law. *Spears v. Hall*, 25-0195 (La. 3/6/26), 429 So. 3d 291, 295; *Chittenden*, 788 So. 2d at 1147-49. Personal solicitation of clients, particularly paid solicitation, is generally prohibited, and an attorney is barred from entering an agreement obtained as a result thereof. *See* Rules 7.2(c)(13), 7.4(a). Prohibited fee sharing and the unauthorized practice of law are also proscribed. *See* Rules 5.4(a),

5.5(a), 7.2(c)(13); *see also* La. R.S. 37:213A(1), (4).  As an adjunct to Rules 5 and 7, Louisiana Revised Statute 37:219A declares it to be "unlawful for any attorney to pay money or give any other thing of value to any person for the purpose of obtaining representation of any client."  A violation is a criminal offense subject to imprisonment of up to five years and a substantial fine.  *See* La. R.S. 37:219C.

These regulatory and statutory provisions embody the state's strong public policy against paid, personal solicitations of clients, sometimes referred to as "case running."  *See In re O'Keefe*, 03-3195 (La. 7/2/04), 877 So. 2d 79.  As the *O'Keefe* court observed:

> The legal system and the profession suffer actual injury when a lawyer engages in runner-based solicitation, a felony under state law.
>
> *   *   *
>
> This court has long condemned the practice of soliciting clients for pay. . . .  [S]olicitation of clients for pay cannot be condoned as the professional character of the practice of law could not survive the hunting down and marketing of personal injury claims. Solicitation is abhorrent to the legal profession and places lawyers in disrepute with the public. . . . We have not hesitated to permanently disbar lawyers who knowingly participate in such activities.

*In re O'Keefe*, 877 So. 2d at 85-88 (citations and internal quotation marks omitted).

A contingent fee contract resulting from this misconduct, namely impermissible paid solicitations, prohibited fee sharing, and the unauthorized practice of law, is an absolutely nullity.  *See* La. Civ. Code arts. 7, 1968, 2030; Rules 5.4(a), 5.5(a), 7.2(c)(13), 7.4(a); La. R.S. 37:213, 37:219.  An agreement formed as a result of this misconduct derogates from laws enacted for the protection of the public interest, violates rules of public order, and produces a result prohibited by law and against public policy. *See Id.* "This court cannot place its stamp of approval on

6

such contracts and must declare them null." *Succession of Cloud*, 530 So. 2d 1146, 1151 (La. 1988).[3]

The second part of Question 2(A) asks about the effect of attorney misconduct during the client's representation. If the parties entered a valid contract, subsequent misconduct may constitute a "failure to perform" by the attorney, which under the Civil Code gives rise to the contract's dissolution, but does not render it absolutely null. *See* La. Civ. Code art. 1994, 2013. When an obligor fails to perform, "the obligee has a right to the judicial dissolution of the contract or . . . to regard the contract as dissolved.  In either case, the obligee may recover damages."  La. Civ. Code art. 2013.  As explained by Professors Litvinoff and Scalise:

> When no defect intervened in the formation of a contract but one party has failed to perform his obligation as agreed, the other may avail himself of an action to obtain the dissolution of that contract.

Litvinoff & Scalise, 6 La. Civ. L. Treatise, *Law Of Obligations* § 16.3 (2d ed.).

### *Questions 2(B) and 4: Can the Attorney Still Recover Fees and Costs*

In Questions 2(B) and 4, the district court asked:

2B.    If the answer to Question 2(A) is yes—that the contingent fee contract is a nullity—can that attorney still seek attorneys' fees and costs on any basis, including a non-contractual (be it quasi-contract or *quantum meruit*) basis?

4.    Assuming an attorney with a contingent fee contract was found to have participated in illegal conduct or conduct in violation of the Louisiana Rules of Professional Conduct, as opposed to mere neglect or negligence, can that attorney subsequently recover his or her fees and/or costs on any basis from the successor law firm who takes up the case and represents the client from the point of withdrawal to conclusion?

An attorney who obtained a contingent fee contract as the result of unethical or illegal means, which rendered the agreement absolutely null, is not entitled to

---

[3]    *See also Gray v. Atkins*, 331 So. 2d 157, 166 (La. App. 3 Cir. 1976), *writ denied,* 334 So. 2d 433 (La. 1976) (Where attorney conspired with an individual illegally practicing law and steering prospective clients to attorney, "any contracts entered into by them pursuant to that illegal relationship are illegal and void."); *Vidrine v. Abshire*, 558 So. 2d 288, 293 (La. App. 3 Cir. 1990) ("A 'running' contract is unenforceable.")

recover fees or costs for work performed pursuant thereto.  Louisiana Civil Code article 2033 declares that an absolutely null contract is "deemed never to have existed" and the "parties must be restored to the situation that existed before the contract was made."  Article 2033 expressly prohibits recovery by a party who knew or should have known of the basis for the nullity:

> [A] performance rendered under a contract that is absolutely null because its object or its cause is illicit or immoral may not be recovered by a party who knew or should have known of the defect that makes the contract null.

