**EXHIBIT 2**

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| In Re: | § | |
| | § | **CASE NO. 24-31596** |
| **MMA LAW FIRM, PLLC** | § | |
| | § | |
| | § | |
| **DEBTOR** | § | |

**JASON J. JOY & ASSOCIATES, PLLC'S AMENDED LIMITED OBJECTION
REGARDING DEBTOR'S MOTION TO COMPROMISE CONTROVERSY
WITH SANGISETTY LAW FIRM, PLLC**
[Relates to Docket. No. 1379]

Jason J. Joy & Associates, PLLC ("***JJA***") files this amended limited objection (the "***Objection***") regarding MMA Law Firm, PLLC's ("***Debtor***" or "***MMA***") *Motion to Compromise Controversy with Sangisetty Law Firm, PLLC* [Docket No. 1379] (the "***Motion***"),[1] and respectfully shows this Court as follows:

**PRELIMINARY STATEMENT**

1.      JJA does not in principle oppose a settlement between the Debtor and the Sangisetty Law Firm, PLLC ("***SLF***"). JJA files this Objection in order to preserve its rights, claims, causes of action and defenses under the proposed settlement, including (1) preserving JJA's claims against MMA for postpetition actions of MMA involving MMA's unauthorized access to and use of JJA's proprietary case management system and attorney work product; (2) regarding the theft and misuse of various confidential documents and privileged attorney-client communications, (3) ensuring that the settlement between MMA and SLF should not have any *res judicata* or other preclusive

---

[1] Capitalized terms used but not defined herein have the meaning ascribed to them in the Motion.

1

18295118

effect against JJA; and (4) establishing that the settlement payments will not come from funds to which JJA has a claim.

**FACTUAL BACKGROUND**

**A.    Case Background**

2.      On January 27, 2025, the Debtor initiated Adversary Proceeding No. 25-03230 against SLF, asserting entitlement to a portion of attorneys' fees earned in connection with hurricane cases purportedly handled by SLF. [2]  The reference was withdrawn on February 11, 2025.  The proceeding is currently pending under *MMA v. SLF*, Case No. 4:25-cv-00318 (the "***MMA v. SLF Case***"). [3]  On February 12, 2025, SLF sought dismissal of the adversary proceeding (*See* Adv. Docket No. 8) arguing that JJA was an indispensable party under Rule 19 because any adjudication of fee apportionment involved a single pool of fees and could not be resolved by JJA's absence from the proceeding.  *Id.* at 9.  SLF argued, "Plaintiff's complaint references co-counsel and an agreement but no such document has been attached. Defendant presumes that Plaintiff is referencing an agreement with Jason Joy & Associates. Pursuant to Fed. R. Civ. P. 19, these parties must be joined because otherwise, among other things, 'the court cannot accord complete relief among existing parties.'" *Id.* at 2.

---

[2] There is currently a lawsuit between SLF and JJA pending under Case No. 2:25-cv-01561 (E.D. La.) ("***Louisiana Case***").  The Louisiana Case involves an alleged fee-splitting dispute between SLF and JJA. SLF filed suit against JJA in Terrebonne Parish, and JJA removed the case to the Eastern District of Louisiana. The court denied SLF's motion to transfer or dismiss and recognized the JJA–SLF Joint Venture Agreement as the operative contract.  There is also a proceeding in the 32nd Judicial District Court for the Parish of Terrebonne, Louisiana, styled *Sangisetty Law Firm, LLC v. Xpand Legal, LLC*, Case No. 200581 (the "***Xpand Case***"). SLF filed the Xpand Case against Xpand Legal, LLC on August 14, 2024, alleging breach of contract. The contract is between SLF, JJA, and Xpand. On March 17, 2025, the court sustained SLF's exception of nonjoinder, ruling that JJA is an indispensable party. JJA has since joined the litigation. Both suits initiated by SLF were filed in bad faith, are pretextual in nature, and are part of SLF's overall scheme.

[3] References to the docket in the MMA v. SLF Case are abbreviated as "Adv. Docket No. ___."

2

3.     On April 11, 2025, JJA filed a motion to intervene, followed by an amended motion to intervene on April 19, 2025.  Adv. Docket Nos. 11 and 12.  On May 2, 2025, MMA and SLF filed oppositions to the motion to intervene.  Adv. Docket Nos. 16 and 17.  SLF argued that JJA should not be permitted to participate in the proceeding despite taking the *opposite* position in its motion to dismiss MMA's claims against SLF.  *See* Adv. Docket No. 17 at 2 ("SLF believes its defense against MMA's Saucier claims will adequately protect the interests, if any, of JJA.").  On July 8, 2025, the District Court entered an agreed order directing that 45 percent of settlement proceeds in MMA successor cases should be deposited into a reserve account; JJA was not a party to that agreement.  Adv. Docket No. 23.

4.     On March 13, 2026, the District Court set JJA's intervention motion for hearing for Wednesday, March 18, 2026.  Adv. Docket No. 29.  MMA filed the Motion on Monday, March 16, 2026.  The District Court abated the hearing in the MMA v. SLF Case on March 17, 2026.  Adv. Docket No. 31.

**B.     Background between MMA, JJA, and SLF**

5.     In early June 2023, Mr. Moseley contacted Houston attorney Mr. Jason Joy to introduce himself and request JJA's assistance in salvaging roughly 6,000 former MMA clients that had not yet obtained new counsel following MMA's suspension in March 2023. Joy did not know Moseley and was only vaguely familiar with the MMA disaster. Moseley contacted Joy because of Joy's excellent, hard-earned reputation for successfully litigating large numbers of injured Louisiana victims in mass disaster litigation. Joy also maintained extensive personal and professional ties to south Louisiana and the legal community in that state.

6.     Moseley impressed upon Joy the extreme urgency of the situation as several thousand lawsuits needed to be (properly) filed ahead of the rapidly approaching two-year statute

18295118

of limitations[4] for claims arising out of Hurricane Ida. After considerable due diligence, Joy determined to help the victims—JJA felt it had little choice as few firms were willing to be associated with Mr. Moseley or MMA thereby leaving thousands of innocent victims stranded.

7.      Contrary to MMA's representation in the Motion, JJA and MMA entered into a Secondment Agreement on or about June 23, 2023, under which MMA agreed to transfer to JJA thousands of case files of former MMA clients for review.  These former MMA clients had not yet retained new counsel following MMA's suspension from the practice of law.  A true and correct copy of the Secondment Agreement is attached hereto as **Exhibit 1**.

