**EXHIBIT 5**

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | |
|---|---|
| **MMA LAW FIRM, PLLC** | |
| *Plaintiff,* | |
| **v.** | **CIVIL ACTION NO. 4:25-CV-0318** |
| **SANGISETTY LAW FIRM, LLC** | |
| *Defendant* | |

---

**SUPPLEMENTAL AND AMENDED MOTION FOR LEAVE TO INTERVENE AND TO FILE**
**AMENDED COMPLAINT IN INTERVENTION**
**(WITH REQUEST FOR EXPEDITED CONSIDERATION)**

---

## Table of Contents

Table of Authorities ........................................................................................................................... 2

INTRODUCTION ................................................................................................................................. 3

PROCEDURAL HISTORY ................................................................................................................. 3

GROUNDS FOR INTERVENTION AND AMENDMENT ......................................................... 5

URGENCY OF RELIEF REQUESTED ............................................................................................ 8

GROUNDS FOR EXPEDITED CONSIDERATION ....................................................................... 8

*PROCEDURAL GAMESMANSHIP AND FORUM CONFLICT* ......................................................... **10**

CONCLUSION ...................................................................................................................................... 12

PRAYER FOR RELIEF ....................................................................................................................... 13

Exhibit Index ....................................................................................................................................... 15

*CERTIFICATE OF SERVICE* ............................................................................................................ **16**

## Table of Authorities

### Cases

*HS Res., Inc. v. Wingate*, 327 F.3d 432, 439 (5th Cir. 2003) ................................................................ 6

*MMA Chapter 11 Petition, Schedule E/F* (Bankr. S.D. Tex. No. 23-90147, Dkt. 13) ............................... 6

*Sangisetty Law Firm, LLC v. Xpand Legal, LLC;* Case No. 200581 (Terrebonne Parish, LA) .... 10, 12

*Saucier v. Hayes Dairy Prods., Inc.*, 373 So. 2d 102, 108 (La. 1979) .............................................. 6

*Sanders v. LIGA,* No. 3:23-cv-01174, Doc. 26 (M.D. La. July 9, 2024) ................................................. 12

*Smith v. Southern Fidelity* (W.D. La. No. 1:22-cv-03751) ....................................................... 7, 9, 11

### Statutes & Rules

28 U.S.C. § 2041 ............................................................................................................................ 10, 13

Federal Rule of Civil Procedure 15(a)(1)(B), ................................................................................. 5

Federal Rule of Civil Procedure 24(a) ........................................................................................... 3, 13

Federal Rule of Civil Procedure 67 ................................................................................................ 10, 13

Rule 15(a)(2) ................................................................................................................ 3, 7, 12, 13

Rule 24 ........................................................................................................................... 3, 5, 12

Rule 24(b) ...................................................................................................................................... 3, 13

**Rule 24(b)(1)(B)** ............................................................................................................................ 7

## INTRODUCTION

1.      **THIS IS THE SUPPLEMENTAL AND AMENDED MOTION TO INTERVENE** filed on behalf of Jason Joy & Associates, PLLC ("JJA" or "Proposed Intervenor") in the above captioned matter.

2.      This Supplemental and Amended Motion for Leave to Intervene is premised on JJA being an intervenor of right pursuant to Federal Rule of Civil Procedure 24(a), or in the alternative by permissive intervention under Rule 24(b), and respectfully seeks leave to file a Supplemental and Amended Complaint in Intervention under Rule 15(a)(2). This motion amends and supplements JJA's previously filed Motion to Intervene and Complaint in Intervention (filed April 11, 2025) and incorporates all prior allegations and claims by reference.

3.      A copy of the proposed Amended Complaint in Intervention is attached hereto as *(See Exhibit A)*. JJA further requests expedited consideration of this motion, in light of ongoing and escalating prejudice caused by Defendant Sangisetty Law Firm, LLC's ("SLF") unilateral actions that impair JJA's rights, responsibilities, and obligations to clients whose interests are directly implicated in this adversary proceeding.

## PROCEDURAL HISTORY

4.      This action originated as an adversary proceeding filed by MMA Law Firm, PLLC ("MMA") against The Sangisetty Law Firm, LLC ("SLF") concerning unpaid attorney's fees related to former MMA clients. Following MMA's disqualification from the practice of law in Louisiana, JJA independently acquired representation of approximately 974 displaced clients through client outreach, solicitation, and onboarding.

5.       In June 2023, MMA and JJA entered into a Secondment Agreement under which MMA agreed to transfer its Louisiana client files to JJA. However, MMA failed to perform this obligation.

JJA received no meaningful case files and was required to independently acquire and onboard approximately 974 clients through its own outreach and expense.[1] (*See Exhibit B*)

6. In July 2023, JJA and The Sangisetty Law Firm, LLC ("SLF") entered into a Joint Venture Agreement to jointly represent former MMA clients and share responsibility for those cases. This agreement was memorialized in an email dated October 2, 2023.[2] (*See Exhibit C*)

7. On November 10, 2024, MMA filed this adversary proceeding against SLF in the U.S. Bankruptcy Court for the Southern District of Texas, Houston Division.

8. On February 12, 2025, the reference was withdrawn and the adversary proceeding was transferred to this Court.

9. On February 28, 2025, SLF filed a parallel lawsuit against JJA in the 32nd Judicial District Court for the Parish of Terrebonne, Louisiana. The petition included instructions to hold service. JJA was not served until April 16, 2025 — five days after it filed its Motion to Intervene in this action.[3] (*See Exhibit D*)

10. On March 5, 2025, SLF filed a Motion to Dismiss in this action, identifying JJA as an "indispensable party," but failed to join JJA or explain the omission as required by Federal Rule of Civil Procedure 19(c).[4] (*See Exhibit E*)

11. During this period, SLF revoked JJA's access to shared case files, calendars, and spreadsheets—cutting off information essential to deadline tracking and settlement coordination, despite JJA's ongoing co-counsel responsibilities under joint contingency contracts.[5] (*See Exhibit F*)

---

[1] See Exhibit B Secondment Agreement between JJA and MMA (June 23, 2023)
[2] See Exhibit C October 2, 2023 Email from SLF confirming 50/50 co-counsel split
[3] See Exhibit D SLF Petition against JJA in Terrebonne Parish (Feb. 28, 2025)
[4] See Exhibit E SLF Motion to Dismiss (March 5, 2025) referencing JJA as indispensable party
[5] See Exhibit F Email Correspondence re: Fee Waiver Refusal (Smith v. Southern Fidelity)

12.    JJA promptly and repeatedly requested that SLF restore access and honor its co-counsel obligations. These requests were formally conveyed by email, including on March 11, 2025. SLF refused, claiming JJA's access denial was "ongoing" and dismissing the requests as unnecessary. A copy of the email is attached as (*See Exhibit G*)[6].

13.    On April 11, 2025, JJA filed its original Motion to Intervene and Complaint in Intervention. JJA now seeks leave to amend that filing to reflect the facts herein and reaffirms and incorporates its original pleadings herein.

### GROUNDS FOR INTERVENTION AND AMENDMENT

14.    Accordingly, JJA seeks leave to amend its original motion and complaint to reflect these **material developments**, clarify its legal and factual claims, and protect its interests — and those of its clients — before this Court.

15.    Under Federal Rule of Civil Procedure 15(a)(1)(B), a party may amend its pleading once as a matter of course within 21 days after serving it or within 21 days after service of a responsive pleading or Rule 12(b) motion, whichever is earlier. As JJA's original Complaint in Intervention was filed on April 11, 2025, and no responsive pleading has been filed, JJA may amend as of right.

16.    **This motion is timely.** SLF identified JJA as an "indispensable party" in its March 5, 2025 Motion to Dismiss but did not serve or notify JJA. JJA filed its Motion to Intervene on April 11, 2025—within five weeks of the case being withdrawn to this Court and shortly after SLF raised JJA's role in its responsive pleading. Courts in this Circuit evaluate timeliness in light of the procedural posture of the case, and JJA's intervention at this stage satisfies that standard under Rule 24. Additionally, MMA mentions "co-counsel" which appears to be a reference to JJA. JJA has

---

[6] See Exhibit G SLF Notice of Intent to Withdraw in Smith (W.D. La. 1:22-cv-03751)

been systematically omitted from this case although SLF admits in his motion filed pursuant to 12(b)(6) that JJA is an indispensable party.

a.   JJA has a direct and substantial interest in the subject matter of this action. This proceeding concerns fee rights and client relationships arising from JJA's Secondment Agreement with MMA and an October 2, 2023 email from SLF confirming the terms of a co-counsel joint venture. JJA is a named party in both communications, was contractually obligated to jointly represent the affected clients, and remains subject to ongoing ethical duties under jointly executed contingency fee contracts.

17.   The contingency fees in dispute — including those claimed by MMA, SLF, and JJA — relate to the same pool of settlement proceeds, which MMA asserts are assets of the bankruptcy estate. MMA has also listed JJA in its bankruptcy schedules as a counterparty to disputed attorney's fees, confirming that these proceeds are being treated as estate assets subject to adjudication in this adversary proceeding. *See* MMA Chapter 11 Petition, Schedule E/F (Bankr. S.D. Tex. No. 23-90147, Dkt. 13). SLF's actions have impeded JJA's ability to fulfill those obligations, but the contractual and professional interests at stake remain squarely implicated in this proceeding. *See Saucier v. Hayes Dairy Prods., Inc.*, 373 So. 2d 102, 108 (La. 1979) (recognizing single contingency fee structure and judicial allocation between attorneys).

18.   **The disposition of this action may impair or impede JJA's ability to protect its interests.** JJA is not licensed in Louisiana and has not entered an appearance as counsel of record in the state court proceedings. However, JJA has contractual co-counsel rights and fee-sharing obligations under the Joint Venture Agreement and jointly executed client agreements. SLF continues to litigate and settle jointly originated cases while excluding JJA from participation and fee disbursement.[7] (*See Exhibit H*) A judgment in this case could directly affect JJA's financial and ethical interests without its participation. *See HS Res., Inc. v. Wingate*, 327 F.3d 432, 439 (5th Cir. 2003).

---

[7] Exhibit H Compare two Settlement Statements (one includes JJA, subsequent excludes JJA)

19.     **JJA's interests are not adequately represented.** SLF has asserted positions directly adverse to JJA — including filing a separate state court action and revoking access to shared case files. On March 27, 2025, SLF represented to the federal court in *Smith v. Southern Fidelity* (W.D. La. No. 1:22-cv-03751) that JJA was aware of all court deadlines and was assuming representation of the plaintiff — despite JJA not having access to the file or the shared calendar. When JJA sought to waive its own fee interest to help the client secure new Louisiana counsel, SLF refused to do the same. MMA, meanwhile, is in bankruptcy and has not advanced any position on JJA's behalf.[8]

20.     **In the alternative, JJA is entitled to permissive intervention under Rule 24(b)(1)(B).** JJA's claims involve common questions of law and fact with those at issue in the underlying adversary proceeding, including the interpretation of the SLF-JJA Joint Venture Agreement, the distribution of contingency fees, and the scope of each party's obligations in jointly executed client contracts. Permissive intervention will not unduly delay or prejudice the adjudication of the existing parties' rights and will ensure that all parties with a direct stake in the dispute are before the Court.[9]

21.     **Leave to amend should be freely granted under Rule 15(a)(2).** This Amended Motion and Complaint incorporate and clarify allegations originally filed on April 11, 2025, and reflect ongoing procedural and factual developments in the parties' conduct. In *Smith v. Southern Fidelity*, SLF represented to the court that JJA was receiving ECF notices and aware of deadlines but failed to disclose that SLF had revoked JJA's access to the shared calendar where deadlines were maintained. SLF has also continued to refuse to waive fee claims in cases where clients have

---

[8] See Trbovich v. United Mine Workers, 404 U.S. 528, 538 n.10 (1972) (standard for inadequate representation is minimal); Jones v. Prince George's County, 348 F.3d 1014, 1020 (D.C. Cir. 2003) (representation inadequate where interests are only partially aligned).

[9] See New Orleans Pub. Serv., Inc. v. United Gas Pipe Line Co., 732 F.2d 452, 471 (5th Cir. 1984) (en banc).

terminated representation. These events underscore the breakdown in the co-counsel relationship and support the need for JJA's full participation in this proceeding.[10]

## URGENCY OF RELIEF REQUESTED

22.     JJA's exclusion from litigation calendars, shared case files, and settlement communications poses an immediate risk to the firm's ability to discharge its contractual and ethical obligations to jointly represented clients.

23.     Multiple clients have terminated SLF and requested continued representation from JJA. Because JJA is not licensed in Louisiana and has been unable to identify new counsel willing to assume these cases — due in part to the broader dispute between firms — some clients are now left without effective representation.

24.     JJA has waived its own fee interest in several cases to help clients secure Louisiana counsel. SLF has refused to do the same, preventing effective substitution and leaving clients without adequate legal protection.

25.     These conditions have created a real-time risk of reputational harm and potential malpractice exposure for JJA, despite its exclusion from litigation management and decision-making. Immediate relief is necessary to protect both JJA and the clients affected by the co-counsel breakdown.

26.     Without intervention and judicial clarification, JJA now faces imminent exposure to malpractice claims, reputational damage, and potential ethical complaints — not due to any misconduct of its own, but because SLF's unilateral actions have obstructed JJA's access to jointly represented client files and settlement data.

## GROUNDS FOR EXPEDITED CONSIDERATION

---

[10] See Foman v. Davis, 371 U.S. 178, 182 (1962) (amendment should be freely given when justice so requires).

27.      Expedited relief is warranted where a delay in judicial intervention will cause irreparable harm or significantly impair a party's legal or ethical obligations.[11]

28.      Here, JJA is a co-counsel party to jointly executed client agreements and was contractually obligated to assist displaced MMA clients under both the SLF-JJA Joint Venture Agreement and the JJA-MMA Secondment Agreement. Despite that role, SLF has excluded JJA from critical litigation infrastructure, including access to client files, case communications, settlement data, and the shared calendar used to coordinate deadlines across hundreds of cases.

29.      While SLF correctly noted in *Smith v. Southern Fidelity* that JJA was receiving ECF notifications, those notices were insufficient to enable JJA to fulfill its obligations. JJA had no access to the client file, opposing counsel communications, or the internal calendar system where deadlines were maintained. As a firm jointly responsible for nearly 1,000 cases, JJA could not reasonably be expected to identify and track deadlines through ECF notices alone.[12]

30.      SLF's conduct has also directly impaired the ability to secure adequate counsel for clients who terminated SLF. JJA waived its own fee interest in multiple cases to facilitate client protection and attorney substitution. SLF refused to do the same, as documented in correspondence. (*See Exhibit F*)[13].

31.      These facts support not only intervention but expedited consideration. The Court has inherent authority to manage its docket and to ensure the just and efficient administration of proceedings.[14]

32.      Moreover, under this Court's Civil Procedures, "[e]mergency motions or motions requiring expedited consideration" may be filed with appropriate factual justification.

---

[11] See Rothe Dev. Corp. v. U.S. Dep't of Def., 194 F. Supp. 2d 750, 755 (W.D. Tex. 2002) (granting expedited relief to prevent exclusion from meaningful participation).

[12] See Maples v. Thomas, 565 U.S. 266, 283–84 (2012) (holding that abandonment by counsel creates procedural harm beyond the client's control).

[13] See Exhibit F Email Correspondence re: Fee Waiver Refusal (Smith v. Southern Fidelity)

[14] See Chambers v. NASCO, Inc., 501 U.S. 32, 44 (1991); In re American Airlines, Inc., 972 F.2d 605, 611 (5th Cir. 1992) (recognizing fiduciary conflicts arising from co-counsel relationships).

*See* Civil Procedures § 2; § 3(E). This motion meets those criteria.

33.     To prevent further harm and safeguard client and party interests, JJA also requests that the Court, pursuant to 28 U.S.C. § 2041 and Federal Rule of Civil Procedure 67, direct that any disputed settlement proceeds governed by the SLF-JJA Joint Venture Agreement be deposited into the **registry of the Court** pending final resolution of this action.

### PROCEDURAL GAMESMANSHIP AND FORUM CONFLICT

34.     SLF's conduct demonstrates a clear pattern of procedural gamesmanship intended to delay, fragment, and obscure full adjudication of the parties' rights. 52.     On February 28, 2025, SLF filed a separate lawsuit against JJA in the 32nd Judicial District Court in Terrebonne Parish See. Sangisetty Law Firm, LLC v. Xpand Legal, LLC; Case No. 200581 (Terrebonne Parish, LA) The petition initially instructed the clerk to hold service. On March 28, 2025, counsel for JJA contacted SLF's attorney to advise of JJA's intention to file a Motion to Intervene in this action. On April 2, 2025—five days later—SLF instructed the clerk to effectuate service on JJA. JJA was ultimately served on April 16, 2025, five days after it filed its Motion to Intervene in this Court..

35.     At the same time, SLF filed a Motion to Dismiss in this action identifying JJA as an indispensable party under Rule 19 but failed to notify or serve JJA and offered no explanation for nonjoinder, as required by Rule 19(c). Moreover, SLF requested that this Court order that venue be moved to the Eastern District of Louisiana. There is no basis for venue in the EDLA.[15]

36.     Ravi Sangisetty previously clerked in the United States District Court for the Eastern District of Louisiana and maintains close political relationships in Terrebonne Parish, Louisiana. Notably, of the nearly 1,000 former MMA cases jointly handled by JJA and SLF, only two were venued in Terrebonne Parish—and both of those have already settled. SLF's decision to file its parallel lawsuit in that venue, while simultaneously opposing JJA's intervention in this federal

---

[15] See Exhibit D-SLF Petition against JJA in Terrebonne Parish (Feb. 28, 2025)

action, underscores the appearance of forum shopping and strategic gamesmanship. SLF is attempting to secure a favorable local forum despite the overwhelming jurisdictional and factual ties to Texas, where the relevant agreements were negotiated, executed, and performed.

