# EXHIBIT 6

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| **IN RE:** | § | |
| | § | **ADV. CASE NO. 24-03230** |
| **MMA LAW FIRM, PLLC** | § | |
| | § | |
| **DEBTOR** | § | |
| | § | |
| **MMA LAW FIRM, PLLC** | § | **CIVIL ACTION NO.** |
| | § | **4:25-cv-00318** |
| **Plaintiff** | § | |
| **v.** | § | |
| | § | |
| **THE SANGISETTY LAW FIRM** | § | |
| | § | |
| **Defendant** | § | |

**MMA LAW FIRM, PLLC'S RESPONSE IN OPPOSITION TO JASON JOY &
ASSOCIATES, PLLC'S SUPPLEMENTAL AND AMENDED MOTION FOR LEAVE TO
INTERVENE AND TO FILE AN AMENDED COMPLAINT IN INTERVENTION**

MMA Law Firm, PLLC Plaintiff and/or Debtor, files this Response in Opposition to Jason Joy &

Associates, PLLC's *Supplemental and Amended Motion for Leave to Intervene and to File Amended Complaint in*

*Intervention¸* and respectfully represents the following:

**TABLE OF CONTENTS**

**NATURE AND STAGE OF THE PROCEEDING**…………………………………………...4

**SUMMARY**………………………………………………………………………………5

**BACKGROUND** ………………………………………………………………………….6

**ISSUES PRESENTED**………………………………………………………………..11

**ARGUMENTS AND AUTHORITIES**

    A.  **Joy is Not Entitled to Intervention as of Right Under Rule 24(a)**……………………12

          1.   The Motion to Intervene is Untimely…………………………………………12

          2.   Joy Has No Interest Relating to Property or Transaction in the Adversary……13

          3.   Joy's Interests Will Not Be Impaired or Impeded by this Proceeding…………14

    B.  **Joy is Not Entitled to Permissive Intervention Under Rule 24(b)**……………………..15

**CONCLUSION/PRAYER**………………………………………………………………16

**TABLE OF AUTHORITES**

**Fifth Circuit Court Case Law**

*Association of Professional Flight Attendants v. Gibbs*, 804 F.2d 318 (5th Cir. 1986)…………….…12

*League of United Latin Am. Citizens, Council No. 4434 v. Clements,* 884 F.2d 185, 189 n.2 (5th Cir. 1989)…………………………………………………………………………………………15

*New Orleans Pub. Serv., Inc. v. United Gas Pipe Line Co.*, 732 F.2d 452, 471 (5th Cir. 1984)………15

*St. Bernard Parish v. Lafarge N. Am., Inc.*, 914 F.3d 969 (5th Cir. 2019)……………………………15

*Texas v. United States*, 805 F.3d 653 (5th Cir. 2015)………………………………………………...14

*Trans Chem. Ltd. v. China Nat'l Mach. Imp. & Exp. Corp.*, 332 F.3d 815 (5th Cir. 2003)…………….12

**State Court Case Law**

*Saucier v. Hayes Dairy Products, Inc.,* 373 So.2d 102 at 108 (La. 1979)……………………………...9

**Treatises & Other Authorities**

Wright & Miller, *Federal Practice and Procedure: Civil* § 1913 at 551 (1972)……………………..15

**Statutes and Rules**

Fed. R. Civ. P. 24(a)……………………………………………………………………...5,11-15
Fed. R. Civ. P. 24(b)……………………………………………………………………...5,11,15

## NATURE AND STAGE OF THE PROCEEDING

This Adversary Proceeding arises out of MMA's Chapter 11 bankruptcy case and is narrowly focused on determining whether certain attorney's fees and expenses currently held by Defendant Sangisetty constitute property of the bankruptcy estate, whether those funds should be turned over to MMA, and whether Sangisetty violated the automatic stay by exercising control over those funds. On February 11, 2025, the Court withdrew the reference for all matters concerning the division of attorney's fees between MMA and Sangisetty and entered a Mediation Order directing the parties to exchange documents and engage in mediation. The case remains in its pretrial phase and is centered on MMA's legal work performed on behalf of former clients and its potential entitlement to earned legal fees. Jason Joy & Associates has moved to intervene in this proceeding to assert claims that are unrelated to the issues in the Adversary. Joy's proposed claims concern a separate joint venture agreement and business disputes with Sangisetty that do not involve MMA, the bankruptcy estate, or the core claims at issue in this proceeding.

## SUMMARY

This Adversary Proceeding concerns a discrete and narrow dispute: whether attorney's fees held by Sangisetty are property of the MMA bankruptcy estate, whether MMA is entitled to turnover of those funds based on the work it performed, and whether Sangisetty violated the automatic stay by exercising control over property of the estate. The matter is already proceeding on a defined path toward resolution under the *Saucier* Factors and a Court-ordered discovery mediation schedule.

Joy now seeks to intervene, not to protect any interest, but to inject into this streamlined proceeding a separate and highly contentious dispute with Sangisetty, its former joint venture partner. Joy's claims involve breach of contract, tortious interference, and fiduciary duties, none of which involve MMA or the bankruptcy estate and are already the subject of a pending lawsuit in Louisiana.

Joy's motion is untimely, its interests are not legally protectable within the meaning of Rule 24, and Joy retains a separate and adequate forum to litigate its claims. Allowing intervention would delay the adjudication of the estate's rights, burden the Court with unrelated factual and legal issues, and undermine the efficiency of these proceedings. For these reasons, Joy's motion to intervene should be denied under both Rule 24(a) and Rule 24(b).

## BACKGROUND

### RELEVANT HISTORY OF MMA

1.      MMA Law Firm, PLLC (**"Debtor"** or **"MMA")** is a litigation firm based in Texas.

2.      MMA represented thousands of storm victims with property damage claims against their insurance companies following Hurricanes Laura, Delta, Zeta, and Ida (**"MMA Clients"**).

3.      MMA entered into contingency fee contracts with the MMA Clients, entitling it to contingency fees and reimbursement of expenses (**"Contingency Fee Contracts"**).

4.      MMA prosecuted claims and filed thousands of lawsuits on behalf of the MMA Clients pursuant to the Contingency Fee Contracts (**"Former MMA Cases"**).

### THREE ORDERS ENTERED BY LOUISIANA DISTRICT COURT JUDGES

5.      On March 3, 2023, Judge James D. Cain, Jr., a United States District Judge for the Western District of Louisiana, suspended the licenses of all attorneys affiliated with MMA for ninety days (**"Suspension Order"**).

6.      The Suspension Order required the Debtor to notify MMA Clients of the suspension and their right to retain new counsel or remain with MMA.

7.      On August 8, 2023, Judge Cain issued an Order requiring MMA to deliver every original undeposited settlement check it obtained in the Former MMA Cases (**"Check Order"**). The Debtor submitted 807 checks totaling $12,673,672.93 for MMA clients for whom it had successfully secured settlements prior to its suspension ("**Settlement Checks**").

8.      On April 5, 2023, Magistrate Judge North issued an order finding that the Debtor had waived its right to intervene in cases pending in his district but could pursue claims under any other theory against successor firms (**"Judge North Order"**).

9.      Accordingly, the Debtor was barred from intervening in the Former MMA Cases for fees, but

6

permitted to assert claims against successor law firm who took over the cases.

**AGREEMENT BETWEEN SANGISETTY AND MMA**

10.     After the entry of the Suspension Order and the Check Order, MMA and Sangisetty agreed that: (a) Sangisetty would assume representation of the Former MMA Clients; (b) Sangisetty would assist in obtaining reissuance of the Settlement Checks; (c) MMA would receive 100% of the contingency fee related to Settlement Checks negotiated prior to the Suspension Order; and (d) MMA and its co-counsel would receive 45% of any attorney's fees Sangisetty earned in the Former MMA Cases (**"MMA-Sangisetty Agreement"**).

11.     Pursuant to the MMA-Sangisetty Agreement, Sangisetty sent letters to the Former MMA Clients informing them that: (a) MMA was no longer permitted to practice law in Louisiana; and (b) offered to handle their hurricane claims (**"Advertisement"**). *(Exhibit A)*

12.     In the Advertisement sent by Sangisetty to the MMA Clients, Sangisetty specifically represented that it obtained the list of "MMA's former clients **pursuant to an agreement** with MMA".

13.     Following the Advertisement, Sangisetty took over representation of 694 MMA Cases on a contingency fee basis (**"Sangisetty/MMA Cases"**)

14.     In connection with these cases, MMA supported Sangisetty by developing case management software, transferring client files, answering questions, and conducting necessary research to assist Sangisetty.

15.     Pursuant to the MMA-Sangisetty Agreement, Sangisetty agreed that Settlement Checks issued prior to the Suspension Order would be reissued solely for the Debtor's benefit. Sangisetty then filed motions to reissue the checks, which were subsequently granted by the Louisiana District Court (**"Motion to Reissue Check"**).

16.     Attached as *Exhibit B* is a sample of a Motion to Reissue Check was drafted and filed by

7

Sangisetty, which includes a "Certificate of Accuracy and Consent to Relief" executed by MMA.

17. Although Sangisetty received the reissued checks, it failed to transfer any of the funds to MMA as agreed and, upon information and belief, retained 100% of the attorney's fees for cases that it neither prosecuted nor settled. In total, Sangisetty is believed to have received at least $1,085,641.01 from reissued checks in 67 MMA Cases.

**JOINT VENTURE BETWEEN SANGISETTY AND JASON JOY & ASSOCIATES**

18. Independently of the MMA-Sangisetty Agreement, Sangisetty entered into a joint venture with Jason Joy & Associates, PLLC (**"Joy"**) to work on the Sangisetty/Debtor Cases (**"JV"**).

19. As part of their JV, Joy and Sangisetty contracted with Xpand Legal, LLC (**"Xpand"**), a non-lawyer third-party vendor, to handle incoming calls, collections, and client communications in the Sangisetty/MMA Cases.

20. Joy and Sangisetty also agreed to approach Former MMA Clients and initiate legal malpractice suits against MMA (**"Malpractice Venture"**). However, their plan dissolved when Sangisetty apparently learned Joy had a conflict of interest.

21. After Sangisetty declined to participate in the Malpractice Venture, Joy allegedly partnered directly with Xpand to pursue former MMA Clients, excluding Sangisetty from the arrangement.

**LITIGATION FILED BY SANGISETTY AGAINST XPAND**

22. On November 12, 2024, Sangisetty initiated a lawsuit against Xpand in the 32nd Judicial District Court in Terrebone Parish, Louisiana (**"Xpand Litigation"**). (*Exhibit C*)

23. The claims in the Xpand Litigation included: (1) breach of contract for failure to provide agreed upon services; and 2) violations of the Louisiana Unfair Trade Practices for inflated billing, undisclosed charges, and misallocation of labor.

24. Joy was later added to the Xpand Litigation as a necessary party as Joy was a party to the

contract with Xpand.

**MMA BANKRUPTCY AND ADVERSARY PROCEEDING AGAINST SANGISETTY**

25.   On April 9, 2024, MMA filed a Chapter 11 bankruptcy petition.

26.   On November 10, 2024, MMA initiated an Adversary Proceeding against Sangisetty (the, **"Adversary"**), later amended on January 2, 2024 (the **"Amended Complaint"**). (*Exhibit D*)

27.   The Debtor sued Sangisetty under the following three causes of action:

- Declaratory judgment regarding the determination of property of the bankruptcy estate;

- Turnover of estate property; and

- Violation of the automatic stay.

28.   In the Amended Complaint, MMA invoked the *Saucier Test* to determine its entitlement to fees and costs on work actually performed by MMA in the Sangisetty/MMA Cases. These causes of action are based on well-settled Louisiana Law which provides that when two attorneys provide legal services to the same client on a contingency fee basis and one attorney is discharged before resolution, the client is obligated to pay only one contingency fee, which the court allocates between the attorneys based on five factors which include: 1) the time and labor involved, 2) novelty/difficulty of the case; 3) skill required; 4) results obtained; and 5) nature and length of the professional relationship. *Saucier v. Hayes Dairy Products, Inc.,* 373 So.2d 102, 108 (La. 1979).

29.   On February 11, 2025, this Court withdrew the reference as to all matters concerning the division of attorney's fees between Sangisetty and MMA.

30.   That same day, this Court ordered the parties to exchange information and participate in mediation (**"Mediation Order"**) (*Exhibit E*).

**SANGISETTY SUES JOY**

31.   On April 19, 2025, over one year after the bankruptcy was filed and five months after MMA initiated the Adversary, Sangisetty sued Joy and three other parties in the 32nd District Court for the Parish of Terrebonne in the State of Louisiana ("**Joy Litigation**"). (*Exhibit F*)

9

32.     In the Joy Litigation, Sangisetty alleged that in relation to the JV, Joy failed to provide legal services, improperly delegated duties to Xpand, and used Sangisetty's work product to contact former MMA Clients in pursuit of the Malpractice Venture, without Sangisetty's knowledge or consent.

