United States Bankruptcy Court
Southern District of Texas

**ENTERED**
August 12, 2025
Nathan Ochsner, Clerk

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| IN RE: | § | |
| | § | **CASE NO: 24-31596** |
| MMA LAW FIRM, PLLC, | § | |
| | § | **CHAPTER 11** |
| Debtor. | § | |
| | § | |
| MMA LAW FIRM, PLLC, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| VS. | § | **ADVERSARY NO. 24-3127** |
| | § | |
| MORRIS BART, LLC, | § | |
| | § | |
| Defendant. | § | |

<u>**MEMORANDUM OPINION**</u>

Morris Bart, LLC ("*Morris Bart*") seeks entry of summary judgment against MMA Law Firm, PLLC ("*MMA*") asserting certain contingency fee contracts procured for MMA by Tort Network, LLC d/b/a Velawcity ("*Velawcity*") are absolute nullities and because those contracts are absolute nullities, MMA is not entitled to recover fees or costs arising from work allegedly performed under those contracts and in any event, MMA would never be entitled to any portion of a contingency fee or costs from its clients because MMA waived its right to fees and costs in certain cases.

At the request of MMA, the Court conducted a hearing on Monday, July 7, 2025. At the conclusion of the hearing, the Court took the matter under advisement. The Court now issues the instant Memorandum Opinion and accompanying Order determining that Morris Bart seeks summary judgment based on legal theories that turn on material factual disputes regarding how MMA acquired clients, what legal work was performed, whether the clients benefited, how fees

EXHIBIT 3

should be apportioned under *Saucier v. Hayes Dairy Prods., Inc.*, 373 So. 2d 102 (La. 1979)*, and whether MMA waived its right to fees. These are precisely the types of material factual disputes that require discovery and trial, not summary disposition. Accordingly, the Court denies Morris Bart's request for summary judgement with prejudice.

## I.    JURISDICTION, VENUE & CONSTITUTIONAL AUTHORITY

This Court holds jurisdiction pursuant to 28 U.S.C. § 1334, which provides "the district courts shall have original and exclusive jurisdiction of all cases under title 11." Section 157 allows a district court to "refer" all bankruptcy and related cases to the bankruptcy court, wherein the latter court will appropriately preside over the matter.[1] This Court determines that pursuant to 28 U.S.C. § 157(b)(2)(A), and (O), the instant motion contains primarily core matters as it concerns the administration and assets of the bankruptcy estate. This Court also has authority to hear this instant pre-trial matter pursuant to an order entered on May 20, 2025, by Honorable Judge Andrew Hanen of the United States District Court.[2]

Furthermore, this Court may only hear a case in which venue is proper.[3]  Pursuant to 28 U.S.C. § 1409(a), "a proceeding arising under title 11 or arising in or related to a case under title 11 may be commenced in the district court in which such case is pending." MMA's main bankruptcy case is pending in this Court.[4] Therefore, venue is proper. The pending dispute is a core proceeding under 28 U.S.C. § 157(b)(2)(A) and (O).[5] Entering an interlocutory order does

---

[1] 28 U.S.C. § 157(a); *see also In re Order of Reference to Bankruptcy Judges*, Gen. Order 2012-6 (S.D. Tex. May 24, 2012).

[2] ECF No. 86; *Schott, Tr. for Est. of InforMD, LLC v. Massengale*, 618 B.R. 444, 452 (M.D. La. 2020) ("[W]hether or not a right to a jury trial exists, '[t]he district court has the option, at that point, of withdrawing the entire matter, or withdrawing only the trial portion, leaving pre-trial and discovery matters to be handled by the bankruptcy judge.'").

[3] 28 U.S.C. § 1408.

[4] "Bankr. ECF" refers to docket entries made in the Debtor's bankruptcy case, No. 24-31596.  Entries made in MMA's Case number 24-3127 shall take the format of "ECF No. __."  Bankr. ECF No. 1.

[5] ECF No. 1.

EXHIBIT 3

not implicate "the constitutional limitations on the Court's authority to enter final judgments."[6]

Therefore, this Court need not determine whether it has constitutional authority to enter a final

order because an interlocutory order is all that is required by the instant motion for summary

judgment.

## II.  BACKGROUND

1.  MMA is a Texas-based litigation firm that previously represented thousands of clients (the "*Former Clients*") in property damage claims arising from hurricanes in Texas and Louisiana.[7]

2.  In 2022, MMA retained Velawcity to assist with marketing and administrative services for prospective storm damage claims in Louisiana.[8]

3.  Morris Bart assumed representation of the Former Clients following media reports of judicial scrutiny into MMA's Louisiana filings.[9]

4.  On May 1, 2023, Morris Bart filed a Complaint in the U.S. District Court for the Eastern District of Louisiana, styled as Civil Action No. 23-1453 *Morris Bart vs. McClenney Mosley and Associates, PLLC*, asserting among other things (1) claims for unauthorized practice of law and (2) a request for declaratory judgment that certain of MMA's contracts with its Former Clients allegedly obtained via Velawcity, were "absolute nullities" under Louisiana law (the *"Louisiana Lawsuit"*).[10]

5.  On April 9, 2024, (the "*Petition Date*") MMA filed for bankruptcy protection under chapter 11 of the Bankruptcy Code[11] initiating the bankruptcy case.[12]

6.  On June 24, 2024, MMA filed its original complaint, initiating this instant adversary proceeding.[13]

7.  On July 29, 2024, MMA filed its amended complaint (the "*Complaint*").[14]

---

[6] *West v. WRH Energy Partners LLC* (*In re Noram Res., Inc.*), 2011 WL 6936361, at *1, 2011 Bankr. LEXIS 5183, at *3 (Bankr. S.D. Tex. Dec. 30, 2011).
[7] ECF No. 94-1.
[8] ECF No. 94-14–16.
[9] ECF No. 94-17 at 25.
[10] ECF No. 94-17.
[11] Any reference to "Code" or "Bankruptcy Code" is a reference to the United States Bankruptcy Code, 11 U.S.C., or any section (i.e.§) thereof refers to the corresponding section in 11 U.S.C.
[12] Bankr. ECF No. 1.
[13] ECF No. 1.
[14] ECF No. 42.

EXHIBIT 3

8. On December 12, 2024, the United States District Court, Judge Andrew S. Hanen presiding, withdrew the reference to the Bankruptcy Court.[15]

9. On May 20, 2025, Judge Hanen issued an order transferring all pre-trial matters to this Court.[16]

10. On May 21, 2025, Morris Bart filed the instant motion for summary judgment ("*Motion for Summary Judgment*").[17]

11. On June 11, 2025, MMA filed its response to the Motion for Summary Judgment (the "*Response*").[18]

12. On June 13, 2025, the Unsecured Creditors Committee ("*UCC*") filed "The UCC's Amicus Brief On Morris Bart's Summary-Judgment Motion" (the "*UCC Brief*").[19]

13. On June 17, 2025, the Court entered an order directing the parties to refile the Motion for Summary Judgement and related pleadings in this Court.[20]

14. On June 18, 2025, Morris Bart filed "Morris Bart, L.L.C.'S Reply To MMA's Response To Morris Bart's Motion For Summary Judgment"[21]

15. On June 18, 2025, Morris Bart, LLC filed "Morris Bart, L.L.C.'S Reply To The UCC's Amicus Brief On Morris Bart's Motion For Summary Judgment."[22]

16. On Monday, July 14, 2025 the Court held a hearing and now issues its instant Memorandum Opinion and Order.

## III.  RULE 56 STANDARD

Federal Rule of Civil Procedure ("*Rule*") 56 permits a party to move for summary judgment, "identifying each claim or defense—or the part of each claim or defense—on which summary judgment is sought."[23] Federal Rule of Bankruptcy Procedure ("*Bankruptcy Rule*") 7056

---

[15] Case 4:24-cv-04446, ECF No. 5.
[16] Case 4:24-cv-04446, ECF No. 21.
[17] ECF No. 96.
[18] ECF No. 94.
[19] ECF No. 99.
[20] ECF No. 92.
[21] ECF No. 97.
[22] ECF No. 98.
[23] FED. R. CIV. P. 56(a) (emphasis added).

EXHIBIT 3

incorporates Rule 56 in adversary proceedings. Rule 56 states that the Court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[24] Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."[25] Courts employing this standard of review must determine "not merely whether there is a sufficient factual dispute to permit the case to go forward, but whether a rational trier of fact could find for the nonmoving party based upon evidence before the court."[26] To prevail on summary judgment, the moving party has the burden of showing the absence of a genuine issue of material fact and the appropriateness of judgment as a matter of law.[27] A material fact is one "that might affect the outcome of the suit under the governing law."[28] A factual dispute is genuine if the evidence is such that a reasonable jury could return a verdict for the non-moving parties.[29]

Rule 56 creates a shifting burden. Once a properly supported motion for summary judgment is presented, "the nonmoving party must rebut with 'significant probative' evidence."[30] If the record, taken as a whole, could not lead a rational trier of fact to find for the non-moving party, then there is no genuine issue for trial.[31] When there is no genuine issue for trial, the Court should grant summary judgment.[32] In determining whether summary judgment is appropriate, a

---

[24] *Id.*
[25] FED. R. CIV. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986).
[26] *James v. Sadler*, 909 F.2d 834, 837 (5th Cir. 1990) (citing *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986)).
[27] *Union Planters Nat. Leasing v. Woods*, 687 F.2d 117 (5th Cir. 1982).
[28] *Smith v. Brenoettsy*, 158 F.3d 908, 911 (5th Cir.1998).
[29] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986).
[30] *Ferguson v. Nat. Broadcasting Co., Inc.*, 584 F.2d 111, 114 (5th Cir. 1978) (citations omitted).
[31] *LeMaire v. Louisiana*, 480 F.3d 383, 390 (5th Cir. 2007).
[32] *Id.*

