# IN THE UNITED STATED BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| MMA LAW FIRM, PLLC, | § | CASE NO: 24-31596 |
| | § | (Chapter 11) |
| Debtor. | § | |

## MORRIS BART, LLC'S LIMITED OBJECTION TO THIRD AMENDED JOINT PLAN OF LIQUIDATION
### [Ref. Dkt. No. 1577]

TO THE HONORABLE EDUARDO V. RODRIGUEZ, CHIEF BANKRUPTCY JUDGE:

COMES NOW, MORRIS BART, LLC ("Morris Bart"), party-in-interest, and makes this Morris Bart, LLC's Limited Objection to Third Amended Joint Plan of Liquidation as follows:

### I.

### RELIEF REQUESTED ON LIMITED OBJECTION

1. Morris Bart, LLC ("Morris Bart") objects to the Third Amended Joint Plan of Liquidation (the "Plan"). The Plan contains provisions in the Retention of Court Jurisdiction section 11.1 that are impermissible or impermissibly vague. The Plan also contains impermissibly broad exculpatory and injunction provisions in sections 9.5 and 9.6 that could restrict Morris Bart from asserting its defenses in the MMA/Morris Bart adversary proceeding and the related appeals arising out of that adversary proceeding. At a minimum the provisions are impermissibly vague and could deny Morris Bart due process by foreclosing its defenses in the pending adversary proceeding. This Court should strike or modify those offensive provisions before confirming the Plan.

1

EXHIBIT 10

## II.

## BACKGROUND FACTS

2.   On June 24,  2024, the Debtor MMA Law Firm, PLLC ("MMA" or the "Debtor") filed an adversary   proceeding against MB styled *MMA Law Firm, PLLC v. Morris Bart, LLC*, Adv. Pro. No. 24-ap-3127 (the "Adversary"). Morris Bart appealed multiple orders entered by the Bankruptcy Court in the Adversary, and all the appeals were assigned to United States District Judge Andrew S. Hanen.[1]

3.   On December 12, 2024, Judge Hanen withdrew the reference of jurisdiction from the Bankruptcy Court over all "matters raised in Case Numbers 4:24-cv-2793, 4:24-cv-3443, 4:24-cv-4343, 4:24-cv-4446, Adversary Case Number 24-3127, and matters related to the attorneys' fees/costs dispute between MMA and Morris Bart in Bankruptcy Case Number 24-31596."[2] Judge Hanen held that Morris Bart is entitled to a jury trial on the claims raised by MMA, and since the Bankruptcy Court cannot conduct a jury trial without the parties' consent, withdrawal of the reference was mandatory. Judge Hanen has only referred pretrial matters in the Adversary back to the Bankruptcy Court for handling.[3]

4.   On May 21, 2025, Morris Bart filed a motion for summary judgment in the Adversary.[4] On August 12, 2025, the Bankruptcy Court entered its Order denying the motion.[5] On August 26, 2025, Morris Bart appealed the Order to the District Court.[6] On September 30, 2025, Morris Bart

---

[1] Civil Action No. 4:24-cv-2793 (appeal of preliminary injunction), Civil Action No. 4:24-cv-4343 (appeal of order denying motion to dismiss and motion to transfer venue), Civil Action No. 4:25-cv-4059 (appeal of bankruptcy court's order denying MB's motion for summary judgment), Civil Action No. 4:25-cv-4917 (petition for writ of mandamus), Civil Action No. 4:25-cv-5013 (appeal of show cause order), Civil Action No. 4:25-cv-5576 (appeal of order compelling production).
[2] Civil Action No. 4:24-cv-4446, Dkt. No. 5, p. 9.
[3] Civil Action No. 4:24-cv-4446, Dkt. No. 21.
[4] Adv. Pro. No. 24-3127, Dkt. No. 96.
[5] Adv. Pro. No. 24-3127, Dkt. No. 105.
[6] Adv. No. 24-3127, Dkt. No. 113.

EXHIBIT 10

filed a motion for certification of questions of law to the Louisiana Supreme Court.[7]

5.    On January 23, 2026, Judge Hanen reversed in part the Bankruptcy Court's Order denying Morris Bart's motion for summary judgment and granted a partial summary judgment in favor of Morris Bart.[8] MMA appealed Judge Hanen's Order,[9] and that appeal is currently pending before the United States Court of Appeals for the Fifth Circuit in Case No. 26-20046.[10]

6.    On February 4, 2026, Judge Hanen certified questions to the Louisiana Supreme Court.[11] In the first certified question, Judge Hanen asked the Louisiana Supreme Court:

> Can a successor law firm, in a lawsuit filed against it by a predecessor law firm seeking fees and costs, who either no longer could continue the representation and withdrew or was discharged by the client or the court, **raise the defense** that the predecessor law firm's earlier misconduct renders the predecessor's contingent fee contract an absolute nullity? (emphasis added).[12]

On March 13, 2026, the Louisiana Supreme Court entered an order accepting Judge Hanen's certified questions.[13]

7.    On February 9, 2026, the Bankruptcy Court entered the Stipulation and Agreed Order staying the Adversary pending rulings by the Louisiana Supreme Court and the Fifth Circuit.[14] On March 4, 2026, Judge Hanen entered orders staying Morris Bart's appeals of an injunction order,[15] a show cause order[16] and an order granting MMA's motion to compel production entered by the Bankruptcy Court.[17] On March 25, 2026, Judge Hanen entered an order staying the case in which the reference to the Bankruptcy Court has been withdrawn, also pending rulings by the Louisiana

---

[7] Civil Action No. 4:25-cv-4059, Dkt. No. 6.
[8] Civil Action No. 4:24-cv-4446, Dkt. No. 41.
[9] Civil Action No. 4:24-cv-4446, Dkt. No. 42.
[10] Judge Hanen entered an order severing the summary judgment so that the judgment would be final for purposes of appeal. See Civil Action No. 4:26-cv-0642.
[11] Civil Action No. 4:24-cv-4446, Dkt. No. 45 and 46.
[12] Civil Action No. 4:24-cv-4446, Dkt. No. 46, p. 11.
[13] Exhibit 1.
[14] Adv. No. 24-3127, Dkt. No. 241.
[15] Civil Action No. 4:24-cv-2793, Dkt. No. 42.
[16] Civil Action No. 4:25-cv-5013, Dkt. No. 23.
[17] Civil Action No. 4:25-cv-5576, Dkt. No. 18.

EXHIBIT 10

Supreme Court and the Fifth Circuit.[18]

8. On June 29, 2026, the Louisiana Supreme Court entered an opinion answering the questions certified by Judge Hanen.[19] The Louisiana Supreme Court answered "Yes" to Judge Hanen's first question – whether a successor law firm could raise absolute nullity as a defense to a claim by a predecessor law firm for fees and costs.[20]

9. On July 1, 2026, MMA filed its Third Amended Joint Plan of Liquidation.[21] The Bankruptcy Court has set a hearing to consider confirmation of the Plan for August 4, 2026, at 10:30 a.m.[22] The deadline for filing objections to the Plan is July 22, 2026.[23]

10. The Plan contains an Exculpation provision in section 9.5 that provides in pertinent part "exculpated parties shall neither have nor incur any liability to any holder of a claim or interest, . . . or any other entity for any act taken . . ."[24] The Plan defines "exculpated parties" to include the Debtor.[25] The Plan further contains an Injunction provision in section 9.6 that proposes to enjoin "all persons who have held, hold, or may hold claims against, or interests in, the Debtor . . . from (i) commencing or continuing in any manner any action or other proceeding of any kind against the Debtor or the Reorganized Debtor or its assets with respect to any such claim or interest."[26] Finally, the Plan contains a Gatekeeper Provision in section 9.7 that prohibits any person or entity from:

> commencing, continuing, amending, or pursuing, a Claim or Cause of Action of any kind that may be subject to the foregoing exculpation and injunction provisions, in each case without first (i) requesting a determination from the Court, after notice to all affected parties and a hearing, that such Claim or Cause of Action represents a

---

[18] Civil Action No. 4:24-cv-4446, Dkt. No. 61.
[19] Exhibit 2.
[20] Exhibit 2, p. 5.
[21] Case No. 24-31596, Dkt. No. 1577.
[22] Case No. 24-31596, Dkt. No. 1562.
[23] Case No. 24-31596, Dkt. No. 1562.
[24] Case No. 24-31596, Dkt. No. 1577, p. 29, section 9.5.
[25] Case No. 24-31596, Dkt. No. 1577, p. 5, section 1.1.33.
[26] Case No. 24-31596, Dkt. No. 1577, p. 30, section 9.6.

colorable claim and is not subject to the foregoing exculpation and injunction provisions, which request must attach the complaint or petition proposed to be filed by the requesting party and (ii) obtaining from the Court specific authorization for such party to bring such Claim or Cause of Action. . . . The Court reserves jurisdiction to adjudicate any such claims to the maximum extent provided by applicable law.[27]

11. The United States Trustee has filed an objection to the Plan on the grounds, *inter alia*, that the exculpation, injunction, and gatekeeper provisions are impermissibly broad under the Bankruptcy Code and Fifth Circuit caselaw.[28]

12. The Plan also contains provisions in the Retention of Court Jurisdiction section that provide for the Bankruptcy Court to retain jurisdiction over "all matters arising in, arising under, or related to, the Debtor's case including matters concerning and related to, among other things, the following purposes:

11.1.5. Adjudicate, decide, or resolve any motions, adversary proceedings, contested or litigated matters, and any other matters, and grant or deny any applications involving the Debtor prior to the closing of the case;

11.1.6. Adjudicate, decide, or resolve any and all matters related to Causes of Action;

* * *

11.1.12. Resolve any cases, controversies, suits, disputes, or Causes of Action, if any;

---

[27] Case No. 24-31596, Dkt. No. 1577, p. 30, section 9.7.
[28] Case No. 24-31596, Dkt. No. 1589.

