| Fill in this information to identify the case: |
| --- |

Debtor Name _____

United States Bankruptcy Court for the: _____ District of _____

Case number:  _____

❏ Check if this is an amended filing

## Official Form 425C

# Monthly Operating Report for Small Business Under Chapter 11 **12/17**

Month:          _____

Date report filed:     _____
MM / DD / YYYY

Line of business: _____

NAISC code:       _____

**In accordance with title 28, section 1746, of the United States Code, I declare under penalty of perjury that I have examined the following small business monthly operating report and the accompanying attachments and, to the best of my knowledge, these documents are true, correct, and complete.**

Responsible party:                    _____

Original signature of responsible party    _____

Printed name of responsible party         _____

## 1. Questionnaire

Answer all questions on behalf of the debtor for the period covered by this report, unless otherwise indicated.

|  | | Yes | No | N/A |
| --- | --- | --- | --- | --- |
| **If you answer *No* to any of the questions in lines 1-9, attach an explanation and label it *Exhibit A*.** | | | | |
| 1. | Did the business operate during the entire reporting period? | ❏ | ❏ | ❏ |
| 2. | Do you plan to continue to operate the business next month? | ❏ | ❏ | ❏ |
| 3. | Have you paid all of your bills on time? | ❏ | ❏ | ❏ |
| 4. | Did you pay your employees on time? | ❏ | ❏ | ❏ |
| 5. | Have you deposited all the receipts for your business into debtor in possession (DIP) accounts? | ❏ | ❏ | ❏ |
| 6. | Have you timely filed your tax returns and paid all of your taxes? | ❏ | ❏ | ❏ |
| 7. | Have you timely filed all other required government filings? | ❏ | ❏ | ❏ |
| 8. | Are you current on your quarterly fee payments to the U.S. Trustee or Bankruptcy Administrator? | ❏ | ❏ | ❏ |
| 9. | Have you timely paid all of your insurance premiums? | ❏ | ❏ | ❏ |
| **If you answer *Yes* to any of the questions in lines 10-18, attach an explanation and label it *Exhibit B*.** | | | | |
| 10. | Do you have any bank accounts open other than the DIP accounts? | ❏ | ❏ | ❏ |
| 11. | Have you sold any assets other than inventory? | ❏ | ❏ | ❏ |
| 12. | Have you sold or transferred any assets or provided services to anyone related to the DIP in any way? | ❏ | ❏ | ❏ |
| 13. | Did any insurance company cancel your policy? | ❏ | ❏ | ❏ |
| 14. | Did you have any unusual or significant unanticipated expenses? | ❏ | ❏ | ❏ |
| 15. | Have you borrowed money from anyone or has anyone made any payments on your behalf? | ❏ | ❏ | ❏ |
| 16. | Has anyone made an investment in your business? | ❏ | ❏ | ❏ |

Debtor Name _____     Case number_____

17. Have you paid any bills you owed before you filed bankruptcy?   ❏    ❏    ❏

18. Have you allowed any checks to clear the bank that were issued before you filed bankruptcy?   ❏    ❏    ❏

## 2. Summary of Cash Activity for All Accounts

19. **Total opening balance of all accounts**

    This amount must equal what you reported as the cash on hand at the end of the month in the previous month. If this is your first report, report the total cash on hand as of the date of the filing of this case.

    $ _____

20. **Total cash receipts**

    Attach a listing of all cash received for the month and label it *Exhibit C*. Include all cash received even if you have not deposited it at the bank, collections on receivables, credit card deposits, cash received from other parties, or loans, gifts, or payments made by other parties on your behalf. Do not attach bank statements in lieu of *Exhibit C*.

    Report the total from *Exhibit C* here.    $ _____

21. **Total cash disbursements**

    Attach a listing of all payments you made in the month and label it *Exhibit D*. List the date paid, payee, purpose, and amount. Include all cash payments, debit card transactions, checks issued even if they have not cleared the bank, outstanding checks issued before the bankruptcy was filed that were allowed to clear this month, and payments made by other parties on your behalf. Do not attach bank statements in lieu of *Exhibit D*.

    Report the total from *Exhibit D* here.    **–** $ _____

22. **Net cash flow**

    Subtract line 21 from line 20 and report the result here.
    This amount may be different from what you may have calculated as *net profit*.    **+** $ _____

23. **Cash on hand at the end of the month**

    Add line 22 + line 19. Report the result here.

    Report this figure as the *cash on hand at the beginning of the month* on your next operating report.    **=** $ _____

    This amount may not match your bank account balance because you may have outstanding checks that have not cleared the bank or deposits in transit.

## 3. Unpaid Bills

Attach a list of all debts (including taxes) which you have incurred since the date you filed bankruptcy but have not paid. Label it *Exhibit E*. Include the date the debt was incurred, who is owed the money, the purpose of the debt, and when the debt is due. Report the total from *Exhibit E* here.

24. **Total payables**    $ _____

    *(Exhibit E)*

Debtor Name _____   Case number_____

### 4. Money Owed to You

Attach a list of all amounts owed to you by your customers for work you have done or merchandise you have sold. Include amounts owed to you both before, and after you filed bankruptcy. Label it *Exhibit F*. Identify who owes you money, how much is owed, and when payment is due. Report the total from *Exhibit F* here.

25. **Total receivables**   $ _____

   *(Exhibit F)*

### 5. Employees

26. What was the number of employees when the case was filed?   _____

27. What is the number of employees as of the date of this monthly report?   _____

### 6. Professional Fees

28. How much have you paid this month in professional fees related to this bankruptcy case?   $ _____

29. How much have you paid in professional fees related to this bankruptcy case since the case was filed?   $ _____

30. How much have you paid this month in other professional fees?   $ _____

31. How much have you paid in total other professional fees since filing the case?   $ _____

### 7. Projections

Compare your actual cash receipts and disbursements to what you projected in the previous month. Projected figures in the first month should match those provided at the initial debtor interview, if any.

| | Column A | | Column B | | Column C |
|---|---|---|---|---|---|
| | **Projected** | − | **Actual** | = | **Difference** |
| | Copy lines 35-37 from the previous month's report. | | Copy lines 20-22 of this report. | | Subtract Column B from Column A. |
| 32. **Cash receipts** | $ _____ | − | $ _____ | = | $ _____ |
| 33. **Cash disbursements** | $ _____ | − | $ _____ | = | $ _____ |
| 34. **Net cash flow** | $ _____ | − | $ _____ | = | $ _____ |

35. Total projected cash receipts for the next month:   $ _____

36. Total projected cash disbursements for the next month:   − $ _____

37. Total projected net cash flow for the next month:   = $ _____

Debtor Name _____    Case number_____

<table>
<tr><td style="background:black; width:60px;"> </td><td>

## 8. Additional Information
</td></tr>
</table>

If available, check the box to the left and attach copies of the following documents.

❑  38.  Bank statements for each open account (redact all but the last 4 digits of account numbers).

❑  39.  Bank reconciliation reports for each account.

❑  40.  Financial reports such as an income statement (profit & loss) and/or balance sheet.

❑  41.  Budget, projection, or forecast reports.

❑  42.  Project, job costing, or work-in-progress reports.

# MMA Law Firm
Profit and Loss
June 2026

| | Total |
|---|---|
| **Income** | |
| Operating Income | |
| Attorney Fee Income | |
| Co-Counsel Partner Fees | 226,170.80 |
| **Total for Attorney Fee Income** | **$226,170.80** |
| **Total for Operating Income** | **$226,170.80** |
| **Total for Income** | **$226,170.80** |
| **Gross Profit** | **$226,170.80** |
| **Expenses** | |
| General Administrative Expenses | |
| Bank Charges & Fees | 56.10 |
| Computer & Software | $3,908.00 |
| Software & Subscriptions | 4,136.93 |
| **Total for Computer & Software** | **$8,044.93** |
| Insurance | |
| Medical/Dental/Vision Insurance | 11,590.28 |
| **Total for Insurance** | **$11,590.28** |
| Payroll | |
| Payroll Fees | 1,987.72 |
| Payroll Taxes | 6,351.81 |
| Retirement Plans | 20,486.39 |
| Subcontractors | 3,263.00 |
| Wages | 82,441.34 |
| **Total for Payroll** | **$114,530.26** |
| Postage And Delivery | 21.20 |
| Professional Fees | $140,767.09 |
| Legal Fees | 1,815.02 |
| **Total for Professional Fees** | **$142,582.11** |
| Rent & Utilities | |
| Office Rent | 7,870.70 |
| Utilities | |
| Internet | 553.00 |
| Telephone | 726.12 |
| **Total for Utilities** | **$1,279.12** |
| **Total for Rent & Utilities** | **$9,149.82** |

Cash Basis  Monday, July 20, 2026 01:31 PM GMT-05:00

# MMA Law Firm
Profit and Loss
June 2026

|  | Total |
|---|---|
| Taxes & Licenses | -686.26 |
| Total for General Administrative Expenses | $285,288.44 |
| Total for Expenses | $285,288.44 |
| Net Operating Income | -$59,117.64 |
| Other Income | |
| Interest Income | 56.10 |
| Total for Other Income | $56.10 |
| Net Other Income | $56.10 |
| Net Income | -$59,061.54 |

Cash Basis  Monday, July 20, 2026 01:31 PM GMT-05:00

Exhibit A

| Answered No: | Explanation: |
|---|---|
| | |
| 3. Have you paid all of your bills on time? | See Exhibit E. |
| 6. Have you timely filed your tax returns and paid all of your taxes? | Due to Hurricane Beryl, the deadline has been extended to February 3, 2025; however, CPA filed 2023 tax return in November. Extension filed for 2024 tax return and return was filed on 9/15/2025. CPA filed extension for 2025 Taxes. |
| 7. Have you timely filed all other required government filings? | 2023 Franchise Tax was filed and paid on 9/17/2024 - this was not a timely filing. Property taxes have not been filed - working with CPA to get this submitted. 2024 Franchise Tax Return filed on 5/15/2025. Property Rendition submitted and payment made March/April 2026. |
| | |
| | |
| **Answered Yes, but providing additional explanation:** | **Explanation:** |
| | |
| | |
| 5. Have you deposited all the receipts for your business into debtor in possession (DIP) accounts? | Restyled 2 Operating Accounts to DIP Accounts August 2024. Designation of DIP account for Veritex was on 8/8/2024 and for Chase was on 8/13/2024. Veritex is now known as Huntington Bank |
| 9. Have you timely paid all of your insurance premiums? | Secured General Liability Insurance through The Hartford effective 8/27/2024 - the yearly premium amount was timely paid. Still working to secure Professional Liability coverage. |

