**Exhibit 5:** FBI MMA / Huawei Trial Records.

Learn more about LSEG

Reuters Subscribe

# FBI probing law firm McClenny Moseley for alleged hurricane litigation fraud

By **Diana Novak Jones**

June 7, 2024 4:51 PM CDT · Updated June 7, 2024

Aa



An aerial view shows destroyed houses in a flooded area after Hurricane Ida made landfall in Louisiana, in Montegut, Louisiana, U.S. August 31, 2021. REUTERS/Marco Bello Purchase Licensing Rights

**Summary** Companies

Separately, U.S. Appeals court rules in law firm's favor in fee dispute

June 7 (Reuters) - The U.S. Federal Bureau of Investigations on Thursday said it is investigating McClenny Moseley & Associates and asked potential victims of the troubled Texas law firm to come forward after it came under scrutiny in Louisiana for allegedly mishandling thousands of lawsuits over hurricane property damage.

The post that seeks information from potential victims, which appears on the FBI's website, says that it “believes MMA primarily targeted Southeastern Louisiana homeowners after Hurricane Ida." The post also says that the law firm may have been assisted by Apex Roofing & Restoration.

Jumpstart your morning with the latest legal news delivered straight to your inbox from The Daily Docket newsletter. Sign up here.

McClenny Moseley, which is now known as MMA Law Firm and is based in Houston, filed thousands of lawsuits in Louisiana state and federal courts in 2022 against insurers on behalf of homeowners who suffered property damage from hurricanes Laura, Delta and Ida.

The FBI did not respond to questions about its posting. An attorney for McClenny Moseley did not respond to a request for comment about the FBI probe, nor did its founder, John Zachary Moseley.

A spokesperson for Apex Roofing said in a statement on Friday that the company was misled by MMA, had not been accused of wrongdoing and had relied on MMA for assistance with processing insurance claims in Louisiana. The statement said Apex was "working with the federal investigators in this matter."

Feedback

Garrison Jordan, an attorney for former MMA name partner James McClenny, told Reuters on Friday that his client “had no involvement in the Louisiana litigation that's sparked this investigation.” Jordan declined to comment on the investigation or when McClenny learned about it.

In October, the Louisiana State Police opened a criminal investigation into the firm for fraud, forgery, improper solicitation of clients and other potential charges, according to the police.

The investigation came after federal judges in Louisiana held hearings in 2023 over allegations that MMA attorneys improperly solicited or paid for clients through a marketing company and a roofer, filed lawsuits on behalf of people it did not represent and mishandled checks for clients from settlements, according to court records.

Attorneys from the firm have faced disciplinary proceedings in both state and federal court, court records show. In August 2023, U.S. District Judge James Cain in Lake Charles, Louisiana, blocked the firm and its attorneys from collecting any fees in hundreds of cases pending in his court.

The FBI post asked potential victims to fill out a form that asks whether the firm received money on their behalf from their insurer and if so, if the firm provided any money from the insurer to them.

MMA filed for bankruptcy in Texas in April, telling the court it had about $155 million in assets and another $106 million in debts.

Meanwhile, in a court ruling on Friday, the New Orleans-based 5th U.S. Circuit Court of Appeals vacated Cain's decision finding that MMA was not entitled to any fees from any of its pending claims in the Western District of Louisiana and had no ownership interest in any of their proceeds. The appeals court said the judge had failed to give the law firm a chance to defend its right to the fees.

The appeals court also vacated a ruling from Cain that rejected hedge fund EAJF's bid to intervene in the case to defend what it says is its right to the fees after it invested $30 million in MMA. The court said EAJF has a right to intervene and remanded the case back to the judge.

Attorneys for MMA and EAJF did not immediately respond to requests for comment on the ruling.

Our Standards: **The Thomson Reuters Trust Principles.**

Suggested Topics:

Government Criminal White Collar Crime

Purchase Licensing Rights

Feedback

**Diana Novak Jones**
Thomson Reuters

Diana reports on product liability, litigation, mass torts and the plaintiffs' bar. She previously worked at Law360 and the Chicago Sun-Times.

