8/20/2026 11:32 AM
Marilyn Burgess - District Clerk Harris County
Envelope No. 118877266
By: Stephanie Rivera
Filed: 8/20/2026 11:32 AM

**CAUSE NO. 2023-44970**

| | | |
|---|---|---|
| **IN THE MATTER OF THE MARRIAGE OF** | § | **IN THE DISTRICT COURT** |
| **JAYNE ELIZABETH MOSELEY AND JOHN ZACHARY MOSELEY** | § | **245TH JUDICIAL DISTRICT** |
| **AND IN THE INTEREST OF CAMILLA QUINN MOSELEY AND MIA ELIZABETH MOSELEY, CHILDREN** | § | **HARRIS COUNTY, TEXAS** |

Unofficial Copy Office of Marilyn Burgess District Clerk

## OPPOSITION TO MOTION FOR ENTRY OF JUDGMENT

Jayne Elizabeth Moseley files this Objection to Intervenor's Motion for Entry of Final Judgment and respectfully shows the Court as follows:

### SUMMARY

Intervenor seeks the entry of a "Final Judgment" based upon a recent jury verdict returned on its third-party claims brought under the Texas Uniform Fraudulent Transfer Act (TUFTA). But the core matrimonial dispute—specifically, the mandatory "just and right" division of the marital estate pursuant to Texas Family Code §7.001—remains wholly unresolved. Entering a "Final Judgment" at this stage directly violates Texas's strict "One Final Judgment" rule. The Intervenor's proposed order is procedurally premature and cannot constitute a final executable judgment. The Court should decline to enter a judgment at this stage of this ongoing lawsuit.

Furthermore, the proposed judgment ignores this Court's statutory obligation to ensure that the TUFTA verdict transforms into an equitable judgment. The astronomical amount sought in the proposed judgment is highly inequitable and does not reflect the reality of the jury's verdict in the context of this divorce suit.

In fact, the Intervenors' proposed judgment is replete with proposed "findings" that have counsel wondering if the Intervenors even read the jury's verdict or if, instead, they created some fantastical "findings" by an imaginary jury that exists only in their own personal disdain for Jayne Moseley. In any event, any "findings" by the Court as to TUFTA liability would be wholly inappropriate. The jury was the fact finder here, not the Court. For these reasons, as more specifically detailed below, the Court cannot enter the judgment as proposed and should sustain the objections detailed below and, at an appropriate time, enter an equitable judgment, free from exaggerated language that by no means comports with the jury's actual verdict in this case.

Unofficial Copy Office of Marilyn Burgess District Clerk

## ARGUMENT & AUTHORITIES

### A. The Proposed Order Violates the One Final Judgment Rule

Texas Rule of Civil Procedure 301 explicitly mandates that "[o]nly one final judgment shall be rendered in any cause except where it is otherwise specially provided by law." TEX. R. CIV. P. 301; *Logan v. Mullis*, 686 S.W.2d 605, 609 (Tex. 1985). A judgment is only final and executable if it explicitly disposes of all parties and all claims involved in the lawsuit. *Lehmann v. Har-Con Corp.*, 39 S.W.3d 191, 195 (Tex. 2001).

The separate jury trial involved in this case is part of an ongoing divorce proceeding. Because the "just and right" distribution of the community estate has not occurred, an order entering judgment solely on an intervened claim cannot legally morph into a "Final Judgment." Doing so would violate the "One Final Judgment" rule.

Moreover, under Texas Family Code § 7.001, this Court has a non-delegable statutory obligation to order a "just and right" division of the spouses' property. Permitting a third-party creditor to enter a final, enforceable judgment and immediately initiate post-judgment

relief while the underlying divorce drags on completely upends the status quo. It strips this Court of its capacity to accurately measure and divide the community estate, causing irreparable prejudice to the spouses and wasting judicial resources.

At a prior hearing, Intervenors' counsel suggested the "Final Judgment" they have proposed for the Court's signature can just be restyled as an "Interlocutory Judgment." But for what purpose? The purpose of entering a Final Judgment is to completely resolve all remaining claims and parties in a lawsuit, officially close the case, start the timeline for appeals, and allow the winning side to legally enforce the court's decision. None of this can happen if the Court signs an "Interlocutory Judgment." The case, which includes the divorce issues, will not be completely resolved. The case will not be closed. The appellate timelines (including timelines for post-judgment motions like a motion for new trial or a motion for judgment notwithstanding the verdict) will not begin. And the "Interlocutory Judgment" will not be enforceable (i.e., executed on). *See, e.g.*, TEX. R. CIV. P. 622 (authorizing a clerk to issue writs of execution only "in [a] case *in which a final judgment has been rendered*") (emphasis added); TEX. R. CIV. P. 627 (establishing a timeline for execution, explicitly stating that a clerk may only issue an execution "after the expiration of *thirty days from the time the final judgment* is signed") (emphasis added).

It is natural for a judgment creditor to want to obtain a final and enforceable judgment as quickly as possible following a favorable jury verdict. But the Court simply cannot do as they ask at this moment. To be clear, this legal quandary is of the Intervenors' own doing. They could have brought a separate lawsuit. But they elected (over objection) to Intervene in an ongoing lawsuit. The consequence is that they now have to wait for full resolution of that

Unofficial Copy Office of Marilyn Burgess District Clerk

lawsuit in order to obtain a final, executable judgment. Intervenors' exuberance is not this Court's legal authority. The Court should deny the motion for entry of judgment in its entirety.

