# SETTLEMENT AGREEMENT AND MUTUAL RELEASE

This SETTLEMENT AGREEMENT AND MUTUAL RELEASE (this "***Agreement***") is entered into as of August 24, 2026 (the "***Execution Date***"), by and between: Allison D. Byman, in her capacity as Plan Administrator for **MMA LAW FIRM, PLLC** ("***MMA***" or "***Plaintiff***"), formerly known as McClenny Moseley & Associates, PLLC, a Texas professional limited liability company, debtor and debtor-in-possession in Case No. 24-31596 (EVR), Chapter 11, pending in the United States Bankruptcy Court for the Southern District of Texas, Houston Division (the "***Bankruptcy Case***") and **LABORDE EARLES LAW FIRM, LLC**, a Louisiana limited liability company ("***Laborde Earles***" or "***LE***"). Allison D. Byman, in her capacity as Plan Administrator for MMA ("***Plan Administrator***") and Laborde Earles are referred to individually as a "***Party***" and collectively as the "***Parties***."

## RECITALS

***WHEREAS***, MMA is a Texas professional limited liability company that formerly represented thousands of individuals in property damage claims under contingency fee agreements;

***WHEREAS***, on or about March 3, 2023, attorneys associated with MMA were suspended from practice in the Western District of Louisiana (the "***Suspension***"), and MMA thereafter sought to transfer client representations to other law firms;

***WHEREAS***, after the Suspension, Laborde Earles undertook representation of certain of the MMA Cases on a contingency fee basis defined herein as the LE/Debtor Cases.

***WHEREAS***, MMA filed a voluntary petition for relief under Chapter 11 of Title 11 of the United States Code on April 9, 2024, initiating the Bankruptcy Case in the United States Bankruptcy Court for the Southern District of Texas, Houston Division (the "***Bankruptcy Court***");

***WHEREAS***, MMA initiated Adversary Proceeding No. 24-03130 (which has also proceeded in the United States District Court for the Southern District of Texas under Case No. 4:25-cv-00097, together, the "***Adversary Proceeding***") against Laborde Earles, and filed an *Amended Complaint* [Adv. Pro. No. 24-03130, ECF No. 25] (the "***Amended Complaint***") asserting claims for: (1) violation of the automatic stay under 11 U.S.C. § 362; (2) declaratory judgment under 11 U.S.C. § 541; and (3) turnover of property of the estate under 11 U.S.C. § 542;

***WHEREAS***, Laborde Earles filed an Amended Answer and Defenses [Adv. Pro. No. 24-03130, ECF No. 50] (the "***Amended Answer***") denying MMA's claims and asserting affirmative defenses, including but not limited to lack of standing, failure to join necessary parties, that settlement proceeds are not property of the estate, that any stay violation was not willful, and equitable defenses;

***WHEREAS***, the Parties entered into an Agreed Preliminary Injunction, entered by the Bankruptcy Court on August 2, 2024 [Adv. Pro. No. 24-03130, ECF No. 22] (the "***Agreed Preliminary Injunction***"), pursuant to which Laborde Earles has continued prosecuting and settling the

LE/Debtor Cases and has held attorneys' fees and cost reimbursements in a trust account pending further order of the Court;

***WHEREAS***, the Parties desire to fully, finally, and forever resolve all claims, counterclaims, disputes, and causes of action between them arising from or related to the MMA Cases, the LE/Debtor Cases, the Adversary Proceeding, and any alleged agreement between the Parties, without further litigation and without any admission of liability or wrongdoing by either Party;

***NOW, THEREFORE***, in consideration of the mutual covenants, agreements, representations, and warranties contained herein, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Parties agree as follows:

## ARTICLE I
## DEFINITIONS

**1.1** "***Adversary Proceeding***" has the meaning set forth in the Recitals.

**1.2** "***Agreed Preliminary Injunction***" has the meaning set forth in the Recitals.

**1.3** "***Bankruptcy Case***" has the meaning set forth in the Preamble.

**1.4** "***Bankruptcy Court***" has the meaning set forth in the Recitals.

**1.5** "***Court Approval***" means the entry of a final, non-appealable order of the Bankruptcy Court approving this Agreement pursuant to Federal Rule of Bankruptcy Procedure 9019.

**1.6** "***Effective Date***" means the date on which Court Approval is obtained.

**1.7** "**ESI**" has the meaning set forth in Section 9.1 hereof.

**1.8** "***LE/Debtor Cases***" means those legal matters formerly handled by MMA in which Laborde Earles subsequently undertook representation of the clients and identified on **Exhibit A** attached hereto.

**1.9** "***MMA Cases***" means all legal matters formerly handled by MMA arising from property damage claims related to Hurricanes Laura, Delta, Zeta, and Ida.

