## CATEGORY I: FIDUCIARY SABOTAGE & THE INJUNCTION TRAP

United States Courts
Southern District of Texas
FILED
*August 28, 2026*
Nathan Ochsner, Clerk of Court

**Exhibit 1: Easttom Forensics Report – Proof of Breach**

**Exhibit 2: CyberlinkASP Recorded Call Transcript**

.

**Exhibit 3: MMA's Drafted TRO & Injunction Brief (June 21, 2018)**

**Exhibit 4: MMA's May 31, 2019, Cease & Desist (The Contradiction)**

**Exhibit 5: Rames Law Firm - Patterns, Facts, and Overt Acts (MTW)**

**NOTE TO THE COURT:**

**Exhibits 1 through 4 establish an undeniable contradiction: legal counsel was in possession of expert-certified digital forensics and recorded call admissions, drafted emergency injunctions under 12 O.S. §§ 1381–1392, and then deliberately suppressed and abandoned these actions while falsely claiming a lack of evidence.**

**Exhibit 1: Easttom Forensics Report – Proof of Breach**

**FORENSICS REPORT OF WILLIAM C. EASTTOM II (Chuck)**

License Number: A18596

**Allegiant Investigations and Security Texas License No. A18596**

## Contents


Introduction and Overview ........ 1
Chain of Custody ........ 2
Executive Summary ........ 3
Details of examination and findings ........ 3
a. Unusual Folder ........ 5
b. Web Activity ........ 6
c. Hidden Folder ........ 7
d. Citrix Receiver ........ 9
e. Chrome activity ........ 9
Conclusions ........ 10
Appendix A – Recent Documents ........ 11
Appendix B – Websites ........ 49
Appendix C Form History ........ 53


CONFIDENTIAL

### Introduction and Overview

1. My name is William Charles Easttom II (Chuck Easttom). A brief summary of my forensics qualifications are given here. I have authored 21 computer science books, including textbooks used at universities around the world including 3 forensics books. I hold 42 IT industry certifications including multiple forensics certifications (CCFP, CHFI, OSForensics, Oxygen Forensics, ACE, CCI, CFC, etc.). I am a member of the American Academy of Forensic Sciences. I am also on the advisory board for the cyber security program at Embry-Riddle University and on the advisory board for the University of North Texas Cyber Forensics program/lab. I also teach hacking and

penetration testing techniques, have published papers and books chapters on the topic, and have been a presenter at Defcon (the oldest and largest hacking conference). My full CV is available upon request.

2. This is a report of an initial investigation of a hard drive. The goal of this investigation was to discover if there are any indicators of a breach of this machine.

**Chain of Custody**

3. On 15 June 2016 Dennis Ozment delivered one hard drive to me at my home office. The hard drive was in an evidence bag and hand delivered to me by Mr. Ozment.

4. My home office is a secure office a summary of security measures is given here. The office is only accessed by myself and my wife. She only accesses it to leave mail on the desk. The door to the office is locked. There is an extensive home security system including multiple cameras and alarm systems. There is a motion sensitive camera in the home office which also records anytime any external door to the home is opened. No one can enter the office without being filmed.

5. When I am not actively working on evidence, I store it in a locked cabinet that only I have the key to.

6. All analysis was performed on my forensics workstation

- That workstation is a Hewlett Packard computer
- Running Windows Server 2012 Standard
- Processor Intel Core i5 4579 CPU 3.2 GHZ
- 16 Gig of RAM
- The workstation is not connected to any network or the internet.
- The workstation stays locked in my home office.

CONFIDENTIAL

- The workstation is only used for forensics. No other activities of any kind take place on this computer.
- I am the only person with the password to this computer.

**Executive Summary**

7. There were multiple indicators of remote access software on this computer. Entire hidden folders that had been deleted. Logmein was installed on the machine. This can be used for legitimate access, and is also a common tool for intruders. There were other indicators of spyware. The presence of multiple indicators of compromise, as documented in this report and its appendices, leads me to conclude that this computer has been breached between February and June of 2017.

**Details of examination and findings**

8. The drive is a Toshiba MQ01ABD100 that was removed from a Dell Inspirion 3455. I first created an image of the drive using Access Data FTK Imager 3.1.1.8. I have approximately 5 years of experience with FTK and am an Access Data Certified Examiner (ACE). The imaging process took approximately 18 hours. FTK Imager then creates a cryptographic hash of the original and the image, to verify the copy was accurate. A screenshot of that process is shown in figure 1.

CONFIDENTIAL

**Litigation Support Experience**

Experience in over 150 cases including testifying on over 100 occaisions at depositions, trials, arbitration, and hearings.