La. Civ. Code art. 2033.[4]

More specific to the attorney-client contract, Rule 7 of the Code of Professional Conduct, governing the direct solicitation of clients, provides: "A lawyer shall not enter into an agreement for, charge, or collect a fee for professional employment obtained in violation of this Rule."  Rule 7.4(a).  As previously observed, runner-based solicitation is a criminal offense and abhorrent to the legal profession.  *See In re O'Keefe*, 877 So. 2d at 85-88.  Attorneys who engage in this proscribed conduct cannot be permitted to reap the rewards by collecting their fees and costs on any basis.  *See Gray*, 331 So. 2d at 166.

If a valid contract is entered but misconduct occurs thereafter, the attorney's ability to recover fees is best handled through the framework established in *Saucier* and *O'Rourke*.  Under those cases, when a discharged attorney and successor attorney both claim interests in settlement proceeds under contingent fee contracts, the client owes only one contingency fee, the highest ethical percentage to which the client contractually agreed.  *See O'Rourke*, 683 So. 2d at 702; *Saucier*, 373 So. 2d at 118.  The contingency fee is then allocated between the attorneys based on factors

---

[4]  Article 2033 permits two exceptions allowing recovery by a party who knew or should have known of the defect in the contract: (1) if the party invokes the nullity to withdraw from the contract before its purpose is achieved, and (2) in exceptional situations when, in the discretion of the court, recovery would further the interest of justice. *See* La. Civ. Code art. 2033. Neither exception was asserted or appears applicable.

now in Rule 1.5(a) of the Rules of Professional Conduct. *Id.*[5]   If the prior attorney was discharged for cause, his share of the contingency fee is reduced based on the "**nature and gravity of the cause**" contributing to his dismissal. *O'Rourke*, 683 So. 2d at 704 (emphasis added).   The *O'Rourke* court explained the basis for this approach:

> This rule serves to confine client exposure to no more than one contingency fee in both with and without cause situations. Furthermore, it allows courts to properly analyze the intricacies which invariably arise in contingency fee litigation, while also taking into consideration the conduct of attorneys which mar the profession and client confidence by requiring dismissal for cause.

*O'Rourke*, 683 So. 2d at 704.

We find this reasoning and approach applicable regardless of the precise nature of the conduct prompting the discharge of the attorney, whether nonfeasance as in *O'Rourke*, unethical or illegal conduct as described in Question 2(B), or the more intentional conducted suggested by Question 4. In each instance, the *Saucier/O'Rourke* framework provides a flexible approach that allows for a discretionary determination based on the facts of each case.   For relatively minor misconduct, the *O'Rourke* adjustment may be minimal, while more egregious conduct could warrant a significant reduction or, in appropriate cases, a complete denial of a fee.

Questions 2(C) and 4 also ask if the discharged attorney can recover his costs. The recovery of costs was not addressed in *Saucier* or *O'Rourke*; however, similar to attorney fees, Rule 1.5(a) prohibits a lawyer from charging or collecting "an

---

[5]   The factors are (1) the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly; (2) the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer; (3) the fee customarily charged in the locality for similar legal services; (4) the amount involved and the results obtained; (5) the time limitations imposed by the client or by the circumstances; (6) the nature and length of the professional relationship with the client; (7) the experience, reputation, and ability of the lawyer or lawyers performing the services; and (8) whether the fee is fixed or contingent.

unreasonable amount for expenses." *See also* Rule 1.8(e) (providing limitations on lawyer's advances to client for financial assistance). In determining what costs, if any, a discharged attorney is entitled to recover, similar consideration must be given to the limits set by the Rules of Professional Conduct and, where appropriate, an *O'Rourke* reduction or denial may be imposed as well.

***Question 2(C): Recover against whom -- Former Client, Successor Attorney, or Both***

In Question 2(C), the district asked:

If the answer to Question 2(B) is yes—that the attorney can seek fees and costs despite his or her misconduct—against whom can he or [she] seek fees: the former client, the successor law firm, or both?