8.      Under the Secondment Agreement, JJA agreed to hold forty-five (45%) of fees in trust pending resolution of MMA's claimed interest.  The Secondment Agreement was negotiated and drafted by Mr. Sangisetty while acting as JJA's attorney in fact, beginning in June 2023.  In exchange, MMA was supposed to transfer client files to JJA for continued representation.  MMA was obligated to deliver complete and usable files, including accurate case information, correct insurer identification, and supporting documentation.  MMA failed to do so.  JJA was forced to remediate approximately 974 Louisiana hurricane cases at its own expense, impairing the settlement posture of numerous matters.

9.      On or about July 2, 2023, JJA and SLF entered into a written Joint Venture Agreement (the "*Joint Venture Agreement*") to jointly represent Louisiana hurricane claimants (the "*JJA-SLF Cases*"); it was modified in September 2023, following the Hurricane Ida prescriptive deadline (August 29, 2023).  The Joint Venture Agreement established inter alia a co-counsel framework: SLF would serve as Louisiana counsel of record and handle the day-to-day, case-specific litigation tasks, including mediations and hearings.  JJA would assume "joint

---

[4] Or, prescriptive period, in Louisiana legal parlance.

4

18295118

responsibility" for each JJJ-SLF Client "as defined under Texas Disciplinary Rules of Professional Conduct Rule 1.04 and its official comments," and JJA would provide know how and advance costs and expenses to finance the joint venture and assist SLF as requested and needed, including the hiring and retention of additional attorneys. JJA and SLF agreed to utilize the Smart Advocate cloud-based CRM to manage the individual cases, organize and save files and documents, and manage the case docket.

10.     Section V of the July 2, 2023 Joint Venture Agreement left fee allocation for case-by-case determinations, but in September 2023, SLF and JJA agreed to split fees on a 50/50 basis. On October 2, 2023, SLF confirmed by email the equal (50/50) division of attorney's fees on jointly represented clients applied retroactively to all JJJ-SLF Clients retained prior to the Ida deadline.  The United States District Court for the Eastern District of Louisiana has recognized that the JJA–SLF Joint Venture Agreement "forms the basis of" the parties' fee dispute. *Sangisetty Law Firm, LLC v. Jason Joy & Assocs., PLLC*, No. 2:25-cv-01561 (E.D. La. Sept. 12, 2025) (Docket No. 15).[5]

11.     SLF collected attorneys' fees on joint cases and maintained a fee-tracking spreadsheet reflecting settlement proceeds on jointly represented matters. In or around late 2024, SLF cut off JJA's access to the fee-tracking spreadsheet without notice or justification.  At the time of the lockout, the spreadsheet SLF controlled reflected $6,464,804.77 in total settlement proceeds, much of that was from joint cases.  This included dozens of "collections cases" or "check reissue" matters totaling at least $416,640.46—these were cases in which MMA had already

---

[5] The JJA-SLF Joint Venture Agreement includes a mandatory arbitration clause. This Objection is filed solely to preserve JJA's rights, claims, causes of action, and defenses as discussed herein, including its rights, claims, causes of action, and defenses against SLF.  Accordingly, JJA does not seek to invoke this Court's jurisdiction to resolve its dispute with SLF, and this Objection should not be construed as a waiver of any of JJA's rights provided for in the Joint Venture Agreement, including but not limited to, JJA's right to invoke the mandatory arbitration clause, or of any claims, causes of action, or defenses related to the Joint Venture Agreement.

18295118

obtained settlements before its suspension or disbarment.  On "collections" or "check reissue" matters, SLF's sole involvement was requesting that insurance carriers reissue cancelled settlement checks.  SLF performed no legal work on these files yet retained the full contingency fee.

12.     Despite SLF requesting that JJA advance hundreds of thousands of dollars including multiple cash transfers directly to SLF, the fact is SLF was never truly transparent with JJA. For example, SLF claimed it was not feasible to notify JJA each time a case settled or provide the amount of each settlement. At no time did SLF notify JJA when settlement funds were received or consult with JJA regarding case expenses before disbursing settlement proceeds to clients. SLF unilaterally deducted purported "expenses" from client settlements without consulting JJA or verifying that deductions adequately covered all claimed expenses that were actually incurred on a particular case. Also, SLF ignored JJA's concerns that it was not deducting the correct amount of attorney fees pursuant to the Louisiana Supreme Court's *Saucier* decision. SLF has remitted $0 to JJA on the fees collected in the joint cases.

13.     At Mr. Moseley's strong recommendation, JJA and SLF agreed to utilize the same Smart Advocate case management software that MMA utilized for the La. Hurricane clients. JJA advanced the costs of nearly $30,000 for the sole use and benefit of the JJA-SLF clients and the joint venture with of JJA and SLF. The system logs all user activity, including case access, document views, edits, and deletions.  After MMA was terminated as counsel and affected clients executed fee agreements with JJA and SLF, MMA personnel unlawfully accessed JJA's case management system without knowledge or authorization from JJA. It is unknown if SLF provided MMA with login credentials or access—if so, it was without JJA's knowledge or approval.

6

18295118

14.     Specifically, MMA personnel accessed approximately 2,084 cases, deleted approximately 26 documents, and generated a total activity index of approximately 18,381 actions. Through this unauthorized access, MMA obtained JJA's confidential legal-malpractice fee agreement template—a proprietary document that later appeared in MMA's court filings. *See* Docket No. 402-7 (Nov. 10, 2024).  MMA's unauthorized access caused harm and loss to JJA, including compromise of confidential client and firm materials, impairment of JJA's proprietary systems, and costs incurred to investigate and remediate the unauthorized access.

## LIMITED OBJECTION

15.     While the Debtor proposes to reserve JJA's rights against SLF in the proposed order attached to the Motion, the reservation of rights fails to (1) preserve claims JJA has against MMA for postpetition actions of MMA; (2) ensure that the settlement between MMA and SLF does not have any *res judicata* or other preclusive effect against JJA; and (3) establish that the settlement payments will not come from funds to which JJA has a claim.  JJA objects that the settlement should not be approved until these deficiencies are remedied.