37.     Courts have consistently rejected attempts to leverage fragmented litigation and service delays to secure tactical advantage or to sidestep coordinated adjudication.[16][17]

38.     While the jointly executed client contingency agreements reference venue in Louisiana, JJA's claims in this action arise from separate agreements between the law firms — governed by Texas law and performed almost entirely in Texas. Enforcing a Louisiana venue clause here would elevate form over substance and reward forum manipulation.[18] (*See Exhibit G*)[19] (*See Exhibit F*)

39.     SLF also misrepresented JJA's role in *Smith v. Southern Fidelity* (W.D. La. No. 1:22-cv-03751) by informing the court that JJA was receiving ECF notices and aware of scheduling deadlines — while simultaneously revoking JJA's access to the client file, litigation calendar, and related communications. SLF later admitted it had withheld these materials and then refused to waive its fee interest when JJA attempted to substitute Louisiana counsel.[20] (*See Exhibit I*)

40.     Furthermore, SLF's lack of diligence and disregard for court orders has been independently noted by other federal courts. In *Sanders v. LIGA, Case No. 3:23-cv-01174 (M.D. La.)*, the U.S. Magistrate Judge sanctioned SLF for failing to appear at a scheduled hearing, citing violation of Rule 16(f) of the Federal Rules of Civil Procedure. The Court found that SLF had miscalendared the hearing and ordered reimbursement of fees and travel expenses to the

---

[16] See In re Ameriquest Mortgage Co., 429 F.3d 794, 805 (7th Cir. 2005) ("A party cannot manipulate procedural rules to splinter related claims into multiple venues for strategic gain.");

[17] Chambers v. NASCO, Inc., 501 U.S. 32, 44 (1991) (federal courts may act to prevent abuse of process and preserve the orderly resolution of cases).

[18] See RedHawk Holdings Corp. v. Schreiber, 836 F. App'x 232, 236 (5th Cir. 2020);

[19] Kessler v. Nat'l Enters., Inc., 347 F.3d 1076, 1084 (8th Cir. 2003).

[20] See Exhibit I (SLF Notice of Intent to Withdraw in Smith); Exhibit F (Email Refusing to Waive Fees).

opposing party. See *Sanders v. LIGA,* No. 3:23-cv-01174, Doc. 26 (M.D. La. July 9, 2024)[21] (*See Exhibit J*)

41.     SLF is also pursuing a parallel action against Xpand Legal, LLC in Terrebonne Parish, Louisiana, seeking to recover fees arising from the same administrative services provided to clients jointly represented by JJA and SLF. In that lawsuit, SLF identifies JJA as a signatory to the operative contract and asserts that JJA is jointly liable for the same pool of fees over which MMA now asserts estate ownership. SLF nevertheless filed the case in a jurisdiction where none of the fee-holding parties are domiciled and subsequently moved for dismissal of a reconventional demand by Xpand on the basis that JJA was an indispensable party who had not been joined. *See* SLF v. Xpand Legal, LLC, No. 200581, 32nd JDC, Parish of Terrebonne [22] (*See Exhibit K*) [23] (*See Exhibit L*)

42.      This further underscores the fragmented, multi-venue litigation SLF is orchestrating over a unified estate asset — while simultaneously seeking to exclude JJA from participating in the only proceeding capable of resolving the dispute comprehensively.

43.     SLF's conduct across both jurisdictions underscores the necessity of JJA's participation in this proceeding and further supports not only intervention, but the Court's exercise of jurisdiction over the contractual and fiduciary disputes that continue to impair client representation and inter-firm responsibilities.

### CONCLUSION

44.     For the reasons set forth above, Jason Joy & Associates, PLLC respectfully submits that it has satisfied the requirements for intervention under Federal Rule of Civil Procedure 24, and that leave to amend its original Complaint in Intervention is appropriate under Rule 15(a)(2).

---

[21] See Exhibit I (Sanders v. LIGA, No. 3:23-cv-01174, Doc. 26 (M.D. La. July 9, 2024)
[22] See Exhibit J - SLF Petition in SLF v. Xpand Legal (filed Aug. 14, 2024)
[23] See Exhibit K - Exception of Nonjoinder in SLF v. Xpand (filed Jan. 29, 2025)

45.     SLF has placed JJA's financial, contractual, and ethical interests squarely at issue in this proceeding while simultaneously working to exclude JJA from litigation management, settlement coordination, and client communications. The issues presented cannot be fully and fairly adjudicated without JJA's participation.

46.     This Court has both the authority and the responsibility to protect the rights of parties whose obligations arise from joint representation and fiduciary co-counsel agreements. Intervention, amendment, and expedited relief are necessary to prevent further harm to JJA and the jointly represented clients whose interests remain unresolved.

47.     Moreover, SLF's related litigation against Xpand Legal in Terrebonne Parish demonstrates not only an effort to isolate and reframe this fee dispute, but also to prevent JJA from asserting claims that would otherwise be compulsory counterclaims under Louisiana law. SLF's refusal to join JJA while simultaneously labeling it indispensable creates procedural entrapment — further justifying intervention and consolidated adjudication before this Court.

**PRAYER FOR RELIEF**

48.     WHEREFORE, Jason Joy & Associates, PLLC ("JJA") respectfully requests that the Court:

a.      **Grant leave to intervene** in the above-captioned proceeding pursuant to Federal Rule of Civil Procedure 24 (a), or alternatively under Rule 24(b);

b.      Grant leave to file its Amended Complaint in Intervention, attached hereto as Exhibit 1A, pursuant to Federal Rule of Civil Procedure 15(a)(2);

c.      **Expedite consideration of this motion** and provide such further relief as the Court deems appropriate to prevent ongoing prejudice to JJA and its jointly represented clients;

d.      **Order, pursuant to 28 U.S.C. § 2041 and Rule 67 of the Federal Rules of Civil Procedure**, that any disputed attorney's fees or settlement proceeds governed by the SLF-JJA Joint Venture Agreement be deposited into the registry of the Court pending further order;

e.      And for such other and further relief to which JJA may be justly entitled.

Respectfully submitted April 19, 2025:

Respectfully submitted,

JASON JOY & ASSOCIATES, PLLC

_____
Jason J. Joy
*Texas Bar No. 24058932*
Colin G. Wood
Texas Bar No. *24082535*
909 Texas Street, Suite 1801
Houston, Texas 77002
T: (713) 221-6500
F: (713) 221-1717
E: jason@jasonjoylaw.com
E: colin@jasonjoylaw.com

**Exhibit Index**

| Exhibit | Description |
| --- | --- |
| **Exhibit A** | Supplemental and Amended Complaint |
| **Exhibit B** | Secondment Agreement between JJA and MMA |
| **Exhibit C** | October 2, 2023 Email from SLF confirming fee split |
| **Exhibit D** | February 12, 2025 Email from Ravi Sangisetty (Access Termination) |
| **Exhibit E** | SLF Petition against JJA in Terrebonne Parish |
| **Exhibit F** | Email re: Fee Waiver Refusal in *Smith v. Southern Fidelity* |
| **Exhibit G** | Notice of Intent to Withdraw in *Smith* |
| **Exhibit H** | March 11, 2025 Email from Tanner Magee |
| **Exhibit I** | Sanders v. LIGA (SLF Sanctions) |
| **Exhibit J** | Compare two Settlement States, one excluding JJA |
| **Exhibit K** | Petition in *SLF v. Xpand Legal* |
| **Exhibit L** | Exception of Nonjoinder in *SLF v. Xpand* |

**CERTIFICATE OF SERVICE**

I certify that a copy of the foregoing document has been served via ECF upon all counsel

of record and the Office of the United States Trustee on April 19, 2025, and via email as follows:

Miriam T. Goott
attorney-in-charge
W ALKER & P ATTERSON, P.C.
P.O. Box 61301
Houston, TX 77208
mgoott@walkerandpatterson.com

Leo D. Congeni (LA Bar #25626)
(attorney-in-charge)
650 Poydras Street, Suite 2750
New Orleans, Louisiana 70130
Telephone: 504-522-4848
Facsimile: 504-910-3055
Email: leo@congenilawfirm.com

Andrew Jimenez
U. S. Department of Justice
Office of the United States Trustee
515 Rusk Street, Suite 3516
Houston, TX 77002
713-718-4668
Fax:713-718-4670
Email: andrew.jimenez@usdoj.gov

_____
Jason J. Joy

**EXHIBIT**

**A**

4:25-CV-0318

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | |
|---|---|
| **JASON J. JOY & ASSOCIATES, PLLC**<br><br>                    *Intervenor*<br><br>v.<br><br>**MMA LAW FIRM, PLLC**<br><br>                    *Defendant*<br><br>**SANGISETTY LAW FIRM, LLC and**<br>**RAVI SANGISETTY, INDIVIDUALLY**<br><br>                    *Defendant* | **CIVIL ACTION NO. 4:25-CV-0318** |

## AMENDED AND SUPPLEMENT COMPLAINT IN INTERVENTION

**Table of Contents**

INTRODUCTION ..............................................................................................................................4

JURISDICTION AND VENUE ........................................................................................................4

PARTIES............................................................................................................................................5

FACTUAL BACKGROUND ...........................................................................................................6

    *The Louisiana Storm Crisis* ...........................................................................................................6

    *MMA's Collapse and Bankruptcy*.................................................................................................6

    *JJA's Involvement and Case Acquisition*.....................................................................................7

    *JJJ-SLF Relationship*....................................................................................................................9

    *Deterioration of the Relationship* ................................................................................................9

    *Overlapping Litigation and Estate Disputes* ............................................................................12

CAUSES OF ACTION ...................................................................................................................13

    *COUNT I – BREACH OF CONTRACT*......................................................................................13

    *COUNT II – TORTIOUS INTERFERENCE OF CONTRACT*...................................................15

    *COUNT I – QUANTUM MERUIT/UNJUST ENHANCEMENT (IN THE ALTERNATIVE)* ................17

PRAYER FOR RELIEF ..................................................................................................................18

SUMMARY RELIEF ......................................................................................................................19

CONDITIONS PRECEDENT .......................................................................................................20

JURY DEMAND ............................................................................................................................20

Exhibit Index...................................................................................................................................21

**Table of Authorities**

Cases

*Anglo-Dutch Petroleum Int'l, Inc. v. Greenberg Peden, P.C.*, 352 S.W.3d 445 ...................................................................... 12

Heldenfels Bros., Inc. v. City of Corpus Christi, 832 S.W.2d 39, 41 (Tex. 1992). ...................................................... 12, 16

M*MA Law Firm, PLLC,* 6:23-mc-00001 (W.D. La. Mar. 4, 2023) ...........................................................................................6, 10

*MMA Law Firm, PLLC,* Case No. 24-31596, United States Bankruptcy Court for the Southern District of Texas,
   Houston Division ....................................................................................................................................................... 4, 7, 10, 11

*Sangisetty Law Firm, LLC v. Xpand Legal, LLC;* Case No. 200581 (Terrebonne Parish, LA)....................................... 11

*Sanders v. SafePoint Ins* ................................................................................................................................................................3

*Saucier v. Hayes Dairy Prods., Inc.*, 373 So. 2d 102 (La. 1979)............................................................................................ 13

*Trahan v. Allstate Vehicle & Prop. Ins. Co.,* No. 2:22-CV-03604, 2023 WL 7413092 (W.D. La. Nov. 9, 2023)...6, 10

Statutes

11 U.S.C. §362................................................................................................................................................................................... 4

28 U.S.C. § 1332 .............................................................................................................................................................................. 4

28 U.S.C. § 1334 .............................................................................................................................................................................. 4

28 U.S.C. § 157(d) ........................................................................................................................................................................... 4

28 U.S.C. §§ 1391(b) ...................................................................................................................................................................... 5

28 U.S.C. §§ 1409............................................................................................................................................................................ 5

28 U.S.C. § 2041 ............................................................................................................................................................................. 17

Other Authorities

Chapter 37.009 of the Texas Civil Practice & Remedies Code ........................................................................................ 17

Chapter 38 of the Texas Civil Practice & Remedies Code................................................................................................. 17

Rules

Federal Rules of Bankruptcy Procedure 7024............................................................................................................... 4, 5

Federal Rules of Civil Procedure 24 ......................................................................................................................................... 5

Federal Rule of Civil Procedure 15(a)(2).......................................................................................................................... 5, 4

Federal Rule of Civil Procedure 67 ......................................................................................................................................... 17

Federal Rules of Civil Procedure 38 ....................................................................................................................................... 18

## INTRODUCTION

1.      This Amended and Supplemental Complaint in Intervention is submitted by Jason Joy & Associates, PLLC ("JJA"), pursuant to Rule 15(a)(2) of the Federal Rules of Civil Procedure and Rule 7024 of the Federal Rules of Bankruptcy Procedure, to supplement and amend the original Complaint in Intervention previously filed in this matter by Intervenor

2.      The court of origin and this proceeding's nexus to MMA's chapter 11 and its Complaint have been alleged by the parties and accepted by this Court. There is no need for superfluous recitations of this matter's tortured history except what Intervenor will relate to provide this Court with an accurate factual foundation devoid of speculation.

3.      This Court has withdrawn the reference from the Bankruptcy Court under 28 U.S.C. § 157(d), and this matter is properly before the United States District Court for the Southern District of Texas, Houston Division

4.      Because this case was commenced in the same Court in which the Debtor's Chapter 11 is pending, there is no requirement that the automatic stay of 11 U.S.C. §362 be modified or lifted for this case to proceed. JJA respectfully shows as follows:

## JURISDICTION AND VENUE

5.      This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334 as a civil proceeding arising in and related to a Chapter 11 bankruptcy case currently pending in this District: In re *MMA Law Firm, PLLC*, Case No. 24-31596, United States Bankruptcy Court for the Southern District of Texas, Houston Division. This Court has withdrawn the reference with respect to the above-captioned adversary proceeding.

6.      This Court also has jurisdiction under 28 U.S.C. § 1332, as there is complete diversity between Plaintiff Jason Joy & Associates, PLLC ("JJA"), a Texas professional limited liability company with its principal place of business in Houston, Texas, and the Defendants, The Sangisetty Law Firm, LLC and

Ravi Sangisetty, both domiciled in Louisiana. The amount in controversy exceeds $75,000, exclusive of interest and costs.

7.     Venue is proper in this District under 28 U.S.C. §§ 1409 and 28 U.S.C. §§ 1391(b) because a substantial part of the events giving rise to this action occurred in this District and the claims arise from contractual and financial obligations tied to a bankruptcy proceeding pending in this Court.

8.     This action is properly brought as an amended complaint in intervention in the above-captioned adversary proceeding. Pursuant to Federal Rule of Civil Procedure 15(a)(2) and Rule 24 of the Federal Rules of Civil Procedure, incorporated via Bankruptcy Rule 7024, JJA brings this amended and supplemental complaint to assert its claims and protect its financial, contractual, and ethical interests as a party indispensable to the adjudication of disputes over attorney's fees and client relationships.

**PARTIES**

9.     Plaintiff-Intervenor Jason Joy & Associates, PLLC ("JJA") is a Texas professional limited liability company with its principal place of business in Houston, Texas. JJA is a law firm licensed to practice in the State of Texas and was retained by hundreds of Louisiana hurricane claimants following the collapse and disqualification of MMA Law Firm, PLLC. JJA is not licensed in Louisiana.

10.    Defendant The Sangisetty Law Firm, LLC ("SLF") is a Louisiana limited liability law firm with its principal office in New Orleans, Louisiana. SLF was retained by certain former MMA clients and served as co-counsel to JJA in numerous insurance cases arising from hurricanes impacting Louisiana in 2020 and 2021.

11.    Defendant Ravi Sangisetty is an individual domiciled in Louisiana and the sole member and managing attorney of SLF. Upon information and belief, Mr. Sangisetty directly negotiated, managed, and approved the joint venture and case management agreements with JJA.

12.     Defendant MMA Law Firm, PLLC ("MMA") is a Texas professional limited liability company formerly engaged in mass tort and storm litigation. MMA filed for Chapter 11 bankruptcy protection in the Southern District of Texas on April 9, 2024. At all relevant times, MMA held itself out as legal counsel to more than 15,000 Louisiana clients. MMA is the Debtor in the underlying bankruptcy proceeding.

## FACTUAL BACKGROUND

### THE LOUISIANA STORM CRISIS

13.     Between August 2020 and August 2021, Louisiana was impacted by five major natural disasters: Hurricanes Laura, Delta, Zeta, and Ida, along with Winter Storm Uri.

14.     These events caused catastrophic property damage across the state, particularly in southwest and southeast Louisiana, displacing thousands of residents and resulting in over 600,000 insurance claims.

15.     Insurers delayed or denied payment of many storm-related claims, prompting widespread litigation in both federal and state courts throughout Louisiana.

16.     Due to the volume and complexity of these claims, a number of high-volume law firms—including MMA Law Firm, PLLC—undertook aggressive client acquisition strategies to represent large groups of hurricane victims.

### MMA'S COLLAPSE AND BANKRUPTCY

17.     At the peak of the storm litigation, MMA Law Firm, PLLC ("MMA") claimed to represent over 15,000 hurricane claimants across Louisiana.

18.     In 2023, multiple courts took disciplinary action against MMA for widespread irregularities in its client intake and case management practices. *See Trahan v. Allstate Vehicle & Prop. Ins. C*o., No. 2:22-CV-03604, 2023 WL 7413092 (W.D. La. Nov. 9, 2023).

19.     On March 4, 2023, the Hon. James D. Cain of the U.S. District Court for the Western District of Louisiana suspended all MMA attorneys from practice before that court for 90 days. The Louisiana Supreme Court subsequently issued reciprocal suspensions. *See* In re *MMA Law Firm, PLLC*, 6:23-mc-00001 (W.D. La. Mar. 4, 2023).

20.     In response, a trustee was appointed to oversee MMA's remaining Louisiana cases and to assist clients in obtaining substitute counsel.

21.     As a result of these disciplinary actions, thousands of MMA's former clients were left without legal representation in pending litigation, some within weeks of critical filing deadlines.

22.     On April 9, 2024, MMA filed for Chapter 11 bankruptcy protection in the United States Bankruptcy Court for the Southern District of Texas, Houston Division. *See* Voluntary Petition, In re *MMA Law Firm, PLLC*, Case No. 24-31596 (Bankr. S.D. Tex. Apr. 9, 2024).