33.     MMA is not a party to the Joy Litigation, as the claims asserted in that case have no connection whatsoever to MMA or its bankruptcy estate.

**JOY'S MOTION TO INTERVENE**

34.     On April 11, 2025, Joy filed a Motion to Intervene in the Adversary and asserted claims against Sangisetty, including breach of the JV.

35.     On April 19, 2025, Joy filed a *Supplemental and Amended Motion for Leave to Intervene and to File an Amended Complaint in Intervention* (**"Amended Motion to Intervene"**) (*Exhibit G*).

36.     Joy seeks to have this Court interpret the JV with Sangisetty and adjudicate their contractual and fiduciary disputes, claims that are wholly unrelated to MMA or the estate's causes of action in the Adversary.

## ISSUES PRESENTED

**Issue No. 1:** Whether Joy is entitled to intervene in this Adversary as a matter of right under Rule 24(a) of the Federal Rules of Civil Procedure, despite the fact that (i) Joy has known of this action since it was filed in November 2024 and failed to timely seek intervention; (ii) Joy's alleged interest is not related to the claims raised in the Adversary; and (iii) the outcome of this Adversary will not impair Joy's ability to protect any legally cognizable interest.

**Issue No. 2:** Whether Joy should be granted permissive intervention under Rule 24(b) when Joy's proposed claims against Sangisetty are wholly unrelated to the claims and relief sought in this Adversary and would (i) substantially delay the proceedings, (ii) add unnecessary complexity, and (iii) fail to promote judicial efficiency.

**ARGUMENTS AND AUTHORITIES**

37.     Federal Rule of Civil Procedure 24 governs intervention.  There are two types of intervention: (1) intervention as of right under Rule 24(a), and (2) permissive intervention under Rule 24(b). Joy seeks intervention in MMA's Adversary Proceeding against Sangisetty yet fails to meet the requirements for either.

### A.        INTERVENTION AS OF RIGHT

38.     Under Rule 24(a)(2), intervention as of right is permitted if four criteria are met: (1) the application must be timely; (2) the applicant must have an interest relating to the property or transaction that is the subject of the action; (3) the applicant must be so situated that the disposition of the action may, as a practical matter, impair or impede their ability to protect that interest; and (4) the applicant's interest must not be adequately represented by the existing parties to the suit. See *Association of Professional Flight Attendants v. Gibbs*, 804 F.2d 318, 320 (5th Cir. 1986).

**First Factor: Timeliness**

39.     Timeliness is evaluated using four considerations: (1) the length of time the applicant knew or should have known of their interest; (2) prejudice to existing parties from the delay; (3) prejudice to the applicant denied intervention; and (4) any unusual circumstances. See *Trans Chem. Ltd. v. China Nat'l Mach. Imp. & Exp. Corp.*, 332 F.3d 815, 822 (5th Cir. 2003).

40.     Joy has known of MMA's claims against Sangisetty since at least April 2024, when MMA filed for bankruptcy and made the disclosures.

41.     In fact, counsel for MMA discussed these specific issues and claims directly with Joy as early as August 2024.

42.     Finally, in February 2025, three months after the Adversary was filed, counsel for Joy contacted MMA's counsel to discuss the possibility of intervention, however, the Motion to Intervene was not filed until April 11, 2025.

43.     Therefore, MMA asserts that the Court should deny the relief for intervention as it not timely.

**Second Factor: Applicant must have an interest relating to the property or transaction that is the subject of the action.**

44.   Joy has no direct interest in the property or subject matter of the Adversary Proceeding.

45.   The Adversary seeks to determine whether certain funds in Sangisetty's possession are property of the bankruptcy estate and whether Sangisetty violated the automatic stay.

46.   In the Adversary, MMA seeks a fee apportionment based on the *Saucier* test, which analyzes the work performed by MMA in the former MMA cases prior to the Suspension Order, and allocates fees accordingly.

47.   In contrast, Joy's Amended Motion to Intervene, seeks to assert the following unrelated claims: (a) Contractual rights arising from Joy's JV with Sangisetty; (b) Tortious interference by Sangisetty; and (c) Quantum Meruit claims against Sangisetty.

48.   Any fee-sharing agreement between Joy and Sangisetty concerning ***their*** portion of recovered fees is irrelevant to MMA's rights in the estate property held by Sangisetty.

49.   In fact, Joy and Sangisetty are already litigating these issues in Louisiana state court, where MMA is not a party.

50.   MMA is not a party to the Joint Venture Agreement between Joy and Sangisetty, the Xpand contract, the Joy Litigation, or the Xpand Litigation. These agreements and legal actions were initiated and entered into independently of MMA and without its participation or knowledge.

51.   Moreover, MMA has no involvement in either the Xpand Litigation or the Joy Litigation and could not be a party to those actions as they concern disputes and conduct entirely unrelated to MMA's operations, its bankruptcy estate, or the issues raised in the Adversary Proceeding, and both lawsuits were filed post-petition.

52.   In sum, Joy's alleged interest in the Adversary is neither direct nor legally protectable, but rather a collateral, economic dispute stemming from a separate joint venture agreement with Sangisetty. That interest does not relate to the property or transactions at issue in this Adversary, namely, whether funds held by Sangisetty constitute property of the bankruptcy estate and whether

13

Sangisetty violated the automatic stay.

53.     Finally, the law is clear that purely economic or speculative interests are insufficient to justify intervention. *Texas v. United States*, 805 F.3d 653, 657-58 (5th Cir. 2015).

54.     As such, Joy's attempt to intervene fails to satisfy the second requirement of Rule 24(a)(2).

**Third Factor: The applicant must be so situated that the disposition of the action may, as a practical matter, impair or impede their ability to protect that interest.**

55.     As previously discussed, Joy's asserted interest is unrelated to the central issue in the Adversary. Because Joy's claims arise solely from separate joint venture agreements with Sangisetty, resolution of the Adversary will have no legal or practical effect on Joy's ability to protect that interest.

56.     Joy seeks to repurpose this limited bankruptcy dispute into a broader forum to litigate personal claims against Sangisetty, including breach of contract and tortious interference claims that have no connection to MMA, the bankruptcy estate, or the relief sought in this Adversary.

57.     Importantly, Joy is not foreclosed from asserting claims against Sangisetty in a proper venue. Joy already has pending litigation with Sangisetty in Louisiana, where its claims under the joint venture agreement are being litigated. That forum provides a fully adequate means for Joy to protect its interests.

58.     It appears that Joy's effort to intervene in this Adversary is motivated by forum shopping. After filing the Motion to Intervene, Joy emailed MMA's counsel expressing a desire to have his claims "decided by a Texas Court." (*Exhibit H*).

59.     Additionally, in his Amended Motion to Intervene, Joy asserts that he would face bias in a Louisiana court. Specifically, he references Sangisetty's former clerkship in the Eastern District of Louisiana and alleges that Sangisetty maintains "close political relationships" in that jurisdiction—comments that further reflect Joy's preference for litigating in a different forum rather than demonstrating any legitimate need to intervene in this bankruptcy proceeding.

60.     Because Joy's claims are entirely distinct from the issues in the Adversary, and because Joy

14

retains a separate and ongoing forum in which to litigate those claims, Joy cannot show that the resolution of this action will impair or impede its ability to protect any interest.

61.     The third factor under Rule 24(a)(2) is therefore not satisfied.

**Fourth Factor: Inadequate Representation by Existing Parties**

62.     As discussed above, Joy does not have an interest in the claims raised in the Adversary as MMA is simply asking this Court to make determinations regarding MMA's interest in property held by Sangisetty and whether Sangisetty violated the automatic stay.

**Summary**

63.     Failure to meet any one of the four criteria under Rule 24(a) precludes intervention. See *St. Bernard Parish v. Lafarge N. Am., Inc.*, 914 F.3d 969, 974 (5th Cir. 2019).

64.     Here, Joy's application is untimely, fails to identify a sufficient interest in the property, and therefore no impairment of the non-existent interest by this Adversary Proceeding. Accordingly, intervention of right must be denied.

## B. PERMISSIVE INTERVENTION

65.     The Fifth Circuit provides that permissive intervention under Rule 24(b) is appropriate when (1) timely application is made by the intervenor, (2) the intervenor's claim or defense and the main action have a question of law or fact in common, and (3) intervention will not unduly delay or prejudice the adjudication of the rights of the original parties. See *League of United Latin Am. Citizens, Council No. 4434 v. Clements,* 884 F.2d 185, 189 n.2 (5th Cir. 1989).

66.     Courts also consider whether the proposed intervenor is (a) adequately represented by existing parties; and (b) whether the intervenor's presence is likely to provide significant contributions to the development of the underlying factual issues. *Id.* at 189.

67.     Furthermore, it is well settled law in the Fifth Circuit that permissive intervention is "'wholly discretionary with the [district] court.'" *New Orleans Pub. Serv., Inc. v. United Gas Pipe Line Co.*,

15

732 F.2d 452, 470-71 (5th Cir. 1984) (*en banc*) (quoting Wright & Miller, *Federal Practice and Procedure: Civil* § 1913 at 551 (1972)), *cert. denied*, 469 U.S. 1019 (1984).

68.     Joy's request fails the threshold requirement of timeliness, as discussed above. Furthermore, Joy's claims do not share any meaningful common legal or factual issues with the Adversary.

69.     Intervention would delay the efficient adjudication of MMA's claims against Sangisetty. The Court has already entered a Mediation Order with discovery deadlines tailored to the *Saucier* analysis.

70.     Injecting an entirely separate contract and tort dispute between Joy and Sangisetty would unnecessarily complicate the Adversary and undermine judicial efficiency. Joy's dispute belongs in the already pending state court action in Louisiana where MMA is not involved.

## CONCLUSION AND PRAYER

Joy does not meet the requirements for intervention under either Rule 24(a) or Rule 24(b). Joy's claims are both untimely and unrelated to the Adversary. Intervention would delay and complicate resolution of the narrow estate-related dispute between MMA and Sangisetty. Therefore, MMA respectfully requests that the Court deny Joy's Motion to Intervene.

Dated: <u>March 2, 2025</u>

Respectfully submitted,

By:  <u>/s/ Miriam T. Goott</u>
Miriam T. Goott
attorney-in-charge
SBN 24048846
COUNSEL FOR THE PLAINTIFF

OF COUNSEL:
WALKER & PATTERSON, P.C.
P.O. Box 61301
Houston, TX 77208
mgoott@walkerandpatterson.com
713.956.5577 (telephone)
713.956.5570 (fax)

**CERTIFICATE OF SERVICE**

I, Miriam T. Goott, hereby certify that I served a copy of this Response on Sangisetty Law Firm, LLC through its counsel of record, Leo Congeni, Congeni Law Firm, LLC via email on May 2, 2025, as well as on Jason Joy, counsel for Jason Joy & Associates.

By:  /s/ Miriam T. Goott
Miriam T. Goott

| From: | Ravi Sangisetty <info@sangisettylaw.com> |
|---|---|
| Sent: | Wednesday, August 16, 2023 12:07 PM |
| To: | ███████ |
| Subject: | LEGAL ADVERTISEMENT -- LA File No.: 23:15471 - Hurricane Claim |



SANGISETTY

# ADVERTISEMENT

### Subject: McClenny Moseley & Associates ("MMA")  - Hurricane Claims

Dear ,

Due to certain circumstances, MMA is no longer allowed to practice law in Louisiana. **First and foremost, if you have already obtained new legal representation for your hurricane claim upon receiving this letter, please disregard the following information.**

We are writing to provide you with important information regarding your ongoing hurricane claim, previously handled by McClenny Moseley and Associates (MMA). We have been provided the list of MMA's former clients pursuant to an agreement with MMA, which is how we obtained your information. We want to handle your hurricane claim and get you the recovery you deserve, as we have done for our many clients with hurricane claims. Please keep in mind that our office's past results are not a guarantee of future success. **You are under no obligation to select our firm as your counsel.**

**It is crucial that you are aware of the urgent deadlines associated with your case.**

Our team can be reached at 504-285-0463 by phone or text, or emailed at

1

info@sangisettylaw.com if you have questions and/or would like to engage my firm to handle your claim.  We have affiliated with other Louisiana counsel to assist with the prosecution of your claim in the event we need additional assistance.

My name is Ravi Sangisetty of the Sangisetty Law Firm, LLC and I am a member in good standing with the Louisiana State Bar Association. My office is located at 3914 Canal Street, New Orleans, Louisiana 70119, and I am the attorney responsible for the content of this letter.