EXHIBIT 3

court is not to weigh evidence, assess its probative value, or resolve factual disputes,[33] but the facts must be reviewed with all "justifiable inferences" drawn in non-movants' favor.[34] Nevertheless, factual controversies will be resolved in non-movants' favor "only when there is an actual controversy—that is, when both parties have submitted evidence of contradictory facts."[35] If, however, the record could not lead a rational trier of fact to find for a non-movant, summary judgment is appropriate.[36] While the Court may consider other materials in the record, it need only consider those actually cited.[37] Where the facts are undisputed and only questions of law exist, a court must apply the appropriate law to the facts to determine whether the moving party is entitled to judgment as a matter of law.[38]

## IV.    ANALYSIS

### A.  MMA's Complaint

In its Complaint, MMA alleges it initiated claims on behalf of its Former Clients ("*Former Cases*") pursuant to contingency fee agreements ("*Fee Agreements*") which entitled MMA to a contingency fee, interest and reimbursement of expenses from the proceeds of any recovery in the Former Cases ("*Fees and Costs*").[39] Morris Bart allegedly settled and earned favorable outcomes in some of the Former Cases (the "*MB/MMA Clients*" or "*MB/MMA Cases*") retaining the full amount of the Fees and Costs.[40] Finally, Morris Bart, with notice of this bankruptcy filing, allegedly filed motions in the MB/MMA Cases to exclude MMA from settlement disbursements

---

[33] *Williams v. Time Warner Operation, Inc.*, 98 F.3d 179, 181 (5th Cir. 1996).
[34] *Morris v. Covan World Wide Moving, Inc.*, 144 F.3d 377, 380 (5th Cir.1998).
[35] *Laughlin v. Olszewski*, 102 F.3d 190, 193 (5th Cir.1996).
[36] *Matsushita Elec. Indus. Co.*, 475 U.S. at 587 (1986).
[37] *Id.* (citing FED. R. CIV. P. 56(c)(3)).
[38] *Sheline v. Dun & Bradstreet Corp.*, 948 F.2d 174, 176 (5th Cir. 1991) ("Summary judgment is appropriate where only issue before court is pure question of law."); *see Barnes v. Allstate Ins. Co.*, 2014 U.S. Dist. LEXIS 51218, 2014 WL 1457696, at *1 (E.D. La. Apr. 14, 2014) ("Because the facts are undisputed and this motion presents only a question of law, resolution on summary judgment is appropriate.").
[39] ECF No. 42 at 2–3.
[40] ECF No. 42 at 9–10.

EXHIBIT 3

(the "*Motions to Exclude*").[41] MMA estimates at least 1,524 MB/MMA Cases in which it asserts an interest in Fees and Costs.[42]

In summary, MMA asserts three causes of action, to wit: (1) damages for Morris Bart's willful violations of the automatic stay under 11 U.S.C. § 362 by continuing to pursue Motions to Exclude ("*Stay Violation Action*"); (2) a declaratory judgment that MMA holds a legal interest in the Fees and Costs collected by Morris Bart under Louisiana's *Saucier* factors, which require apportionment of contingency fees when multiple attorneys represent the same client ("*Declaratory Judgment Action*"); and (3) turnover of a portion of Fees and Costs held or received by Morris Bart pursuant to § 542 ("*Turnover Action*").[43]

### B. Introduction to Morris Bart's Motion for Summary Judgment

Morris Bart does not specifically address the Stay Violation Action or the Turnover Action.[44] Instead, Morris Bart focuses on MMA's Declaratory Judgment Action.[45] Specifically, in its Motion for Summary Judgment, Morris Bart asserts that MMA has no interest in the Fees and Costs and therefore, Morris Bart is entitled to judgment as a matter of law on each of MMA's claims.[46]

Before the Court can consider the arguments raised by Morris Bart, the Court will first address the evidentiary objections made by MMA and Morris Bart. MMA raises five (5) classes of objections to Morris Bart's Summary Judgement evidence, to wit: (1) incomplete or partial documents; (2) unauthenticated and hearsay documents; (3) inadmissible court orders and opinions; (4) improper expert opinion and legal conclusions; and (5) miscellaneous evidentiary

---

[41] ECF No. 42 at 6.
[42] ECF No. 42 at 4.
[43] ECF No. 42.
[44] ECF No. 96.
[45] ECF No. 96.
[46] ECF No. 96 at 25.

EXHIBIT 3

deficiencies.[47] Morris Bart also brings objections to MMA's evidence attached to its Response.[48] Finally, Morris Bart objects to the UCC Brief and requests the Court to strike it.[49] The Court will consider each objection in turn.

### C. MMA's objections to summary judgement evidence

Pursuant to Rule 56(c)(2), a party may object that material cited in support of a motion for summary judgment "cannot be presented in a form that would be admissible in evidence."[50] While the proponent of summary judgment evidence need not submit materials in admissible form at the summary judgment stage, they must demonstrate that the materials can ultimately be presented in admissible form at trial.[51] Thus, "a precondition for considering evidence in an improper form ... [is] that 'the party submitting the evidence [must] show that it will be possible to put the information ... into an admissible form.'"[52] The Court will now consider each of MMA's objections.

### 1. Incomplete or Partial Documents

MMA objects to certain exhibits submitted by Morris Bart on the grounds that they contain incomplete documents, rendering the exhibits misleading, and constitute inadmissible hearsay.[53] MMA makes the following objections:[54]

a. Exhibit 96-1 (Partial deposition of Zach Moseley/MMA) – Incomplete; necessary information for context and fairness omitted; inclusion of remaining portions are necessary to ensure fair and complete representation of testimony; standing objections to specific questions and answers are re-urged.

---

[47] ECF No. 94 at 26–29.

[48] ECF No. 97 at 8–11.

[49] ECF No. 98.

[50] FED. R. CIV. P. 56(c)(2).

[51] See FED. R. BANKR. P. 7056; *Balboa Cap. Corp. v. Okoji Home Visits MHT, L.L.C.*, 111 F.4th 536, 546–47 (5th Cir. 2024).

[52] *Id.* citing *Campos v. Steves & Sons, Inc.*, 10 F.4th 515, 521–22 (5th Cir. 2021) (second brackets and ellipses in original) (quoting *Lee*, 859 F.3d at 355).

[53] ECF No. 94 at 26–27.

[54] ECF No. 94 at 26–27.

EXHIBIT 3

b. Exhibit 96-7 (Partial Deposition of Tighe Wilhelmy/Velawcity) – Incomplete transcript; Omitted portions are necessary for context and fairness; Transcript is and contains inadmissible hearsay; specific objections are re-urged.

c. Exhibits 96-16, 96-28, 96-30 (Hearing Transcripts from District Court Hearings in Louisiana) – Incomplete transcript; omitted portions are necessary to ensure fair representation of testimony; contains inadmissible hearsay under *Fowler v. Smith*.[55]

There is no requirement that a deposition or hearing transcripts be submitted in its complete form in order to be admitted as evidence for summary judgement.[56] MMA does not point to any specific portion of the transcripts in Exhibits 96-1,7, 16, 28 or 30 that would need to be included for fairness.[57] Nor does MMA point to specific testimony that allegedly constitutes inadmissible hearsay, preventing this Court from making a ruling on the objection.[58] Therefore:

i. The objection to Exhibit 96-1 is OVERRULED, Exhibit 96-1 is ADMITTED.
ii. The objection to Exhibit 96-7 is OVERRULED, Exhibit 96-7 is ADMITTED.
iii. The objection to Exhibit 96-16 is OVERRULED, Exhibit 96-16 is ADMITTED.
iv. The objection to Exhibit 96-28 is OVERRULED, Exhibit 96-28 is ADMITTED.
v. The objection to Exhibit 96-30 is OVERRULED, Exhibit 96-30 is ADMITTED.

## 2. Unauthenticated and Hearsay Documents

MMA asserts that Morris Bart includes numerous exhibits that are unauthenticated or comprise inadmissible hearsay.[59] These include the following emails, forms, attachments, and documents allegedly produced without supporting declarations or custodial affidavits:

a. Exhibits 96-2 (last page) 96-5, 96-10, 96-14, 96-15, 96-17, 96-26, 96-27 – Unauthenticated and inadmissible hearsay.

---

[55] 68 F.3d 124, 126 (5th Cir. 1995) ("Evidence on summary judgment may be considered to the extent not based on hearsay or other information excludable at trial, and a hearing transcript, as well as all other evidence must be reviewed to exclude hearsay.").

[56] *Alexander v. CareSource*, 576 F.3d 551, 560 (6th Cir. 2009) ("Excerpts of depositions are allowed – and many times preferred by the district court – if they are properly authenticated."); *Jordan v. Helix Energy Sols. Grp., Inc.*, 346 F. Supp. 3d 890, 896 (S.D. Tex. 2018) ("The movant must inform the court of the basis for summary judgment and identify relevant excerpts from pleadings, depositions, answers to interrogatories, admissions, or affidavits that demonstrate there are no genuine fact issues.").

[57] ECF No. 94 at 27.

[58] *United States v. Valdez*, 861 F.2d 427, 432 (5th Cir. 1988) (holding that "[w]ithout identifying any statement by a particular declarant" a hearsay objection was too vague party to permit the court to address them).

[59] ECF No. 94 at 27.

EXHIBIT 3

b. Exhibit 96-8 (Audio Exhibit) – Not served or made available to MMA, precluding any opportunity for inspection, authentication, or response.