EXHIBIT 10

## II.

## ARGUMENT

### A. The Plan's Retention of Court Jurisdiction Provision is Impermissibly Broad.

13. The effect of the Plan's Retention of Court Jurisdiction provision in section 11 is to improperly provide for the Bankruptcy Court to retain jurisdiction over the Adversary. The District Court has already entered an order withdrawing the reference of that proceeding pursuant to 28 U.S.C. § 157(d). MMA cannot use the Plan to provide the Bankruptcy Court with jurisdiction that the District Court has already withdrawn from it.

14. "Neither the bankruptcy court nor the parties can write their own jurisdictional ticket." *In re Resorts Int'l, Inc.*, 372 F.3d 154, 161 (3d Cir. 2004). Section 1334 of Title 28 supplies the jurisdiction that a bankruptcy court may exercise. All jurisdiction resides in the district court; the bankruptcy court is a unit of the district court. Section 157 of Title 28 controls the reference and withdrawal of that jurisdiction. Where the district court has already withdrawn the reference of jurisdiction from an earlier referral, the jurisdiction remains with the district court until the district court refers the case back to the bankruptcy court. The original grant of jurisdiction by Congress is to the district court, and the district court controls whether to withdraw or refer jurisdiction over bankruptcy matters, and the district court can withdraw the reference in whole or in part. *Holland America Insurance Co. v. Succession of Roy*, 777 F.2d 992, 998–99 (5th Cir. 1985); 28 U.S.C. § 157(d) ("The district court may withdraw, in whole or in part, any case or proceeding referred under this section.").

15. . The Plan's Retention of Jurisdiction provision must be construed consistently with the District Court's order withdrawing the reference in the Adversary and cannot enlarge the Bankruptcy Court's authority beyond the scope of the District Court's referral under 28 U.S.C. §

6
EXHIBIT 10

157. Only that jurisdiction referred by the district court to the bankruptcy court may be exercised by the bankruptcy court. A plan cannot confer jurisdiction to the bankruptcy court that is beyond the jurisdiction permitted by sections 1334 and 157 of Title 28. *In re Craig's Stores of Texas, Inc.*, 266 F.3d 388, 390, 91 (5th Cir. 2001); *see also In re New York Skyline, Inc.*, 601 F.App'x 52, 54-55 (2d Cir. 2015). This Court should either strike or modify sections 11.1.5, 11.1.6, and 11.1.12.

16. Further, there are appeals still pending before the District Court and an appeal pending before the Fifth Circuit Court of Appeals. The Fifth Circuit follows the ordinary federal divestiture rule derived from *Griggs v. Provident Consumer Discount Co.*, 459 U.S. 56 (1982). *Alice L. v. Dusek*, 492 F.3d 563, 564–65 (5th Cir. 2007); *see also Taylor v. Sterrett*, 640 F.2d 663, 667–68 (5th Cir. 1981). The filing of a notice of appeal divests the bankruptcy court of any jurisdiction over the issues on appeal and confers jurisdiction on the appellate court. *In re Transtexas Gas Corp.*, 303 F. 3d 571 (5th Cir. 2002) (citing *In re Statistical Tabulating Corp, Inc.*, 60 F.3d 1286, 1289 (7th Cir. 1995)). Thus, while an appeal is pending, neither the bankruptcy court nor a confirmation order can alter the issues before the appellate court. And the Plan cannot affect matters already pending on appeal before the District Court or the Fifth Circuit.

17. Because the Plan contains a provision inconsistent with federal law and with the District Court's withdrawal order, the Plan fails to satisfy 11 U.S.C. § 1129(a)(1) and cannot be confirmed unless the offending provision is deleted or revised to acknowledge that the withdrawn Adversary and the appeals arising out of the Adversary shall remain before the District Court. This Court should strike sections 11.1.5, 11.1.6, and 11.1.12 of the Plan.

18. Alternatively, this Court should modify the Retention of Court Jurisdiction provision to include a statement in section 11.1 that reads:

EXHIBIT 10

This section does not expand the Bankruptcy Court's jurisdiction beyond the jurisdiction permitted under 28 U.S.C. §§ 157 and 1334 and does not modify, alter, restrict or change the jurisdiction currently being exercised or that may in the future be exercised by the District Court over the Adversary Proceeding styled *MMA Law Firm, PLLC v. Morris Bart, LLC*, Adv. Pro. No. 24-ap-3127 or Civil Action Nos. 4:24-cv-2793, 4:24-cv-4343, 4:24-cv-4446, 4:25-cv-4059, 4:25-cv-4917, 4:25-cv-5013, and 4:25-cv-5576.

**B. The Plan's Exculpation, Injunction, and Gatekeeper Provisions are impermissibly vague, because it could be read to exculpate MMA from Morris Bart's defenses asserted in the Adversary and enjoin Morris Bart from asserting those defenses.**

19. The Plan's exculpation, injunction, and gatekeeper provisions are impermissibly vague and could allow MMA to use these provisions to attempt to foreclose Morris Bart's absolute nullity defense under La. Civ. Code, Art. 2030. This is not an unfounded or hypothetical fear by Morris Bart. MMA has already argued that Morris Bart's absolute nullity defense is a claim, not a defense, and this Court has already once accepted that argument.

20. At the hearing before this Court on Morris Bart's motion for summary judgment, MMA's counsel argued that the Louisiana statute on absolute nullity "only allows you to recover a claim. It doesn't say you can argue the unauthorized practice of law as a defense."[29] In response to this argument, Morris Bart made it clear that its absolute nullity argument was a defense, not a claim. Counsel for Morris Bart stated "We are not making a claim in this case. There is no counterclaim, there is no lawsuit by Morris Bart against MMA. We are defendants raising a defense."[30] ". . . Article 2030 says that a contract is an absolute nullity if it is violative of a rule of a public order. . . That is our defense to the claim."[31] ". . . We didn't ask to be hauled into this court. We are here defending ourselves, so we are presenting a defense to MMA's claims. We are

---

[29] Exhibit 3, Tr. 95/6-8.
[30] Exhibit 3, Tr. 105/15-17.
[31] Exhibit 3, Tr. 106/14-17.

not asserting our own claim. We are not asking for any injury to be redressed."[32]

21. Responding to Morris Bart's counsel, MMA's counsel continued to push its theory that an absolute nullity under La. Civ. Code, Art. 2030 is a claim, not a defense:

> This is not a defense. A defense is I didn't do it. A defense is I don't owe the money, I didn't breach the contract, right? Or an affirmative defense that yes, you are correct, yes, your claims are good, but for the statute of limitations, I'm not liable, right? Affirmative defense.
>
> But to assert a claim, defendants assert claims all the time. That's what a counterclaim is, right? So they admit that they're identical, right? And so how can you assert a claim as a plaintiff that's only a defense? It makes no sense whatsoever, right? I can -- the claim is the claim. And asserting a claim against another party requires standing.[33]

This Court accepted MMA's argument. In its memorandum opinion on Morris Bart's motion for summary judgment, this Court directly addressed the question "of whether Morris Bart's assertions – that MMA facilitated the unauthorized practice of law and that the Fee Agreements are absolutely null – are true defenses . . . or instead claims for relief that should have been pleaded separately and would require standing."[34] And this Court found that Morris Bart's absolute nullity argument "cannot be categorized as a 'defense.'"[35]

22. On appeal, Morris Bart asked the District Court to reverse the Bankruptcy Court's determination that absolute nullity was a claim and that Morris Bart had no standing to bring the claim. The District Court, instead of ruling on that point, certified a question to the Louisiana

---

[32] Exhibit 3, Tr. 108/12-15.
[33] Exhibit 3, Tr. 121/20 – 122/6.
[34] Case No. 24-31596, Dkt. 104, p. 25.
[35] Case No. 24-31596, Dkt. 104, p. 27.