Exhibit B

| Answered Yes: | Explanation: |
|---|---|
|  |  |
|  |  |
| 10. Do you have any bank accounts open other than the DIP accounts? | Huntington IOLTAs (2) and Chase IOLTA |
| 15. Have you borrowed money from anyone or has anyone made any payments on your behalf? | Zach Moseley used personal credit card to pay for debtor expenses due.  Some vendors only accept credit card payments. |
| 17. Have you paid any bills you owed before you filed bankruptcy? | Yes - see bank statements |
|  |  |
|  |  |
| **Answered No, but providing additional explanation:** | **Explanation:** |
|  |  |
|  |  |
| 13. Did any insurance company cancel your policy? | None cancelled. Were not renewed. Secured General Liability Insurance through The Hartford effective 8/27/2024. Still working to secure Professional Liability coverage. |
|  |  |

Exhibit C

| SA# | Case Name | Attorney Fees and Costs, Other | Deposit Date |
|---|---|---|---|
| | | | |
| TBD | La Peninsula COA Inc/Legal Fees | $ 12,000.00 | 6/3/2026 |
| | | | |
| TBD | TBD | $ 208,200.13 | 6/8/2026 |
| | | | |
| | | | |
| 2208629 | Diana Spriggens v. Southern Fidelity Insurance Company | $ 2,333.17 | 6/25/2026 |
| 2210440 | Christopher Washington v. Lighthouse Excalibur Insurance Company | $ 2,437.50 | 6/25/2026 |
| 2300633 | Rosalinde Russs v. Louisiana Citizens Property Insurance Corporation | $ 1,200.00 | 6/25/2026 |
| | | | |
| N/A | N/A | $ 686.26 | 6/22/2026 |
| | | | |
| | | | |

| SA# | Case Name | Attorney Fees and Costs | Transfer from Trust Date |
|---|---|---|---|
| | | | |
| None | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | Total: | $226,857.06 | |

| Date Paid | Payee | Purpose | Amount | Notes |
|---|---|---|---|---|
| | | | | |
| | | | | |
| 6/1/2026 | Maddox Thomson and Associates | Tax Preparation | $8,500.00 | |
| 6/1/2026 | Deel, Inc | Contractors | $1,055.00 | |
| 6/2/2026 | Fidelity | 401k | $3,134.88 | |
| 6/2/2026 | Walker & Patterson | Atty Fees/Expenses for WP Case Recoveries | $1,815.02 | |
| 6/2/2026 | Definiti | Cash Balance Plan | $11,081.75 | |
| 6/3/2026 | DZMI (David Z. Mafrige Interests) | Rent - 1235 N. Loop West, Ste 810 | $7,870.70 | |
| 6/4/2026 | ADP | Medical Benefits | $11,633.96 | |
| 6/9/2026 | John Zachary Moseley | Reimbursements (May 1 - May 31) Firm expenses paid with personal CC | $4,239.30 | |
| 6/9/2026 | ADP | Payroll | $43,247.49 | |
| 6/17/2026 | Deel, Inc | Contractors | $1,153.00 | |
| 6/16/2026 | Comcast | Internet | $553.00 | |
| 6/17/2026 | Fidelity | 401k | $3,134.88 | |
| 6/17/2026 | Verizon | Cell Phone | $166.37 | |
| 6/24/2026 | Lawson Moshenberg | UCC Counsel Fees | $132,267.09 | |
| 6/24/2026 | ADP | Payroll | $43,184.88 | |
| 6/25/2026 | Obacks | Telephone | $559.75 | |
| 6/25/2026 | N8 Solutions | Colocation | $675.00 | |
| 6/25/2026 | N8 Solutions | Colocation | $3,225.00 | |
| 6/30/2026 | Deel, Inc | Contractors | $1,055.00 | |
| 6/30/2026 | Fidelity | 401k | $3,134.88 | |
| | | | | |
| | | | | |
| | | | | |
| 6/30/2026 | Print Boss | Check Printing Software | $8.00 | CC Only. Used Zach's personal CC to submit payment. |
| 6/30/2026 | Microsoft | Microsoft Licenses | $3,246.92 | CC Only. Used Zach's personal CC to submit payment. |
| 6/30/2026 | Intuit | Accouting Software | $293.15 | CC Only. Used Zach's personal CC to submit payment. |
| 6/30/2026 | Phone Burner | Application for outbound calls and voicemails | $207.87 | CC Only. Used Zach's personal CC to submit payment. |
| 6/30/2026 | Adobe | Adobe Pro Licenses | $207.75 | CC Only. Used Zach's personal CC to submit payment. |
| 6/30/2026 | Stamps.com | Mailing | $21.20 | CC Only. Used Zach's personal CC to submit payment. |
| 6/30/2026 | Loom | Video Recording Software | $18.00 | CC Only. Used Zach's personal CC to submit payment. |
| 6/30/2026 | Anthropic | AI | $133.25 | CC Only. Used Zach's personal CC to submit payment. |
| 6/30/2026 | Rev | AI | $29.99 | CC Only. Used Zach's personal CC to submit payment. |
| | | | | |
| | | | | |
| | | Total: | $285,853.08 | |

Exhibit E

| | Due Date | Expense | Description | Amount |
|---|---|---|---|---|
| Non Essential | 6/1/2026 | Elmwood Self Storage | Storage Unit in LA - Two storage units for MMA's nola office furniture | $1,305.60 |
| | 6/8/2026 | SBA EIDL Loan | Loan Payment - - Type: Disaster COVID - 19 Economic Injury | $731.00 |
| | 6/11/2026 | James McClenny | AMEX payments - payment plan | $10,992.00 |
| | 6/11/2026 | Chase Ink - Business (5500) | CC Payment - Unknown balance on account, no longer have access. | $0.00 |
| | 6/20/2026 | Superior Office Products (no longer accruing charges as of 8/16) | Xerox machines (usage) - This is the base monthly usage price for the Xerox machines we lease. These machines are not currently in use but are under contract | $200.03 |
| | 6/28/2026 | PHMG | Audio Branding - Professional audio recordings that do the "robot" greetings for when client calls in. Contract is too expensive to cancel. | $355.00 |
| | 6/21/2026 | Xerox | 3 Licenses (monthly lease) *multiple invoices | $1,800.00 |
| | | | | |
| | | | | |
| | | | | $15,383.63 |

| Plaintiff | State | Attorney Fees | Case Expenses | Total | Due Date | |
|---|---|---|---|---|---|---|
| Hollen, Renardo | MS | $4,259.02 | $383.31 | $4,642.33 | 3/4/2024 | |
| Albert, Reginald | LA | $7,009.41 | $630.85 | $7,640.26 | 2/21/2024 | |
| Vernon, David | TX | $2,519.30 | | $2,519.30 | 1/13/2024 | |
| McCollister, Ryan | AL | $18,282.45 | $15,045.40 | $33,327.85 | 3/31/2024 | |
| Moten, Ralph | LA | $3,333.33 | $2,500.00 | $5,833.33 | 2/21/2024 | |
| O'Connor, Victoria | TX | $9,799.78 | $8,022.78 | $17,822.56 | 10/17/2023 | |
| Tubby, Gary | FL | $4,000.00 | $2,500.00 | $6,500.00 | 12/13/2023 | |
| Conn, Chris | FL | $11,103.35 | $1,332.40 | $12,435.75 | 10/26/2023 | |
| Lewis, Jeanne | FL | $3,128.60 | $281.57 | $3,410.17 | 3/31/2024 | |
| Watts, Andria M. | FL | $12,035.38 | $1,110.50 | $13,145.88 | 3/31/2024 | |
| England, Janet | FL | $146.34 | $13.17 | $159.51 | 3/31/2024 | |
| Phillips, Mark | FL | $928.15 | $111.38 | $1,039.53 | 3/31/2024 | |
| Phillips, Mark | FL | $5,561.06 | $0.00 | $5,561.06 | 3/31/2024 | |
| Apollon, Joseph | FL | $16,500.00 | $500.00 | $17,000.00 | 3/4/2024 | |
| Apollon, Joseph | FL | $5,578.99 | $502.61 | $6,081.60 | 3/4/2024 | |
| Phieffer, Stacey | FL | $16,674.20 | $2,089.37 | $18,763.57 | 3/31/2024 | |
| Priestap, Charles | FL | $5,901.78 | $2,000.00 | $7,901.78 | 3/31/2024 | |
| Ploettner, Robert | FL | $2,725.08 | $327.34 | $3,052.42 | 3/31/2024 | |
| Ploettner, Robert | FL | $2,730.07 | $0.00 | $2,730.07 | 3/31/2024 | |
| State, James | FL | $8,558.96 | $0.00 | $8,558.96 | 12/26/2023 | |
| Vantassell, Stephenie | FL | $1,356.89 | $227.44 | $1,584.33 | 3/31/2024 | |
| Strong, Jessie | FL | $3,950.70 | $484.55 | $4,435.25 | 3/31/2024 | |
| Scott, Robert | FL | $3,003.81 | $1,000.00 | $4,003.81 | 9/27/2023 | |
| Shuey, Carmela | FL | $501.53 | $0.00 | $501.53 | 3/31/2024 | |
| Blaney, Lillian | FL | $3,970.00 | $1,510.34 | $5,480.34 | 3/31/2024 | |
| Alladin, Nazir | FL | $3,936.34 | $354.30 | $4,290.64 | 3/31/2024 | |
| Martin-Ring, Debra | FL | $50.00 | $50.00 | $100.00 | 3/1/2024 | |
| Martin-Ring, Debra | FL | $4,596.80 | $137.90 | $4,734.70 | 3/1/2024 | |
| Ronald Palmer | FL | $6,198.08 | $1,859.42 | $8,057.50 | 3/8/2024 | |
| Jason Joy and Associates - Sona Doherty | LA | $5,675.78 | $3,021.16 | $8,696.94 | 6/13/2024 | |
| Jason Joy and Associates - Sona Doherty | LA | $2,128.44 | $191.56 | $2,320.00 | 6/13/2024 | |
| Alecia & Christopher Rubar | LA | $133.33 | $12.00 | $145.33 | 6/5/2024 | |
| Daly and Black | (Mass Text Reimbursement) | | | $3,701.64 | 12/31/2023 | |
| Galindo | (Reimbursement - Corleano Gatson) | | | $3,333.33 | 12/11/2023 | |
| KKTL | (Reimbursement - Corleano Gatson) | | | $3,333.33 | 12/11/2023 | |
| Herman Finley Allshouse | LA | $304.04 | $45.61 | $349.65 | 6/29/2024 | |
| Gavin Berthelot | LA | $13,820.51 | $4,500.00 | $18,320.51 | 8/10/2024 | |
| Daly and Black - Travis Nelson | LA | $6,211.82 | $2,500.00 | $8,711.82 | 8/11/2024 | |
| The Voorhies Law Firm - Robert Porter | LA | $11,451.00 | $6,062.00 | $17,513.00 | 8/11/2024 | |
| The Chopin Law Firm - Sandra Newsham | LA | $23,507.04 | $2,931.53 | $26,438.57 | 8/11/2024 | |
| Broussard & Dove - Larry Turner | LA | $7,935.28 | $2,500.00 | $10,435.28 | 8/11/2024 | |
| Laborde Earles Injury Lawyers - Trinia Stroud | LA | $6,195.23 | $2,902.00 | $9,097.23 | 8/11/2024 | |
| Law Office Heather C. Ford - Kristen Stewart | LA | $1,123.78 | $1,159.37 | $2,283.15 | 8/11/2024 | Invoice and Check returned , next steps TBD |
| Daly and Black - Jonathan Heigl | LA | $3,222.48 | $5,000.00 | $8,222.48 | 8/11/2024 | Invoice and Check returned , next steps TBD |
| Webster Vicknair MacLeod - Pamela Davillier | MS | $1,234.23 | $2,247.47 | $3,481.70 | 8/31/2024 | |
| Webster Vicknair MacLeod - Delois Howell | MS | $638.24 | $57.44 | $695.68 | 8/31/2024 | |
| Joey Jenkins | LA | $2,224.60 | $166.85 | $2,391.45 | 8/31/2024 | |
| Windy Law - Thomas Leonard | FL | $919.90 | $1,500.00 | $2,419.90 | 8/31/2024 | |
| Michael Toth | FL | $3,241.52 | $1,000.00 | $4,241.52 | 8/31/2024 | |
| Daly & Black - Garnet Sanibel | FL | $18,716.07 | $2,500.00 | $21,216.07 | 8/21/2024 | |
| Windy Law - Dana Lawrence | FL | $2,753.56 | $5,750.00 | $8,503.56 | 8/21/2024 | |
| Marshall Troglen | MS | $5,284.38 | $3,050.00 | $8,334.38 | 9/26/2024 | |
| Janet England | FL | $6,788.44 | | $6,788.44 | 9/26/2024 | |
| Pandit Law - C. Properties | LA | $8,474.19 | $2,500.00 | $10,974.19 | 10/16/2024 | |
| Gregory Takacs | FL | $99.27 | $11.91 | $111.18 | 10/16/2024 | |
| VG Law Group - Jeff Trostad | FL | $3,232.93 | $2,474.93 | $5,707.86 | 10/16/2024 | |
| VG Law Group - Patrick Theilmann | FL | $1,631.66 | $2,500.00 | $4,131.66 | 10/16/2024 | |
| Beatrice Palmer obo Frank Palmer | LA | $24,982.00 | $3,000.00 | $27,982.00 | 10/25/2024 | |
| Betty Carruth | MS | $885.78 | $79.80 | $965.58 | 12/5/2024 | |
| Donna LeDay | LA | $5,500.00 | $0.00 | $5,500.00 | 2/5/2025 | |
| Anthony Rock | LA | $13,948.63 | $1,508.70 | $15,457.33 | 3/28/2025 | |
| Kevin Woodland | MO | $14,158.43 | $25,425.90 | $39,584.33 | 8/23/2025 | |
| Kevin Woodland | MO | $6,769.55 | | $6,769.55 | 9/11/2025 | |