## Read Next / Editor's Picks

Government

# Huawei US Trial Set for Jury Selection on September 8

Huawei's US criminal case heads to jury selection in Brooklyn on September 8, 2026. The report examines the charges, Huawei's defense and the use of Meng Wanzhou's 2021 statement.

✦ 锐报编辑部 2026年8月12日 14:11

RuiBao Technology | August 12, 2026

Jury selection in the US criminal case against Huawei is scheduled to begin in Brooklyn on September 8. The nearly eight-year-old prosecution includes allegations of bank fraud, trade-secret theft and racketeering. Huawei denies wrongdoing.

Witness testimony and the presentation of evidence are expected to follow once a jury is seated, according to the schedule in the US District Court for the Eastern District of New York. Huawei Chief Financial Officer Meng Wanzhou is not a defendant at this trial, although a statement of facts she signed in 2021 will be available to prosecutors as evidence.

The Theodore Roosevelt United States Courthouse in Brooklyn, where the Eastern District of New York is hearing the Huawei case. Image: Ajay Suresh/Wikimedia Commons, CC BY 4.0.

US prosecutors brought the first indictment in 2018 and disclosed allegations concerning Huawei's business in Iran and its dealings with banks in 2019. A 2020 indictment added trade-secret theft and racketeering charges. US District Judge Ann Donnelly rejected Huawei's bid to dismiss

the main charges in 2025. A fourth superseding indictment filed in April removed several defendants' names and dropped two fraud counts while leaving the core of the case intact. The trial was subsequently moved to September.

Prosecutors allege that Huawei played down its relationship with Hong Kong-based Skycom when dealing with a global financial institution, causing the institution to continue processing transactions without a full understanding of sanctions risk. The trade-secret allegations concern the recruitment of competitors' employees, the acquisition of confidential material and Huawei's internal incentive arrangements. Prosecutors will seek to show that conduct spanning different years and jurisdictions formed part of a continuing corporate scheme.

Huawei has argued that much of the alleged conduct occurred outside the United States and lacked a sufficient connection to US banks and communications systems. It also disputes whether some of the information cited in the indictment qualifies as legally protected trade secrets. Donnelly ruled that several of those disputes require factual findings and should be addressed at trial.

In June, Donnelly ruled that prosecutors may use the four-page statement of facts Meng signed as part of a 2021 deferred prosecution agreement. Meng did not plead guilty, but she affirmed several facts central to the prosecution's case, including that she made untrue statements in a 2013 presentation to a global financial institution about Huawei's relationship with Skycom.

Meng Wanzhou in Vancouver in 2021. Her statement of facts may be used in the corporate trial, but public records do not show that she will testify for the prosecution. Image: China News Service/Wikimedia Commons, CC BY 3.0.

The agreement allowed Meng to avoid a conviction while giving prosecutors

a formal statement they can use in the case against Huawei. The United States dismissed the charges against her after the agreement expired. Her statement may be used to establish what Huawei management knew about Skycom and how that relationship was disclosed to banks.

The court decided only that the statement is admissible; it did not rule that the document proves Huawei's guilt. Its weight remains for the jury to determine. Public court records do not indicate that Meng will testify as a government witness.

A conviction could expose Huawei to fines and forfeiture, while banks and suppliers outside the United States could reassess the risk of dealing with the company. The Commerce Department's Entity List is a separate administrative measure: an acquittal would not automatically remove Huawei from the list, and a conviction would not by itself impose new semiconductor restrictions.

A verdict for the government would give US officials judicial support for some of their longstanding security and compliance concerns about Huawei. Failure to prove the principal charges would allow Huawei to challenge the factual basis of the US case. Public filings showed no settlement as of August 12. Huawei could file post-trial motions and appeal if convicted.