**B. The proposed judgment is not equitable.**

Even if the Court contemplates entering a judgment in favor of Intervenors (and subject to Jayne Moseley's objections to any entry of judgment), the judgment the Intervenors propose is eyebrow raising. Under TUFTA, when a judgment "is based upon the value of the asset transferred, the judgment must be for an amount equal to the value of the asset at the time of transfer, *subject to adjustment as the equities may require*." TEX. BUS. & COMM. CODE §24.009(c) (emphasis added). Here, Intervenors seek a judgment of the amount of the value of the cart.com stock sales proceeds. Thus, TUFTA requires this Court to determine whether the $1.9M requested should be adjusted based on principles of equity.

Jayne Moseley requests two equitable grounds for modification of the amount sought in the proposed judgment. First, neither Zach Moseley nor Jayne Moseley realized the full amount of the sale of the cart.com stock. Nor would any creditor who sought to collect on those proceeds. The Moseleys had to pay capital gains tax on that stock sell. *See* DX6 (tax returns for the year of the sale of the stock, entered into evidence at trial). Obviously, no one can claw back the portion of the sale proceeds paid to the government. And the tax liability on the stock proceeds should not artificially inflate the judgment amount the Intervenors can squeeze in this TUFTA dispute. Put differently, had no "transfer" occurred, the amount available for creditors to seize would be the proceeds from the sale, minus the amount immediately due and paid to Uncle Sam. Thus, it is only equitable that the $1.9M be reduced by the amount of the capital gains paid on that stock sale. The tax returns entered into evidence at trial show the tax paid on the capital gains was roughly $369,679.57, resulting in an actual value of the cart.com proceeds as $1,530,320.43, maximum.

Unofficial Copy Office of Marilyn Burgess District Clerk

Second, the community nature of the stock-sale proceeds demand an equitable reduction in the judgment amount. When the cart.com stock was sold, the sales proceeds were community funds. As community funds, Jayne Moseley, individually, already had an interest in the sale proceeds. To the extent a portion of this transfer from Zach Moseley to Jayne Moseley was found to be in violation of TUFTA, it should only be the portion that Jayne Moseley herself did not already have an interest in. Thus, it is only equitable that the $1.9M be reduced by some amount to reflect Jayne Moseley's existing community interest in the amount transferred.

This request is supported by the definitions in TUFTA. Under the statute, an "asset" is defined as "property of the debtor." TEX. BUS. & COMM. CODE §24.002(2). The debtor here is Zach Moseley. Likewise, "transfer" is limited to a "mode . . . of disposing of or departing with an asset or interest in an asset." TEX. BUS. & COMM. CODE §24.002(12). Zach Moseley, as "debtor," could only improperly transfer his "interest in an asset." Any movement of Jayne Moseley's existing interest in the stock-sale proceeds is not a "transfer" of an "asset" of the "debtor."

Of course, all of this supports Jayne Moseley's general objection to entering any Final Judgment in this case before the "just and right" division is made of the Moseleys' property. The entry of judgment in favor of the intervenors is simply premature. The amount of Jayne Moseley's interest in the stock-sale proceeds is not yet determinable. This determination will be made by the Court when the Court makes a "just and right" division of the spouse's property. It would be impossible to determine how to reduce the amount in the proposed judgment based on the above equitable grounds before that division of the marital estate is made. But, for now, it can be said that it would be extremely inequitable to enter a judgment

Unofficial Copy Office of Marilyn Burgess District Clerk

on the full amount of the stock-sale proceeds when it is undeniable that some portion of those proceeds already belonged to Jayne Moseley herself and that whatever "transfer" occurred with regard to the stock-sale proceeds can only be Zach's interest in those proceeds, as he is the only "debtor."

Unofficial Copy Office of Marilyn Burgess District Clerk

**B. The proposed judgment is objectionable on other grounds.**

Subject to and without waiving any argument or objections Jayne Moseley may have in a motion for new trial or a motion for judgment notwithstanding the verdict (or its more general objections stated above), Jayne Moseley further objects to the proposed judgment on the following grounds:

**OBJECTION 1 (Finality):**

Jayne Moseley objects to the title of the proposed judgment ("Final Judgment") and to the "finality" language in the final two paragraphs of the proposed judgment. This is not a final judgment. It does not dispose of all parties and all claims in this action. And, as briefed above, the Court may only enter one final judgment in this case. Entering the proposed judgment would be erroneous. *See Patel v. Nations Renovations, LLC*, 661 S.W.3d 151, 154 (Tex. 2023) ("By definition, a final judgment must dispose of all parties and all claims in the underlying case.").

**OBJECTION 2 (Improper and Unsupported Fraud "Findings"):**

Jayne Moseley objects to the Court making any "findings," as proposed in Paragraphs 3-8 of the proposed judgment, and further objects to any "findings" that are not consistent with the jury's verdict. Broadly, the jury was the fact finder in this matter. The Court has no role to make findings.