**1.10** "***Preservation Period***" has the meaning set forth in Section 9.1 hereof.

**1.11** "***Released Claims***" has the meaning set forth in Section 5.1 hereof.

**1.12** "***Released Parties***" has the meaning set forth in Section 5.3 hereof.

**1.13** "***Settlement Payment***" means the sum of Six Hundred Seven Thousand Twenty-Eight Dollars and Ninety-Nine Cents ($607,028.99), payable by Laborde Earles to MMA as provided in Article III hereof.

**1.14** ***"Settlement Statements"*** means settlement statements, closing statements, or disbursement sheets reflecting the resolution of each LE/Debtor Case, including the gross recovery, attorney's fee calculation, expense reimbursements, and disbursement of funds.

**1.15** ***"Trust Account"*** means the attorney trust account maintained by Laborde Earles in which attorneys' fees and cost reimbursements from the LE/Debtor Cases have been held pursuant to the Agreed Preliminary Injunction.

1.16 "***Associated Firm***" means any law firm, lawyer, professional corporation, or other professional entity, other than a Party itself, that has at any time served as co-counsel, associated counsel, referring counsel, forwarding counsel, local counsel, or successor counsel, or has otherwise participated in the representation of any client, in any LE/Debtor Case or any MMA Case, or that has received, shared, claimed, or asserted any right to any portion of the attorneys' fees generated in any such matter. No individual shall constitute an Associated Firm solely by reason of having performed legal services on an LE/Debtor Case in his or her capacity as a member, partner, or employee of Laborde Earles.

## ARTICLE II
## COURT APPROVAL

**2.1** **Motion for Approval.** The form of motion seeking approval of this Agreement (the "9019 Motion") and the form of proposed order thereon are attached hereto as Exhibit D and Exhibit E, respectively, and have been reviewed and approved by both Parties. Within five (5) business days following the Execution Date, the Plan Administrator shall file the 9019 Motion and submit the proposed order in substantially the form of Exhibit D and Exhibit E, subject to (i) the insertion of dates, case captions, docket numbers, signature blocks, certificates of service, and other conforming or non-substantive information, (ii) any modification required by the Bankruptcy Court, by the Bankruptcy Local Rules, or by the procedures of the presiding judge, and (iii) any modification agreed to in writing by both Parties. Nothing in this Agreement shall limit, condition, or in any way restrict the Plan Administrator 's right to describe, explain, or disclose the terms of this Agreement, the basis for the Settlement Payment, the terms contained in the Settlement Statements, or any other matter relating to this Agreement or the 9019 Motion, whether in testimony, argument, proffer, or response to inquiry, at any hearing on the 9019 Motion. If the Bankruptcy Court requires, or if any party in interest objects to the 9019 Motion on the ground that it discloses insufficient information regarding the terms of this Agreement, the Plan Administrator may supplement the 9019 Motion, file a reply, or make any disclosure necessary to obtain Court Approval or to respond to the objection or to any inquiry of the Bankruptcy Court, and no such supplement, reply, disclosure, or response shall constitute a breach of this Agreement, provided that the Plan Administrator or her successor shall take reasonable steps necessary to maintain and protect the confidentiality of Settlement Statements and Exhibit A hereto. The Plan Administrator shall give Laborde Earles notice of any written supplement or written disclosure as far in advance as is practicable and shall confer with Laborde Earles in good faith regarding its form and content and shall use reasonable efforts to seek to file under seal or otherwise protect from public disclosure any information designated confidential under Article XI.

**2.2 Condition Precedent.** This Agreement, and the obligations of the Parties hereunder, are expressly conditioned upon and subject to the entry of Court Approval. If the Bankruptcy Court declines to approve this Agreement or imposes material modifications not acceptable to both Parties, either Party may terminate this Agreement upon written notice to the other, in which event this Agreement shall be null and void and of no further force or effect, and neither Party shall have any liability to the other hereunder.

## ARTICLE III
## SETTLEMENT PAYMENT

**3.1 Amount.** In full and final settlement of all claims between the Parties, Laborde Earles shall pay to MMA the Settlement Payment in the amount of Six Hundred Seven Thousand Twenty-Eight Dollars and Ninety-Nine Cents ($607,028.99).