**Areas of Expertise**

Computer Security, Computer Forensics, and Computer Crime
Software Architecture and Development
Windows, Linux, and Unix Operating systems
Software copyright and patent infringement including IPR
Operating systems
Network communications, network devices, telecommunications and network protocols
Database design and development
Cybersecuirty breaches
Website design and development including e-commerce and interactive web sites
Theft of intellectual property
Valuation of intellectual property/software
Cryptography and related issues
Mobile devices including the iPhone, Android, and Windows Phone
Computer networks
Artificial Intelligence/Machine Learning
Aerospace Engineering

Sample of firms I have worked with
Winthrop & Weinstein
Ogles Law Firm
Siebman, Reynolds, Burg & Phillips
McDermott, Will, & Emory
Alston and Bird
Berger Montague
McKool Smith
Dickstein and Shapiro
Reese, Gordon, and Marketos
Lord, Locke, Bissell, and Lidell
Jones Day
Hays, Bostic, & Cronnin
Morgan Lewis
Nelson, Bumgardner, and Castro
Munk Carter
Thompson Knight
Mintz-Levin
Winston - Strawn
Sheppard-Mullin
Quinn Emanuel Urquhart & Sullivan, LLP
Andrews-Kurth
Haynes-Boone
Lubell-Rosen
Winston & Strawn
The Wilshire Lawfirm

# Website of Chuck Easttom, Ph.D., D.Sc.

This website provides information about Dr. Chuck Easttom. You can find his books , Research topics , work in ligitation support, and a brief version of his curriculum vitae

Note: All graphics on this site are paid for/licensed via ShutterStock or are the property of Dr. Easttom

"If you cannot explain it mathematically....you are probably wrong " - Chuck Easttom



**Exhibit 2: CyberlinkASP Recorded Call Transcript**

United States Courts
Southern District of Texas
FILED
*August 28, 2026*
Nathan Ochsner, Clerk of Court

.

## Cyberlink ASP Support Call Recording Transcribed from December 9th, 2016

| | |
|---|---|
| 1:26 - Cyberlink ASP: | Thank you for calling CyberLink. This is Dillion (sp?) How can I help you? |
| 1:22 - Unknown Caller: | Hey Dillion this is Jeff Vitt and I was umm I got locked out and I need to reset my password please. |
| 1:13 - Cyberlink ASP: | Ok yes sir I will be glad to do that for you let me pull up your account in a second. And I will get you squared away. |
| 1:06 - Unknown Caller: | Ok thank you. |
| 1:05 - Cyberlink ASP: | Um huh. |

1:05 to :34 — Silence for 31 seconds

~ S I L E N C E

| | |
|---|---|
| :34 - Cyberlink ASP: | Ok I am unlocking your account and a what would you like me to reset your password to? |
| :28 - Unknown Caller: | Oh hell a, probably just, a how about December uh 2016 capital D. |
| :17 - Cyberlink ASP: | Ok. |
| :11 - Cyberlink ASP: | Perfect it looks like it took that. |
| :08 - Unknown Caller: | Alright um, I do appreciate it sir. |
| :06 - Cyberlink ASP: | Yes sir, my pleasure call anytime. |
| :04 - Unknown Caller: | Thank you, you have a good evening. |
| :01 - Cyberlink ASP: | You too goodbye. |

**An 86 Second Recorded Call.**

**An Unknown, Unidentified Male Caller To Cyberlink ASP Support.**

**The Caller Identified Himself As Jeff Vitt.**

**Caller ID Is Deborah Faye Vitt's Cell Phone Number.**

**Exhibit 3: MMA's Drafted TRO & Injunction Brief (June 21, 2018)**

United States Courts
Southern District of Texas
FILED
*August 28, 2026*
Nathan Ochsner, Clerk of Court

**IN THE DISTRICT COURT OF ROGERS COUNTY**
**STATE OF OKLAHOMA**

VITT HOLDINGS & DEVELOPMENT, LTD., )
a Texas Corporation, PATHCARE, INC., a Texas )
Corporation, FLUE SHOTS OF TEXAS, LLC, a )
Texas Limited Liability Company and JEFFREY )
VITT, an individual, )
)
Plaintiffs, )
)
vs. ) Case No.: CJ-2018- 205
)
CYBERLINK ASP TECHNOLOGY, INC., )
a Delaware corporation, CHRISTOPHER M. )
LANTRIP, an individual, and DEBORAH FAYE )
VITT, an individual. )
)
Defendants. )

**APPLICATION FOR TEMPORARY RESTRAINING ORDER AND FOR TEMPORARY INJUCTIONS WITH BRIEF IN SUPPORT**

COMES NOW, Plaintiffs, individually and collectively, and apply to the Court for a temporary restraining order and temporary injunction to restrain Defendant Deborah Faye Vitt from continuing to use and operate Plaintiffs' Property and from interfering with Plaintiffs reacquiring their Property, as defined *infra.* Further, Plaintiffs apply to the Court for both a prohibitory and mandatory temporary restraining order and temporary injunction to command Defendant to allow Plaintiffs reasonable access to Defendant's land, offices, storage facilities or other locations where any of Plaintiffs' Property may be held for, or, on behalf of the Defendant, in order for Plaintiffs to reacquire their Property and cooperate with Plaintiffs in locating such Property. In support of their application, Plaintiffs submit the following:

**BACKGROUND**

- Vitt Holdings is the owner of the company Flu Shots, which provided flu shots throughout the State of Texas. Defendant D.F. Vitt, Vitt's wife at the time, was actively involved with Flu Shots from 2013 until 2016.
- In the course of its business, Flu Shots of Texas necessarily gained access to the private and HIPPA protected medical information of its clients and retained the protected information of its clients as required by law.
- In approximately mid-2013, Vitt began negotiations with CyberLink to use its cloud-based storage platform for the files of Flu Shots of Texas and Path Care Inc., as well as his personal files. During those negotiations, CyberLink repeatedly assured Vitt that its Citrix platform was the safest and most secure cloud-based storage available. These representations by CyberLink mirrored its advertising campaign and assertions of security and compliance.
- Vitt ultimately entered into a contract with CyberLink in December 2013 and began using

the platform in January 2014. Vitt's account allowed for remote access and passwords for up to five users.

- Vitt created three logins under his account – one for himself, one for Defendant D.F. Vitt and one for his companies.
- Vitt and D.F. Vitt began divorce proceedings in February 2016. D.F. Vitt was removed from her position with Flu Shots of Texas and her CyberLink access was terminated in or around June 2016.
- On or about December 10, 2016, Vitt learned the data he stored at CyberLink had been breached. The breach occurred on or about December 9, 2016, well after D.F. Vitt was removed from the CyberLink account.
- Upon discovering the breach of his protected and vital data, Vitt confirmed the data breach with CyberLink the following day.
- Incredibly, CyberLink failed to implement the most rudimentary of security procedures to protect Plaintiffs' data, information and that of its clients. CyberLink granted access to an unauthorized user when it changed the password to Plaintiffs' account without Plaintiffs' approval.
- An unidentified male caller initiated a phone call to CyberLink wherein he held himself out to be Vitt and requested the passwords be changed to the accounts. CyberLink granted the telephonic request to the unidentified caller without requesting or requiring any identifying information whatsoever, not even a date of birth, current password or a single identifier. CyberLink changed the passwords of Plaintiff's accounts, as requested by the unknown caller.
- It has since been learned and can be proven, the unidentified male caller placed the phone call to change Vitt's passwords from Defendant D.F. Vitt's phone.
- After CyberLink granted the unknown caller access to Plaintiffs account, approximately 150 emails with hundreds of attached documents, including bank account information, confidential attorney communication as well as protected client information, were sent to from CyberLink's cloud-based storage to the cloud-based storage account of Defendant D.F. Vitt, via her iCloud email address. Upon inquiry by Vitt, CyberLink confirmed the unauthorized transfer of Plaintiffs' vital documents and data by D.F. Vitt.
- D.F. Vitt ultimately removed and appropriated approximately $600,000.00 out of bank accounts owned by Plaintiff and his trust.
- See attached Exhibit ?? for complete listing of all items fraudulently obtained by D.F. Vitt.
- Defendant D. F. Vitt has improperly maintained and exercised continual control, possession, benefit and enjoyment of Plaintiff's funds since the time of her fraud and subsequent conversion.
- Plaintiffs fear irreparable injury will result due to Defendant D.F. Vitt's nefarious prior acts, lifestyle, spending habits and contempt for Plaintiff if the requested relief is not granted.

## BRIEF IN SUPPORT
## PROPOSITION I
## STANDARD FOR TEMPORARY RESTRAINING ORDER AND TEMPORARY INJUNCTION

An injunction is defined in Okla. Stat. tit. 12 § 1381 as a command to refrain from a

particular act. This definition does not include a mandatory injunction, which is defined as an extraordinary remedial process commanding performance of some positive act. *Peck v. State ex rel. Dept. of Highways*, 350 P.2d 948, 950 (Okla. 1960). Nevertheless, a mandatory injunction is recognized as a proper exercise of equitable jurisdiction in Oklahoma, and it may be obtained upon a showing of a clear right, and a case of necessity or great hardship. *Thompson v, North,* 129 P.2d 1011, 1013, 191 Okla. 356 (1942). In fact, the granting of a mandatory injunction is governed by the same rules as the granting of prohibitory injunctions. *Id.*

An injunction may issue when it appears in the Petition that the claimant is entitled to relief and such relief, or part thereof, consists of restraining the commission or continuance of some act which would produce injury to the claimant, or when the opposing party is acting in violation of the claimant's rights concerning the subject of the action, tending to render a judgment by the court ineffectual. Okla. Stat. tit. 12 § 1382. A temporary restraining order may issue without notice where it clearly appears that immediate and irreparable injury, loss, or damage will result to the applicant before the adverse party may be heard in opposition. Okla. Stat. tit. 12 § 1384.1. Temporary injunctions, by contrast, may issue only upon notice to the opposing party. *Id.*

The power to grant a temporary injunction rests with the discretion of the trial court, and the decision will not be disturbed on review absent clear abuse of discretion. *Harrison v. Perry,* 456 P.2d 512 (Okla. 1969).