Subject to certain requirements, the discharged attorney has a right of action to recover fees and costs against the former client and the successor law firm. Generally, Louisiana Revised Statute 37:218 grants an attorney a "special privilege" for his fees and certain costs on any recovery obtained in the suit. *See* La. R.S. 37:218A-B; *see also* La. Civ. Code arts 3190, 3216 (defining special privileges). A related law provides a similar privilege on proceeds from a judgment. *See* La. R.S. 9:5001. A written contract is required under Section 37:218, and the parties may record the agreement in the public records, all as more fully set forth in the statute:

By written contract signed by his client, an attorney at law may acquire as his fee an interest in the subject matter of a suit, proposed suit, or claim in the assertion, prosecution, or defense of which he is employed, whether the claim or suit be for money or for property. Such interest shall be a special privilege to take rank as a first privilege thereon, superior to all other privileges and security interests under Chapter 9 of the Louisiana Commercial laws. In such contract, it may be stipulated that neither the attorney nor the client may, without the written consent of the other, settle, compromise, release, discontinue, or otherwise dispose of the suit or claim. Either party to the contract may, at any time, file and record it with the clerk of court in the parish in which the suit is pending or is to be brought or with the clerk of court in the parish of the client's domicile. After such filing, any settlement, compromise, discontinuance, or other disposition made of the suit or claim by either the attorney or the client, without the written consent of the other, is null and void and the suit or claim shall be proceeded with

10

as if no such settlement, compromise, discontinuance, or other disposition has been made.

La. R.S. 37:218A.  "Fee" means the agreed fee, whether fixed or contingent, and any advances to or for the client permitted by the Rules of Professional Conduct. *See* La. R.S. 37:218B.

Morris Bart maintains an attorney cannot pursue a claim against the former client unless the contingent fee contract is recorded.  This Court has not specifically addressed this question in earlier cases.  For other parties, recordation of the contract is not necessary to enforce the privilege against a creditor of the client, *see Calk v. Highland Const. & Mfg.*, 376 So.2d 495, 499 (La. 1979); however, recordation is necessary to impose an obligation on a defendant "to retain settlement funds until determination of [the discharged attorney's] fee entitlement."  *See Scott v. Kemper Ins. Co.*, 377 So. 2d 66, 68 (La. 1979).  The circuit courts are split on whether recordation is a prerequisite to pursuing a claim against a former client.[6]

We need not decide the issue in this case.  As *Saucier* made clear, a client is obligated to pay only one contingency fee. *Saucier*, 373 So. 2d at 118.  MMA seeks recovery only against successor attorneys, not former clients.  Whether recordation of the contract is essential to maintain a claim against a former client is not "determinative of the cause" in this proceeding and thus inappropriate for

---

[6]     For cases finding contract recordation is not necessary to pursue recovery against a former client, *see F. Q. Hood, Jr., APLC v. Ashton*, 54,830 (La. App. 2 Cir. 1/11/23), 354 So. 3d 854, 860, *writ denied,* 23-0201 (La. 4/12/23), 359 So. 3d 33;  *Breeden v. Crumes*, 11-1098 (La. App. 4 Cir. 4/4/12), 102 So. 3d 133, 138, *writ denied,* 12-1091 (La. 9/12/12), 98 So. 3d 312; *Hall v. St. Paul Fire & Marine Ins. Co.*, 03-1333 (La. App. 5 Cir. 2/23/04), 868 So. 2d 910, 912, *writ denied,* 04-0756 (La. 5/7/04); 872 So.2d 1087; *Francis v. Hotard*, 00-0302 (La. App. 1 Cir. 3/30/01), 798 So. 2d 982, 985, *writ not considered,* 2001-1323 (La. 6/22/01); 793 So. 2d 1263; *Rush, Rush & Calogero v. Barrios*, 97-1532 (La. App. 3 Cir. 4/22/98), 716 So. 2d 23, 25, *writ denied,* 98-2114 (La. 11/6/98), 728 So.2d 868.  For cases finding recordation of the contract is necessary to pursue recovery from the former client, *see Law Office of John D. Sileo, LLC v. Kruse*, 17-474 (La. App. 5 Cir. 2/21/18), 239 So. 3d 1057, 1065, *writ denied,* 18-0469 (La. 5/11/18), 241 So.3d 312; *Ferguson v. W. Jefferson Levee Dist. Bd. of Comm'rs*, 96-385 (La. App. 5 Cir. 11/14/96), 685 So.2d 273, 275, *writ granted in part and remanded,* 96-3005 (La. 2/7/97), 688 So. 2d 486; *Reis v. Fenasci & Smith,* 93-1785, (La. App. 4 Cir. 4/14/94), 635 So.2d 1319; *Murray, Murray, Ellis, Braden & Landry v. Minge*, 516 So. 2d 213, 216 (La. App. 4 Cir.  1987), *writ denied,* 516 So.2d 369 (La. 1988).

certification. *See* La. Sup. Ct. Rule XII § 1. For these reasons, we decline to address this issue.