16.     First, the language in the proposed order states that,

> nothing in this Order, the attached Settlement Agreement, or the compromise approved herein shall be construed as resolving, adjudicating, releasing, impairing, or otherwise affecting any rights, claims, causes of action, or defenses that Jason Joy & Associates, PLLC may have against Sangisetty, or that Sangisetty may have against Joy, all of which are expressly preserved in full

Docket No. 1379-2 at 1.  Nothing in the proposed order addresses the rights, claims, causes of action or defenses that JJA has or may have against MMA.  JJA has claims against MMA for MMA's unauthorized use of JJA's litigation management system and JJA's work product.  The proposed order should not be entered until it makes clear that JJA's rights, claims, causes of action, or defenses against MMA are not resolved, adjudicated, released, impaired, or otherwise affected by the proposed order, the compromise between MMA and SLF, or the Settlement Agreement.

7

18295118

17.     Second, neither the proposed order, the Settlement Agreement, nor the compromise between MMA and SLF should have any *res judicata* or other preclusive effect with respect to JJA and SLF or JJA and MMA.  While SLF took the position that JJA was an indispensable party in the MMA v. SLF Case (Adv. Docket No. 8), SLF later reversed that position when opposing JJA's intervention (Adv. Docket No. 17).  MMA has maintained that JJA is not an indispensable party.  The District Court did not have the opportunity to rule on JJA's intervention motion because MMA sought to abate the hearing because it had filed the Motion.  *See* Adv. Docket No. 30.  Clearly, MMA was seeking to prevent JJA's intervention in the District Court case.  Because JJA has been thus far prevented from defending its rights and pursuing its claims against MMA and JJA in the District Court, justice requires that the Court ensure JJA is not affected by any *res judicata* or other preclusive effects that parties may raise.

18.     Lastly, while the Motion and proposed order simply provide that SLF will make two payments of $420,629.06 and $150,000.00, respectively, to MMA, there is no detail regarding whether the settlement is being paid from the clients' settlement funds or from other SLF cash that is unrelated to proceeds in which JJA and MMA may have an interest.  The clients' settlement funds are escrowed pursuant to the order of the District Court requiring escrowing.  Adv. Docket No. 23.  JJA has an interest in those funds, which SLF previously represented to the District Court.  Neither the Motion nor the proposed order explicitly preserve JJA's rights with respect to those funds, which are subject to separate agreements between JJA and SLF.  Additionally, none of the proposed settlement payments should come from any attorneys' fees generated in jointly-represented JJJ-SLF Cases or from any interest, appreciation, or gain generated by virtue of any investment of this money—whether from JJA's 50% fee interest in the JJJ-SLF Cases or from SLF's ostensible 50% fee interest in such cases.

8

18295118

19.     Rule 1.15(e) of the Louisiana Rules of Professional Conduct requires that,

> [w]hen in the course of representation a lawyer is in possession of property in which two or more persons (one of whom may be the lawyer) claim interests, the property shall be kept separate by the lawyer until the dispute is resolved. The lawyer shall promptly distribute all portions of the property as to which the interests are not in dispute.

SLF must hold the funds arising from JJJ-SLF Cases in trust because JJA has a claim to such funds, and SLF agreed to place the funds in trust on or about May 29, 2025.  Attached hereto as **Exhibit 2** is a letter from SLF's counsel to counsel for JJA that represents that fifty percent (50%) of the settlements funds from the hurricane claims are held in the IOLTA account of SLF.  No settlement payment from SLF to MMA should come from these settlement funds because JJA has neither agreed to such a payment nor have MMA or SLF sought relief to make such a payment, and it would be a breach of SLF's professional responsibility to do so.

WHEREFORE, JJA does not oppose entry of an order approving the settlement between MMA and SLF that includes these protections for JJA.

9

18295118

Dated: April 7, 2026
Houston, Texas.

                                                    Respectfully submitted,

                                                    **PORTER HEDGES LLP**

                                                    */s/ Joshua W. Wolfshohl*
                                                    Joshua W. Wolfshohl; TX Bar No. 24038592
                                                    Heather K. Hatfield; TX Bar No. 24050730
                                                    Michael B. Dearman; TX Bar No. 24116270
                                                    1000 Main Street, 36th Floor
                                                    Houston, Texas 77002
                                                    Telephone: (713) 226-6000
                                                    Facsimile: (713) 226-6248
                                                    jwolfshohl@porterhedges.com
                                                    hhatfield@porterhedges.com
                                                    mdearman@porterhedges.com

                                                    **COUNSEL TO JASON J. JOY &**
                                                    **ASSOCIATES, PLLC**


### CERTIFICATE OF SERVICE

I certify that on April 7, 2026, I caused a copy of the foregoing document to be served by electronic transmission to all registered ECF users appearing in this case on April 7, 2026.

                                                    */s/ Joshua W. Wolfshohl*
                                                    Joshua W. Wolfshohl


### CERTIFICATE OF CONFERENCE

I certify that on April 6, 2026, I attempted to confer with counsel for the Debtor regarding the relief requested in the Motion and JJA's limited objection thereto. I left a message for Ms. Goott.  Ms. Goott returned my call, but I was unavailable when she called.  The parties will continue to engage regarding a potential resolution to JJA's limited objection.

                                                    */s/ Joshua W. Wolfshohl*
                                                    Joshua W. Wolfshohl

18295118

# EXHIBIT 1

EXHIBIT

**A**

CASE No.
4:25-CV-0318

## MMA AND JJA TRANSFER/ASSIGNMENT/SECONDMENT AGREEMENT

**THIS SECONDMENT AGREEMENT** (this "Agreement") is made the **22nd** day of June, 2023

**BETWEEN:**

(1) MMA Law Firm, PLLC ("MMA"), a professional limited liability company and existing under the laws of the state of Texas with a place of business at 1415 Louisiana St, Suite 2900, Houston, Texas 77002; and

(2) Jason Joy & Associates ("JJA"), a law firm existing under the laws of the state of Texas] with a place of business at 909 Texas Street, Houston, Texas 77002.

MMA and JJA are referred to individually herein as a "Party" and collectively as the "Parties".

**WHEREAS:**

(a) The parties desire to facilitate the expeditious transfer of MMA's current Louisiana client files related to Hurricanes Laura, Delta, Ida, and other storms in order to preserve asset these clients' under their respective insurance policies;

(b) This agreement is intended to facilitate the transfer of MMA clients to JJA in accordance with all applicable Rules of Professional Conduct;

(c) JJA will seek the Courts' and LSBA's assistance to ensure representation of current MMA clients is ethically and expeditiously transferred to JJA considering prescription on Hurricane Ida claims is August 29, 2023, less than 70 days from this date.