23.     In its bankruptcy filings, MMA has asserted that contingency fees arising from former client settlements constitute property of the bankruptcy estate, including fees now in dispute between MMA, SLF, and JJA. MMA has listed JJA in its Schedule E/F as a disputed fee claimant related to those assets.

### JJA'S INVOLVEMENT AND CASE ACQUISITION

24.     In June 2023, with the two-year prescriptive deadline for Hurricane Ida claims approaching, MMA contacted JJA seeking assistance in transitioning its remaining Louisiana caseload.

25.     MMA founder Zach Moseley represented to JJA that thousands of MMA clients were unrepresented or at risk of dismissal due to impending deadlines and MMA's court-imposed disqualification from Louisiana practice.

26.     After conducting its own due diligence, JJA agreed to assist in stabilizing the remaining case inventory and undertook an intensive effort to re-engage eligible clients and acquire new retainer agreements.

27.     On June 23, 2023, MMA and JJA executed a written Secondment Agreement to memorialize this relationship. [1](*See Exhibit A*)

28.     This Agreement was drafted with the assistance of Mr. Sangisetty, infra. Per the Agreement, and commensurate with similar arrangements MMA had with other successor firms, JJA agreed to set aside in JJA's IOLTA account at J.P. Morgan Chase Bank a hold back equal to 45% of the attorney fees generated from ex-MMA cases, along with reimbursable expenses. This 45% holdback agreement was not intended to reflect a fee splitting agreement but merely acknowledged MMA's intention to seek no more than 45% of the fees in the future (presumably in a legal proceeding), and JJA agreed to set those funds aside in the interim in the firm's trust account.

29.     After MMA filed for bankruptcy, it listed JJA in its Schedule E/F as a disputed fee claimant and asserted that proceeds from the Secondment Agreement constitute property of the bankruptcy estate.

30.     Anticipating a direct file transfer, JJA invested in a cloud-based case management system (SmartAdvocate), which MMA had previously used to manage its hurricane litigation files. This was intended to streamline data migration and facilitate co-counsel case handling across jurisdictions.

31.     However, despite JJA's implementation of the system, MMA did not provide JJA access to client files until after JJA had secured signed engagement agreements with individual clients.

32.     Additionally, the transfer process required downloading, converting, and re-uploading documents on a file-by-file basis—requiring JJA to shoulder case acquisition and early administrative costs without the benefit of any preexisting litigation records.

33.     Once the transfer process began, JJA discovered that many of the files were severely deficient. Several included no copy of the underlying insurance policy, were filed in the wrong jurisdiction, or listed the wrong defendant insurer. Many case records contained little more than a complaint, an incomplete intake form, unverified contact information, and very few supporting documents.

---

1 *See* Exhibit A (Secondment Agreement between JJA and MMA, dated June 23, 2023).

34.     As a result, JJA was forced to rework hundreds of files, conduct new client intake, re-engage insurers, and prepare corrected filings — a substantial workload far beyond what had been represented at the time of the agreement.

## JJJ-SLF RELATIONSHIP

35.     In July 2023, JJA entered into a co-counsel relationship with The Sangisetty Law Firm, LLC ("SLF") to jointly represent former MMA clients who had retained JJA. SLF was to serve as Louisiana counsel of record due to JJA's lack of licensure in that jurisdiction. The parties agreed to share fees equally and jointly manage litigation and client representation. The arrangement was memorialized by email on October 2, 2023, and reflected in contingency fee contracts executed with clients. JJA provided the client acquisition infrastructure, document handling systems, and litigation oversight; SLF was responsible for court filings, appearances, and direct handling of Louisiana proceedings. [2] (*See Exhibit B*)

## DETERIORATION OF THE RELATIONSHIP

36.     Despite JJA's extensive investment in client onboarding, attorney staffing, and litigation infrastructure, the working relationship with SLF began to deteriorate in early 2024. SLF gradually withdrew from the shared case management platform, SmartAdvocate, and increasingly limited JJA's access to client information, litigation calendars, and settlement updates.

37.     On or about February 12, 2025, SLF unilaterally revoked JJA's access to shared Google Drive folders, settlement tracking spreadsheets, and the joint calendar used to manage litigation deadlines. In response to JJA's request to restore access, Ravi Sangisetty stated: "We are in the process of moving our files over to a new CRM. It would be more efficient if you direct any specific client inquiries our

---

[2] See Exhibit B (October 2, 2023 Email from Ravi Sangisetty).

way." SLF's actions rendered JJA unable to fulfill its responsibilities to jointly represented clients and undermined case coordination.[3] (*See Exhibit C*)

38.    SLF also involved outside attorneys who were not party to the JJA-SLF Agreement, raising concerns about confidentiality and unauthorized access to client data. Despite multiple demands, SLF refused to restore access or remit JJA's rightful share of attorney's fees and reimbursable expenses. These actions materially harmed JJA's ability to manage cases, maintain client relationships, and comply with its ethical and fiduciary obligations.

39.    Between February 12 and April 18, 2025, JJA formally requested reinstatement of access at least 20 times. The only other response received was an email on March 11, 2025, from Louisiana legislator and attorney Tanner Magee — a person who, upon information and belief, does not formally represent SLF. The email stated only that JJA's exclusion was "ongoing."[4] (*See Exhibit D*)

40.    In 2023, multiple courts took disciplinary action against MMA for widespread irregularities in its client intake and case management practices. *See Trahan v. Allstate Vehicle & Prop. Ins. Co.*, No. 2:22-CV-03604, 2023 WL 7413092 (W.D. La. Nov. 9, 2023).

41.    On March 4, 2023, the Hon. James D. Cain of the U.S. District Court for the Western District of Louisiana suspended all MMA attorneys from practice before that court for 90 days. The Louisiana Supreme Court subsequently issued reciprocal suspensions. *See In re MMA Law Firm, PLLC*, 6:23-mc-00001 (W.D. La. Mar. 4, 2023).

42.    In response, a trustee was appointed to oversee MMA's remaining Louisiana cases and to assist clients in obtaining substitute counsel.

43.    As a result of these disciplinary actions, thousands of MMA's former clients were left without legal representation in pending litigation, some within weeks of critical filing deadlines.

---

[3] See Exhibit C (February 12, 2025 Email from Ravi Sangisetty). This effectively redirected all communication about shared clients through SLF alone and excluded JJA from case updates, strategy, and settlement information.
[4] See Exhibit D (March 11, 2025 Email from Tanner Magee). SLF's ongoing refusal left JJA unable to track court deadlines, settlements, or respond to client concerns. Its inclusion of non-counsel individuals on sensitive client correspondence further disrupted co-counsel operations and raised concerns about confidentiality.

44.     In early 2025, SLF began omitting JJA's attorney fees from client settlement statements, including in matters where JJA attorneys had contributed substantive legal work. [5](*See Exhibit D*)[6] (*See Exhibit E*)

45.     On April 9, 2024, MMA filed for Chapter 11 bankruptcy protection in the United States Bankruptcy Court for the Southern District of Texas, Houston Division. *See Voluntary Petition, In re MMA Law Firm, PLLC*, Case No. 24-31596 (Bankr. S.D. Tex. Apr. 9, 2024).

46.     In its bankruptcy filings, MMA has asserted that contingency fees arising from former client settlements constitute property of the bankruptcy estate, including fees now in dispute between MMA, SLF, and JJA. MMA has listed JJA in its Schedule E/F as a disputed fee claimant related to those assets.

47.     On July 9, 2024, SLF was sanctioned in *Sanders v. SafePoint Ins. Co., No. 3:23-cv-1174-BAJ-RLB (M.D. La.)*, for failing to appear at a court-ordered hearing on a motion to substitute party. The court found SLF's calendaring failures unjustified, and imposed monetary sanctions under Federal Rule of Civil Procedure 16(f). The order noted that such failures disrupt judicial proceedings and burden opposing counsel with unnecessary costs. This conduct further underscores SLF's ongoing disregard for litigation responsibilities and procedural integrity.[7] (*See Exhibit F*)

48.     SLF also refused to waive its fee interest in cases where clients had terminated SLF and sought substitute Louisiana counsel. JJA, which is not licensed in Louisiana, offered to waive its own fees to assist these clients in securing new representation. SLF declined, preventing clients from obtaining adequate legal counsel and placing JJA at risk of professional liability due to its inability to appear or fulfill its co-counsel obligations. Although JJA continued receiving ECF notices in certain cases, it had been removed from the shared litigation calendar where deadlines were tracked, and no longer had access to the supporting files or communications necessary to act on those notices. During

---

[5] *See* Compare Exhibit E (Joint Settlement Statement); with
[6] *See* Exhibit F (Statement Omitting JJA Attribution)
[7] See Exhibit G – (Sanders v. SafePoint Ins. Co., Order Granting Sanctions)

this same period, SLF represented to the court in *Smith v. Southern Fidelity*; Case No. 1:22-CV-03751 (W.D. La. Mar. 27, 2025) that JJA was aware of scheduling deadlines — despite knowing that JJA had been fully excluded from all litigation activities.[8] (*See Exhibit G*)[9] (*See Exhibit H*)

### OVERLAPPING LITIGATION AND ESTATE DISPUTES

49.     On August 14, 2024, SLF filed a lawsuit in the 32nd Judicial District Court for Terrebonne Parish, Louisiana, against Xpand Legal, LLC *See. Sangisetty Law Firm, LLC v. Xpand Legal, LLC;* Case No. 200581 (Terrebonne Parish, LA)  — a litigation vendor that had worked with both SLF and JJA on administrative client onboarding. SLF sought recovery of administrative fees and claimed that JJA was jointly liable under the agreement. However, SLF did not name JJA as a defendant in that case.[10] (*See Exhibit I*)

50.     On January 29, 2025, SLF filed an exception of nonjoinder, arguing that JJA was an indispensable party to the Xpand litigation. This marked the second time SLF sought judicial relief concerning shared litigation proceeds while attempting to exclude or delay JJA's participation.[11] (*See Exhibit J*)

51.     On November 10, 2024, MMA filed this adversary proceeding against SLF, asserting that contingency fees related to former MMA clients constitute property of the bankruptcy estate. MMA claimed that SLF failed to remit proceeds from settled cases and sought declaratory relief concerning ownership of those fees.

52.     In its bankruptcy schedules, MMA listed JJA as a disputed fee claimant and asserted that funds attributable to JJA's jointly represented clients may also constitute estate assets. See MMA Chapter 11 Petition, Schedule E/F, In re *MMA Law Firm, PLLC*, Case No. 24-31596 (Bankr. S.D. Tex.).

---

[8] *See* Exhibit H (Email Correspondence re: Fee Waiver Refusal – Smith
[9] *See* Exhibit I (Notice of Intent to Withdraw in Smith).
[10] *See* Exhibit J (SLF Petition in SLF v. Xpand Legal)
[11] *See* Exhibit K (Exception of Nonjoinder)

53.     On February 28, 2025, SLF filed a separate lawsuit against JJA in the 32nd Judicial District Court in Terrebonne Parish *See. Sangisetty Law Firm, LLC v. Xpand Legal, LLC;* Case No. 200581 (Terrebonne Parish, LA) The petition initially instructed the clerk to hold service. On March 28, 2025, counsel for JJA contacted SLF's attorney to advise of JJA's intention to file a Motion to Intervene in this action. On April 2, 2025—five days later—SLF instructed the clerk to effectuate service on JJA. JJA was ultimately served on April 16, 2025, five days after it filed its Motion to Intervene in this Court.[12] (*See Exhibit L*)

**54.**     These overlapping and strategically timed lawsuits concern the same underlying attorney's fees, client contracts, and parties. MMA asserts that the disputed fees are property of the bankruptcy estate. SLF, by contrast, claims exclusive entitlement to those fees and has made inconsistent representations regarding JJA's role—labeling JJA an indispensable party in state court while simultaneously opposing JJA's intervention in this proceeding. A full and fair adjudication of these claims cannot occur without JJA's participation.

<div align="center">

**CAUSES OF ACTION**

**COUNT I – BREACH OF CONTRACT**

</div>

55.     Plaintiff-Intervenor JJA realleges and incorporates by reference the allegations set forth in Paragraphs 1 through 43 as if fully stated herein.

56.     JJA and SLF entered into a co-counsel agreement to jointly represent former MMA clients in Louisiana storm litigation. The agreement constitutes a valid and enforceable contract under Texas law. Specifically: See *Anglo-Dutch Petroleum Int'l, Inc. v. Greenberg Peden, P.C.*, 352 S.W.3d 445 (Tex. 2011). See Heldenfels Bros., Inc. v. City of Corpus Christi, 832 S.W.2d 39, 41 (Tex. 1992).

    a.    There was a clear and unequivocal offer and acceptance;

    b.    The material terms were definite and certain;

---

[12] *See* Exhibit L (SLF Petition against JJA in Terrebonne Parish).

    c.    The parties exchanged valuable consideration; and

    d.    The Agreement satisfies the legal requirements for attorney fee-sharing under Anglo-Dutch Petroleum Int'l, Inc. v. Greenberg Peden, P.C., 352 S.W.3d 445 (Tex. 2011).

57.    This agreement is evidenced by an October 2, 2023 email from SLF confirming a 50/50 fee split and mutual duties to jointly litigate, manage, and resolve client cases.[13] (*See Exhibit B*)

58.    Under the parties' agreement and jointly executed client contracts, SLF and JJA agreed to assume joint responsibility for case management, litigation coordination, and ethical representation. JJA further relied on SLF to serve as local counsel in Louisiana courts where JJA is not licensed to appear.

59.    JJA fully performed its contractual obligations, including but not limited to:

    a.    Funding litigation costs and advancing substantial financial resources for case acquisition and infustructure;

    b.    Funding and maintaining case infastructure through the SmartAdvocate case management platform;

    c.    Assigning attorneys to actively review and analyze case files to determined which pleadings, subpoenas, and notices were needed;

    d.    Assigning attorneys to draft necessary legal documents in support of joint clients—many of which were filed under SLF's name due to local counsel requirements.

    e.    Assigning paralegals to support SLF on active matters;

    f.    Ensuring ethical compliance with joint representation rules.

60.    These contributions were essential to case development and directly advanced the litigation of jointly handled matters.

61.    SLF materially breached the parties' agreement by:

    a.    Abandoning the jointly managed litigation systems established by JJA, including the SmartAdvocate case management platform;

---

[13] *See* Exhibit B (October 2, 2023 Email).

b.   Revoking JJA's access to shared Google Drive folders, litigation calendars, and settlement spreadsheets;

c.   Excluding JJA from settlement tracking and disbursement decisions;

d.   Omitting JJA from settlement statements despite ongoing co-counsel obligations; *See Saucier v. Hayes Dairy Prods., Inc.*, 373 So. 2d 102 (La. 1979);

e.   Refusing to waive fees to facilitate substitute counsel; and

f.   Filing pleadings that referenced JJA's receipt of ECF notices while failing to disclose that JJA had no access to the case record, calendar, or client communications necessary to fulfill its ethical obligations.

g.   Failing to remit JJA's agreed share of attorney fees;

h.   Violating the duty of good faith and fair dealing inherent in a co-counsel relationship.

62.   SLF further breached its obligations by sharing sensitive client communications with non-counsel third parties without JJA's knowledge or consent, and by obstructing JJA's ability to meet its ethical obligations to jointly represented clients.

63.   These breaches were authorized and directed by SLF's managing attorney, Ravi Sangisetty, who actively participated in and approved the conduct described.

64.   As a direct and proximate result of SLF's breach, JJA has suffered financial harm, reputational damage, and faces exposure to potential claims by unrepresented clients.

65.   JJA is entitled to damages for SLF's breach of contract in an amount to be determined at trial, including but not limited to lost fee entitlements, litigation costs, and the value of uncompensated labor provided in reliance on the co-counsel agreement.

### COUNT II – TORTIOUS INTERFERENCE OF CONTRACT

66.   Plaintiff-Intervenor JJA realleges and incorporates by reference the allegations set forth in Paragraphs 1 through 64 as if fully stated herein.

67.   JJA maintained contractual relationships with both MMA and SLF to jointly acquire, manage, and litigate claims on behalf of hurricane claimants in Louisiana. These relationships included:

     i.     The Secondment Agreement with MMA, dated June 23, 2023; and[14] (*See Exhibit A*)

     j.     The co-counsel arrangement with SLF confirmed on October 2, 2023.[15] (*See Exhibit B*)

68.     At all relevant times, Defendant Ravi Sangisetty had knowledge of these contracts and their intended performance. Mr. Sangisetty participated in the execution of the SLF-JJA joint arrangement and oversaw its implementation.

69.     Thereafter, Mr. Sangisetty intentionally and unjustifiably interfered with JJA's performance and fee rights under both contracts by:

a.     Revoking JJA's access to jointly used Google Drive folders, litigation calendars, and settlement tracking spreadsheets;

b.     Abandoning the SmartAdvocate platform, which had been implemented by JJA to enable joint case management and transparent file access;

c.     Retaining exclusive control over client communications, file data, and settlement documentation;

d.     Making false or misleading statements to clients regarding JJA's role, qualifications, or continued involvement;

e.     Filing pleadings that referenced JJA's receipt of ECF notices while failing to disclose that JJA had no access to the case record, calendar, or client communications necessary to fulfill its ethical obligations and could not appear in Louisiana courts.

f.     Retaining fees derived from client matters originated and acquired by JJA, without consent, disclosure, or allocation;

g.     Coordinating the filing of parallel lawsuits designed to reframe fee entitlements and exclude JJA from adjudicating its interest in client matters acquired and originated by JJA.

h.     Mr. Sangisetty further attempted to shift blame to JJA by asserting in other proceedings that JJA had improperly outsourced its responsibilities, despite SLF's prior knowledge and approval of all litigation support arrangements, including the use of Xpand Legal.

---

[14] *See* Exhibit A (Secondment Agreement between JJA and MMA, dated June 23, 2023).
[15] S*ee* Exhibit B (October 2, 2023 Email from Ravi Sangisetty).

    i.    Collaborating with attorneys outside the JJA-SLF Agreement to disrupt or displace JJA's client relationships.