Yours sincerely,

Ravi Sangisetty - Louisiana Licensed Attorney

# ADVERTISEMENT

This email was sent to ███████████████

*why did I get this?*   unsubscribe from this list   update subscription preferences

Xpand Legal Consulting LLC · 1968 S. Coast Hwy #220 · Laguna Beach, California 92651 · USA

Case 4:25-cv-03130 Document 14-2 Filed in TXSB on 02/15/04 Page 1 of 5

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA

BARABARA MCCALEB

VERSUS

AMERICAN SECURITY INSURANCE COMPANY

CIVIL ACTION NO. 23-1330

JUDGE: DEGRAVELLES

MAGISTRATE JUDGE:
WILDER-DOOMES

**JOINT CONSENT MOTION**
**FOR LEAVE TO REISUSSE APPRAISAL CHECKS**

Plaintiff Barbara McCaleb and Defendant American Security Insurance Company ("ASIC") file this Joint Consent Motion for Leave to Reissue Appraisal Checks as follows:

## I.     INTRODUCTOIN

1.     This dispute relates to the adjustment of a Hurricane Ida property insurance claim submitted by Plaintiff McCaleb and adjusted by ASIC.  During the claim adjustment Plaintiff McCaleb retained McClenny Moseley & Associates to represent her interests.  Subsequent to an appraisal, ASIC issued two checks delivered to MMA.  At the direction of the U.S. District Court for the Western District of Louisiana, MMA remitted both settlement checks to that Court.  The checks are currently being held by the Clerk for the U.S. District Court for the Middle District of Louisiana.  Now, the Parties and all prior and current counsel have reached an agreement related to the reissuance and payment of the stale checks currently held by the Clerk for the U.S. District Court for the Middle District of Louisiana and request leave of Court herein for permission to stop the original checks and deliver reissued checks to Plaintiff McCaleb's new counsel.

## II.     FACTUAL BACKGROUND AND REQUEST FOR RELIEF

2.     This dispute relates to the adjustment of a Hurricane Ida property insurance claim submitted by Plaintiff McCaleb and adjusted by ASIC. Following the initial adjustment, Plaintiff

McCaleb retained McClenny Moseley & Associates to represent her interests.  Ultimately, the parties agreed to resolve the disputed value of the claim through appraisal.  Following the appraisal, ASIC issued two checks on May 9, 2023: Check No. 0060524966, $20,543.00 payable to Barbara McCaleb and JPMorgan Chase Bank NA for Plaintiff's Dwelling damages, and Check No. 0060524965, $9,800.00 payable to Barbara McCaleb and JPMorgan Chase Bank NA for damages to Plaintiff's other structures.  *See* Exhibit A, Appraisal Checks.  Since the issuance of the appraisal checks, Plaintiff McCaleb substituted the Sangisetty Law Firm as her legal representation and filed this lawsuit.

3.      The appraisal checks are now stale and in the possession of the Clerk for the U.S District Court for the Middle District of Louisiana.  On August 8, 2023, Judge Terry A. Doughty of the U.S. District Court for the Western District of Louisiana, Monroe Division ordered MMA to deliver possession of every original undeposited check for Hurricane claims in its possession to the Lake Charles Federal Courthouse no later than noon on Friday, August 11, 2023. Order, *In Re McClenny, Moseley & Associates, PLLC*, Case 3:23-mc-00062-JDC (W.D. La. Aug. 8, 2023), ECF No. 34. MMA's check delivery to the U.S District Court for the Western District of Louisiana included the appraisal checks at issue in this motion.  Subsequently, the U.S. District Court for Western District of Louisiana transferred the appraisal checks to the Clerk's Office for the U.S. District Court for the Middle District of Louisiana. *See* Exhibit B, Email Correspondence from Clerk's Office of the U.S. District Court for the Middle District of Louisiana.

4.      The Parties and their previous and current counsel negotiated the drafting of new appraisal checks and request the leave of Court to permit ASIC to issue a stop-payment on the appraisal checks and reissue the checks pursuant to the Parties' agreement for the delivery to

Plaintiff McCaleb's undersigned new counsel.  Reissuance of the appraisal checks and delivery to her new counsel will enable Plaintiff McCaleb to repair her property.

### III.    CONCLUSION

WHEREFORE Plaintiff Barbara McCaleb and Defendant American Security Insurance Company request leave of Court herein to issue a stop pay on American Security check nos. 0060524966 and 0060524965 for reissuance pursuant to the Parties' agreement for deliver to Plaintiff McCaleb's current counsel.

Respectfully submitted:

*/s/ A. Jacob Culotta, Jr.*
DAVID P. SALLEY (#19770)
A. JACOB CULOTTA, JR. (#26856)
MATTHEW F. GREENE (#39897)
365 Canal Street, Suite 1710
New Orleans, Louisiana 70130
Tel: 504.566.8800
Fax: 504.566.8828
Email: dsalley@shmrlaw.com
Email: jculotta@shmrlaw.com
Email: mgreene@shmrlaw.com
*Counsel for Defendant, American Security*
*Insurance*
*Company*


AND

*/s/ Ravi Sangisetty*
RAVI SANGISETTY (#30709)
WILLIAM BOYLES (#31632)
AMANDA OLMSTED (#40002)
Sangisetty Law Firm
3914 Canal Street
New Orleans, Louisiana 70119
rks@sangisettylaw.com
william@sangisettylaw.com
amanda@sangisettylaw.com
*Counsel for Plaintiff, Barbara McCaleb.*

### CERTIFICATE OF ACCURACY AND CONSENT TO RELIEF

I, Zach Moseley, individually and on behalf of McClenny Mosely & Associates, certify that I have reviewed this motion and agree with its accuracy and consent to the requested relief.

/s/ Zach Moseley
Zach Moseley, Individually
And on behalf of McClenny
Moseley & Associates

Case 24-31596 Document 1616-2 Filed in TXSB on 07/21/25 Page 5 of 5

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA

BARABARA MCCALEB                                    CIVIL ACTION NO. 23-1330

VERSUS                                              JUDGE: DEGRAVELLES

AMERICAN SECURITY INSURANCE COMPANY         MAGISTRATE JUDGE:
                                            WILDER-DOOMES

### ORDER GRANTING SUBSTITUTION OF DOCUMENT

Considering the foregoing Motion to Substitute Document of Defendant, American Security Insurance Company, and for good cause shown, the Court has determined that the Motion should be GRANTED. IT IS THEREFORE ORDERED:

That the previously filed and erroneously titled Joint Consent Motion for Leave and Incorporated Memorandum to Reissue Appraisal Checks (R. Doc. 15) is hereby stricken from the record and substituted with the attached Joint Consent Motion for Leave to Reissue Appraisal Checks.

SIGNED this _____ day of _____, 2023.


_____

Case 4:25-cv-00318   Document 10-13   Filed on 04/09/25 in TXSD   Page 1 of 5

**EXHIBIT**
**K**

Case No.
4:25-CV-0318

## CITATION (LONG ARM STATUTE)

SANGISETTY LAW FIRM LLC



Case: 0200581

Versus

XPAND LEGAL LLC

**RUSH**

Division: C

32nd Judicial District Court
Parish of Terrebonne
State of Louisiana

Office of the Clerk of Court
Theresa A. Robichaux
Clerk of Court
32nd Judicial District Court
Parish of Terrebonne

TO:  XPAND LEGAL CONSULTING, LLC
THROUGH ITS CHIEF EXECUTIVE OFFICER
JONATHAN PAUL
23046 AVENIDA DE LA CARLOTA, SUITE 600
LAGUNA HILLS, CA 92653

**YOU ARE HEREBY SUMMONED** to comply with the demand of the Petition, filed on AUGUST 14, 2024, a true and faithful copy whereof accompanies this citation, or to make an appearance by filing an answer or other pleading thereto, in writing with the Clerk Of Court at her office in the City of Houma, Louisiana within thirty (30) days after the service hereof; and your failure to so comply will subject you to the penalty of having a default judgment rendered against you.

Witness my hand and official seal this 11TH day of NOVEMBER, 2024.

THERESA A. ROBICHAUX
CLERK OF COURT

BY: _____
Deputy Clerk of Court

Requested by:
MS. AMANDA OLMSTED, ATTORNEY AT LAW
3914 CANAL STREET
NEW ORLEANS, LA
(504) 662-1016

[ SERVICE ]

Case 4:25-cv-80088   Document 10-11   Filed on 05/09/25 in TXSD   Page 2 of 5

## 32ND DISTRICT COURT FOR THE PARISH OF TERREBONNE

### STATE OF LOUISIANA

CASE NO.: 200581                                                    DIVISION "C"

SANGISETTY LAW FIRM, LLC

VERSUS

XPAND LEGAL, LLC

FILED: _____AUG 1 4 2024_____                    _____
                                                  DEPUTY CLERK

### PETITION FOR BREACH OF CONTRACT AND UNFAIR TRADE PRACTICE

#### PARTIES

I.

Petitioner is the Sangisetty Law Firm, LLC a law firm with a principal place of business in Orleans Parish.

II.

Defendant, Xpand Legal Consulting ("Xpand"), a business entity with its principal place of business at 23046 Avenida de la Carlota, Suite 600 Laguna Hills, CA 92653.

#### JURISDICTION AND VENUE

III.

This Court has jurisdiction over this action pursuant to Louisiana Code of Civil Procedure Article 2.

IV.

Venue is proper under Louisiana Code of Civil Procedure Article 76.1 because the work and services were performed in Terrebonne Parish under the terms of the contract. Additionally, the relevant contract at issue provides for venue in this jurisdiction.

#### FACTUAL ALLEGATIONS

V.

**FAX FILING** _AUG 0 8 2024_

Case 4:25-cv-00039   Document 16-1   Filed on 03/03/25 in TXSD   Page 3 of 5

On or about June 30, 2023, Plaintiff and Defendant entered into a contract wherein Xpand agreed to provide non-legal administrative services to Sangisetty Law Firm.

## VI.

The cause of the contract was that Sangisetty Law Firm anticipated an influx of clients related to the hurricanes of 2020 and 2021. The influx of inquiries was because a Texas law firm representing thousands of clients was suspended from practicing in Louisiana. The rates agreed upon by Plaintiff and Defendant were based on the extraordinary nature of the circumstances, but Defendant agreed to bill only for time spent on the project as opposed to stand-by time, and in lieu of Plaintiff having to hire temporary staff. As such, Defendant was obligated to keep detailed records of the work it performed.

## VII.

As such, in order to meet the needs of its potential clients, Plaintiff engaged Defendant to assist with non-legal client support services. These services included receiving incoming calls, contract collection, and client communications. The services promised were to be purely administrative and of a non-legal nature.

## VIII.

From August of 2023 until August of 2024 Defendant promised to provide such services to Plaintiff with full transparency. Notwithstanding this, in early August 2024, Defendant provided Plaintiff with an invoice upon demand suggesting that Defendant was owed nearly $800,000. This bill was grossly inflated and Plaintiff requested the back-up documentation to support such an outrageous bill given the nature of the services provided.

## BREACH OF CONTRACT CLAIM

## IX.

All prior allegations are incorporated herein by reference. Defendant's actions constitute a breach of contract. Upon information and belief, such breaches include, but are not limited to, keeping accurate records of the work performed, misrepresenting the work performed, billing for services not performed, inflation of the rates given the nature of the work performed, billing Plaintiff for work performed on other projects unrelated to that which was contracted for, and misleading Plaintiff on Defendant's billing practices.

## X.

As a result of Defendant's breaches, Plaintiff has suffered damages.

## UNFAIR TRADE PRACTICE

### XI.

All prior allegations are incorporated herein by reference. Upon information and belief, Defendant engaged in unfair trade practices as set forth in Louisiana Revised Statute 51:1401, *et seq.* by failing to communicate billing information, billing for employees who did not work on the project, billing time for other clients' projects to Sangisetty Law Firm, inflating time on projects, and misleading Plaintiff about the nature of the work performed on Plaintiff's cases.

### XII.

Defendant's unfair trade practices were willful, as when the back-up documentation was requested Defendant refused to provide such and threatened final collection of the grossly inflated bill and the charging of interest.

### XIII.

As a result of Defendant's unfair trade practices, Plaintiff has suffered damages.

### XIV.

As a result of Defendant's unfair trade practices, Plaintiff is entitled treble damages as penalties, and attorney fees under Louisiana Unfair Trade Practices and Consumer Protection Law codified as Louisiana Revised Statutes 15:1401 - 1428.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment against Defendant as follows:

1.     For damages in an amount to be proven at trial including but not limited costs, penalties, treble damages, and attorney fees;

2.     For judicial interest as permitted by law;

3.     For such other and further relief as the Court deems just and equitable, including voiding of the contract *ab initio*.