With respect to MMA's hearsay objections, MMA asserts that certain exhibits contain hearsay but fails to specifically identify which exhibits are at issue, let alone pinpoint the particular statements that are allegedly hearsay.[60] This Court will not comb through the numerous exhibits submitted by Morris Bart to determine which statements should be struck based on MMA's generalized objections of hearsay.[61]

Regarding the issue of authentication, Federal Rule of Evidence 901(a) provides that "[t]o satisfy the requirement of authenticating or identifying an item of evidence, the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is."[62] Federal Rule of Evidence 901 outlines various methods sufficient to authenticate evidence, and does not preclude authentication by affidavit or deposition.[63] Morris Bart asserts that it has met its burden of showing that the exhibits are capable of being authenticated at trial because "in the case of each such exhibit, Morris Bart cited deposition testimony by a witness authenticating the documents with its citation to the exhibit."[64] Given that the bar for authentication is very low[65] and that Morris Bart has offered deposition testimony from parties that would be able to authenticate such exhibits at trial, the Court finds that Exhibits 96-2, 5, 10, 14, 15, 17, 26 and 27 are capable of being authenticated at trial.[66]

---

[60] ECF No. 94 at 27.

[61] *In re Carmona*, 580 B.R. 690, 703 (Bankr. S.D. Tex. 2018); *United States v. Quintanilla*, 114 F.4th 453, 473 (5th Cir. 2024).

[62] FED. R. EVID. 901.

[63] FED.R.EVID. 901(b); *United States v. Jackson*, 625 F.3d 875, 881 (5th Cir. 2010) ("Rule 901 does not limit the type of evidence allowed to authenticate a document. It merely requires some evidence which is sufficient to support a finding that the evidence in question is what its proponent claims it to be."); *Keller v. Coastal Bend Coll*., 629 F. App'x 596, 600 (5th Cir. 2015).

[64] ECF No. 96 at 9.

[65] *United States v. Ceballos*, 789 F.3d 607, 618 (5th Cir. 2015) ("[W]e have recognized that '[t]he standard for authentication is not a burdensome one,' and we have characterized the proponent's burden as 'low.'").

[66] *See FTC v. Hughes*, 710 F. Supp. 1520, 1522 (N.D. Tex. 1989) (finding that deposition testimony in identifying documents was a factor in establishing authentication of documents).

EXHIBIT 3

As to Exhibit 96-8, MMA's inability to review the audio exhibit prejudices its right to object to evidence because in the absence of a timely objection or motion to strike, defects in summary judgment evidence ordinarily are waived.[67]

Therefore, the Court makes the following evidentiary rulings:

i. The objection to Exhibit 96-2 is OVERRULED. Exhibit 96-2 is ADMITTED.
ii. The objection to Exhibit 96-5 is OVERRULED. Exhibit 96-5 is ADMITTED.
iii. The objection to Exhibit 96-10 is OVERRULED. Exhibit 96-10 is ADMITTED.
iv. The objection to Exhibit 96-14 is OVERRULED. Exhibit 96-14 is ADMITTED.
v. The objection to Exhibit 96-15 is OVERRULED. Exhibit 96-15 is ADMITTED.
vi. The objection to Exhibit 96-17 is OVERRULED. Exhibit 96-17 is ADMITTED.
vii. The objection to Exhibit 96-26 is OVERRULED. Exhibit 96-26 is ADMITTED.
viii. The objection to Exhibit 96-27 is OVERRULED. Exhibit 96-27 is ADMITTED.
ix. The objection to Exhibit 96-8 is SUSTAINED. Exhibit 96-8 is NOT ADMITTED.

### 3. Inadmissible Court Orders and Opinions[68]

MMA asserts that Morris Bart attached numerous orders and findings from unrelated court proceedings that are not competent summary judgment evidence and objects to them as follows:

a. Exhibits 96-20, 96-29, 96-31, 96-33, 96-35, 96-45, 96-46 – Include orders or findings from other courts that are inadmissible hearsay and are not judicially noticeable for the truth of the facts asserted therein.

As an initial matter, Exhibit 96-35 is not a court order, and it is in fact a pleading filed by MMA in another court. The Court will thus review the objection to Exhibit 96-35 in MMA's miscellaneous objections *infra.*[69] Morris Bart asserts that most of the orders or rulings from other court proceedings were submitted not for purposes of showing factual findings but instead to show what a court ordered.[70] For example, Morris Bart asserts that it submitted Exhibit 96-20 to show that a court ordered MMA to submit copies of its contracts with its Former Clients and Exhibit 96-

---

[67] *Donaghey v. Ocean Drilling & Expl. Co.*, 974 F.2d 646, 650 (5th Cir. 1992)
[68] ECF No. 94 at 27-28.
[69] *See infra* Section IV.C.5.
[70] ECF No. 97 at 9.

EXHIBIT 3

29 to show that a court suspended MMA and its lawyers from practice.[71] To the extent that any exhibits contain findings of facts from other courts, Morris Bart asserts that it is not asking the Court to take judicial notice of those facts.[72]

Pursuant to Federal Rule of Evidence 201, a court may take judicial notice of "a fact that is not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Courts routinely rely on Federal Rule of Evidence 201 to take judicial notice of the existence of documents filed in another court, but a court cannot take notice of the findings of fact or conclusions of law contained in such documents.[73] The presence of hearsay or non-judicially noticeable facts in a document filed in another court does not prevent this Court from taking judicial notice of the document's existence.[74] Moreover, MMA does not identify any specific findings or conclusions in the court orders or pleadings it challenges that Morris Bart is allegedly improperly relying on.[75] Thus, the Court will take judicial notice of the existence of the documents in Exhibits 96-20, 31, 33, 45, and 46 pursuant to Federal Rule of Evidence 201.

Accordingly, the Court makes the following evidentiary rulings:

i. The objection to Exhibit 96-20 is OVERRULED. The Court takes judicial notice of the existence of the document in Exhibit 96-20.
ii. The objection to Exhibit 96-29 is OVERRULED. The Court takes judicial notice of the existence of the document in Exhibit 96-29.
iii. The objection to Exhibit 96-31 is OVERRULED. The Court takes judicial notice of the existence of the document in Exhibit 96-31.
iv. The objection to Exhibit 96-33 is OVERRULED. The Court takes judicial notice of the existence of the document in Exhibit 96-33.

---

[71] ECF No. 96 at 10, 12,
[72] ECF No. 97 at 9.
[73] *See e.g., Ferguson v. Extraco Mortg. Co.*, 264 F. App'x 351, 352 (5th Cir. 2007); *Murphy v. HSBC Bank USA*, No. H-12-3278, 2014 U.S. Dist. LEXIS 57612, at *27 n.21 (S.D. Tex. Apr. 23, 2014).
[74] *See id.*
[75] *See United States v. Valdez*, 861 F.2d 427, 432 (5th Cir. 1988).

EXHIBIT 3

      v.      The objection to Exhibit 96-45 is OVERRULED. The Court takes judicial notice of the existence of the document in Exhibit 96-45.

     vi.     The objection to Exhibit 96-46 is OVERRULED. The Court takes judicial notice of the existence of the document in Exhibit 96-46.

## 4. Improper Expert Opinion and Legal Conclusions

MMA asserts that Morris Bart has also submitted an expert report that impermissibly ventures into legal conclusions, and argues as follows:[76]

    a.  Exhibit 96-41 (Expert Opinion of Charles Plattsmier) – To the extent the expert purports to offer legal conclusions or opine on ultimate legal issues, the testimony is inadmissible and must be disregarded.

Morris Bart asserts that Charles Plattsmier does not opine on whether MMA's contingencies fees are nullities but instead opines on the standard of care that was required by MMA.[77] "An opinion is not objectionable just because it embraces an ultimate issue."[78] Only testimony that amounts to a legal conclusion is improper.[79] "In evaluating challenged testimony, the court must distinguish between an *impermissible opinion on an ultimate legal issue* and a *mere explanation* of the witness's analysis of facts which would tend to support a jury finding on the ultimate issue."[80] "[T]he line between an impermissible legal conclusion and explanation of a witness's analysis of facts is somewhat blurry."[81]

After a careful review, the Court finds that Exhibit 96-41 offers impermissible legal conclusions. Specifically, Morris Bart asserts that MMA's alleged facilitation of unauthorized practice of law and improper client solicitation precludes MMA from recovery any fees that it

---

[76] ECF No. 94 at 28.
[77] ECF No. 97 at 10.
[78] FED. R. EVID. 704.
[79] *Goodman v. Harris Cnty.*, 571 F.3d 388, 399 (5th Cir. 2009) ("An expert may never render conclusions of law."); *United States v. Williams*, 343 F.3d 423, 435 (5th Cir. 2003).
[80] *United States v. Keys*, 747 F. App'x 198, 207 (5th Cir. 2018) (emphasis added); *United States v. Buchanan*, 70 F.3d 818, 833 n.20 (5th Cir. 1995); *United States v. Speer*, 30 F.3d 605, 610 (5th Cir. 1994).
[81] *Keys*, 747 F. App'x at 209.

EXHIBIT 3

would otherwise be entitled to.[82] Charles Plattsmier opines that MMA violated Louisiana public policy by working with Velawcity to solicit clients and facilitated the unauthorized practice of law.[83] For example, Exhibit 96-41 provides that "[i]t is my opinion that the MMA lawyers failed to properly supervise non-lawyer staff and Velawcity personnel and facilitated the unauthorized practice of law."[84] Accordingly:

    i.      The objection to Exhibit 96-41 is SUSTAINED. Exhibit 96-41 is NOT ADMITTED.

## 5. Miscellaneous Evidentiary Deficiencies[85]

MMA asserts that in addition to the evidentiary issues detailed above, several other exhibits attached to Morris Bart's Motion for Summary Judgment suffer from foundational, authenticity, or relevance defects that render them inadmissible at the summary judgment stage as follows:

a. Exhibit 96-42 (Client List for Cost Accounting) – Lacks authentication and is not supported by a declaration or foundation to establish relevance or admissibility.

b. Exhibits 96-37 through 96-39 – Consist of motions and responses that are inadmissible hearsay, not properly authenticated, and irrelevant to the legal issues before this Court.

c. Exhibit 96-35 – Include orders or findings from other courts that are inadmissible hearsay and are not judicially noticeable for the truth of the facts asserted therein.