Supreme Court, asking "Can a successor law firm, in a lawsuit filed against it by a predecessor law firm seeking fees and costs, who either no longer could continue the representation and withdrew or was discharged by the client or the court, ***raise the defense*** that the predecessor law firm's earlier misconduct renders the predecessor's contingent fee contract an absolute nullity?"[36] The Louisiana Supreme Court answered that question "Yes."[37] Nevertheless, this answer has not yet been accepted by the District Court in an order, so the threat remains real that MMA's exculpation and injunction provisions in the Plan will be used to foreclose Morris Bart's absolute nullity defense.

23. It is axiomatic that a plan cannot be used as a device to determine substantive litigation issues. *United Student Aid Funds, Inc. v. Espinosa*, 559 U.S. 260 (2010) (recognizing confirmation order should not have been entered without adversary proceeding determining dischargeability of student loan, but holding because creditor failed to object to confirmation or appeal confirmation order, such confirmation order was not void and could not be vacated under Fed. R. Civ. P. 60(b)(4)); *see also e.g. In re Galey*, 230 B.R. 898, 899 (Bankr. S.D. Ga. 1999) (holding Chapter 13 Plan impermissibly attempted to determine dischargeability of debt without adversary determination). Plan confirmation cannot dispense with procedural requirements established by the Bankruptcy Code and Federal Rules or a litigant's substantive rights to assert claims or defenses. To do so would amount to a denial of due process of law. Nevertheless, this is just what MMA is attempting to do by proposing a plan with language that could be construed as barring Morris Bart from asserting its defense to MMA's adversary proceeding.

24. MMA has repeatedly argued there that Morris Bart's absolute-nullity defense is really a claim. Having failed to successfully eliminate Morris Bart's defense by characterizing it as a

---

[36] Civil Action No. 4:24-cv-4446, Dkt. No. 46, p. 11.
[37] Exhibit 2, p. 5.

EXHIBIT 10

claim that Morris Bart has no standing to bring in the Adversary, MMA now seeks to accomplish the same result indirectly by seeking confirmation of a plan whose injunction, exculpation, and gatekeeper provisions could be used to characterize the defense as an impermissible 'claim' against the Debtor, or could be used in an attempt to bar Morris Bart from asserting its defense.

25. These plan provisions also improperly interfere with the pending litigation in the District Court, which has withdrawn the reference of jurisdiction over the Adversary and has asserted its jurisdiction over the issues in Morris Bart's motion for summary judgment in Civil Action No. 4:24-cv-4446 and the appeal in Civil Action No. 4:25-cv-4059. The District Court has reviewed the Bankruptcy Court's ruling on whether a successor law firm can raise absolute nullity as a defense and certified that dispositive state-law question to the Louisiana Supreme Court. The Louisiana Supreme Court then decided the issue, holding that Morris Bart can assert absolute nullity as a defense. The District Court must now apply the ruling of the Louisiana Supreme Court to the case. Confirmation cannot be used by the Debtor to alter the issues that remain pending before the District Court. The proposed Plan provisions implicate comity between the Bankruptcy Court and the District Court. The Bankruptcy Court should not approve the Plan with language that could be used to recharacterize that same defense as a discharged "claim." To do so would effectively nullify the certified-question procedure and interfere with the District Court's consideration of the issues in the Adversary. This is not simply a discharge issue; it is an interference with ongoing litigation in the District Court where all jurisdiction lies.

26. An exculpation and injunction provision in a plan is certainly not an appropriate vehicle to thrash out substantive defenses to pending litigation. But that what MMA appears to be attempting to accomplish with these Plan provisions. MMA has filed over 30 adversary proceedings seeking fees and costs from successor law firms. The Adversary against Morris Bart

11
EXHIBIT 10

was the first such adversary, and it has been a long and disappointing fight for MMA. After adverse rulings by the District Court and now the Louisiana Supreme Court, MMA is hoping to bar Morris Bart's absolute nullity defense and the defenses of other law firms through its offensive and impermissible use of exculpation and injunction provisions in its Plan. This Court should either deny confirmation or modify the exculpation and injunction provisions of the Plan to include a statement that:

> Notwithstanding the foregoing, this section shall not apply to any causes of action or defenses currently pleaded and that could in the future be pleaded in the adversary proceeding styled *MMA Law Firm, PLLC v. Morris Bart, LLC*, Adv. Pro. No. 24-ap-3127 or Civil Action Nos. 4:24-cv-2793, 4:24-cv-4343, 4:24-cv-4446, 4:25-cv-4059, 4:25-cv-4917, 4:25-cv-5013, and 4:25-cv-5576, or any appeals arising from those cases.

WHEREFORE, PREMISES CONSIDERED, MORRIS BART, LLC respectfully requests that this Court deny confirmation of the Third Amended Joint Plan of Liquidation or alternatively strike or modify the impermissible sections of the Plan.

DATED: July 22, 2026

Respectfully submitted,

**THE PROBUS LAW FIRM**

By: */s/ Matthew B. Probus*
    **Matthew B. Probus**
    State Bar No. 16341200
    Fed. I.D. No. 10915
    matthewprobus@theprobuslawfirm.com

10497 Town & Country Way, Suite 930
Houston, Texas 77024
(713) 258-2700 (Telephone)
(713) 258-2701 (Facsimile)

12
EXHIBIT 10

-and-

**MILLER THIBODEAUX DYSART VEITH & PASCHAL, LLC**

By: */s/ Rebekka C. Veith*
  Kerry J. Miller, *pro hac vice*
  Rebekka C. Veith, *pro hac vice*
  Monica L. Bergeron, *pro hac vice*

643 Magazine Street, Suite 405
New Orleans, LA 70130
Tel: (504) 586-5252
kmiller@mtdvp.com
rveith@mtdvp.com
mbergeron@mtdvp.com

*COUNSEL FOR MORRIS BART, LLC*

## CERTIFICATE OF SERVICE

I hereby certify that on July 22, 2026, a true and correct copy of the foregoing has been served on all parties requesting notice and parties entitled to notice which includes the debtor, the plan proponents, the Official Committee of Unsecured Creditors, and the United States Trustee, electronically via the CM/ECF filing system.

*/s/ Matthew B. Probus*
Matthew B. Probus

EXHIBIT 10

**SUPREME COURT OF LOUISIANA**

**No. 2026-CQ-00161**

**IN RE: MMA LAW FIRM, PLLC**

---

CERTIFICATION ORDER AND SPECIAL BRIEFING ORDER

---

Considering the certified question filed by the United States District Court for the Southern District of Texas,

IT IS ORDERED that certification be granted.

IT IS FURTHER ORDERED that the clerk of court schedule this case for oral argument on the court's April 2026 docket.

IT IS FURTHER ORDERED that the briefing delays set forth in Supreme Court Rule XII, § 6 be modified to provide that the brief of the moving party shall be filed and served no later than twenty days from the date of this order, and the brief of the responding party shall be filed and served no later than thirty-five days from the date of this order.

NEW ORLEANS, LOUISIANA, this 13th day of March 2026.

FOR THE COURT:

_____

JUSTICE, SUPREME COURT OF LOUISIANA

EXHIBIT 10

# Supreme Court of Louisiana

FOR IMMEDIATE NEWS RELEASE                                    NEWS RELEASE #030

FROM: CLERK OF SUPREME COURT OF LOUISIANA

The Opinions handed down on the **29th day of June, 2026** are as follows:

**BY Penzato, J.:**

2026-CQ-00161            IN RE: MMA LAW FIRM, PLLC

                         CERTIFIED QUESTIONS ANSWERED. SEE OPINION.

                         Retired Judge Glen Wade Strong appointed Justice ad hoc, sitting for Justice
                         Cole, recused.

EXHIBIT 10
EXHIBIT 2

**SUPREME COURT OF LOUISIANA**

**No. 2026-CQ-00161**

**IN RE: MMA LAW FIRM, PLLC**

On Certified Question from the United States District Court for the
Southern District of Texas

**PENZATO, J.**[*]

This case presents certified questions about an attorney's ability to recover fees and costs under a contingent fee contract when his representation is prematurely terminated. Premised on an assumption the attorney engaged in unethical or illegal conduct, the questions ask what effect that conduct has on the validity of the contract and the attorney's right to recover fees and costs. We find a contingent fee contract entered as the result of unethical or illegal conduct is absolutely null, and the responsible attorney is not entitled to fees or costs. If a valid contract is formed but the attorney engages in unethical or illegal conduct during its performance, the attorney's recovery of fees and costs is governed by the framework adopted in *Saucier v. Hayes Dairy Products, Inc.*, 373 So. 2d 102 (La. 1978), *on reh'g* (6/25/79), and *O'Rourke v. Cairns*, 95-3054 (La. 11/25/96), 683 So. 2d 697.