Exhibit F

| Plaintiff | State | Attorney Fees | Case Expenses | Total | Due Date | |
|---|---|---|---|---|---|---|
| | | | | $509,472.67 | | |

MMA Law Firm

**Chase Operating, Period Ending 05/29/2026**

**RECONCILIATION REPORT**

Reconciled on: 06/22/2026

Reconciled by: Morgan Gallacher

Any changes made to transactions after this date aren't included in this report.

| Summary | USD |
| --- | --- |
| Statement beginning balance | 48,667.93 |
| Checks and payments cleared (0) | 0.00 |
| Deposits and other credits cleared (0) | 0.00 |
| Statement ending balance | 48,667.93 |
| | |
| Register balance as of 05/29/2026 | 48,667.93 |



MMA LAW FIRM, PLLC
1235 NORTH LOOP W STE 810
HOUSTON TX 77008-1764

*Have a Question or Concern?*

Stop by your nearest
Huntington office or
contact us at:

1-800-480-2001

www.huntington.com/
businessresources

## *Huntington Business Analyzed Checking*       *Account: -------3908*

| **Statement Activity From:** 06/01/26 to 06/30/26 | | **Beginning Balance** | $2,679,342.91 |
|---|---|---|---|
| | | **Credits (+)** | **226,857.06** |
| | | Regular Deposits | 226,857.06 |
| Days in Statement Period | 30 | **Debits (-)** | **281,686.95** |
| | | Regular Checks Paid | 8,500.00 |
| Average Ledger Balance* | 2,731,528.34 | Electronic Withdrawals | 25,717.46 |
| Average Collected Balance* | 2,723,566.44 | Wire Transfer Debits | 247,469.49 |
| | | **Ending Balance** | **$2,624,513.02** |
| * The above balances correspond to the service charge cycle for this account. | | | |

## *Deposits (+)*       *Account:-------3908*

| Date | Amount | Serial # | Type | Date | Amount | Serial # | Type |
|---|---|---|---|---|---|---|---|
| 06/03 | 12,000.00 | | Remote | 06/22 | 686.26 | | Remote |
| 06/08 | 208,200.13 | | Remote | 06/25 | 5,970.67 | | Remote |

## *Checks (-)*       *Account:-------3908*

| Date | Amount | Check # | Date | Amount | Check # |
|---|---|---|---|---|---|
| 06/08 | 8,500.00 | 15268 | | | |

(*) Indicates the prior sequentially numbered check(s) may have 1) been voided by you 2) not yet been presented 3) appeared on a previous statement or 4) been included in a list of checks.

## *Other Debits (-)*       *Account:-------3908*

| Date | Amount | Description |
|---|---|---|
| 06/01 | 1,055.00 | Deel, Inc. ██████████████████ |
| 06/02 | 1,815.02 | OUTGOING FEDWIRE TRANSFER - MANUAL |
| 06/02 | 11,081.75 | OUTGOING FEDWIRE TRANSFER - MANUAL |
| 06/02 | 3,134.88 | FIDELITY ████████████████████ |
| 06/03 | 7,870.70 | MLCSV15 LLC ██████████████ |
| 06/04 | 11,633.96 | OUTGOING FEDWIRE TRANSFER - MANUAL |
| 06/09 | 4,239.30 | OUTGOING FEDWIRE TRANSFER - MANUAL |
| 06/09 | 43,247.49 | OUTGOING FEDWIRE TRANSFER - MANUAL |

Investments are offered through the Huntington Investment Company, Registered Investment Advisor, member FINRA/SIPC, a wholly-owned subsidiary of Huntington Bancshares Inc.

The Huntington National Bank is Member FDIC. █ ®, Huntington ® and 24-Hour Grace ® are federally registered service marks of Huntington Bancshares Incorporated. The 24-Hour Grace® system and method is patented: US Pat. No. 8,364,581, 8,781,955, 10,475,118, and others pending. ©2026 Huntington Bancshares Incorporated.



## Other Debits (-)
<em>Account:-------3908</em>

| Date | Amount | Description |
|------|--------|-------------|
| 06/16 | 553.00 | COMCAST-XFINITY  |
| 06/17 | 166.37 | ACHMA VISB BILL PYMNT |
| 06/17 | 1,153.00 | Deel, Inc. |
| 06/17 | 3,134.88 | FIDELITY |
| 06/24 | 43,184.88 | OUTGOING FEDWIRE TRANSFER - MANUAL |
| 06/24 | 132,267.09 | OUTGOING FEDWIRE TRANSFER - MANUAL |
| 06/25 | 559.75 | OBACKS |
| 06/25 | 675.00 | N8 SOLUTIONS LLC |
| 06/25 | 3,225.00 | N8 PROTECT SALE |
| 06/30 | 1,055.00 | Deel, Inc. |
| 06/30 | 3,134.88 | FIDELITY 6821R C FPRS |

## Balance Activity
<em>Account:-------3908</em>

| Date | Balance | Date | Balance | Date | Balance |
|------|---------|------|---------|------|---------|
| 05/31 | 2,679,342.91 | 06/08 | 2,854,451.73 | 06/24 | 2,627,191.98 |
| 06/01 | 2,678,287.91 | 06/09 | 2,806,964.94 | 06/25 | 2,628,702.90 |
| 06/02 | 2,662,256.26 | 06/16 | 2,806,411.94 | 06/30 | 2,624,513.02 |
| 06/03 | 2,666,385.56 | 06/17 | 2,801,957.69 | | |
| 06/04 | 2,654,751.60 | 06/22 | 2,802,643.95 | | |

---

**In the Event of Errors or Questions Concerning Electronic Fund Transfers** (electronic deposits, withdrawals, transfers, payments, or purchases), please call either 1-614-480-2001 or call toll free 1-800-480-2001, or write to The Huntington National Bank Research - EA4W61, P.O. Box 1558, Columbus, Ohio 43216 as soon as you can, if you think your statement or receipt is wrong or if you need more information about an electronic fund transfer on the statement or receipt. We must hear from you no later than 60 days after we sent you the FIRST statement on which the error or problem appeared.

1. Tell us your name, your business's name (if appropriate) and the Huntington account number (if any).
2. Describe the error or the transaction you are unsure about, and explain as clearly as you can why you believe there is an error or why you need more information.
3. Tell us the dollar amount of the suspected error. We will investigate your complaint or question and will correct any error promptly.

**Verification of Electronic Deposits** If you authorized someone to make regular electronic fund transfers of money to your account at least once every sixty days, you can find out whether or not the deposit has been received by us, call either 1-614-480-2001 or call toll free 1-800-480-2001.

**Balancing Your Statement** - For your convenience, a balancing page is available on our web site https://www.huntington.com/pdf/balancing.pdf and also available on Huntington Business Online.



## IMPORTANT INFORMATION ABOUT YOUR TREASURY MANAGEMENT SERVICES AGREEMENT

If you have Treasury Management Services through Business Online, (e.g., Account Reconcilement, Automated Clearing House ("ACH"), Automated Sweep, Business Security Suite, Cash Deposit and Fulfillment, Controlled Disbursement, eBill Present & Pay, Electronic Deposit, Information Reporting, Integrated Payables, Lockbox Services, Wire Transfer, Zero Balance Accounting, etc.) please know that unless otherwise agreed upon, changes have been made to the Treasury Management Services Agreement, effective August 1, 2026. A copy of the Treasury Management Services Agreement can be viewed at www.huntington.com/TMServiceAgreement.

Changes to the Treasury Management Services Agreement (the "Agreement") are as follows:

1. PART VI: CASH VAULT DEPOSIT AND FULFILLMENT SERVICES

   The following sentence has been added to the end of Section 1.A.: "If you reduce the frequency of Armored Courier pick ups without our approval, or you no longer have Armored Courier services (for a period of time or permanently), we may reverse any provisional credits and cease providing provisional credit thereafter. We may also charge an additional fee."

   The following sentence has been added to the end of the first paragraph of Section 3: "If you reduce the frequency of Armored Courier pick ups without our approval, or you no longer have Armored Courier services (for a period of time or permanently), we may reverse any provisional credits and cease providing provisional credit thereafter. We may also charge an additional fee."