Sources: the Eastern District of New York docket collected by the US Government Publishing Office; the Justice Department's 2020 superseding-indictment summary; a summary of the April 2026 fourth superseding indictment; Associated Press coverage of the 2025 dismissal ruling; and Reuters coverage of the June 2026 evidentiary ruling. The allegations in the indictment have not been proven. The defendants are presumed innocent unless convicted. The trial schedule remains subject to change.

**The scope of the investigation and the formal indictments address specific behaviors within the following contexts:**

- **Obstruction of Justice & Cover-Ups:** Prosecutors explicitly charged Huawei and its affiliates with orchestrating obstruction of justice, making false statements to federal officials and the FBI, providing misleading testimony to Congress, and attempting to conceal corporate ties to subsidiaries operating in sanctioned nations like Iran and North Korea.

- **Third-Party Interference and Bribes:** While Huawei itself is not on trial for physical violence, separate federal actions tied to the broader obstruction of the Huawei investigation resulted in criminal charges against Chinese intelligence officers accused of attempting to bribe a purported U.S. law enforcement double agent with Bitcoin to steal confidential prosecution files and trial strategy.
  ** Sheppard, Mullin, Richter & Hampton LLP

- **Corporate "Ends Justify the Means" Culture:** The RICO and trade-secret indictments highlight internal corporate policies designed to bypass legal barriers. This included establishing an internal bonus program that financially rewarded employees for stealing confidential information and source code from global competitors, signing non-disclosure agreements with the explicit intent to violate them, and using complex shell company networks to bypass international trade sanctions.
  **Department of Justice

The charges do not feature allegations of physical harm, extortion, physical threats, or blackmail directed by the company.-- ***Instead, the "pattern of racketeering" alleged by the Justice Department centers on economic crime—specifically wire fraud, bank fraud, money laundering, witness tampering (in the context of concealing documentation), and the systematic theft of intellectual property.***
**Lawfare

**From:** **Jeff Vitt** jeffvitt@pathcare.us
**Subject:** Fw: PTS Diagnostics Draft LOI ~ Personlal & Confidential
**Date:** October 15, 2017 at 7:23 PM
**To:** access41pi3@icloud.com

---

**From:** Jeff Vitt
**Sent:** Monday, January 25, 2016 4:42 PM
**To:** 'elaine@evitt.com'
**Subject:** PTS Diagnostics Draft LOI ~ Personlal & Confidential

---

**From:** Jeff Vitt
**Sent:** Friday, January 22, 2016 9:04 AM
**To:** Jeff Vitt
**Subject:** PTS Diagnostics Draft LOI ~

http://www.ptsdiagnostics.com/uploads/2/6/2/8/26289179/mkg001806_pts_diagnostics_expands_patent_portfolio_press_release_final.pdf
eHealth expands by 25%
http://www.ptsdiagnostics.com/uploads/2/6/2/8/26289179/mkg001806_pts_diagnostics_expands_patent_portfolio_press_release_final.pdf
mHealth (mobile Device)
http://www.ptsdiagnostics.com/uploads/2/6/2/8/26289179/mkg001855_rev_0_pts_diagnostics_and_jant_resolve_patent_infringement_dispute_final.pdf
Patent Infringement Litigation Resolved

---

**From:** Jeff Vitt
**Sent:** Thursday, January 21, 2016 8:27 PM
**To:** Jeff Vitt
**Subject:** PTS Diagnostics Draft LOI ~

-------- Original message --------

Date: 01/21/2016 6:22 AM (GMT-06:00)
Bill Walker BWalker@PTSDiagnostics.com

Kent Liffick KLiffick@PTSDiagnostics.com

Wiley Conley WConley@PTSDiagnostics.com

Subject: PTS/Flu Shots of America Visit

Bill,

Thanks for your note and the intro to Jeff and Flu Shots of America. I can be available next Wed pending a 3:00 - 4:00 which I'll change if needed to accommodate Jeff's schedule.

Jeff,

I look forward to meeting you and working together.