More specifically, the proposed judgment repeatedly invokes "fraud" and "fraudulent transfer" against Jayne Moseley as though the jury so found. The jury did not. Nor should this

Court. Question 1 of the Jury Charge (actual intent to hinder, delay, or defraud) and Question 2 of the Jury Charge (transfer without reasonably equivalent value) were submitted to the jury solely as to transfers made by Zach Moseley. Jayne Moseley is not the subject of either liability question in the verdict.[1] On this record, there is no finding that Jayne Moseley acted with the kind of culpable state of mind Intervenors' rhetoric imputes to her, and the proposed judgment's characterization of her as a fraud actor is unsupported by the jury's verdict. A true and correct copy of the Jury's verdict is attached to this filing, for the Court's convenience.

**OBJECTION 3 (Improper and Unsupported Causation/Damages "Findings"):**

Jayne Moseley objects to any findings by the Court as to "causation" or "damages." Question 4 of the Jury Charge was solely a measure of value, not "fraud" or any element of a "fraud" claim. Value findings answer how much, not why. The figure found by the jury does not include any determination of causation. The figure certainly carries no inference of concealment, insider dealing, or intent, and Intervenors offer no basis to treat it otherwise.

**OBJECTION 4 (Attorneys' Fees):**

Jayne Moseley objects to the entry of $491,600.00 in attorneys' fees. The proposed judgment seeks a finding that these fees "incurred as a direct result of Jayne Elizabeth Moseley's intentional and fraudulent conduct." As briefed above, there is no evidence (nor jury finding) from which this Court could make this "finding" of intentional fraud.

As to the amount requested, the amount proposed in this judgment is greater than the amount the jury found to be reasonable:

[1] In fact, the jury specifically refused to find any maliciousness on the part of Jayne Moseley when it did not answer the predicate questions pertaining to exemplary damages.

Unofficial Copy Office of Marilyn Burgess District Clerk

1. For representation in the trial court.

Answer: $465,000

In any event, the Court should dramatically decrease this amount. TUFTA authorizes this Court to award fees only if they are "equitable and just." TEX. BUS. & COMM. CODE §24.013. While the statute entrusts attorney fee awards, if any, to the trial court's sound discretion, any award of fees is subject to the requirements that the fees awarded be reasonable and necessary, which are matters of fact, and to the additional requirements that fees be equitable and just, which are matters of law. *See Bocquet v. Herring*, 972 S.W.2d 19, 21 (Tex. 1998) (articulating applicable standard when statute provides "equitable and just" determination).

Here, Intervenors sought liability on the allegedly improper transfer of *nine* assets. Yet the jury found only one transfer (the cart.com stock) to be actionable. Intervenors did not segregate their fees based on their work as to any specific transfer, so it would be impossible to assess whether the fees awarded were actually reasonable and necessary to litigate their claim pertaining to the cart.com stock. *See generally Rohrmoos Venture v. UTSW DVA Healthcare, LLP*, 578 S.W. 3d 469 (Tex. 2019) (requiring segregation of fees under fee-shifting statutes).

Given the ultimate outcome of the trial, this Court would be within its sound discretion to deny fees entirely or, at minimum, to reduce significantly the amount of fees sought. To the extent the Court is inclined to award any fees at all, Jayne Moseley respectfully requests the amount of fees requested be reduced by 2/3. The basis for this proposed reduction is this: of the nine transfers tried to the jury—which were generally referred to in 3 categories (cart.com sales proceeds, homestead sale proceeds, and certain personal property)—the jury only found one such transfer to be improper. This 2/3 reduction of fees would result in an attorneys' fee

Unofficial Copy Office of Marilyn Burgess District Clerk

award of roughly $155,000.00. This award would be far more "equitable and just" than the almost half a million dollars sought by the Intervenors.

Furthermore, Jayne Moseley requests that the Court award her attorneys' fees as well in the amount of at least $78,000 as found by the jury. This is fair and just because, as shown above, Jayne Moseley prevailed on the majority of the TUFTA claims. Jayne Moseley also requests a contingent award of her reasonable appellate attorneys' fees, should she prevail on appeal.

**OBJECTION 5 (Prejudgment Interest):**

Jayne Moseley objects to the amount of prejudgment interest awarded. Intervenors have not provided Jayne Moseley's counsel, or this Court, with the basis for their prejudgment calculations. The Court does not know the accrual date or judgment interest rate used for this calculation.

**OBJECTION 6 (Post-judgment Interest):**

Jayne Moseley objects to the language of the award of post-judgment interest. The current judgment interest rate for August 2026 is 6.75%. The Court's judgment should specify that amount so there is no confusion later as to the specific interest amount accruing in this judgment. For similar reasons, Jayne Moseley further objects to the duplicative language in subparagraph (d) and (f) in the decretal portion of the judgment on page 3.

**OBJECTION 7 (Failure to Elect):**

Jayne Moseley objects to the entry of any judgment that does not require Intervenors to elect between a money judgment and other equitable relief. Intervenors have sought entry of a money judgment based on the value of the asset transferred in violation of TUFTA. (*See* Proposed Judgment, page 3, paragraph starting IT IS THEREFORE ORDERED.) They also seek to void that transfer "and any remaining identifiable proceeds mutations, or balances

Unofficial Copy Office of Marilyn Burgess District Clerk

derived therefrom" (whatever that means). (*See* Proposed Judgment, page 3, paragraph starting IT IS FURTHER ORDERED.) They then seek several additional equitable remedies, all of which have their own statutory and evidentiary standards to meet and must be done by specific court order. (*Id.* at p. 4.)