**3.2 Inclusive Payment.** Except as provided in Sections 5.8, 6.4, and 8.2, the Parties expressly acknowledge and agree that the Settlement Payment of $607,028.99 includes and fully accounts for any and all attorneys' fees, case expenses, costs, filing fees, service fees, expert fees, estimator fees, reimbursements, and any other amounts of any kind or nature whatsoever that are or may be owed, claimed to be owed, or alleged to be owed by Laborde Earles to MMA in connection with the LE/Debtor Cases, the MMA Cases, any alleged agreement between the Parties, the Adversary Proceeding, or any other matter. Upon receipt of the Settlement Payment, and except as provided in Sections 5.8, 6.4 and 8.2, no further amounts of any kind shall be due or owing from Laborde Earles to MMA. The Parties agree that MMA shall take full responsibility for addressing claims by any and all experts or estimators MMA engaged for any reason. This Settlement Agreement is intended to, among other things, make clear that Laborde Earles has no responsibility or obligation to address, negotiate, or resolve any portion of MMA's expert or estimator expenses. For the avoidance of doubt, the Settlement Payment compensates MMA solely for the portion of the attorneys' fees, costs, and expenses in the LE/Debtor Cases and the MMA Cases received, earned, realized, or held by or for the benefit of Laborde Earles and its Released Parties. The Settlement Payment does not compensate MMA for, and MMA does not release, any portion of the attorneys' fees, costs, or expenses in any such matter received, earned, realized, or held by or for the benefit of any Associated Firm. Nothing in this Section 3.2 shall be construed to limit or reduce any claim of MMA against any Associated Firm.

**3.3 Timing and Method of Payment.** No later than five (5) business days after the Effective Date, MMA (or its counsel) shall designate an account in writing for the payment of the Settlement Payment to be sent to the Plan Administrator. The Settlement Payment shall be made within ten (10) business days following the designation of such account by wire transfer of immediately available funds to such account designated by the Plan Administrator.

**3.4 Transfer of Funds.** The Settlement Payment may be funded from the Trust Account, which contains funds held by Laborde Earles pursuant to the Agreed Preliminary Injunction. Upon entry of Court Approval, the Agreed Preliminary Injunction shall be deemed modified to authorize the disbursement of the Settlement Payment from the Trust

Account to MMA. Any funds remaining in the Trust Account after disbursement of the Settlement Payment shall be released to Laborde Earles free and clear of any claim by MMA, the MMA bankruptcy estate and any successor to MMA and/or the MMA bankruptcy estate; *provided however*, that certain original settlement memos were executed at a 40% attorney fee, and Laborde Earles shall return the difference between the 40% fee and the 33.33% fee Laborde Earles holds pursuant to *Agreed Preliminary Injunction* [Adv. No. 24-03130. ECF No. 22] to the respective client free and clear of any claim by MMA, the MMA bankruptcy estate and any successor to MMA and/or the MMA bankruptcy estate.

3.5 **Tax Consequences.** Each Party shall be solely responsible for the payment of any and all taxes owed by it as a result of the Settlement Payment and the transactions contemplated herein. Laborde Earles shall issue any required tax reporting forms (including IRS Form 1099, if applicable) to MMA through the Plan Administrator.

## ARTICLE IV
## DISMISSAL OF ADVERSARY PROCEEDING

4.1 **Stipulation of Dismissal.** Within five (5) business days following Laborde Earles' payment of the Settlement Payment in full, the Parties shall jointly file a Stipulation of Dismissal with Prejudice of the Adversary Proceeding in the Bankruptcy Court and in the District Court (in 4:25-cv-00097 (S.D. Tex.)), with each Party to bear its own attorneys' fees and costs. In the event either Party fails to execute the stipulation, this Agreement may be presented to the Bankruptcy Court as the basis for entry of an order of dismissal with prejudice.

4.2 **Retention of Jurisdiction.** The Bankruptcy Court shall retain jurisdiction to enforce the terms of this Agreement, including but not limited to the payment obligations, the preservation and cooperation obligations, and any disputes arising hereunder.

## ARTICLE V
## RELEASE

5.1 **Released Claims.** "***Released Claims***" means any and all claims, causes of action, suits, debts, dues, sums of money, accounts, reckonings, bonds, bills, covenants, contracts, controversies, agreements, promises, variances, trespasses, damages, judgments, executions, demands, rights, liabilities, obligations, losses, costs, expenses (including attorneys' fees), and actions of every kind and nature whatsoever, whether at law or in equity, whether known or unknown, suspected or unsuspected, fixed or contingent, matured or unmatured, liquidated or unliquidated, that either Party ever had, now has, or hereafter may have against the other Party or any Released Party, arising out of, relating to, or in any way connected with:

(a) the MMA Cases and/or the LE/Debtor Cases;

(b) any alleged agreement, arrangement, understanding, or course of dealing between MMA and Laborde Earles regarding the transfer, referral, or handling of cases, clients, or fees;

(c) the Adversary Proceeding, including all claims asserted in the Amended Complaint and all counterclaims and affirmative defenses asserted in the Amended Answer;

(d) any alleged violation of the automatic stay under 11 U.S.C. § 362;

(e) any claim for declaratory relief under 11 U.S.C. § 541 regarding property of the estate;

(f) any claim for turnover under 11 U.S.C. § 542;

(g) any claim for attorneys' fees, costs, expenses, or damages arising from or related to any of the foregoing; and

(h) any and all other claims, of whatever nature, that were or could have been asserted by either Party against the other in the Adversary Proceeding or that arise from the same nucleus of operative facts.