The elements a court traditionally considers when determining a request for temporary injunctive relief are: (1) the likelihood of movant's success on the merits of the underlying cause of action; (2) irreparable injury to the movant if relief is denied; (3) relative injury to the opposing parties if relief is granted; and (4) the public interest. *Smith v. Soil Conservation Service*, 563 F.Supp. 843 (W.D. Okla. 1982); *Roye Realty & Developing, Inc. v. Watson*, 791 P2d 821 (Okla. Ct. App. 1990). The requirements for temporary restraining orders are substantially the same. *See, e.g.*, 43 C.J.S. *Injunctions* § 17. The burden is upon the movant to establish facts by clear and convincing evidence sufficient to support the granting of relief. *Peck v. State ex rel. Dept. of Highways*, 350 P.2d 948 (Okla. 1960); *Roye Realty & Developing, Inc. v. Southern Seismic*, 711 P.2d 946 (Okla. Ct. App. 1985). When the movant establishes that the balance of hardships tips decidedly in its favor, the requirement to show a likelihood of success on the merits is relaxed, and it is sufficient if the movant "raises questions going to the merits so serious, substantial, difficult, and doubtful as to make them a fair ground for litigation and thus for more deliberate inquiry." *The Citizen Bank Potawatomi Indian Tribe of Oklahoma v. Enterprise Management Consultants, Inc.,* 833 F.2d886 (10th Cir. 1989) (quoting *Continental Oil Co. v. Frontier Refining Co.,* 338 F.2d 780, 781-82 (10th Cir. 1967).

Applying the standard to this matter, Plaintiffs are entitled to a temporary restraining order and temporary injunction.

**PROPOSITION II**
**PLAINTIFFS ARE ENTITLED TO A TEMPORARY RESTRAINING ORDER AND TEMPORARY INJUNCTION**

- **Likelihood of Movants' Success on the Merits**

Plaintiffs are likely to succeed on the merits because they can prove they own and are entitled to the Property, while Defendant cannot. Also, without its Property, Plaintiffs' operation is effectively out of business. Plaintiffs Flu Shots of Texas and Pathcare are idle without funds to

operate, make payroll or pay for daily operations. The business records obtained contain protected, vital and personal information critical to Plaintiffs' operations and protections of its customers. Plaintiffs are easily able to prove that all of the Property is theirs and that they are entitled to reclaim their business Property and funds in order to conduct their operations. In contrast, Defendant has no means of proving ownership of the Property or right of possession of the funds stolen from Plaintiffs accounts, except for her current unlawful possession.

Once Plaintiffs are given the chance to demonstrate to the Court they can readily produce documentation that they are the owners of the Property, and without the Property their business is inoperable, there can be no doubt that Plaintiffs will have demonstrated a likelihood of success on the merits. While Plaintiffs are highly likely to success on the merits in this case, the balance of relative harm tips decidedly in favor of Plaintiffs, as shown *infra*. Therefore, temporary injunctive relief is warranted on that basis alone, with this requirement being relaxed, as discussed above.

- **Plaintiffs Will Suffer Irreparable Harm if Temporary Injunctive Relief is Denied, Whereas Defendant Will Suffer No Harm Upon the Issuance of Temporary Injunctive Relief**

The balance of relative *irreparable* harm as between the parties weighs heavily in favor of Plaintiffs. The risk of irreparable harm to Plaintiffs in the absence of injunctive relief is great and ongoing. Plaintiffs continue to be unable to operate its business because it has no access to its business Property and funds. Without access to the funds and Property, Plaintiffs cannot feasibly operate their business. In addition, Defendant continues to use and diminish Plaintiffs' Property for her own benefit while damaging Plaintiffs value, goodwill, reputation and business. On the other hand, Defendant has no risk of injury if the Court grants temporary injunctive relief. There can be no harm to Defendant if the Court grants injunctive relief because her unlawful possession of the Property. Consequently, the balance of relative irreparable harm tips decidedly in favor of Plaintiffs.

- **Issuance of Injunctive Relief is in the Public Interest**

It is clearly in the public interest for issuance of the requested injunctive relief by the Court. Courts retain the inherent equitable power and authority to grant such equitable relief as is necessary to protect the integrity of their judgments and proceedings. *See, e.g., Winkler v. Eli Lilly & Co.,* 101 F3d 1196 (7th Cir. 1996). The failure to restrain and command Defendant would, in effect, sanction Defendant's acts of commandeering Plaintiffs' Property and thereby their business. That would further encourage other nefarious characters to do the same without fear of repercussions. It is in the public interest for commerce and business to run smoothly. If situations like the present one are allowed to go on unabated, then commerce and business is stifled. This goes against the capitalistic foundations the economy of our great country is built upon and therefore must not be allowed.