For claims against a successor attorney, this Court has also not specifically addressed whether recordation of the contract is necessary for that action. The discharged attorney in *Saucier* recorded his contract, but the facts of *O'Rourke* do not indicate whether the attorney recorded his contract in that case. The *O'Rourke* opinion does confirm the attorney filed an intervention in the pending suit that was ultimately tried and produced the judgment under review. *O'Rourke*, 683 So. 2d at 699. The circuit courts are more uniform here, finding recordation of the contract is not necessary to maintain a claim against a successor attorney, but some form of timely notice to the attorney is required.[7] We agree.

When the claimants are both attorneys, or, as in *Calk*, an attorney and a creditor, both parties are asserting rights to the same corpus of money based on a privilege or security interest. Under those circumstances, the recordation of the contract is not necessary to effectuate the privilege. *See Calk*, 376 So. 2d at 496. As observed in *Calk* and applied in *Scott*, the recordation provision in Section 37:218 provides the discharged attorney a means to ensure his fee will be protected when a defendant pays a settlement, either by including the discharged attorney's name on the check or requiring his consent to disburse. *See Calk*, 376 So. 2d at 499-500; *Scott*, 377 So. 2d at 70. The defendant is the client's obligor, not a competing claimant. *Id*. Once the settlement is paid, the privilege attaches and is effective against other claimants. *See* La. R.S. 37:218A; *Calk*, 376 So. 2d at 499.

However, while recordation is not necessary, the discharged attorney "must assert his claim by intervention or other legal proceedings prior to disbursement of the proceeds to a third party." *Calk*, 376 So. 2d at 499. In this context, the successor

---

[7]   *See Sileo,* 239 So. 3d at 1065; *Reis*, 635 So. 2d at 1322-23; M*urray*, 516 So. 2d at 216; *Ferguson*, 685 So. 2d at 275.

attorney is the third party, and the discharged attorney must provide him the required notice before the contingent fee is paid, meaning the funds have been received, are no longer held in trust for the client, and have become the property of the successor attorney. Once commingled with the successor attorney's funds, the contingent fee—the thing subject to the privilege—has lost its identity, and, absent notice, the privilege is extinguished. *See* La. Civ. Code art. 3277(1) ("Privileges become extinct [by] the extinction of the thing subject to the privilege.").[8]

### Question 3: Can Attorney Recover Fees and Costs if He Withdraws

In the third certified question, the district court asked two questions, which are addressed together:

> A.    Does the *Saucier/O'Rourke* framework apply to a case in which a law firm is not discharged but instead withdraws from representation because it was no longer able to represent the client, or would the withdrawal from such cases render the withdrawing firm ineligible for the collection of attorneys' fees and costs?

> B.    Assuming an attorney with a contingent fee contract withdraws from the representation of a client in an attempt to either avoid an adverse ruling by a court or to avoid sanctions or accusations due to some form of misconduct by the attorney or his or her employees or agents, can that attorney subsequently recover his or her fees and/or costs on any basis from the successor law firm who takes up the case and represents the client from the point of withdrawal to conclusion?

Yes, in a case involving multiple contingent fee contracts, the *Saucier/O'Rourke* fee-allocation framework applies to any termination of an attorney's representation, whether by discharge or withdrawal. The Rules of Professional Conduct contain both mandatory and permissive grounds for an attorney to withdraw from representing a client. *See* Rule 1.16. Similar to when an attorney is discharged, a withdrawal can occur due to no fault of the attorney, such as an unexpected health issue, or, on the other extreme, may involve unethical or illegal conduct. Where the attorney bears some culpability, an *O'Rourke* reduction

---

[8]    Here, we note counsel for Morris Bart indicated that settlements of MMA's former cases are subject to an injunction requiring Morris Bart to withhold the full fee and MMA's claimed costs pending resolution of any disputes associated therewith.

13

or denial based on the nature and gravity of the misconduct is appropriate, particularly where the withdrawal had a material adverse effect on the client's interests. *See* Rule 1.16(b)(1).