**NOW, THEREFORE,** for the mutual promises made herein, and other good and valuable consideration, the receipt and adequacy of which are hereby acknowledged, the parties agree as follows:

Section 1. Purpose and Scope:

The purpose of this agreement is to assign, delegate, and transfer MMA's current Louisiana client files to JJA or an Affiliate Law Firm in accordance with the parties duties under applicable law and Rules of Professional Conduct and in accordance with the terms and conditions herein. And where clients cannot, or need not, be transferred, JJA agrees to prosecute claims, at a minimum, to the point of preserving prescription and facilitate closeout of resolved claims.

Section 2. Terms and Conditions

(a) The parties hereto agree that JJA will enter into a contingency fee contract with certain MMA current Louisiana clients. JJA acknowledges that MMA asserts an attorney fee interest in the transferred client files as its former attorney. As such, JJA agrees to hold 45% of any attorney fee and reimbursable expenses earned in connection with the transferred client files in an escrow/trust account.

(b) MMA agrees to allow JJA, as a secondee of MMA, access to its client database to facilitate efficient transfer of the client files.

(c) MMA agrees to obtain express written consent from JJA and/or the Court for all communication with its current clients.

(d) JJA will immediately seek the proper authority to utilize MMA's database or a similar system to facilitate efficient communication with the transferred clients and to ensure efficient and expeditious preservation of their respective claims in light of the August 29, 2023 prescription date for the clients who have first-party insurance claims arising out damage resulting from Hurricane Ida.

Section 3. Confidentiality.

JJA shall not use, divulge or communicate to any person (other than those whose province it is to know the same or with authority from MMA) any trade secrets, intellectual property, or information which are for the time being confidential to MMA or any of its subsidiaries and are not in the public domain ("Confidential Information"), which JJA may have received or obtained during the transfer of client files or client representation. This restriction shall cease to apply to information or knowledge that may come into the public domain otherwise than through the unauthorized disclosure by or the fault of JJA.

Section 4. Indemnity.

Once a case has been transferred and legal services agreement has been entered into by JJA and the transferred client, JJA shall indemnify and hold harmless MMA from any and all malpractice claims that would arise from JJA's malpractice relating to the claim. MMA agrees to indemnify and hold harmless JJA from any and all malpractice claims that would arise from MMA's actions prior to JJA's participation in the case/claim.

Section 5. MMA Transfer of Representation.

(a) MMA expressly acknowledges that its representation with its respective Louisiana clients is terminated with JJA endeavoring to obtain new legal contracts of representation. JJA is expressly not being assigned MMA's legal contracts and reserves the right to refuse representation upon evaluation of the individual client matter.

(b) JJA has not had any opportunity to review the MMA client files referenced herein prior to the execution of this agreement. As such, the parties understand and acknowledge that JJA's representation of the transferred client files does not begin until the execution of a new legal services contract with the transferred client. MMA expressly acknowledges that it will not be party to this new legal services contract but, rather, asserts a fee and expense interest in any attorney fee earned as described above.

(c) Further, JJA reserves the right to reject representation of the transferred client at its discretion.

Section 6. No Agent/ Employee Relationship.

The parties acknowledge that nothing in this agreement is intended to create a contract of employment, joint venture, partnership, fiduciary duty, or other legal status by and among the parties other than to facilitate an efficient transfer of the client files so that they can be expeditiously reviewed and/or the clients' rights can be preserved and asserted.

Section 7. Miscellaneous.

(a) Entire Agreement. This Agreement sets forth the entire agreement and understanding of the parties concerning the subject matter hereof and supersedes all prior agreements, arrangements and understandings between MMA and JJA concerning such subject matter. No representation, promise, inducement or statement of intention has been made by or on behalf of either party hereto that is not set forth in this Agreement or the documents referred to herein. This Agreement may not be amended or modified except by a written instrument specifically referring to this Agreement executed by the parties hereto.

(b) Waiver. The failure of either Party hereto at any time or from time to time to require performance of any of the other party's obligations under this Agreement shall in no manner affect the right to enforce any provision of this Agreement at a subsequent time, and the waiver of any rights arising out of any breach shall not be construed as a waiver of any rights arising out of any subsequent breach.

(c) No Third Party Beneficiary. The terms and provisions of this Agreement are intended solely for the benefit of each Party hereto, and it is not the intention of the Parties to confer third-party beneficiary rights upon any other person.

(d) No Assignment. Neither this Agreement nor any right, interest or obligation hereunder may be assigned by any Party hereto without the prior written consent of the other Party, except that JJA will endeavor to enter into a joint venture with attorneys licensed in Louisiana to effectuate the terms of this agreement.

(e) Headings. The headings used in this Agreement have been inserted for convenience of reference only and do not define or limit the provisions hereof.

(f) Severability. In the event that any provision of this Agreement shall be determined by a court of competent jurisdiction to be invalid, illegal or unenforceable, the validity, legality and enforceability of the remaining provisions shall not in any way be affected or impaired thereby.

(g) Governing Law. This Agreement shall be governed by and construed and enforced in accordance with federal law and, to the extent federal law incorporates state law, that law shall be the laws of the State of Texas without regard to its principles of conflicts of laws.

      (h) <u>Non-disparagement</u> JJA agrees and covenants that it will not at any time, directly or indirectly, make, publish or communicate to any person or entity or in any public forum any defamatory or disparaging remarks, comments, or statements concerning MMA or its businesses, or any of its employees, officers, shareholders, members or advisors. MMA agrees and covenants that it shall not make any defamatory or disparaging remarks, comments, or statements concerning JJA to any third parties.

[Signature Page Fallows]

**IN WITNESS WHEREOF,** the undersigned have executed this Secondment Agreement as of the Effective Date.

MMA Law Firm, PLLC

By: _____

Title: MANAGING MEMBER   C/22/25

Jason Joy & Associates

By: _____

Title: _____   6/22/23

**EXHIBIT 2**



## OTTINGER HEBERT
### ATTORNEYS AT LAW

PAUL J. HEBERT
pjhebert@ohllc.com

May 29, 2025

Email Only: dane@daneciolino.com
clareroubion@lalegalethics.com

Mr. Dane Ciolino
Ms. Clare Roubion

      Re:    Hurricane Claims – Legal Fee Dispute
      Our File:  PJH-2253-003

Dear Dane and Clare:

Reference is made to your email dated May 14, 2025, to Ravi Sangisetty relative to the claims by your client Jason Joy & Associates (sometimes herein "JJA") concerning to the "Hurricane-Related" litigation matters. As indicated in my email to you dated May 20, 2025, Ottinger Hebert, L.L.C. has been retained to represent Ravi Sangisetty, individually, the Sangisetty Law Firm, LLC, Jean-Paul Coussan, individually, and Andrus, Boudreaux, Landry & Coussan, APLC (sometimes collectively the "Clients") in connection with JJA's claims and demands.