70.    This interference was not justified, privileged, or lawful. SLF and Ravi Sangisetty were not acting in furtherance of any legitimate interest but rather sought to usurp control of jointly developed cases and retain attorney fees owed to JJA.

71.    As a direct and proximate result of SLF and Ravi Sangisetty's interference, JJA has suffered financial harm, impaired reputation, actual damages in excess of $2 million and has been prevented from performing its obligations to both its clients and counterparties.

72.    JJA seeks compensatory and punitive damages for tortious interference with contract, in an amount to be determined at trial..

### COUNT I – QUANTUM MERUIT/UNJUST ENHANCEMENT (IN THE ALTERNATIVE)

73.    Plaintiff-Intervenor JJA realleges and incorporates by reference the allegations set forth in Paragraphs 1 through 71 as if fully stated herein.

74.    In the alternative, and only in the event the Court or jury determines that no valid or enforceable written agreement existed between JJA and SLF, JJA asserts a claim under the equitable doctrine of quantum meruit to recover the reasonable value of services rendered and benefits conferred upon SLF.

75.    Under Texas law, a plaintiff may recover under quantum meruit when:

    a.    valuable services were rendered or materials furnished; for the benefit of the defendant;
    b.    which were accepted by the defendant; and
    c.    under circumstances reasonably notifying the defendant that the plaintiff expected to be paid. *See Heldenfels Bros., Inc. v. City of Corpus Christi*, 832 S.W.2d 39, 41 (Tex. 1992).

76.    JJA rendered valuable legal, administrative, and operational services that directly benefited SLF and its clients. These services included:

   a. Client acquisition and intake;

      b. Attorney Case review and pleadings drafting;

      c. Assignment of paralegals and staff to support SLF; and

      d. Implementation and administration of a case management platform.

77. SLF accepted and benefited from these services, relied on JJA's staff and systems to manage its Louisiana docket, and used JJA's work product and client base in connection with litigation and settlement activities.

78. Despite receiving these benefits, SLF has refused to compensate JJA for its services or recognize JJA's entitlement to any portion of the fees recovered in client matters originated through JJA.

79. SLF continues to retain the full financial benefit of JJA's contributions while excluding JJA from case updates, fee disbursements, and client communications.

80. It would be unjust for SLF to retain the benefits of JJA's services without providing fair compensation.

81. But for JJA's prior relationship with MMA and its willingness to step in during the firm's collapse, SLF would not have had access to the clients, litigation opportunity, or revenue now in dispute. JJA originated and structured the client transition pipeline and obtained approximately 98% of the jointly handled matters through its own efforts. It would be inequitable for SLF to retain the financial benefit of those efforts without compensation.

82. JJA is entitled to recover the reasonable value of its services under the doctrine of quantum meruit, or, in the alternative, under principles of equity and unjust enrichment, in an amount to be determined at trial.

**PRAYER FOR RELIEF**

83. WHEREFORE, Plaintiff-Intervenor Jason Joy & Associates, PLLC respectfully requests that this Court enter judgment in its favor and grant the following relief:

a. On Count I (Breach of Contract): An award of compensatory damages against SLF and Ravi Sangisetty, jointly and severally, in an amount to be determined at trial, including JJA's lost fee entitlements, costs, and any consequential damages arising from Defendants' breach;

b. On Count II (Tortious Interference with Contract): An award of compensatory and punitive damages against Ravi Sangisetty for his intentional interference with JJA's contractual relationships with MMA and SLF;

c. On Count III (Quantum Meruit / Unjust Enrichment [In the Alternative): In the alternative, an award of the reasonable value of services rendered by JJA for the benefit of SLF, in an amount to be determined at trial;

d. Equitable relief including a full and transparent accounting of any fees recovered in matters arising from jointly represented or JJA-originated clients, and imposition of a constructive trust over any funds improperly withheld;

e. JJA requests that the Court issue an order directing SLF to immediately turn over to JJA all funds to which JJA is entitled pursuant to the client representation agreements and the joint venture agreement between JJA and SLF.

f. In the alternative, an order directing that any disputed attorney's fees or settlement proceeds be deposited into the registry of the Court, pursuant to 28 U.S.C. § 2041 and Federal Rule of Civil Procedure 67, pending further adjudication;

g. All Costs of court,  and interest as allowed by law;

h. Reasonable and necessary attorneys' fees for the prosecution of this action pursuant to Chapter 38 of the Texas Civil Practice & Remedies Code and section 37.009 of the Texas Civil Practice & Remedies Code.

i. Such other and further relief, both general and special, at law or in equity, to which it may be justly entitled.

**SUMMARY RELIEF**

84.   Joy has advanced copious amounts of funding necessary to handle the enormous costs of this type of litigation. Sangisetty and SLF have refused to pay to Joy his share of earned fees or to reimburse him for the costs advanced by Joy. Given the posture of the numerous adversary proceedings, the failure of the debtor to file a disclosure statement and plan in the chapter 11 case which has been pending for over one year, and the need for Joy's involvement, Joy asks the Court to

issue an order directing SLF and Sangisetty to show cause on a date and at a time to be fixed by this Court why they should not immediately turn over to Joy all sums due him, and that Sangisetty and SLF produce an accounting of the disposition of all sums collected or to be collected in which Joy has or may have an interest. JJA submits a proposed order with this Amended Complaint.

## CONDITIONS PRECEDENT

85.     All conditions precedent to JJA's claims have been performed, waived, or have otherwise occurred.

## JURY DEMAND

86.     Plaintiff-Intervenor Jason Joy & Associates, PLLC hereby demands a trial by jury on all issues so triable as a matter of right pursuant to Rule 38 of the Federal Rules of Civil Procedure.

Respectfully submitted on April 19, 2025.

Respectfully submitted,

_____
Jason J. Joy
Texas Bat No. 24058932
Colin G. Wood
Texas Bar No. 24082535
909 Texas Street, Suite 1801
Houston, Texas 77002
T: (713) 221-6500
F: (713) 221-1717
E: jason@jasonjoylaw.com
E: colin@jasonjoylaw.com

**Exhibit Index**

| Exhibit | Description |
|---|---|
| **Exhibit A** | Secondment Agreement between JJA and MMA (June 23, 2023) |
| **Exhibit B** | October 2, 2023 Email from Ravi Sangisetty confirming the 50/50 fee split |
| **Exhibit C** | February 12, 2025 Email from Ravi Sangisetty revoking file access |
| **Exhibit D** | March 11, 2025 Email from Tanner Magee stating access denial is "ongoing" |
| **Exhibit E** | Settlement Statement w/ JJA Attribution |
| **Exhibit F** | Settlement Statement w/no JJA Attribution |
| **Exhibit G** | Sanders v. SafePoint Ins. Co., Order Granting Sanctions |
| **Exhibit H** | Email Correspondence re: Fee Waiver Refusal in *Smith v. Southern Fidelity* |
| **Exhibit I** | Notice of Intent to Withdraw in *Smith v. Southern Fidelity*, referencing JJA |
| **Exhibit J** | SLF Petition in SLF v. Xpand Legal |
| **Exhibit K** | Exception of Nonjoinder in SLF v. Xpand Legal (January 29, 2025) |
| **Exhibit L** | SLF Petition against JJA in Terrebonne Parish |

**CERTIFICATE OF SERVICE**

I hereby certify that on this April 19, 2025, a true and correct copy of the foregoing

Amended and Supplemental Complaint in Intervention was served via the Court's Electronic Case

Filing (ECF) system upon all counsel of record who have appeared in this matter.

Miriam T. Goott
attorney-in-charge
W ALKER & P ATTERSON, P.C.
P.O. Box 61301
Houston, TX 77208
mgoott@walkerandpatterson.com

Leo D. Congeni (LA Bar #25626)
(attorney-in-charge)
650 Poydras Street, Suite 2750
New Orleans, Louisiana 70130
Telephone: 504-522-4848
Facsimile: 504-910-3055
Email: leo@congenilawfirm.com

Andrew Jimenez
U. S. Department of Justice
Office of the United States Trustee
515 Rusk Street, Suite 3516
Houston, TX 77002
713-718-4668
Fax:713-718-4670
Email: andrew.jimenez@usdoj.gov

_____
Jason J. Joy

**A**

4:25-CV-0318

## MMA AND JJA TRANSFER/ASSIGNMENT/SECONDMENT AGREEMENT

**THIS SECONDMENT AGREEMENT** (this "Agreement") is made the **22nd** day of June, 2023

**BETWEEN:**

(1) MMA Law Firm, PLLC ("MMA"), a professional limited liability company and existing under the laws of the state of Texas with a place of business at 1415 Louisiana St, Suite 2900, Houston, Texas 77002; and

(2) Jason Joy & Associates ("JJA"), a law firm existing under the laws of the state of Texas] with a place of business at 909 Texas Street, Houston, Texas 77002.

MMA and JJA are referred to individually herein as a "Party" and collectively as the "Parties".

**WHEREAS:**

(a) The parties desire to facilitate the expeditious transfer of MMA's current Louisiana client files related to Hurricanes Laura, Delta, Ida, and other storms in order to preserve asset these clients' under their respective insurance policies;

(b) This agreement is intended to facilitate the transfer of MMA clients to JJA in accordance with all applicable Rules of Professional Conduct;

(c) JJA will seek the Courts' and LSBA's assistance to ensure representation of current MMA clients is ethically and expeditiously transferred to JJA considering prescription on Hurricane Ida claims is August 29, 2023, less than 70 days from this date.

**NOW, THEREFORE,** for the mutual promises made herein, and other good and valuable consideration, the receipt and adequacy of which are hereby acknowledged, the parties agree as follows:

Section 1. Purpose and Scope:

The purpose of this agreement is to assign, delegate, and transfer MMA's current Louisiana client files to JJA or an Affiliate Law Firm in accordance with the parties duties under applicable law and Rules of Professional Conduct and in accordance with the terms and conditions herein. And where clients cannot, or need not, be transferred, JJA agrees to prosecute claims, at a minimum, to the point of preserving prescription and facilitate closeout of resolved claims.

Section 2. Terms and Conditions

(a) The parties hereto agree that JJA will enter into a contingency fee contract with certain MMA current Louisiana clients. JJA acknowledges that MMA asserts an attorney fee interest in the transferred client files as its former attorney. As such, JJA agrees to hold 45% of any attorney fee and reimbursable expenses earned in connection with the transferred client files in an escrow/trust account.

(b) MMA agrees to allow JJA, as a secondee of MMA, access to its client database to facilitate efficient transfer of the client files.

(c) MMA agrees to obtain express written consent from JJA and/or the Court for all communication with its current clients.

(d) JJA will immediately seek the proper authority to utilize MMA's database or a similar system to facilitate efficient communication with the transferred clients and to ensure efficient and expeditious preservation of their respective claims in light of the August 29, 2023 prescription date for the clients who have first-party insurance claims arising out damage resulting from Hurricane Ida.

Section 3. Confidentiality.

JJA shall not use, divulge or communicate to any person (other than those whose province it is to know the same or with authority from MMA) any trade secrets, intellectual property, or information which are for the time being confidential to MMA or any of its subsidiaries and are not in the public domain ("Confidential Information"), which JJA may have received or obtained during the transfer of client files or client representation. This restriction shall cease to apply to information or knowledge that may come into the public domain otherwise than through the unauthorized disclosure by or the fault of JJA.

Section 4. Indemnity.

Once a case has been transferred and legal services agreement has been entered into by JJA and the transferred client, JJA shall indemnify and hold harmless MMA from any and all malpractice claims that would arise from JJA's malpractice relating to the claim. MMA agrees to indemnify and hold harmless JJA from any and all malpractice claims that would arise from MMA's actions prior to JJA's participation in the case/claim.

Section 5. MMA Transfer of Representation.

(a) MMA expressly acknowledges that its representation with its respective Louisiana clients is terminated with JJA endeavoring to obtain new legal contracts of representation. JJA is expressly not being assigned MMA's legal contracts and reserves the right to refuse representation upon evaluation of the individual client matter.

(b) JJA has not had any opportunity to review the MMA client files referenced herein prior to the execution of this agreement. As such, the parties understand and acknowledge that JJA's representation of the transferred client files does not begin until the execution of a new legal services contract with the transferred client. MMA expressly acknowledges that it will not be party to this new legal services contract but, rather, asserts a fee and expense interest in any attorney fee earned as described above.

(c) Further, JJA reserves the right to reject representation of the transferred client at its discretion.

Section 6. No Agent/ Employee Relationship.

The parties acknowledge that nothing in this agreement is intended to create a contract of employment, joint venture, partnership, fiduciary duty, or other legal status by and among the parties other than to facilitate an efficient transfer of the client files so that they can be expeditiously reviewed and/or the clients' rights can be preserved and asserted.

Section 7. Miscellaneous.

(a) Entire Agreement. This Agreement sets forth the entire agreement and understanding of the parties concerning the subject matter hereof and supersedes all prior agreements, arrangements and understandings between MMA and JJA concerning such subject matter. No representation, promise, inducement or statement of intention has been made by or on behalf of either party hereto that is not set forth in this Agreement or the documents referred to herein. This Agreement may not be amended or modified except by a written instrument specifically referring to this Agreement executed by the parties hereto.

(b) Waiver. The failure of either Party hereto at any time or from time to time to require performance of any of the other party's obligations under this Agreement shall in no manner affect the right to enforce any provision of this Agreement at a subsequent time, and the waiver of any rights arising out of any breach shall not be construed as a waiver of any rights arising out of any subsequent breach.

(c) No Third Party Beneficiary. The terms and provisions of this Agreement are intended solely for the benefit of each Party hereto, and it is not the intention of the Parties to confer third-party beneficiary rights upon any other person.

(d) No Assignment. Neither this Agreement nor any right, interest or obligation hereunder may be assigned by any Party hereto without the prior written consent of the other Party, except that JJA will endeavor to enter into a joint venture with attorneys licensed in Louisiana to effectuate the terms of this agreement.

(e) Headings. The headings used in this Agreement have been inserted for convenience of reference only and do not define or limit the provisions hereof.

(f) Severability. In the event that any provision of this Agreement shall be determined by a court of competent jurisdiction to be invalid, illegal or unenforceable, the validity, legality and enforceability of the remaining provisions shall not in any way be affected or impaired thereby.

(g) Governing Law. This Agreement shall be governed by and construed and enforced in accordance with federal law and, to the extent federal law incorporates state law, that law shall be the laws of the State of Texas without regard to its principles of conflicts of laws.

(h) Non-disparagement JJA agrees and covenants that it will not at any time, directly or indirectly, make, publish or communicate to any person or entity or in any public forum any defamatory or disparaging remarks, comments, or statements concerning MMA or its businesses, or any of its employees, officers, shareholders, members or advisors. MMA agrees and covenants that it shall not make any defamatory or disparaging remarks, comments, or statements concerning JJA to any third parties.

[Signature Page Fallows]

**IN WITNESS WHEREOF,** the undersigned have executed this Secondment Agreement as of the Effective Date.

MMA Law Firm, PLLC

By:

Title: MANAGING MEMBER   C/26/25


Jason Joy & Associates

By:

Title: Attorney   6/22/23

EXHIBIT

**B**

4:25-CV-0318

| | |
|---|---|
| **From:** | Ravi Sangisetty |
| **To:** | Jason Joy |
| **Subject:** | our jv -mma et al. |
| **Date:** | Monday, October 2, 2023 10:27:33 PM |

We are 50/50 on everything going forward and backward from 8/1 except for cases from counsel that have been my previous co-counsel partners for some time. These include Duval Firm, D&D, MB, and a few others. I plan to respect our efforts to originate cases and we have both spent considerable resources to do so.  If there is any issue, with any particular client then we can discuss.  I do not anticipate this will be the case.

rks

--

**SANGISETTY LAW FIRM**

Ravi K. Sangisetty, Esq.

Attorney, Sangisetty Law Firm, LLC

P 504.662.1016 | F 504.662.1318 | rks@sangisettylaw.com |

3914 Canal Street | New Orleans, LA 70119 |

http://www.sangisettylaw.com/

**\*\*\*\*\*\*\*\*\*\*Please note new address: 3914 Canal Street, New Orleans, LA 70119\*\*\*\*\*\*\*\***

EXHIBIT

**C**

CASE NO.
4:25-CV-0318

**Subject:** Re: Urgent: Request to Restore Access to Shared Client Files and Settlement Spreadsh[eet]
**Date:** Wednesday, February 12, 2025 at 3:30:44 PM Eastern Standard Time
**From:** Ravi Sangisetty
**To:** Jennifer Shea
**CC:** tanner@landrymagee.com, jpcoussan@andrus-boudreaux.com, brooke@sangisettylaw.com, William Boyles, Amanda Olmsted, Jason Joy, Colin Wood, Kathleen O'Connor, Alexandre Petit, Annette Aguilar, julian@sangisettylaw.com

We are in the process of moving our files over to a new CRM. It would be more efficient if you direct any specific client inquiries our way. Thanks. rks

Sent from my iPhone

On Feb 12, 2025, at 11:41 AM, Jennifer Shea <Jennifer@jasonjoylaw.com> wrote:

Our firm, Jason Joy & Associates, PLLC, has a contractual obligation to our shared clients to ensure their cases are properly handled. As such, there is no reason we should be denied full and complete access to client files and data.

Please restore our access to the shared Google Drive containing client files and the settlement spreadsheet immediately. Continued restriction of access impedes our ability to fulfill our duties to these clients and is not in their best interests.

Kindly confirm once access has been reinstated or provide a justification for any continued denial. We trust that you will take the necessary steps to resolve this matter promptly.

Thanks,

<PastedGraphic-1.png>

EXHIBIT

D

CASE No.

4:25-CV-0318

**Subject:** Re: 6th Request for IMMEDIATE ACCESS to ALL COMPLETE CASE FILES, Settlement Do[...]
Disbursement

**Date:** Tuesday, March 11, 2025 at 11:23:33 AM Eastern Daylight Time

**From:** Tanner Magee

**To:** Ravi Sangisetty, brooke@sangisettylaw.com, jpcoussan@andrus-boudreaux.com, Amanda Olmsted, julian@sangisettylaw.com, Jennifer Shea

**CC:** William Boyles

Jennifer,

We have received your email and stated our response. Sending a new one every couple of days is not necessary. We will consider your request ongoing.