Respectfully submitted by:

SANGISETTY LAW FIRM, LLC

**RAVI SANGISETTY** (#30709)
3914 Canal Street
New Orleans, Louisiana 70119
Telephone: (504) 662-1016
Facsimile: (504) 662-1318
Email: rks@sangisettylaw.com

**COUNSEL FOR PLAINTIFF**

PLEASE HOLD SERVICE AT THIS TIME

A TRUE COPY OF THE ORIGINAL
CLERK'S OFFICE, HOUMA
NOV 1 2 2024
LA._____, 20____
BY_____
Deputy Clerk of Court

FAX FILING AUG 0 8 2024

Case Number: 0200581 Transaction Date: 8/14/2024 Seq: 10 Page Sequence: 4

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | **CASE NO. 24-31596** |
| **MMA LAW FIRM, PLLC** | § | |
| | § | |
| **DEBTOR** | § | |
| | § | |
| **MMA LAW FIRM, PLLC** | § | **ADVERSARY CASE NO.** |
| | § | **24-03230** |
| **Plaintiff** | § | |
| v. | § | |
| | § | |
| **THE SANGISETTY LAW FIRM** | § | |
| | § | |
| **Defendant** | § | |

## AMENDED COMPLAINT

MMA Law Firm, PLLC Plaintiff and/or Debtor, files this *Amended* Complaint against The Sangisetty Law Firm, LLC, pursuant to FED. R. BANKR. P. 7001(1) and (7), requesting actual and punitive damages, equitable relief, and respectfully shows the Court as follows:

## JURISDICTION, VENUE AND PARTIES

1. This is an adversary proceeding brought by the Debtor seeking a declaratory judgment regarding the determination of property of the bankruptcy estate, turnover of estate property, and violation of the automatic stay.

2. This Court has subject matter jurisdiction over this adversary proceeding, pursuant to 28 U.S.C. §§ 157 and 1334(b).

3. This adversary proceeding is a core proceeding pursuant to 28 U.S.C. § 157(b)(1) and (2) and this Court may enter a final order consistent with these statutes and Article III of the United States Constitution.

4. Venue is proper in the Bankruptcy Court for the Southern District of Texas (the "**Bankruptcy Court**"), pursuant to 28 U.S.C. § 1409.

5.      MMA Law Firm, PLLC is the Debtor in Case No. 24-31596 pending in the Southern District of Texas and can be served through its undersigned proposed counsel.

6.      Sangisetty Law Firm, LLC (**"Sangisetty"**) can be served with this Amended Complaint through its counsel of record, Leo Congeni, Congeni Law Firm, LLC at 424 Gravier Street, Suite 2750, New Orleans, LA 70130.

7.      MMA Law Firm, PLLC (the, **"Debtor"**) hereby states that it consents to the entry of final orders or judgments by the Bankruptcy Court if it is determined that the Bankruptcy Court, absent the consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution.

## RELEVANT FACTS

### RELEVANT BACKGROUND FACTS

8.      MMA Law Firm, PLLC (**"Debtor"**) is a litigation firm based in Texas.

9.      The Debtor represented thousands of storm victims with property damage claims against their insurance companies following Hurricanes Laura, Delta, Zeta, and Ida (**"MMA Clients"**).

10.     The Debtor entered into contingency fee contracts with the MMA Clients, entitling it to contingency fees and reimbursement of expenses (**"Contingency Fee Contracts"**).

11.     The Debtor prosecuted claims and filed thousands of lawsuits on behalf of the MMA Clients pursuant to the Contingency Fee Contracts (**"MMA Cases"**).

### THREE ORDERS ENTERED BY LOUISIANA DISTRICT COURT JUDGES

12.     On March 3, 2023, Judge James D. Cain, Jr., a United States district judge of the United States District Court for the Western District of Louisiana, issued an order suspending the licenses of all attorneys affiliated with the Debtor for ninety days (**"Suspension Order"**).

13.     Pursuant to the Suspension Order, the Debtor was ordered, among other things, to notify the MMA Clients of the suspension and that they had the option of either retaining new counsel or remaining with the Debtor.

14.    On August 8, 2023, Judge Cain issued an Order directing the Debtor to physically deliver to the Court "every original undeposited check" related to settlements with MMA Clients that had not yet been deposited by the Debtor (**"Check Order"**).[1] In compliance with the Check Order, the Debtor submitted a total of 807 checks, representing $12,673,672.93 in settlements from the MMA Cases (the "**Settlement Checks**").

15.    On April 5, 2024, Magistrate Judge North issued an Order that found that the Debtor waived its rights to intervene or otherwise seek to recover fees and costs in any lawsuits pending in his district, and further found that his order was without prejudice to the Debtor's rights to bring whatever claims existed **under any theory** against MMA's successor law firms (**"Judge North Order"**).[2]

16.    Pursuant to the Judge North Order; 1) the Debtor could not intervene in the underling lawsuits pending in Louisiana seeking fees and costs from its former clients, and 2) the Debtor was permitted to "bring whatever claims exists" against the "successor law firms" under "any other theory".

SANGISETTY AND THE DEBTOR REACH AN AGREEMENT

17.    Following the entry of the Suspension Order and the Check Order, Sangisetty and the Debtor entered into an agreement (the "**Agreement**"), which provided that: (1) Sangisetty would assume representation of the MMA Clients; (2) the Debtor and its co-counsel would be entitled to 45% of any contingency fee received by Sangisetty, along with reimbursement of expenses; and (3) Sangisetty would assist in obtaining reissuance of the Settlement Checks, with the Debtor and its co-counsel receiving 100% of the contingency fee related to Settlement Checks that were negotiated prior to the Suspension Order.

18.    Subsequently, Sangisetty began sending legal advertisements to the MMA Clients informing them that: (a) the Debtor was no longer permitted to practice law in Louisiana; and (b) Sangisetty had been provided with the list of MMA Clients **pursuant to an agreement with MMA**,

---

[1] Exhibit 1: Order to Turnover Checks
[2] Exhibit 2: Judge North Order

which is how the clients' contact information was obtained (**"Advertisement"**).[3]

19.     After distributing the Advertisement, Sangisetty assumed representation of 694 MMA Cases on a contingency fee basis (**"Sangisetty/Debtor Cases"**)[4].

20.     In connection with the Sangisetty/Debtor Cases, the Debtor assisted Sangisetty in multiple ways, including developing case management software to facilitate the transfer of client file documents, the actual transfer of client documents as well as answering case-specific questions and conducting research.

21.     As set forth in the Agreement, Sangisetty agreed that the Settlement Checks obtained by the Debtor (prior to the Suspension Order) would be reissued by the insurance companies for the Debtor's benefit only.

22.     Sangisetty began filing motions in the Sangisetty/Debtor Cases, requesting the Louisiana District Court to enter an order that cancelled the Settlement Checks and that facilitated the issuance of replacement checks to Sangisetty and the client (**"Motion to Reissue Checks"**)[5]. The Court granted the Motion to Reissue Checks[6], checks were reissued and delivered to Sangissety, however, the Debtor did not receive any funds from the reissued checks.

23.     Upon information and belief, Sagisetty had checks reissued in 67 MMA Cases, that Sangisetty received reissued checks totaling at least $1,085,641.01, however Sangisetty failed to deliver the Debtor any funds (**"Reissued Check Funds"**)[7].

24.     Furthermore, Sangisetty has settled hundreds of the Sangisetty/Debtor Cases, resulting in millions of dollars in attorney's fees. Despite this, Sangisetty has failed to remit any funds to the Debtor, pursuant to the Agreement.

## CHAPTER 11 BANKRUPTCY FILED AND NOTICE PROVIDED

25.     On April 9, 2024, the Debtor filed a Chapter 11 bankruptcy petition.

---

[3] Exhibit 3: Advertisement
[4] Exhibit 4: Spreadsheet
[5] Exhibit 5: Motion to Reissue Check
[6] Exhibit 6: Order Granting Motion to Reissue Check
[7] Exhibit 7: Spreadsheet of cases with Reissued Check Funds

26.     In its schedules, the Debtor disclosed liabilities to numerous creditors for expenses incurred in the Sangisetty/Debtor Cases, which it is currently unable to pay.  Since the bankruptcy filing, over $25,000,000.00 in unsecured claims have been filed by creditors who provided services to the MMA Clients and have not been paid, including estimators who provided expert reports in the Sangisetty/Debtor Cases.

27.     On April 23, 2024, the Debtor provided notice of the bankruptcy filing to Sangisetty via email to rks@sangisettylaw.com (**"BK Notice Email"**)[8].

28.     Not only did Sangisetty fail to fulfill its obligations regarding the Reissued Check Funds, but in July 2024, three months after the Debtor's bankruptcy case was filed, Sangisetty entered into new contingency fee agreements with the Debtor's former clients to pursue legal malpractice claims against the Debtor.  These agreements include a 40% contingency fee for all funds recovered by Sangisetty, solely for filing a proof of claim in the Debtor's bankruptcy case (**"POC Contingency Fee Agreement"**).[9]

## CAUSE OF ACTION #1 – DECLARATORY JUDGMENT

29.     The Debtor incorporates Paragraphs 8 through 28 into Cause of Action #1.

30.     Under Louisiana, when two attorneys provide legal services to the same client on a contingency-fee basis and one attorney is discharged before resolution, the client is obligated to pay only one contingency fee.  The Court allocates the fee between the attorneys. *Saucier v. Hayes Dairy Products, Inc.*, 373 So.2d 102 at 108 (La. 1979).

31.     The seminal decision of *Suacier* mandates the allocation of attorney's fees for a discharged attorney who had been retained pursuant to a contingency fee contract.  The *Suacier Court* determined that the fee should be apportioned based on the services each attorney provided, considering factors outlined in Rule 1.5(a) of the LOUISIANA RULES OF PROFESSIONAL CONDUCT.  These factors include:

---

[8] <u>Exhibit 8</u>: Debtor's Notice to Sangisetty
[9] <u>Exhibit 9</u>: Malpractice Contingency Fee Agreement

1) the time and labor required; 2) novelty and difficulty of questions involved; 3) skill required to perform legal services; 4) the amount involved and the results obtained; and 5) nature and length of the professional relationship with the client. *Saucier v. Hayes Dairy Products, Inc.*, 373 So.2d 102 (La. 1979).

32.     This ensures a reasonable division of fees based on each attorney's contributions. If the first attorney was not discharged for cause, this analysis concludes the determination. However, if discharged for cause, the court must assess the nature and gravity of the discharge to determine if the discharged attorney is entitled to any fees. *O'Rourke v. Cairns,* 683 So. 2d 697, 702 (La. 1996).

33.     The Debtor asserts an entitlement to an apportionment of fees and costs in a total of 694 Sangisetty/Debtor Cases (the **"Saucier Claims"**).

34.     Additionally, there are 67 MMA Cases in which checks were reissued, totaling approximately $1,085,641.01 (the **"Reissued Check Funds"**).  Upon information and belief, these reissued checks were received by Sangisetty but were never turned over to the Debtor.

35.     The Debtor seeks a declaratory judgment affirming the Debtor's Saucier Claims, and that the Reissued Check Funds are property of the bankruptcy estate (as detailed in Exhibits 4 and 7).

36.     When considering a declaratory judgment action, the Court must engage in a three-step inquiry: (1) whether an "actual controversy" exists between the parties in the case; (2) whether it has authority to grant declaratory relief; and (3) whether "to exercise its broad discretion to decide

or dismiss a declaratory judgment action." *Orix Credit All., Inc. v. Wolfe*, 212 F.3d 891, 895 (5th Cir. 2000).

37.     An actual controversy exists between the Debtor and Sangisetty regarding the Debtor's interest in the Saucier Claims and the Reissued Checks, as evidenced by the following: 1) Sangisetty has refused to turnover any funds related to the Saucier Claims; 2) Sangisetty has refused and failed to turnover any of the Reissued Check Funds; 3) Sangisetty entered into contingency fee agreements

with the MMA Clients to sue the Debtor for malpractice, related to the Saucier Claims; and 4) allegations contained in a class action lawsuit filed by Sangisetty on behalf of multiple MMA Clients asserting that the Debtor acted improperly.

38.   As noted in Judge North's Order, while the Debtor cannot intervene in any pending Louisiana MMA Cases, it is allowed to bring whatever claims exists **under any theory** against MMA's successor law firms like Sangisetty.

39.   Here, the Debtor was not discharged for cause, however even if the Court were to determine that it was, the Debtor is still entitled to an apportionment of fees and costs collected or to be collected under the reasonableness factors described above in *Saucier*. Therefore, a live controversy exists between the Debtor and Sangisetty regarding the Saucier Claims and the Reissued Checks.