Morris Bart asserts that Exhibit 96-42, which is an email from an MMA employee containing a client list, contains characteristics that make it self-authenticating.[86] "The appearance, contents, substance, internal patterns, or other distinctive characteristics of the item, taken together with all the circumstances" can satisfy the authentication requirements under Federal Rule of

---

[82] ECF No. 96.

[83] ECF No. 94-41 at 6.

[84] ECF No. 94-41 at 9; *La. State Bar Asso. v. Edwins*, 329 So. 2d 437, 441 (La. 1976) ("[I]t is the responsibility of this court, not of the commissioner, to conclude whether, as a matter of law, such facts constitute the unethical conduct charged, as well as for it to assess what penalty it deems appropriate if it finds disciplinary proceedings are warranted.").

[85] ECF No. 94 at 28-29.

[86] ECF No. 97 at 10.

EXHIBIT 3

Evidence 901.[87] MMA has produced exhibits containing time lines of activity in the MB/MMA Cases, which include records of email communications between MMA employees and MB/MMA Clients.[88] These email records indicate that the address domain of "mma-pllc.com" belongs to MMA.[89] The Court finds that Exhibit 96-42 is capable of being admitted at trial because it is a purported email sent from the address domain of "mma-pllc.com" and shows that the email was sent from an MMA employee to Morris Bart employees.[90] The Court also finds that such email is relevant as it contains a list of case expenses and MMA's claim to recover Fees and Costs may include expenses from those cases.[91]

Exhibits 96-35 and 96-37 through 96-39 are pleadings filed by MMA in other courts. Morris Bart relies on these exhibits to support its argument that MMA did not provide sufficient notice to Morris Bart that it intended to assert Fees and Costs and thus waived any rights to them.[92] As such, the Court finds they are relevant. Federal Rule of Evidence 801(d)(2) excludes from the definition of hearsay a statement that is offered against an opposing party and "was made by a person whom the party authorized to make a statement on the subject."[93] The representations made in the pleadings in Exhibits 96-35 and 96-37 through 96-39 are being offered by Morris Bart against MMA. The Court finds that Morris Bart would be able to show at trial that the representations made in the pleadings in Exhibits 96-35 and 96-37 through 96-39 were made by MMA's former counsel on behalf of MMA and was authorized to do so since Zachary Moseley ("*Mr. Moseley*")

---

[87] FED. R. EVID. 901(b)(4).

[88] ECF Nos. 101-2–11.

[89] *See e.g.,* ECF No. 101-2 at 1 ("This is your attorney's office McClenny, Moseley & Associates. We are trying to contact you. Please give us a call back at 504-224-9082, you can also text back here, or email us at clients@mma-pllc.com.").

[90] *Progressive Waste Sols. of La, Inc. v. St. Bernard Par. Gov't*, No. CV 16-15830, 2017 WL 6501597, at *3 (E.D. La. Dec. 19, 2017)) (Finding that the "sending email address and context and content of" an email message can be used to authenticate the message).

[91] *See* ECF No. 42.

[92] ECF No. 96 at 13, 25.

[93] Fed. R. Evid. 801(d)(2)(C).

EXHIBIT 3

is the managing member of MMA and was a representative of MMA when the pleadings in Exhibits 96-37 through 96-39 were filed.[94] As such, Exhibits 96-35 and 96-37 through 96-39 are cable of authentication and admission.[95] Thus:

i. The objection to Exhibit 96-42 is OVERRULED. Exhibit 96-42 is ADMITTED.
ii. The objection to Exhibit 96-35 is OVERRULED. Exhibit 96-35 is ADMITTED.
iii. The objection to Exhibit 96-37 is OVERRULED. Exhibit 96-37 is ADMITTED.
iv. The objection to Exhibit 96-38 is OVERRULED. Exhibit 96-38 is ADMITTED.
v. The objection to Exhibit 96-39 is OVERRULED. Exhibit 96-39 is ADMITTED.

### D. Morris Barts's objection to MMA's Response and exhibits

First, Morris Bart points out that MMA's Response lacks a table of contents and authorities and thus "violates the district judge's Local Civil Procedures regarding specific references to evidence by page and line (or paragraph) citations."[96] Morris Bart does not cite to any particular rule that is allegedly violated nor to any authority to show that such alleged failure requires the Court to disregard or strike the Response.[97] As such, the Court will consider the Response by MMA.[98]

Morris Bart objects to the admissibility of Exhibits 94-2 through 94-13 on the grounds that they are authenticated by Exhibit 94-1 which is itself unauthenticated.[99] Morris Bart asserts that Mr. Moseley's declaration at Exhibit 94-1 cannot be admitted because it does not contain a date, as required by 28 U.S.C. § 1746.[100] The Court rejects this argument because although the lack of

---

[94] *See* ECF No. 94-1 at 1; FED. R. EVID. 901(b)(1).

[95] *Hardy v. Johns-Manville Sales Corp.*, 851 F.2d 742, 746 (5th Cir. 1988) ("[T]here is a well-established rule that factual allegations in the trial court pleadings of a party in one case may be admissible in a different case as evidentiary admissions of that party."); *Collins v. Benton*, 571 F. Supp. 3d 498, 511 (E.D. La. 2021); *Universal Am. Barge Corp. v. J-Chem, Inc.,* 946 F.2d 1131, 1142 (5th Cir. 1991) ("The admissions of Universal's counsel['s statements] in the arbitration may be admissible in the district court over hearsay objection, as statements of a party opponent.").

[96] ECF No. 97 at 11.

[97] ECF No. 97 at 11.

[98] *See United States v. Rios-Espinoza,* 591 F.3d 758, 761 (5th Cir. 2009) (holding that while a filing may be noncompliant with local rules, such noncompliance does not automatically require the court to strike the document).

[99] ECF No. 97 at 11.

[100] ECF No. 97 at 5.

EXHIBIT 3

a date means that it does not strictly comply with 28 U.S.C. § 1746, it does not mean that the testimony cannot be presented in an admissible form at trial.[101] In this case, the declaration at Exhibit 94-1 can be admissible through live testimony from Mr. Moseley.

Morris Bart next argues that Exhibit 94-1 is inadmissible because Mr. Moseley does not explain how he has personal knowledge of the representations made in the declaration, including knowledge of Velawcity employees' actions.[102] Rule 56(c)(4) requires that a declaration supporting or opposing summary judgment "be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated."[103] While a declaration may state that it is based on personal knowledge, there is no requirement that the declarant affirmatively explain the basis for that knowledge.[104] A declarant's personal knowledge may be inferred when the subject matter of the declaration falls within the declarant's "sphere of responsibility."[105] Mr. Moseley's declaration states that he is the managing member of MMA and that he has "personal knowledge of the facts stated [in the declaration], or [has] acquired such knowledge through a review of MMA's books, records, and files maintained in the ordinary course of business."[106] The declaration further states that Velawcity acted under MMA's direction in providing marketing services to prospective clients.[107] Accordingly, the Court finds that Mr. Moseley's personal knowledge can be inferred and thus, the declaration at Exhibit 94-1 satisfies the requirements of Rule 56(c)(4).[108]

---

[101] *See Dunn v. Hunting Energy Servs.*, 288 F. Supp. 3d 749, 761 (S.D. Tex. 2017) (holding that failure of strict technical compliance with 28 U.S.C. § 1746 does not defeat admissibility at summary judgement stage).
[102] ECF No. 97 at 5.
[103] FED. R. CIV. P. 56(c)(4).
[104] *DIRECTV, Inc. v. Budden*, 420 F.3d 521, 530 (5th Cir. 2005) (citations omitted).
[105] *Id.*
[106] ECF No. 94-1 at 2.
[107] ECF No. 94-1 at 3.
[108] *See Campbell Harrison & Dagley, L.L.P. v. PBL Multi-Strategy Fund, L.P.*, 744 F. App'x 192, 198 (5th Cir. 2018) (inferring personal knowledge based on statements in the declaration pertaining to an affiant's position and duties).

EXHIBIT 3

Morris Bart contends that the sham affidavit rule requires exclusion of Mr. Moseley's declaration at Exhibit 94-1 because it contradicts his prior testimony.[109] The sham affidavit rule, as applied in the Fifth Circuit, is a limited exception to the general principle that courts must consider all evidence—including affidavits—at summary judgment.[110] Under this rule, a court may disregard an affidavit that is "so markedly inconsistent" with the affiant's prior sworn testimony that it amounts to an "obvious sham."[111] The threshold for applying the rule "is a high one."[112] Morris Bart argues that paragraphs 9 and 19 of Exhibit 94-1 contain statements regarding the terms of certain marketing contracts entered into between MMA and Velawcity (the "*Marketing Services Agreements*") that contradict the contracts' actual language, which state that MMA agreed to pay Velawcity a fixed fee per client.[113] Morris Bart further asserts that paragraphs 9, 12, 19, and 20 contradict Mr. Moseley's sworn testimony about Velawcity's conduct, including his statement in a prior deposition that "Velawcity was getting agreements signed on [MMA's] behalf" and that MMA "agreed" to repay Velawcity for each prescreened potential client.[114]

Paragraphs 9 and 19 of Exhibit 94-1 state that "MMA retained [Velawcity] to assist with marketing and administrative services for prospective storm damage claims in Louisiana" and that "[a]t no time did MMA pay Velawcity for the procurement of clients. Any payments made were for administrative and marketing services. . . ."[115] Paragraphs 12 and 20 further provide that "[a]ll contracts were signed after legal review by MMA attorneys" and that "Velawcity collected intake data but did not engage in the unauthorized practice of law . . . offer legal advice, form attorney-

---

[109] ECF No. ECF No. 97 at 6.
[110] *Seigler v. Wal-Mart Stores Tex.*, 30 F.4th 472, 477 (5th Cir. 2022)
[111] *Clark v. Resistoflex Co., A Div. of Unidynamics Corp.*, 854 F.2d 762, 767 (5th Cir. 1988).
[112] *Johnson v. Bd. of Supervisors of La. State Univ.*, 90 F.4th 449, 458 (5th Cir. 2024).
[113] ECF No. 97 at 6.
[114] ECF No. 97 at 5.
[115] ECF No. 94-1 at ¶¶ 9, 19.