**FACTS AND PROCEDURAL HISTORY**

Certified questions are decided on the facts presented by the federal court. *Pickard v. Amazon.com, Inc.*, 23-01596 (La. 6/28/24), 387 So. 3d 515, 518. Established facts are limited at this point, but the certification confirms the dispute is between the current and former attorneys of clients who sought recovery for damages caused by hurricanes and other storms along the Louisiana Gulf Coast. The

---

[*] Judge Allison H. Penzato, for the Court of Appeal, First Circuit, appointed as Justice *pro tempore*, sitting for the vacancy in the First District. She is now appearing as an *ad hoc* for Justice William Burris. Retired Judge Glen Wade Strong appointed Justice *ad hoc*, sitting for Justice Cole, recused.

EXHIBIT 10
EXHIBIT 2

clients were first represented by McClenny Moseley & Associates, PLLC ("MMA"), a Houston based law firm that entered contingent fee contracts with thousands of Louisiana residents in the wake of Hurricane Ida.  In response to concerns about the firm's handling of the claims, multiple courts entered orders staying MMA's cases or sanctioning the firm's attorneys, including actions by this Court suspending the license of MMA's lead attorney in Louisiana and staying the firm's cases in Louisiana state courts.[2]  A special trustee was also appointed to assist in identifying and notifying MMA's former clients "of the inability of MMA to represent them in pending hurricane or storm-related litigation."  *See In re: Richard William Huye*, 23-B-0277 (La. 5/18/23).

MMA filed for bankruptcy protection in 2024.  In a written declaration filed in the proceeding, the firm's managing member stated, "After negative orders were entered by Louisiana District Courts and the licenses of MMA's attorneys were suspended in Louisiana, MMA was no longer able to represent clients in that state." According to the federal court's certification, it is undisputed that MMA either withdrew from representation or was discharged from virtually all of the remaining cases.  Other law firms undertook the representation of MMA's former clients and ultimately resolved many of the claims.

MMA filed claims in the bankruptcy proceeding against some of the successor law firms, alleging it was owed attorney fees and costs out of the settlement proceeds from its prior cases. The successor firms denied the claims, arguing MMA's conduct rendered its contracts absolutely null and barred any recovery of fees or costs.  The particular claim giving rise to this certification was filed by MMA against Morris Bart, LLC., which requested a jury trial for the action.  As a result of the jury request,

---

[2]     *See In re Huye*, 23-0277 (La. 3/3/23), 356 So. 3d 1000, 1001; *In re: Richard William Huye*, 23-B-0277 (La. 5/10/23) (stay order) and (La. 5/18/23); *see also In re: McClenny Mosely & Associates PLLC*, 21-CV-2258 (W.D. La. 7/30/21) (suspending MMA attorneys from practicing in Western District for 90 days); *Franatovich v. Allied Tr. Ins. Co.*, 22-2552, (E.D. La. 3/16/23), 2023WL7005861 (imposing Rule 11 sanctions).

EXHIBIT 10
EXHIBIT 2

the claim was transferred from the bankruptcy court to the district court for the Southern District of Texas. *See MMA Law Firm, PLLC v. Morris Bart, LLC*, 4:24-CV-4446, 2024WL5088383, at *4 (S.D. Tex. 12/12/24) (withdrawing reference to bankruptcy court). The parties agree the merits of MMA's claim are governed by Louisiana substantive law.

Pursuant to Louisiana Supreme Court Rule XII, the district court certified five questions to this Court, which granted the certification. *See In re MMA Law Firm, PLLC*, 26-0161 (La. 3/13/26), 429 So. 3d 308. Before addressing the questions, it should be emphasized that no factual findings have been made in this proceeding concerning the allegations of misconduct against MMA. The district court made this clear:

> In this Certification Request, this Court frames the factual background and its questions hypothetically, as it has not yet had to decide whether MMA, its lawyers, or agents actually committed any acts of misconduct. Although the allegations referenced in this certification permeate the pleadings in the cases pending in this Court and in various courts in Louisiana, the parties dispute the allegations. The [managing member's declaration], however, recognizes that the allegations of misconduct—whether true or not—resulted in MMA being no longer able to continue its representation of its Louisiana clients . . ., but this Court has not made any findings of fact regarding the allegations of misconduct.

In our limited role, this Court likewise makes no factual findings regarding the allegations of misconduct. When a certified question is accepted, our task is limited to deciding "questions of Louisiana law." *See* La. S.Ct. Rule XII, § 1; La. R.S. 72.1A; *Pickard*, 387 So. 3d at 526. Any fact-finding responsibility is reserved to the federal court. *See Wightman v. Ameritas Life Ins. Corp.*, 22-0364 (La. 10/21/22), 351 So. 3d 690, 693.

## DISCUSSION

### *Question 1: Who Can Assert Absolute Nullity of a Contract*

In the first certified question, the district court asked:

EXHIBIT 10
EXHIBIT 2

Can a successor law firm, in a lawsuit filed against it by a predecessor law firm seeking fees and costs, who either no longer could continue the representation and withdrew or was discharged by the client or the court, raise the defense that the predecessor law firm's earlier misconduct renders the predecessor's contingent fee contract an absolute nullity?

Yes. Under Louisiana Civil Code article 2030, an "[a]bsolute nullity may be invoked by **any person** or may be declared by the court on its own initiative." (Emphasis added.) A "person" includes a juridical person, meaning an entity to which the law attributes personality. *See* La. Civ. Code art. 24. By allowing any person to raise a contract's absolute nullity, Article 2030 recognizes that absolute nullities "operate similarly with respect to all members of society, not just the parties to the transaction" and "should have no effect with respect to anyone." Ronald J. Scalise Jr., *Rethinking the Doctrine of Nullity*, 74 La. L. Rev. 663, 671-72 (2014).

### Question 2(A): Does Attorney Misconduct Render Contract an Absolute Nullity

In Question 2(A), the district court asked:

If an attorney-client contingent fee contract was entered into as the result of either unethical or illegal means implemented by an attorney or someone acting on his or her behalf, or during the representation of the client the attorney practiced in an unethical or illegal manner, is that contingent fee contract a nullity?

This question addresses the effect of unethical or illegal conduct in two different time frames, during the formation of the agreement and during its performance. Each requires a separate answer. Given the district court's explanation in the certification, we construe the reference to "nullity" to mean an absolute nullity. As further explained below, we find that a contingent fee contract entered as the result of unethical or illegal conduct is absolutely null. If the misconduct occurs after the parties enter a valid contract, the agreement may terminate by dissolution but is not absolutely null.

Louisiana Civil Code article 7 establishes the basic premise that the civil law does not sanction unlawful agreements:

4

EXHIBIT 10
EXHIBIT 2

> Persons may not by their juridical acts derogate from laws enacted for the protection of the public interest. Any act in derogation of such laws is an absolute nullity.

Similarly, Article 2030 provides:

> A contract is absolutely null when it violates a rule of public order, as when the object of a contract is illicit or immoral. A contract that is absolutely null may not be confirmed.

The cause of an obligation is unlawful "when the enforcement of the obligation would produce a result prohibited by law or against public policy." La. Civ. Code art. 1967.

While the basic relationship between client and lawyer is contractual, the parties' association has also been described as *sui generis* given this Court's constitutional authority to regulate the practice of law. *See* La. Const. art. V, § 5(B); *Chittenden v. State Farm Mut. Auto. Ins. Co.*, 00-0414 (La. 5/15/01), 788 So. 2d 1140, 1147-48, 51. This Court has exclusive and plenary power to define and regulate all facets of the practice of law, including the admission of attorneys to the bar, the professional responsibility and conduct of lawyers, the discipline, suspension and disbarment of lawyers, and the attorney-client relationship. *Succession of Wallace*, 574 So. 2d 348, 350 (La. 1991).

Thus, for applicable directives of public order and policy in the formation of the attorney-client contract, we also look to the Rules of Professional Conduct. *See* La. R.S. 37, Ch. 4, Appendix, Art. XIV. Adopted by this Court as "regulatory laws in the interests of the public, the courts, and the legal profession," the Rules of Professional Conduct have the force and effect of substantive law and permeate all facets of the practice of law. *Spears v. Hall*, 25-0195 (La. 3/6/26), 429 So. 3d 291, 295; *Chittenden*, 788 So. 2d at 1147-49. Personal solicitation of clients, particularly paid solicitation, is generally prohibited, and an attorney is barred from entering an agreement obtained as a result thereof. *See* Rules 7.2(c)(13), 7.4(a). Prohibited fee sharing and the unauthorized practice of law are also proscribed. *See* Rules 5.4(a),

5

EXHIBIT 10<br>EXHIBIT 2

5.5(a), 7.2(c)(13); *see also* La. R.S. 37:213A(1), (4). As an adjunct to Rules 5 and 7, Louisiana Revised Statute 37:219A declares it to be "unlawful for any attorney to pay money or give any other thing of value to any person for the purpose of obtaining representation of any client." A violation is a criminal offense subject to imprisonment of up to five years and a substantial fine. *See* La. R.S. 37:219C.