2. PART IX: ELECTRONIC DEPOSIT SERVICES

   In Part A, "Section 1" has been deleted.

   The following language has been added to the end of Section B (additional/modified language italicized):

   "*(ix)   you shall at all times require employees accessing this Service to abide by your policies and procedures relating to the creation and management of Electronic Files created by RDC or ICL.*

   *In addition to the foregoing, you represent to us and agree that:*

   (i)   We reserve the right, in our sole discretion, not to accept deposits for any reason; provided, however, that in refusing to accept any deposit, we shall act in good faith and use our reasonable business judgment. You agree not to deposit via RDC or ICL "ineligible items," as that term is used by the Board of Governors of the Federal Reserve. You further agree not to deposit Remotely Created Checks (RCC) without our agreement; and,

   (ii)   *You shall be solely responsible for transmitting or delivering ICLs to us by the times and on the dates specified by us. We may reject any ICL as determined by us, in our sole discretion, to have been submitted after or before the time required by any applicable schedule or deadline. You agree to be solely liable for, and we shall not have any liability whatsoever to you for, any ICL or other information contained therein that is not received by us or for any ICL or other information contained therein that is intercepted or altered by an unauthorized third party. You agree that we have no obligation to accept an ICL and may reject any ICL or other information contained therein submitted by you. We have no obligation to notify you of the rejection of an ICL or other information contained therein or for the failure to notify you of such rejection. Upon receipt of an ICL submitted by you, we may examine such ICL and other information contained therein to verify that you have complied with this Agreement and followed any Implementation Documentation. If we determine that you have not complied with this Agreement or followed the Implementation Documentation or if errors exist in the ICL or other information contained therein, we may, in our sole discretion, reject the ICL. We also reserve the right to charge you for rejected images at the rates disclosed in the fee schedules or otherwise communicated to you from time to time as provided for in this Agreement. We may, at our option, also perform a risk management analysis of one or more ICLs submitted by you to detect potentially fraudulent checks, and, in our sole discretion, we may reject any such ICL or other information contained therein. If the ICL is balanced and the other information contained therein meets the requirements of these provisions, then we may accept the ICL for deposit. Upon*



*acceptance of the ICL, we shall electronically notify you of receipt and acceptance of the ICL for deposit via email as provided by you to us (hereinafter the "Acknowledgment Notification"). The Acknowledgement Notification confirms the ICL has been received and confirms information contained in the ICL such as check volumes and total deposit amount. Information and data reported in the Acknowledgment Notification may be received prior to final posting and confirmation and is subject to correction and is for informational purposes only and may not be relied upon. You agree that we shall have no liability for the content of payment-related information. Notwithstanding the fact that we have accepted an ICL for deposit, any credit made to your account shall be provisional, and you shall remain liable to us for any errors, inaccuracies, breach of warranties and any other loss sustained by, or claim made, against us."*

3. A new PART XIV: INTEGRATED RECEIVABLES is added and the remaining parts re-numbered. Here is the new Part XIV:

**"Section 1. Description of Services.** Our Integrated Receivables Service (the "Service") receives multiple payment types, applies the payments to your customer accounts and invoices, and aggregates your treasury management receivables into one user interface.

The Service includes the following:

    (i)    Importing payments made by check, credit card, electronic fund transfer (EFT), automated clearing house (ACH), and other payment methods;
    (ii)    Extracting key data elements from the payment information;
    (iii)    Auto-matches payments to open invoices and mark matched invoices as paid;
    (iv)    Processes remittance data provided in various formats such as image scans, lockbox files, emails, etc., and then matches this data with the appropriate invoice or invoices; and,
    (v)    Allows you to manually review, manage, and approve exceptions.

**Section 2. Our Obligations.** We will provide a Web Portal where you may access account information, resolve exceptions and manage digital payments. We may modify or terminate certain functionalities in our sole discretion; however, we shall not terminate a core functionality of the Service unless it is replaced by an equivalent functionality.

**Section 3. Your Obligations.** You shall review receivables and resolve exceptions on a regular basis using our Web Portal. You understand that the information available to you in connection with the Service is updated periodically and therefore, at any point in time may not reflect the most up to date information in our records. You acknowledge and agree that the Service does not include any recommendation, guaranty, representation or warranty whatsoever. We shall not be responsible for errors in, or delays regarding, information provided to us by other financial institutions, information provided to us by you or your customers, or other non-Bank sources."

4. A new PART XVI: MOBILE DEPOSITS is added and the remaining parts re-numbered. Here is the new Part XVI:

**Section 1. Mobile Deposit.** We allow you to scan your Checks with software provided by us using equipment you provide (typically a smartphone camera), to create image files that you will send to us and that we may accept for deposit into your Account(s) stated above. You will access Mobile Deposit and make deposits through an approved Communication Method in accordance with our Security Procedures. Deposits will be sent to us in the form of an electronic file containing images of Checks ("Electronic File"). Prior to using the Services, you represent and warrant that you have instituted policies and procedures regarding use of the Services and have trained your staff with access to the Services in accordance with such policies and procedures.

**Section 2. Electronic Files or IRDs.** You will create for deposit an Electronic File where you are the payee or the holder of the Checks. We may create Image Replacement Documents from such Electronic File. The terms "Substitute Check" and "Image Replacement Document" ("IRD") may be used interchangeably and have the same meaning as defined by 12 U.S.C. 5001 et seq. and corresponding regulations. We may refuse to process or return IRDs or the Electronic File for any reason at any time before accepting such IRDs or Electronic Files for deposit; provided, however, that in returning, or refusing to process any deposit, we shall act in good faith and use our reasonable business judgment. Your deposits are deemed made when we accept IRDs or Electronic Files for



deposit. We, in our discretion, may notify you that we will or will not accept IRDs or Electronic Files for deposit. Until we accept the Electronic File or IRDs, any information contained in the Electronic Files or IRDs belongs to and is your sole responsibility. Any information from Checks or items contained in the software belongs to and is your sole responsibility. Any physical Check in your possession or your agent's belongs to and is your sole responsibility.

When you make deposits via Mobile Deposit with Electronic Files, you represent to us and agree that:

i. you are the payee or holder of the Checks;
ii. the Electronic Files contain exact images of the front and back of the Checks which you seek to deposit;
iii. the Electronic Files enable us to create IRDs that meet the definition of "Substitute Check" and conform to all standards prescribed by 12 U.S.C. 5001 et seq. and correcponding regulations;
iv. the Electronic Files do not contain any fraudulent items;
v. no depository bank, drawee, drawer, or endorser will receive presentment or return of an IRD, the original Check, or a copy or other paper or electronic version of an IRD or original Check such that we, a bank, drawer, drawee, or endorser will be asked to make payment based on a Check that bank, drawee or endorser has already paid;
vi. we are able to create IRDs from Electronic Files in such a manner that subsequent endorsements will not render previous endoresements illegible;
vii. Checks are drawn on a financial institution in the United States and are payable in United States currency; and,
viii. you have procedures that require your employees using Mobile Deposit to mark, frank, or otherwise indicate on the physical Check that it has been scanned for electronic deposit, and such marking or franking does not interfere with the MICR line, payee, date, amount (formal and informal), signature, or endorsement on the Check. A proper endorsement shall state, at a minimum, "For Mobile Deposit to The Huntington National Bank".
ix. We reserve the right, in our sole discretion, not to accept deposits for any reason; provided, however, that in refusing to accept any deposit, we shall act in good faith and use our reasonable business judgment. You agree not to deposit via Mobile Deposit "ineligible items," as that term is used by the Board of Governors of the Federal Reserve. You further agree not to deposit Remotely Created Checks (RCC) without our agreement.

**Section 3. Availability of Mobile Deposit.** You must initiate deposits before the applicable cut-off time (as it applies to mobile deposits) on a Business Day in order for us to process such deposits on that Business Day. If you initiate deposits after the applicable cut-off time on a Business Day, we will begin to process such deposits on the next Business Day. Processing of deposits by us does not mean that we have accepted deposits.

**Section 4. Additional Company Responsibilities.** In addition to instituting policies and procedures regarding use of the Services and training its staff with access to the Services in accordance with such policies and procedures, Company also agrees as follows:

(i) Company has implemented and continually maintains a cybersecurity program that includes administrative, technical, and physical safeguards designed to protect the confidentiality and the integrity of Electronic Files and IRDs;
(ii) Company has shared previous three (3) years of Cybersecurity Events and remediation plans, if applicable;
(iii) Company will report to us any successful Cybersecurity Event within three (3) business days of discovery by contacting your primary banking contact;
(iv) Company has procedures in place to limit employee access to the history of deposits sent to Huntington via the Services;
(v) Company retains records of Checks for the length of time required by your applicable state record retention laws;
(vi) Company must shred any original Check after verification of deposit. Original Checks that have been deposited and verified must be destroyed within ninety (90) calendar days. Until you destroy any Check or image of the same, you must, at a minimum, keep such document in a secure locked area or in a password protected environment. If you create an image of the Check, you must create a read-only image that cannot be copied or reproduced; and,
(vii) Company understands that appropriate training and education materials can be accessed through the Web Portal.



**Section 5. Audit.** In order to ensure that you are in compliance with the terms of these Services and Applicable Law, we may conduct periodic onsite visits during reasonable business hours and upon at least twenty-four (24) hours advance notice. Further, you agree to cooperate with us and provide to us any documents or information we request, including, but not limited to, your files, records, and Checks (or images of the same if the originals have been destroyed). You agree to institute reasonable internal controls at our request. Failure to comply with this Section shall be a material breach of this Agreement.

**Section 6. Reserve Account.** If, upon our review of your Account activity, we determine that abuse or unauthorized activity is or may be occurring with respect to these Services, we may require that you maintain a reserve account ("Reserve Account") with a minimum balance equal to the previous month's total deposits or an amount as otherwise requested by us, subject to quarterly adjustment on the first day of each quarter. You grant to us a security interest in, and lien on, the funds in the Reserve Account, to secure the prompt and full payment of all your obligations to us. We will make withdrawals from the Reserve Account for reimbursement in connection with returned deposited items (including those which are the subject of UCC warranty claims). The Reserve Account will be under our sole dominion and control, and you will have no right of withdrawal of any of the funds in the Reserve Account will be under our sole dominion and control, and you will have no right of withdrawal of any of the funds in the Reserve Account, notwithstanding any Account Rules for that account. After you or we terminate these Services, we will turn over the remaining funds in the Reserve Account to you no later than one hundred eighty (180) days after such termination. In the event that the balance in the Reserve Account goes below the required amount for any reason, you shall immediately send us sufficient funds to bring the Reserve Account balance up to the minimum required level and we shall be permitted to debit another Account of yours to fulfill such request."

5. Re-numbered Part XIX: Glossary has a new section (i) as follows:

"Cybersecurity Event" means any observable occurrence within an information system or network that indicates a potential change in security posture, such as a user login, firewall block, or system alert. A successful Cybersecurity Event is an event resulting in unauthorized access to, disruption, or misuse of an information system.