Best always,

Kent

Sent from my iPhone
-------- Original message --------
From: Bill Walker <BWalker@PTSDiagnostics.com>
Date: 01/20/2016 7:00 PM (GMT-06:00)
To: Jeff Vitt <jeffvitt@tx.rr.com>, Kent Liffick <KLiffick@PTSDiagnostics.com>
Cc: Wiley Conley <WConley@PTSDiagnostics.com>
Subject: PTS/Flu Shots of America Visit

January 21, 2016

**Flu Shots of Oklahoma**
Jeff Vitt
Dear Mr. Vitt,
PTS Diagnostics is excited to have the opportunity to respond to your needs for a solution that will help to improve productivity and facilitate participant engagement.
The accompanying proposal provides details for our PTS Connect suite of connectivity and portal solutions, which can be customized to meet your client's needs now and in the future.
Thank you for the opportunity to work with you on what we are certain will be a successful partnership. If you have any questions as you review this proposal, please feel free to reach out to me directly. This proposal is valid for 30 days. I look forward to talking to you soon and to providing our customized and complete population health management solution for Flu Shots of Oklahoma!
Sincerely,

W. Walker

Bill Walker
Senior Director of Business Development
PTS Diagnostics and PTS Services
bwalker@ptsdiagnostics.com
317.870.5610
317.995.1875 (cell)

**Executive Summary:**
The PTS Connect wellness solution is the complete turn-key cloud-based Population Health Management (PHM) tool. This solution will enable you to integrate biometric data in real-time during screening events, at the point of care, and into participant's individual HIPAA-compliant accounts. Our automated, real-time biometric data integration empowers you with a true "teachable moment" for participants. The PTS Connect wellness solution provides secure online accounts from which you and/or your customers can aggregate data and generate group reporting as needed. This solution is designed to directly engage participants, employers and wellness administrators in achieving improved health and wellness and your specific objectives. The PTS Connect solution will empower you to promote health improvement by monitoring and tracking activity, facilitating education and providing your health coaches HIPAA-compliant communication tools. Data-driven communications and health improvement campaigns give you the ability to target and promote change with precision.
PTS Diagnostics is also the manufacturer of the CardioChek Plus, CardioChek PA and A1CNow line of products. These CLIA-waived systems allow you to gather lipid, glucose, A1C and other critical biometric information in minutes and empower you with true teachable moments. This diverse and unique product line, offered to the industry by PTS Diagnostics, allows you an unique insight into health and wellness.

**PTS Connect Customizable Features and Benefits:**

- Automated transfer of biometric results from the CardioChek Plus and CardioChek PA analyzers (CLIA-waived lipid profile and glucose results

- Automated biometric results sync with participants online wellness account
- Immediate screening results and point-of-service report to participants, empowering true teachable moments
- Participant access to online portal, increasing involvement
- Automated pre- and post- event communication using secure HIPAA-compliant messaging tools
- Develops strong brand recognition for wellness providers – we can brand with your logos and information.
- Designed by the wellness industry for the wellness industry to increase participant engagement
- Automated reporting for participants, employers and providers
- Integrates all community wellness components together in the cloud
- Risk-stratification reporting
- Physician-developed personal Health Risk Assessment (HRA)

**PTS Connect Proposal Details**
**Length of contract:** 36 months
**Terms:** 12 month auto-renew
**Setup and Implementation*:** $2,500.00
**Pricing Model:** See table below

** $2,500.00 One-time setup and implementation consists of the setup of PTS Connect for the client (i.e, white label, plan configuration, on-site/webinar training).*

## PTS Connect Service Level Description and Pricing

| | Features | Screening Edition PTS Universal Solution | Solution Edition PTS Connect Wellness Portal | Solution Plus Edition PTS Connect Wellness Portal |
|---|---|---|---|---|
| | Biometric Screening Data Capture | ✓ | ✓ | ✓ |
| | Screening Event Management and Reporting | ✓ | ✓ | ✓ |
| | Online Web Tools and Resources | ✓ | ✓ | ✓ |
| | Health Risk Assessment | ✓ | ✓ | ✓ |
| | Communications Templates | | ✓ | ✓ |
| | Program Support and Health Coaching | | ✓ | ✓ |
| | Reporting | | ✓ | ✓ |
| | Wellness Plan Incentive and Rewards Tracking | | | ✓ |
| | Health Challenges | | | ✓ |
| | Enhanced Program Support | | | ✓ |
| | | | | |
| **Per Participant Pricing** | | $1.25 per | $1.75 per participant | $2.00 per |

| | | | |
|---|---|---|---|
| **Per Participant Pricing** | participant per screening | per month | participant per month |