The Court cannot enter a judgment that allows for "all of the above." This is a final judgment, not a multiple-choice quiz. Intervenors must elect their remedy under TUFTA, and it would be error for this Court to enter a confusing, overlapping, plethora of unspecified equitable remedies that would allow Intervenors double recovery of any amount due to them.

**OBJECTION 8 (Post-judgment Interest on Appellate Fees):**

Jayne Moseley objects to the language of the post-judgment interest award on the conditional appellate attorney's fees. The proposed judgment states the interest will accrue "from the date the award becomes due." That is imprecise and vague. A more precise description of the accrual date is "from the date the appellate court renders judgment making the award of the fees final and conditional."

**OBJECTION 9 (Offset of Judgment Pursuant to TRCP167):**

Contemporaneously to the filing of this response, Jayne Moseley has filed a Notice of Offset of Litigation Costs under Texas Rule of Civil Procedure 167 and Chapter 42 of the Texas Civil Practice and Remedies Code. As briefed in that document, because the fee-shifting provisions of Rule 167 were triggered, Jayne Moseley is entitled to an offset in the judgment of all reasonable "litigation costs" incurred after the rejection date of June 25, 2026. The offset amount is calculated to be $90,850.00. Therefore, the total amount of the judgment must be reduced to reflect this offset.

Unofficial Copy Office of Marilyn Burgess District Clerk

Appropriate language would include:

> The Court further finds that Jayne Elizabeth Moseley is entitled to an offset of the amount awarded to Intervenors Equal Access Justice Fund, LP and EAJF Esq Fun, LP in the amount of $90,850.00 under Texas Rule of Civil Procedure 167 and Chapter 42 of the Texas Civil Practice and Remedies Code.

Then the decretal language should reflect this reduction prior to the calculation of pre-judgment interest.

Unofficial Copy Office of Marilyn Burgess District Clerk

## CONCLUSION

For all the reasons stated above, Jayne Moseley requests the Court postpone entry of judgment until all parties and all claims are finally disposed. To the extent the Court elects to enter a judgment at this juncture (which would be erroneous and immediately appealable), Jayne Moseley requests the following revisions to the proposed judgment:

- Remove any purported "findings" of the Court (specifically in Paragraphs 3-9) that are inconsistent with the jury findings and correctly reflect that the "findings" are jury findings, and not findings of the Court.
- Remove any language that is inconsistent with the jury findings in the paragraph determining an award of "equitable and just" attorneys' fees (if any).
- Equitably reduce the amount of damages awarded to Intervenors.
- Eliminate or reduce the attorneys' fees awarded to Intervenors, and award her attorneys' fees (as she prevailed on the majority of the TUFTA claims).
- Subject all the damages to the TRCP167 offset.
- Recalculate prejudgment interest to conform to the reductions above and the law.
- Clarify the award of post-judgment interest (both trial and appeal).
- Remove the decretal language concerning non-monetary post-judgment remedies.
- Remove the finality language (including in the title).

Jayne Moseley also requests any further relief she may be entitled to in law or equity.

Respectfully submitted,

LEGER KETCHUM & COHOON, PLLC

By: J. Patrick Cohoon
State Bar No. 24034381
pcohoon@lkclawfirm.com
John Ben Blackburn
State Bar No. 24031867
jbblackburn@lkclawfirm.com
179 S. Main Street, Suite 102
Boerne, Texas 78006
Telephone: (210) 504.4401
Facsimile: (210) 504.4401

Lisa Bowlin Hobbs
State Bar No. 24026905
Lisa@HobbsTexasAppeals.com
LBH LAW PLLC
5501 Balcones, Suite A215
Austin, Texas 78731
(512) 297-7792

**ATTORNEYS FOR DEFENDANT JAYNE ELIZABETH MOSELEY**

Unofficial Copy Office of Marilyn Burgess District Clerk

Douglas Ray York
Law Offices of Douglas Ray York, P.C.
1021 Main Street, Ste. 1450
Houston, Tx. 77002
Tel: (713) 479-5555

**CO-COUNSEL FOR DEFENDANT JAYNE ELIZABETH MOSELEY**

Unofficial Copy Office of Marilyn Burgess District Clerk

**CERTIFICATE OF SERVICE**

I certify that on August 20, 2026, a true and correct copy of the foregoing was forwarded to all counsel of record pursuant to Rule 21a of the Texas Rules of Civil Procedure via the Court's e-filing/e-service system,

John Ben Blackburn

P.15

CAUSE NO. 2023-44970

| | | |
|---|---|---|
| IN THE MATTER OF THE MARRIAGE OF<br><br>JAYNE ELIZABETH MOSELEY AND JOHN ZACHARY MOSELEY<br><br>AND IN THE INTEREST OF CAMILLA QUINN MOSELEY AND MIA ELIZABETH MOSELEY, CHILDREN | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | IN THE DISTRICT COURT<br><br>245TH JUDICIAL DISTRICT<br><br>HARRIS COUNTY, TEXAS |

FILED
Marilyn Burgess
District Clerk
7-24-26 JUL 24 2026
Time:
Harris County, Texas
By: Deputy

Unofficial Copy Office of Marilyn Burgess District Clerk

JURY CHARGE

LADIES AND GENTLEMEN OF THE JURY:

After the closing arguments, you will go to the jury room to decide the case, answer the questions that are attached, and reach a verdict. You may discuss the case with other jurors only when you are all together in the jury room.