**5.2 Carve-Out.** Notwithstanding anything to the contrary herein, Sections 5.1, 5.4, 5.6 and 5.7 shall not apply to any undisclosed or subsequently discovered legal matter formerly handled by MMA in which Laborde Earles subsequently undertook representation of such client that is omitted, intentionally or unintentionally, from Exhibit A hereto. Any statute of limitations, prescriptive period applicable to any claim by MMA and its bankruptcy estate, or any successor to MMA and/or the MMA bankruptcy estate has or may have against Laborde Earles arising solely from legal fees and expenses related to such undisclosed or subsequently discovered legal matters described in the preceding sentence is tolled and suspended. Except with respect to any claim related to an intentional misrepresentation of the disclosures contained in Exhibit A, no omission of such legal matter shall constitute a material breach of this Agreement or result in any recission, voidability or voiding of this Agreement, including, but not limited to, the releases contained herein.

**5.3 Released Parties.** "***Released Parties***" means, with respect to each Party: (a) the Party itself; (b) its past, present, and future owners, members, managers, partners, principals, officers, directors, and employees; (c) its, agents, representatives, attorneys, advisors, and consultants, solely in their capacity as agent, representative, counsel, or advisor to the Party in the Bankruptcy Case, the Adversary Proceeding, or the negotiation and performance of this Agreement; (d) its parent entities, subsidiaries, affiliates, predecessors, successors lenders, and assigns; and (e) each of the foregoing persons' and entities' respective heirs, executors, administrators, personal representatives, and estates. Notwithstanding anything to the contrary in this Agreement, "Released Parties" does not include any Associated Firm, and no release, waiver, discharge, or covenant not to sue set forth in this Agreement extends to any Associated Firm.

**5.4 MMA's Release of Laborde Earles.** Effective upon receipt of the Settlement Payment, MMA, on behalf of itself, its bankruptcy estate, any successor to MMA and/or the MMA bankruptcy estate and their respective Released Parties, hereby unconditionally and irrevocably releases, acquits, and forever discharges Laborde Earles and its Released Parties from any and all Released Claims.

**5.5 Laborde Earles' Release of MMA.** Effective upon payment of the Settlement Payment, Laborde Earles, on behalf of itself and its Released Parties, hereby unconditionally and irrevocably releases, acquits, and forever discharges MMA, its bankruptcy estate, any successor to MMA and/or the MMA bankruptcy estate, and MMA's Released Parties from any and all Released Claims, including but not limited to any claims asserted or that could have been asserted as counterclaims or affirmative defenses in the Adversary Proceeding.

**5.6 Waiver of Unknown Claims.** Each Party acknowledges that it may hereafter discover facts different from or in addition to those it now knows or believes to be true with respect to the subject matter of this Agreement, and each Party agrees that this Agreement shall remain in full force and effect notwithstanding the existence or discovery of any such different or additional facts. Each Party expressly waives and relinquishes, to the fullest extent permitted by law, any right or benefit it may have under applicable law, which provides that a general release does not extend to claims that the creditor or releasing party does not know or suspect to exist in his or her favor at the time of executing the release and that, if known, would have materially affected his or her settlement with the released party.

**5.7 Covenant Not to Sue.** Each Party covenants and agrees that it will not, directly or indirectly, commence, maintain, or prosecute, or cause or permit to be commenced, maintained, or prosecuted, any action, suit, or proceeding of any kind against the other Party or any Released Party with respect to any Released Claim.

**5.8 Exclusions from Release.** Notwithstanding anything in this Article V to the contrary, the Released Claims do not include, and neither Party releases, waives, discharges, or covenants not to sue upon: (a) any claim arising from a breach of this Agreement, including any breach of the representations and warranties set forth in Article VI; (b) any claim arising from or relating to any case, claim, or matter that was required to be identified on Exhibit A but was not so identified; (c) any claim arising from or relating to any understatement on Exhibit A of the attorneys' fees, gross recovery, or expenses associated with any case, provided that, except where such understatement results an intentional misrepresentation, fraud, or conduct described in Section 6.4(f), the exclusive remedy for such understatement shall be in accordance with Section 6.4(e) hereof; (d) any claim to enforce Article VI, Article VII, Article VIII, or Article IX; (e) any claim sounding in fraud, fraudulent inducement, or intentional or negligent misrepresentation arising from the representations made in Article VI or in the Sworn Certification. and (f) any claim against any Associated Firm, or any claim against Laborde Earles arising from or relating to fees received, shared, or retained by any Associated Firm. The waiver of unknown claims in Section 5.6 and the covenant not to sue in Section 5.7 do not apply to any matter excluded by this Section 5.8