## CONCLUSION

WHEREFORE, Plaintiffs, respectfully request that the Court issue a temporary restraining order and after hearing, issue a temporary injunction thus restraining and enjoining Defendant from interfering with Plaintiffs reacquiring their Property, continuing to use and operate Plaintiffs' Property, commanding Defendant to deposit with the Court Clerk of Rogers County, Oklahoma the sum of $?????? Which should then be allocated, at least in part, to allow Plaintiffs to resume operations of his business and stream of commerce. All computer records

downloaded from Plaintiff's Cyberlink account should be ordered turned over immediately to Plaintiff Vitt and cooperate with Plaintiffs in locating their Property.

**Exhibit 4: MMA's May 31, 2019, Cease & Desist (The Contradiction)**

United States Courts
Southern District of Texas
FILED
*August 28, 2026*
Nathan Ochsner, Clerk of Court

**From:** James McClenny james@mma-pllc.com
**Subject:** Re: Affidavits Request:
**Date:** March 26, 2019 at 5:47 PM
**To:** Jeff Vitt Access access41pi3@icloud.com
**Cc:** Ben Baker bendbaker@gmail.com

***Jeff,***

***I can go through and email you back the information you have sent me in the past. As far as an affidavit, I am unsure as to how this would work. Please advise and I can go through and send the emails you have sent me previously.***

***On Thu, Mar 21, 2019 at 6:36 PM Jeff Vitt Access <access41pi3@icloud.com> wrote:***

> ***Please Provide Affidavits referencing details of the emails and a few other related to data breach crimes, privacy violations, impersonation, identity theft and interference***
> ***the # of emails***
> ***references to the type of emails subject and content***
> ***i.e. Attorney Client Privilege***
> ***Intellectual Property***
> ***Proprietary Information***
> ***My Personal, Confidential and/or Individual Privacy***
> ***emails I Sent to My Self***
> ***Name the people, topics, subjects included or referenced in thread exchanges, etc.***
>
> ***Important details but not so much it further violates, damages and causes harm to my privacy, character and interests........***
>
> ***I'd like to this as soon as possible (email a copy) but not later than next (mail the originals) Wednesday - March 27th, 2019***
>
> ***Thank You Both.***
>
> ***Respectfully,***
>
> ***Jeffrey A. Vitt***
> ***469-662-8488***
> ***412 South Tamarack Ave***
> ***Broken Arrow, OK 74012***

--
**James M. McClenny** - Founding Partner
Attorney and Counselor at Law
james@mma-pllc.com
(713) 322-5986 Direct

**McClenny Moseley & Associates, PLLC**
411 N. Sam Houston Pkwy E. Suite 200
Houston, Tx. 77060
(713) 334-6121 Office
(713) 322-5986 Fax
(844) 662-7552 Toll Free
www.mma-pllc.com

This email is intended as a private communication with the individual or entity to which it is addressed. This communication may contain information that is proprietary, privileged or confidential or otherwise legally exempt from disclosure. If you are not the named addressee, you are not authorized to read, print, retain copy or disseminate this message or any part of it. If you have received this message in error, please notify the sender immediately by e-mail and delete all copies of the message.

**From:** James McClenny james@mma-pllc.com
**Subject:** Attorney Response to Request for Information
**Date:** May 24, 2019 at 12:37 PM
**To:** Jeff Vitt access41pi3@icloud.com, Zach Moseley zach@mma-pllc.com, Sean Patterson sean@mma-pllc.com, Ben Baker bbaker@thebakerlawfirm.com

***Jeff,***

***Regarding calls, you continue to call from a restricted number of which I will not answer. If you would like to have a phone call, please coordinate with me via email or text on an agreeable time. Please also refrain from texting and calling if needed before 8am and after 5pm. I received 2 phone calls this morning around 6:30 am from a restricted number and then after not answering those calls, I received a text message from you stating that "you don't practice las other than for the rewards of $$$$$$$."***

***I would like to remind you that as a favor I showed up and discussed your bail and release with Judge McFarland. This was not billed to you, nor did I ask for any money. However, I did outline that my appearance was for the sole purpose of requesting bail and facilitating your request to have an attorney present. I am not your family law attorney.***

***As an update on Libby Lane v. Power Jack, the case was dismissed and we notified you. This was due to non-responsiveness and the inability for you to respond to our continued request for information in discovery. Please remember that we could not get in touch with you for over six months. Further, you informed us once we did get in touch with you that you would be getting us certain information, of which we did not receive. We asked for two extensions and inquired numerous times as to when you were going to respond and you did not. The case was dismissed without prejudice.***

***Automotive, I am in the process of contacting a factoring company regarding your automotive accident. However and for clarification, when we discussed previously, my question was whether or not you would attend doctors appointments in the event we were able to conduct an evaluation. You advised me you did not have a car or transportation and likely would be unable. I tok from this that we were not moving forward and that you were not pursuing medical attention, nor did you need it. Regardless, I will reach out to my network and see if there are services available. Did you attend your chiropractic appointments as discussed?***

***As for the re-issued check from Farmers on 121, we have inquired as to its processing and re-issuance. Opposing Counsel has stated it was requested but as to whether or not it has been cut and is in the mail, I am unable to confirm. We are reaching out again this morning to OC and will update accordingly.***