Use of this approach in both discharge and withdrawal cases "allows courts to properly analyze the intricacies which invariably arise in contingency fee litigation, while also taking into consideration the conduct of attorneys which mar the profession and client confidence by requiring dismissal for cause." *O'Rourke*, 683 So. 2d at 704; *see also Wright v. Tschirn*, 03-1676 (La. App. 3 Cir. 6/9/04), 875 So. 2d 1037, 1040 (applying *Saucier* and rejecting blanket rule that would deny fee recovery by attorney who withdrew without cause).

### Question 5: Does the Judge or Jury Make the O'Rourke Adjustment

In the fifth question, the district court asked:

> If the 'modified *quantum meruit* analysis' espoused in *O'Rourke v. Cairns* is found to apply to the matters pending in Texas, who would reallocate the attorneys' fees and costs based on the 'nature and gravity' of the misconduct—the Court or the jury?

Supreme Court Rule XII authorizes a certification request for "questions of Louisiana law that are determinative of the cause" in a federal proceeding. La. Sup. Ct. Rule XII, § 1. In this case, Louisiana law does not determine whether the court or the jury should decide the *O'Rourke* adjustment.

The U.S. Supreme Court has long held that the right to a jury trial in federal court, including diversity cases applying state substantive law, is to be determined as a matter of federal law. *Simler v. Conner*, 372 U.S. 221, 222; 83 S.Ct. 609, 610; 9 L.Ed.2d 691 (1963) (*per curiam*). In *Simler*, a client challenged the validity of a contingent fee contract and the fees owed to an attorney. *See Simler v. Conner*, 295 F.2d 534 (10th Cir. 1961), *rev'd,* 372 U.S. 221; 83 S.Ct. 609; 9 L.Ed.2d 691 (1963). The client requested a jury trial, which was granted by the district court, but the court of appeal reversed, relying on state law to conclude the claim was purely equitable

14

in nature. *Id*. The U.S. Supreme Court reversed the court of appeal and reinstated the jury demand, finding the appellate court erred by applying state law to determine the issue. The Court explained:

> We agree with respondent that the right to a jury trial in the federal courts is to be determined as a matter of federal law in diversity as well as other actions. The federal policy favoring jury trials is of historic and continuing strength. Only through a holding that the jury-trial right is to be determined according to federal law can the uniformity in its exercise which is demanded by the Seventh Amendment be achieved. In diversity cases, of course, the substantive dimension of the claim asserted finds its source in state law, but the characterization of that state-created claim as legal or equitable for purposes of whether a right to jury trial is indicated must be made by recourse to federal law.

*Simler*, 372 U.S. at 222; 83 S.Ct. at 610-11 (citations and footnotes omitted).

Although the subject certified question focuses on one issue—the *O'Rourke* reduction—federal law still governs whether that issue will be submitted to the jury in a federal proceeding. As explained by the U.S. Fifth Circuit:

> [A]lthough the substantive issues are governed by state law pursuant to *Erie*, federal law governs the allocation of issues raised between judge and jury. 'It cannot be gainsaid that there is a strong federal policy against allowing state rules to disrupt the judge-jury relationship in the federal courts.' *Byrd v. Blue Ridge Rural Electric Cooperative*, 1958,356 U.S. 525, 538, 78 S.Ct. 893, 901, 2 L.Ed.2d 953; *Simler v. Conner*, 1963,372 U.S. 221, 222, 83 S.Ct. 609, 610, 9 L.Ed.2d 691. Hence, where federal rules would entitle litigants to a jury determination of a particular issue, the court will not yield to a state practice to the contrary. *Byrd*; *Magenau v. Aetna Freight Lines, Inc.*, 1959, 360 U.S. 273, 278, 79 S.Ct. 1184, 1188, 3 L.Ed.2d 1224.

*Nunez v. Superior Oil Co.*, 572 F.2d 1119, 1125 (5th Cir. 1978) (footnotes and some citations omitted).

In this case, applying federal law, the district court determined that Morris Bart has a right to a jury trial. *See MMA Law Firm, PLLC v. Morris Bart, LLC*, 4:24-CV-4446, 2024 WL 5088383, at *4 (S.D. Tex. 12/12/24). The allocation of issues between the jury and the presiding judge will be determined by federal law, not Louisiana law. For this reason, we decline to answer this certified question. *See* La. Sup. Ct. Rule XII § 1.

## CONCLUSION

Pursuant to Louisiana Supreme Court Rule XII, the judgment rendered by this court upon the questions certified shall be sent by the clerk of this court under its seal to the United States Southern District of Texas.

**CERTIFIED QUESTIONS ANSWERED.**