First, in accordance with Rule 1.15(e) the disputed amount of fifty percent (50%) of the settlement funds that have been collected from the respective hurricane claims (whether by negotiations with the respective insurers or otherwise) is in the IOLTA account of the Sangisetty Law Firm; specifically, $825,000 is in their escrow.

Concerning your request for a full accounting and access to all case files, this information is being compiled.  As you indicated, there are close to 750 clients who were forced to seek new representation concerning hurricane and storm (*i.e.*, Laura, Delta, and Ida) related lawsuits because of the unprecedent situation involving the Houston-based firm McClenny, Moseley & Associates, PLLC (herein "MMA") being suspended/enjoined from practicing in Louisiana.

As to the immediate payment of the undisputed portion of the settlement proceeds being remitted, our Clients' position is that all the $825,000, in escrow, is in dispute. It is our Clients' position that Mr. Joy failed to fulfill his obligations and provide assistance in accordance with the "Joint Venture Agreement" signed between the parties, which specifically, provides that "the determination of attorney fees shall be handled on a case-by-case basis and in accordance with the Louisiana Rules of Professional Conduct."

Page 2 of 2

Concerning your reference to the Texas Rules of Disciplinary Conduct, under Rule 8.5(b) *Choice of Law* of the Louisiana Rules of Professional Conduct, we are of the opinion that the Louisiana Rules of Professional Conduct apply to this dispute. Although Rule 1.5(e) allows for the division of a fee between lawyers of different firms provided the client is informed in writing and the total fee is reasonable, it requires that "each lawyer renders meaningful legal services for the client in the matter."

In fact, the clear intent of the parties to the "Joint Venture" was that Mr. Joy's firm render meaningful legal services and assistance. The evidence reflects that was not the case. In fact, Mr. Joy provided very little legal assistance and failed to render critical legal support. Mr. Joy and his law firm allegedly utilized a third-party company, Xpand, purportedly for legal support work. As you are no doubt aware, our clients are in litigation in Terrebonne Parish relative to the monies owed to Xpand, who is seeking an exorbitant amount of money in the sum of $750,000; which, ultimately, Sangisetty through his firm or his "Of Counsel" had to perform.

Regarding the request for the agreements with the Sangisetty Law Firm and Mr. Coussan and Mr. Magee, Mr. Coussan, along with the attorneys of Andrus, Boudreaux Landry & Coussan, APLC, and Mr. Magee are "Of Counsel" with the Sangisetty firm.

As to the 45% MMA holdback, our Clients' do not have an agreement with MMA. It is our understanding that this was an agreement by and between JJA and MMA. As your client is aware, our Client, Sangisetty, is in the MMA Texas Bankruptcy court relative to this issue.

Sincerely,

**OTTINGER HEBERT, L.L.C.**

Paul J. Hebert
Tammy Parker Pratt

PJH/dma

**EXHIBIT 3**
**REDLINE**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| **In Re:** | § | |
| | § | **CASE NO. 24-31596** |
| **MMA LAW FIRM, PLLC** | § | |
| | § | |
| | § | |
| **DEBTOR** | § | |

---

**JASON J. JOY & ASSOCIATES, PLLC'S <u>AMENDED</u> LIMITED OBJECTION**
**REGARDING DEBTOR'S MOTION TO COMPROMISE CONTROVERSY**
**WITH SANGISETTY LAW FIRM, PLLC**
[Relates to Docket. No. 1379]

---

Jason J. Joy & Associates, PLLC ("***JJA***") files this <u>amended</u> limited objection (the "***Objection***") regarding MMA Law Firm, PLLC's ("***Debtor***" or "***MMA***") *Motion to Compromise Controversy with Sangisetty Law Firm, PLLC* [Docket No. 1379] (the "***Motion***"),[1] and respectfully shows this Court as follows:

**PRELIMINARY STATEMENT**

1.      JJA does not in principle oppose a settlement between the Debtor and the Sangisetty Law Firm, PLLC ("***SLF***").  JJA files this Objection in order to preserve its rights, claims, causes of action and defenses under the proposed settlement, including (1) preserving JJA's claims against MMA for postpetition actions of MMA involving MMA's unauthorized access to and use of JJA's proprietary case management system and attorney work product; (2) regarding the theft and misuse of various confidential documents and privileged attorney-client communications, (3) ensuring that the settlement between MMA and SLF should

---

[1] Capitalized terms used but not defined herein have the meaning ascribed to them in the Motion.

1

18295118

not have any *res judicata* or other preclusive effect against JJA; and (4) establishing that the settlement payments will not come from funds to which JJA has a claim.

## FACTUAL BACKGROUND

### A.    Case Background

2.    On January 27, 2025, the Debtor initiated Adversary Proceeding No. 25-03230 against SLF, asserting entitlement to a portion of attorneys' fees earned in connection with hurricane cases purportedly handled by SLF. [2]  The reference was withdrawn on February 11, 2025.  The proceeding is currently pending under MMA v. SLF, Case No. 4:25-cv-00318 (the "***MMA v. SLF Case***"). [3]  On February 12, 2025, SLF sought dismissal of the adversary proceeding (*See* Adv. Docket No. 8) arguing that JJA was an indispensable party under Rule 19 because any adjudication of fee apportionment involved a single pool of fees and could not be resolved by JJA's absence from the proceeding.  *Id.* at 9.  SLF argued, "Plaintiff's complaint references co-counsel and an agreement but no such document has been attached. Defendant presumes that Plaintiff is referencing an agreement with Jason Joy & Associates. Pursuant to Fed. R. Civ. P. 19, these parties must be joined because otherwise, among other things, 'the court cannot accord complete relief among existing parties.'" *Id.* at 2.