TDM

Landry Magee, LLC
www.landrymagee.com
On Mar 11, 2025 at 10:17 AM -0500, Jennifer Shea <Jennifer@jasonjoylaw.com>, wrote:

> **Mr. Sangisetty,**
>
> **Jason Joy & Associates, PLLC, and Sangisetty Law Firm ("SLF") jointly represent numerous clients in ongoing hurricane-related insurance litigation matters. Despite this joint representation, SLF has repeatedly refused to provide us with access to essential case files, client records, and case status updates. This ongoing obstruction impairs our ability to fulfill our ethical and fiduciary obligations to our mutual clients.**
>
> **As co-counsel, our firm is entitled to full access to all case-related information to ensure effective client representation. To date, SLF has failed or refused to provide us with this access, significantly impeding our ability to:**
>
> - **Respond to client inquiries regarding case status;**
>
> - **Ensure compliance with court deadlines and procedural requirements;**
>
> - **Adequately advocate for our clients' interests in settlement negotiations and litigation strategy.**
>
> **SLF cannot selectively claim a co-counsel relationship when seeking assistance or fee-sharing while simultaneously denying us the fundamental access necessary to fulfill our shared professional obligations.**
>
> **We request the following:**

1. **Grant Full and Unrestricted Access to Case Files – Provide Jason Joy & Associates, PLLC with complete and immediate access to all client files, court pleadings, correspondence, settlement records, and case notes.**

2. **Reinstate Access to Case Management Tools – Either resume use of SmartAdvocate or provide an alternative means by which our firm can receive timely and comprehensive case updates.**

3. **Cease and Correct Misrepresentations – SLF must cease making statements suggesting that our firm is not contributing to case management when, in fact, it was SLF's own actions that precluded our involvement.**

4. **Fee Disbursement – We request an immediate accounting of all funds in trust related to our shared cases and demand payment of our rightful portion. As per our agreements and ethical obligations, all fees should be accounted for and distributed accordingly.**

5. **Expense Reimbursement – Our firm has incurred substantial expenses related to these cases. Please provide a detailed accounting of any case-related expenses that have been considered in fee calculations, and we expect to be reimbursed in accordance with our agreements.**

6. **ANY and ALL written agreements** between Sangisetty Law Firm and **Mr. Tanner MAGEE**, whether individually or as a representative of Landry MAGEE Attorneys at Law.

7. **ANY and ALL written agreements** between **Jean-Paul Coussan**, whether individually or as a representative of Andrus, Boudreaux, Landry, and Coussan, APLC.

**We trust that SLF will take the necessary steps to fulfill its co-counsel obligations. Please direct all correspondence regarding this matter to myself, Jason, Colin, Alex, and Kathleen at:**

**jennifer@jasonjoylaw.com**
**jason@jasonjoylaw.com**
**colin@jasonjoylaw.com**
**alex@jasonjoylaw.com**
**kathleen@jasonjoylaw.com**

**Thank you,**

Thank you,

**EXHIBIT**

**E**

4:25-CV-0318

## ▆▆▆▆▆ SETTLEMENT STATEMENT

| | | |
|---|---|---|
| **TOTAL SETTLEMENT:** | | **$53,669.43** |
| Release, | $45,000.00 | |
| Reissued Check, | $8,669.43 | |
| | | |
| ATTORNEY'S FEES (33 ⅓% of $53,669.43) | | ($17,889.81) |
| Fee split: | 50% - Sangisetty Law | $8,944.91 |
| | 50% - Jason J. Joy | $8,944.90 |
| | | |
| **FIRM COSTS** | | ($2,200.00) |
| Administrative Costs / Investigation | | $2,200.00 |
| | | |
| **ADJUSTER COST** | | ($2,000.00) |
| Exact Building Consultants, Estimate | | $2,000.00*[1] |

| | |
|---|---|
| Check to Attorneys | $20,089.81 |
| Check to Exact Building Consultants | $2,000.00 |
| **Total Costs** | **$22,089.81** |

| | |
|---|---|
| **TOTAL SETTLEMENT TO CLIENT:** | **$31,579.62** |

I, ▆▆▆▆▆ , approve the above disbursement and fees and hereby hold the law offices of Sangisetty Law Firm, LLC and Jason J. Joy harmless from any and all liens, and/or costs not withheld and paid directly as set forth above.

Signed this ____ day of _____.
12 / 18 / 2023

▆▆▆▆▆

---

[1] $2,000.00 will be held as a precaution to pay Exact Building Consultants for their estimate. If it is determined that Exact Building Consultants will not be paid, ▆▆▆▆▆ will receive additional payment of $2,000.00.

EXHIBIT

**F**

4:25-CV-0318

## █████████ SETTLEMENT STATEMENT

| | |
|---|---|
| TOTAL SETTLEMENT: | **$50,000.00** |
| ATTORNEY'S FEES (33 ⅓% of $50,000.00) | ($16,666.67) |
| FIRM COSTS | ($2,519.79) |
|     Administrative Costs / Investigation | $2,000.00 |
|     Filing Fee, Ascension Parish | $519.79 |
| OTHER COSTS | **($0.00)** |
|     MMA's Adjuster Invoice | $0.00 |

| | |
|---|---|
| Check to Attorneys | $19,186.46 |
| **Costs Being Held for MMA** | **$0.00** |
| **Total Payment to Attorney** | **$19,186.46** |

( $50,000.00 - $16,666.67 - $2,519.79 = $30,813.54 )

**TOTAL SETTLEMENT TO CLIENT:**    $30,813.54

I, █████████, approve the above disbursement and fees and hereby hold the law offices of Sangisetty Law Firm, LLC and Jason J. Joy harmless from any and all liens, and/or costs not withheld and paid directly as set forth above. Because MMA is now in Bankruptcy, it has been explained to client that MMA's estimators may assert their costs associated with work on the file prior to JJJ/SLF being retained. JJJ/SLF is now being forced to hold back these costs. By signing below, I authorize the Sangisetty Law Firm to endorse any and all checks made payable to me on my behalf and my spouse.

Date Signed: 8/22/2024





EXHIBIT
G

4:25-CV-0318

**UNITED STATES DISTRICT COURT**

**MIDDLE DISTRICT OF LOUISIANA**

| | |
|---|---|
| **PAMELA SANDERS** | **CIVIL ACTION** |
| **VERSUS** | **NO. 23-1174-BAJ-RLB** |
| **SAFEPOINT INSURANCE COMPANY** | |

## ORDER

A motion hearing was held on July 9, 2024.

> **PRESENT:   Christy L. McMannen**
> Counsel for Louisiana Insurance Guaranty Association (LIGA)

Before the Court is Plaintiff's Motion to Substitute Party Pursuant to Fed. Rule Civ. Pro 25. (R. Doc. 15). A hearing was set at Plaintiff's request. (R. Docs. 16 and 24). Plaintiff's counsel did not appear at the hearing. The Court's staff contacted Plaintiff's counsel after the scheduled time had passed and were informed that Plaintiff's counsel had miscalendared the hearing date.

Counsel for LIGA, a non-party, appeared as ordered. LIGA's counsel (and plaintiff's counsel) all have addresses in New Orleans, LA. The Court finds it appropriate to impose sanctions, pursuant to Rule 16(f) of the Federal Rules of Civil Procedure, on Plaintiff's counsel for failure to appear at the hearing as ordered. The Court understands that calendaring errors may happen due to inadvertence or careless error, and will not impose any sanction that would compromise the plaintiff or her case. The Court will, therefore, limit these sanctions to the reasonable expenses, including attorney's fees, incurred by LIGA with respect to its counsel's travel and attendance at the hearing. Plaintiff's <u>counsel</u> shall be responsible for these expenses and fees.

C:cv25c; T: 00:05
Ctrm 6

LIGA's counsel is instructed to file, by **July 16, 2024**, a Notice of Fees and Costs, setting forth, with an appropriate affidavit or declaration, its counsel's billing rate and time incurred with respect to travel and attendance at the hearing, as well as appropriate travel costs. No other fees and costs, including preparation for the hearing, shall be included.

On or before **July 23, 2024,** Plaintiff's counsel shall either pay the amount indicated in the Notice of Fees and Costs or file an appropriate memorandum explaining why the noncompliance with the Court's order setting the hearing was substantially justified or other circumstances that make an award of expenses unjust.

Plaintiff's Motion to Substitute Party (R. Doc. 15) has been taken under consideration. The Court will issue a separate ruling on the motion based on the written briefing submitted by Plaintiff and LIGA.

Signed in Baton Rouge, Louisiana, on July 9, 2024.

**RICHARD L. BOURGEOIS, JR.**
**UNITED STATES MAGISTRATE JUDGE**

C:cv25c; T: 00:05
Ctrm 6



EXHIBIT

H

4:25-CV-0318

| | |
|---|---|
| **Subject:** | Re: Smith v. Southern Fidelity (LIGA); LAWD |
| **Date:** | Tuesday, April 1, 2025 at 9:43:05 PM Eastern Daylight Time |
| **From:** | Brooke Long |
| **To:** | Jennifer Shea |
| **CC:** | rks@sangisettylaw.com, julian@sangisettylaw.com, William Boyles, Jason Joy, Colin Wood, Alexandre Petit, Kathleen O'Connor, Kade Stutes, kade@onmyside.com, Digger Earles |
| **Attachments:** | image.png |

Hi Jennifer,

We are not waiving our fees or expenses. I am not sure what gave you that impression. If there is something I am missing, please let me know.

Additionally, at the time the Intent to Withdraw was filed, we were unaware Laborde Earles would be taking over. The client said Jason Joy is the one she hired. It is a much easier and quicker process if we file a Motion to Substitute Laborde Earles as counsel. Kade and I have already filed one like this recently.

We will get you the file materials.

Thank you,


On Tue, Apr 1, 2025 at 8:14 PM Jennifer Shea <Jennifer@jasonjoylaw.com> wrote:

> Ravi:
>
> Given your recent filing in the above-referenced matter, specifically your **Notice of Intent to Withdraw**, which names our firm as incoming counsel, we respectfully request that you provide Jason Joy & Associates, PLLC with access to **Shirley Smith's complete case file**.
>
> In line with your representation to the Court and pursuant to applicable ethical obligations, we ask that you forward all documents, pleadings, correspondence, discovery materials, and any other records pertaining to the case.
>
> For your convenience and to reflect your intent as expressed in the withdrawal filing, we have attached a **Fee Waiver Agreement** consistent with your recent representation to the Court. Please review the agreement and let us know if you have any questions or require revisions.
>
> Thank you for your attention to this matter. We look forward to your prompt cooperation in transferring the file. Should you have any questions, please do not hesitate to contact me.
>
>
> Thank you,



--

**Brooke Bond Long, Esq.**

Attorney, Sangisetty Law Firm, LLC

P 504.662.1016 **|** F 504.662.1318 **|** brooke@sangisettylaw.com **|**

3914 Canal Street **|** New Orleans, LA 70119 **|**

http://www.sangisettylaw.com/



EXHIBIT

1

4:25-CV-0318

**UNITED STATES DISTRICT COURT**

**WESTERN DISTRICT OF LOUISIANA**

**ALEXANDRIA DIVISION**

| | | |
|---|---|---|
| **GILBERT SMITH** | * | **CIVIL ACTION NO.: 1:22-CV-03751** |
| **Plaintiff,** | * | |
| | * | |
| **VERSUS** | * | **JUDGE TERRY A. DOUGHTY** |
| | * | |
| **SOUTHERN FIDELITY** | * | |
| **INSURANCE CO.** | * | **MAGISTRATE JUDGE** |
| | * | **PEREZ-MONTES** |
| **Defendant** | * | |
| | * | |

**\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\***

## NOTICE OF INTENT TO WITHDRAW

**NOW INTO COURT,** comes Ravi Sangisetty of the Sangisetty Law Firm ("the Firm") who has received notification of termination as counsel and that Plaintiff is represented by Jason Joy who has not enrolled.

1.

In accordance with Rule 83.2.11 of the Local Rules of the Western District of Louisiana, undersigned represents that Plaintiff's last known contact information is as follows:

> Name: Shirley Smith
> Address: 1036 N. Fourth Street Ext, Jena, LA 71342
> Phone: 318-316-2980
> Email: shirleydsmith124@gmail.com

2.

Undersigned   has sent a certified letter requesting the client's signature as well as provided a copy of the Court's scheduling order. Jason Joy's office has also been receiving CM/ECF notices for this particular case so their office is aware of the Court's deadlines.

Page **1** of 2

Respectfully submitted,

SANGISETTY LAW FIRM

s/ *Ravi K. Sangisetty*
**RAVI K. SANGISETTY (#30709)**
3914 Canal Street
New Orleans, LA 70119
Telephone:    (504) 662-1016
Facsimile:    (504) 662-1318
Email:          rks@sangisettylaw.com

**CERTIFICATE OF SERVICE**

By filing electronically, I certify that service was accomplished through the Notice of Electronic Filing for parties and counsel who are Filing Users and that service was accomplished on any party or counsel who is not a Filing User in accordance with the **Federal Rules** and the **Local Rules** of this Court.

I further certify mail was sent to the last known address of plaintiff notifying her of any future deadlines and future court appearances.

s/ *Ravi K Sangisetty*
Ravi K. Sangisetty

*MONED* to comply with the demand of the P

*hereof accompanies this citation, or to make a*

*, in writing with the Clerk Of Court at her offi*

*after the service hereof; and your failure to sc*

*nent rendered against you.*

*al this 12TH day of NOVEMBER, 2024.*

*THERE*

*CL*

BREACH OF CONTRACT AND UNFAIR 1

## PARTIES

### I.

Sangisetty Law Firm, LLC a law firm with a p

### II.

nd Legal Consulting ("Xpand"), a business entit

enida de la Carlota, Suite 600 Laguna Hills, CA

## JURISDICTION AND VENUE

### III.

VII.

to meet the needs of its potential clients, Plaint

nt support services.  These services included r

client communications.   The services prom

n-legal nature.

## VIII.

023 until August of 2024 Defendant promisec

nsparency.  Notwithstanding this, in early /

n invoice upon demand suggesting that Def

grossly inflated and Plaintiff requested the b

s bill given the nature of the services provided

fused to provide such and threatened final c

ging of interest.

## XIII.

fendant's unfair trade practices, Plaintiff has suf

## XIV.

efendant's unfair trade practices, Plaintiff is e

fees under Louisiana Unfair Trade Practices a

na Revised Statutes 15:1401 - 1428.



**RAVI SAN**

3914 Canal

New Orlean

Telephone: (

Facsimile: (

Email: rks@

**COUNSEL**

**VICE AT THIS TIME**

**32ND DISTRICT COURT FOR THE PARISH OF TERREBONNE**

**STATE OF LOUISIANA**

CASE NO.: 200581                                                                            DIVISION "C"

**SANGISETTY LAW FIRM, LLC**

**VERSUS**

**XPAND LEGAL, LLC**

FILED:_____                          _____

                                                                                 DEPUTY CLERK

**PEREMPTORY EXCEPTION OF NONJOINDER OF A PARTY**

NOW INTO COURT comes Plaintiff-Defendant in Reconvention, Sangisetty Law Firm, LLC (hereinafter Plaintiff or "Sangisetty Law Firm"), who respectfully files this exception to the Reconventional Demand filed by Defendant-Plaintiff in Reconvention (hereinafter "Defendant" or "XPAND").

I.      **FACTUAL HISTORY**

On or about June 30, 2023, Plaintiff and Defendant entered into a contract ("the Contract") wherein Xpand agreed to provide non-legal administrative services to Sangisetty Law Firm. The parties to the Contract, as evidenced by the signatures on the last page, were Jonathan Paul, (a representative from XPAND), Ravi K. Sangisetty a representative from Sangisetty Law Firm), and Jason Joy (a representative from Joy Law Firm).[1]

The cause of the contract was that Sangisetty Law Firm anticipated an influx of clients related to the hurricanes of 2020 and 2021. The influx of inquiries was because a Texas law firm representing thousands of clients was suspended from practicing in Louisiana. The rates agreed upon by Plaintiff, the Joy Law Firm, and Defendant were based on the extraordinary nature of the circumstances, but Defendant agreed to bill only for time spent on the project as opposed to stand-by time. As such, Defendant was obligated to keep detailed records of the work it performed.

As such, in order to meet the needs of its potential clients, Plaintiff, as well as the Joy Law Firm, engaged Defendant to assist with non-legal client support services.  These services included receiving incoming calls, contract collection, and client communications.  The services promised were to be purely administrative and of a non-legal nature.

From August of 2023 until August of 2024 Defendant promised to provide such services according to the Contract with full transparency.  Notwithstanding this, in early August 2024, Defendant provided Plaintiff with an invoice upon demand suggesting that Defendant was owed nearly $800,000.  This bill was grossly inflated and Plaintiff requested the back-up documentation to support such an outrageous bill given the nature of the services provided.

## II.    LEGAL ARGUMENT

Defendant failed to join a necessary party to their Reconventional Demand. Under La. Code of Civ. Pro. Art. 927(A)(4), a party can raise a peremptory exception for "[n]onjoinder of a party under Articles 641 and 642." Under La. Code of Civ. Pro. Art. 641:

A person shall be joined as a party in the action when either:

(1) In his absence complete relief cannot be accorded among those already parties.
(2) He claims an interest relating to the subject matter of the action and is so situated that the adjudication of the action in his absence may either:
(a) As a practical matter, impair or impede his ability to protect that interest.
(b) Leave any of the persons already parties subject to a substantial risk of incurring multiple or inconsistent obligations.

It is well settled that "an adjudication made without making a person described in La. C.C.P. art 641 a party to the litigation is an absolute nullity." *Brubaker v. Houma Police Dep't.*, 2023 CA 1330, 2024 WL 4500088, at *6 (La. Ct. App. 1st Cir. Oct. 16, 2024).