40.   The Bankruptcy Court has authority to grant relief, and the Debtor respectfully requests that the Bankruptcy Court exercise its broad discretion to determine this declaratory judgment action. A bankruptcy court's jurisdiction is governed by 28 U.S.C. § 1334. District courts, and therefore bankruptcy courts, have exclusive jurisdiction over "all cases under title 11," including jurisdiction over "all the property, wherever located, of the debtor as of the commencement of such case, and of property of the estate." 28 U.S.C. § 1334(e); *In re TMT Procurement Corp.,* 764 F.3d 512, 523 (5th Cir. 2014).

### CAUSE OF ACTION #2: TURNOVER OF PROPERTY OF THE ESTATE

41.   The Debtor incorporates Paragraphs 8 through 28 into Cause of Action No. 2.

42.   Pursuant to Section 541(a)(1) of the Bankruptcy Code, "property of the estate" encompasses "all legal and equitable interest of the debtor in property as of the commencement of the case". 11 U.S.C. §541.

43.   Section 542(a) mandates that an entity possessing property of the estate must deliver and account for such property, or its equivalent value, to the bankruptcy estate. 11 U.S.C. § 542.

44.    The Debtor is aware of 694 MMA Cases that Sangisetty acquired an interest in following the Suspension Order (**"Sangisetty/Debtor Cases"**).

45.     The Debtor asserts that it is entitled to fee apportionment in the Sangisetty/Debtor Cases pursuant to the *Saucier Test,* which provides for fair fee apportionment between a discharged attorney and a current attorney, based on factors such as time, labor, skill, amount involved, results obtained, and the length of the professional relationship. *Saucier v. Hayes Dairy Products, Inc.*, 373 So.2d 102 (La. 1979).

46.     Additionally, the Debtor asserts that Sangisetty received approximately $1,085,641.01 in Reissued Checks in which the Debtor has an interest, but which have not been turned over to the Debtor (**"Reissued Check Funds"**).

47.     The Debtor's interest in properly apportioned fees/costs in each of the Sangisetty/Debtor Cases and the Reissued Check Funds is property of the estate which Sangisetty received and has failed to turnover to the Debtor, despite demands.

48.     The Debtor respectfully requests that the Court issue an order compelling Sangisetty to provide a comprehensive accounting of all funds received in connection with the Sangisetty/Debtor Cases and the Reissued Checks, to determine the estate's interest in those funds (determination of appropriate fees/costs of the Debtor and/or the proper apportionment of the collected fees/costs), and to order the Defendant to immediately deliver all estate property to the Debtor.

49.     The Debtor also requests an order directing the turnover of the properly apportioned fees and costs associated with the Sangisetty/Debtor Cases  and the Reissued Check Funds.

**CAUSE OF ACTION NO. 3: VIOLATION OF THE AUTOMATIC STAY**

50.     The Debtor incorporates Paragraphs 8 through 28 into Cause of Action No. 3.

51.     The Debtor asserts that Sangisetty violated 11 U.S.C. § 362(a)(3) of the Bankruptcy Code.

52.     Pursuant to 11 U.S.C §362(a)(3), any acts to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate is stayed.

53.     The Debtor entered into contingent fee agreements with the Sangisetty/Debtor clients and performed work in the Sangisetty/Debtor Cases.  As a result, the Debtor is entitled to fee

apportionment and reimbursement of expenses from Sangisetty per the factors described in Paragraphs 30 through 33 and incorporated herein.

54.    A portion of the fees collected by Sangisetty were earned by the Debtor prior to its Chapter 11 filing on April 9, 2024. Although Sangisetty finalized settlements in the Sangisetty /Debtor Cases, none of these funds have been paid to the Debtor pursuant to *Saucier*.

55.    As discussed above in Paragraphs 14 through 18 and Paragraphs 21 through 24, and incorporated herein, the Debtor also asserts that Sangisetty received approximately $1,085,641.01 in Reissued Checks that that Debtor had an interest in (**"Reissued Check Funds"**). No proceeds from the Reissued Checks have been delivered to the Debtor.

56.    Section 541(a) of the Bankruptcy Code defines "property of the estate" to include all legal or equitable interests of the debtor in property as of the commencement of the case.  11 U.S.C. § 541(a)(1). Therefore, the Debtor's interest in the Reissued Check Funds and properly apportioned fees/costs pursuant to *Saucier* constitute property of the estate.

57.    On April 23, 2024, the Debtor sent an email notifying Sangisetty of the Debtor's bankruptcy.

58.    Post-petition, after having received notice of the Debtor's Chapter 11 Case, Sangisetty obtained possession of property of the estate and exercised control over this property.

59.    Sangisetty's conduct was both intentional and willful, as they were financially motivated to secure the Reissued Check Funds and unportioned fees/costs to the exclusion of the Debtor.

60.    In order to sustain an action for violation of Section 362, the Debtor must assert that: 1) a property interest in invoked; 2) the property interest is property of the estate; and 3) there occurred an act to obtain possession of the estate property or there existed an act to exercise control over estate property. 11 U.S.C. §362(a)(3).

61.    In this case: 1) The Debtor holds an interest in the *Saucier* Claims and the properly apportioned fees/costs resulting from those claims, and the Reissued Check Funds; 2) these funds are

property of the estate; and 3) Sangisetty has obtained and continued to exercise control over this property, failing to turn it over to the Debtor.

62.     Furthermore, Sangisetty, is a law firm, and should be held to a higher standard regarding compliance with the automatic stay.

63.     Pursuant to Section 362(k), the Debtor is entitled to recover actual damages, including costs and attorney's fees, from Sangisetty for its intentional and willful violations of Section 362 of the Bankruptcy Code.  The Debtor incurred attorney's fees and costs in filing this adversary proceeding, including the payment of filing fees.

64.     Although Section 362(k) provides for recovery for individuals, courts in this district have employed their civil contempt powers under section 105(a) to address automatic stay violations, including damages, fees and punitive damages, when the plaintiff is not an individual. *Sanchez v. Ameriquest Mort. Co. ( In re Sanchez)*, 375 B.R. 289, 309 (Bankr. S.D. Tex. 2007).

65.     Sangisetty's intentional violation of the automatic stay warrants the Court's intervention to determine the violation and utilize its equitable powers under Section 105(a) to enforce Section 362, and awarding appropriate damages and fees for violations.

66.     The Court also possesses the authority under Section 105(a) to impose sanctions for civil contempt or as part of its equitable powers. As noted by the Fifth Circuit, "Judicial sanctions in civil contempt proceedings may, in proper case, be employed for either or both of two purposes:  to coerce the defendant into compliance with the court's order, and to compensate the complainant for losses sustained." *Sanchez v. Ameriquest Mort. Co. (In re Sanchez)*, 375 B.R. 289, 309 (Bankr. S.D. Tex. 2007) (citing *American Airlines Inc. v. Allied Pilots Ass'n*, 228 F. 3d 574, 585 (5th Cir. 2000).

67.     "The automatic stay is a self-executing injunction, and therefore for contempt purposes it constitutes an order of the bankruptcy court." *Sanchez v. Ameriquest Mort. Co. ( In re Sanchez),* 375 B.R. 289, 309 (Bankr. S.D. Tex. 2007)

68.     Consequently, the Debtor seeks actual damages and sanctions against Sangisetty for its intentional violations of the automatic stay.

**WHEREFORE**, Plaintiff requests the Court to grant its declaration requests, determine to identified assets are property of the estate, to order the delivery of the estate funds as requested, to determine that Defendant willfully and intentionally violated the automatic stay, awarding appropriate actual and punitive damages and attorney fees, and such other and further relief, at law or in equity, to which the Plaintiff shows itself entitled.

Dated: <u>January 2, 2025.</u>

Respectfully submitted,

By:  <u>*/s/ Miriam T. Goott*</u>
Miriam T. Goott
attorney-in-charge
SBN 24048846
COUNSEL FOR THE PLAINTIFF

OF COUNSEL:
WALKER & PATTERSON, P.C.
P.O. Box 61301
Houston, TX 77208
miriamgoott@yahoo.com
713.956.5577 (telephone)
713.956.5570 (fax)

<u>**CERTIFICATE OF SERVICE**</u>

I, Miriam T. Goott, hereby certify that I served a copy of this Amended Complaint on Sangisetty Law Firm, LLC through its counsel of record, Leo Congeni, Congeni Law Firm, LLC via email and U.S. Mail at 424 Gravier Street, Suite 2750, New Orleans, LA 70130, on January 2, 2025.

By:  <u>*/s/ Miriam T. Goott*</u>
Miriam T. Goott

United States District Court
Southern District of Texas
**ENTERED**
February 12, 2025
Nathan Ochsner, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| MMA LAW FIRM, PLLC, | § | |
| | § | |
| *Debtor,* | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 4:25-cv-0318 |
| | § | |
| THE SANGISETTY LAW FIRM, | § | |
| | § | |
| *Appellant.* | § | |

## ORDER

If the parties have not already done so, the Court orders the following:

1. By **May 9, 2025**, Debtor/MMA is to provide The Sangisetty Law Firm a complete list of all cases/claims that it contends that it represented a plaintiff/claimant and that The Sangisetty Law Firm took over the representation of that client.

2. By **May 23, 2025**, The Sangisetty Law Firm will confirm to MMA the identity of each client/claimant listed in response to paragraph number 1 of this Order that it still represents in any matter that has not settled and it should include the current status of the claim/lawsuit.

3. By **May 26, 2025**, MMA and The Sangisetty Law Firm are to agree on an appropriate mediator and inform the Court as to their choice. If the parties cannot agree, they shall inform the Court by **May 26, 2025** and the Court will appoint a mediator.

4. By **May 30, 2025**, MMA is to provide to The Sangisetty Law Firm a breakdown of each task it performed for each claimant listed in response to paragraph number 1 of this Order and the amount it claims it is owed for attorneys' fees.

5. By **May 30, 2025**, MMA is to provide The Sangisetty Law Firm a specific breakdown of each cost it incurred in the representation of each such claimant listed in response to paragraph number 1 of this Order.

6. By **June 6, 2025**, The Sangisetty Law Firm is to provide MMA with a breakdown of the fees it has received from representing each claimant listed in response to paragraph number 1 of this Order.

1

7.  By **June 6, 2025**, The Sangisetty Law Firm shall provide MMA with a specific description of each cost it incurred in the representation of each claimant listed in paragraph number 1 of this Order.

8.  In the meantime, the parties are instructed to meet and attempt to resolve the issue of attorneys' fees and costs owed to MMA.

9.  All information provided by either side pursuant to this Order shall be kept confidential and shall not be shared without permission of the Court (outside of information provided to this Court or to the mediator) outside the attorneys and their clients for each side in this Adversary matter.

Signed at Houston, Texas, on this the ___ day of February, 2025.

Andrew S. Hanen
United States District Judge

2



**EXHIBIT**

**E**

CASE NO.

4:25-CV-0318

## CITATION ON PETITION

*SANGISETTY LAW FIRM LLC*

*Versus*

*JASON JOY & ASSOCIATES - ET AL*

Division: B
32nd Judicial District Court
Parish of Terrebonne
State of Louisiana

### A RESIDENT OF VERMILION PARISH

TO:    PHIL DEBAILLON
       111 CONCORD STREET, SUITE B
       ABBEVILLE, LA 70510

You are named as a defendant in the above captioned matter. Attached to this citation is a:

- ☒ Certified Copy of Original Petition
- ☐ Certified Copy of Amended Petition
- ☐ Discovery Request

The petition was filed into this office on FEBRUARY 28, 2025.

**YOU ARE NOTIFIED** that you must either comply with the demand contained in the attached petition or make an appearance either by filing an answer or other pleading, in the 32nd Judicial District Court located at 7856 Main St., Houma, LA 70360 (P. O. Box 1569, Houma, LA 70361) within the delay provided in Article 1001 of the Louisiana Code of Civil Procedure under penalty of default.

### Article 1151 of the Louisiana Code of Civil Procedure provides in pertinent part:

A defendant shall plead in response to an Amended Petition within the time remaining for pleading to the Original Pleading or within ten (10) days after service of the Amended Petition, whichever period is longer, unless the time is extended under Article 1001.

### Article 1001 of the Louisiana Code of Civil Procedure states:

A. A defendant shall file his answer within **twenty-one (21) days** after service of Citation upon him, except as otherwise provided by law. If the plaintiff files and serves a Discovery Request with his Petition, the defendant shall file his answer to the petition within **thirty (30) days** after service of the amended petition.
B. When an Exception is filed prior to Answer and is overruled or referred to the merits, or is sustained and an Amendment of the Petition ordered, the Answer shall be filed within fifteen (15) days after the exception is overruled or referred to the merits, or fifteen (15) days after service of the Amended Petition.
C. The Court may grant additional time for answering.

### THE CLERK OF COURT'S OFFICE CANNOT PROVIDE LEGAL ADVICE.

This Citation was issued by the Clerk for the Court for the 32nd Judicial District Court, Parish of Terrebonne, on the 2nd day of APRIL, 2025.