EXHIBIT 3

client relationships, or hold itself out as a law firm."[116] These statements are consistent with some of Mr. Moseley's prior deposition testimony, in which he stated that MMA paid Velawcity only for marketing and advertising services.[117] Accordingly, the Court finds that the sham affidavit rule does not preclude admission of Exhibit 94-1.

Morris Bart next asserts that "Exhibits 17-26 and 30-32", which Morris Bart characterizes as pleadings and orders filed in other cases, should be excluded if the Court also excludes Morris Bart's Exhibits 96-20, 29, 31, 33, 35, 37, 38, 39, 45, and 46.[118] Morris Bart also objects to "Exhibit 17" because it "purports to be an advertisement by Morris Bart that is unauthenticated."[119] Finally, Morris Bart asserts that "Exhibit 33 is unauthenticated."[120] MMA's Response and its corresponding exhibits were originally filed in the District Court, Case No. 4:24-cv-04446 and later refiled in this adversary.[121] Per this Court's Order on June 17, 2025, MMA was required to refile any related exhibits to his Response in this adversary proceeding by June 20, 2025.[122] In refiling, MMA omitted what was "Exhibit 17" in Case No. 4:24-cv-04446.[123] As such, this Court need not consider Morris Bart's objection to what it refers to as "Exhibit 17," because such exhibit, which is a purported advertisement by Morris Bart, is not on the record in this adversary proceeding.[124] Moreover, due to the misfiling, what is referred to as "Exhibit 33" in Morris Bart's Reply is in fact Exhibit 94-32 in this adversary. Likewise, what Morris Barts refers to as "Exhibits

---

[116] ECF No. 94-1 at ¶¶ 12, 20.
[117] ECF No. 94-27 at 23–25.
[118] ECF No. 97 at 11.
[119] ECF No. 97 at 11.
[120] ECF No. 97 at 11.
[121] ECF No. 94; Case No. 4:24-cv-04446, ECF Nos. 22–24.
[122] ECF No. 92.
[123] *See* ECF No. 94; July 14, 2025 Courtroom Hearing (MMA's counsel explaining misfiling in adversary case).
[124] *See Skotak v. Tenneco Resins, Inc.,* 953 F.2d 909, 915-16 (5th Cir. 1992) ("Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment.").

EXHIBIT 3

17-26 and 30-32" are in fact Exhibits 94-17 through 94-25 and 94-29 through 94-31. The Court will treat Morris Bart's objection accordingly.

Morris Bart objects to Exhibits 94-17 through 94-25 and 94-29 through 94-31 on the basis that they "are pleadings and orders filed in this other cases" and that "if the Court excludes Morris Bart's exhibits 20, 29, 31, 33, 35, 37, 38, 39, 45, and 46, it should exclude MMA's exhibits 17-26 and 30-32."[125] As discussed *supra*, this Court may take judicial notice of court orders, and may admit pleadings if they meet the elements of Federal Rule of Evidence 801(d)(2).[126] Moreover, this Court has overruled MMA's objections to Morris Bart's Exhibits 96-20, 29, 31, 33, 35, 37, 38, 39, 45, and 46.[127] Exhibits 94-19, 20, 24, 29 and 30 contain court orders and a case docket of this bankruptcy case. As such, the Court will take judicial notice of Exhibits 94-19, 20, 24, 29 and 30. Exhibits 94-17, 21, 22, 25, and 31 are pleadings filed by Morris Bart either in this Court or other courts, and are being offered by MMA against Morris Bart. Thus, the Court finds they are cable of admission under Federal Rule of Evidence 801(d)(2). Exhibits 94-18 and 23 are pleadings filed by MMA and offered by MMA against Morris Bart. Thus, they are not cable of admission under Federal Rule of Evidence 801(d)(2) but are judicially noticeable. As to Exhibit No. 94-32, which is a purported notice of bankruptcy filing sent by MMA's counsel to Morris Bart containing a list of cases that may be subject to the automatic stay, the Court finds that it is capable of being authenticated by live testimony from Mr. Moseley and MMA's counsel.[128]

Accordingly, the Court makes the following rulings:

    i.    The objection to Exhibit 94-1 is OVERRULED. Exhibit 94-1 is ADMITTED.

    ii.    The objections to Exhibits 94-2 through 94-13 are OVERRULED. Exhibits 94-2 through 94-13 are ADMITTED.

---

[125] ECF No. 97 at 11.
[126] *See supra* Section IV.C.3, and 5.
[127] *See supra* Section IV.C.3, and 5.
[128] *See* FED. R. CIV. P. 901(b)(1).

EXHIBIT 3

iii. The objections to Exhibits 94-19, 20, 24, 29 and 30 are OVERRULED. The Court takes judicial notice of the existence of the documents in Exhibits 94-19, 20, 24, 29 and 30.

iv. The objections to 94-17, 21, 22, 25 and 31 are OVERRRULED. Exhibits 94-17, 21, 22, 25 and 31 are ADMITTED.

v. The objections to Exhibits 94-18 and 23 are OVERRULED. The Court takes judicial notice of the existence of the documents in Exhibits 94-18 and 23.

vi. The objection to Exhibit 94-32 is OVERRULED. Exhibit 94-32 is ADMITTED.

Finally, Morris Bart requests that the UCC Brief be struck.[129] The District Court granted the UCC permission to file an amicus brief at a hearing on February 18, 2025 before it referred this proceeding back to this Court.[130] Morris Bart asserts that the UCC Brief is not a proper amicus brief because it repeats arguments made in MMA's Response and is filed as an ally of MMA.[131] There is no federal rule that sets out the procedural or substantive standards for amicus curiae briefs in district courts.[132] In the absence of controlling authority, courts often look for guidance in Federal Rule of Appellate Procedure 29, which sets forth standards for filing an amicus brief in the United States Courts of Appeals.[133] Morris Bart cites to cases in which courts have denied a proposed amicus brief or a motion for leave to file an amicus brief.[134] In this case, the District Court already exercised its discretion to allow the UCC to file an amicus brief, and it did not condition such briefing on prior court approval.[135] The decision to allow an amicus brief generally lies solely in the discretion of the court.[136] As such, the Court finds it has no authority to overturn the District Court's discretion in

---

[129] ECF No. 98.

[130] ECF No. 98-1 at 26.

[131] ECF No. 98 at 1–2.

[132] *United States v. City of New Orleans*, No. CV 12-1924, 2022 WL 4465534, at *1 (E.D. La. Sept. 26, 2022).

[133] *See e.g., United States ex rel. Gudur v. Deloitte Consulting Llp*, 512 F. Supp. 2d 920, 927 (S.D. Tex. 2007).

[134] *See e.g., City of New Orleans*, CV 12-1924, 2022 WL 4465534, at *2; *Career Colleges & Sch. of Texas v. United States Dep't of Educ.*, No. 1:23-CV-433-RP, 2023 WL 11830122, at *1 (W.D. Tex. May 18, 2023).

[135] ECF No. 98-1 at 26.

[136] *United States ex rel. Gudur v. Deloitte Consulting LLP*, 512 F. Supp. 2d 920, 927 (S.D. Tex. 2007).

EXHIBIT 3

allowing the fling of the UCC Brief.[137] Morris Bart's request to strike the UCC Brief will therefore be denied.

### E. Morris Bart's Motion for Summary Judgment

Morris Bart asserts there is no genuine issue of material fact that MMA has no interest in the Fees and Cost in the MB/MMA Cases by framing the issues for the Court as follows: "(1) [a]re the contingency fee contracts procured for [MMA] by [Velawcity] absolute nullities?; (2) [i]f those contracts are absolute nullities, is MMA entitled to recover fees or costs arising from work allegedly performed under those contracts?; (3) [i]n any event, would MMA ever be entitled to any portion of a contingency fee or costs from its clients?; [and] (4) [d]id MMA waive its right to fees and costs in certain cases?"[138] As to the first, question, MMA asserts that Morris Bart lacks standing to challenge the validity of the Fee Agreements between MMA and the MB/MMA Clients and raise allegations that MMA facilitated the unauthorized practice of law.[139] As to the remaining questions, MMA asserts that (1) any potential nullity of the Fee Agreements does not preclude MMA from recovering Fees and Costs under *Saucier*;[140] (2) it has performed work to earn fees in the MB/MMA Cases and the Fee Agreements do not violate public policy requiring a reduction in fees that MMA earned;[141] and (3) MMA did not waive any rights to collect Fees and Costs from Morris Bart. The Court will address each of the parties' arguments.[142]

### 1. Whether contingency fee contracts procured for MMA by Velawcity are absolute nullities

---

[137] *See In re Briarpatch Film Corp.*, 281 B.R. 820, 829 (Bankr. S.D.N.Y. 2002) ("Whatever the rubric, 'Bankruptcy proceedings may not be used to re-litigate issues already resolved in a court of competent jurisdiction.'").
[138] ECF No. 96 at 6.
[139] ECF No. 94 at 7, 9.
[140] ECF No. 94 at 18; July 14, 2025 Courtroom Hearing (argument by MMA's counsel).
[141] ECF No. 94 at 11, 13.
[142] ECF No. 94 at 18.