These regulatory and statutory provisions embody the state's strong public policy against paid, personal solicitations of clients, sometimes referred to as "case running." *See In re O'Keefe*, 03-3195 (La. 7/2/04), 877 So. 2d 79. As the *O'Keefe* court observed:

> The legal system and the profession suffer actual injury when a lawyer engages in runner-based solicitation, a felony under state law.
>
> *   *   *
>
> This court has long condemned the practice of soliciting clients for pay. . . . [S]olicitation of clients for pay cannot be condoned as the professional character of the practice of law could not survive the hunting down and marketing of personal injury claims. Solicitation is abhorrent to the legal profession and places lawyers in disrepute with the public. . . . We have not hesitated to permanently disbar lawyers who knowingly participate in such activities.

*In re O'Keefe*, 877 So. 2d at 85-88 (citations and internal quotation marks omitted).

A contingent fee contract resulting from this misconduct, namely impermissible paid solicitations, prohibited fee sharing, and the unauthorized practice of law, is an absolutely nullity. *See* La. Civ. Code arts. 7, 1968, 2030; Rules 5.4(a), 5.5(a), 7.2(c)(13), 7.4(a); La. R.S. 37:213, 37:219. An agreement formed as a result of this misconduct derogates from laws enacted for the protection of the public interest, violates rules of public order, and produces a result prohibited by law and against public policy. *See Id.* "This court cannot place its stamp of approval on

6

EXHIBIT 10
EXHIBIT 2

such contracts and must declare them null." *Succession of Cloud*, 530 So. 2d 1146, 1151 (La. 1988).[3]

The second part of Question 2(A) asks about the effect of attorney misconduct during the client's representation. If the parties entered a valid contract, subsequent misconduct may constitute a "failure to perform" by the attorney, which under the Civil Code gives rise to the contract's dissolution, but does not render it absolutely null. *See* La. Civ. Code art. 1994, 2013. When an obligor fails to perform, "the obligee has a right to the judicial dissolution of the contract or . . . to regard the contract as dissolved. In either case, the obligee may recover damages." La. Civ. Code art. 2013. As explained by Professors Litvinoff and Scalise:

> When no defect intervened in the formation of a contract but one party has failed to perform his obligation as agreed, the other may avail himself of an action to obtain the dissolution of that contract.

Litvinoff & Scalise, 6 La. Civ. L. Treatise, *Law Of Obligations* § 16.3 (2d ed.).

### Questions 2(B) and 4: Can the Attorney Still Recover Fees and Costs

In Questions 2(B) and 4, the district court asked:

2B.    If the answer to Question 2(A) is yes—that the contingent fee contract is a nullity—can that attorney still seek attorneys' fees and costs on any basis, including a non-contractual (be it quasi-contract or *quantum meruit*) basis?

4.    Assuming an attorney with a contingent fee contract was found to have participated in illegal conduct or conduct in violation of the Louisiana Rules of Professional Conduct, as opposed to mere neglect or negligence, can that attorney subsequently recover his or her fees and/or costs on any basis from the successor law firm who takes up the case and represents the client from the point of withdrawal to conclusion?

An attorney who obtained a contingent fee contract as the result of unethical or illegal means, which rendered the agreement absolutely null, is not entitled to

---

[3]    *See also Gray v. Atkins*, 331 So. 2d 157, 166 (La. App. 3 Cir. 1976), *writ denied,* 334 So. 2d 433 (La. 1976) (Where attorney conspired with an individual illegally practicing law and steering prospective clients to attorney, "any contracts entered into by them pursuant to that illegal relationship are illegal and void."); *Vidrine v. Abshire*, 558 So. 2d 288, 293 (La. App. 3 Cir. 1990) ("A 'running' contract is unenforceable.")

EXHIBIT 10
EXHIBIT 2

recover fees or costs for work performed pursuant thereto. Louisiana Civil Code article 2033 declares that an absolutely null contract is "deemed never to have existed" and the "parties must be restored to the situation that existed before the contract was made." Article 2033 expressly prohibits recovery by a party who knew or should have known of the basis for the nullity:

> [A] performance rendered under a contract that is absolutely null because its object or its cause is illicit or immoral may not be recovered by a party who knew or should have known of the defect that makes the contract null.

La. Civ. Code art. 2033.[4]

More specific to the attorney-client contract, Rule 7 of the Code of Professional Conduct, governing the direct solicitation of clients, provides: "A lawyer shall not enter into an agreement for, charge, or collect a fee for professional employment obtained in violation of this Rule." Rule 7.4(a). As previously observed, runner-based solicitation is a criminal offense and abhorrent to the legal profession. *See In re O'Keefe*, 877 So. 2d at 85-88. Attorneys who engage in this proscribed conduct cannot be permitted to reap the rewards by collecting their fees and costs on any basis. *See Gray*, 331 So. 2d at 166.

If a valid contract is entered but misconduct occurs thereafter, the attorney's ability to recover fees is best handled through the framework established in *Saucier* and *O'Rourke*. Under those cases, when a discharged attorney and successor attorney both claim interests in settlement proceeds under contingent fee contracts, the client owes only one contingency fee, the highest ethical percentage to which the client contractually agreed. *See O'Rourke*, 683 So. 2d at 702; *Saucier*, 373 So. 2d at 118. The contingency fee is then allocated between the attorneys based on factors

---

[4] Article 2033 permits two exceptions allowing recovery by a party who knew or should have known of the defect in the contract: (1) if the party invokes the nullity to withdraw from the contract before its purpose is achieved, and (2) in exceptional situations when, in the discretion of the court, recovery would further the interest of justice. *See* La. Civ. Code art. 2033. Neither exception was asserted or appears applicable.

8

EXHIBIT 10
EXHIBIT 2

now in Rule 1.5(a) of the Rules of Professional Conduct. *Id.*[5] If the prior attorney was discharged for cause, his share of the contingency fee is reduced based on the "**nature and gravity of the cause**" contributing to his dismissal. *O'Rourke*, 683 So. 2d at 704 (emphasis added). The *O'Rourke* court explained the basis for this approach:

> This rule serves to confine client exposure to no more than one contingency fee in both with and without cause situations. Furthermore, it allows courts to properly analyze the intricacies which invariably arise in contingency fee litigation, while also taking into consideration the conduct of attorneys which mar the profession and client confidence by requiring dismissal for cause.

*O'Rourke*, 683 So. 2d at 704.

We find this reasoning and approach applicable regardless of the precise nature of the conduct prompting the discharge of the attorney, whether nonfeasance as in *O'Rourke*, unethical or illegal conduct as described in Question 2(B), or the more intentional conducted suggested by Question 4. In each instance, the *Saucier/O'Rourke* framework provides a flexible approach that allows for a discretionary determination based on the facts of each case. For relatively minor misconduct, the *O'Rourke* adjustment may be minimal, while more egregious conduct could warrant a significant reduction or, in appropriate cases, a complete denial of a fee.

Questions 2(C) and 4 also ask if the discharged attorney can recover his costs. The recovery of costs was not addressed in *Saucier* or *O'Rourke*; however, similar to attorney fees, Rule 1.5(a) prohibits a lawyer from charging or collecting "an

---

[5] The factors are (1) the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly; (2) the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer; (3) the fee customarily charged in the locality for similar legal services; (4) the amount involved and the results obtained; (5) the time limitations imposed by the client or by the circumstances; (6) the nature and length of the professional relationship with the client; (7) the experience, reputation, and ability of the lawyer or lawyers performing the services; and (8) whether the fee is fixed or contingent.

EXHIBIT 10
EXHIBIT 2

unreasonable amount for expenses." *See also* Rule 1.8(e) (providing limitations on lawyer's advances to client for financial assistance). In determining what costs, if any, a discharged attorney is entitled to recover, similar consideration must be given to the limits set by the Rules of Professional Conduct and, where appropriate, an *O'Rourke* reduction or denial may be imposed as well.

***Question 2(C): Recover against whom -- Former Client, Successor Attorney, or Both***

In Question 2(C), the district asked:

If the answer to Question 2(B) is yes—that the attorney can seek fees and costs despite his or her misconduct—against whom can he or [she] seek fees: the former client, the successor law firm, or both?