The remaining definitions have been re-lettered.

6. Pages have been re-numbered and typos corrected.

**THE HUNTINGTON NATIONAL BANK**
PO BOX 1558 EA1W37
COLUMBUS OH 43216-1558



MMA LAW FIRM, PLLC
1235 NORTH LOOP W STE 810
HOUSTON TX 77008-1764

*Have a Question or Concern?*

Stop by your nearest
Huntington office or
contact us at:

1-800-480-2001

www.huntington.com/
businessresources

## *Huntington Business Analyzed Checking*                *Account: -------3911*

| Statement Activity From:<br>06/01/26 to 06/30/26 | | Beginning Balance | $16,431.48 |
|---|---|---|---|
| | | Ending Balance | $16,431.48 |
| Days in Statement Period | 30 | | |
| Average Ledger Balance* | 16,431.48 | | |
| Average Collected Balance* | 16,431.48 | | |

\* The above balances correspond to the
service charge cycle for this account.

---

**In the Event of Errors or Questions Concerning Electronic Fund Transfers** (electronic deposits, withdrawals, transfers, payments, or purchases), please call either 1-614-480-2001 or call toll free 1-800-480-2001, or write to The Huntington National Bank Research - EA4W61, P.O. Box 1558, Columbus, Ohio 43216 as soon as you can, if you think your statement or receipt is wrong or if you need more information about an electronic fund transfer on the statement or receipt. We must hear from you no later than 60 days after we sent you the FIRST statement on which the error or problem appeared.

1. Tell us your name, your business's name (if appropriate) and the Huntington account number (if any).
2. Describe the error or the transaction you are unsure about, and explain as clearly as you can why you believe there is an error or why you need more information.
3. Tell us the dollar amount of the suspected error. We will investigate your complaint or question and will correct any error promptly.

**Verification of Electronic Deposits** If you authorized someone to make regular electronic fund transfers of money to your account at least once every sixty days, you can find out whether or not the deposit has been received by us, call either 1-614-480-2001 or call toll free 1-800-480-2001.

**Balancing Your Statement** - For your convenience, a balancing page is available on our web site https://www.huntington.com/pdf/balancing.pdf and also available on Huntington Business Online.

Investments are offered through the Huntington Investment Company, Registered Investment Advisor, member FINRA/SIPC, a wholly-owned subsidiary of Huntington Bancshares Inc.

The Huntington National Bank is Member FDIC. ⑩ ®, Huntington ® and 24-Hour Grace ® are federally registered service marks of Huntington Bancshares Incorporated. The 24-Hour Grace ® system and method is patented: US Pat. No. 8,364,581, 8,781,955, 10,475,118, and others pending. © 2026 Huntington Bancshares Incorporated.



**IMPORTANT INFORMATION ABOUT YOUR TREASURY MANAGEMENT SERVICES AGREEMENT**

If you have Treasury Management Services through Business Online, (e.g., Account Reconcilement, Automated Clearing House ("ACH"), Automated Sweep, Business Security Suite, Cash Deposit and Fulfillment, Controlled Disbursement, eBill Present & Pay, Electronic Deposit, Information Reporting, Integrated Payables, Lockbox Services, Wire Transfer, Zero Balance Accounting, etc.) please know that unless otherwise agreed upon, changes have been made to the Treasury Management Services Agreement, effective August 1, 2026.  A copy of the Treasury Management Services Agreement can be viewed at www.huntington.com/TMServiceAgreement.

Changes to the Treasury Management Services Agreement (the "Agreement") are as follows:

1. PART VI:  CASH VAULT DEPOSIT AND FULFILLMENT SERVICES

   The following sentence has been added to the end of Section 1.A.:  "If you reduce the frequency of Armored Courier pick ups without our approval, or you no longer have Armored Courier services (for a period of time or permanently), we may reverse any provisional credits and cease providing provisional credit thereafter.  We may also charge an additional fee."

   The following sentence has been added to the end of the first paragraph of Section 3:  "If you reduce the frequency of Armored Courier pick ups without our approval, or you no longer have Armored Courier services (for a period of time or permanently), we may reverse any provisional credits and cease providing provisional credit thereafter. We may also charge an additional fee."

2. PART IX:  ELECTRONIC DEPOSIT SERVICES

   In Part A, "Section 1" has been deleted.

   The following language has been added to the end of Section B (additional/modified language italicized):

   "*(ix)   you shall at all times require employees accessing this Service to abide by your policies and procedures relating to the creation and management of Electronic Files created by RDC or ICL.*

   *In addition to the foregoing, you represent to us and agree that:*

   (i)   We reserve the right, in our sole discretion, not to accept deposits for any reason;  provided, however, that in refusing to accept any deposit, we shall act in good faith and use our reasonable business judgment.  You agree not to deposit via RDC or ICL "ineligible items," as that term is used by the Board of Governors of the Federal Reserve.  You further agree not to deposit Remotely Created Checks (RCC) without our agreement; and,

   (ii)   *You shall be solely responsible for transmitting or delivering ICLs to us by the times and on the dates specified by us.  We may reject any ICL as determined by us, in our sole discretion, to have been submitted after or before the time required by any applicable schedule or deadline.  You agree to be solely liable for, and we shall not have any liability whatsoever to you for, any ICL or other information contained therein that is not received by us or for any ICL or other information contained therein that is intercepted or altered by an unauthorized third party.  You agree that we have no obligation to accept an ICL and may reject any ICL or other information contained therein submitted by you.  We have no obligation to notify you of the rejection of an ICL or other information contained therein or for the failure to notify you of such rejection.  Upon receipt of an ICL submitted by you, we may examine such ICL and other information contained therein to verify that you have complied with this Agreement and followed any Implementation Documentation.  If we determine that you have not complied with this Agreement or followed the Implementation Documentation or if errors exist in the ICL or other information contained therein, we may, in our sole discretion, reject the ICL.  We also reserve the right to charge you for rejected images at the rates disclosed in the fee schedules or otherwise communicated to you from time to time as provided for in this Agreement.  We may, at our option, also perform a risk management analysis of one or more ICLs submitted by you to detect potentially fraudulent checks, and, in our sole discretion, we may reject any such ICL or other information contained therein.  If the ICL is balanced and the other information contained therein meets the requirements of these provisions, then we may accept the ICL for deposit.  Upon*



*acceptance of the ICL, we shall electronically notify you of receipt and acceptance of the ICL for deposit via email as provided by you to us (hereinafter the "Acknowledgment Notification"). The Acknowledgement Notification confirms the ICL has been received and confirms information contained in the ICL such as check volumes and total deposit amount. Information and data reported in the Acknowledgment Notification may be received prior to final posting and confirmation and is subject to correction and is for informational purposes only and may not be relied upon. You agree that we shall have no liability for the content of payment-related information. Notwithstanding the fact that we have accepted an ICL for deposit, any credit made to your account shall be provisional, and you shall remain liable to us for any errors, inaccuracies, breach of warranties and any other loss sustained by, or claim made, against us."*

3. A new PART XIV: INTEGRATED RECEIVABLES is added and the remaining parts re-numbered. Here is the new Part XIV:

**"Section 1. Description of Services.** Our Integrated Receivables Service (the "Service") receives multiple payment types, applies the payments to your customer accounts and invoices, and aggregates your treasury management receivables into one user interface.

The Service includes the following:

    (i)    Importing payments made by check, credit card, electronic fund transfer (EFT), automated clearing house (ACH), and other payment methods;

    (ii)   Extracting key data elements from the payment information;

    (iii)  Auto-matches payments to open invoices and mark matched invoices as paid;

    (iv)  Processes remittance data provided in various formats such as image scans, lockbox files, emails, etc., and then matches this data with the appropriate invoice or invoices; and,

    (v)   Allows you to manually review, manage, and approve exceptions.

**Section 2. Our Obligations.** We will provide a Web Portal where you may access account information, resolve exceptions and manage digital payments. We may modify or terminate certain functionalities in our sole discretion; however, we shall not terminate a core functionality of the Service unless it is replaced by an equivalent functionality.

**Section 3. Your Obligations.** You shall review receivables and resolve exceptions on a regular basis using our Web Portal. You understand that the information available to you in connection with the Service is updated periodically and therefore, at any point in time may not reflect the most up to date information in our records. You acknowledge and agree that the Service does not include any recommendation, guaranty, representation or warranty whatsoever. We shall not be responsible for errors in, or delays regarding, information provided to us by other financial institutions, information provided to us by you or your customers, or other non-Bank sources."

4. A new PART XVI: MOBILE DEPOSITS is added and the remaining parts re-numbered. Here is the new Part XVI:

**Section 1. Mobile Deposit.** We allow you to scan your Checks with software provided by us using equipment you provide (typically a smartphone camera), to create image files that you will send to us and that we may accept for deposit into your Account(s) stated above. You will access Mobile Deposit and make deposits through an approved Communication Method in accordance with our Security Procedures. Deposits will be sent to us in the form of an electronic file containing images of Checks ("Electronic File"). Prior to using the Services, you represent and warrant that you have instituted policies and procedures regarding use of the Services and have trained your staff with access to the Services in accordance with such policies and procedures.

**Section 2. Electronic Files or IRDs.** You will create for deposit an Electronic File where you are the payee or the holder of the Checks. We may create Image Replacement Documents from such Electronic File. The terms "Substitute Check" and "Image Replacement Document" ("IRD") may be used interchangeably and have the same meaning as defined by 12 U.S.C. 5001 et seq. and corresponding regulations. We may refuse to process or return IRDs or the Electronic File for any reason at any time before accepting such IRDs or Electronic Files for deposit; provided, however, that in returning, or refusing to process any deposit, we shall act in good faith and use our reasonable business judgment. Your deposits are deemed made when we accept IRDs or Electronic Files for



deposit. We, in our discretion, may notify you that we will or will not accept IRDs or Electronic Files for deposit. Until we accept the Electronic File or IRDs, any information contained in the Electronic Files or IRDs belongs to and is your sole responsibility. Any information from Checks or items contained in the software belongs to and is your sole responsibility. Any physical Check in your possession or your agent's belongs to and is your sole responsibility.