## PTS Connect Mobile Point-of-Care Screening Kit Pricing

| | Equipment | Price Per Unit | # of Units | Extended Price |
|---|---|---|---|---|
| | PTS Universal Solution Device | $250.00 | 3 | $750.00 |

## PTS Connect "Middleware" Data Integration and Interoperability Pricing (Optional)

| | Description | Price Per Unit | # of Units | Extended Price |
|---|---|---|---|---|
| | Middleware initial setup and customization ***(Provides setup of 2 initial connections for EMR and Wellness Portal and branded access to middlware dashboard and customizations)*** | $7,500.00 | 1 | $7,500.00 |
| | Monthly Subscription w/Professional Services (SaaS) ***(Monthly maintenance and support of middleware and middleware licensing fees, existing and future connections, custom professional services for additional dashboard and reporting needs)*** | $750.00 | 12 | $9,000.00 |
| | Monthly Subscription wo/Professional Services ***(Monthly maintenance and support of middleware and middleware licensing fees, existing and future connections)*** | $500.00 | 12 | $6,000.00 |

Jeff,

As we discussed this morning, this email is to introduce Kent Liffick who will be involved in discussions with regards to expanding on a strategic relationship with Flu Shots of America.

I will be bringing Kent up to speed prior to next week on the opportunity.

We are looking to schedule hosting Jeff at PTS next Wednesday and Thursday. Kent, can you let me know your availability? The purpose of the meeting will be to provide an open platform and discussion with Jeff to vet out a potential strategic relationship.

Thanks

**Bill Walker**

**Senior Director of Business Development**
PTS Diagnostics
7736 Zionsville Rd
Indianapolis, IN 46268
Direct: 317.860.8082
Cell: 317.995.1875
bwalker@ptsdiagnostics.com

---

**From:** Jeff Vitt [mailto:jeffvitt@tx.rr.com]
**Sent:** Wednesday, January 20, 2016 10:35 PM
**To:** Jeff Vitt
**Subject:** PTS Diagnostics Draft LOI

-------- Original message --------
From: Bill Walker <BWalker@PTSDiagnostics.com>
Date: 01/20/2016 7:47 PM (GMT-06:00)
To: Jeff Vitt <jeffvitt@tx.rr.com>
Cc: Wiley Conley <WConley@PTSDiagnostics.com>, Kent Liffick
<KLiffick@PTSDiagnostics.com>
Subject: Draft LOI

Jeff,

Based on our discussions and as a basis to begin moving forward, attached is a simple draft LOI that allows PTS Services to begin moving forward in creating your portal environments in year 1, with the limits that we discussed this morning. The LOI discusses a 10K participant limit but as I mentioned to you on the phone today if we find that we are going over that limit at any time we can come back to the table and evaluate where we are at, so please do not let the limits affect this discussion. We will get you where you need to be.

The LOI also discusses that this is in lieu of continued discussion on executed a full sales and service agreement, which you have seen, and/or defining a strategic relationship outside the scope of the standard sales and service, which these discussions will commence next week during your visit to PTS.

Please review the LOI and let me know if you have any questions. I kept this very basic and also very open ended, and again, it provides the baseline agreement for us to meet your current needs.

Thanks and look forward to getting started and continuing our discussions.

**Bill Walker**
**Senior Director of Business Development**
PTS Diagnostics
7736 Zionsville Rd
Indianapolis, IN 46268
Direct: 317.860.8082
Cell: 317.995.1875
bwalker@ptsdiagnostics.com