Remember my previous instructions: Do not discuss the case with anyone else, either in person or by any other means. Do not do any independent investigation about the case or conduct any research. Do not look up any words in dictionaries or on the Internet. Do not post information about the case on the Internet. Do not share any special knowledge or experiences with the other jurors. Do not use your phone or any other electronic device during deliberations for any reason. I will give you a number where others may contact you in case of an emergency.

Any notes you have taken are for your personal use. You may take your notes back into the jury room and consult them during deliberations, but do not show or read your notes to your fellow jurors during deliberations. Your notes are not evidence. Each of you should rely on your independent recollection of the evidence and not be influenced by the fact that another juror has or has not taken notes.

You must leave your notes with the bailiff when you are not deliberating. The bailiff will give your notes to me promptly after collecting them from you. I will make sure your notes are kept in a safe, secure location and not disclosed to anyone. After you complete your deliberations, the bailiff will collect your notes. When you are released from jury duty, the bailiff will promptly destroy your notes so that nobody can read what you wrote.

Here are the instructions for answering the questions.

1. Do not let bias, prejudice, or sympathy play any part in your decision.

RECORDER'S MEMORANDUM
This instrument is of poor quality
at the time of Imaging.

2. The fact that a party is a corporation, limited partnership, or other business entity should not prejudice you either for or against that party. Business entities are entitled to the same fair and impartial consideration as individuals, and you should decide this case based solely on the evidence and the Court's instructions.

3. Base your answers only on the evidence admitted in court and on the law that is in these instructions and questions. Do not consider or discuss any evidence that was not admitted in the courtroom.

4. You are to make up your minds about the facts. You are the sole judges of the credibility of the witnesses and the weight to give their testimony. But on matters of law, you must follow all of my instructions.

5. If my instructions use a word in a way that is different from its ordinary meaning, use the meaning I give you, which will be the proper legal definition.

6. All the questions and answers are important. No one should say that any question or answer is not important.

7. Answer "yes" or "no" to all questions unless you are told otherwise. A "yes" answer must be based on a preponderance of the evidence unless you are told otherwise. Whenever a question requires an answer other than "yes" or "no", your answer must be based on a preponderance of the evidence unless you are told otherwise.

The term "preponderance of the evidence" means the greater weight of credible evidence presented in this case. If you do not find that a preponderance of the evidence supports a "yes" answer, then answer "no". A preponderance of the evidence is not measured by the number of witnesses or by the number of documents admitted in evidence. For a fact to be proved by a preponderance of the evidence, you must find that the fact is more likely true than not true.

8. Do not decide who you think should win before you answer the questions and then just answer the questions to match your decision. Answer each question carefully without considering who will win. Do not discuss or consider the effect your answers will have.

9. Do not answer questions by drawing straws or by any method of chance.

10. Some questions might ask you for a dollar amount. Do not agree in advance to decide on a dollar amount by adding up each juror's amount and then figuring the average.

11. Do not trade your answers. For example, do not say, "I will answer this question your way if you answer another question my way."

12. The answers to the questions must be based on the decision of at least 10 of the 12 jurors. The same 10 jurors must agree on every answer. Do not agree to be bound by a vote of anything less than 10 jurors, even if it would be a majority.

As I have said before, if you do not follow these instructions, you will be guilty of juror misconduct, and I might have to order a new trial and start this process over again. This

Unofficial Copy Office of Marilyn Burgess District Clerk

would waste your time and the parties' money, and would require the taxpayers of this county to pay for another trial. If a juror breaks any of these rules, tell that person to stop and report it to me immediately.

**Defined Terms:**

1. "**Jayne Moseley**" means Jayne Elizabeth Moseley.
2. **"Zach Mosely"** means John Zachary Moseley.
3. "**Intervenors**" means Equal Access Justice Fund, LP and EAJF ESQ Fund, LP.
4. An "**asset**" means property of Zach Moseley but does not include property to the extent it is encumbered by a valid lien or to the extent it is generally exempt under non-bankruptcy law.
5. A "**claim**" means a right to payment or property, whether or not the right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured.
6. A "**creditor**" means a person that has a claim.
7. A "**debtor**" means a person who is liable on a claim.
8. An "**insider**" includes a spouse.
9. A "**person**" means an individual, partnership, corporation, or any other legal or commercial entity.
10. A "**transfer**" means every mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting with an asset or an interest in an asset, and includes payment of money, release, lease, and creation of a lien or other encumbrance.

**Instructions on the law:**

1. A debtor is insolvent if the sum of the debtor's debts is greater than all of the debtor's assets at a fair valuation. A debtor who is generally not paying the debtor's debts as they become due is presumed to be insolvent.
2. Value is given for a transfer or an obligation if, in exchange for the transfer or obligation, property is transferred or an antecedent debt is secured or satisfied, but value does not include an unperformed promise made otherwise than in the ordinary course of the promisor's business to furnish support to the debtor or another person. "Reasonably equivalent value" includes without limitation, a transfer or obligation that is within the range of values for which the transferor would have sold the assets in an arm's length transaction.

Unofficial Copy Office of Marilyn Burgess District Clerk

3. A transfer is made with respect to an asset that is not real property, when the transfer is so far perfected that a creditor on a simple contract cannot acquire a judicial lien otherwise than under this chapter that is superior to the interest of the transferee. If applicable law does not permit the transfer to be perfected as provided above, the transfer is made when it becomes effective between the debtor and the transferee.