**5.9** **Reservation of Rights Against Associated Firms.** MMA and thereby the Plan Administrator, expressly reserves, and does not release, waive, discharge, or compromise, any and all claims, causes of action, and rights of recovery it has or may have against any Associated Firm and against any person or entity other than Laborde Earles and its Released Parties whether arising from the same facts as the Released Claims or otherwise. This Agreement is intended to release only Laborde Earles and its Released Parties.

## ARTICLE VI
## REPRESENTATIONS AND WARRANTIES REGARDING THIRD-PARTY CLAIMS, EXHIBIT A AND LIENS

**6.1** **MMA's Representations and Warranties.** MMA represents and warrants to Laborde Earles as follows:

(a) **Authority.** The Plan Administrator has full legal authority and capacity, subject to Court Approval, to enter into this Agreement, to release the Released Claims, and to perform all obligations hereunder. The execution, delivery, and performance of this Agreement by MMA have been duly authorized by all necessary action.

(b) **No Assignments.** MMA has not assigned, transferred, pledged, or otherwise encumbered any of the claims released herein to any third party, and no other person or entity has any interest in the Released Claims.

**6.2** **Survival.** All representations and warranties under this Article VI shall survive the Effective Date, the payment of the Settlement Payment, and the dismissal of the Adversary Proceeding, and shall remain in full force and effect without limitation as to time.

**6.3** **Laborde Earles' Representations and Warranties.** Laborde Earles represents and warrants to MMA that it has full legal authority and capacity to enter into this Agreement and to perform all obligations hereunder, and that the execution, delivery, and performance of this Agreement by Laborde Earles have been duly authorized by all necessary action.

**6.4** **Laborde Earles' Representations and Warranties Regarding Exhibit A.** As a material inducement to MMA's entry into this Agreement, and as a material term hereof, Laborde Earles represents and warrants to MMA as follows:

(a) **Completeness of Exhibit A.** After reasonable inquiry and to Laborde Earles' knowledge, Exhibit A identifies every case, claim, and legal matter in which Laborde Earles has at any time undertaken, assumed, continued, or participated in the representation of any person or entity who was, to Laborde Earles' knowledge, at any time a client of MMA, whether that representation was undertaken directly, jointly with any other law firm or lawyer, by referral, by substitution, or through any other arrangement, and whether or not Laborde Earles remains counsel of record as of the Execution Date. After reasonable inquiry and to Laborde Earles' knowledge, no such case, claim, or matter has been omitted from Exhibit A. Exhibit A further identifies, for each case, claim, and matter listed thereon, each Associated Firm, **if any,** that participated in the representation or received, shared, or claimed

any portion of the attorneys' fees therein, and the amount of attorneys' fees received, shared, or claimed by each such Associated Firm.

(b) **Accuracy of Amounts.** After diligent inquiry and to Laborde Earles' knowledge, each case, claim, and matter specifically identified on Exhibit A resolved as of the Execution Date, the amounts stated are true, correct, and complete, and reflect the gross recovery obtained, the total attorneys' fees received, earned, or otherwise realized by Laborde Earles or by any person or entity for the benefit of Laborde Earles, and the total expenses and costs reimbursed. After diligent inquiry and to Laborde Earles' knowledge, the aggregate attorneys' fee figure stated on Exhibit A for each matter identified on Exhibit A that is resolved as of the Execution Date is the entirety of the attorneys' fees generated in those matters, and no portion of any such fee has been paid, assigned, diverted, deferred, waived, or held for the benefit of any other person or entity in any manner that reduces the amounts shown, except as may be provided pursuant to Section 3.4 hereof.

(c) **Reliance.** The Settlement Payment was calculated by reference to the cases and the attorneys' fee amounts stated on Exhibit A. Laborde Earles acknowledges that MMA has relied upon the completeness and accuracy of Exhibit A, and that MMA would not have entered into this Agreement, agreed to the amount of the Settlement Payment, or granted the releases in Article V, absent the representations set forth in this Section 6.4.

(d) **Understatements.** The understatement from Exhibit A of the amount of attorneys' fees associated with any case, claim, or matter, shall be remedied in accordance with Section 6.4(e) of this Agreement.