***Regarding Cyberlink. After discussions with Ben and Zach, we are unwilling to move forward with any further assistance or help. The pattern and continued disregard for our willingness to help has only further showed us that we are unwilling to participate in the proposed litigation. You and I have discussed this at length, including the fact that we were not made aware of your discussions with the FBI as well as the hand written filing in federal court with over 100 defendants. This is a pattern and I cannot continue to entertain it or waste time on it. Jeff, please know that I truly hope everything works out in your favor and that you get what you are looking for. However, it will not be something we are involved in.***

***In summary and in being frank, we have gone to bat for you on numerous occasions and you have shown a pattern of disregard and lack of respect for our services. When I disagree with your intentions or proposed paths, you get angry. When I don't answer my phone because I am busy or have clients, you accuse me of being non-responsive. When you tell me you are going to get your business in good standing for over a year and it never happens, you accuse of of not trying hard enough, although we have discussed the businesses at length and the need for you to get them in good standing. This took place earlier this week and last week as well. Simply a continued pattern. My comment to you last week was I cannot help you if you are not willing to help yourself.***

***I will follow up on the check once Opposing Counsel responds and get the information for the medical evaluation. Thank you.***

--
**James M. McClenny** - Founding Partner
Attorney and Counselor at Law
james@mma-pllc.com
(713) 322-5986 Direct

**McClenny Moseley & Associates, PLLC**
516 Heights Boulevard
Houston, Tx. 77007
(713) 334-6121 Office
(713) 322-5986 Fax

(844) 662-7552 Toll Free
www.mma-pllc.com

This email is intended as a private communication with the individual or entity to which it is addressed. This communication may contain information that is proprietary, privileged or confidential or otherwise legally exempt from disclosure. If you are not the named addressee, you are not authorized to read, print, retain copy or disseminate this message or any part of it. If you have received this message in error, please notify the sender immediately by e-mail and delete all copies of the message.

**MCCLENNY MOSELEY & ASSOCIATES**
**a Professional Limited Liability Company**

411 N. Sam Houston Parkway E.
Suite 200, Houston, Texas 77060
Principal Office: 713.334.6121 / Toll Free: 844.662.7552
Dallas Office: 817.231.0034 / Fax: 713.322.5953
www.mma-pllc.com / messages@mma-pllc.com

**May 31, 2019**

***Via Email and First Class Mail***

**Email:** access41pi3@icloud.com

**412 South Tamarack Ave**
**Broken Arrow, OK 74012**

***Re: All Causes of Action and Cease & Desist***

Jeff,

Please allow this correspondence to address your voicemail's left over the Memorial Day weekend, as well as, the text message received today at 12:10 p.m., Wednesday May 29, 2019 and the email you sent at 1:21 a.m. on Thursday May 30, 2019 in addition to the additional voicemails and calls at 3:11 a.m. and 3:19 a.m. Thursday May 30, 2019. This will also stand, as yet another official notice to you that all legal services, past and present, are hereby terminated. You have not only threatened me personally, but you have made statements regarding your intentions that will and have been construed to have threatened physical harm to my person, other members of my law firm, as well as, Ben Baker.

As stated above, you have previously been given verbal notice that all legal representation of you, your interest or any of your companies is completed or severed. This leaves you absolutely no reason to contact me. I will forward to you or your designated representative, by U.S. postal, any documents, correspondence or the like that may come to my office. I do not anticipate this will happen but be assured anything of that nature will not be held. With the foregoing in mind, I am hereby giving you notice that all electronic and verbal communications with me, my office, Ben Baker or his office are to cease and desist. You have no reason to contact either of us regarding any legal claims you are now pursuing or any claims you wish to pursue in the future. All original documents have been returned to your person. We will not consult with you, give you legal guidance, counsel or recommendations. The single reason you would have to contact me would be in regard to closing out the Vitt 121 reissuance of drafts from the insurance company and those matters are therefore closed. In short, this letter will summarily disengage any conversations or requirements that may have previously existed, if any. Further, your voicemails are threatening in nature, both physically and by use of the legal system. Your onslaught of attacks, harassment and

threats of violence are being documented should the need arise for either me or Mr. Baker to protect ourselves against your outrageous behavior.

Please see below for my formal response and outline of prior services, discontinued services, as well as request made for disclosure and documents.