---

[2] There is currently a lawsuit between SLF and JJA pending under Case No. 2:25-cv-01561 (E.D. La.) ("***Louisiana Case***").  The Louisiana Case involves an alleged fee-splitting dispute between SLF and JJA. SLF filed suit against JJA in Terrebonne Parish, and JJA removed the case to the Eastern District of Louisiana. The court denied SLF's motion to transfer or dismiss and recognized the JJA–SLF Joint Venture Agreement as the operative contract. There is also a proceeding in the 32nd Judicial District Court for the Parish of Terrebonne, Louisiana, styled *Sangisetty Law Firm, LLC v. Xpand Legal, LLC*, Case No. 200581 (the "***Xpand Case***"). SLF filed the Xpand Case against Xpand Legal, LLC on August 14, 2024, alleging breach of contract. The contract is between SLF, JJA, and Xpand. On March 17, 2025, the court sustained SLF's exception of nonjoinder, ruling that JJA is an indispensable party. JJA has since joined the litigation. Both suits initiated by SLF were filed in bad faith, are pretextual in nature, and are part of SLF's overall scheme.

[3] References to the docket in the MMA v. SLF Case are abbreviated as "Adv. Docket No. ___."

18295118

3.     On April 11, 2025, JJA filed a motion to intervene, followed by an amended motion to intervene on April 19, 2025.  Adv. Docket Nos. 11 and 12.  On May 2, 2025, MMA and SLF filed oppositions to the motion to intervene.  Adv. Docket Nos. 16 and 17.  SLF argued that JJA should not be permitted to participate in the proceeding despite taking the *opposite* position in its motion to dismiss MMA's claims against SLF.  *See* Adv. Docket No. 17 at 2 ("SLF believes its defense against MMA's Saucier claims will adequately protect the interests, if any, of JJA.").  On July 8, 2025, the District Court entered an agreed order directing that 45 percent of settlement proceeds in MMA successor cases should be deposited into a reserve account; JJA was not a party to that agreement.  Adv. Docket No. 23.

4.     On March 13, 2026, the District Court set JJA's intervention motion for hearing for Wednesday, March 18, 2026.  Adv. Docket No. 29.  MMA filed the Motion on Monday, March 16, 2026.  The District Court abated the hearing in the MMA v. SLF Case on March 17, 2026.  Adv. Docket No. 31.

**B.     Background between MMA, JJA, and SLF**

5.     In early June 2023, Mr. Moseley contacted Houston attorney Mr. Jason Joy to introduce himself and request JJA's assistance in salvaging roughly 6,000 former MMA clients that had not yet obtained new counsel following MMA's suspension in March 2023. Joy did not know Moseley and was only vaguely familiar with the MMA disaster. Moseley contacted Joy because of Joy's excellent, hard-earned reputation for successfully litigating large numbers of injured Louisiana victims in mass disaster litigation. Joy also maintained extensive personal and professional ties to south Louisiana and the legal community in that state.

6.     Moseley impressed upon Joy the extreme urgency of the situation as several thousand lawsuits needed to be (properly) filed ahead of the rapidly approaching two-year statute

3

of limitations[4] for claims arising out of Hurricane Ida. After considerable due diligence, Joy determined to help the victims—JJA felt it had little choice as few firms were willing to be associated with Mr. Moseley or MMA thereby leaving thousands of innocent victims stranded.

7.      Contrary to MMA's representation in the Motion, JJA and MMA entered into a Secondment Agreement on or about June 23, 2023, under which MMA agreed to transfer to JJA thousands of case files of former MMA clients for review.  These former MMA clients had not yet retained new counsel following MMA's suspension from the practice of law.  A true and correct copy of the Secondment Agreement is attached hereto as **Exhibit 1**.

8.      Under the Secondment Agreement, JJA agreed to hold forty-five (45%) of fees in trust pending resolution of MMA's claimed interest.  The Secondment Agreement was negotiated and drafted by Mr. Sangisetty while acting as JJA's attorney in fact, beginning in June 2023.   In exchange, MMA was supposed to transfer client files to JJA for continued representation.  MMA was obligated to deliver complete and usable files, including accurate case information, correct insurer identification, and supporting documentation.  MMA failed to do so.  JJA was forced to remediate approximately 974 Louisiana hurricane cases at its own expense, impairing the settlement posture of numerous matters.

9.      On or about July 2, 2023, JJA and SLF entered into a written Joint Venture Agreement (the "*Joint Venture Agreement*") to jointly represent Louisiana hurricane claimants (the "*JJA-SLF Cases*"); it was modified in September 2023, following the Hurricane Ida prescriptive deadline (August 29, 2023).  The Joint Venture Agreement established inter alia a co-counsel framework: SLF would serve as Louisiana counsel of record and handle the day-to-day, case-specific litigation tasks, including mediations and hearings. JJA would assume

---

[4] Or, prescriptive period, in Louisiana legal parlance.

4

"joint responsibility" for each JJJ-SLF Client "as defined under Texas Disciplinary Rules of Professional Conduct Rule 1.04 and its official comments," and JJA would provide know how and advance costs and expenses to finance the joint venture and assist SLF as requested and needed, including the hiring and retention of additional attorneys. JJA and SLF agreed to utilize the Smart Advocate cloud-based CRM to manage the individual cases, organize and save files and documents, and manage the case docket.

10.     Section V of the July 2, 2023 Joint Venture Agreement left fee allocation for case-by-case determinations, but in September 2023, SLF and JJA agreed to split fees on a 50/50 basis. On October 2, 2023, SLF confirmed by email the equal (50/50) division of attorney's fees on jointly represented clients applied retroactively to all JJJ-SLF Clients retained prior to the Ida deadline.  The United States District Court for the Eastern District of Louisiana has recognized that the JJA–SLF Joint Venture Agreement "forms the basis of" the parties' fee dispute. *Sangisetty Law Firm, LLC v. Jason Joy & Assocs., PLLC*, No. 2:25-cv-01561 (E.D. La. Sept. 12, 2025) (Docket No. 15).[5]

11.     SLF collected attorneys' fees on joint cases and maintained a fee-tracking spreadsheet reflecting settlement proceeds on jointly represented matters. In or around late 2024, SLF cut off JJA's access to the fee-tracking spreadsheet without notice or justification.  At the time of the lockout, the spreadsheet SLF controlled reflected $6,464,804.77 in total settlement proceeds, much of that was from joint cases.  This included dozens of "collections cases" or "check reissue" matters totaling at least $416,640.46—these were cases in which MMA had

---

[5] The JJA-SLF Joint Venture Agreement includes a mandatory arbitration clause. This Objection is filed solely to preserve JJA's rights, claims, causes of action, and defenses as discussed herein, including its rights, claims, causes of action, and defenses against SLF.  Accordingly, JJA does not seek to invoke this Court's jurisdiction to resolve its dispute with SLF, and this Objection should not be construed as a waiver of any of JJA's rights provided for in the Joint Venture Agreement, including but not limited to, JJA's right to invoke the mandatory arbitration clause, or of any claims, causes of action, or defenses related to the Joint Venture Agreement.