 Here, Defendant has failed to name the Joy Law Firm, an indispensable party to the action. The Contract in question was signed by XPAND, Sangisetty Law Firm, and Joy Law Firm. The Contract does not make a distinction as to who is responsible for paying the fees for service. Therefore, assuming the facts in Defendant's Reconventional Demand are true, the Joy Law Firm would have to be named as a party as evidenced below:[2]

1. **In his absence complete relief cannot be accorded among those already parties.**

Should XPAND be successful, complete relief cannot be accorded among the parties already named as the Joy Law Firm, as per the Contract, are responsible for the fees as well.

2. **He claims an interest relating to the subject matter of the action and is so situated that the adjudication of the action in his absence**

Excluding the Joy Law Firm from the suit would "[l]eave any of the persons already parties subject to a substantial risk of incurring multiple or inconsistent obligations." La. Code of Civ. Pro. Art. 641(2)(b). Specifically, should XPAND be successful, Sangisetty Law Firm would be subject to a substantial risk as they it would be responsible for the entire fee in dispute, which is inconsistent with the Contract.

### III.   CONCLUSION

As set forth above, Plaintiff respectfully requests this Court dismiss Defendant's Reconventional Demand as they failed to name a necessary party under La. Code of Civ. Pro. 641.

Respectfully submitted by:

**SANGISETTY LAW FIRM, LLC**



_____
**RAVI SANGISETTY (#30709)**
3914 Canal Street
New Orleans, Louisiana 70119
Telephone: (504) 662-1016
Facsimile: (504) 662-1318
Email: rks@sangisettylaw.com

**COUNSEL FOR PLAINTIFF**

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a copy of the above and foregoing Exception has been served upon all counsel of record by email this 29th day of January, 2025.



_____

**RAVI SANGISETTY (#30709)**

JASON JOY & ASSOCIATES - ET AL.

Parish of Terrebonne
State of Louisiana

## A RESIDENT OF VERMILION PARISH

TO:     PHIL DE BAILLON
        111 CONCORD STREET SUITE B
        ABBEVILLE, LA 70540

You are named as a defendant in the above captioned matter. Attached to this citation is:

☒ Certified Copy of Original Petition
☐ Certified Copy of Amended Petition
☐ Discovery Request

The petition was filed into this office on FEBRUARY 28, 2025.

   YOU ARE NOTIFIED that you must either comply with the demand contained in the attached petition or make an appearance either by filing an answer or other pleading, in the 32nd Judicial District Court located at 7856 Main St. Houma, LA 70360 (P. O. Box 1569, Houma, LA 70361) within the delay provided in Article 1001 of the Louisiana Code of Civil Procedure under penalty of default.

### Article 1151 of the Louisiana Code of Civil Procedure provides in pertinent part:

A defendant shall plead in response to an Amended Petition within the time remaining for pleading to the Original Pleading or within ten (10) days after service of the Amended Petition. Whichever period is longer, unless the time is extended under Article 1001.

### Article 1001 of the Louisiana Code of Civil Procedure states:

A.  A defendant shall file his answer within **twenty-one (21) days** after service of citation upon him, except as otherwise provided by law. If the plaintiff files and serves a Discovery Request with his Petition, the defendant shall file his answer to the petition within **thirty (30) days** after service of the amended petition.

B.  When an Exception is filed prior to Answer and is overruled or referred to the merits, or is sustained and an Amendment of the Petition ordered, the Answer shall be filed within fifteen (15) days after the exception is overruled or referred to the merits, or fifteen (15) days after service of the Amended Petition.

C.  The Court may grant additional time for answering.

## THE CLERK OF COURT'S OFFICE CANNOT PROVIDE LEGAL ADVICE.

This Citation was issued by the Clerk for the Court for the 32nd Judicial District Court, Parish of Terrebonne, on the 2nd day of APRIL, 2025.

                              THERESA A. ROBICHAUX
                              CLERK OF COURT

                        By: _____
                              Deputy Clerk of Court

Requested by: MR. RAVI SANGISETTY
              ATTORNEY AT LAW
              3914 CANAL STREET
              NEW ORLEANS, LA 70119
              (504) 942-1616

Returned and Filed

32ND DISTRICT COURT FOR THE PARISH OF TERREBONNE

STATE OF LOUISIANA

CASE NO.: 201933

DIVISION " " D

SANGISETTY LAW FIRM, LLC

VERSUS

JASON JOY & ASSOCIATES, ET AL.

FILED:_____

_____
DEPUTY CLERK

PETITION FOR DAMAGES AND INJUNCTIVE/DECLARATORY RELIEF

**NOW INTO COURT**, through undersigned counsel, comes Petitioner, Sangisetty Law Firm, LLC, who seeks to file this Petition for Damages and Injunctive/Declaratory Relief in the above-captioned manner as follows:

1.

This Court has jurisdiction over this action pursuant to Louisiana Code of Civil Procedure Article 2. There is also a related matter pending in this jurisdiction Docket No.: 200581.

2.

Made Defendants herein are Jason Joy & Associates ("Defendant" or "JJA"), a Texas entity engaged in the practice of law in the State of Texas; Kathleen O'Connor, a person of full age of majority domiciled in the State of Texas; Colin Wood, a person of full age of majority domiciled in the State of Texas; and Phil Debaillon, a person of full age of majority domiciled in the State of Louisiana.

3.

Venue is proper under Louisiana Code of Civil Procedure Article 76.1 because a substantial part of the work and services were performed in Terrebonne Parish under the terms of the contract. Additionally, the relevant contracts at issue provide for venue in this jurisdiction.

4.

The subject matter of this lawsuit involves Defendants improper conduct surrounding an agreement to represent certain clients whose claims arose out of various hurricanes that occurred

~~Jason Joy & Associates ("JJA") to jointly represent these clients whose claims had been pending~~ for some time.

5.

The impetus for the creation of the venture between SLF and JJA involved transferring of numerous clients formerly represented by McClenny Moseley & Associates ("MMA"). As is well known, MMA came under immense scrutiny for its conduct in various jurisdictions throughout Louisiana in its representation of clients who had legal disputes with their respective insurance companies. Ultimately, various courts prohibited MMA from continuing in its legal representation of certain clients, leaving them without lawyers.

6.

The scope of the joint venture agreement was primarily to facilitate the efficient transfer of the client matters from MMA to Petitioner.

7.

It is notable that the agreement between SLF and JJA was not intended to establish a global split of attorney fees on the matters, but such was to be determined on the actual work done on each of the client files. Specifically, the Joint Venture states: "The Parties agree that the scope of this Agreement is not intended to determine a split of attorney fees on each transferred file. The determination of attorney fees shall be handled on a case-by-case basis and in accordance with the Louisiana Rules of Professional Conduct."

8.

After obtaining these new clients, and in exchange for its being party to the client fee contracts, JJA promised to provide critical legal services. Instead of fulfilling this obligation, JJA improperly delegated substantial responsibilities to Xpand Legal, LLC ("Xpand"), a third-party vendor company of non-lawyers. Additionally, Xpand improperly billed the venture excessive fees, for services not rendered and, upon information and belief, invoiced the venture for services provided to JJA on unrelated Projects. By abandoning the work, outsourcing key responsibilities to non-lawyers, and permitting overbilling practices, JJA failed to fulfill its obligations thereby breaching its duties to Petitioner and the clients.

Further, JJA's failure to fulfill its obligations to assist with certain legal tasks that it agreed to perform, resulted in Petitioner having to assume all responsibilities, including the financial responsibilities, and endeavor to complete the work for hundreds of clients. This required substantial financial resources as well as additional attorneys as all of the cases involved pending deadlines. Nevertheless, JJA, though agreeing otherwise, has taken the position that its entitlement to fees was/is based on its "origination" of the client matters making it clear that it had no intention of participating substantively in the legal work to be performed.

10.

In connection with this work, it was also contemplated that JJA and Petitioner would evaluate the legal malpractice claims of the clients whose cases were prejudiced by McClenny Moseley & Associates. Specifically, Petitioner was evaluating which insurance claims remained viable and which only presented legal malpractice issues.

11.

The malpractice designation was maintained by Petitioner in a software program used for a time to organize the files. Defendants and Xpand Legal, LLC had access to this database.

12.

With respect to these potential malpractice claims, Petitioner learned that JJA was actually in a separate business venture with a co-defendant to the malpractice action, thereby presenting a conflict of interest.

13.

When it was discovered that Xpand Legal, LLC was overbilling Petitioner and its clients for services it did not perform, Petitioner advised that he was terminating the contract with Xpand Legal, LLC.

14.

Subsequently Xpand Legal, LLC, at the direction of Defendants, began to call the clients designated as malpractice and signed these clients under new contingency contracts with JJA affiliated and/or separate law firms, despite instruction from Petitioner that Xpand Legal, LLC was not authorized to communicate with its clients on new legal matters. Some of these individuals already had signed a contract with Petitioner, yet Defendants and Xpand informed them it was a mistake and presented them with a new agreement as described above.

Upon information and belief, the new malpractice contracts with JJA's office, obtained with the assistance of Xpand Legal LLC, did not list JJA but rather partners of JJA, i.e., Colin Wood and Kathleen O'Connor. This was done presumably to circumvent the fact that there was a conflict of interest present.

16.

Additionally, upon signing these new malpractice contracts utilizing the work done by Petitioner, JJA and Xpand then locked Petitioner out of the software system with respect to these clients.

17.

Xpand, JJA, O'Connor, and Wood utilized legal work performed by Petitioner for its clients in evaluating the malpractice aspects of their respect hurricane claims to solicit a number of Petitioner's clients on the malpractice matters without permission and despite explicit instruction not to do so. This has resulted in damages to Petitioner for loss of income and/or economic opportunity, unjust enrichment, and is an unfair trade practice as defined under Louisiana law.

18.

At least one such client includes an individual who had already signed a malpractice related contract with Petitioner and despite having communicated this to Defendants, they, nevertheless, requested he sign a new contract.

19.

Upon information and belief, JJA is now attempting to contact the first-party claim clients and/or opposing counsel causing disruption and interfering with the clients' legal matters and/or obtaining their settlement proceeds. This is because Petitioner notified JJA that its claim for fees based on client "origination" was not proper. Further, upon information and belief, in February 2025, attorney Philip Debaillon has been retained by JJA as its purported Louisiana counsel under the pretext of assuming legal work nearly a year after anything substantive on its part has been done. This has only served to interfere in the efficient and prompt resolution of the client matters justifying the Court's intervention.

WHEREFORE, Plaintiff prays for further judgment against Defendants, Jason Joy & Associates, Colin Wood, Kathleen O'Connor and Phil Debaillon as follows:

1. Defendants be held jointly liable and/or *in solido* for the damages and relief sought in the Petition.

2. Judgment in favor of Petitioner and against Jason Joy and Associates stating Jason Joy and Associates is not entitled to a legal fee in connection with the representation of clients originally contemplated to be jointly represented by Petitioner and Jason Joy and Associates.

3. Jason Joy and Associates or any of its agents be enjoined from contacting the clients of Petitioner, opposing counsel, and/or the courts except to relay messages left at its law firm.

4. Jason Joy and Associates be held solely responsible for any money owed to Xpand Legal, LLC for purported services rendered in connection with Petitioner's clients.

5. Additional damages under the Louisiana Unfair Trade Practices Act.

6. Attorney fees;

7. Court costs; and

8. All legal and equitable relief as determined by the Court.

Respectfully submitted by:

**SANGISETTY LAW FIRM, LLC**

**RAVI SANGISETTY (#30709)**
**TANNER MAGEE (#33954)**
**WILLIAM BOYLES (#31632)**
**AMANDA OLMSTED (#40002)**
**BROOKE LONG (#35665)**

3914 Canal Street
New Orleans, Louisiana 70119
Telephone: (504) 662-1016
Facsimile: (504) 662-1318
Email: rks@sangisettylaw.com
william@sangisettylaw.com
amanda@sangisettylaw.com
brooke@sangisettylaw.com

COUNSEL FOR PETITIONER

FILED

FEB 28 2025

DEPUTY CLERK OF COURT
PARISH OF TERREBONNE, LA

A TRUE COPY OF THE ORIGINAL
CLERK'S OFFICE, HOUMA

LA. APR 0 2 2025 , 20

BY Condance M Voisin

Deputy Clerk of Court

**EXHIBIT**

**B**

4:25-CV-0318

## MMA AND JJA TRANSFER/ASSIGNMENT/SECONDMENT AGREEMENT

**THIS SECONDMENT AGREEMENT** (this "Agreement") is made the **22nd** day of June, 2023

**BETWEEN:**

(1) MMA Law Firm, PLLC ("MMA"), a professional limited liability company and existing under the laws of the state of Texas with a place of business at 1415 Louisiana St, Suite 2900, Houston, Texas 77002; and

(2) Jason Joy & Associates ("JJA"), a law firm existing under the laws of the state of Texas] with a place of business at 909 Texas Street, Houston, Texas 77002.

MMA and JJA are referred to individually herein as a "Party" and collectively as the "Parties".

**WHEREAS:**

(a) The parties desire to facilitate the expeditious transfer of MMA's current Louisiana client files related to Hurricanes Laura, Delta, Ida, and other storms in order to preserve asset these clients' under their respective insurance policies;

(b) This agreement is intended to facilitate the transfer of MMA clients to JJA in accordance with all applicable Rules of Professional Conduct;

(c) JJA will seek the Courts' and LSBA's assistance to ensure representation of current MMA clients is ethically and expeditiously transferred to JJA considering prescription on Hurricane Ida claims is August 29, 2023, less than 70 days from this date.

**NOW, THEREFORE,** for the mutual promises made herein, and other good and valuable consideration, the receipt and adequacy of which are hereby acknowledged, the parties agree as follows:

Section 1. Purpose and Scope:

The purpose of this agreement is to assign, delegate, and transfer MMA's current Louisiana client files to JJA or an Affiliate Law Firm in accordance with the parties duties under applicable law and Rules of Professional Conduct and in accordance with the terms and conditions herein. And where clients cannot, or need not, be transferred, JJA agrees to prosecute claims, at a minimum, to the point of preserving prescription and facilitate closeout of resolved claims.

Section 2. Terms and Conditions

(a) The parties hereto agree that JJA will enter into a contingency fee contract with certain MMA current Louisiana clients. JJA acknowledges that MMA asserts an attorney fee interest in the transferred client files as its former attorney. As such, JJA agrees to hold 45% of any attorney fee and reimbursable expenses earned in connection with the transferred client files in an escrow/trust account.

(b) MMA agrees to allow JJA, as a secondee of MMA, access to its client database to facilitate efficient transfer of the client files.

(c) MMA agrees to obtain express written consent from JJA and/or the Court for all communication with its current clients.

(d) JJA will immediately seek the proper authority to utilize MMA's database or a similar system to facilitate efficient communication with the transferred clients and to ensure efficient and expeditious preservation of their respective claims in light of the August 29, 2023 prescription date for the clients who have first-party insurance claims arising out damage resulting from Hurricane Ida.

Section 3. Confidentiality.

JJA shall not use, divulge or communicate to any person (other than those whose province it is to know the same or with authority from MMA) any trade secrets, intellectual property, or information which are for the time being confidential to MMA or any of its subsidiaries and are not in the public domain ("Confidential Information"), which JJA may have received or obtained during the transfer of client files or client representation. This restriction shall cease to apply to information or knowledge that may come into the public domain otherwise than through the unauthorized disclosure by or the fault of JJA.

Section 4. Indemnity.

Once a case has been transferred and legal services agreement has been entered into by JJA and the transferred client, JJA shall indemnify and hold harmless MMA from any and all malpractice claims that would arise from JJA's malpractice relating to the claim. MMA agrees to indemnify and hold harmless JJA from any and all malpractice claims that would arise from MMA's actions prior to JJA's participation in the case/claim.

Section 5. MMA Transfer of Representation.

(a) MMA expressly acknowledges that its representation with its respective Louisiana clients is terminated with JJA endeavoring to obtain new legal contracts of representation. JJA is expressly not being assigned MMA's legal contracts and reserves the right to refuse representation upon evaluation of the individual client matter.

(b) JJA has not had any opportunity to review the MMA client files referenced herein prior to the execution of this agreement. As such, the parties understand and acknowledge that JJA's representation of the transferred client files does not begin until the execution of a new legal services contract with the transferred client. MMA expressly acknowledges that it will not be party to this new legal services contract but, rather, asserts a fee and expense interest in any attorney fee earned as described above.

(c) Further, JJA reserves the right to reject representation of the transferred client at its discretion.

Section 6. No Agent/ Employee Relationship.

The parties acknowledge that nothing in this agreement is intended to create a contract of employment, joint venture, partnership, fiduciary duty, or other legal status by and among the parties other than to facilitate an efficient transfer of the client files so that they can be expeditiously reviewed and/or the clients' rights can be preserved and asserted.

Section 7. Miscellaneous.

(a) Entire Agreement. This Agreement sets forth the entire agreement and understanding of the parties concerning the subject matter hereof and supersedes all prior agreements, arrangements and understandings between MMA and JJA concerning such subject matter. No representation, promise, inducement or statement of intention has been made by or on behalf of either party hereto that is not set forth in this Agreement or the documents referred to herein. This Agreement may not be amended or modified except by a written instrument specifically referring to this Agreement executed by the parties hereto.

(b) Waiver. The failure of either Party hereto at any time or from time to time to require performance of any of the other party's obligations under this Agreement shall in no manner affect the right to enforce any provision of this Agreement at a subsequent time, and the waiver of any rights arising out of any breach shall not be construed as a waiver of any rights arising out of any subsequent breach.

(c) No Third Party Beneficiary. The terms and provisions of this Agreement are intended solely for the benefit of each Party hereto, and it is not the intention of the Parties to confer third-party beneficiary rights upon any other person.

(d) No Assignment. Neither this Agreement nor any right, interest or obligation hereunder may be assigned by any Party hereto without the prior written consent of the other Party, except that JJA will endeavor to enter into a joint venture with attorneys licensed in Louisiana to effectuate the terms of this agreement.

(e) Headings. The headings used in this Agreement have been inserted for convenience of reference only and do not define or limit the provisions hereof.

(f) Severability. In the event that any provision of this Agreement shall be determined by a court of competent jurisdiction to be invalid, illegal or unenforceable, the validity, legality and enforceability of the remaining provisions shall not in any way be affected or impaired thereby.