THERESA A. ROBICHAUX
CLERK OF COURT

By: _____
Deputy Clerk of Court

Requested by:    MR. RAVI SANGISETTY
                 ATTORNEY AT LAW
                 3914 CANAL STREET
                 NEW ORLEANS, LA 70119
                 (504)662-1016

Returned and Filed

_____

_____
Deputy Clerk of Court

{ SERVICE }

Page Case 4:25-cv-00318 Document 12-6 Filed on 04/09/25 in TXSD Page 2 of 6

**32ND DISTRICT COURT FOR THE PARISH OF TERREBONNE**

**STATE OF LOUISIANA**

CASE NO.: 201933

DIVISION " " D

**SANGISETTY LAW FIRM, LLC**

**VERSUS**

**JASON JOY & ASSOCIATES, ET AL.**

FILED: _____          _____

                                                    **DEPUTY CLERK**

## PETITION FOR DAMAGES AND INJUNCTIVE/DECLARATORY RELIEF

**NOW INTO COURT**, through undersigned counsel, comes Petitioner, Sangisetty Law Firm, LLC, who seeks to file this Petition for Damages and Injunctive/Declaratory Relief in the above-captioned manner as follows:

1.

This Court has jurisdiction over this action pursuant to Louisiana Code of Civil Procedure Article 2. There is also a related matter pending in this jurisdiction Docket No.: 200581.

2.

Made Defendants herein are Jason Joy & Associates ("Defendant" or "JJA"), a Texas entity engaged in the practice of law in the State of Texas; Kathleen O'Connor, a person of full age of majority domiciled in the State of Texas; Colin Wood, a person of full age of majority domiciled in the State of Texas; and Phil Debaillon, a person of full age of majority domiciled in the State of Louisiana.

3.

Venue is proper under Louisiana Code of Civil Procedure Article 76.1 because a substantial part of the work and services were performed in Terrebonne Parish under the terms of the contract. Additionally, the relevant contracts at issue provide for venue in this jurisdiction.

4.

The subject matter of this lawsuit involves Defendants improper conduct surrounding an agreement to represent certain clients whose claims arose out of various hurricanes that occurred in Louisiana from 2020 through 2021. Petitioner entered into an agreement with Defendant,

**DAVID W. ARCENEAUX**
**JUDGE-DIVISION D**

**FAX FILING_____** FEB 2 6 2025

Jason Joy & Associates ("JJA") to jointly represent these clients whose claims had been pending for some time.

5.

The impetus for the creation of the venture between SLF and JJA involved transferring of numerous clients formerly represented by McClenny Moseley & Associates ("MMA"). As is well known, MMA came under immense scrutiny for its conduct in various jurisdictions throughout Louisiana in its representation of clients who had legal disputes with their respective insurance companies. Ultimately, various courts prohibited MMA from continuing in its legal representation of certain clients, leaving them without lawyers.

6.

The scope of the joint venture agreement was primarily to facilitate the efficient transfer of the client matters from MMA to Petitioner.

7.

It is notable that the agreement between SLF and JJA was not intended to establish a global split of attorney fees on the matters, but such was to be determined on the actual work done on each of the client files. Specifically, the Joint Venture states: "The Parties agree that the scope of this Agreement is not intended to determine a split of attorney fees on each transferred file. The determination of attorney fees shall be handled on a case-by-case basis and in accordance with the Louisiana Rules of Professional Conduct."

8.

After obtaining these new clients, and in exchange for its being party to the client fee contracts, JJA promised to provide critical legal services. Instead of fulfilling this obligation, JJA improperly delegated substantial responsibilities to Xpand Legal, LLC ("Xpand"), a third-party vendor company of non-lawyers. Additionally, Xpand improperly billed the venture excessive fees, for services not rendered and, upon information and belief, invoiced the venture for services provided to JJA on unrelated Projects. By abandoning the work, outsourcing key responsibilities to non-lawyers, and permitting overbilling practices, JJA failed to fulfill its obligations thereby breaching its duties to Petitioner and the clients.

9.

2

Further, JJA's failure to fulfill its obligations to assist with certain legal tasks that it agreed to perform, resulted in Petitioner having to assume all responsibilities, including the financial responsibilities, and endeavor to complete the work for hundreds of clients. This required substantial financial resources as well as additional attorneys as all of the cases involved pending deadlines. Nevertheless, JJA, though agreeing otherwise, has taken the position that its entitlement to fees was/is based on its "origination" of the client matters making it clear that it had no intention of participating substantively in the legal work to be performed.

10.

In connection with this work, it was also contemplated that JJA and Petitioner would evaluate the legal malpractice claims of the clients whose cases were prejudiced by McClenny Moseley & Associates. Specifically, Petitioner was evaluating which insurance claims remained viable and which only presented legal malpractice issues.

11.

The malpractice designation was maintained by Petitioner in a software program used for a time to organize the files. Defendants and Xpand Legal, LLC had access to this database.

12.

With respect to these potential malpractice claims, Petitioner learned that JJA was actually in a separate business venture with a co-defendant to the malpractice action, thereby presenting a conflict of interest.

13.

When it was discovered that Xpand Legal, LLC was overbilling Petitioner and its clients for services it did not perform, Petitioner advised that he was terminating the contract with Xpand Legal, LLC.

14.

Subsequently Xpand Legal, LLC, at the direction of Defendants, began to call the clients designated as malpractice and signed these clients under new contingency contracts with JJA affiliated and/or separate law firms, despite instruction from Petitioner that Xpand Legal, LLC was not authorized to communicate with its clients on new legal matters. Some of these individuals already had signed a contract with Petitioner, yet Defendants and Xpand informed them it was a mistake and presented them with a new agreement as described above.

15.

3

Upon information and belief, the new malpractice contracts with JJA's office, obtained with the assistance of Xpand Legal LLC, did not list JJA but rather partners of JJA, i.e., Colin Wood and Kathleen O'Connor. This was done presumably to circumvent the fact that there was a conflict of interest present.

16.

Additionally, upon signing these new malpractice contracts utilizing the work done by Petitioner, JJA and Xpand then locked Petitioner out of the software system with respect to these clients.

17.

Xpand, JJA, O'Connor, and Wood utilized legal work performed by Petitioner for its clients in evaluating the malpractice aspects of their respect hurricane claims to solicit a number of Petitioner's clients on the malpractice matters without permission and despite explicit instruction not to do so. This has resulted in damages to Petitioner for loss of income and/or economic opportunity, unjust enrichment, and is an unfair trade practice as defined under Louisiana law.

18.

At least one such client includes an individual who had already signed a malpractice related contract with Petitioner and despite having communicated this to Defendants, they, nevertheless, requested he sign a new contract.

19.

Upon information and belief, JJA is now attempting to contact the first-party claim clients and/or opposing counsel causing disruption and interfering with the clients' legal matters and/or obtaining their settlement proceeds. This is because Petitioner notified JJA that its claim for fees based on client "origination" was not proper. Further, upon information and belief, in February 2025, attorney Philip Debaillon has been retained by JJA as its purported Louisiana counsel under the pretext of assuming legal work nearly a year after anything substantive on its part has been done. This has only served to interfere in the efficient and prompt resolution of the client matters justifying the Court's intervention.

4

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for further judgment against Defendants, Jason Joy & Associates, Colin Wood, Kathleen O'Connor and Phil Debaillon as follows:

1. Defendants be held jointly liable and/or *in solido* for the damages and relief sought in the Petition.

2. Judgment in favor of Petitioner and against Jason Joy and Associates stating Jason Joy and Associates is not entitled to a legal fee in connection with the representation of clients originally contemplated to be jointly represented by Petitioner and Jason Joy and Associates.

3. Jason Joy and Associates or any of its agents be enjoined from contacting the clients of Petitioner, opposing counsel, and/or the courts except to relay messages left at its law firm.

4. Jason Joy and Associates be held solely responsible for any money owed to Xpand Legal, LLC for purported services rendered in connection with Petitioner's clients.

5. Additional damages under the Louisiana Unfair Trade Practices Act.

6. Attorney fees;

7. Court costs; and

8. All legal and equitable relief as determined by the Court.

Respectfully submitted by:

**SANGISETTY LAW FIRM, LLC**

**RAVI SANGISETTY (#30709)**
**TANNER MAGEE (#33954)**
**WILLIAM BOYLES (#31632)**
**AMANDA OLMSTED (#40002)**
**BROOKE LONG (#35665)**

3914 Canal Street
New Orleans, Louisiana 70119
Telephone: (504) 662-1016
Facsimile: (504) 662-1318
Email: rks@sangisettylaw.com
william@sangisettylaw.com
amanda@sangisettylaw.com
brooke@sangisettylaw.com

**COUNSEL FOR PETITIONER**

FILED

FEB 2 8 2025

DEPUTY CLERK OF COURT
PARISH OF TERREBONNE, LA

**A TRUE COPY OF THE ORIGINAL CLERK'S OFFICE, HOUMA**

LA. APR 0 2 2025 , 20

BY

Deputy Clerk of Court

**PLEASE HOLD SERVICE AT THIS TIME**

5

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

MMA LAW FIRM, PLLC

      *Plaintiff,*

v.

            **CIVIL ACTION NO. 4:25-CV-0318**

SANGISETTY LAW FIRM, LLC

      *Defendant*

---

**SUPPLEMENTAL AND AMENDED MOTION FOR LEAVE TO INTERVENE AND TO FILE**
**AMENDED COMPLAINT IN INTERVENTION**
**(WITH REQUEST FOR EXPEDITED CONSIDERATION)**

---

## Table of Contents

Table of Authorities .................................................................................................................... 2

INTRODUCTION ......................................................................................................................... 3

PROCEDURAL HISTORY ........................................................................................................... 3

GROUNDS FOR INTERVENTION AND AMENDMENT ....................................................... 5

URGENCY OF RELIEF REQUESTED....................................................................................... 8

GROUNDS FOR EXPEDITED CONSIDERATION.................................................................. 8

*PROCEDURAL GAMESMANSHIP AND FORUM CONFLICT*........................................................ **10**

CONCLUSION .............................................................................................................................. 12

PRAYER FOR RELIEF ............................................................................................................... 13

Exhibit Index................................................................................................................................. 15

*CERTIFICATE OF SERVICE*..................................................................................................... **16**

## Table of Authorities

### Cases

*HS Res., Inc. v. Wingate*, 327 F.3d 432, 439 (5th Cir. 2003) ............................................................ 6

*MMA Chapter 11 Petition, Schedule E/F* (Bankr. S.D. Tex. No. 23-90147, Dkt. 13) ............................ 6

*Sangisetty Law Firm, LLC v. Xpand Legal, LLC;* Case No. 200581 (Terrebonne Parish, LA).... 10, 12

*Saucier v. Hayes Dairy Prods., Inc.*, 373 So. 2d 102, 108 (La. 1979)............................................... 6

*Sanders v. LIGA,* No. 3:23-cv-01174, Doc. 26 (M.D. La. July 9, 2024)...............................................12

*Smith v. Southern Fidelity* (W.D. La. No. 1:22-cv-03751) .................................................... 7, 9, 11

### Statutes & Rules

28 U.S.C. § 2041 ...................................................................................................................... 10, 13

Federal Rule of Civil Procedure 15(a)(1)(B), ............................................................................... 5

Federal Rule of Civil Procedure 24(a) ....................................................................................... 3, 13

Federal Rule of Civil Procedure 67 ......................................................................................... 10, 13

Rule 15(a)(2)............................................................................................................... 3, 7, 12, 13

Rule 24 .................................................................................................................................. 3, 5, 12

Rule 24(b)............................................................................................................................... 3, 13

**Rule 24(b)(1)(B)** ........................................................................................................................ 7

## INTRODUCTION

1.      **THIS IS THE SUPPLEMENTAL AND AMENDED MOTION TO INTERVENE** filed on behalf of Jason Joy & Associates, PLLC ("JJA" or "Proposed Intervenor") in the above captioned matter.

2.      This Supplemental and Amended Motion for Leave to Intervene is premised on JJA being an intervenor of right pursuant to Federal Rule of Civil Procedure 24(a), or in the alternative by permissive intervention under Rule 24(b), and respectfully seeks leave to file a Supplemental and Amended Complaint in Intervention under Rule 15(a)(2). This motion amends and supplements JJA's previously filed Motion to Intervene and Complaint in Intervention (filed April 11, 2025) and incorporates all prior allegations and claims by reference.

3.      A copy of the proposed Amended Complaint in Intervention is attached hereto as *(See Exhibit A)*. JJA further requests expedited consideration of this motion, in light of ongoing and escalating prejudice caused by Defendant Sangisetty Law Firm, LLC's ("SLF") unilateral actions that impair JJA's rights, responsibilities, and obligations to clients whose interests are directly implicated in this adversary proceeding.