EXHIBIT 3

Morris Bart asserts that contracts that violate rules of public order are absolute nullities in Louisiana, and that since Louisiana has strong public policies against assisting the unauthorized practice of law and against payment for client solicitation, and MMA's procurement of its Fee Agreements violated those public policies, they are absolute nullities.[143] Before this Court can consider whether the Fee Agreements are nullities, the Court must address MMA's response that Morris Bart lacks standing to challenge the validity of the Fee Agreement and raise allegations regarding unauthorized practice of law.[144]

MMA asserts that Morris Bart lacks standing to challenge MMA's Fee Agreements because Morris Bart is not a party to any of those contracts, and it has no legal injury that would confer standing to contest their validity.[145] MMA notes that Morris Bart's argument that MMA's Fee Agreements are "absolutely null" was previously raised, and expressly rejected, in the Louisiana Lawsuit for lack of Article III standing in an order dismissing the Louisiana Lawsuit entered on October 19, 2023 (the "*Order of Dismissal*").[146] Morris Bart's challenge to contract validity is based on its allegations that MMA violated Louisiana public policy, including the facilitation of unauthorized practice of law.[147] MMA asserts that Morris Bart cannot argue that MMA engaged in the unauthorized practice of law because it lacks statutory standing under Louisiana law La. R.S. § 37:213.1(B)(2), which expressly precludes law firms from seeking injunctive relief or damages for another actor's alleged unauthorized practice of law, and it is

---

[143] ECF No. 96 at 16, 17 and 18.

[144] ECF No. 94 at 7, 9.

[145] ECF No. 94 at 7, ¶ 28.

[146] ECF No. 94-19.

[147] ECF No. 96 at 17–20; LA. REV. STAT. § 37:219(A) ("It shall be unlawful for any attorney to pay money or give any other thing of value to any person for the purpose of obtaining representation of any client."); LA. R. PROF'L CONDUCT 7.4(a) (prohibiting attorneys from "permit[ting] employees or agents of the lawyer to solicit on the lawyer's behalf," and from "enter[ing] into an agreement for, charge, or collect a fee for professional employment obtained in violation of this Rule").

EXHIBIT 3

barred by res judicata per the Order of Dismissal.[148] Morris Bart counters that standing is irrelevant because it is raising the legal rules regarding contract nullity and unauthorized practice of law "as a defense to MMA's arguments that it is entitled to fees under its contract procured through Velawcity."[149] Moreover, Morris Bart asserts that even if a showing of standing was required, Morris Bart has standing to challenge the validity of the Fee Agreements because MMA filed this adversary seeking Fees and Costs from the Fee Agreements, which the Louisiana court purportedly found would constitute sufficient injury.[150] The Court will thus determine whether Morris Bart is required to establish standing to raise allegations that MMA violated public policy and that the Fee Agreement are absolute nullities, and if so, whether Morris Bart has established such standing.

To have standing in federal court, a party must demonstrate that (1): the plaintiff suffered an "injury in fact"; (2) that there is a "causal connection between the injury and the conduct complained of," meaning that the injury was "fairly . . . trace[able] to the challenged action of the defendant, and not . . . the result [of] the independent action of some third party not before the court"; and (3) it is "'likely,' as opposed to merely 'speculative,' that the injury will be 'redressed by a favorable decision.'"[151] The inquiry is into the standing of the parties seeking to invoke the court's jurisdiction, not into the parties defending claims.[152] "Article III does not restrict the opposing party's ability to object to relief being sought at its expense. The requirement of Article III thus ha[s] no bearing upon [a party's] capacity to assert defenses in the District Court."[153]

This case raises the question of whether Morris Bart's assertions—that MMA facilitated the unauthorized practice of law and that the Fee Agreements are absolutely null—are true

---

[148] ECF No. 94 at 9.
[149] ECF No. 97 at 3.
[150] ECF No. 97 at 3.
[151] *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560, 112 S. Ct. 2130, 2136 (1992).
[152] *Duke Power Co. v. Carolina Environmental Study Group, Inc.*, 438 U.S. 59, 72 (1978) (citing Baker v. Carr, 369 U.S. 186, 204 (1962)).
[153] *Bond v. U.S.*, 131 S. Ct. 211, 217 (2011).

EXHIBIT 3

defenses, as Morris Bart contends (and thus not subject to standing requirements), or instead claims for relief that should have been pleaded separately and would require standing.[154] Morris Bart's labeling of these issues as defenses is not dispositive.[155] The key difference between claims and defenses is that claims seek affirmative relief and can stand independently, while defenses merely aim to defeat or limit the plaintiff's claim without seeking relief.[156] Claims are offensive and survive dismissal of the original claim, whereas defenses are purely defensive and depend on the plaintiff's action.[157]

When a client terminates an attorney working under a contingency fee agreement and retains another, the Louisiana Supreme Court in *O'Rourke* teaches that courts must use different methods to divide the fee between the original and new attorneys, based on whether the original attorney was dismissed for cause.[158] If the first attorney is dismissed without just cause, courts follow the rule set out in *Saucier*, which requires the total contingency fee—capped at the highest ethical rate agreed upon by the client—to be divided between the attorneys based on their respective contributions to the case, using specific evaluative factors.[159] When a client discharges an attorney *for cause*, the analysis includes an additional step that reduces the allocation to the discharged counsel consistent with the "nature and gravity" of the conduct leading to his discharge.[160] Thus, the amount of Fees and Costs that MMA is entitled to, if any, could be reduced

---

[154] *See* July 14, 2025 Courtroom Hearing (opening statement); ECF No. 97 at 2 ("Morris Bart is not asserting 'claims' for absolute nullity or unauthorized practice of law; thus, the standing analysis is irrelevant").

[155] FED R. CIV. P. 8 (c)(2) ("If a party mistakenly designates a defense as a counterclaim, or a counterclaim as a defense, the court must, if justice requires, treat the pleading as though it were correctly designated, and may impose terms for doing so.").

[156] *See* FED. R. CIV. P. 8(a), (c).

[157] *John H. Carney & Assocs. v. State Farm Lloyds*, 376 F. Supp. 2d 697, 703 (N.D. Tex. 2005) ("An affirmative defense by definition does not seek affirmative relief. When one pleads an affirmative defense, he or she sets forth facts or arguments which, if true, will defeat a plaintiff's claim, even though all matters alleged by the plaintiff in a complaint or petition are true. In other words, an affirmative defense sets forth 'an independent reason why the plaintiff should not recover.'").

[158] *O'Rourke v. Cairns*, 683 So. 2d 697, 702-04 (La. 1996).

[159] *Saucier v. Hayes Dairy Prods., Inc.*, 373 So. 2d 102, 118 (La. 1979).

[160] *O'Rourke*, 683 So. 2d at 704.

EXHIBIT 3

if its alleged violations of Louisiana public policy resulted in a discharge for cause.[161] As such, Morris Bart need not establish standing to raise allegations that MMA violated Louisiana public policy, such as by facilitating the unauthorized practice of law, *to the extent* it pertains to whether MMA was discharged for cause, and if so, whether the gravity and weight of the reason for the discharge requires a reduction in MMA's contingency fee allocation.[162]

However, Morris Bart lacks standing to argue that MMA's alleged violation of public policies makes the Fee Agreements absolute nullities because whether the Fee Agreements are absolute nullities is irrelevant to whether MMA is entitled to fees under *Saucer* and *O'Rourke*. Morris Bart asserts that the *Saucier*/*O'Rourke* framework "assumes a valid and enforceable contingency fee contract, so it is inapplicable here, where the contracts are nullities deemed never to have existed."[163] Morris Bart cites no authority expressly holding that a discharged attorney cannot recover fees from a successor attorney when the contract with the former client is null.[164] Instead, Morris Bart relies on *Gray v. Atkins*,[165] which held that a fee agreement was null where an attorney violated public policy and Louisiana's prohibition on the unauthorized practice of law.[166] As a result, the attorney was barred from recovery of any work it performed under the null contract.[167] Morris Bart also points to La. Civ. Code. Art. 2033, which provides that "[a]n absolutely null contract, or a relatively null contract that has been declared null by the court, is deemed never to have existed" and that a "performance rendered under a contract that is absolutely null because its object or its cause is illicit or immoral may not be recovered by a party who knew

---

[161] *Tran v. Williams*, 56 So. 3d 1224, 1228 ( La. App. 3 Cir 02/09/11) ("A determination of whether termination was with cause is factual and will be disturbed on appeal only upon manifest error.")

[162] *See O'Rourke*, 683 So. 2d at 704.

[163] ECF No. 96 at 20.

[164] *See* ECF Nos. 94; 97.

[165] 331 So. 2d 157 (La. App. 3 Cir. 1976).

[166] *Id.* at 166.