Subject to certain requirements, the discharged attorney has a right of action to recover fees and costs against the former client and the successor law firm. Generally, Louisiana Revised Statute 37:218 grants an attorney a "special privilege" for his fees and certain costs on any recovery obtained in the suit. *See* La. R.S. 37:218A-B; *see also* La. Civ. Code arts 3190, 3216 (defining special privileges). A related law provides a similar privilege on proceeds from a judgment. *See* La. R.S. 9:5001. A written contract is required under Section 37:218, and the parties may record the agreement in the public records, all as more fully set forth in the statute:

By written contract signed by his client, an attorney at law may acquire as his fee an interest in the subject matter of a suit, proposed suit, or claim in the assertion, prosecution, or defense of which he is employed, whether the claim or suit be for money or for property. Such interest shall be a special privilege to take rank as a first privilege thereon, superior to all other privileges and security interests under Chapter 9 of the Louisiana Commercial laws. In such contract, it may be stipulated that neither the attorney nor the client may, without the written consent of the other, settle, compromise, release, discontinue, or otherwise dispose of the suit or claim. Either party to the contract may, at any time, file and record it with the clerk of court in the parish in which the suit is pending or is to be brought or with the clerk of court in the parish of the client's domicile. After such filing, any settlement, compromise, discontinuance, or other disposition made of the suit or claim by either the attorney or the client, without the written consent of the other, is null and void and the suit or claim shall be proceeded with

EXHIBIT 10
EXHIBIT 2

as if no such settlement, compromise, discontinuance, or other disposition has been made.

La. R.S. 37:218A. "Fee" means the agreed fee, whether fixed or contingent, and any advances to or for the client permitted by the Rules of Professional Conduct. *See* La. R.S. 37:218B.

Morris Bart maintains an attorney cannot pursue a claim against the former client unless the contingent fee contract is recorded. This Court has not specifically addressed this question in earlier cases. For other parties, recordation of the contract is not necessary to enforce the privilege against a creditor of the client, *see Calk v. Highland Const. & Mfg.*, 376 So.2d 495, 499 (La. 1979); however, recordation is necessary to impose an obligation on a defendant "to retain settlement funds until determination of [the discharged attorney's] fee entitlement." *See Scott v. Kemper Ins. Co.*, 377 So. 2d 66, 68 (La. 1979). The circuit courts are split on whether recordation is a prerequisite to pursuing a claim against a former client.[6]

We need not decide the issue in this case. As *Saucier* made clear, a client is obligated to pay only one contingency fee. *Saucier*, 373 So. 2d at 118. MMA seeks recovery only against successor attorneys, not former clients. Whether recordation of the contract is essential to maintain a claim against a former client is not "determinative of the cause" in this proceeding and thus inappropriate for

---

[6]   For cases finding contract recordation is not necessary to pursue recovery against a former client, *see F. Q. Hood, Jr., APLC v. Ashton*, 54,830 (La. App. 2 Cir. 1/11/23), 354 So. 3d 854, 860, *writ denied,* 23-0201 (La. 4/12/23), 359 So. 3d 33; *Breeden v. Crumes*, 11-1098 (La. App. 4 Cir. 4/4/12), 102 So. 3d 133, 138, *writ denied,* 12-1091 (La. 9/12/12), 98 So. 3d 312; *Hall v. St. Paul Fire & Marine Ins. Co.*, 03-1333 (La. App. 5 Cir. 2/23/04), 868 So. 2d 910, 912, *writ denied,* 04-0756 (La. 5/7/04); 872 So.2d 1087; *Francis v. Hotard*, 00-0302 (La. App. 1 Cir. 3/30/01), 798 So. 2d 982, 985, *writ not considered,* 2001-1323 (La. 6/22/01); 793 So. 2d 1263; *Rush, Rush & Calogero v. Barrios*, 97-1532 (La. App. 3 Cir. 4/22/98), 716 So. 2d 23, 25, *writ denied,* 98-2114 (La. 11/6/98), 728 So.2d 868. For cases finding recordation of the contract is necessary to pursue recovery from the former client, *see Law Office of John D. Sileo, LLC v. Kruse*, 17-474 (La. App. 5 Cir. 2/21/18), 239 So. 3d 1057, 1065, *writ denied,* 18-0469 (La. 5/11/18), 241 So.3d 312; *Ferguson v. W. Jefferson Levee Dist. Bd. of Comm'rs*, 96-385 (La. App. 5 Cir. 11/14/96), 685 So.2d 273, 275, *writ granted in part and remanded,* 96-3005 (La. 2/7/97), 688 So. 2d 486; *Reis v. Fenasci & Smith,* 93-1785, (La. App. 4 Cir. 4/14/94), 635 So.2d 1319; *Murray, Murray, Ellis, Braden & Landry v. Minge*, 516 So. 2d 213, 216 (La. App. 4 Cir. 1987), *writ denied,* 516 So.2d 369 (La. 1988).

EXHIBIT 10
EXHIBIT 2

certification. *See* La. Sup. Ct. Rule XII § 1. For these reasons, we decline to address this issue.

For claims against a successor attorney, this Court has also not specifically addressed whether recordation of the contract is necessary for that action. The discharged attorney in *Saucier* recorded his contract, but the facts of *O'Rourke* do not indicate whether the attorney recorded his contract in that case. The *O'Rourke* opinion does confirm the attorney filed an intervention in the pending suit that was ultimately tried and produced the judgment under review. *O'Rourke*, 683 So. 2d at 699. The circuit courts are more uniform here, finding recordation of the contract is not necessary to maintain a claim against a successor attorney, but some form of timely notice to the attorney is required.[7] We agree.

When the claimants are both attorneys, or, as in *Calk*, an attorney and a creditor, both parties are asserting rights to the same corpus of money based on a privilege or security interest. Under those circumstances, the recordation of the contract is not necessary to effectuate the privilege. *See Calk*, 376 So. 2d at 496. As observed in *Calk* and applied in *Scott*, the recordation provision in Section 37:218 provides the discharged attorney a means to ensure his fee will be protected when a defendant pays a settlement, either by including the discharged attorney's name on the check or requiring his consent to disburse. *See Calk*, 376 So. 2d at 499-500; *Scott*, 377 So. 2d at 70. The defendant is the client's obligor, not a competing claimant. *Id*. Once the settlement is paid, the privilege attaches and is effective against other claimants. *See* La. R.S. 37:218A; *Calk*, 376 So. 2d at 499.

However, while recordation is not necessary, the discharged attorney "must assert his claim by intervention or other legal proceedings prior to disbursement of the proceeds to a third party." *Calk*, 376 So. 2d at 499. In this context, the successor

---

[7]     *See Sileo,* 239 So. 3d at 1065; *Reis,* 635 So. 2d at 1322-23; M*urray,* 516 So. 2d at 216; *Ferguson,* 685 So. 2d at 275.

EXHIBIT 10
EXHIBIT 2

attorney is the third party, and the discharged attorney must provide him the required notice before the contingent fee is paid, meaning the funds have been received, are no longer held in trust for the client, and have become the property of the successor attorney. Once commingled with the successor attorney's funds, the contingent fee—the thing subject to the privilege—has lost its identity, and, absent notice, the privilege is extinguished. *See* La. Civ. Code art. 3277(1) ("Privileges become extinct [by] the extinction of the thing subject to the privilege.").[8]

### Question 3: Can Attorney Recover Fees and Costs if He Withdraws

In the third certified question, the district court asked two questions, which are addressed together:

> A.      Does the *Saucier/O'Rourke* framework apply to a case in which a law firm is not discharged but instead withdraws from representation because it was no longer able to represent the client, or would the withdrawal from such cases render the withdrawing firm ineligible for the collection of attorneys' fees and costs?

> B.      Assuming an attorney with a contingent fee contract withdraws from the representation of a client in an attempt to either avoid an adverse ruling by a court or to avoid sanctions or accusations due to some form of misconduct by the attorney or his or her employees or agents, can that attorney subsequently recover his or her fees and/or costs on any basis from the successor law firm who takes up the case and represents the client from the point of withdrawal to conclusion?

Yes, in a case involving multiple contingent fee contracts, the *Saucier/O'Rourke* fee-allocation framework applies to any termination of an attorney's representation, whether by discharge or withdrawal. The Rules of Professional Conduct contain both mandatory and permissive grounds for an attorney to withdraw from representing a client. *See* Rule 1.16. Similar to when an attorney is discharged, a withdrawal can occur due to no fault of the attorney, such as an unexpected health issue, or, on the other extreme, may involve unethical or illegal conduct. Where the attorney bears some culpability, an *O'Rourke* reduction

---

[8]      Here, we note counsel for Morris Bart indicated that settlements of MMA's former cases are subject to an injunction requiring Morris Bart to withhold the full fee and MMA's claimed costs pending resolution of any disputes associated therewith.

13

EXHIBIT 10
EXHIBIT 2

or denial based on the nature and gravity of the misconduct is appropriate, particularly where the withdrawal had a material adverse effect on the client's interests. *See* Rule 1.16(b)(1).

Use of this approach in both discharge and withdrawal cases "allows courts to properly analyze the intricacies which invariably arise in contingency fee litigation, while also taking into consideration the conduct of attorneys which mar the profession and client confidence by requiring dismissal for cause." *O'Rourke*, 683 So. 2d at 704; *see also Wright v. Tschirn*, 03-1676 (La. App. 3 Cir. 6/9/04), 875 So. 2d 1037, 1040 (applying *Saucier* and rejecting blanket rule that would deny fee recovery by attorney who withdrew without cause).