When you make deposits via Mobile Deposit with Electronic Files, you represent to us and agree that:

i. you are the payee or holder of the Checks;
ii. the Electronic Files contain exact images of the front and back of the Checks which you seek to deposit;
iii. the Electronic Files enable us to create IRDs that meet the definition of "Substitute Check" and conform to all standards prescribed by 12 U.S.C. 5001 et seq. and correcponding regulations;
iv. the Electronic Files do not contain any fraudulent items;
v. no depository bank, drawee, drawer, or endorser will receive presentment or return of an IRD, the original Check, or a copy or other paper or electronic version of an IRD or original Check such that we, a bank, drawer, drawee, or endorser will be asked to make payment based on a Check that bank, drawee or endorser has already paid;
vi. we are able to create IRDs from Electronic Files in such a manner that subsequent endorsements will not render previous endoresements illegible;
vii. Checks are drawn on a financial institution in the United States and are payable in United States currency; and,
viii. you have procedures that require your employees using Mobile Deposit to mark, frank, or otherwise indicate on the physical Check that it has been scanned for electronic deposit, and such marking or franking does not interfere with the MICR line, payee, date, amount (formal and informal), signature, or endorsement on the Check. A proper endorsement shall state, at a minimum, "For Mobile Deposit to The Huntington National Bank".
ix. We reserve the right, in our sole discretion, not to accept deposits for any reason; provided, however, that in refusing to accept any deposit, we shall act in good faith and use our reasonable business judgment. You agree not to deposit via Mobile Deposit "ineligible items," as that term is used by the Board of Governors of the Federal Reserve. You further agree not to deposit Remotely Created Checks (RCC) without our agreement.

**Section 3. Availability of Mobile Deposit.** You must initiate deposits before the applicable cut-off time (as it applies to mobile deposits) on a Business Day in order for us to process such deposits on that Business Day. If you initiate deposits after the applicable cut-off time on a Business Day, we will begin to process such deposits on the next Business Day. Processing of deposits by us does not mean that we have accepted deposits.

**Section 4. Additional Company Responsibilities.** In addition to instituting policies and procedures regarding use of the Services and training its staff with access to the Services in accordance with such policies and procedures, Company also agrees as follows:

(i) Company has implemented and continually maintains a cybersecurity program that includes administrative, technical, and physical safeguards designed to protect the confidentiality and the integrity of Electronic Files and IRDs;
(ii) Company has shared previous three (3) years of Cybersecurity Events and remediation plans, if applicable;
(iii) Company will report to us any successful Cybersecurity Event within three (3) business days of discovery by contacting your primary banking contact;
(iv) Company has procedures in place to limit employee access to the history of deposits sent to Huntington via the Services;
(v) Company retains records of Checks for the length of time required by your applicable state record retention laws;
(vi) Company must shred any original Check after verification of deposit. Original Checks that have been deposited and verified must be destroyed within ninety (90) calendar days. Until you destroy any Check or image of the same, you must, at a minimum, keep such document in a secure locked area or in a password protected environment. If you create an image of the Check, you must create a read-only image that cannot be copied or reproduced; and,
(vii) Company understands that appropriate training and education materials can be accessed through the Web Portal.



**Section 5. Audit.** In order to ensure that you are in compliance with the terms of these Services and Applicable Law, we may conduct periodic onsite visits during reasonable business hours and upon at least twenty-four (24) hours advance notice. Further, you agree to cooperate with us and provide to us any documents or information we request, including, but not limited to, your files, records, and Checks (or images of the same if the originals have been destroyed). You agree to institute reasonable internal controls at our request. Failure to comply with this Section shall be a material breach of this Agreement.

**Section 6. Reserve Account.** If, upon our review of your Account activity, we determine that abuse or unauthorized activity is or may be occurring with respect to these Services, we may require that you maintain a reserve account ("Reserve Account") with a minimum balance equal to the previous month's total deposits or an amount as otherwise requested by us, subject to quarterly adjustment on the first day of each quarter. You grant to us a security interest in, and lien on, the funds in the Reserve Account, to secure the prompt and full payment of all your obligations to us. We will make withdrawals from the Reserve Account for reimbursement in connection with returned deposited items (including those which are the subject of UCC warranty claims). The Reserve Account will be under our sole dominion and control, and you will have no right of withdrawal of any of the funds in the Reserve Account will be under our sole dominion and control, and you will have no right of withdrawal of any of the funds in the Reserve Account, notwithstanding any Account Rules for that account. After you or we terminate these Services, we will turn over the remaining funds in the Reserve Account to you no later than one hundred eighty (180) days after such termination. In the event that the balance in the Reserve Account goes below the required amount for any reason, you shall immediately send us sufficient funds to bring the Reserve Account balance up to the minimum required level and we shall be permitted to debit another Account of yours to fulfill such request."

5. Re-numbered Part XIX: Glossary has a new section (i) as follows:

"Cybersecurity Event" means any observable occurrence within an information system or network that indicates a potential change in security posture, such as a user login, firewall block, or system alert. A successful Cybersecurity Event is an event resulting in unauthorized access to, disruption, or misuse of an information system.

The remaining definitions have been re-lettered.

6. Pages have been re-numbered and typos corrected.

THE HUNTINGTON NATIONAL BANK
PO BOX 1558 EA1W37
COLUMBUS OH 43216-1558



MMA LAW FIRM, PLLC
1235 NORTH LOOP W STE 810
HOUSTON TX 77008-1764

*Have a Question or Concern?*

Stop by your nearest
Huntington office or
contact us at:

1-800-480-2001

www.huntington.com/
businessresources

## *Huntington Business Analyzed Checking*       *Account: -------3924*

| Statement Activity From: 06/01/26 to 06/30/26 | | Beginning Balance | $415,944.57 |
|---|---|---|---|
| | | Ending Balance | $415,944.57 |
| Days in Statement Period | 30 | | |
| Average Ledger Balance* | 415,944.57 | | |
| Average Collected Balance* | 415,944.57 | | |

\* The above balances correspond to the
service charge cycle for this account.

---

**In the Event of Errors or Questions Concerning Electronic Fund Transfers** (electronic deposits, withdrawals, transfers, payments, or purchases), please call either 1-614-480-2001 or call toll free 1-800-480-2001, or write to The Huntington National Bank Research - EA4W61, P.O. Box 1558, Columbus, Ohio 43216 as soon as you can, if you think your statement or receipt is wrong or if you need more information about an electronic fund transfer on the statement or receipt. We must hear from you no later than 60 days after we sent you the FIRST statement on which the error or problem appeared.

1. Tell us your name, your business's name (if appropriate) and the Huntington account number (if any).
2. Describe the error or the transaction you are unsure about, and explain as clearly as you can why you believe there is an error or why you need more information.
3. Tell us the dollar amount of the suspected error. We will investigate your complaint or question and will correct any error promptly.

**Verification of Electronic Deposits** If you authorized someone to make regular electronic fund transfers of money to your account at least once every sixty days, you can find out whether or not the deposit has been received by us, call either 1-614-480-2001 or call toll free 1-800-480-2001.

**Balancing Your Statement** - For your convenience, a balancing page is available on our web site https://www.huntington.com/pdf/balancing.pdf and also available on Huntington Business Online.

Investments are offered through the Huntington Investment Company, Registered Investment Advisor, member FINRA/SIPC, a wholly-owned subsidiary of Huntington Bancshares Inc.

The Huntington National Bank is Member FDIC. ⦿ ®, Huntington ® and 24-Hour Grace ® are federally registered service marks of Huntington Bancshares Incorporated. The 24-Hour Grace ® system and method is patented: US Pat. No. 8,364,581, 8,781,955, 10,475,118, and others pending. © 2026 Huntington Bancshares Incorporated.



**IMPORTANT INFORMATION ABOUT YOUR TREASURY MANAGEMENT SERVICES AGREEMENT**

If you have Treasury Management Services through Business Online, (e.g., Account Reconcilement, Automated Clearing House ("ACH"), Automated Sweep, Business Security Suite, Cash Deposit and Fulfillment, Controlled Disbursement, eBill Present & Pay, Electronic Deposit, Information Reporting, Integrated Payables, Lockbox Services, Wire Transfer, Zero Balance Accounting, etc.) please know that unless otherwise agreed upon, changes have been made to the Treasury Management Services Agreement, effective August 1, 2026. A copy of the Treasury Management Services Agreement can be viewed at www.huntington.com/TMServiceAgreement.

Changes to the Treasury Management Services Agreement (the "Agreement") are as follows:

1. PART VI: CASH VAULT DEPOSIT AND FULFILLMENT SERVICES

   The following sentence has been added to the end of Section 1.A.: "If you reduce the frequency of Armored Courier pick ups without our approval, or you no longer have Armored Courier services (for a period of time or permanently), we may reverse any provisional credits and cease providing provisional credit thereafter. We may also charge an additional fee."

   The following sentence has been added to the end of the first paragraph of Section 3: "If you reduce the frequency of Armored Courier pick ups without our approval, or you no longer have Armored Courier services (for a period of time or permanently), we may reverse any provisional credits and cease providing provisional credit thereafter. We may also charge an additional fee."

2. PART IX: ELECTRONIC DEPOSIT SERVICES

   In Part A, "Section 1" has been deleted.

   The following language has been added to the end of Section B (additional/modified language italicized):

   "*(ix)   you shall at all times require employees accessing this Service to abide by your policies and procedures relating to the creation and management of Electronic Files created by RDC or ICL.*

   *In addition to the foregoing, you represent to us and agree that:*

   (i)   We reserve the right, in our sole discretion, not to accept deposits for any reason; provided, however, that in refusing to accept any deposit, we shall act in good faith and use our reasonable business judgment. You agree not to deposit via RDC or ICL "ineligible items," as that term is used by the Board of Governors of the Federal Reserve. You further agree not to deposit Remotely Created Checks (RCC) without our agreement; and,

   (ii)   *You shall be solely responsible for transmitting or delivering ICLs to us by the times and on the dates specified by us. We may reject any ICL as determined by us, in our sole discretion, to have been submitted after or before the time required by any applicable schedule or deadline. You agree to be solely liable for, and we shall not have any liability whatsoever to you for, any ICL or other information contained therein that is not received by us or for any ICL or other information contained therein that is intercepted or altered by an unauthorized third party. You agree that we have no obligation to accept an ICL and may reject any ICL or other information contained therein submitted by you. We have no obligation to notify you of the rejection of an ICL or other information contained therein or for the failure to notify you of such rejection. Upon receipt of an ICL submitted by you, we may examine such ICL and other information contained therein to verify that you have complied with this Agreement and followed any Implementation Documentation. If we determine that you have not complied with this Agreement or followed the Implementation Documentation or if errors exist in the ICL or other information contained therein, we may, in our sole discretion, reject the ICL. We also reserve the right to charge you for rejected images at the rates disclosed in the fee schedules or otherwise communicated to you from time to time as provided for in this Agreement. We may, at our option, also perform a risk management analysis of one or more ICLs submitted by you to detect potentially fraudulent checks, and, in our sole discretion, we may reject any such ICL or other information contained therein. If the ICL is balanced and the other information contained therein meets the requirements of these provisions, then we may accept the ICL for deposit. Upon*



*acceptance of the ICL, we shall electronically notify you of receipt and acceptance of the ICL for deposit via email as provided by you to us (hereinafter the "Acknowledgment Notification"). The Acknowledgement Notification confirms the ICL has been received and confirms information contained in the ICL such as check volumes and total deposit amount. Information and data reported in the Acknowledgment Notification may be received prior to final posting and confirmation and is subject to correction and is for informational purposes only and may not be relied upon. You agree that we shall have no liability for the content of payment-related information. Notwithstanding the fact that we have accepted an ICL for deposit, any credit made to your account shall be provisional, and you shall remain liable to us for any errors, inaccuracies, breach of warranties and any other loss sustained by, or claim made, against us."*

3. A new PART XIV: INTEGRATED RECEIVABLES is added and the remaining parts re-numbered. Here is the new Part XIV:

**"Section 1. Description of Services.** Our Integrated Receivables Service (the "Service") receives multiple payment types, applies the payments to your customer accounts and invoices, and aggregates your treasury management receivables into one user interface.