4. Community property consists of the property, other than separate property, acquired by either spouse during marriage.

5. Property possessed by either spouse during or on dissolution of marriage is presumed to be community property.

6. During marriage, each spouse has the sole management, control, and disposition of the community property the spouse would have owned if single, including personal earnings, revenue from separate property, and the increase and mutations of, and the revenue from, all property subject to the spouse's sole management, control, and disposition.

7. If community property subject to the sole management, control, and disposition of one spouse is mixed or combined with community property subject to the sole management, control, and disposition of the other spouse, then the mixed or combined community property is subject to the joint management, control, and disposition of the spouses, unless the spouses provide otherwise by power of attorney in writing or other agreement.

8. Except as described in Instruction No. 6, community property is subject to the joint management, control and disposition of the spouses unless the spouses provide otherwise by power of attorney in writing or other agreement.

9. A spouse's separate property is not subject to the liabilities of the other spouse unless both spouses are liable by other rules of law.

10. Unless both spouses are personally liable, the community property subject to a spouse's sole management control and disposition is not subject to any liabilities that the other spouse incurred before marriage; or any non-tortious liabilities that the other spouse incurs during marriage.

11. In determining the amount of exemplary damages, the trier of fact shall consider evidence, if any, relating to: (1) the nature of the wrong; (2) the character of the conduct involved; (3) the degree of culpability of the wrongdoer; (4) the situation and sensibilities of the parties concerned; (5) the extent to which such conduct offends a public sense of justice and propriety; and (6) the net worth of the defendant.

Unofficial Copy Office of Marilyn Burgess District Clerk

## Question 1

Did Zach Moseley transfer any of the assets listed below with actual intent to hinder, delay, or defraud any creditor?

In determining actual intent, you may consider, among other factors, whether—

1. The transfer was to an insider.
2. Zach Moseley retained possession or control of the property transferred after the transfer.
3. The transfer was concealed.
4. Before the transfer was made, Zach Moseley had been sued or threatened with suit.
5. The transfer was of substantially all of Zach Moseley's assets.
6. Zach Moseley removed or concealed assets.
7. The value of the consideration received by Zach Moseley was reasonably equivalent to the value of the asset transferred.
8. Zach Moseley was insolvent or became insolvent shortly after the transfer was made.
9. The transfer occurred shortly before or shortly after a substantial debt was incurred.

Answer "Yes" or "No" for each asset listed below.

1. Proceeds of the sale of cart.com stock — Answer YES ≥ 10
2. Proceeds from the sale of the house that went into the trust account — Answer No 7
3. Other proceeds from the sale of the house Per the mediated settlement agreement — Answer No 7
4. Gold nail bracelet — Answer No 7
5. Clash de Cartier bracelet — Answer No 7
6. Gold love bracelet with diamonds — Answer No 7
7. Panthere Cartier bracelet — Answer No 7
8. Zadok custom necklace — Answer No 7
9. Louis Vuitton crocodile purse. — Answer No 7

Unofficial Copy Office of Marilyn Burgess District Clerk
Unofficial Copy Office of Marilyn Burgess District Clerk

## Question 2

Did Zach Moseley transfer any of the assets listed below without receiving reasonably equivalent value in exchange?

Answer "Yes" or "No" for each asset listed below.

1. Proceeds of the sale of cart.com stock — Answer: Yes ≥ 10
2. Proceeds from the sale of the house that went into the trust account — Answer: No 7 -> Yes
3. Other proceeds from the sale of the house Per the mediated settlement agreement — Answer: No 5 Yes 7 -> Yes
4. Gold nail bracelet — Answer: No 8 -> Yes
5. Clash de Cartier bracelet — Answer: No
6. Gold love bracelet with diamonds — Answer: No
7. Panthere Cartier bracelet — Answer: No 8
8. Zadok custom necklace — Answer: No
9. Louis Vuitton crocodile purse. — Answer: No

Unofficial Copy Office of Marilyn Burgess District Clerk

If you answered "Yes" to an asset in Question 2, then answer the following question as to the asset. Otherwise, do not answer the following question.

## Question 3

At the time the asset was transferred—

1. Was Zach Moseley engaged in or about to engage in a business or a transaction for which his remaining assets were unreasonably small in relation to the business or transaction; or

2. Did Zach Moseley intend to incur or believe that he would incur, or should he reasonably have believed that he would incur, debts beyond his ability to pay as they became due; or

3. Was Zach Moseley insolvent or did he become insolvent as a result of the transfer?

Answer "Yes" or "No" for each asset as to which you answered "Yes" in Question 2.

1. Proceeds of the sale of cart.com stock — Answer Yes 10
2. Proceeds from the sale of the house that went into the trust account — Answer____
3. Other proceeds from the sale of the house Per the mediated settlement agreement — Answer____
4. Gold nail bracelet — Answer____
5. Clash de Cartier bracelet — Answer____
6. Gold love bracelet with diamonds — Answer____
7. Panthere Cartier bracelet — Answer____
8. Zadok custom necklace — Answer____
9. Louis Vuitton crocodile purse. — Answer____

Unofficial Copy Office of Marilyn Burgess District Clerk

If you answered "Yes" to an asset in Question 1 or Question 3, then answer the following question. Otherwise, do not answer the following question.