(e) **Remedy.** Upon any understatement described in Section 6.4(d) or omission under Section 8.2, Laborde Earles shall pay to MMA, within thirty (30) days of written demand, an amount bearing the same proportion to the attorneys' fees omitted or understated as the Settlement Payment bears to the aggregate attorneys' fees stated on Exhibit A for matters resolved as of the Execution Date, together with interest from the date of demand at the rate applicable to federal judgments and MMA's reasonable attorneys' fees and costs incurred in enforcing this Section 6.4. No omission or understatement of such fees shall constitute a material breach of this Agreement or result in any recission, voidability or voiding of this Agreement.

(f) **Matters Pending as of the Execution Date.** Exhibit A separately identifies each case, claim, and matter described in Section 6.4(a) that remains pending as of the Execution Date and states, for each, the status of settlement negotiations and any offer or demand outstanding as of the Execution Date. Laborde Earles represents and warrants that, to Laborde Earles' knowledge, no matter identified on Exhibit A as pending is one in which a settlement had been agreed, executed, or funded on or before the Execution Date, and that it has not deferred, delayed, or withheld the resolution or the recording of the resolution of any matter for the purpose of characterizing that matter as pending. A breach of this Section 6.4(f) is a breach of

this Agreement and carries the remedy set forth in Section 6.4(e), which remedy is not exclusive of any other remedy available at law or in equity.

## ARTICLE VII
## DELIVERY OF SETTLEMENT STATEMENTS

7.1 **Obligation to Provide.** Laborde Earles has, prior to the Execution Date, provided MMA with copies of all Settlement Statements for the LE/Debtor Cases resolved as of the Execution Date, and Laborde Earles represents and warrants that the Settlement Statements so provided are complete and constitute all such Settlement Statements. For any LE/Debtor Case resolved on or after the Execution Date, Laborde Earles shall provide the applicable Settlement Statement within fourteen (14) business days following resolution of such case.

7.2 **No Further Obligation.** For the avoidance of doubt, the provision of Settlement Statements is for informational and record-keeping purposes only and shall not, standing alone, give rise to any additional payment obligation or reopen the finality of the Settlement Payment or the releases granted herein. Nothing in this Section 7.2 limits Laborde Earles' obligations, or MMA's rights and remedies, under Section 6.4, Section 7.3, or Section 8.2.

7.3 **Reconciliation.** MMA shall have until the Court Approval of this Settlement to reconcile the Settlement Statements referenced in Section 7.1 to reconcile those statements against Exhibit A. If the Settlement Statements disclose any case, claim, or matter not identified on Exhibit A, or attorneys' fees exceeding the amount stated on Exhibit A for any case, MMA shall so notify Laborde Earles in writing, and Laborde Earles shall promptly correct Exhibit A and the Settlement Payment shall be increased in the manner set forth in Section 6.4(e).

## ARTICLE VIII
## SWORN REPRESENTATION REGARDING OTHER CASES

8.1 **Certification.** Concurrently with the execution of this Agreement, a member or managing partner of Laborde Earles with authority to bind the firm shall execute a sworn certification substantially in the form attached hereto as **Exhibit B** (the "***Sworn Certification***"), representing and certifying that, after reasonable inquiry of Laborde Earles' records, no other cases are known to exist in which Laborde Earles currently represents or has represented a former MMA client, other than those LE/Debtor Cases already identified and accounted for in Exhibit A hereto.

8.2 **Discovery of Additional Cases or Undisclosed Cases.** If at any time Laborde Earles discovers, or MMA identifies, any case, claim, or matter that was required to be identified on Exhibit A but was not so identified, Laborde Earles shall notify the Plan Administrator and her counsel in writing within ten (10) business days and shall deliver to the Plan Administrator and her counsel the Settlement Statement and a complete fee accounting for that matter, or Laborde Earles shall deliver to the Plan Administrator and her counsel the Settlement Statement and complete fee accounting for such matter within ten (10) business

days after the Plan Administrator and her counsel identify such case to Laborde Earles, as the case may be. Laborde Earles shall pay to MMA, within thirty (30) days of written demand, the amount determined under Section 6.4(e) with respect to that matter; *provided, however*, that neither the releases granted in Article V nor the dismissal of the Adversary Proceeding shall bar MMA from enforcing this Section 8.2 or Section 6.4, and MMA's claims with respect to any case, claim, or matter omitted from Exhibit A are expressly preserved under Section 5.8.

## ARTICLE IX
## PRESERVATION OF ELECTRONIC INFORMATION AND COOPERATION

**9.1 Preservation Obligation.** Laborde Earles covenants and agrees that it will preserve and shall not allow the destruction, deletion, alteration, or disposition of any electronically stored information ("***ESI***"), documents, files, communications, or other records in its or its principals' possession, custody, or control that relate to MMA, MMA's principals, the MMA Cases, the LE/Debtor Cases, or any former MMA client, for a period of eighteen (18) months following the date on which the order approving this Agreement becomes final and non-appealable (the "***Preservation Period***").