**VOICEMAILS:**

As previously noted, your voicemails have been archived and saved to reflect your instability and inability to have rational conversations. This is not limited to voicemails, but also goes to the heart of your continued narrative that there is a concerted effort by all persons in your life, the Federal Government, as well as the State of Oklahoma, Texas, Arizona and all attorneys, both Plaintiff and Defense, to plot against you. You have now threatened me personally and within this group of individuals plotting against you and I will not tolerate such threats or continued narratives. Your text message from today reads the following;

> "Did you find out the status of the Farmers Check to Rob Farrell and Me? I need all my files back with a mutually agreed method of the format and contents listing with strong focus on the originals for PTS Diagnostics. And FYI - I just got off the phone with the FBI Agent in Dallas I spoke to. He wants me to visit FBI Again. Suing the US Gov't, States such as Tx, Ok, Az, and cities, towns, counties is not my top 10 choices. But this is intentionally doing or NOT doing things violating my rights or protecting my life, victim and property. To be clear I don't trust you and I'm STRONGLY CONSIDERING LEGAL ACTIONS CRIMINAL AND CIVIL AGAINST YOU. The Federal Court Classified the ***1st Case as Civil Liberties & Rights: 42:1983 & ****2nd Case Contract: 28:1331 WHICH SHOULD HAVE BEEN INJUCTIONS ON ALL CAUSES ++ Link Resources, PDF's ETC ~ deprived a person of rights created by the US. Constitution or Federal Statutes. The Civil Rights Act of 1871 is a Federal Statute, numbered 42 U.S.C. Section 1983, that allows people to sue the government for civil rights violations. It applies when someone acting "under color of" State-Level or local law has deprived a person of rights created by the U.S. Constitution or Federal Statutes. ** Defining Civil Liberties and Civil Rights ->evidence of physical pain or emotional distress."

My response to your recitation of incoherent blathering is found precedent. Cease and desist, do not contact me again in this regard, and stop threatening me with criminal and civil actions. This means calls, text, emails or any method by which communication can be held.

We have represented or advised you on the following causes of action or alleged claims:

1. Shadowood Court
2. 121
3. Libby Lane
4. Personal Injury Case against commercial truck
5. PTS Diagnostics
6. Cyberlink

**SHADOWOOD COURT:**

We handled a property insurance dispute arising from wind and hail on your behalf, for the property jointly owned by you and Debbie Vitt against Farmers Insurance Company. The case settled at mediation of which you advised was agreeable and you signed our internal settlement breakdown outlining your return, attorney's fees and expenses. As your divorce was ongoing, Debbie Vitt was made a payee on the draft and therefore the funds were distributed to the receiver, Scott Hickey, at Kelsey Kelsey and Hickey Law Firm. You were made aware of this distribution on several occasions and so was Debbie as we were made to obtain her authorization for the settlement. Both you and Debbie signed the Release and Indemnity Agreement settling the matter with Farmers and no additional activity has taken place since the payment was remitted to the receiver.

**121:**

We also handled an additional property insurance dispute on your behalf regarding the Vitt 121 Building. This case was against Farmers as well and settled at mediation. You advised that the amounts were agreeable and signed our internal settlement breakdown outlining your return, attorney's fees and expenses. We held a payment in the amount of $10,651.17 in trust, until you advised that you wanted us to distribute. The additional check in the amount of $14,400.00 was issued from the Insurance Company to you and Robert F. Farrell. Upon this check going stale, we have made numerous requests that it be re-issued from Farmers, but still have no tentative date for receipt. In addition, you have been advised of the process throughout, including the lengthy process that can take place with having funds re-issued from an Insurance Company. As outlined above, this is the only remaining legal obligation we are under or have with you or your entities and upon receipt of the draft will forward to your attention at the last known address listed above.

**LIBBY LANE:**

Regarding Libby Lane and the claimed cause of action you had against Power Jack. Let me start with the simple fact that the dismissal without prejudice was brought about because of your refusal to communicate with my office and your refusal to participate in discovery. You were made aware of the dismissal, which was without prejudice (thus allowing you up to one year to refile), upon our face to face meeting at my office. The fault lies 100% with you in this regard. My office tried extensively to contact you and you refused to respond in anyway. In fact, for the better part of six months we conducted discovery and were unable to find you in order to enlist your aid, provide the necessary and pertinent documentation, provide answers or sign a verification. After two extensions and the Defense counsel threatening sanctions, of which we still could not find you to discuss, we were forced to dismiss. We advised you that it was dismissed without prejudice and that you could refile if you felt it prudent, however we would not be involved. You apologized in my conference room, with both myself and Sean Patterson being present, and stated that life was hard, you were pushing forward, and would try harder to maintain connectivity.

**PERSONAL INJURY CASE AGAINST COMMERCIAL TRUCK:**

Regarding your personal injury cause of action. You claimed you were seeing a chiropractor for your injuries. However, upon reaching out to the chiropractor, they did not have you on a continuing care plan. I then discussed with you the option of using a Medical Factoring company to quantify your injuries and asked if you would attend the appointments. You stated that you had no transportation and would not be able to regularly attend the required services. Your inability or refusal to attend treatment for your alleged injuries devalued the case. You advised that you were doing okay and that treatments were not necessary. In addition, and upon your follow up, I was in the process of discussing with you HMR Services, but you had instructed us to discontinue representation before these services could be arranged. We will be issuing a rejection letter to your last known address in addition to the prior verbal notice and this written notice. This is the letter.