18295118

already obtained settlements before its suspension or disbarment.  On "collections" or "check reissue" matters, SLF's sole involvement was requesting that insurance carriers reissue cancelled settlement checks.  SLF performed no legal work on these files yet retained the full contingency fee.

12. Despite SLF requesting that JJA advance hundreds of thousands of dollars including multiple cash transfers directly to SLF, the fact is SLF was never truly transparent with JJA. For example, SLF claimed it was not feasible to notify JJA each time a case settled or provide the amount of each settlement. At no time did SLF notify JJA when settlement funds were received or consult with JJA regarding case expenses before disbursing settlement proceeds to clients. SLF unilaterally deducted purported "expenses" from client settlements without consulting JJA or verifying that deductions adequately covered all claimed expenses that were actually incurred on a particular case. Also, SLF ignored JJA's concerns that it was not deducting the correct amount of attorney fees pursuant to the Louisiana Supreme Court's *Saucier* decision. SLF has remitted $0 to JJA on the fees collected in the joint cases.

13. At Mr. Moseley's strong recommendation, JJA and SLF agreed to utilize the same Smart Advocate case management software that MMA utilized for the La. Hurricane clients. JJA advanced the costs of nearly $30,000 for the sole use and benefit of the JJA-SLF clients and the joint venture with of JJA and SLF. The system logs all user activity, including case access, document views, edits, and deletions.  After MMA was terminated as counsel and affected clients executed fee agreements with JJA and SLF, MMA personnel unlawfully accessed JJA's case management system without ~~authorization and continued to access the system post-petition without~~ knowledge or authorization from JJA. It is unknown if SLF provided MMA with login credentials or access—if so, it was without JJA's knowledge or approval.

6

18295118

14.     Specifically, MMA personnel accessed approximately 2,084 cases, deleted approximately 26 documents, and generated a total activity index of approximately 18,381 actions.  Through this unauthorized access, MMA obtained JJA's confidential legal-malpractice fee agreement template—a proprietary document that later appeared in MMA's court filings.  *See* Docket No. 402-7 (Nov. 10, 2024).  MMA's unauthorized access caused harm and loss to JJA, including compromise of confidential client and firm materials, impairment of JJA's proprietary systems, and costs incurred to investigate and remediate the unauthorized access.

## LIMITED OBJECTION

15.     While the Debtor proposes to reserve JJA's rights against SLF in the proposed order attached to the Motion, the reservation of rights fails to (1) preserve claims JJA has against MMA for postpetition actions of MMA; (2) ensure that the settlement between MMA and SLF does not have any *res judicata* or other preclusive effect against JJA; and (3) establish that the settlement payments will not come from funds to which JJA has a claim.  JJA objects that the settlement should not be approved until these deficiencies are remedied.

16.     First, the language in the proposed order states that,

> nothing in this Order, the attached Settlement Agreement, or the compromise approved herein shall be construed as resolving, adjudicating, releasing, impairing, or otherwise affecting any rights, claims, causes of action, or defenses that Jason Joy & Associates, PLLC may have against Sangisetty, or that Sangisetty may have against Joy, all of which are expressly preserved in full

Docket No. 1379-2 at 1.  Nothing in the proposed order addresses the rights, claims, causes of action or defenses that JJA has or may have against MMA.  JJA has claims against MMA for MMA's unauthorized use of JJA's litigation management system and JJA's work product.  The proposed order should not be entered until it makes clear that JJA's rights, claims, causes of action, or defenses against MMA are not resolved, adjudicated, released, impaired, or otherwise

7

18295118

affected by the proposed order, the compromise between MMA and SLF, or the Settlement Agreement.

17.     Second, neither the proposed order, the Settlement Agreement, nor the compromise between MMA and SLF should have any *res judicata* or other preclusive effect with respect to JJA and SLF or JJA and MMA.  While SLF took the position that JJA was an indispensable party in the MMA v. SLF Case (Adv. Docket No. 8), SLF later reversed that position when opposing JJA's intervention (Adv. Docket No. 17).  MMA has maintained that JJA is not an indispensable party.  The District Court did not have the opportunity to rule on JJA's intervention motion because MMA sought to abate the hearing because it had filed the Motion.  *See* Adv. Docket No. 30.  Clearly, MMA was seeking to prevent JJA's intervention in the District Court case.  Because JJA has been thus far prevented from defending its rights and pursuing its claims against MMA and JJA in the District Court, justice requires that the Court ensure JJA is not affected by any *res judicata* or other preclusive effects that parties may raise.

18.     Lastly, while the Motion and proposed order simply provide that SLF will make two payments of $420,629.06 and $150,000.00, respectively, to MMA, there is no detail regarding whether the settlement is being paid from the clients' settlement funds or from other SLF cash that is unrelated to proceeds in which JJA and MMA may have an interest.  The clients' settlement funds are escrowed pursuant to the order of the District Court requiring escrowing.  Adv. Docket No. 23.  JJA has an interest in those funds, which SLF previously represented to the District Court.  Neither the Motion nor the proposed order explicitly preserve JJA's rights with respect to those funds, which are subject to separate agreements between JJA and SLF.  Additionally, none of the proposed settlement payments should come from any attorneys' fees generated in jointly-represented JJJ-SLF Cases or from any interest, appreciation,

18295118

or gain generated by virtue of any investment of this money—whether from JJA's 50% fee interest in the JJJ-SLF Cases or from SLF's ostensible 50% fee interest in such cases.

19.     Rule 1.15(e) of the Louisiana Rules of Professional Conduct requires that,

> [w]hen in the course of representation a lawyer is in possession of property in which two or more persons (one of whom may be the lawyer) claim interests, the property shall be kept separate by the lawyer until the dispute is resolved. The lawyer shall promptly distribute all portions of the property as to which the interests are not in dispute.