(g) Governing Law. This Agreement shall be governed by and construed and enforced in accordance with federal law and, to the extent federal law incorporates state law, that law shall be the laws of the State of Texas without regard to its principles of conflicts of laws.

(h) Non-disparagement JJA agrees and covenants that it will not at any time, directly or indirectly, make, publish or communicate to any person or entity or in any public forum any defamatory or disparaging remarks, comments, or statements concerning MMA or its businesses, or any of its employees, officers, shareholders, members or advisors. MMA agrees and covenants that it shall not make any defamatory or disparaging remarks, comments, or statements concerning JJA to any third parties.

[Signature Page Fallows]

IN WITNESS WHEREOF, the undersigned have executed this Secondment Agreement as of the Effective Date.

MMA Law Firm, PLLC

By:

Title: MANAGING MEMBER   C/22/23

Jason Joy & Associates

By:

Title:   6-/22/23

**EXHIBIT**

**C**

4:25-CV-0318

| | |
|---|---|
| **From:** | Ravi Sangisetty |
| **To:** | Jason Joy |
| **Subject:** | our jv -mma et al. |
| **Date:** | Monday, October 2, 2023 10:27:33 PM |

We are 50/50 on everything going forward and backward from 8/1 except for cases from counsel that have been my previous co-counsel partners for some time. These include Duval Firm, D&D, MB, and a few others. I plan to respect our efforts to originate cases and we have both spent considerable resources to do so.  If there is any issue, with any particular client then we can discuss.  I do not anticipate this will be the case.

rks
--

**SANGISETTY LAW FIRM**

**Ravi K. Sangisetty, Esq.**

Attorney, Sangisetty Law Firm, LLC

P 504.662.1016 | F 504.662.1318 | rks@sangisettylaw.com |

3914 Canal Street | New Orleans, LA 70119 |

http://www.sangisettylaw.com/

**\*\*\*\*\*\*\*\*\*\*Please note new address: 3914 Canal Street, New Orleans, LA 70119\*\*\*\*\*\*\*\***

EXHIBIT

**D**

CASE NO.
4:25-CV-0318

**Subject:** Re: Urgent: Request to Restore Access to Shared Client Files and Settlement Spreadsh...

**Date:** Wednesday, February 12, 2025 at 3:30:44 PM Eastern Standard Time

**From:** Ravi Sangisetty

**To:** Jennifer Shea

**CC:** tanner@landrymagee.com, jpcoussan@andrus-boudreaux.com, brooke@sangisettylaw.com, William Boyles, Amanda Olmsted, Jason Joy, Colin Wood, Kathleen O'Connor, Alexandre Petit, Annette Aguilar, julian@sangisettylaw.com

We are in the process of moving our files over to a new CRM. It would be more efficient if you direct any specific client inquiries our way. Thanks. rks

Sent from my iPhone

On Feb 12, 2025, at 11:41 AM, Jennifer Shea <Jennifer@jasonjoylaw.com> wrote:

Our firm, Jason Joy & Associates, PLLC, has a contractual obligation to our shared clients to ensure their cases are properly handled. As such, there is no reason we should be denied full and complete access to client files and data.

Please restore our access to the shared Google Drive containing client files and the settlement spreadsheet immediately. Continued restriction of access impedes our ability to fulfill our duties to these clients and is not in their best interests.

Kindly confirm once access has been reinstated or provide a justification for any continued denial. We trust that you will take the necessary steps to resolve this matter promptly.

Thanks,

<PastedGraphic-1.png>

JASON JOY & ASSOCIATES - ET AL.

Parish of Terrebonne
State of Louisiana

## A RESIDENT OF VERMILION PARISH

TO:      PHIL DEBAILLON
         111 CONCORD STREET, SUITE B
         ABBEVILLE, LA 70510

You are named as a defendant in the above captioned matter.  Attached to this citation is:

☒ **Certified Copy of Original Petition**
☐ **Certified Copy of Amended Petition**
☐ **Discovery Request**

The petition was filed into this office on FEBRUARY 28, 2025.

**YOU ARE NOTIFIED** that you must either comply with the demand contained in the attached petition or make an appearance either by filing an answer or other pleading in the 32nd Judicial District Court located at 7856 Main St., Houma, LA 70360 (P. O. Box 1569, Houma, LA 70361) within the delay provided in Article 1001 of the Louisiana Code of Civil Procedure under penalty of default.

### Article 1151 of the Louisiana Code of Civil Procedure provides in pertinent part:

A defendant shall plead in response to an Amended Petition within the time remaining for pleading to the Original Pleading or within ten (10) days after service of the Amended Petition, whichever period is longer, unless the time is extended under Article 1001.

### Article 1001 of the Louisiana Code of Civil Procedure states:

A. A defendant shall file his answer within **twenty-one (21) days** after service of citation upon him, except as otherwise provided by law. If the plaintiff files and serves a Discovery Request with his Petition, the defendant shall file his answer to the petition within **thirty (30) days** after service of the amended petition.
B. When an Exception is filed prior to Answer and is overruled or referred to the merits, or is sustained and an Amendment of the Petition ordered, the Answer shall be filed within fifteen (15) days after the exception is overruled or referred to the merits, or fifteen (15) days after service of the amended petition.
C. The Court may grant additional time for answering.

## THE CLERK OF COURT'S OFFICE CANNOT PROVIDE LEGAL ADVICE.

This Citation was issued by the Clerk for the Court for the 32nd Judicial District Court, Parish of Terrebonne, on the 2nd day of APRIL, 2025.

THERESA A. ROBICHAUX
CLERK OF COURT

By: _____
         Deputy Clerk of Court

Requested by:  MR. RAVI SANGISETTY
                ATTORNEY AT LAW
                3914 CANAL STREET
                NEW ORLEANS, LA 70119
                (504) 962-1016

Returned and Filed

32ND DISTRICT COURT FOR THE PARISH OF TERREBONNE

STATE OF LOUISIANA

CASE NO.: 201933

DIVISION " "D

SANGISETTY LAW FIRM, LLC

VERSUS

JASON JOY & ASSOCIATES, ET AL.

FILED: _____

_____
DEPUTY CLERK

PETITION FOR DAMAGES AND INJUNCTIVE/DECLARATORY RELIEF

NOW INTO COURT, through undersigned counsel, comes Petitioner, Sangisetty Law Firm, LLC, who seeks to file this Petition for Damages and Injunctive/Declaratory Relief in the above-captioned manner as follows:

1.

This Court has jurisdiction over this action pursuant to Louisiana Code of Civil Procedure Article 2. There is also a related matter pending in this jurisdiction Docket No.: 200581.

2.

Made Defendants herein are Jason Joy & Associates ("Defendant" or "JJA"), a Texas entity engaged in the practice of law in the State of Texas; Kathleen O'Connor, a person of full age of majority domiciled in the State of Texas; Colin Wood, a person of full age of majority domiciled in the State of Texas; and Phil Debaillon, a person of full age of majority domiciled in the State of Louisiana.

3.

Venue is proper under Louisiana Code of Civil Procedure Article 76.1 because a substantial part of the work and services were performed in Terrebonne Parish under the terms of the contract. Additionally, the relevant contracts at issue provide for venue in this jurisdiction.

4.

The subject matter of this lawsuit involves Defendants improper conduct surrounding an agreement to represent certain clients whose claims arose out of various hurricanes that occurred

Jason Joy & Associates ("JJA") to jointly represent those clients whose claims had been pending for some time.

5.

The impetus for the creation of the venture between SLF and JJA involved transferring of numerous clients formerly represented by McClenny Moseley & Associates ("MMA"). As is well known, MMA came under immense scrutiny for its conduct in various jurisdictions throughout Louisiana in its representation of clients who had legal disputes with their respective insurance companies. Ultimately, various courts prohibited MMA from continuing in its legal representation of certain clients, leaving them without lawyers.

6.

The scope of the joint venture agreement was primarily to facilitate the efficient transfer of the client matters from MMA to Petitioner.

7.

It is notable that the agreement between SLF and JJA was not intended to establish a global split of attorney fees on the matters, but such was to be determined on the actual work done on each of the client files. Specifically, the Joint Venture states: "The Parties agree that the scope of this Agreement is not intended to determine a split of attorney fees on each transferred file. The determination of attorney fees shall be handled on a case-by-case basis and in accordance with the Louisiana Rules of Professional Conduct."

8.

After obtaining these new clients, and in exchange for its being party to the client fee contracts, JJA promised to provide critical legal services. Instead of fulfilling this obligation, JJA improperly delegated substantial responsibilities to Xpand Legal, LLC ("Xpand"), a third-party vendor company of non-lawyers. Additionally, Xpand improperly billed the venture excessive fees, for services not rendered and, upon information and belief, invoiced the venture for services provided to JJA on unrelated Projects. By abandoning the work, outsourcing key responsibilities to non-lawyers, and permitting overbilling practices, JJA failed to fulfill its obligations thereby breaching its duties to Petitioner and the clients.

Further, JJA's failure to fulfill its obligations to assist with certain legal tasks that it agreed to perform, resulted in Petitioner having to assume all responsibilities, including the financial responsibilities, and endeavor to complete the work for hundreds of clients. This required substantial financial resources as well as additional attorneys as all of the cases involved pending deadlines. Nevertheless, JJA, though agreeing otherwise, has taken the position that its entitlement to fees was/is based on its "origination" of the client matters making it clear that it had no intention of participating substantively in the legal work to be performed.

10.

In connection with this work, it was also contemplated that JJA and Petitioner would evaluate the legal malpractice claims of the clients whose cases were prejudiced by McClenny Moseley & Associates. Specifically, Petitioner was evaluating which insurance claims remained viable and which only presented legal malpractice issues.

11.

The malpractice designation was maintained by Petitioner in a software program used for a time to organize the files. Defendants and Xpand Legal, LLC had access to this database.

12.

With respect to these potential malpractice claims, Petitioner learned that JJA was actually in a separate business venture with a co-defendant to the malpractice action, thereby presenting a conflict of interest.

13.

When it was discovered that Xpand Legal, LLC was overbilling Petitioner and its clients for services it did not perform, Petitioner advised that he was terminating the contract with Xpand Legal, LLC.

14.

Subsequently Xpand Legal, LLC, at the direction of Defendants, began to call the clients designated as malpractice and signed these clients under new contingency contracts with JJA affiliated and/or separate law firms, despite instruction from Petitioner that Xpand Legal, LLC was not authorized to communicate with its clients on new legal matters. Some of these individuals already had signed a contract with Petitioner, yet Defendants and Xpand informed them it was a mistake and presented them with a new agreement as described above.

Upon information and belief, the new malpractice contracts with JJA's office, obtained with the assistance of Xpand Legal LLC, did not list JJA but rather partners of JJA, i.e., Colin Wood and Kathleen O'Connor. This was done presumably to circumvent the fact that there was a conflict of interest present.

16.

Additionally, upon signing these new malpractice contracts utilizing the work done by Petitioner, JJA and Xpand then locked Petitioner out of the software system with respect to these clients.

17.

Xpand, JJA, O'Connor, and Wood utilized legal work performed by Petitioner for its clients in evaluating the malpractice aspects of their respect hurricane claims to solicit a number of Petitioner's clients on the malpractice matters without permission and despite explicit instruction not to do so. This has resulted in damages to Petitioner for loss of income and/or economic opportunity, unjust enrichment, and is an unfair trade practice as defined under Louisiana law.

18.

At least one such client includes an individual who had already signed a malpractice related contract with Petitioner and despite having communicated this to Defendants, they, nevertheless, requested he sign a new contract.

19.

Upon information and belief, JJA is now attempting to contact the first-party claim clients and/or opposing counsel causing disruption and interfering with the clients' legal matters and/or obtaining their settlement proceeds. This is because Petitioner notified JJA that its claim for fees based on client "origination" was not proper. Further, upon information and belief, in February 2025, attorney Philip Debaillon has been retained by JJA as its purported Louisiana counsel under the pretext of assuming legal work nearly a year after anything substantive on its part has been done. This has only served to interfere in the efficient and prompt resolution of the client matters justifying the Court's intervention.

WHEREFORE, Plaintiff prays for further judgment against Defendants, Jason Joy & Associates, Colin Wood, Kathleen O'Connor and Phil Debaillon as follows:

1. Defendants be held jointly liable and/or *in solido* for the damages and relief sought in the Petition.

2. Judgment in favor of Petitioner and against Jason Joy and Associates stating Jason Joy and Associates is not entitled to a legal fee in connection with the representation of clients originally contemplated to be jointly represented by Petitioner and Jason Joy and Associates.

3. Jason Joy and Associates or any of its agents be enjoined from contacting the clients of Petitioner, opposing counsel, and/or the courts except to relay messages left at its law firm.

4. Jason Joy and Associates be held solely responsible for any money owed to Xpand Legal, LLC for purported services rendered in connection with Petitioner's clients.

5. Additional damages under the Louisiana Unfair Trade Practices Act.

6. Attorney fees;

7. Court costs; and

8. All legal and equitable relief as determined by the Court.

Respectfully submitted by:

**SANGISETTY LAW FIRM, LLC**

**RAVI SANGISETTY (#30709)**
**TANNER MAGEE (#33954)**
**WILLIAM BOYLES (#31632)**
**AMANDA OLMSTED (#40002)**
**BROOKE LONG (#35665)**

3914 Canal Street
New Orleans, Louisiana 70119
Telephone: (504) 662-1016
Facsimile: (504) 662-1318
Email: rks@sangisettylaw.com
william@sangisettylaw.com
amanda@sangisettylaw.com
brooke@sangisettylaw.com

COUNSEL FOR PETITIONER

FILED

FEB 28 2025

DEPUTY CLERK OF COURT
PARISH OF TERREBONNE, LA

**A TRUE COPY OF THE ORIGINAL CLERK'S OFFICE, HOUMA**

LA. APR 0 2 2025 , 20

BY _____
**Deputy Clerk of Court**

EXHIBIT

F

4:25-CV-0318

**Subject:**   Re: Smith v. Southern Fidelity (LIGA); LAWD
**Date:**   Tuesday, April 1, 2025 at 9:43:05 PM Eastern Daylight Time
**From:**   Brooke Long
**To:**   Jennifer Shea
**CC:**   rks@sangisettylaw.com, julian@sangisettylaw.com, William Boyles, Jason Joy, Colin Wood, Alexandre Petit, Kathleen O'Connor, Kade Stutes, kade@onmyside.com, Digger Earles
**Attachments:**   image.png

Hi Jennifer,

We are not waiving our fees or expenses. I am not sure what gave you that impression. If there is something I am missing, please let me know.

 Additionally, at the time the Intent to Withdraw was filed, we were unaware Laborde Earles would be taking over. The client said Jason Joy is the one she hired. It is a much easier and quicker process if we file a Motion to Substitute Laborde Earles as counsel. Kade and I have already filed one like this recently.

We will get you the file materials.

Thank you,

On Tue, Apr 1, 2025 at 8:14 PM Jennifer Shea <Jennifer@jasonjoylaw.com> wrote:

> Ravi:
>
> Given your recent filing in the above-referenced matter, specifically your **Notice of Intent to Withdraw**, which names our firm as incoming counsel, we respectfully request that you provide Jason Joy & Associates, PLLC with access to **Shirley Smith's complete case file**.
>
> In line with your representation to the Court and pursuant to applicable ethical obligations, we ask that you forward all documents, pleadings, correspondence, discovery materials, and any other records pertaining to the case.
>
> For your convenience and to reflect your intent as expressed in the withdrawal filing, we have attached a **Fee Waiver Agreement** consistent with your recent representation to the Court. Please review the agreement and let us know if you have any questions or require revisions.
>
> Thank you for your attention to this matter. We look forward to your prompt cooperation in transferring the file. Should you have any questions, please do not hesitate to contact me.
>
> Thank you,



--

**Brooke Bond Long, Esq.**

Attorney, Sangisetty Law Firm, LLC

P 504.662.1016 I F 504.662.1318 I [brooke@sangisettylaw.com](mailto:brooke@sangisettylaw.com) I

3914 Canal Street I New Orleans, LA 70119 I

[http://www.sangisettylaw.com/](http://www.sangisettylaw.com/)





EXHIBIT

**G**

4:25-CV-0318

**UNITED STATES DISTRICT COURT**

**WESTERN DISTRICT OF LOUISIANA**

**ALEXANDRIA DIVISION**

| | | |
|---|---|---|
| **GILBERT SMITH** | * | **CIVIL ACTION NO.: 1:22-CV-03751** |
| **Plaintiff,** | * | |
| | * | |
| **VERSUS** | * | **JUDGE TERRY A. DOUGHTY** |
| | * | |
| **SOUTHERN FIDELITY** | * | |
| **INSURANCE CO.** | * | **MAGISTRATE JUDGE** |
| | * | **PEREZ-MONTES** |
| **Defendant** | * | |
| | * | |

**\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\***

<u>**NOTICE OF INTENT TO WITHDRAW**</u>

**NOW INTO COURT,** comes Ravi Sangisetty of the Sangisetty Law Firm ("the Firm") who has received notification of termination as counsel and that Plaintiff is represented by Jason Joy who has not enrolled.

1.

In accordance with Rule 83.2.11 of the Local Rules of the Western District of Louisiana, undersigned represents that Plaintiff's last known contact information is as follows:

> Name: Shirley Smith
> Address: 1036 N. Fourth Street Ext, Jena, LA 71342
> Phone: 318-316-2980
> Email: shirleydsmith124@gmail.com

2.

Undersigned   has sent a certified letter requesting the client's signature as well as provided a copy of the Court's scheduling order. Jason Joy's office has also been receiving CM/ECF notices for this particular case so their office is aware of the Court's deadlines.

Page **1** of **2**

Respectfully submitted,

SANGISETTY LAW FIRM

s/ *Ravi K. Sangisetty*
**RAVI K. SANGISETTY (#30709)**
3914 Canal Street
New Orleans, LA 70119
Telephone:     (504) 662-1016
Facsimile:     (504) 662-1318
Email:          rks@sangisettylaw.com

### CERTIFICATE OF SERVICE

By filing electronically, I certify that service was accomplished through the Notice of Electronic Filing for parties and counsel who are Filing Users and that service was accomplished on any party or counsel who is not a Filing User in accordance with the **Federal Rules** and the **Local Rules** of this Court.