## PROCEDURAL HISTORY

4.      This action originated as an adversary proceeding filed by MMA Law Firm, PLLC ("MMA") against The Sangisetty Law Firm, LLC ("SLF") concerning unpaid attorney's fees related to former MMA clients. Following MMA's disqualification from the practice of law in Louisiana, JJA independently acquired representation of approximately 974 displaced clients through client outreach, solicitation, and onboarding.

5.       In June 2023, MMA and JJA entered into a Secondment Agreement under which MMA agreed to transfer its Louisiana client files to JJA. However, MMA failed to perform this obligation.

JJA received no meaningful case files and was required to independently acquire and onboard approximately 974 clients through its own outreach and expense.[1] (*See Exhibit B*)

6.    In July 2023, JJA and The Sangisetty Law Firm, LLC ("SLF") entered into a Joint Venture Agreement to jointly represent former MMA clients and share responsibility for those cases. This agreement was memorialized in an email dated October 2, 2023.[2] (*See Exhibit C*)

7.    On November 10, 2024, MMA filed this adversary proceeding against SLF in the U.S. Bankruptcy Court for the Southern District of Texas, Houston Division.

8.    On February 12, 2025, the reference was withdrawn and the adversary proceeding was transferred to this Court.

9.    On February 28, 2025, SLF filed a parallel lawsuit against JJA in the 32nd Judicial District Court for the Parish of Terrebonne, Louisiana. The petition included instructions to hold service. JJA was not served until April 16, 2025 — five days after it filed its Motion to Intervene in this action.[3] (*See Exhibit D*)

10.   On March 5, 2025, SLF filed a Motion to Dismiss in this action, identifying JJA as an "indispensable party," but failed to join JJA or explain the omission as required by Federal Rule of Civil Procedure 19(c).[4] (*See Exhibit E*)

11.   During this period, SLF revoked JJA's access to shared case files, calendars, and spreadsheets—cutting off information essential to deadline tracking and settlement coordination, despite JJA's ongoing co-counsel responsibilities under joint contingency contracts.[5] (*See Exhibit F*)

---

[1] See Exhibit B Secondment Agreement between JJA and MMA (June 23, 2023)
[2] See Exhibit C October 2, 2023 Email from SLF confirming 50/50 co-counsel split
[3] See Exhibit D SLF Petition against JJA in Terrebonne Parish (Feb. 28, 2025)
[4] See Exhibit E SLF Motion to Dismiss (March 5, 2025) referencing JJA as indispensable party
[5] See Exhibit F Email Correspondence re: Fee Waiver Refusal (Smith v. Southern Fidelity)

12.     JJA promptly and repeatedly requested that SLF restore access and honor its co-counsel obligations. These requests were formally conveyed by email, including on March 11, 2025. SLF refused, claiming JJA's access denial was "ongoing" and dismissing the requests as unnecessary. A copy of the email is attached as (*See Exhibit G*)[6].

13.     On April 11, 2025, JJA filed its original Motion to Intervene and Complaint in Intervention. JJA now seeks leave to amend that filing to reflect the facts herein and reaffirms and incorporates its original pleadings herein.

## GROUNDS FOR INTERVENTION AND AMENDMENT

14.     Accordingly, JJA seeks leave to amend its original motion and complaint to reflect these **material developments**, clarify its legal and factual claims, and protect its interests — and those of its clients — before this Court.

15.     Under Federal Rule of Civil Procedure 15(a)(1)(B), a party may amend its pleading once as a matter of course within 21 days after serving it or within 21 days after service of a responsive pleading or Rule 12(b) motion, whichever is earlier. As JJA's original Complaint in Intervention was filed on April 11, 2025, and no responsive pleading has been filed, JJA may amend as of right.

16.     **This motion is timely.** SLF identified JJA as an "indispensable party" in its March 5, 2025 Motion to Dismiss but did not serve or notify JJA. JJA filed its Motion to Intervene on April 11, 2025—within five weeks of the case being withdrawn to this Court and shortly after SLF raised JJA's role in its responsive pleading. Courts in this Circuit evaluate timeliness in light of the procedural posture of the case, and JJA's intervention at this stage satisfies that standard under Rule 24. Additionally, MMA mentions "co-counsel" which appears to be a reference to JJA. JJA has

---

[6] See Exhibit G SLF Notice of Intent to Withdraw in Smith (W.D. La. 1:22-cv-03751)

been systematically omitted from this case although SLF admits in his motion filed pursuant to

12(b)(6) that JJA is an indispensable party.

> a.    JJA has a direct and substantial interest in the subject matter of this action. This proceeding concerns fee rights and client relationships arising from JJA's Secondment Agreement with MMA and an October 2, 2023 email from SLF confirming the terms of a co-counsel joint venture. JJA is a named party in both communications, was contractually obligated to jointly represent the affected clients, and remains subject to ongoing ethical duties under jointly executed contingency fee contracts.

17.    The contingency fees in dispute — including those claimed by MMA, SLF, and JJA — relate to the same pool of settlement proceeds, which MMA asserts are assets of the bankruptcy estate. MMA has also listed JJA in its bankruptcy schedules as a counterparty to disputed attorney's fees, confirming that these proceeds are being treated as estate assets subject to adjudication in this adversary proceeding. *See* MMA Chapter 11 Petition, Schedule E/F (Bankr. S.D. Tex. No. 23-90147, Dkt. 13). SLF's actions have impeded JJA's ability to fulfill those obligations, but the contractual and professional interests at stake remain squarely implicated in this proceeding. *See Saucier v. Hayes Dairy Prods., Inc.*, 373 So. 2d 102, 108 (La. 1979) (recognizing single contingency fee structure and judicial allocation between attorneys).

18.    **The disposition of this action may impair or impede JJA's ability to protect its interests.** JJA is not licensed in Louisiana and has not entered an appearance as counsel of record in the state court proceedings. However, JJA has contractual co-counsel rights and fee-sharing obligations under the Joint Venture Agreement and jointly executed client agreements. SLF continues to litigate and settle jointly originated cases while excluding JJA from participation and fee disbursement.[7] (*See Exhibit H*) A judgment in this case could directly affect JJA's financial and ethical interests without its participation. *See HS Res., Inc. v. Wingate*, 327 F.3d 432, 439 (5th Cir. 2003).

---

[7] Exhibit H Compare two Settlement Statements (one includes JJA, subsequent excludes JJA)

19.     **JJA's interests are not adequately represented.** SLF has asserted positions directly adverse to JJA — including filing a separate state court action and revoking access to shared case files. On March 27, 2025, SLF represented to the federal court in *Smith v. Southern Fidelity* (W.D. La. No. 1:22-cv-03751) that JJA was aware of all court deadlines and was assuming representation of the plaintiff — despite JJA not having access to the file or the shared calendar. When JJA sought to waive its own fee interest to help the client secure new Louisiana counsel, SLF refused to do the same. MMA, meanwhile, is in bankruptcy and has not advanced any position on JJA's behalf.[8]

20.     **In the alternative, JJA is entitled to permissive intervention under Rule 24(b)(1)(B).** JJA's claims involve common questions of law and fact with those at issue in the underlying adversary proceeding, including the interpretation of the SLF-JJA Joint Venture Agreement, the distribution of contingency fees, and the scope of each party's obligations in jointly executed client contracts. Permissive intervention will not unduly delay or prejudice the adjudication of the existing parties' rights and will ensure that all parties with a direct stake in the dispute are before the Court.[9]

21.     **Leave to amend should be freely granted under Rule 15(a)(2).** This Amended Motion and Complaint incorporate and clarify allegations originally filed on April 11, 2025, and reflect ongoing procedural and factual developments in the parties' conduct. In *Smith v. Southern Fidelity*, SLF represented to the court that JJA was receiving ECF notices and aware of deadlines but failed to disclose that SLF had revoked JJA's access to the shared calendar where deadlines were maintained. SLF has also continued to refuse to waive fee claims in cases where clients have

---

[8] See Trbovich v. United Mine Workers, 404 U.S. 528, 538 n.10 (1972) (standard for inadequate representation is minimal); Jones v. Prince George's County, 348 F.3d 1014, 1020 (D.C. Cir. 2003) (representation inadequate where interests are only partially aligned).

[9] See New Orleans Pub. Serv., Inc. v. United Gas Pipe Line Co., 732 F.2d 452, 471 (5th Cir. 1984) (en banc).

Page 7 of 16

terminated representation. These events underscore the breakdown in the co-counsel relationship and support the need for JJA's full participation in this proceeding.[10]

## URGENCY OF RELIEF REQUESTED

22.     JJA's exclusion from litigation calendars, shared case files, and settlement communications poses an immediate risk to the firm's ability to discharge its contractual and ethical obligations to jointly represented clients.

23.     Multiple clients have terminated SLF and requested continued representation from JJA. Because JJA is not licensed in Louisiana and has been unable to identify new counsel willing to assume these cases — due in part to the broader dispute between firms — some clients are now left without effective representation.

24.     JJA has waived its own fee interest in several cases to help clients secure Louisiana counsel. SLF has refused to do the same, preventing effective substitution and leaving clients without adequate legal protection.

25.     These conditions have created a real-time risk of reputational harm and potential malpractice exposure for JJA, despite its exclusion from litigation management and decision-making. Immediate relief is necessary to protect both JJA and the clients affected by the co-counsel breakdown.

26.     Without intervention and judicial clarification, JJA now faces imminent exposure to malpractice claims, reputational damage, and potential ethical complaints — not due to any misconduct of its own, but because SLF's unilateral actions have obstructed JJA's access to jointly represented client files and settlement data.

## GROUNDS FOR EXPEDITED CONSIDERATION

---

[10] See Foman v. Davis, 371 U.S. 178, 182 (1962) (amendment should be freely given when justice so requires).

27.     Expedited relief is warranted where a delay in judicial intervention will cause irreparable harm or significantly impair a party's legal or ethical obligations.[11]

28.     Here, JJA is a co-counsel party to jointly executed client agreements and was contractually obligated to assist displaced MMA clients under both the SLF-JJA Joint Venture Agreement and the JJA-MMA Secondment Agreement. Despite that role, SLF has excluded JJA from critical litigation infrastructure, including access to client files, case communications, settlement data, and the shared calendar used to coordinate deadlines across hundreds of cases.

29.     While SLF correctly noted in *Smith v. Southern Fidelity* that JJA was receiving ECF notifications, those notices were insufficient to enable JJA to fulfill its obligations. JJA had no access to the client file, opposing counsel communications, or the internal calendar system where deadlines were maintained. As a firm jointly responsible for nearly 1,000 cases, JJA could not reasonably be expected to identify and track deadlines through ECF notices alone.[12]

30.     SLF's conduct has also directly impaired the ability to secure adequate counsel for clients who terminated SLF. JJA waived its own fee interest in multiple cases to facilitate client protection and attorney substitution. SLF refused to do the same, as documented in correspondence. (*See Exhibit F*)[13].

31.     These facts support not only intervention but expedited consideration. The Court has inherent authority to manage its docket and to ensure the just and efficient administration of proceedings.[14]

32.     Moreover, under this Court's Civil Procedures, "[e]mergency motions or motions requiring expedited consideration" may be filed with appropriate factual justification.

---

[11] See Rothe Dev. Corp. v. U.S. Dep't of Def., 194 F. Supp. 2d 750, 755 (W.D. Tex. 2002) (granting expedited relief to prevent exclusion from meaningful participation).

[12] See Maples v. Thomas, 565 U.S. 266, 283–84 (2012) (holding that abandonment by counsel creates procedural harm beyond the client's control).

[13] See Exhibit F Email Correspondence re: Fee Waiver Refusal (Smith v. Southern Fidelity)

[14] See Chambers v. NASCO, Inc., 501 U.S. 32, 44 (1991); In re American Airlines, Inc., 972 F.2d 605, 611 (5th Cir. 1992) (recognizing fiduciary conflicts arising from co-counsel relationships).

*See* Civil Procedures § 2; § 3(E). This motion meets those criteria.

33.     To prevent further harm and safeguard client and party interests, JJA also requests that the Court, pursuant to 28 U.S.C. § 2041 and Federal Rule of Civil Procedure 67, direct that any disputed settlement proceeds governed by the SLF-JJA Joint Venture Agreement be deposited into the **registry of the Court** pending final resolution of this action.

## PROCEDURAL GAMESMANSHIP AND FORUM CONFLICT

34.     SLF's conduct demonstrates a clear pattern of procedural gamesmanship intended to delay, fragment, and obscure full adjudication of the parties' rights. 52.     On February 28, 2025, SLF filed a separate lawsuit against JJA in the 32nd Judicial District Court in Terrebonne Parish See. Sangisetty Law Firm, LLC v. Xpand Legal, LLC; Case No. 200581 (Terrebonne Parish, LA) The petition initially instructed the clerk to hold service. On March 28, 2025, counsel for JJA contacted SLF's attorney to advise of JJA's intention to file a Motion to Intervene in this action. On April 2, 2025—five days later—SLF instructed the clerk to effectuate service on JJA. JJA was ultimately served on April 16, 2025, five days after it filed its Motion to Intervene in this Court..