[167] *Id.*

EXHIBIT 3

or should have known of the defect that makes the contract null."[168] However, *Gray* and La. Civ. Code. Art. 2033 merely confirm the general rule that an attorney cannot recover from a *client* under an "absolutely null" contract: it does not provide binding authority establishing that contract nullity bars recovery from a successor attorney under *Saucier* or *O'Rourke*.[169] Indeed, the Court in *O'Rourke* noted that the "*Saucier* factors are, to a degree, the same factors used in making a *quantum meruit* award in the pre-*Saucier* era"[170] and referred to the *Saucer* framework as the "modified *quantum meruit* analysis."[171] Under Louisiana law, *quantum meruit* allows parties to a contract to recover for value rendered under that contract even if the contract is invalid.[172] Nor is this Court persuaded to apply the reasoning of *Gray* onto the *Saucier*/*O'Rourke* framework because under Morris Bart's interpretation of *O'Rourke, Saucier*, and *Gray*, any potential Fees and Costs earned by MMA and paid by the MB/MMA Clients under the Fee Agreements would be retained by Morris Bart, rather than be paid back to the MB/MMA Clients who would have been harmed by the allegedly null Fee Agreements.[173]

Because any potential nullity of the Fee Agreements will not impact MMA's claim against Morris Bart for Fees and Costs, the Court finds that Morris Bart's "absolute nullity" argument cannot be categorized as a "defense" that requires no standing.[174] Likewise, because any potential nullity will not affect Morris Bart's liability, Morris Bart cannot demonstrate sufficient injury to confer standing to challenge the validity of the Fee Agreements.[175]

---

[168] La. Civ. Code. Art. 2033.
[169] *Id.*; *Gray*, 331 So. 2d 157.
[170] *O'Rourke*, 683 So. 2d at 702.
[171] *Id.* at 704.
[172] *Succession of Butler*, 294 So. 2d 512, 515 (La. 1974).
[173] *See* La. Civ. Code. Art. 2033.
[174] *See John H. Carney & Assocs. v. State Farm Lloyds*, 376 F. Supp. 2d 697, 703 (N.D. Tex. 2005).
[175] *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560, 112 S. Ct. 2130, 2136 (1992).

EXHIBIT 3

Morris Bart asserts that the court in the Louisiana Lawsuit found that a claim by MMA against Morris Bart for Fees and Costs would constitute a requisite injury to confer standing to challenge the validity of the Fee Agreements.[176] The Court interprets this argument as one under the principal of collateral estoppel, which preludes relitigating of an issue that has been previously decided by a court.[177] The elements of collateral estoppel under federal law are: "(1) the issue under consideration is identical to that litigated in the prior action; (2) the issue was fully and vigorously litigated in the prior action; (3) the issue was necessary to support the judgment in the prior case; and (4) there is no special circumstance that would make it unfair to apply the doctrine."[178]

In the Louisiana Lawsuit, Morris Bart argued that it had standing to bring a declaratory judgement claim that MMA's actions in connection with Velawcity violated public policy because "MMA continue[d] to claim, or threaten to claim, attorneys' fees under [] absolutely null contracts," and "any fee to which MMA might theoretically be entitled [] would be taken from a single contingency fee paid by the client, and then allocated between Morris Bart and MMA."[179] The Louisiana court rejected those arguments, reasoning that "[b]ecause Morris Bart has not alleged that MMA is imminently trying to seek attorneys' fees to which Morris Bart is legally entitled, it has not adequately alleged this type of controversy."[180] Thus, the parties in the Louisiana Lawsuit never litigated, and the court never decided, whether a lawsuit by MMA against Morris Bart would establish the injury required for standing to challenge the Fee Agreement's validity

---

[176] ECF No. 97 at 3.

[177] *Copeland v. Merrill Lynch & Co.*, 47 F.3d 1415, 1422 (5th Cir. 1995).

[178] *Winters v. Diamond Shamrock Chem. Co.*, 149 F.3d 387, 391 (5th Cir. 1998); *Miller v. Am. Int'l Grp., Inc.*, No. 3:04-CV-1417-P, 2005 U.S. Dist. LEXIS 8864, at *10 n.3 (N.D. Tex. May 9, 2005) ("In a diversity action involving a prior federal judgment, federal law governs the application of collateral estoppel.").

[179] ECF No. 101-31 at 7, 10.

[180] ECF No. 101-19 at 20.

EXHIBIT 3

because Morris Bart failed to show any lawsuit was even threatened.[181] Therefore, the Order of Dismissal has no collateral estoppel effect on whether MMA's filing of this adversary proceeding confers standing on Morris Bart to challenge the Fee Agreements' validity.[182]

Accordingly, since standing is a prerequisite to subject matter jurisdiction, the Court has no jurisdiction to determine whether the Fee Agreements are absolutely null and therefore, Morris Bart is not entitled to judgment as a matter of law.[183]

## 2. Whether MMA would be entitled to fees under any analysis

Morris Bart asserts that MMA could not be entitled to the Fees and Costs because MMA cannot show it performed any meaningful work in the MB/MMA Cases since any potential work was either non-negligible or fully "automated."[184] For a discharged Louisiana attorney "to recover any part of the applicable contingency fee," that attorney's representation "must advance [the] client's case and have some productive value to [the] client." [185] When an attorney "can point to no work that actually contributed to the resolution of [their client's] claims," that attorney is not entitled to recover any fees.[186] Morris Bart asserts that MMA will never be able to show that it performed legal work that contributed to the resolution of any MB/MMA Cases because it was MMA's stated goal to "automate[]" the "entire prosecution of the claims."[187] Morris Bart cites to email communications, and deposition and hearing transcripts to evidence MMA's automation of

---

[181] ECF No. 101-19 at 20.

[182] *Winters v. Diamond Shamrock Chem. Co.*, 149 F.3d 387, 391 (5th Cir. 1998).

[183] *United States v. Age*, 136 F.4th 193, 230 (5th Cir. 2025) ("The question of standing is whether the litigant is entitled to have the court decide the merits of the dispute or of particular issues."); *White v. Texas*, No. 23-11190, 2024 U.S. App. LEXIS 10194, at *5 (5th Cir. Apr. 26, 2024) ("[S]tanding is required before a federal district court can exercise subject matter jurisdiction.").

[184] ECF No. 96 at 21.

[185] *Luther v. John W. Stone Oil Distributor, L.L.C.*, 607 Fed. App'x 367, 371 (5th Cir. 2015) (quoting *City of Alexandria v. Brown*, 740 F.3d 339, 350 (5th Cir. 2014)) (alterations omitted).

[186] *Id.* at 372.

[187] ECF No. 96-1 at 14; ECF No. 96 at 21.

EXHIBIT 3

the prosecution of the MB/MMA Cases.[188] That MMA aimed to automate some of the legal processes is simply not enough to show that MMA could never have performed *any* work in *any* of the over 1,500 MB/MMA Cases. Moreover, MMA provided a comprehensive list of MB/MMA Cases with details of the work MMA performed in each case.[189] Some of these entries indicate that some of the cases were settled while MMA was the attorney of record.[190] As such, the Court finds that the evidence presented in this case presents a genuine issue of material fact as to whether MMA performed sufficient work in each of the MB/MMA Cases to entitle it to any Fees and Costs.

Morris Bart asserts that even if meaningful work was performed, the misconduct by MMA requires a 100% reduction in fee recovery.[191] Morris Bart relies on rulings in the Western District of Louisiana cases where MMA intervened in its Former Cases.[192] In those cases, the Western District of Louisiana held that, even if MMA performed meaningful work, its alleged misconduct in procuring the Fee Agreements was so egregious that it warranted a 100% reduction of its fee allocation.[193] None of the cases cited by Morris Bart pertain to the specific MB/MMA Cases at issue in this adversary. For example, Morris Bart asserts that there is no genuine issue of fact that MMA violated public orders by participating in "modern day fee running" because the Western District of Louisiana in *Theriot*[194] held that "[i]f MMA obtained its contingency fee contract with Mr. Theriot through a third-party marketing firm, Velawcity, it did so via a modern-day case runner that MMA pre-paid for client contacts. . . .[and] [t]he resulting contingency fee agreement

---

[188] ECF No. 96 at 21.

[189] *See* ECF No. 101-2–13.

[190] *See* e.g., ECF No. 101-7 at 108, 140.

[191] ECF No. 96 at 21–23.

[192] ECF No. 96 at 22.

[193] *See Jones-Bell v. Imperial Fire & Cas. Ins. Co.*, No. 22-cv-3855, 2023 WL 6247963 (W.D. La. Sept. 22, 2023); *Bowie v. Shelter Mut. Ins. Co.*, No. 22-cv-4071, 2023 WL 9659935 (W.D. La. Oct. 5, 2023); *Duplantis v. Certain Underwriters at Lloyds London*, No. 22-cv-3388, 2023 WL 8444382 (W.D. La. Oct. 5, 2023); *Trahan v. Allstate Vehicle & Prop. Ins. Co.*, No. 22-cv-3604, 2023 WL 8457282 (W.D. La. Oct. 5, 2023), *Theriot v. State Farm Fire & Cas. Co.*, No. 2:22-CV-04083, 2023 WL 6206172, at *4 (W.D. La. Sept. 22, 2023); ECF No. 96 at 22.

[194] *Theriot*, No. 2:22-CV-04083, 2023 WL 6206172, at *4.

EXHIBIT 3

would be absolutely null and unenforceable."[195] In *Theriot*, the client provided an affidavit showing that he became a client of MMA though Velawcity.[196] Morris Bart has not provided specific evidence in each of the over 1,500 MB/MMA Cases here. For example, Morris Bart asserts that "Velawcity engaged in the unauthorized practice of law when it advised potential MMA clients regarding possible legal claims, . . . [and] actively assisted Velawcity in its unauthorized practice of law" but cites to no particular evidence for that allegation.[197]

Morris Bart also points to the Marketing Services Agreements which provide that MMA agreed "to pre-pay Velawcity a Fixed Rate of $3,000.00 for each prescreened potential client reviewed for Law Firm and delivered to Law Firm,"[198] and Mr. Moseley's answer to one of Morris Bart's interrogatories referencing "a list of Morris Bart Clients whose representation was obtained pursuant to MMA's Marketing Services Agreements with Velawcity."[199] Morris Bart asserts that the language of the Marketing Services Agreements and the answer to the interrogatory show that every Fee Agreement in the list referenced in the answer to the interrogatory was obtained by improper client solicitation that was a violation of public order.[200]

The Court finds that the language in the Marketing Services Agreements and answer to Morris Bart's interrogatory does not make clear whether the "per client" agreement was improper solicitation and illegal fee-sharing or whether the per-client payment made to Velawcity was in exchange for specific marketing and intake services, not for the procurement of clients.[201] Mr. Moseley testified in a deposition on April 8, 2025 that all the money paid to Velawcity was only for administrative support, including advertising, initial screening, and client intake processes, not

---

[195] *Id.*
[196] *Id.*
[197] ECF No. 96 at 19.
[198] ECF No. 96-23 at 2.
[199] ECF No. 96-40.
[200] ECF No. 196 at 15; July 14, 2025 Courtroom Hearing (argument by Morris Bart's counsel).
[201] ECF No. 96-23 at 2; 96-40.