### *Question 5: Does the Judge or Jury Make the O'Rourke Adjustment*

In the fifth question, the district court asked:

If the 'modified *quantum meruit* analysis' espoused in *O'Rourke v. Cairns* is found to apply to the matters pending in Texas, who would reallocate the attorneys' fees and costs based on the 'nature and gravity' of the misconduct—the Court or the jury?

Supreme Court Rule XII authorizes a certification request for "questions of Louisiana law that are determinative of the cause" in a federal proceeding. La. Sup. Ct. Rule XII, § 1. In this case, Louisiana law does not determine whether the court or the jury should decide the *O'Rourke* adjustment.

The U.S. Supreme Court has long held that the right to a jury trial in federal court, including diversity cases applying state substantive law, is to be determined as a matter of federal law. *Simler v. Conner*, 372 U.S. 221, 222; 83 S.Ct. 609, 610; 9 L.Ed.2d 691 (1963) (*per curiam*). In *Simler*, a client challenged the validity of a contingent fee contract and the fees owed to an attorney. *See Simler v. Conner*, 295 F.2d 534 (10th Cir. 1961), *rev'd,* 372 U.S. 221; 83 S.Ct. 609; 9 L.Ed.2d 691 (1963). The client requested a jury trial, which was granted by the district court, but the court of appeal reversed, relying on state law to conclude the claim was purely equitable

14

EXHIBIT 10

EXHIBIT 2

in nature. *Id.* The U.S. Supreme Court reversed the court of appeal and reinstated the jury demand, finding the appellate court erred by applying state law to determine the issue. The Court explained:

> We agree with respondent that the right to a jury trial in the federal courts is to be determined as a matter of federal law in diversity as well as other actions. The federal policy favoring jury trials is of historic and continuing strength. Only through a holding that the jury-trial right is to be determined according to federal law can the uniformity in its exercise which is demanded by the Seventh Amendment be achieved. In diversity cases, of course, the substantive dimension of the claim asserted finds its source in state law, but the characterization of that state-created claim as legal or equitable for purposes of whether a right to jury trial is indicated must be made by recourse to federal law.

*Simler*, 372 U.S. at 222; 83 S.Ct. at 610-11 (citations and footnotes omitted).

Although the subject certified question focuses on one issue—the *O'Rourke* reduction—federal law still governs whether that issue will be submitted to the jury in a federal proceeding. As explained by the U.S. Fifth Circuit:

> [A]lthough the substantive issues are governed by state law pursuant to *Erie*, federal law governs the allocation of issues raised between judge and jury. 'It cannot be gainsaid that there is a strong federal policy against allowing state rules to disrupt the judge-jury relationship in the federal courts.' *Byrd v. Blue Ridge Rural Electric Cooperative*, 1958, 356 U.S. 525, 538, 78 S.Ct. 893, 901, 2 L.Ed.2d 953; *Simler v. Conner*, 1963, 372 U.S. 221, 222, 83 S.Ct. 609, 610, 9 L.Ed.2d 691. Hence, where federal rules would entitle litigants to a jury determination of a particular issue, the court will not yield to a state practice to the contrary. *Byrd*; *Magenau v. Aetna Freight Lines, Inc.*, 1959, 360 U.S. 273, 278, 79 S.Ct. 1184, 1188, 3 L.Ed.2d 1224.

*Nunez v. Superior Oil Co.*, 572 F.2d 1119, 1125 (5th Cir. 1978) (footnotes and some citations omitted).

In this case, applying federal law, the district court determined that Morris Bart has a right to a jury trial. *See MMA Law Firm, PLLC v. Morris Bart, LLC*, 4:24-CV-4446, 2024 WL 5088383, at *4 (S.D. Tex. 12/12/24). The allocation of issues between the jury and the presiding judge will be determined by federal law, not Louisiana law. For this reason, we decline to answer this certified question. *See* La. Sup. Ct. Rule XII § 1.

EXHIBIT 10
EXHIBIT 2

## CONCLUSION

Pursuant to Louisiana Supreme Court Rule XII, the judgment rendered by this court upon the questions certified shall be sent by the clerk of this court under its seal to the United States Southern District of Texas.

**CERTIFIED QUESTIONS ANSWERED.**

16

EXHIBIT 10
EXHIBIT 2

IN THE UNITED STATES BANKRUPTCY COURT

FOR THE SOUTHERN DISTRICT OF TEXAS

HOUSTON DIVISION

| | | |
|---|---|---|
| MMA LAW FIRM, PLLC, ET AL | § | CASE NO. 24-03127-ADV |
| | § | HOUSTON, TEXAS |
| v | § | MONDAY, |
| | § | JULY 14, 2025 |
| MORRIS BART, LLC | § | 1:31 P.M. TO 5:24 P.M. |

### **HEARING ON MOTION FOR SUMMARY JUDGMENT**

BEFORE THE HONORABLE EDUARDO V. RODRIGUEZ
UNITED STATES BANKRUPTCY JUDGE

APPEARANCES:                    SEE NEXT PAGE

CASE MANAGER:                   JEANNIE CHAVEZ

COURTROOM ERO:                  ANA CASTRO

TRANSCRIPTION SERVICE BY:

JUDICIAL TRANSCRIBERS OF TEXAS, LLC
935 Eldridge Road, #144
Sugar Land, TX 77478
281-277-5325
www.judicialtranscribers.com

Proceedings recorded by electronic sound recording,
transcript produced by transcription service.

EXHIBIT 10

2

**APPEARANCES:**

FOR MMA LAW FIRM, PLLC,          WALKER & PATTERSON, PC
ET AL.:                          Johnie J. Patterson, Esq.
                                 P.O. Box 61301
                                 Houston, TX 77208
                                 713-956-5577

FOR MORRIS BART, LLC:            MILLER THIBODEAUX DYSART
                                   VEITH & PASCHAL, LLC
                                 Rebekka C. Veith, Esq.
                                 643 Magazine Street
                                 Suite 405
                                 New Orleans, LA 70130
                                 504-977-9158

                                 THE PROBUS LAW FIRM
                                 Matthew B. Probus, Esq.
                                 10497 Town & Country Way
                                 Suite 930
                                 Houston, TX 77024
                                 713-258-2700

FOR THE OFFICIAL COMMITTEE       LAWSON & MOSHENBERG, PLLC
OF UNSECURED CREDITORS:          Avi Moshenberg, Esq.
                                 801 Travis Street
                                 Suite 2101
                                 Houston, TX 77002
                                 713-316-9155

EXHIBIT 10

3

HOUSTON, TEXAS; MONDAY, JULY 14, 2025; 1:31 P.M.

COURT SECURITY OFFICER: All rise.

THE COURT: Okay. Please be seated.

All right. Now taking up the 1:30 matter. I'm taking appearances in 24-3127, MMA Law Firm, PLLC versus Morris Bart, LLC.

Mr. Patterson?

MR. PATTERSON: Good afternoon, Your Honor. Johnie Patterson here on behalf of MMA, the Debtor and Plaintiff.

THE COURT: Thank you.

MS. VEITH: Good afternoon, Your Honor. Rebekka Veith here on behalf of Morris Bart, LLC, the Defendant.

THE COURT: Thank you.

All right. Before we get started, this is oral arguments on summary judgment, I do want to let the parties know that about 3:45 we have the United States Postal Service celebrating 150th year anniversary, so there's a large group of visitors in the courthouse and they're going to be touring my courtroom about 3:45.

So we're going to take about 1/2 hour, or 45 minute recess around that time to allow them to, you know, take over my courtroom essentially. And then we'll get back on the Record, we'll -- just stay close by once we break for recess and we'll let you know when we're ready to get started.

MR. PROBUS: Would you allow me to make a quick

94

THE COURT: Thank you. Please be seated.

All right. Resuming with the 24-3127, matter -- do we have Mr. Moshberg on the call?

(No verbal response)

THE COURT: I don't see him on the call. Let's give him a few minutes.

(Participants confer)

MS. VEITH: I think he may have just joined.

THE COURT: Okay. Thank you.

MR. PATTERSON: He said he's having an audio issue, but he's ...

(Pause in proceedings)

THE COURT: Mr. Moshenberg?

MR. MOSHENBERG: Hi, Your Honor. I apologize for that, Your Honor. I was -- I had some weird hold music, for some reason, and I couldn't get on.

THE COURT: Very well. Are you ready to proceed?

MR. MOSHENBERG: Whenever you are, Your Honor.

THE COURT: Go ahead. We're back on the record.

MR. MOSHENBERG: Well, thank you, Judge. I will be very short, I promise. I think Mr. Patterson did a really good job covering the major issues.

Just to pick up where we left off, I think it is worth pointing out, again, their argument on the basis of unauthorized practice of law, that there is a non-recoverable

95

fee here. Mr. Patterson hit it really hard and I totally agree, the Louisiana statute does not let a competing law firm make that argument; that's an argument that belongs to the client, to the party. It doesn't belong to another lawyer or another law firm, especially a competitor law firm.