The Service includes the following:

(i) Importing payments made by check, credit card, electronic fund transfer (EFT), automated clearing house (ACH), and other payment methods;
(ii) Extracting key data elements from the payment information;
(iii) Auto-matches payments to open invoices and mark matched invoices as paid;
(iv) Processes remittance data provided in various formats such as image scans, lockbox files, emails, etc., and then matches this data with the appropriate invoice or invoices; and,
(v) Allows you to manually review, manage, and approve exceptions.

**Section 2. Our Obligations.** We will provide a Web Portal where you may access account information, resolve exceptions and manage digital payments. We may modify or terminate certain functionalities in our sole discretion; however, we shall not terminate a core functionality of the Service unless it is replaced by an equivalent functionality.

**Section 3. Your Obligations.** You shall review receivables and resolve exceptions on a regular basis using our Web Portal. You understand that the information available to you in connection with the Service is updated periodically and therefore, at any point in time may not reflect the most up to date information in our records. You acknowledge and agree that the Service does not include any recommendation, guaranty, representation or warranty whatsoever. We shall not be responsible for errors in, or delays regarding, information provided to us by other financial institutions, information provided to us by you or your customers, or other non-Bank sources."

4. A new PART XVI: MOBILE DEPOSITS is added and the remaining parts re-numbered. Here is the new Part XVI:

**Section 1. Mobile Deposit.** We allow you to scan your Checks with software provided by us using equipment you provide (typically a smartphone camera), to create image files that you will send to us and that we may accept for deposit into your Account(s) stated above. You will access Mobile Deposit and make deposits through an approved Communication Method in accordance with our Security Procedures. Deposits will be sent to us in the form of an electronic file containing images of Checks ("Electronic File"). Prior to using the Services, you represent and warrant that you have instituted policies and procedures regarding use of the Services and have trained your staff with access to the Services in accordance with such policies and procedures.

**Section 2. Electronic Files or IRDs.** You will create for deposit an Electronic File where you are the payee or the holder of the Checks. We may create Image Replacement Documents from such Electronic File. The terms "Substitute Check" and "Image Replacement Document" ("IRD") may be used interchangeably and have the same meaning as defined by 12 U.S.C. 5001 et seq. and corresponding regulations. We may refuse to process or return IRDs or the Electronic File for any reason at any time before accepting such IRDs or Electronic Files for deposit; provided, however, that in returning, or refusing to process any deposit, we shall act in good faith and use our reasonable business judgment. Your deposits are deemed made when we accept IRDs or Electronic Files for



deposit. We, in our discretion, may notify you that we will or will not accept IRDs or Electronic Files for deposit. Until we accept the Electronic File or IRDs, any information contained in the Electronic Files or IRDs belongs to and is your sole responsibility. Any information from Checks or items contained in the software belongs to and is your sole responsibility. Any physical Check in your possession or your agent's belongs to and is your sole responsibility.

When you make deposits via Mobile Deposit with Electronic Files, you represent to us and agree that:

i. you are the payee or holder of the Checks;
ii. the Electronic Files contain exact images of the front and back of the Checks which you seek to deposit;
iii. the Electronic Files enable us to create IRDs that meet the definition of "Substitute Check" and conform to all standards prescribed by 12 U.S.C. 5001 et seq. and correcponding regulations;
iv. the Electronic Files do not contain any fraudulent items;
v. no depository bank, drawee, drawer, or endorser will receive presentment or return of an IRD, the original Check, or a copy or other paper or electronic version of an IRD or original Check such that we, a bank, drawer, drawee, or endorser will be asked to make payment based on a Check that bank, drawee or endorser has already paid;
vi. we are able to create IRDs from Electronic Files in such a manner that subsequent endorsements will not render previous endoresements illegible;
vii. Checks are drawn on a financial institution in the United States and are payable in United States currency; and,
viii. you have procedures that require your employees using Mobile Deposit to mark, frank, or otherwise indicate on the physical Check that it has been scanned for electronic deposit, and such marking or franking does not interfere with the MICR line, payee, date, amount (formal and informal), signature, or endorsement on the Check. A proper endorsement shall state, at a minimum, "For Mobile Deposit to The Huntington National Bank".
ix. We reserve the right, in our sole discretion, not to accept deposits for any reason; provided, however, that in refusing to accept any deposit, we shall act in good faith and use our reasonable business judgment. You agree not to deposit via Mobile Deposit "ineligible items," as that term is used by the Board of Governors of the Federal Reserve. You further agree not to deposit Remotely Created Checks (RCC) without our agreement.

**Section 3. Availability of Mobile Deposit.** You must initiate deposits before the applicable cut-off time (as it applies to mobile deposits) on a Business Day in order for us to process such deposits on that Business Day. If you initiate deposits after the applicable cut-off time on a Business Day, we will begin to process such deposits on the next Business Day. Processing of deposits by us does not mean that we have accepted deposits.

**Section 4. Additional Company Responsibilities.** In addition to instituting policies and procedures regarding use of the Services and training its staff with access to the Services in accordance with such policies and procedures, Company also agrees as follows:

(i) Company has implemented and continually maintains a cybersecurity program that includes administrative, technical, and physical safeguards designed to protect the confidentiality and the integrity of Electronic Files and IRDs;
(ii) Company has shared previous three (3) years of Cybersecurity Events and remediation plans, if applicable;
(iii) Company will report to us any successful Cybersecurity Event within three (3) business days of discovery by contacting your primary banking contact;
(iv) Company has procedures in place to limit employee access to the history of deposits sent to Huntington via the Services;
(v) Company retains records of Checks for the length of time required by your applicable state record retention laws;
(vi) Company must shred any original Check after verification of deposit. Original Checks that have been deposited and verified must be destroyed within ninety (90) calendar days. Until you destroy any Check or image of the same, you must, at a minimum, keep such document in a secure locked area or in a password protected environment. If you create an image of the Check, you must create a read-only image that cannot be copied or reproduced; and,
(vii) Company understands that appropriate training and education materials can be accessed through the Web Portal.



**Section 5.  Audit.** In order to ensure that you are in compliance with the terms of these Services and Applicable Law, we may conduct periodic onsite visits during reasonable business hours and upon at least twenty-four (24) hours advance notice.  Further, you  agree to cooperate with us and provide to us any documents or information we request, including, but not limited to, your files, records, and Checks (or images of the same if the originals have been destroyed).  You agree to institute reasonable internal controls at our request.  Failure to comply with this Section shall be a material breach of this Agreement.

**Section 6. Reserve Account.** If, upon our review of your Account activity, we determine that abuse or unauthorized activity is or may be occurring with respect to these Services, we may require that you maintain a reserve account ("Reserve Account") with a minimum balance equal to the previous month's total deposits or an amount as otherwise requested by us, subject to quarterly adjustment on the first day of each quarter.  You grant to us a security interest in, and lien on, the funds in the Reserve Account, to secure the prompt and full payment of all your obligations to us.  We will make withdrawals from the Reserve Account for reimbursement in connection with returned deposited items (including those which are the subject of UCC warranty claims).  The Reserve Account will be under our sole dominion and control, and you will have no right of withdrawal of any of the funds in the Reserve Account will be under our sole dominion and control, and you will have no right of withdrawal of any of the funds in the Reserve Account, notwithstanding any Account Rules for that account.  After you or we terminate these Services, we will turn over the remaining funds in the Reserve Account to you no later than one hundred eighty (180) days after such termination.  In the event that the balance in the Reserve Account goes below the required amount for any reason, you shall immediately send us sufficient funds to bring the Reserve Account balance up to the minimum required level and we shall be permitted to debit another Account of yours to fulfill such request."

5.  Re-numbered Part XIX:  Glossary has a new section (i) as follows:

"Cybersecurity Event" means any observable occurrence within an information system or network that indicates a potential change in security posture, such as a user login, firewall block, or system alert.  A successful Cybersecurity Event is an event resulting in unauthorized access to, disruption, or misuse of an information system.

The remaining definitions have been re-lettered.

6. Pages have been re-numbered and typos corrected.



**CHASE**

JPMorgan Chase Bank, N.A.
P O Box 44959
Indianapolis, IN 46244-4959

May 30, 2026 through June 30, 2026

Account Number: ████████8520



00055192 DRE 201 210 18426 NNNNNNNNNNN  1 000000000 Z9 0000
MMA LAW FIRM, PLLC DEBTOR IN POSSESSION
CASE NO. 24-31596
1235 NORTH LOOP W
STE 810
HOUSTON TX 77008-1764

## CUSTOMER SERVICE INFORMATION

| | |
|---|---|
| Web site: | www.Chase.com |
| Service Center: | 1-877-425-8100 |
| Para Espanol: | 1-888-622-4273 |
| International Calls: | 1-713-262-1679 |
| We accept operator relay calls | |

## CHECKING SUMMARY | Chase Platinum Business Checking

| | INSTANCES | AMOUNT |
|---|---|---|
| **Beginning Balance** | | $48,667.93 |
| **Ending Balance** | 0 | $48,667.93 |

Your Chase Platinum Business Checking account provides:
- No transaction fees for unlimited electronic deposits (including ACH, ATM, wire, Chase Quick Deposit)
- 500 debits and non-electronic deposits (those made via check or cash in branches) per statement cycle
- $25,000 in cash deposits per statement cycle
- Unlimited return deposited items with no fee

There are additional fee waivers and benefits associated with your account - please refer to your Deposit Account Agreement for more information.

## SERVICE CHARGE SUMMARY

| | |
|---|---|
| Monthly Service Fee | $0.00 |
| Other Service Charges | $0.00 |
| **Total Service Charges** | **$0.00** |

You were assessed a monthly service fee on your Chase Platinum Business Checking account because you did not maintain the required relationship balance.

## SERVICE CHARGE DETAIL

| DESCRIPTION | VOLUME | ALLOWED | CHARGED | PRICE/ UNIT | TOTAL |
|---|---|---|---|---|---|
| **Monthly Service Fee** | | | | | |
| Monthly Service Fee Waived | 0 | | | $95.00 | $0.00 |
| **Subtotal Other Service Charges** | | | | | **$0.00** |

Reminder: Fees associated with ACH Payments, Real Time Payments, Same Day ACH, ACH Collections and Chase QuickDeposit[SM] are based on previous month activity.