## Question 4

What were the values of the assets transferred at the time of each transfer?

Answer separately in dollars and cents, if any for each asset as to which you answered "Yes" in Question 1 or Question 3.

1. Proceeds of the sale of cart.com stock — Answer 1.9MM
2. Proceeds from the sale of the house that went into the trust account — Answer________
3. Other proceeds from the sale of the house Per the mediated settlement agreement — Answer________
4. Gold nail bracelet — Answer________
5. Clash de Cartier bracelet — Answer________
6. Gold love bracelet with diamonds — Answer________
7. Panthere Cartier bracelet — Answer________
8. Zadok custom necklace — Answer________
9. Louis Vuitton crocodile purse — Answer________

Unofficial Copy Office of Marilyn Burgess District Clerk

If you answered "Yes" to an asset in Question 1 or Question 3, then answer the following question. Otherwise, do not answer the following question.

**Question 5**

What is a reasonable fee for the necessary legal services of Intervenors' attorney for their fraudulent transfer claims?

A reasonable fee is the reasonable hours worked, and to be worked, multiplied by a reasonable hourly rate for that work.

Do not include fees that relate solely to any other claim.

Answer with an amount in dollars and cents for each of the following:

1. For representation in the trial court.

   Answer: $465,000

2. For representation in the court of appeals.

   Answer: $30,000

3. For representation at the petition for review stage in the Supreme Court of Texas.

   Answer: $35,000

4. For representation at the merits briefing stage in the Supreme Court of Texas.

   Answer: $15,000

5. For representation through oral argument and the completion of proceedings in the Supreme Court of Texas.

   Answer: $15,000

Unofficial Copy Office of Marilyn Burgess District Clerk

If you answered "No" to each asset in response to Question 1 and Question 3, then answer the following question. Otherwise, do not answer the following question.

## Question 6

What is a reasonable fee for the necessary legal services of Jayne Moseley's attorney for the fraudulent transfer claims asserted against her?

A reasonable fee is the reasonable hours worked, and to be worked, multiplied by a reasonable hourly rate for that work.

Do not include fees that relate solely to any other claim.

Answer with an amount in dollars and cents for each of the following:

1. For representation in the trial court.

   Answer: $78,000

2. For representation in the court of appeals.

   Answer: $50,000

3. For representation at the petition for review stage in the Supreme Court of Texas.

   Answer: ~~$25,000~~ $50,000

4. For representation at the merits briefing stage in the Supreme Court of Texas.

   Answer: $25,000

5. For representation through oral argument and the completion of proceedings in the Supreme Court of Texas.

   Answer: $20,000

Unofficial Copy Office of Marilyn Burgess District Clerk

If you answered "Yes" to an asset in Question 1 or Question 3, then answer the following question. Otherwise, do not answer the following question.

To answer "Yes" to the following question, your answer must be unanimous. You may answer "No" to the following question only upon a vote of ten or more jurors. Otherwise, you must not answer the following question.

**Question No. 7**

Do you find by clear and convincing evidence that the harm to Intervenors caused by the asset transfers for which you answered "yes" in Question 1 or Question 3 resulted from malice or gross negligence of Jayne Moseley?

"Clear and convincing evidence" means the measure or degree of proof that produces a firm belief or conviction of the truth of the allegations sought to be established.

"Malice" means a specific intent by Jayne Moseley to cause substantial injury to EAJF.

"Gross negligence" means an act or omission by Jayne Moseley,

1. which when viewed objectively from the standpoint of Jayne Moseley at the time of its occurrence involves an extreme degree of risk, considering the probability and magnitude of the potential harm to others; and

2. of which Jayne Moseley has actual, subjective awareness of the risk involved, but nevertheless proceeds with conscious indifference to the rights, safety, or welfare of others.

Answer "Yes" or "No."

Answer: ______________

Unofficial Copy Office of Marilyn Burgess District Clerk

Answer the following question only if you unanimously answered "Yes" to Question No. 8. Otherwise, do not answer the following question.

You must unanimously agree on the amount of any award of exemplary damages.

## Question No. 8

What sum of money, if any, if paid now in cash, should be assessed against Jayne Moseley and awarded to Intervenors as exemplary damages, if any, for the asset transfers for which you answered "yes" in Question 1 or Question 3?

"Exemplary damages" means an amount that you may in your discretion award as a penalty or by way of punishment.

Factors to consider in awarding exemplary damages, if any, are—

1. The nature of the wrong.
2. The character of the conduct involved.
3. The degree of culpability of Jayne Moseley.
4. The situation and sensibilities of the parties concerned.
5. The extent to which such conduct offends a public sense of justice and propriety.
6. The net worth of Jayne Moseley.

Answer in dollars and cents, if any.

Answer: ______________

Unofficial Copy Office of Marilyn Burgess District Clerk

**INSTRUCTIONS FOR PRESIDING JUROR:**

After you retire to the jury room, you will select your own presiding juror. The first thing the presiding juror will do is to have this complete charge read aloud and then you will deliberate upon your answers to the questions asked.

It is the duty of the presiding juror--

1. to preside during your deliberations,

2. to see that your deliberations are conducted in an orderly manner and in accordance with the instructions in this charge,

3. to write out and hand to the bailiff any communications concerning the case that you desire to have delivered to the judge,

4. to vote on the questions,

5. to write your answers to the questions in the spaces provided, and

6. to certify to your verdict in the space provided for the presiding juror's signature or to obtain the signatures of all the jurors who agree with the verdict if your verdict is less than unanimous.