**9.2 Cooperation in Third-Party Discovery.** Laborde Earles further covenants and agrees that, from and after the Effective Date, during the Preservation Period, if Laborde Earles is served with reasonable, formal discovery requests (including but not limited to subpoenas, requests for production, or interrogatories) by MMA in other litigation or proceedings involving MMA and third parties, and such requests seek information or documents relating to MMA, MMA's principals, the MMA Cases, or the LE/Debtor Cases, Laborde Earles shall cooperate in good faith in producing responsive, non-privileged information and documents, subject to:

(a) Laborde Earles' right to assert applicable privileges (including attorney-client privilege and work product doctrine) with respect to its own clients' confidential information; and

(c) compliance with all applicable rules, laws, and court orders governing such discovery.

**9.3 Survival.** The obligations set forth in this Article IX shall survive the releases granted in Article V, the dismissal of the Adversary Proceeding, and the termination or expiration of this Agreement, and shall continue in full force and effect for the duration of the Preservation Period. For the avoidance of doubt, the mutual release granted in Article V does not release, waive, or limit the obligations of Laborde Earles under this Article IX.

## ARTICLE X
## NO ADMISSION OF LIABILITY

**10.1** This Agreement represents a compromise and settlement of disputed claims. Nothing contained herein shall be construed as an admission of liability, wrongdoing, or fault by either Party. Each Party expressly denies any liability or wrongdoing. Laborde Earles

specifically denies the existence of any binding agreement with MMA regarding fee-sharing and denies any violation of the automatic stay. This Agreement shall not be admissible in any proceeding for any purpose other than to enforce its terms.

## ARTICLE XI
## CONFIDENTIALITY

**11.1 Confidential Treatment.** The Parties agree that (i) Exhibit A hereto and (ii) Settlement Statements shall be treated as confidential and shall not be disclosed to any third party except as provided in Section 11.2.

**11.2 Permitted Disclosures.** Notwithstanding Section 11.1, disclosure of the items specified in Section 11.1 is permitted:

(a) to a Party's attorneys, accountants, tax advisors, auditors, insurers, and other professional advisors, provided such persons agree to maintain the confidentiality of the information;

(b) to the extent required by applicable law, regulation, or legal process (including subpoena or court order), provided that the disclosing Party gives the other Party reasonable prior written notice to the extent permitted by law;

(c) with the prior written consent of the other Party; and

(d) by MMA, in testimony, argument, proffer, or response to inquiry at any hearing before the Bankruptcy Court, or as necessary to obtain Court Approval or to respond to any objection to the 9019 Motion, in each case as provided in Section 2.1.

## ARTICLE XII
## MISCELLANEOUS PROVISIONS

**12.1 Governing Law.** This Agreement shall be governed by and construed in accordance with the laws of the State of Louisiana, without regard to its conflict of laws principles, except to the extent that federal bankruptcy law applies.

**12.2 Entire Agreement.** This Agreement (including any exhibits hereto) constitutes the entire agreement between the Parties with respect to the subject matter hereof and supersedes all prior or contemporaneous oral or written agreements, understandings, representations, or warranties between the Parties relating to such subject matter.

**12.3 Amendment.** This Agreement may not be amended, modified, or supplemented except by a written instrument executed by both Parties and, to the extent required, approved by the Bankruptcy Court.

**12.4 Waiver.** No waiver of any provision of this Agreement shall be effective unless in writing and signed by the waiving Party. The failure of either Party to enforce any provision of this

Agreement shall not be construed as a waiver of such provision or the right to enforce it at a later time.

**12.5 Counterparts.** This Agreement may be executed in any number of counterparts, each of which shall be deemed an original and all of which together shall constitute one and the same instrument. Signatures transmitted by facsimile, email (including PDF), or other electronic means shall be deemed original signatures for all purposes.

**12.6 Severability.** If any provision of this Agreement is held to be invalid, illegal, or unenforceable, the validity, legality, and enforceability of the remaining provisions shall not be affected or impaired thereby, and such invalid, illegal, or unenforceable provision shall be modified to the minimum extent necessary to make it valid, legal, and enforceable while preserving the Parties' original intent.

**12.7 No Third-Party Beneficiaries.** Except as expressly set forth herein with respect to the Released Parties (who are intended third-party beneficiaries of the releases in Article V), this Agreement is not intended to confer any rights, remedies, obligations, or liabilities upon any person or entity other than the Parties. No Associated Firm is a third-party beneficiary of this Agreement or of any provision hereof.