**CYBERLINK:**

Ben and I spent numerous hours, time, effort and money in getting your lawsuit on file. You pressed us to seek injunctions, restraining orders and protective orders. We told you that we were unwilling to do so without documentation and evidence to support said request. You stated you had emails outlining the need for such protective measures, but upon receipt of the supposed documents, both Ben and I came to the conclusion that there was no evidence supporting such a request. We had already filed suit and were holding off on service during this time-frame. We then served the lawsuit to only find out that none of your business entities were in good standing and in fact the receiver from your divorce had given you strict instructions that you could not proceed with legal action by any method regarding property or items within the trust, which included the entities made a party to the lawsuit. We advised you of the issue, and upon agreement with you, dismissed without prejudice and let you know that you could refile in the event you brought the entities into good standing and completed the actions required by the receiver. We also memorialized this in writing and addressed it to you via email. To date, and as early as last week, you advised me the entities were still not in good standing and you haven't paid taxes in over three (3) years on the majority of those companies, as well as yourself. Additionally, Ben Baker was able to negotiate with the opposing counsel, and they agreed not to pursue attorney fees against you for the filing of these actions, which we had filed based on your guarantees and assertions. In addition, Ben and myself have invested over $1,000.00 in cost into this case.

**PTS DIAGNOSTICS:**

Regarding the PTS documents and originals. You need to reflect and remember your interaction and time spent at our previous office located at 411 N. Sam Houston Pkwy E. Suite 200, Houston Texas 77060. You asked for an in-person meeting and drove to our offices regarding what you coined as "additional causes of action." We agreed to only handle the automotive accident (description and dismissal explained above). Further, and upon your departure, you took the original PTS Diagnostics files with you. Ben also mailed the original documents that you delivered to him in order for us to discern the additional PTS facts, back to your last known address. You have informed me via text message that you received these documents. It is also important and necessary for you to remember that Zach and I spoke with the opposing counsel hired on behalf of the defendants in this matter. That conversation allowed us to discover that the

claimed "novel" work product you had presented as being stolen, was in fact not. Upon discussions and further investigation, we also made you aware that more than likely this cause of action would be brought in Indiana, as the majority of your negotiations with the Defendant took place there or over the phone. Further, Ben and I were made aware of your hand-written filing in the Eastern District of Oklahoma, only after the Defense counsel in the Cyberlink matter brought it to our attention. We expressed concerns regarding the stated causes of action and were not willing to enter into a representation agreement regarding your hand-written filing. Further and most importantly, this filing included over 180 named Defendants, of which the PTS Diagnostics Defendants were also included, according to our research. Again, we were unwilling to represent you on this matter due to the lack of prior communication and inconsistent statements made by you within this filing.

**ADDITIONAL WORK:**

I have also made a special appearance upon your request in order to facilitate a bail release in front of Judge McFarland in Denton County. This was for the limited purposes of your bail and such stipulations were made on the record. You made a request for said services due to your *pro se* representation, stemming from your non-appearances for hearings and scheduling conferences that the judge scheduled during your divorce from Debbie Vitt. Remember, and as a kind gesture, I also credited $50 to your jail phone services for you to facilitate bail money with your family as well as speak with your daughter prior to her graduation.

Further, I connected you with three divorce attorneys to aid in your ongoing family legal battles, as well as your original divorce and Suit Affecting the Parent Child Relationship. You retained none of these attorneys and continued *pro se*. The outcome of the divorce and the stemming receivership have nothing to do with my firm or me and in fact, I believe an attorney by the name of Ian was handling your receivership. Upon your refusal to retain any of these attorneys, Ben made arrangements for you to meet with a top-tier family law firm in Oklahoma City, and even attended this two-hour meeting to help explain and facilitate your position. You also did not retain this firm.

Lastly, myself and Ben facilitated your introduction with the criminal attorney to represent you regarding your Driving Under the Influence, Sam Talley. From my conversation with you, his services were rendered, and your DUI was handled. Again, we assisted in making a connection for you, and provided a helping hand to aid you in your ongoing legal and life problems.

Jeff, the calls at 3:00 a.m., 6:00 a.m., the repeated calls back to back, the threats and continued harassment must come to a stop. I came to learn during the time I represented you that you have struggled with mental illness, which caused the court in Murray County, Oklahoma to conduct a psychological evaluation to determine if you were competent to stand trial. You have shared that you tend toward bouts of depression, which cause you to withdraw from people. Based on your current behavior I would recommend that you seek a current evaluation and/or treatment from your treating physician.

In summary, all representation by MMA Law and Ben Baker Law is terminated. You are positioned to refile any case that we dismissed without penalty if you feel your claims are worth

pursuing. Do not communicate with either law office except in written form delivered by the U.S. mail or courier, this includes text, phone calls, email or any social media app. Best of luck to you in your endeavors.

Respectfully,

James McClenny 5-31-2019
McClenny Moseley & Associates, PLLC

Ben Baker
The Ben Baker Law Firm

Sean Patterson 5-31-2019
McClenny Moseley & Associates, PLLC