SLF must hold the funds arising from JJJ-SLF Cases in trust because JJA has a claim to such funds, and SLF agreed to place the funds in trust on or about May 29, 2025.  Attached hereto as **Exhibit 2** is a letter from SLF's counsel to counsel for JJA that represents that fifty percent (50%) of the settlements funds from the hurricane claims are held in the IOLTA account of SLF. No settlement payment from SLF to MMA should come from these settlement funds because JJA has neither agreed to such a payment nor have MMA or SLF sought relief to make such a payment, and it would be a breach of SLF's professional responsibility to do so.

WHEREFORE, JJA does not oppose entry of an order approving the settlement between MMA and SLF that includes these protections for JJA.

9

18295118

Dated: April ~~6~~7, 2026
Houston, Texas.

Respectfully submitted,

**PORTER HEDGES LLP**

*/s/ Joshua W. Wolfshohl*
Joshua W. Wolfshohl; TX Bar No. 24038592
Heather K. Hatfield; TX Bar No. 24050730
Michael B. Dearman; TX Bar No. 24116270
1000 Main Street, 36th Floor
Houston, Texas 77002
Telephone: (713) 226-6000
Facsimile: (713) 226-6248
jwolfshohl@porterhedges.com
hhatfield@porterhedges.com
mdearman@porterhedges.com

**COUNSEL TO JASON J. JOY & ASSOCIATES, PLLC**

## CERTIFICATE OF SERVICE

I certify that on April ~~6~~7, 2026, I caused a copy of the foregoing document to be served by electronic transmission to all registered ECF users appearing in this case on April ~~6~~7, 2026.

*/s/ Joshua W. Wolfshohl*
Joshua W. Wolfshohl

## CERTIFICATE OF CONFERENCE

I certify that on April 6, 2026, I attempted to confer with counsel for the Debtor regarding the relief requested in the Motion and JJA's limited objection thereto. I left a message for Ms. Goott. Ms. Goott returned my call, but I was unavailable when she called. The parties will continue to engage regarding a potential resolution to JJA's limited objection.

*/s/ Joshua W. Wolfshohl*
Joshua W. Wolfshohl

10

18295118

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| **In Re:** | § | |
| | § | **CASE NO. 24-31596** |
| **MMA LAW FIRM, PLLC** | § | |
| | § | |
| **DEBTOR** | § | |

---

**ORDER APPROVING COMPROMISE**
**WITH SANGISETTY LAW FIRM, PLLC**
[Relates to Docket. No. 1379]

It is

**ORDERED** that the Settlement Agreement attached hereto is approved, and it is further

**ORDERED** that the Debtor and Sangisetty Law Firm, PLLC ("*Sangisetty*") are authorized to enter into and consummate the Settlement Agreement according to the terms and conditions contained in the attached Settlement Agreement, and it is further

**ORDERED** that Sangisetty shall pay MMA $420,629.06 within three (3) days following the entry of this Order, and it is further

**ORDERED** that Sangisetty shall pay MMA an additional $150,000.00 within ninety (90) days following the entry of this Order, and it is further

**ORDERED** that none of the payments made by Sangisetty to MMA pursuant to this Order shall be made from proceeds of settlements in cases where Sangisetty and JJA (as defined below) were co-counsel or from any interest, appreciation, or gain generated by virtue of any investment of such proceeds, and it is further

**ORDERED** that nothing in this Order, the attached Settlement Agreement, or the compromise approved herein shall be construed as resolving, adjudicating, releasing, impairing,

18295118

or otherwise affecting any rights, claims, causes of action, or defenses that Jason J. Joy & Associates, PLLC ("*JJA*") may have against MMA, Sangisetty, or that Sangisetty may have against JJA, all of which are expressly preserved in full, and it is further

**ORDERED** that nothing in this Order, the Settlement Agreement, or the compromise contained therein shall have any *res judicata* or other preclusive effect on JJA's rights, claims, causes of action, or defenses as to any party.

**ORDERED** that this Court retains jurisdiction over all disputes that may be related to the interpretation or enforcement of the Settlement Agreement and this Order.


Dated: _____


_____
HONORABLE EDUARDO V. RODRIGUEZ
CHIEF   UNITED   STATES   BANKRUPTCY
JUDGE

18295118

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| **In Re:** | § | |
| | § | **CASE NO. 24-31596** |
| **MMA LAW FIRM, PLLC** | § | |
| | § | |
| **DEBTOR** | § | |

### ORDER APPROVING COMPROMISE
### WITH SANGISETTY LAW FIRM, PLLC
[Relates to Docket. No. 1379]

It is

    **ORDERED** that the Settlement Agreement attached hereto is approved, and it is further

    **ORDERED** that the Debtor and Sangisetty Law Firm, PLLC ("***Sangisetty***") are authorized to enter into and consummate the Settlement Agreement according to the terms and conditions contained in the attached Settlement Agreement, and it is further

    **ORDERED** that Sangisetty shall pay MMA $420,629.06 within three (3) days following the entry of this Order, and it is further

    **ORDERED** that Sangisetty shall pay MMA an additional $150,000.00 within ninety (90) days following the entry of this Order, and it is further

    **ORDERED** that none of the payments made by Sangisetty to MMA pursuant to this Order shall be made from proceeds of settlements in cases where Sangisetty and JJA (as defined below) were co-counsel or from any interest, appreciation, or gain generated by virtue of any investment of such proceeds, and it is further

    **ORDERED** that nothing in this Order, the attached Settlement Agreement, or the compromise approved herein shall be construed as resolving, adjudicating, releasing, impairing, or otherwise affecting any rights, claims, causes of action, or defenses that Jason J. Joy &

18295118

Associates, PLLC ("*JJA*") may have against MMA, Sangisetty, or that Sangisetty may have against JJA, all of which are expressly preserved in full, and it is further

**ORDERED** that nothing in this Order, the Settlement Agreement, or the compromise contained therein shall have any *res judicata* or other preclusive effect on JJA's rights, claims, causes of action, or defenses as to any party.

**ORDERED** that this Court retains jurisdiction over all disputes that may be related to the interpretation or enforcement of the Settlement Agreement and this Order.

Dated: _____

_____
HONORABLE EDUARDO V. RODRIGUEZ
CHIEF UNITED STATES BANKRUPTCY JUDGE

18295118