I further certify mail was sent to the last known address of plaintiff notifying her of any future deadlines and future court appearances.

s/ *Ravi K Sangisetty*
Ravi K. Sangisetty

Page **2** of **2**

**EXHIBIT**

**H**

4:25-CV-0318

**Subject:** Re: 6th Request for IMMEDIATE ACCESS to ALL COMPLETE CASE FILES, Settlement Do[...] Disbursement

**Date:** Tuesday, March 11, 2025 at 11:23:33 AM Eastern Daylight Time

**From:** Tanner Magee

**To:** Ravi Sangisetty, brooke@sangisettylaw.com, jpcoussan@andrus-boudreaux.com, Amanda Olmsted, julian@sangisettylaw.com, Jennifer Shea

**CC:** William Boyles

Jennifer,

We have received your email and stated our response. Sending a new one every couple of days is not necessary. We will consider your request ongoing.

TDM

Landry Magee, LLC
www.landrymagee.com
On Mar 11, 2025 at 10:17 AM -0500, Jennifer Shea <Jennifer@jasonjoylaw.com>, wrote:

> **Mr. Sangisetty,**
>
> **Jason Joy & Associates, PLLC, and Sangisetty Law Firm ("SLF") jointly represent numerous clients in ongoing hurricane-related insurance litigation matters. Despite this joint representation, SLF has repeatedly refused to provide us with access to essential case files, client records, and case status updates. This ongoing obstruction impairs our ability to fulfill our ethical and fiduciary obligations to our mutual clients.**
>
> **As co-counsel, our firm is entitled to full access to all case-related information to ensure effective client representation. To date, SLF has failed or refused to provide us with this access, significantly impeding our ability to:**
>
> - **Respond to client inquiries regarding case status;**
>
> - **Ensure compliance with court deadlines and procedural requirements;**
>
> - **Adequately advocate for our clients' interests in settlement negotiations and litigation strategy.**
>
> **SLF cannot selectively claim a co-counsel relationship when seeking assistance or fee-sharing while simultaneously denying us the fundamental access necessary to fulfill our shared professional obligations.**
>
> **We request the following:**

1. **Grant Full and Unrestricted Access to Case Files – Provide Jason Joy & Associates, PLLC with complete and immediate access to all client files, court pleadings, correspondence, settlement records, and case notes.**

2. **Reinstate Access to Case Management Tools – Either resume use of SmartAdvocate or provide an alternative means by which our firm can receive timely and comprehensive case updates.**

3. **Cease and Correct Misrepresentations – SLF must cease making statements suggesting that our firm is not contributing to case management when, in fact, it was SLF's own actions that precluded our involvement.**

4. **Fee Disbursement – We request an immediate accounting of all funds in trust related to our shared cases and demand payment of our rightful portion. As per our agreements and ethical obligations, all fees should be accounted for and distributed accordingly.**

5. **Expense Reimbursement – Our firm has incurred substantial expenses related to these cases. Please provide a detailed accounting of any case-related expenses that have been considered in fee calculations, and we expect to be reimbursed in accordance with our agreements.**

6. **ANY and ALL written agreements** between Sangisetty Law Firm and **Mr. Tanner MAGEE**, whether individually or as a representative of Landry MAGEE Attorneys at Law.

7. **ANY and ALL written agreements** between **Jean-Paul Coussan**, whether individually or as a representative of Andrus, Boudreaux, Landry, and Coussan, APLC.

**We trust that SLF will take the necessary steps to fulfill its co-counsel obligations. Please direct all correspondence regarding this matter to myself, Jason, Colin, Alex, and Kathleen at:**

**jennifer@jasonjoylaw.com**
**jason@jasonjoylaw.com**
**colin@jasonjoylaw.com**
**alex@jasonjoylaw.com**
**kathleen@jasonjoylaw.com**

**Thank you,**

Thank you,
&lt;image.png&gt;



EXHIBIT

I

4:25-CV-0318

**UNITED STATES DISTRICT COURT**

**MIDDLE DISTRICT OF LOUISIANA**

| | |
|---|---|
| PAMELA SANDERS | CIVIL ACTION |
| VERSUS | NO. 23-1174-BAJ-RLB |
| SAFEPOINT INSURANCE COMPANY | |

**ORDER**

A motion hearing was held on July 9, 2024.

**PRESENT:   Christy L. McMannen**
Counsel for Louisiana Insurance Guaranty Association (LIGA)

Before the Court is Plaintiff's Motion to Substitute Party Pursuant to Fed. Rule Civ. Pro 25. (R. Doc. 15). A hearing was set at Plaintiff's request. (R. Docs. 16 and 24). Plaintiff's counsel did not appear at the hearing. The Court's staff contacted Plaintiff's counsel after the scheduled time had passed and were informed that Plaintiff's counsel had miscalendared the hearing date.

Counsel for LIGA, a non-party, appeared as ordered. LIGA's counsel (and plaintiff's counsel) all have addresses in New Orleans, LA. The Court finds it appropriate to impose sanctions, pursuant to Rule 16(f) of the Federal Rules of Civil Procedure, on Plaintiff's counsel for failure to appear at the hearing as ordered. The Court understands that calendaring errors may happen due to inadvertence or careless error, and will not impose any sanction that would compromise the plaintiff or her case. The Court will, therefore, limit these sanctions to the reasonable expenses, including attorney's fees, incurred by LIGA with respect to its counsel's travel and attendance at the hearing. Plaintiff's <u>counsel</u> shall be responsible for these expenses and fees.

C:cv25c; T: 00:05
Ctrm 6

LIGA's counsel is instructed to file, by **July 16, 2024**, a Notice of Fees and Costs, setting forth, with an appropriate affidavit or declaration, its counsel's billing rate and time incurred with respect to travel and attendance at the hearing, as well as appropriate travel costs. No other fees and costs, including preparation for the hearing, shall be included.

On or before **July 23, 2024,** Plaintiff's counsel shall either pay the amount indicated in the Notice of Fees and Costs or file an appropriate memorandum explaining why the noncompliance with the Court's order setting the hearing was substantially justified or other circumstances that make an award of expenses unjust.

Plaintiff's Motion to Substitute Party (R. Doc. 15) has been taken under consideration. The Court will issue a separate ruling on the motion based on the written briefing submitted by Plaintiff and LIGA.

Signed in Baton Rouge, Louisiana, on July 9, 2024.

_____
**RICHARD L. BOURGEOIS, JR.**
**UNITED STATES MAGISTRATE JUDGE**

C:cv25c; T: 00:05
Ctrm 6

**EXHIBIT**

**J**

4:25-CV-0318

## SETTLEMENT STATEMENT

| | |
|---|---|
| TOTAL SETTLEMENT: | **$50,000.00** |
| ATTORNEY'S FEES (33 ⅓% of $50,000.00) | ($16,666.67) |
| FIRM COSTS | ($2,519.79) |
|     Administrative Costs / Investigation | $2,000.00 |
|     Filing Fee, Ascension Parish | $519.79 |
| OTHER COSTS | **($0.00)** |
|     MMA's Adjuster Invoice | $0.00 |

| | |
|---|---|
| Check to Attorneys | $19,186.46 |
| **Costs Being Held for MMA** | **$0.00** |
| **Total Payment to Attorney** | **$19,186.46** |

( $50,000.00 - $16,666.67 - $2,519.79 = $30,813.54 )

**TOTAL SETTLEMENT TO CLIENT:**     **$30,813.54**

I, ▮▮▮▮▮▮, approve the above disbursement and fees and hereby hold the law offices of Sangisetty Law Firm, LLC and Jason J. Joy harmless from any and all liens, and/or costs not withheld and paid directly as set forth above. Because MMA is now in Bankruptcy, it has been explained to client that MMA's estimators may assert their costs associated with work on the file prior to JJJ/SLF being retained. JJJ/SLF is now being forced to hold back these costs. By signing below, I authorize the Sangisetty Law Firm to endorse any and all checks made payable to me on my behalf and my spouse.

Date Signed: 8/22/2024



## ███████████ SETTLEMENT STATEMENT

| | | |
|---|---|---|
| **TOTAL SETTLEMENT:** | | **$53,669.43** |
| Release, | $45,000.00 | |
| Reissued Check, | $8,669.43 | |
| | | |
| ATTORNEY'S FEES (33 ⅓% of $53,669.43) | | ($17,889.81) |
| Fee split: | 50% - Sangisetty Law | $8,944.91 |
| | 50% - Jason J. Joy | $8,944.90 |
| | | |
| **FIRM COSTS** | | ($2,200.00) |
| Administrative Costs / Investigation | | $2,200.00 |
| | | |
| **ADJUSTER COST** | | ($2,000.00) |
| Exact Building Consultants, Estimate | | $2,000.00*[1] |

---

| | |
|---|---|
| Check to Attorneys | $20,089.81 |
| Check to Exact Building Consultants | $2,000.00 |
| **Total Costs** | **$22,089.81** |

| | |
|---|---|
| **TOTAL SETTLEMENT TO CLIENT:** | **$31,579.62** |

I, ███████████, approve the above disbursement and fees and hereby hold the law offices of Sangisetty Law Firm, LLC and Jason J. Joy harmless from any and all liens, and/or costs not withheld and paid directly as set forth above.

Signed this____ day of_____.

12 / 18 / 2023

████████████

---

[1] $2,000.00 will be held as a precaution to pay Exact Building Consultants for their estimate. If it is determined that Exact Building Consultants will not be paid, ███████████ will receive additional payment of $2,000.00.

Doc ID: 17d36952907f95c43a052bde53e2adf1250d072e

ɔ

*MONED* to comply with the demand of the P

*hereof accompanies this citation, or to make a*

*, in writing with the Clerk Of Court at her offi*

*after the service hereof; and your failure to s*

*nent rendered against you.*

*al this 12TH day of NOVEMBER, 2024.*

**THERE**

**CL**

BREACH OF CONTRACT AND UNFAIR T

## PARTIES

### I.

Sangisetty Law Firm, LLC a law firm with a pr

### II.

nd Legal Consulting ("Xpand"), a business entit

enida de la Carlota, Suite 600  Laguna Hills, CA

## JURISDICTION AND VENUE

### III.

VII.

to meet the needs of its potential clients, Plaint

nt support services.  These services included r

client communications.   The services prom

n-legal nature.

## VIII.

023 until August of 2024 Defendant promisec

nsparency.  Notwithstanding this, in early ⅄

n invoice upon demand suggesting that Def

grossly inflated and Plaintiff requested the b

is bill given the nature of the services provided

fused to provide such and threatened final c

ging of interest.

## XIII.

fendant's unfair trade practices, Plaintiff has suf

## XIV.

efendant's unfair trade practices, Plaintiff is e

fees under Louisiana Unfair Trade Practices a

na Revised Statutes 15:1401 - 1428.



**RAVI SANC**

3914 Canal

New Orlean

Telephone: (

Facsimile: (

Email: rks@

**COUNSEL**

**VICE AT THIS TIME**

**32ND DISTRICT COURT FOR THE PARISH OF TERREBONNE**

**STATE OF LOUISIANA**

CASE NO.: 200581                                                      DIVISION "C"

**SANGISETTY LAW FIRM, LLC**

**VERSUS**

**XPAND LEGAL, LLC**

FILED:_____                    _____

                                                                         DEPUTY CLERK

**PEREMPTORY EXCEPTION OF NONJOINDER OF A PARTY**

NOW INTO COURT comes Plaintiff-Defendant in Reconvention, Sangisetty Law Firm, LLC (hereinafter Plaintiff or "Sangisetty Law Firm"), who respectfully files this exception to the Reconventional Demand filed by Defendant-Plaintiff in Reconvention (hereinafter "Defendant" or "XPAND").

**I.       FACTUAL HISTORY**

On or about June 30, 2023, Plaintiff and Defendant entered into a contract ("the Contract") wherein Xpand agreed to provide non-legal administrative services to Sangisetty Law Firm. The parties to the Contract, as evidenced by the signatures on the last page, were Jonathan Paul, (a representative from XPAND), Ravi K. Sangisetty a representative from Sangisetty Law Firm), and Jason Joy (a representative from Joy Law Firm).[1]

The cause of the contract was that Sangisetty Law Firm anticipated an influx of clients related to the hurricanes of 2020 and 2021.  The influx of inquiries was because a Texas law firm representing thousands of clients was suspended from practicing in Louisiana. The rates agreed upon by Plaintiff, the Joy Law Firm, and Defendant were based on the extraordinary nature of the circumstances, but Defendant agreed to bill only for time spent on the project as opposed to stand-by time. As such, Defendant was obligated to keep detailed records of the work it performed.

As such, in order to meet the needs of its potential clients, Plaintiff, as well as the Joy Law Firm, engaged Defendant to assist with non-legal client support services. These services included receiving incoming calls, contract collection, and client communications. The services promised were to be purely administrative and of a non-legal nature.

From August of 2023 until August of 2024 Defendant promised to provide such services according to the Contract with full transparency. Notwithstanding this, in early August 2024, Defendant provided Plaintiff with an invoice upon demand suggesting that Defendant was owed nearly $800,000. This bill was grossly inflated and Plaintiff requested the back-up documentation to support such an outrageous bill given the nature of the services provided.

## II.   LEGAL ARGUMENT

Defendant failed to join a necessary party to their Reconventional Demand. Under La. Code of Civ. Pro. Art. 927(A)(4), a party can raise a peremptory exception for "[n]onjoinder of a party under Articles 641 and 642." Under La. Code of Civ. Pro. Art. 641:

A person shall be joined as a party in the action when either:

(1) In his absence complete relief cannot be accorded among those already parties.
(2) He claims an interest relating to the subject matter of the action and is so situated that the adjudication of the action in his absence may either:
(a) As a practical matter, impair or impede his ability to protect that interest.
(b) Leave any of the persons already parties subject to a substantial risk of incurring multiple or inconsistent obligations.

It is well settled that "an adjudication made without making a person described in La. C.C.P. art 641 a party to the litigation is an absolute nullity." *Brubaker v. Houma Police Dep't.*, 2023 CA 1330, 2024 WL 4500088, at *6 (La. Ct. App. 1st Cir. Oct. 16, 2024).

Here, Defendant has failed to name the Joy Law Firm, an indispensable party to the action. The Contract in question was signed by XPAND, Sangisetty Law Firm, and Joy Law Firm. The Contract does not make a distinction as to who is responsible for paying the fees for service. Therefore, assuming the facts in Defendant's Reconventional Demand are true, the Joy Law Firm would have to be named as a party as evidenced below:[2]

1. **In his absence complete relief cannot be accorded among those already parties.**

Should XPAND be successful, complete relief cannot be accorded among the parties already named as the Joy Law Firm, as per the Contract, are responsible for the fees as well.

2. **He claims an interest relating to the subject matter of the action and is so situated that the adjudication of the action in his absence**

Excluding the Joy Law Firm from the suit would "[l]eave any of the persons already parties subject to a substantial risk of incurring multiple or inconsistent obligations." La. Code of Civ. Pro. Art. 641(2)(b). Specifically, should XPAND be successful, Sangisetty Law Firm would be subject to a substantial risk as they it would be responsible for the entire fee in dispute, which is inconsistent with the Contract.

## III.    CONCLUSION

As set forth above, Plaintiff respectfully requests this Court dismiss Defendant's Reconventional Demand as they failed to name a necessary party under La. Code of Civ. Pro. 641.

Respectfully submitted by:

**SANGISETTY LAW FIRM, LLC**



_____
**RAVI SANGISETTY (#30709)**
3914 Canal Street
New Orleans, Louisiana 70119
Telephone: (504) 662-1016
Facsimile: (504) 662-1318
Email: rks@sangisettylaw.com

**COUNSEL FOR PLAINTIFF**

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a copy of the above and foregoing Exception has been served

upon all counsel of record by email this 29th day of January, 2025.



_____

**RAVI SANGISETTY (#30709)**

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF TEXAS**

**HOUSTON DIVISION**

| | |
|---|---|
| **MMA LAW FIRM, PLLC** | |
| *Plaintiff,* | |
| **v.** | **CIVIL ACTION NO. 4:25-CV-0318** |
| **SANGISETTY LAW FIRM, LLC** | |
| *Defendant* | |

**CERTIFICATE OF CONFERENCE**

Pursuant to Section 7(C) of the Honorable Judge Andrew S. Hanen's Civil Procedures, I hereby certify that counsel for Jason Joy & Associates, PLLC ("JJA") conferred via email and/or telephone with counsel for Defendant Sangisetty Law Firm, LLC and counsel for MMA Law Firm, PLLC regarding the relief sought in the foregoing Supplemental and Amended Motion to Intervene.

Opposing counsel for both parties advised that they are opposed to the relief requested. No agreement could be reached.

_____
Jason J. Joy

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF TEXAS**

**HOUSTON DIVISION**

| | |
|---|---|
| **MMA LAW FIRM, PLLC** | |
| *Plaintiff,* | |
| **v.** | **CIVIL ACTION NO. 4:25-CV-0318** |
| **SANGISETTY LAW FIRM, LLC** | |
| *Defendant* | |

**PROPOSED ORDER**

On this day, the Court considered the Supplemental and Amended Motion to Intervene filed by Jason Joy & Associates, PLLC ("JJA"). Having considered the motion, the pleadings, and applicable law, the Court is of the opinion that the motion should be GRANTED.

IT IS THEREFORE ORDERED that:

JJA is granted leave to intervene in this matter as a party-intervenor;

JJA's Amended Complaint in Intervention, attached as Exhibit A to the motion, is deemed filed as of the date of this Order;

SLF must immediately turn over to JJA all funds to which JJA is entitled pursuant to the client representation agreements and the joint venture agreement between JJA and SLF.

In the alternative, any disputed fees or settlement proceeds governed by the JJA-SLF Joint Venture Agreement shall be deposited into the registry of the Court pursuant to 28 U.S.C. § 2041 and Federal Rule of Civil Procedure 67, pending further adjudication.

SIGNED this ___ day of _____, 2025.

_____
The Honorable Andrew S. Hanen
United States District Judge