35.     At the same time, SLF filed a Motion to Dismiss in this action identifying JJA as an indispensable party under Rule 19 but failed to notify or serve JJA and offered no explanation for nonjoinder, as required by Rule 19(c). Moreover, SLF requested that this Court order that venue be moved to the Eastern District of Louisiana. There is no basis for venue in the EDLA.[15]

36.     Ravi Sangisetty previously clerked in the United States District Court for the Eastern District of Louisiana and maintains close political relationships in Terrebonne Parish, Louisiana. Notably, of the nearly 1,000 former MMA cases jointly handled by JJA and SLF, only two were venued in Terrebonne Parish—and both of those have already settled. SLF's decision to file its parallel lawsuit in that venue, while simultaneously opposing JJA's intervention in this federal

---

[15] See Exhibit D-SLF Petition against JJA in Terrebonne Parish (Feb. 28, 2025)

action, underscores the appearance of forum shopping and strategic gamesmanship. SLF is attempting to secure a favorable local forum despite the overwhelming jurisdictional and factual ties to Texas, where the relevant agreements were negotiated, executed, and performed.

37.     Courts have consistently rejected attempts to leverage fragmented litigation and service delays to secure tactical advantage or to sidestep coordinated adjudication.[16][17]

38.     While the jointly executed client contingency agreements reference venue in Louisiana, JJA's claims in this action arise from separate agreements between the law firms — governed by Texas law and performed almost entirely in Texas. Enforcing a Louisiana venue clause here would elevate form over substance and reward forum manipulation.[18] (*See Exhibit G*)[19] (*See Exhibit F*)

39.     SLF also misrepresented JJA's role in *Smith v. Southern Fidelity* (W.D. La. No. 1:22-cv-03751) by informing the court that JJA was receiving ECF notices and aware of scheduling deadlines — while simultaneously revoking JJA's access to the client file, litigation calendar, and related communications. SLF later admitted it had withheld these materials and then refused to waive its fee interest when JJA attempted to substitute Louisiana counsel.[20] (*See Exhibit I*)

40.     Furthermore, SLF's lack of diligence and disregard for court orders has been independently noted by other federal courts. In *Sanders v. LIGA, Case No. 3:23-cv-01174 (M.D. La.)*, the U.S. Magistrate Judge sanctioned SLF for failing to appear at a scheduled hearing, citing violation of Rule 16(f) of the Federal Rules of Civil Procedure. The Court found that SLF had miscalendared the hearing and ordered reimbursement of fees and travel expenses to the

---

[16] See In re Ameriquest Mortgage Co., 429 F.3d 794, 805 (7th Cir. 2005) ("A party cannot manipulate procedural rules to splinter related claims into multiple venues for strategic gain.");

[17] Chambers v. NASCO, Inc., 501 U.S. 32, 44 (1991) (federal courts may act to prevent abuse of process and preserve the orderly resolution of cases).

[18] See RedHawk Holdings Corp. v. Schreiber, 836 F. App'x 232, 236 (5th Cir. 2020);

[19] Kessler v. Nat'l Enters., Inc., 347 F.3d 1076, 1084 (8th Cir. 2003).

[20] See Exhibit I (SLF Notice of Intent to Withdraw in Smith); Exhibit F (Email Refusing to Waive Fees).

opposing party. See *Sanders v. LIGA,* No. 3:23-cv-01174, Doc. 26 (M.D. La. July 9, 2024)[21] (*See Exhibit J*)

41.     SLF is also pursuing a parallel action against Xpand Legal, LLC in Terrebonne Parish, Louisiana, seeking to recover fees arising from the same administrative services provided to clients jointly represented by JJA and SLF. In that lawsuit, SLF identifies JJA as a signatory to the operative contract and asserts that JJA is jointly liable for the same pool of fees over which MMA now asserts estate ownership. SLF nevertheless filed the case in a jurisdiction where none of the fee-holding parties are domiciled and subsequently moved for dismissal of a reconventional demand by Xpand on the basis that JJA was an indispensable party who had not been joined. *See* SLF v. Xpand Legal, LLC, No. 200581, 32nd JDC, Parish of Terrebonne [22] (*See Exhibit K*) [23] (*See Exhibit L*)

42.     This further underscores the fragmented, multi-venue litigation SLF is orchestrating over a unified estate asset — while simultaneously seeking to exclude JJA from participating in the only proceeding capable of resolving the dispute comprehensively.

43.     SLF's conduct across both jurisdictions underscores the necessity of JJA's participation in this proceeding and further supports not only intervention, but the Court's exercise of jurisdiction over the contractual and fiduciary disputes that continue to impair client representation and inter-firm responsibilities.

**CONCLUSION**

44.     For the reasons set forth above, Jason Joy & Associates, PLLC respectfully submits that it has satisfied the requirements for intervention under Federal Rule of Civil Procedure 24, and that leave to amend its original Complaint in Intervention is appropriate under Rule 15(a)(2).

---

[21] See Exhibit I (Sanders v. LIGA, No. 3:23-cv-01174, Doc. 26 (M.D. La. July 9, 2024)
[22] See Exhibit J - SLF Petition in SLF v. Xpand Legal (filed Aug. 14, 2024)
[23] See Exhibit K - Exception of Nonjoinder in SLF v. Xpand (filed Jan. 29, 2025)

45. SLF has placed JJA's financial, contractual, and ethical interests squarely at issue in this proceeding while simultaneously working to exclude JJA from litigation management, settlement coordination, and client communications. The issues presented cannot be fully and fairly adjudicated without JJA's participation.

46. This Court has both the authority and the responsibility to protect the rights of parties whose obligations arise from joint representation and fiduciary co-counsel agreements. Intervention, amendment, and expedited relief are necessary to prevent further harm to JJA and the jointly represented clients whose interests remain unresolved.

47. Moreover, SLF's related litigation against Xpand Legal in Terrebonne Parish demonstrates not only an effort to isolate and reframe this fee dispute, but also to prevent JJA from asserting claims that would otherwise be compulsory counterclaims under Louisiana law. SLF's refusal to join JJA while simultaneously labeling it indispensable creates procedural entrapment — further justifying intervention and consolidated adjudication before this Court.

### PRAYER FOR RELIEF

48. WHEREFORE, Jason Joy & Associates, PLLC ("JJA") respectfully requests that the Court:

   a. **Grant leave to intervene** in the above-captioned proceeding pursuant to Federal Rule of Civil Procedure 24 (a), or alternatively under Rule 24(b);

   b. Grant leave to file its Amended Complaint in Intervention, attached hereto as Exhibit 1A, pursuant to Federal Rule of Civil Procedure 15(a)(2);

   c. **Expedite consideration of this motion** and provide such further relief as the Court deems appropriate to prevent ongoing prejudice to JJA and its jointly represented clients;

   d. **Order, pursuant to 28 U.S.C. § 2041 and Rule 67 of the Federal Rules of Civil Procedure**, that any disputed attorney's fees or settlement proceeds governed by the SLF-JJA Joint Venture Agreement be deposited into the registry of the Court pending further order;

   e. And for such other and further relief to which JJA may be justly entitled.

Respectfully submitted April 19, 2025:

Respectfully submitted,

JASON JOY & ASSOCIATES, PLLC

_____

Jason J. Joy
*Texas Bar No. 24058932*
Colin G. Wood
Texas Bar No. *24082535*
909 Texas Street, Suite 1801
Houston, Texas 77002
T: (713) 221-6500
F: (713) 221-1717
E: jason@jasonjoylaw.com
E: colin@jasonjoylaw.com

Page 14 of 16

**Exhibit Index**

| Exhibit | Description |
|---------|-------------|
| **Exhibit A** | Supplemental and Amended Complaint |
| **Exhibit B** | Secondment Agreement between JJA and MMA |
| **Exhibit C** | October 2, 2023 Email from SLF confirming fee split |
| **Exhibit D** | February 12, 2025 Email from Ravi Sangisetty (Access Termination) |
| **Exhibit E** | SLF Petition against JJA in Terrebonne Parish |
| **Exhibit F** | Email re: Fee Waiver Refusal in *Smith v. Southern Fidelity* |
| **Exhibit G** | Notice of Intent to Withdraw in *Smith* |
| **Exhibit H** | March 11, 2025 Email from Tanner Magee |
| **Exhibit I** | Sanders v. LIGA (SLF Sanctions) |
| **Exhibit J** | Compare two Settlement States, one excluding JJA |
| **Exhibit K** | Petition in *SLF v. Xpand Legal* |
| **Exhibit L** | Exception of Nonjoinder in *SLF v. Xpand* |

**CERTIFICATE OF SERVICE**

I certify that a copy of the foregoing document has been served via ECF upon all counsel

of record and the Office of the United States Trustee on April 19, 2025, and via email as follows:

Miriam T. Goott
attorney-in-charge
W ALKER & P ATTERSON, P.C.
P.O. Box 61301
Houston, TX 77208
mgoott@walkerandpatterson.com

Leo D. Congeni (LA Bar #25626)
(attorney-in-charge)
650 Poydras Street, Suite 2750
New Orleans, Louisiana 70130
Telephone: 504-522-4848
Facsimile: 504-910-3055
Email: leo@congenilawfirm.com

Andrew Jimenez
U. S. Department of Justice
Office of the United States Trustee
515 Rusk Street, Suite 3516
Houston, TX 77002
713-718-4668
Fax:713-718-4670
Email: andrew.jimenez@usdoj.gov

_____
Jason J. Joy



**Miriam Goott <mgoott@walkerandpatterson.com>**

## MMA / Sangisetty / JJ Joy

**Jason Joy** <jason@jasonjoylaw.com>                                                                 Wed, Apr 16, 2025 at 10:53 PM
To: "\"jjp@walkerandpatterson.com\"" <jjp@walkerandpatterson.com>, Miriam Goott <mgoott@walkerandpatterson.com>
Cc: Jason Joy <jason@jasonjoylaw.com>, Colin Wood <Colin@jasonjoylaw.com>, Kathleen O'Connor
<Kathleen@jasonjoylaw.com>, Jennifer Shea <Jennifer@jasonjoylaw.com>, Kent Aguillard <kent@aguillardlaw.com>, Caleb
Aguillard <caleb@aguillardlaw.com>

Miriam & Johnny:

As you probably know, last week my firm filed a *Motion for Leave to Intervene of Right* in MMA's lawsuit against the Sangisetty Law
Firm (SLF). My law firm (JJJ) is clearly an indispensable party pursuant to FRCP 24(a), plus, I trust MMA agrees that we'd rather
have the various issues decided by a Texas court.

We are filing an Amended & Supplemental Motion tomorrow and will forward you a copy of the same.

Please advise if MMA intends to oppose JJJ's Motion to Intervene.

Additionally, I reviewed the MMA v. SLF pleadings for the first time last week and noticed a "malpractice retainer agreement" was
attached as an Exhibit 7 to MMA's Complaint, Rec Doc. 1-7, Adv. Case 24-03230. How did your office come into possession of this
confidential, privileged, attorney-client document?

- Note: that document is not even operative and was generated due to an internal misunderstanding(s) that has since been
  remedied.

Finally, I'd like to emphasize that it is my sincere desire to work amicably with MMA and its counsel to expeditiously resolve any and
all issues arising out of or relating to the matters now before the court(s).

Best regards,

Jason J. Joy, Esq.

Jason J. Joy & Associates, P.L.L.C.

909 Texas St., Suite 1801

Houston, Texas 77002

Office: 713-221-6500

Mobile: 337-654-2181

Fax: 713-221-1717

Jason@JasonJoyLaw.com

www.JasonJoyLaw.com

**CONFIDENTIAL**
**ATTORNEY - CLIENT PRIVILEGED**

**JOINT-PROSECUTION/ COMMON-INTEREST PRIVILEGE**

**DO NOT FORWARD WITHOUT PERMISSION.**

CONFIDENTIALITY NOTICE: This e-mail, and any attachments hereto, is confidential, covered by, inter alia, the Electronic Communications Privacy Act, 18 U.S.C. §§ 2510-2521,and is intended only for the use of the individual or entity to which it is addressed and may contain information that is privileged, confidential and exempt from disclosure under applicable law. If the reader of this message is not the intended recipient, or the employee or agent responsible for delivering the message to the intended recipient, you are hereby notified that any use, dissemination, distribution or copying of this communication is strictly prohibited. If you have received this communication in error, please reply to the sender immediately stating as much, and then delete it.