EXHIBIT 3

a commission for delivering clients.[202] Moreover, one of the Marketing Services Agreements provide that MMA "understands and agrees that Velawcity ethically cannot enter into attorney/client fee agreements for Law Firm, but Velawcity will, as an independent contractor and agent for Law Firm, provide potential claimants who meet Law Firm's prescreening eligibility criteria with Law Firm's proposed fee agreement."[203]

Accordingly, based on the evidence on the record and arguments in the pleadings, the Court finds that there remains a genuine issue of material fact as to whether MMA facilitated the unauthorized practice of law or engaged in illegal fee solicitation in the MB/MMA Cases requiring a reduction in any Fees and Costs earned by MMA. As such, Morris Bart is not entitled to judgment as a matter of law.

### 3. Waiver

Morris Bart asserts that "there are two groups of cases in which MMA could never recover any fee from its clients or from Morris Bart, because it waived its right to do so."[204] First, in the Eastern District of Louisiana, on April 5, 2024, Magistrate Judge Michael North held that "MMA has knowingly and completely waived its rights to intervene or otherwise seek to recover fees and/or costs in . . . any . . . lawsuit pending in this district."[205] That holding was affirmed by Judge Sarah Vance on April 23, 2024.[206] The April 5, 2024 order made an explicit finding that MMA's waiver of fees was "without prejudice to MMA's . . . rights to bring whatever claims exist for breach of contract (or under any other theory) against MMA's successor law firms."[207]

---

[202] ECF No. 94-27 at 24; 94-14–16
[203] ECF No. 94-14–16 at 1–2.
[204] ECF No. 96 at 23.
[205] *Ricks v. Imperial Fire & Cas. Ins. Co.*, No. 23-2844, 2024 WL 1750738, at *3 (E.D. La. Apr. 5, 2024).
[206] *Ricks v. Imperial Fire & Cas. Ins. Co.*, No. 23-2844, 2024 WL 1740172, at *1 (E.D. La. Apr. 23, 2024).
[207] *Ricks*, No. 23-2844, 2024 WL 1750738, at *8.

EXHIBIT 3

The Court finds that this is precisely what MMA has done by initiating the instant Adversary Proceeding because MMA is seeking to recover fees from Morris Bart and is not intervening in any of the MB/MMA Cases.[208]

On December 12, 2024, Judge North entered an order interpreting the impact of his April 5, 2024 order differently.[209] The December 12, 2024 order explained that the April 5, 2024 order "does not merely limit MMA's rights to file interventions or liens in cases pending here – it unequivocally finds that the Firm waived its rights to seek fees and costs in any way, shape, or form."[210] It went on to say that, "[i]t makes no difference" that "MMA reserved its rights to sue successor law firms for damages for breach of contract," because those claims are for damages, not "some non-fungible *res* that must be embargoed to be protected."[211]

However, the December 12, 2024 order is not binding on this Court. This Court entered an injunction on July 15, 2024 expressly enjoining Morris Bart from taking "any action, directly or indirectly, to prosecute claims regarding the Debtor's interest or any entitlement to fees or costs without further order from this Bankruptcy Court" (the "*Injunction*").[212] The Injunction further required Morris Bart to hold all attorneys' fees and related expenses from the MB/MMA Cases in trust, pending further order of this Court.[213] Nonetheless, Morris Bart obtained the December 12, 2024 order, which contained two key findings: (i) that MMA waived any rights to attorneys' fees held by Morris Bart from the MB/MMA Cases and are thus not property of the bankruptcy estate and need not be held in trust; and (ii) that this Court's Injunction does not apply to proceedings in the Eastern District of Louisiana.[214]

---

[208] ECF No. 42.
[209] ECF No. 101-30.
[210] ECF No. 101-30 at 10.
[211] ECF No. 101-30 at 10.
[212] ECF No. 31 at 2.
[213] ECF No. 31 at 2.
[214] ECF No. 101-30 at 9–11.

EXHIBIT 3

The Supreme Court has held that a bankruptcy court has jurisdiction to interpret and enforce its own prior orders.[215] Moreover, 28 U.S.C. § 1334(e)(2)(1) provides that the bankruptcy court has exclusive jurisdiction of "all the property, wherever located, of the debtor as of the commencement of such case, and of property of the estate."[216] Thus, the Court finds that the December 12, 2024 order—issued after the commencement of this bankruptcy case and Injunction, determining what constitutes property of the estate, including whether MMA may bring a cause of action, and interpreting this Court's prior order—is of no event and not binding on this Court.[217]

In its final argument, Morris Bart asserts that until MMA provided notice to Morris Bart, through a July 9, 2024 proposed order filed in this adversary proceeding, that it intended to claim a right to fees and costs in any "case[] where the Debtor's former clients are now clients of Morris Bart, LLC," MMA never "informed [Morris Bart] of its intent or took any action to assert its rights to attorneys fees and expenses under the contingency fee contract[s]."[218] Based on this, Morris Bart takes the position that in all MB/MMA Cases settled prior to July 9, 2024, MMA has waived its right to pursue any of its Fees and Costs from Morris Bart.[219]

Under Louisiana law, if a discharged attorney fails, prior to settlement, to give sufficient notice to the successor attorney of their intent to seek fees and costs from the successor attorney, the discharged attorney waives their rights to recover such fees and costs.[220] Recordation of a fee agreement under La. R.S. 37:218 or filing of an intervention is sufficient notice.[221] MMA has not shown that it recorded all of its Fee Agreements under La. R.S. 37:218 or that it intervened in all of the MB/MMA Cases. However, sufficient notice is not limited to recordation of the contract or

---

[215] *Travelers Casualty & Surety Co. of America v. Bailey*, 557 U.S. 137, 151 (2009).
[216] 28 U.S.C. § 1334(e)(2)(1).
[217] ECF No. 101-30.
[218] ECF No. 96 at 25; *See also* ECF No. 16.
[219] ECF No. 96 at 25; *See also* ECF No. 96-32.
[220] *Law Office of John D. Sileo v. Kruse*, 239 So. 3d 1057, 1065 (La. App. 5 Cir 02/21/18).
[221] *Id.*

EXHIBIT 3

even intervention.[222] Notice is sufficient if the discharged attorney "otherwise notif[ies] [the successor attorney] in some manner of its intent to assert its rights under the contingency fee agreement."[223] Whether a discharged attorney provides sufficient notice depends on the particular facts of each case.[224]

After a careful review of the record, the Court finds that there remains a genuine dispute of material fact as to when Morris Bart received notice by MMA that it intended to seek an interest in the Fees and Costs from Morris Bart in the MB/MMA Cases. MMA filed bankruptcy schedules on April 23, 2024, which listed as an asset: "Morris Bart LLC: Potential claim for possession of attorney's fees and expenses that belong to Debtor, and other related causes of action claims for fees and expenses from cases now handled by Morris Bart."[225] MMA also sent Morris Bart a notice letter on April 23, 2024 formally notifying Morris Bart of the bankruptcy filing and that the filing triggered an automatic stay.[226] The April 23, 2024 letter included a list of cases, with identifying information, that MMA asserted may have been subject to the automatic stay.[227]

MMA also asserts that Morris Bart had notice of MMA's intent to recover its Fees and Costs as of May 1, 2023, because that is when the Louisiana Lawsuit was filed by Morris Bart.[228] In that same proceeding, Morris Bart plead that "MMA has not disclaimed (and in some cases has indicated an affirmative intent to seek) its statutory attorneys' fee interest in any recoveries obtained by its

---

[222] *Hood v. Ashton*, 354 So. 3d 854, 863 ( La. App. 2 Cir 01/11/23) ("Under the rationale of *Sileo*, . . . a third party may have notice outside of the recordation of the contract or even intervention.").
[223] *Id.* at 862.
[224]*Id.* at 863 (Finding that discharged attorney had given sufficient notice of intent to assert rights in its fees "in light of the circumstances of this case"); *Sileo v. Kruse*, 239 So. 3d 1057 at 1065 ("We further hold that, under the specific facts of this case as outlined in detail above, by its own failure to timely act, *Sileo* has also forfeited any rights it may have had to pursue a claim for attorney fees and costs.").
[225] Bankr. ECF No. 13 at 138.
[226] ECF No. 94-33.
[227] ECF No. 94-32.
[228] ECF No. 101-17.

EXHIBIT 3

former clients."[229] In the Order of Dismissal, the Louisiana Court also acknowledged Morris Bart's argument that it had standing because "MMA continues to claim, or threaten to claim, attorneys' fees under [] absolutely null contracts" and "has moved to intervene to claim a fee interest in at least three suits . . . in which Morris Bart has substituted as counsel for a Morris Bart-MMA Client." [230]

Accordingly, the Court finds that there remains a genuine dispute of material fact as to when MMA provided sufficient notice to Morris Bart of its intent to asserts rights in the Fees and Costs from the MB/MMA Cases. Therefore, Morris Bart is not entitled to judgment as a matter of law.

### IV. CONCLUSION

An order consistent with this Memorandum Opinion will be entered on the docket simultaneously herewith.

SIGNED August 12, 2025

_____
Eduardo V. Rodriguez
Chief United States Bankruptcy Judge

---

[229] ECF No. 94-31 at 3.
[230] ECF No. 94-19 at 18.

EXHIBIT 3