And in fact, the statute itself only allows you to recover a claim. It doesn't say you can argue the unauthorized practice of law as a defense. And again, you have to be a party, you can't be a law firm to make this argument.

Similarly, in terms of the argument that it's void, I thought Mr. Patterson really explained well to you, Your Honor, the Article III standing issue. And the Court itself flagged there's this argument about Prudential standing, which is actually a little bit different than Article III standing, which is more just judicial self-restraint; that, even if there is, arguably, a case in controversy, there are certain instances where a court will exercise restraint and not go forward with allowing the issue to be litigated. And one of those issues -- and that's called "Prudential standing," as the Court flagged. One of those issues is when you're litigating the rights of others -- right? That are not in the proceeding.

And here, what Morris Bart wants this Court to do is to hold a contract between MMA and its former clients, a party

EXHIBIT 10

105

new or different from one of the litigant's positions. And what I just heard Mr. Moshenberg do is just buttress the position of the defendants.

So we put this in our response to his brief, but I'll say here again we do not think that his arguments or his brief are appropriately considered by this Court because they don't offer a unique amicus perspective, which is the point of an amicus brief.

To respond to Mr. Patterson, there was a lot of time spent on standing. Your Honor, if you can find a case that says a defendant has to have Article III standing, I know that you're smarter than me, but I will know it for sure because I looked up, down, and all over the place. Article III standing is something that a plaintiff has to have, not a defendant.

We are not making a claim in this case. There is no counterclaim, there is no lawsuit by Morris Bart against MMA. We are defendants raising a defense. Standing is not a prerequisite to assert a defense.

And regardless, if it were, as Your Honor, I think, identified, the injury that the Louisiana District Court found was missing is here now because what the Louisiana District Court did is say that Morris Bart could not show that MMA was imminently seeking fees to which Morris Bart believed it was entitled.

I heard a lot from Mr. Patterson that that's what

EXHIBIT 10

106

we're doing. We're -- we -- whether we're doing it appropriately or not, in his view, we believe we're entitled to these fees that MMA is seeking. So the injury that was missing is now present. But it doesn't matter because we do not have to have injury in order to assert a defense.

That's -- and the same thing with Mr. Moshenberg's point about the unauthorized practice of law statute being something that only a plain -- or a client can assert. Correct, only a client can bring a claim for civil liability or injunctive relief under the unauthorized practice of law statute. But that's not what we're doing here. We're not asking you to issue an injunction. We're not asking for relief.

Instead, because Article 2030 says that a contract is an absolute nullity if it is violative of a rule of a public order, we are identifying the rule of public order that it is violative of. That is our defense to the claim. What's -- the posture of this lawsuit is that MMA is saying certain money is property of the estate because we're entitled to it under our contingency fee contracts.

Our defense to that claim is you do not have a valid contract. The reason you do not have a valid contract is because of your -- we're not saying MMA was engaged in --

THE COURT: So your --

MS. VEITH: -- an unauthorized --

EXHIBIT 10

108

MS. VEITH:  -- have to have --

THE COURT:  -- do you have to back that up?  I mean, where are you getting --

MS. VEITH:  Article III --

THE COURT:  -- this argument?

MS. VEITH:  -- which is -- requires a plaintiff to show standing.  I mean, all of the cases that address -- Lujan, any case -- *Spokeo*, which is the most recent one addressing standing, say that a plaintiff has to prove standing.  It is a plaintiff who has to show that they have the ability to avail themselves of the Federal District Court.  We didn't ask to be hauled into this Court.  We are here defending ourselves, so we are presenting a defense to MMA's claims.  We are not asserting our own claim.  We are not asking for any injury to be redressed.

THE COURT:  You're not?

MS. VEITH:  No, it's a -- it is a defense to the injury that they claim.

THE COURT:  Okay.

MS. VEITH:  Thank you, Your Honor.

So there was also discussion by Mr. Patterson of the 40 clients whose cases were settled that we took on after and were referenced in Judge Africk's order.  That's not in the record.  There is no citation to any particular plaintiff whose case was settled prior to Morris Bart taking on the

121

evidence of that, there is zero evidence of that. I know that's the recollection -- or that's the assertion.

But I can tell you that Velawcity was hired as an agent of MMA to operate the call center. I mean, that's what call centers do. There's nothing untoward of that. But again, there is no evidence that there was ever anything said or done on behalf of any client which they were upset with. And we can go to these affidavits, not that it matters because the issue here is whether they have standing to assert these claims and the effect of that.

But let me go to the standing. And to suggest that -- I'm struggling to even argue. But Morris Bart says that yes, we have -- our clients are identical in this case and that we asserted, I think, in the Eastern District, the case that we talked about that was dismissed. Those claims are identical, they stand here and say that. But to assert them as a defendant, as a counterclaim or cross-claim, however you want to talk about it, if it's a claim, you still have to have standing to assert that claim.

This is not a defense. A defense is I didn't do it. A defense is I don't owe the money, I didn't breach the contract, right? Or an affirmative defense that yes, you are correct, yes, your claims are good, but for the statute of limitations, I'm not liable, right? Affirmative defense.

But to assert a claim, defendants assert claims all

EXHIBIT 10

122

the time.  That's what a counterclaim is, right?  So they admit that they're identical, right?  And so how can you assert a claim as a plaintiff that's only a defense?  It makes no sense whatsoever, right?  I can -- the claim is the claim.  And asserting a claim against another party requires standing.

I'm happy to brief that issue.  But plaintiffs generally bring claims, right?  That's the most common thing, and so that's what the cases are going to talk about.  But I guarantee you there's no case that says, if you bring a claim for breach of contract as a defendant, as a counterclaim, you don't have to have Article III standing.  That doesn't even make sense.  I haven't done the research, but I feel highly confident that's not what the law is.

So to say, somehow, that an affirmative claim that I bring as a plaintiff in Court A, and I lose, I bring as a defendant as a counterclaim and I don't have to meet the standing requirements, right?  Standing is kind of the guidepost of the justiciability concept in the Constitution.  There has to be a live controversy, right?  That's what courts do is they determine controversies.  If there's no a controversy, then it's an advisory opinion.  And so that's how it kind of all fits together.

THE COURT:  Uh-huh.

MR. PATTERSON:  So we're saying that the standing

125

*I certify that the foregoing is a correct transcript to the best of my ability produced from the electronic sound recording of the proceedings in the above-entitled matter.*

*/S./ MARY D. HENRY*

*CERTIFIED BY THE AMERICAN ASSOCIATION OF*

*ELECTRONIC REPORTERS AND TRANSCRIBERS, CET\*\*337*

*JUDICIAL TRANSCRIBERS OF TEXAS, LLC*

*JTT TRANSCRIPT #70587*

*DATE FILED:  FEBRUARY 25, 2026*

**IN THE UNITED STATED BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| **IN RE:** | § | |
| | § | |
| **MMA LAW FIRM, PLLC,** | § | **CASE NO: 24-31596** |
| | § | **(Chapter 11)** |
| **Debtor.** | § | |

**<u>ORDER</u>**
**[Ref. Dkt. No. 1577]**

CAME ON the Third Amended Joint Plan of Liquidation (the "Plan"), and the Court having considered the proposed plan and Morris Bart, LLC's Limited Objection to Third Amended Joint Plan of Liquidation, it is:

ORDERED, that sections 11.1.5, 11.1.6, and 11.1.12 of the Plan are hereby stricken and the following provision shall be included in section 11.1 of the Plan:

This section does not expand the Bankruptcy Court's jurisdiction beyond the jurisdiction permitted under 28 U.S.C. §§ 157 and 1334 and does not modify, alter, restrict or change the jurisdiction currently being exercised or that may in the future be exercised by the District Court over the Adversary Proceeding styled *MMA Law Firm, PLLC v. Morris Bart, LLC*, Adv. Pro. No. 24-ap-3127 or Civil Action Nos. 4:24-cv-2793, 4:24-cv-4343, 4:24-cv-4446, 4:25-cv-4059, 4:25-cv-4917, 4:25-cv-5013, and 4:25-cv-5576.

Further it is:

ORDERED, that the following provision shall be included in sections 9.5 and 9.6 of the Plan:

Notwithstanding the foregoing, this section shall not apply to any causes of action or defenses currently pleaded and that could in the future be pleaded in the adversary proceeding styled *MMA Law Firm, PLLC v. Morris Bart, LLC*, Adv. Pro. No. 24-ap-3127 or Civil Action Nos. 4:24-cv-2793, 4:24-cv-4343, 4:24-cv-4446, 4:25-cv-4059, 4:25-cv-4917, 4:25-cv-5013, and 4:25-cv-5576, or any appeals arising from those cases.

EXHIBIT 10