**IN CASE OF ERRORS OR QUESTIONS ABOUT YOUR ELECTRONIC FUNDS TRANSFERS:**

Call us at 1-866-564-2262 or write us at the address on the front of this statement immediately if you think your statement or receipt is incorrect or if you need more information about a transfer listed on the statement or receipt.

**For personal accounts only:** We must hear from you no later than 60 days after we sent you the FIRST statement on which the problem or error appeared. Be prepared to give us the following information:

- Your name and account number;
- A description of the error or the transaction you are unsure about, and why you think it is an error or want more information; and
- The amount of the suspected error.

We will investigate your complaint and will correct any error promptly. If we take more than 10 business days (or 20 business days for new accounts) to do this, we will provide provisional credit to your account for the amount you think is in error so that you will have use of the money during the time it takes us to complete our investigation.

**For business accounts,** our practice is to follow the procedures described above as detailed in your Deposit Account Agreement or other applicable agreements, but we are not legally required to do so. For example, we require you to notify us no later than 30 days after we sent you the first statement on which the error appeared. We may require you to provide us with a written statement that the disputed transaction was unauthorized. We are also not required to give provisional credit.

**IN CASE OF ERRORS OR QUESTIONS ABOUT NON-ELECTRONIC FUNDS TRANSFERS:** Contact us immediately if your statement is incorrect or if you need more information about any non-electronic funds transfers on this statement. For more details, see your Deposit Account Agreement or other applicable agreements that govern your account.

**JPMorgan Chase Bank, N.A. Member FDIC**



**CHASE**

JPMorgan Chase Bank, N.A.
P O Box 44959
Indianapolis, IN 46244-4959

May 30, 2026 through June 30, 2026

Account Number: ▮▮▮▮▮9217

00167920 DRE 552 141 18226 NNNNNNNNNNN T 1 000000000 67 0000

MMA LAW FIRM, PLLC
IOLTA TRUST ACCOUNT
1235 NORTH LOOP W
STE 810
HOUSTON TX 77008-1764

## CUSTOMER SERVICE INFORMATION

| | |
|---|---|
| Web site: | **www.Chase.com** |
| Service Center: | **1-877-425-8100** |
| Para Espanol: | 1-888-622-4273 |
| International Calls: | 1-713-262-1679 |
| We accept operator relay calls | |



## CHECKING SUMMARY   IOLTA Account

| | INSTANCES | AMOUNT |
|---|---|---|
| **Beginning Balance** | | **$28,441.77** |
| Deposits and Additions | 1 | 56.10 |
| Other Withdrawals | 1 | -56.10 |
| **Ending Balance** | **2** | **$28,441.77** |
| Interest Paid This Period | | $56.10 |
| Interest Paid Year-to-Date | | $317.43 |

## DEPOSITS AND ADDITIONS

| DATE | DESCRIPTION | AMOUNT |
|---|---|---|
| 06/30 | Interest Payment | $56.10 |
| **Total Deposits and Additions** | | **$56.10** |

## OTHER WITHDRAWALS

| DATE | DESCRIPTION | AMOUNT |
|---|---|---|
| 06/30 | Trust Interest Transfer | $56.10 |
| **Total Other Withdrawals** | | **$56.10** |

## DAILY ENDING BALANCE

| DATE | AMOUNT |
|---|---|
| 06/30 | $28,441.77 |



**IN CASE OF ERRORS OR QUESTIONS ABOUT YOUR ELECTRONIC FUNDS TRANSFERS:**

Call us at 1-866-564-2262 or write us at the address on the front of this statement immediately if you think your statement or receipt is incorrect or if you need more information about a transfer listed on the statement or receipt.

**For personal accounts only:** We must hear from you no later than 60 days after we sent you the FIRST statement on which the problem or error appeared. Be prepared to give us the following information:

- Your name and account number;
- A description of the error or the transaction you are unsure about, and why you think it is an error or want more information; and
- The amount of the suspected error.

We will investigate your complaint and will correct any error promptly. If we take more than 10 business days (or 20 business days for new accounts) to do this, we will provide provisional credit to your account for the amount you think is in error so that you will have use of the money during the time it takes us to complete our investigation.

**For business accounts,** our practice is to follow the procedures described above as detailed in your Deposit Account Agreement or other applicable agreements, but we are not legally required to do so. For example, we require you to notify us no later than 30 days after we sent you the first statement on which the error appeared. We may require you to provide us with a written statement that the disputed transaction was unauthorized. We are also not required to give provisional credit.

**IN CASE OF ERRORS OR QUESTIONS ABOUT NON-ELECTRONIC FUNDS TRANSFERS:** Contact us immediately if your statement is incorrect or if you need more information about any non-electronic funds transfers on this statement. For more details, see your Deposit Account Agreement or other applicable agreements that govern your account.

**JPMorgan Chase Bank, N.A. Member FDIC**

MMA Law Firm

**01878443908 Huntington Operating, Period Ending 06/30/2026**

**RECONCILIATION REPORT**

Reconciled on: 07/20/2026

Reconciled by: Morgan Gallacher

Any changes made to transactions after this date aren't included in this report.

| **Summary** | USD |
|---|---|
| Statement beginning balance | 2,679,342.91 |
| Checks and payments cleared (20) | -281,686.95 |
| Deposits and other credits cleared (6) | 226,857.06 |
| Statement ending balance | 2,624,513.02 |
| | |
| Uncleared transactions as of 06/30/2026 | -64,694.91 |
| Register balance as of 06/30/2026 | 2,559,818.11 |
| Cleared transactions after 06/30/2026 | 0.00 |
| Uncleared transactions after 06/30/2026 | 62,903.38 |
| Register balance as of 07/20/2026 | 2,622,721.49 |

**Details**

Checks and payments cleared (20)

| DATE | TYPE | REF NO. | PAYEE | AMOUNT (USD) |
|---|---|---|---|---|
| 06/01/2026 | Expense | | Deel Inc | -1,055.00 |
| 06/01/2026 | Check | 15268 | Maddox, Thomson and Associ… | -8,500.00 |
| 06/02/2026 | Expense | | Definiti | -11,081.75 |
| 06/02/2026 | Expense | | Fidelity Investments | -3,134.88 |
| 06/02/2026 | Expense | | Walker & Patterson, P.C. | -1,815.02 |
| 06/03/2026 | Expense | | David Z. Mafrige Interests (DZ… | -7,870.70 |
| 06/04/2026 | Expense | | ADP | -11,633.96 |
| 06/09/2026 | Check | | Zach Moseley | -4,239.30 |
| 06/09/2026 | Journal | 06.09.2026_PR | | -43,247.49 |
| 06/16/2026 | Expense | | Comcast Business | -553.00 |
| 06/17/2026 | Expense | | Verizon | -166.37 |
| 06/17/2026 | Expense | | Fidelity Investments | -3,134.88 |
| 06/17/2026 | Expense | | Deel Inc | -1,153.00 |
| 06/24/2026 | Journal | 06.24.2026_PR | | -43,184.88 |
| 06/24/2026 | Expense | | Lawson & Moshenberg | -132,267.09 |
| 06/25/2026 | Expense | | N8 Solutions LLC | -675.00 |
| 06/25/2026 | Expense | | N8 Solutions LLC | -3,225.00 |
| 06/25/2026 | Expense | | Obacks | -559.75 |
| 06/30/2026 | Expense | | Fidelity Investments | -3,134.88 |
| 06/30/2026 | Expense | | Deel Inc | -1,055.00 |

| Total | -281,686.95 |
|---|---|

Deposits and other credits cleared (6)

| DATE | TYPE | REF NO. | PAYEE | AMOUNT (USD) |
|---|---|---|---|---|
| 06/03/2026 | Deposit | | | 12,000.00 |
| 06/08/2026 | Deposit | | | 208,200.13 |
| 06/22/2026 | Deposit | | Annette Ramirez Tax Assesso… | 686.26 |
| 06/25/2026 | Deposit | | | 2,437.50 |
| 06/25/2026 | Deposit | | | 1,200.00 |
| 06/25/2026 | Deposit | | | 2,333.17 |

| Total | 226,857.06 |
|---|---|

**Additional Information**

Uncleared checks and payments as of 06/30/2026

| DATE | TYPE | REF NO. | PAYEE | AMOUNT (USD) |
|---|---|---|---|---|
| 04/07/2023 | Expense | | PCG | -892.71 |
| 05/01/2023 | Bill Payment | 15026 | Comcast | -1,118.83 |
| 05/01/2023 | Bill Payment | 15027 | Comcast Business | -3,257.00 |
| 05/11/2023 | Bill Payment | 15025 | AT&T | -906.85 |
| 06/01/2023 | Check | 15008 | Burdin Mediations | -900.00 |
| 07/06/2023 | Bill Payment | AMEX Pymt | Xerox Financial Services | -316.51 |
| 07/23/2023 | Bill Payment | AMEX PYMT 1006 | Trustpoint Court Reporting, LLC | -950.60 |
| 07/26/2023 | Check | 15067 | Blue Sky Public Adjusters | -2,300.00 |
| 07/27/2023 | Expense | | N8 Solutions LLC | -675.00 |
| 09/01/2023 | Bill Payment | AMEX 09112023 | Dupont Claim Services | -1,800.00 |
| 09/05/2023 | Bill Payment | | Dupont Claim Services | -31,450.00 |
| 09/06/2023 | Bill Payment | AMEX 080624-3 | Dupont Claim Services | -1,800.00 |
| 09/06/2023 | Bill Payment | AMEX 080624-2 | Dupont Claim Services | -1,800.00 |
| 09/06/2023 | Bill Payment | AMEX 080623 | Dupont Claim Services | -2,400.00 |
| 09/25/2023 | Check | 15133 | Derek Fadner | -4.25 |
| 10/18/2023 | Check | 15150 | J. Baeza Law Firm, PLLC | -422.38 |
| 10/24/2023 | Bill Payment | 15164 | Ray Burgess, PLLC | -700.00 |
| 10/25/2023 | Bill Payment | 15157 | W&N Settlement Services, LLC | -2,025.00 |
| 10/31/2023 | Bill Payment | 15169 | Herring & Panzer, L.L.P. | -8,970.00 |
| 11/15/2023 | Bill Payment | | Sinch MessageMedia | -5.78 |
| 02/25/2024 | Credit Card Payment | | | -2,000.00 |

| Total | | | | -64,694.91 |
|---|---|---|---|---|

Uncleared checks and payments after 06/30/2026

| DATE | TYPE | REF NO. | PAYEE | AMOUNT (USD) |
|---|---|---|---|---|
| 07/20/2026 | Check | 15269 | Court Record Research, Inc. | -701.00 |

| Total | | | | -701.00 |
|---|---|---|---|---|

Uncleared deposits and other credits after 06/30/2026

| DATE | TYPE | REF NO. | PAYEE | AMOUNT (USD) |
|---|---|---|---|---|
| 07/02/2026 | Deposit | | | 63,604.38 |

| Total | | | | 63,604.38 |
|---|---|---|---|---|