Do you understand the duties of the presiding juror? If you do not, please tell me now.

Unofficial Copy Office of Marilyn Burgess District Clerk

**Instructions for Signing the Verdict Certificate:**

1. You may answer the questions on a vote of ten jurors. The same ten jurors must agree on every answer in the charge. This means you may not have one group of ten jurors agree on one answer and a different group of ten jurors agree on another answer.

2. If ten jurors agree on every answer, those ten jurors sign the verdict. If eleven jurors agree on every answer, those eleven jurors sign the verdict. If all twelve of you agree on every answer, you are unanimous and only the presiding juror signs the verdict.

3. All jurors should deliberate on every question. You may end up with all twelve of you agreeing on some answers, while only ten or eleven of you agree on other answers. But when you sign the verdict, only those ten who agree on every answer will sign the verdict.

Do you understand these instructions? If you do not, please tell me now.

____________________________________
JUDGE PRESIDING

Unofficial Copy Office of Marilyn Burgess District Clerk

## Verdict Certificate

Check one:

______ Our verdict is unanimous. All twelve of us have agreed to each and every answer. The presiding juror has signed the certificate for all twelve of us.

[signature]
Presiding Juror

Caleb W Bynum
Printed Name of Presiding Juror

______ Our verdict is not unanimous. Eleven of us have agreed to each and every answer and have signed the certificate below.

✓ Our verdict is not unanimous. Ten of us have agreed to each and every answer and have signed the certificate below

| | Jurors' Signatures | Jurors' Printed Names |
|---|---|---|
| 1. | [signature] | Caleb W Bynum |
| 2. | [signature] | Jo Lynn Terrebonne |
| 3. | [signature] | T. J. Davis |
| 4. | [signature] | Marisa Galavis |
| 5. | [signature] | Ashley Valliant |
| 6. | [signature] | Warren Benton |
| 7. | [signature] | Bernadette Turner |
| 8. | [signature] | Daniel McDonell |
| 9. | [signature] | Quasaundra Ellow |
| 10. | [signature] | Armel Fotso |
| 11. | | |

Unofficial Copy Office of Marilyn Burgess District Clerk

## Automated Certificate of eService

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Lisa Hobbs on behalf of Lisa Hobbs
Bar No. 24026905
Lisa@HobbsTexasAppeals.com
Envelope ID: 118877266
Filing Code Description: No Fee Documents
Filing Description: Answer/Contest/Response/Waiver
Status as of 8/20/2026 11:45 AM CST

Unofficial Copy Office of Marilyn Burgess District Clerk

Case Contacts

| Name | BarNumber | Email | TimestampSubmitted | Status |
|---|---|---|---|---|
| J. PatrickCohoon | | pcohoon@lkclawfirm.com | 8/20/2026 11:32:12 AM | SENT |
| Frederick Johnson | 785429 | fjohnson@spencerfane.com | 8/20/2026 11:32:12 AM | SENT |
| Stephanie Proffitt | 24006775 | notice@proffittfamilylaw.com | 8/20/2026 11:32:12 AM | SENT |
| John Moseley | 24092863 | zach@mma-pllc.com | 8/20/2026 11:32:12 AM | SENT |
| Lisa Hobbs | 24026905 | lisa@hobbstexasappeals.com | 8/20/2026 11:32:12 AM | SENT |
| Brian Zimmerman | 788746 | bzimmerman@spencerfane.com | 8/20/2026 11:32:12 AM | SENT |
| Lorraine Brazil | | production@brazilco.com | 8/20/2026 11:32:12 AM | SENT |
| John ZachMoseley | | zach@mma-pllc.com | 8/20/2026 11:32:12 AM | SENT |
| Bobby K. Newman | | bknservice@bobbyknewman.com | 8/20/2026 11:32:12 AM | SENT |
| Doug York | | service@douglasyork.com | 8/20/2026 11:32:12 AM | SENT |
| Katie LFlynn | | service@thestoutlawfirm.com | 8/20/2026 11:32:12 AM | SENT |
| Andrew Bayley | 24071501 | Andrew@bayleylawfirm.com | 8/20/2026 11:32:12 AM | SENT |
| Gary Zimmerman | 795740 | gzimmerman@spencerfane.com | 8/20/2026 11:32:12 AM | SENT |
| Jessica Stacy | | jstacy@lkclawfirm.com | 8/20/2026 11:32:12 AM | SENT |
| Jason Curd | | jcurd@lkclawfirm.com | 8/20/2026 11:32:12 AM | SENT |
| John Ben Blackburn | | jbblackburn@lkclawfirm.com | 8/20/2026 11:32:12 AM | SENT |

Associated Case Party: Equal Access Justice Fund, LP

| Name | BarNumber | Email | TimestampSubmitted | Status |
|---|---|---|---|---|
| Frederick Johnson | 785429 | fjohnson@spencerfane.com | 8/20/2026 11:32:12 AM | SENT |
| Brian Zimmerman | 788746 | bzimmerman@spencerfane.com | 8/20/2026 11:32:12 AM | SENT |
| Gary Zimmerman | 795740 | gzimmerman@spencerfane.com | 8/20/2026 11:32:12 AM | SENT |