**12.8 Notices.** All notices required or permitted under this Agreement shall be in writing and shall be deemed given when: (a) delivered personally; (b) sent by certified mail, return receipt requested, postage prepaid; or (c) sent by nationally recognized overnight courier, **and** (d) sent by email, in each case addressed as follows:

**If to MMA:**

MMA Law Firm, PLLC
c/o Miriam T. Goott
Walker & Patterson, P.C.
4815 Dacoma
Houston, Texas 77092

and

Allison D. Byman
7924 Broadway
Suite 104,
Pearland, TX 77581

By email: mgoott@walkerandpatterson.com, jjp@walkerandpatterson.com, adb@bymanlaw.com, kohlsson@mma-pllc.com, and Zach@mma-pllc.com.

**If to Laborde Earles:**

Laborde Earles Law Firm, LLC
c/o Joshua W. Wolfshohl
Porter Hedges LLP

1000 Main Street, 36th Floor
Houston, Texas 77002

By email: jwolfshohl@porterhedges.com; hhatfield@porterhedges.com; mdearman@porterhedges.com

Either Party may change its address and email for notices by written notice to the other Party in accordance with this Section by email.

**12.9 Construction.** This Agreement has been jointly drafted and negotiated by the Parties and their respective counsel. No provision of this Agreement shall be construed against either Party on the ground that such Party drafted the provision or caused it to be drafted.

**12.10 Headings.** The headings in this Agreement are for convenience of reference only and shall not affect the interpretation of any provision hereof.

**12.11 Authority.** Each person signing this Agreement represents and warrants that he or she is duly authorized to execute this Agreement on behalf of the Party for whom he or she signs.

**[SIGNATURE PAGES FOLLOW]**

* * * * *

IN WITNESS WHEREOF, the Parties have caused this Settlement Agreement and Mutual Release to be executed by their duly authorized representatives as of the date first written above.

**MMA LAW FIRM, PLLC**

By: Allison D. Byman, Plan Administrator
Name: /s/ Allison D. Byman, Plan Administrator
Title: 8-24-2026
Date:

**LABORDE EARLES LAW FIRM, LLC**

By: [signature]
Name: David C Laborde
Title: Partner
Date: 8-27-26



18666905

# EXHIBIT B

## SWORN CERTIFICATION OF LABORDE EARLES LAW FIRM, LLC REGARDING FORMER MMA CLIENT CASES

STATE OF LOUISIANA

PARISH OF Lafayette

BEFORE ME, the undersigned notary public, on this 27th day of August, 2026, personally appeared David Laborde (the "***Affiant***"), who, being first duly sworn, states under penalty of perjury as follows:

**1.** I am a duly authorized representative of Laborde Earles Law Firm, LLC ("***Laborde Earles***") and am authorized to make this Sworn Certification on behalf of Laborde Earles in connection with the Settlement Agreement and Mutual Release dated August___, 2026 (the "***Agreement***"), between MMA Law Firm, PLLC ("***MMA***") and Laborde Earles.

**2.** I have personal knowledge of the matters stated herein, or have made reasonable inquiry of Laborde Earles' records, case management systems, and personnel sufficient to form a reasonable belief regarding the matters stated herein.

**3.** After reasonable inquiry of Laborde Earles' records and personnel, I hereby certify that, to the best of my knowledge, information, and belief: no cases or legal matters exist in which Laborde Earles currently represents, or has at any time represented, a former client of MMA in the MMA Cases (as defined in the Agreement), other than those cases identified as "LE/Debtor Cases" on Exhibit A to the Agreement.

4. I further certify that dollar amounts identified on Exhibit A are true, correct, and complete, and reflect the gross recovery obtained, the total attorneys' fees received, earned, or otherwise realized by Laborde Earles or by any person or entity for the benefit of Laborde Earles, and the total expenses and costs reimbursed.

**4.** In the event that Laborde Earles discovers, after the date of this Certification, the existence of any additional case or matter involving a former MMA client in the MMA Cases that was not previously identified, Laborde Earles shall notify MMA in writing in accordance with Section 8.2 of the Agreement.

**5.** I understand that this Certification is made under penalty of perjury under the laws of the United States and the State of Louisiana, and that any knowing and willful false statement herein may subject me and/or Laborde Earles to criminal penalties.

**I declare under penalty of perjury that the foregoing is true and correct.**

Executed on this 27 day of August, 2026.

Name: David C Laborde
Title: Partner
Laborde Earles Law Firm, LLC

SUBSCRIBED AND SWORN TO before me on this 27th day of August, 2026.

Notary Public
My Commission Expires: @ Death

KELBY RASMUSSEN
Notary Public
No. 146500
Bar Roll # 36634
Attorney at Law
STATE OF LOUISIANA



18665972