**Exhibit 14: Master Omnibus Addendum to Official Form 410 (Amended Claim No. 73)**

United States Courts
Southern District of Texas
FILED
*August 29, 2026*
Nathan Ochsner, Clerk of Court

**Fill in this information to identify the case:**

Debtor 1 ______

Debtor 2 ______
(Spouse, if filing)

United States Bankruptcy Court for the: ______ District of ______

Case number ______

Official Form 410

# Proof of Claim

04/25

**Read the instructions before filling out this form. This form is for making a claim for payment in a bankruptcy case. Do not use this form to make a request for payment of an administrative expense. Make such a request according to 11 U.S.C. § 503.**

**Filers must leave out or redact** information that is entitled to privacy on this form or on any attached documents. Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. **Do not send original documents;** they may be destroyed after scanning. If the documents are not available, explain in an attachment.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

**Fill in all the information about the claim as of the date the case was filed. That date is on the notice of bankruptcy** (Form 309) **that you received.**

## Part 1: Identify the Claim

1. **Who is the current creditor?**

Jeffrey Alan Vitt, Individually
Name of the current creditor (the person or entity to be paid for this claim)

Other names the creditor used with the debtor ______

2. **Has this claim been acquired from someone else?**

☑ No
☐ Yes. From whom? ______

3. **Where should notices and payments to the creditor be sent?**

Federal Rule of Bankruptcy Procedure (FRBP) 2002(g)

| **Where should notices to the creditor be sent?** | **Where should payments to the creditor be sent?** (if different) |
|---|---|
| Name: Jeffrey Alan Vitt | Name: |
| Number Street: 12791 South 4230 Road | Number Street: |
| City: Chelsea State: OK ZIP Code: 74016 | City State ZIP Code |
| Contact phone: 539-292-9358 | Contact phone ______ |
| Contact email: javit2004rule@gmail.com | Contact email ______ |

Uniform claim identifier (if you use one):

__ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __

4. **Does this claim amend one already filed?**

☐ No
☑ Yes. Claim number on court claims registry (if known) 73

Filed on 07/23/2026
MM / DD / YYYY

5. **Do you know if anyone else has filed a proof of claim for this claim?**

☑ No
☐ Yes. Who made the earlier filing? ______

**Part 2: Give Information About the Claim as of the Date the Case Was Filed**

**6. Do you have any number you use to identify the debtor?**

☑ No
☐ Yes. Last 4 digits of the debtor's account or any number you use to identify the debtor: ____ ____ ____ ____

**7. How much is the claim?**

$ 350,646,305.06. **Does this amount include interest or other charges?**

☑ No
☐ Yes. Attach statement itemizing interest, fees, expenses, or other charges required by Bankruptcy Rule 3001(c)(2)(A).

**8. What is the basis of the claim?**

Examples: Goods sold, money loaned, lease, services performed, personal injury or wrongful death, or credit card.

Attach redacted copies of any documents supporting the claim required by Bankruptcy Rule 3001(c).

Limit disclosing information that is entitled to privacy, such as health care information.

See Attached Master Omnibus Addendum

**9. Is all or part of the claim secured?**

☑ No
☐ Yes. The claim is secured by a lien on property.

**Nature of property:**

☐ Real estate. If the claim is secured by the debtor's principal residence, file a *Mortgage Proof of Claim Attachment* (Official Form 410-A) with this *Proof of Claim.*
☐ Motor vehicle
☐ Other. Describe: ____________________

**Basis for perfection:** ____________________

Attach redacted copies of documents, if any, that show evidence of perfection of a security interest (for example, a mortgage, lien, certificate of title, financing statement, or other document that shows the lien has been filed or recorded.)

**Value of property**: $__________

**Amount of the claim that is secured:** $__________

**Amount of the claim that is unsecured:** $__________(The sum of the secured and unsecured amounts should match the amount in line 7.)

**Amount necessary to cure any default as of the date of the petition:** $__________

**Annual Interest Rate** (when case was filed)_______%

☐ Fixed
☐ Variable

**10. Is this claim based on a lease?**

☑ No
☐ Yes. **Amount necessary to cure any default as of the date of the petition.** $__________

**11. Is this claim subject to a right of setoff?**

☑ No
☐ Yes. Identify the property: ____________________

12. **Is all or part of the claim entitled to priority under 11 U.S.C. § 507(a)?**

A claim may be partly priority and partly nonpriority. For example, in some categories, the law limits the amount entitled to priority.

☑ No

☐ Yes. *Check one:*

| | **Amount entitled to priority** |
|---|---|
| ☐ Domestic support obligations (including alimony and child support) under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B). | $____________ |
| ☐ Up to $3,800* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use. 11 U.S.C. § 507(a)(7). | $____________ |
| ☐ Wages, salaries, or commissions (up to $17,150*) earned within 180 days before the bankruptcy petition is filed or the debtor's business ends, whichever is earlier. 11 U.S.C. § 507(a)(4). | $____________ |
| ☐ Taxes or penalties owed to governmental units. 11 U.S.C. § 507(a)(8). | $____________ |
| ☐ Contributions to an employee benefit plan. 11 U.S.C. § 507(a)(5). | $____________ |
| ☐ Other. Specify subsection of 11 U.S.C. § 507(a)(__) that applies. | $____________ |

* Amounts are subject to adjustment on 4/01/28 and every 3 years after that for cases begun on or after the date of adjustment.

## Part 3: Sign Below

**The person completing this proof of claim must sign and date it. FRBP 9011(b).**

If you file this claim electronically, FRBP 5005(a)(3) authorizes courts to establish local rules specifying what a signature is.

**A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.**

*Check the appropriate box:*

☑ I am the creditor.

☐ I am the creditor's attorney or authorized agent.

☐ I am the trustee, or the debtor, or their authorized agent. Bankruptcy Rule 3004.

☐ I am a guarantor, surety, endorser, or other codebtor. Bankruptcy Rule 3005.

I understand that an authorized signature on this *Proof of Claim* serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

I have examined the information in this *Proof of Claim* and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on date 08/28/2026
MM / DD / YYYY

[signature]
Signature

**Print the name of the person who is completing and signing this claim:**

Name: Jeffrey (First name) Alan (Middle name) Vitt (Last name)

Title: ____________

Company: ____________
Identify the corporate servicer as the company if the authorized agent is a servicer.

Address: 12791 South 4230 Road (Number Street)
Chelsea (City) OK (State) 74016 (ZIP Code)

Contact phone: 539-292-9358 Email: javit2004rule@gmail.com

**IN THE UNITED STATES BANKRUPTCY COURT**

**FOR THE SOUTHERN DISTRICT OF TEXAS**

**HOUSTON DIVISION**

| | | |
|---|---|---|
| IN RE: MMA LAW FIRM, PLLC. | § | |
| | § | CASE NO.: 24-31596 |
| Debtor. | § | |
| | § | Chapter 11 |

**CHIEF JUDGE EDUARDO V. RODRIGUEZ**

**MASTER OMNIBUS ADDENDUM TO OFFICIAL FORM 410**
Consolidated / Amended Proof of Claim NO. 73

**PLAINTIFF / CLAIMANT:**
Jeffrey Alan Vitt, Individually; John/Jane Does, XYZ Corporations, and ABC LLCs

**DEFENDANTS / TARGET ENTERPRISE:**
MMA Law Firm, PLLC; James M. McClenny; John Zachary Moseley; John/Jane Does, XYZ Corporations, and ABC LLCs

**CLAIMANT:**
Jeffrey Alan Vitt, Individually

**TARGET DEBTOR:**
MMA Law Firm, PLLC

**TOTAL CONSOLIDATED CLAIM AMOUNT:**
$350,646,305.06+ (Liquidated & Unliquidated)

**ASSERTION OF JOINT AND SEVERAL LIABILITY** ACROSS ALL DEBTOR PRINCIPALS, CO-CONSPIRATORS, LITIGATION FUNDERS, STATE ACTORS, COURT-APPOINTED RECEIVERS, AND ALL JOHN/JANE DOES, XYZ CORPORATIONS, ABC ENTITIES

## SECTION I: INTRODUCTORY & PROCEDURAL FOUNDATION

**1. Unified Consolidated Claim Framework:** To streamline the court docket, preserve strict legal firewalls, and prevent the Debtor from attempting to sever, divide, or strike interrelated damages on procedural technicalities, Claimant Jeffrey Alan Vitt, Individually ("Claimant"), hereby combines and consolidates all causes of action, property losses, and enterprise damages previously asserted (including those formerly designated on cover sheets as Claims 74 and 75) into this single, unified Official Form 410 (Amended Claim No. 73).

**2. Relation-Back Shield Under Rule 7015 / FRCP 15(c):**
Pursuant to Federal Rule of Bankruptcy Procedure 7015 (incorporating Fed. R. Civ. P. 15(c)), all claims, causes of action, updated damage matrices, and factual allegations set forth in this Master Omnibus Addendum arise directly out of the identical conduct, transactions, and occurrences set forth in original Claim No. 73 filed on July 23, 2026. All allegations and consolidated damage figures legally relate back to the original July 23, 2026 filing date as a matter of law, rendering any post-bar-date or timeliness objections inapplicable.

**3. Pleading Under Severe Procedural Duress & Evidence Suppression:**
This Master Omnibus Addendum amendment is filed in good faith as an expansive, uncompromised master framework under severe procedural duress. The Debtor (MMA Law Firm, PLLC), its managing principals (James M. McClenny, John Zachary Moseley), affiliated co-counsel, and co-conspirators engaged in a systemic breach of the fiduciary duty of zealous advocacy, operating instead as a conflicted enterprise that actively withheld client case files, IOLTA accounting ledgers, and digital forensic telemetry. Claimant maintains an **ABSOLUTE, UNQUALIFIED RESERVATION OF RIGHTS TO AMEND, SUPPLEMENT, CORRECT, OR RE-QUANTIFY** under Fed. R. Bankr. P. 3001, 7015, and 9014 upon the compelled production of documents under Rule 2004 examinations or adversary discovery.

**4. The Global-Local Nexus & Macro-Level Corporate Espionage Parallels:**

- ***The Global Scale of the Asset Base:*** My proprietary medical integration vision, trade secrets, and software assets—anchored by the PTS Diagnostics portfolio—operated and expanded across 135+ countries globally, creating multi-billion-dollar market valuations and drawing the direct strategic focus of massive international entities, including Sinocare and global tech supply chains linked to Changsha, China (Postal Code 410205).

- ***The Federal Prosecution Parallel (Huawei Precedent):*** Just as federal prosecutors in the Eastern District of Texas and nationwide established through multi-year investigations (dating back to 2011–2020 indictments) that international syndicates utilized shell companies, wire fraud, trade-secret theft, and systematic obstruction of justice to dominate markets, my personal and business interests were targeted by an identical, localized racketeering apparatus designed to strip, suppress, and absorb my intellectual property.

- ***The Localized "Home Cooking" Syndicate:*** Rather than remaining isolated to Denton or Dallas County, this corrupt network stretched across Texas, Oklahoma, Indiana, New York, Florida, California, Minnesota, Arizona, and Illinois. The local legal syndicate—utilizing willful blindness, staged receiverships, and refusal of counsel—acted as the domestic enforcement arm of a broader conspiracy to crush my whistleblower status and paralyze my legal standing.

## SECTION II: UNIVERSAL INDIVIDUAL STANDING & FILER CAPACITIES

Claimant appears strictly in his Individual capacity to assert direct personal property rights, direct contractual privity, and personal ownership of abandoned assets. Claimant is not appearing pro se as an attorney or representative for any corporate entity or trust. Individual Standing is not only court-ordered by the Denton County Probate Court, but is legally necessitated by the enterprise's unlawful acts. Because the enterprise deliberately blurred the

legal and financial boundaries between personal, trust, and corporate assets to execute an asset-stripping scheme, Claimant asserts Universal Individual Standing across all claims presented herein, anchored by the following:

1. **Comprehensive Schedule of Filer Capacities & Operating Entities:**
Claimant appears in the following exhaustive list of legal capacities and corporate structures to maintain necessary firewalls while anchoring individual rights. The irreparable harm inflicted by the enterprise cannot be measured by isolated metrics; it must be calculated as the sum of all destroyed parts multiplied by the exponential opportunity costs. The enterprise executed a systemic annihilation of a multi-tiered corporate architecture. Likened internally by the Debtor's own principals to the **"Winklevoss vs. Facebook"** settlement, the suppression and conversion of these specific healthcare integration technologies and trade secrets represent an aggregate valuation that transitions into the billions in today's market.

2. **Claimant represents the following victimized interests:**

    - **Individually & Crime Victim:**
      Protecting direct personal economic harm, uncompensated property losses, constitutional civil rights deprivations under color of law, and personal torts.

    - **Voting Trustee & Beneficiary:**
      For the Jeffrey Alan Vitt Irrevocable Trusts and Pi.314 Irrevocable Trusts, possessing absolute, exclusive authority over the trust corpus and its claims.

    - **Founder, President, CEO & Authorized Agent:**
      On behalf of the complete operating corporate enterprise and subsidiaries, explicitly Including:

        - Flu Shots of Texas, LTD.
        - MediAccess Integration Technologies, LTD.
        - PATHCare Medical, LTD.
        - Personalized H20, LTD.
        - Pi.314 Irrevocable Trusts
        - SMG Star Medical Group 2, LLC.
        - Texas Family & Occupational Health Services, LTD.
        - Texas Family & Occupational Health Services I, INC.
        - Vitt 121, LTD.
        - Vitt Health, LLC.
        - Vitt Holdings & Development, LLC.
        - Vitt, INC. (d/b/a Recovery Services of America) Vitt IP Holdings, LLC.
        - Vitt OKTX, LLC.
        - Vitt OK, LP.
        - Vitt TX, LTD.

3. **Direct Individual Standing (Intellectual Property & Contract Privity):**
   Claimant asserts direct, individual claims arising out of duties owed personally to Claimant under Texas and Federal Law:

4. **Direct Copyright & Trade Secret Ownership:**

Claimant is the author, owner, and sole registered copyright claimant of "PATHCare Website Release 63" (U.S. Copyright Reg. No. TXu 1-648-182). Furthermore, Claimant is the sole individual owner of the proprietary healthcare integration trade secrets subsequently monetized through PTS Diagnostics. Any theft, conversion, unauthorized exploitation, or sabotage of this intellectual, tangible, and intangible property constitutes a direct, personal tort against Claimant individually under the Direct Injury Doctrine (*see, e.g., Wingate v. Hajdik*, 795 S.W.2d 717 (Tex. 1990); *Leyendecker & Assocs., Inc. v. Wechter*, 683 S.W.2d 369 (Tex. 1984)), triggering mandatory federal and state protections under the Defend Trade Secrets Act (DTSA) and the Texas Uniform Trade Secrets Act (TUTSA).

**5. Direct Contractual Privity & The CybASP Agreements:**
Claimant holds direct individual privity of contract with CyberlinkUSA, LLC and Cyberlink ASP Technology, Inc. (collectively, "CybASP"). The foundational Customer Service Agreement explicitly establishes privity with *"PATHCare ('Customer') with its principal place of business at 4757 Strait Lane, Carrollton, TX 75010"*, directly anchoring the trade name to Claimant's personal homestead. Furthermore, the unexecuted Release and Waiver Agreement drafted by opposing counsel explicitly defines the releasing party as *"PATHCare and Jeff Vitt (collectively, 'Vitt')"*. Because PATHCare operates strictly as a Doing Business As (DBA) trade name and not an incorporated legal entity, PATHCare and Jeffrey Alan Vitt are legally identical. Direct individual privity of contract attaches directly to Claimant personally, completely bypassing any need to pierce a corporate veil.

**6. Direct Insured Status & Enterprise Unjust Enrichment:**
For core real estate portfolio assets, Claimant holds direct privity because the underlying casualty, property, and commercial insurance policies were issued to Claimant individually or to Vitt, Inc. (Claimant's individual S-Corporation). This explicitly includes policies issued by Farmers Insurance, General Star (insuring Vitt 121, Ltd.), and Guard Insurance (Berkshire Hathaway). The resulting legal malpractice, unfiled claims, and bad-faith insurance handling directly inflicted severe individual economic injury upon Claimant. Furthermore, the bad-faith insurance handling by Berkshire Hathaway interests directly overlaps with the unjust enrichment scheme involving the PTS Diagnostics ("Winklevoss") trade secret conversion, demonstrating a highly coordinated, multi-front campaign by the Debtor to compromise Claimant's equity interests through malpractice, collusion, conspiring, corruption, and deceptive practices.

**7. Personal Ownership of Abandoned Property (2019 Denton Probate Order):**
Pursuant to the Order Abandoning Claims entered on April 25, 2019, by the Probate Court of Denton County, Texas (Cause No. PR-2017-00521), all trust claims, causes of action, and assets were formally abandoned by the court-appointed receiver. That judicial decree explicitly ordered that *"any beneficiary of the Jeffrey Alan Vitt Irrevocable Trust is not precluded from individually pursuing the matters abandoned herein."* Under Texas property law, abandoned claims revert directly to the beneficiary as personal property. Claimant owns these abandoned assets outright and asserts them strictly in his individual capacity, nullifying any defense that these claims belong exclusively to an estate or trust.

**8. The "Violated Veils" Doctrine & Extrinsic Fraud:**
The Debtor and its co-conspirators engaged in a predatory scheme of "Weaponized Insolvency and Manufactured Impossibility." The enterprise intentionally stripped Claimant's operating businesses and trusts of all liquid capital—specifically targeting their ability to retain independent legal representation—and then relied on procedural rules requiring entity counsel

to lock Claimant out of court. This orchestrated paralysis was executed while the enterprise actively converted the underlying data breach(es) (involving an advanced persistent threat), trade secrets, real estate, and litigation assets. Under the Doctrine of Prevention and principles of Extrinsic Fraud, a tortfeasor who wrongfully prevents a party from fulfilling a legal condition cannot raise that failure as a procedural defense. The Debtor's bad-faith conduct absolutely estops it from asserting corporate veil or *pro se* representation defenses against Claimant.

## SECTION III: COMPREHENSIVE FACTUAL NARRATIVE & ENTERPRISE SABOTAGE

*See Sworn Declaration of Jeffrey Alan Vitt under 28 U.S.C. § 1746 for evidentiary verification of the systemic fraud, evidence suppression, and venue manipulation detailed herein*

**1. The McClenny Moseley Baseline, Technical Investigations, and Enterprise Betrayal:** Long before MMA Law Firm, PLLC, John Zachary Moseley, or James M. McClenny formally incorporated in May 2016—having already established working communications with Claimant as early as mid-2015 (April through August)—Claimant was actively building and driving high-tier commercial assets. Following communications and an in-person trip to Indiana in January 2016, Claimant, operating under C-NDA protection, shared his proprietary trade secret medical integration vision that directly served as the catalyst and motivation for Sinocare's acquisition of PTS Diagnostics (announced May 2, 2016). Shortly thereafter, Claimant provided the required 30-day termination notice alongside a formal DTPA demand addressing extensive broken promises, multiple failures to deliver, and total exclusion from implementing the vision provided to Bill Walker at PTS Diagnostics Headquarters in Indianapolis. Despite McClenny and Moseley's professional backgrounds—which gave them full awareness of high-level intelligence and technical operations—and despite managing a combined $300M+ portfolio encompassing the PTS Diagnostics scope and the compounding CybASP digital espionage phase (which Claimant personally tracked and verified through independent technical research, Time Warner Cable [TWC], Apple, and Microsoft support interactions, and the late-2016 Dell backend email kickback discovery), the enterprise did not prioritize or protect Claimant. Instead, as the massive valuation of these assets came to light, the firm and its principals chose self-preservation and collusion over fiduciary duty, weaponizing deceptive legal placebos and fraudulent concealment to intercept, suppress, and neutralize Claimant's unstoppable whistleblower dossier.

**2. Suppression of Digital Forensics & CybASP Data Breach Cover-Up:**
Claimant independently identified, retained, funded, and delivered a comprehensive digital forensics investigation conducted by Dr. William C. Easttom II. Forensic evidence proved a massive data breach by an advanced persistent threat. CyberlinkUSA, LLC and Cyberlink ASP Technology, Inc. (collectively, "CybASP"), via Chris Lantrip, CEO, provided an admission of guilt supported by a digital recording of an alleged identity theft impersonation phone call used to access all Claimant CybASP cloud server data. However, the alleged admission was intentionally limited in scope, acknowledging only 130+ exfiltrated emails containing bank credentials and attorney-client privileged files, while deliberately concealing the attachments and the true, devastating scope of the breach.

**3. Obstruction of Justice (Carrollton PD & Denton County):**
The handling and deliberate stalling of the CybASP Data Breach by the Carrollton Police

Department and Denton County authorities constituted active obstruction of justice and the perversion of, and interference with, judicial and investigative proceedings.

**4. The "Silver Bullets" Injunction / TRO Deception (12 O.S. §§ 1381, 1382, 1384.1, 1392):**
To pacify Claimant, Debtor's attorneys (James M. McClenny and Ben Baker) provided legal research and draft pleadings citing Oklahoma statutory emergency injunction procedures. They held out 12 O.S. § 1382 and § 1384.1 (ex parte Temporary Restraining Orders) as emergency "Silver Bullet" remedies that guaranteed full protection to nearly every single compromised interest of the PATHCare DBA software and trade secrets. Had these injunctions actually been filed, they would have legally frozen many causes of action, locked down the compromised assets, and exposed the bad actors to immediate accountability. Instead, this statutory research was weaponized as a legal placebo to "lull" Claimant into inaction while MMA secretly executed a voluntary dismissal. McAfee Taft, CybASP's legal representation, was approached by McClenny-Baker and discussed co-counselling for Vitt interests – a significant conflict of interest.

**5. The $300M+ Combined Sabotage:**
The Debtor actively sabotaged the combined $300M+ value of the CybASP litigation and the PTS Diagnostics and co-conspirators DTPA action (involving copyrighted software and a trade secret healthcare integration vision that led to Sinocare, Abbey Merger Sub, Inc., State-tech, Hanson Medical, etc.). Instead of prosecuting the action—which MMA internally likened to "Winklevoss Vs. FACEBOOK"—the Debtor converted Claimant's assets and visionary interests into collateral to secure third-party litigation financing arrangements (i.e., Equal Access Justice Fund, LP / EAJF ESQ Fund / B.E. Blank). MMA abruptly entered a Dismissal Without Prejudice (DWOP) in the Rogers County action (Case No. CJ-2018-205) on October 10, 2018, without valid reason or client consent.\

**6. The LAJ Appellate Fraud & 5th COA Misrepresentation:**
Attorney Luwalhati "Lynn" Johnson (LAJ) was paid $15,000.00 cash specifically to execute a family law appeal (*Vitt v. Vitt* Family Law (FLMM) Appeal – 05-17-00828-CV). She not only failed to execute the appeal properly, but actively misrepresented material facts to the 5th Court of Appeals. She then weaponized the privileged information she obtained to continue as an adversary intervening party against Claimant (including in the Vitt 121, Ltd. and *Vitt v. Jacobs* matters)—causes she was paid well in advance to represent and was actively winning before her betrayal.

**7. Strait Lane Escrow Bleed, Denton Registry Encumbrance, & Sworn Fraud:**
The October 30, 2018 Strait Lane HUD-1 Settlement Statement for the homestead property transaction reflects direct, unauthorized capital siphoning, title company collusion, and sworn fraud:

- ***Sworn Disclosure Fraud:***
  The settlement sheet disclosure statement, sworn by Receiver Darla Buehler and blessed by her attorney, Stephanie Askew, constitutes a fraudulent instrument that expands upon the already-convicted actions of the buyers.

- ***The C&C Residential / Carrier Conviction:***
  Strait Lane was purchased by C&C Residential Properties, Inc. / Charles Carrier. Mr. Carrier was investigated by the FBI, and the DOJ prosecuted him to a plea-bargain conviction. Mr. Carrier explicitly admitted to Claimant that he paid more than the amount represented on the settlement sheet.

- ***The Financial Bleed & Title Company Collusion:***
  The fraudulent distributions were actively facilitated by the settlement agent, Paradise Settlement Services, LLC (doing business under the assumed name First Commercial Title). Paradise Settlement Services operated out of 401 E. Corporate Dr., Suite 290, Lewisville, Texas—the identical building housing enterprise attorney Bill Neal. The Strait Lane HUD-1 executed by Buehler, Askew, and Paradise Settlement Services facilitated Line 506 ($80,000.00 unremitted American Express deduction) and Lines 1301–1304 (disbursing funds directly to Askew Legal, receivers, and opposing probate counsel Jack Balderson Jr. and Jeffrey Tasker outside court authorization).

- ***TDI / Enforcement Agency Investigation:***
  Based on the fraudulent execution of the settlement and the unauthorized escrow disbursements, Paradise Settlement Services, LLC and its principal, Christopher J. McLucas, became the subject of active investigation by the Texas Department of Insurance (TDI) and/or concurrent enforcement agencies. Combined with $646,305.06 frozen in the Denton County court registry, the enterprise forcibly commingled trust, personal, and entity funds into a unified slush fund.

**8. Systematic Real Estate Portfolio Abandonment & MMA Case Matrix:**
The Debtor accepted representation across Claimant's real estate portfolio but intentionally stalled, abandoned, or failed to defend or file insurance bad-faith lawsuits within the Texas two-year statute of limitations:

- ***4707 State Hwy 121 (Vitt, Inc. Farmers Insurance Policy / Vitt 121, Ltd.):***
  2015 storm damage claim against Farmers Insurance and General Star (backed by OneSite/CoreLogic NEXRAD radar reports showing 2.25" hail). Debtor allowed retaliation non-judicial foreclosure by Robert M. Farrell Development, Ltd. (TCB/Marina Del Sol, LLC) to proceed unchallenged while suppressing roof damage settlement proceeds and facing corrupt equity demands from attorney Ira Levy.

- ***2010 Libby Lane (Vitt TX, Ltd.):***
  Filed August 2, 2017 (Cause No. DC-17-09402, 101st District Court, Dallas County) against Farmers Insurance and Powerjack Foundation Repair; intentionally stalled and abandoned.

- ***2702 Shadow Wood Ct. (Vitt TX, Ltd.):***
  2015 storm damage claim against Farmers retained by MMA; funds never paid to claimant.

- ***7240 Normandy Rd. (Vitt TX, Ltd.):***
  Storm damage claim retained by MMA but intentionally never filed.

- ***Fraudulent Check Conversion ($65,000.00):***
  Action against Bill David and TIG Insurance Company intentionally abandoned (see Jerry Pomposelli).

- ***Powerjack E&O Case:***
  Action against Powerjack Foundation Repair based on warranty documents and 2015 Farmers claim assignments, intentionally abandoned.

- ***Retaliation Eviction:***
  Action against JSC Realty (2300 Valley View Lane) intentionally abandoned.

**9. Premeditated Conflicts, "Home Cooking," & Attorney Liability:**
The enterprise utilized deep, pre-existing conflicts of interest to manipulate jurisdiction and manufacture standing.

**10. The Alagood Conflict & The LWB Warning:**
In May/June 2016, Claimant was referred by attorney David Carlock to R. Scott Alagood to protect JAVIT interests. Alagood declined the representation but waived the consultation fee, only to subsequently be appointed as the receiver in the family law proceedings. This premeditated alignment correlates directly with the mid-to-late 2016 warning from friend and attorney ("LWB") stating, "Denton is coming after you... watch your back," confirming the "home cooking" venue manipulation into Denton County by the Denton real estate personal gain crime ring.

**11. KoonsFuller Liability:**
As established by KoonsFuller's own evidentiary assertions, legal representation remains liable for the actions of their clients, cementing the joint and several liability of the enterprise's legal architects.

**12. The "Duplicative Litigation" Matrix (Seven Unbroken Appellate Chains):**
The harm inflicted by the Debtor and interconnected actors spans multiple trial courts and fans out across seven (7) specific appellate chain-reactions:

***A. Family Law & Property Track - LAJ / Luwalhati "Lynn" Adamana Johnson:***

- Denton District Court (Cause No. 16-01374-362)
- Second Court of Appeals (# 02-17-00214-CV)
- Fifth Court of Appeals (# 05-17-00828-CV)
- Second Court of Appeals (# 02-23-00308-CV)
- Texas Supreme Court (# 24-0583).

***B. Probate & Asset Liquidation Track (LAJ):***

- Denton County Probate Court (Cause No. PR-2017-00521)

- Second Court of Appeals (# 02-23-00452-CV)
- Texas Supreme Court (# 24-0594).

**C. Intervenor / Sabotage Track (Vitt v. Jacobs v. LAJ):**
- Denton District Court (# 19-4770-367) / Dallas District Courts (# DC-19-08160)
- Fifth Court of Appeals (# 05-22-01240-CV)
- Texas Supreme Court (# 24-0736).

***D.* Intervenor / Sabotage Track (Vitt 121, Ltd. v. R. M. Farrell Development, Ltd v. LAJ):**

**E. McGuire Craddock and Strothers (Vitt 121, Ltd.) LAJ:**
Premeditated positioning using the 75070 zip code to take the property back through foreclosure.

**F. CybASP:**
Improper venue routing into Denton County while MMA, McClenny, Moseley, and Baker deliberately failed to act.

**G. Egregious Attorney Conflicts of Interest (The LAJ Intervenor Matrix):**
Attorney Luwalhati Admana "Lynn" Johnson (LAJ), acting concurrently with the enterprise, intentionally compromised Claimant's legal standing after receiving substantial legal fees ($50,000.00 aggregate, including $15,000.00 cash deposited directly into her credit union account for the 2017 divorce appeal). LAJ obtained privileged strategic information and weaponized it by intervening against her own client across twelve (12) specific trial and appellate dockets:

(1) *Vitt 121, Ltd. v. RM Farrell* (DC-17-04592)
(2) *Vitt v. Vitt* Family Law (16-01374-362)
(3) *Vitt v. Vitt* Family Law (FLMM) Appeal (05-17-00828-CV)
(4) *Vitt v. Vitt* Probate (PR-17-00521)
(5) *Sanofi v. Vitt* (DC-17-00470)
(6) *McKesson v. Vitt* (DC-18-02981)
(7) *Vitt 121, Ltd. v. RM Farrell* (DC-17-04592)
(8) LAJ Intervening v. *Vitt 121, Ltd. v. RM Farrell* (DC-17-16791)
(9) LAJ Intervening v. *Vitt v. Jacobs* (19-4770-367)
(10) LAJ Intervening v. *Vitt v. Jacobs* (DC-19-08160)
(11) LAJ Intervening v. *Vitt v. Jacobs* Appeal (05-22-01240-CV)
(12) LAJ Intervening v. *Vitt v. Jacobs* Texas Supreme Court Appeal (# 24-0736)

## SECTION IV: CONSOLIDATED THREE-COUNT DAMAGE MATRIX

To preserve legal firewalls while maintaining Claimant's universal individual standing, the $350,646,305.06+ consolidated damages are allocated across three distinct legal counts:

1. **COUNT I: DIRECT INDIVIDUAL CLAIMS & TRADE SECRETS, INTELLECTUAL PROPERTY SABOTAGE — $325,000,000.00+ (Unliquidated / Statutory Treble / Civil RICO / Punitive)**.
Arising from Civil RICO (18 U.S.C. § 1962), Sherman Act antitrust violations, corporate espionage, gross legal malpractice, and direct copyright infringement of PATHCare Website Release 63 (U.S. Copyright Reg. No. TXu 1-648-182). Anchored by the Debtor's intentional suppression of the Dr. William C. Easttom II digital forensics report, admission of guilt and/or cover-up concealment of recording provided by Chris Lantrip, CEO of CybASP, the unauthorized October 10, 2018 dismissal of the $100M CybASP litigation (Rogers County Case No. CJ-2018-205), and the conversion of the $200M PTS Diagnostics trade secret action into collateral for litigation funders (i.e. Equal Access Justice Fund, LP / B.E. Blank).

2. **COUNT II: ABANDONED PROPERTY & REAL ESTATE PORTFOLIO SABOTAGE — $25,000,000.00 (Unliquidated Property Loss / Value Diminution)**.
Arising from gross legal malpractice, breach of contract, and Texas Theft Liability Act violations regarding the intentional failure to prosecute high-value property damage and bad-faith insurance claims across Claimant's real estate portfolio (4707 State Hwy 121, 2010 Libby Lane, 2702 Shadow Wood Ct., 7240 Normandy Rd., and associated casualty claims). Debtor allowed Texas two-year statutes of limitations to run out without filing suit, allowing unchallenged foreclosures and total asset degradation. Asserted directly by Claimant pursuant to the April 25, 2019 Denton County Probate Court Order of Abandonment (Cause No. PR-2017-00521).

3. **COUNT III: CONVERSION & SIPHONED REGISTRY / HUD-1 FUNDS — $646,305.06 (Fixed / Liquidated Baseline Floor)**.
Arising from conversion, breach of fiduciary duty, and misappropriation of commingled funds. Supported by funds trapped in the Denton bifurcated litigation registry (Cause Nos. PR-2017-00521 and 16-01374-362) and unauthorized capital bleeding executed on the October 30, 2018 Strait Lane HUD-1 Settlement Statement (Line 506 $80,000.00 unremitted deduction and Lines 1302–1304 $37,173.20 unverified attorney fee disbursements).

## SECTION V: CAUSES OF ACTION & MANDATE OF JOINT AND SEVERAL LIABILITY

The Debtor (MMA Law Firm, PLLC), its managing principals (James M. McClenny, John Zachary Moseley), affiliated co-counsel (including not limited to Ben Baker, Luwalhati "Lynn" Johnson, Ian Ghrist, R. Scott Alagood, Phil Burleson, William Neal, James F. Kelly, Kathy Neal, Jack Balderson Jr., Jeff Tasker, Scott Bodkin, Charla Bradshaw, Stephanie Askew, Darla Buehler, Charles Carrier, C&C Residential, Jerry Pomposelli, Paradise Settlement Services, LLC, Christopher J. McLucas), litigation funders (i.e. Equal Access Justice Fund, LP / EAJF ESQ Fund / B.E. Blank), and all designated John/Jane Does, XYZ/ABC Corporate Entities associated bad actors are JOINTLY AND SEVERALLY LIABLE under the causes of action listed below:

1. **The Predatory Nature of the Enterprise:**
It must be strictly noted for the Court that this network did not operate as a standard legal practice; it functioned as a self-interested racketeering ring that systematically targeted, isolated, and financially extracted individuals navigating the most stressful, vulnerable periods of

human life—specifically, the emotional and financial devastation of divorce (family law) and death (probate).

2. **By weaponizing these highly sensitive dockets, the enterprise manufactured standing to execute the following:**

   **A. Substantive Consolidation & The "No Veil to Pierce" Doctrine:**
   When bad actors go "100% all in" to intentionally commingle assets, loot trusts, and obliterate corporate firewalls, the law requires the collapsing of those structures. Under Texas Supreme Court precedent (*Leyendecker & Assocs., Inc. v. Wechter*, 683 S.W.2d 369), a corporate officer or attorney who personally directs an intentional tort is individually liable. Furthermore, under 11 U.S.C. § 105(a), the Court possesses equitable power to order Substantive Consolidation. The enterprise intentionally bled funds across trusts, LLCs, and DBA accounts to hide the money; thus, Substantive Consolidation legally merges all those entities into a single asset pool. You do not pierce the veil; the court vaporizes it.

   **B. Direct Individual Tort Liability & Actual Fraud (TBOC § 21.223(b)):**
   Under Texas Business Organizations Code (TBOC) § 21.223(b), the normal rules of corporate separateness are superseded when dealing with "actual fraud" committed for direct personal benefit. The enterprise's willful blindness and actual fraud completely obliterate the corporate boundaries.

   **C. Insider Reverse Veil Piercing & Equitable Estoppel:**
   The enterprise treated Claimant's trusts, operating businesses, and personal equity as one giant, interchangeable slush fund to steal from; therefore, they are legally estopped from arguing that Claimant lacks standing. Under Insider Reverse Veil Piercing, because the bad actors weaponized the corporate structure to steal assets, the court must disregard the veils in recovery. Claimant asserts Concurrent Standing across all capacities.

- **Civil RICO (18 U.S.C. § 1962(c) & (d)):** Conducting and conspiring to conduct an association-in-fact enterprise through a pattern of racketeering activity (wire fraud, mail fraud, obstruction of justice, extortion).

- **Sherman Act & Clayton Act Antitrust Violations:** Collusive market division, trade secret suppression, and unlawful restraint of trade.

- **Texas Theft Liability Act (TTLA) (Tex. Civ. Prac. & Rem. Code § 134.001 et seq.):** Unlawful appropriation, conversion, and retention of Claimant's property, triggering actual damages, statutory penalties, and mandatory fee recovery.

- **Gross Legal Malpractice & Breach of Fiduciary Duty:** Sabotaging active claims, suppressing Easttom forensic reports, executing unconsented dismissals, and abandoning client files.

- **Complete Fee Forfeiture (*Burrow v. Arce* & Tex. Gov't Code § 82.0651):** Severe, continuous breaches of fiduciary duty and illegal fee-splitting/barratry require complete disgorgement and forfeiture of all legal fees claimed by Debtor or co-counsel. Under *Kinzbach Tool Co. v. Corbett-Wallace Corp.*, 160 S.W.2d 509, a fiduciary is prohibited

from making a secret profit or acting in their own self-interest.

- **Fraudulent Concealment & Constructive Fraud:** Withholding unredacted IOLTA ledgers and escrow wire records to conceal illegal fee siphoning.
- **Civil Rights Deprivations (42 U.S.C. § 1983):** Bad-faith coordination under color of law to manufacture standing, execute improper process, and enforce retaliatory orders.
- **Common Law Civil Conspiracy & Business Disparagement:** Systemic tortious interference with prospective economic advantage and business relationships.

## SECTION VI: EQUITABLE TOLLING & FRAUDULENT CONCEALMENT

To the extent the Debtor or any party in interest asserts that any specific injury or expanded damage figure falls outside statutory limitations or bankruptcy bar dates, all applicable timelines were equitably tolled due to active fraudulent concealment:

**1. Fiduciary Breach:**
The Debtor, as Claimant's former legal counsel, owed strict fiduciary duties of full disclosure.

**2. Evidence Suppression:**
The Debtor breached these duties by actively suppressing the Dr. William C. Easttom II digital forensics report and the 18-month impersonation/data breach digital recording, while quietly executing the unauthorized October 10, 2018 dismissal in Rogers County without client knowledge.

**3. Manufactured Legal Isolation (The Blackballing Effect):**
The enterprise engaged in a "scorched earth" campaign of attorney intimidation, severe conflicts of interest, and financial starvation designed specifically to ensure Claimant could not secure substitute legal representation. Because the enterprise intentionally "conflicted out" or intimidated the legal community, Claimant's resulting pro se posture was a direct, manufactured consequence of the enterprise's fraud.

**4. Fifth Circuit Jurisprudence:**
Under established Fifth Circuit bankruptcy jurisprudence, where a debtor or fiduciary actively conceals evidence or bad acts (Extrinsic Fraud), the running of any bar date or statute of limitations is tolled until the victim actualizes discovery of the underlying concealment.

## SECTION VII: OFFENSIVE & DEFENSIVE REMEDIES RESERVED

**1. Constructive Trust & UCC § 9-315 Tracing:**
Because the enterprise forcibly commingled conversion proceeds, registry funds, and siphoned litigation revenues into its operating accounts, Claimant traces his security interest directly into the estate's liquid funds under Texas equity (*Meadows v. Bierschwale*, 516 S.W.2d 125) and UCC § 9-315. Furthermore, under the Texas Uniform Voidable Transactions Act (TUFTA - Tex.

Bus. & Com. Code § 24.005), the court can simply void the transactions. Claimant asserts a direct Constructive Trust over all estate capital.

2. **Mandatory Equitable Subordination (11 U.S.C. § 510(c)):**
Under 11 U.S.C. § 510(c), the Court possesses equitable authority to subordinate allowed claims. All claims, fee requests, or settlement distributions intended for the Debtor's co-conspirators, settling law firms, or litigation funders must be equitably subordinated to the absolute bottom of the priority ladder behind Claimant's $350M+ priority claim.

3. **Prohibition of Non-Debtor Third-Party Releases:**
Following *Harrington v. Purdue Pharma L.P.*, 603 U.S. 203 (2024) and *In re Highland Capital Management, L.P.*, 48 F.4th 419 (5th Cir. 2022), the Bankruptcy Code does not authorize non-consensual releases or injunctions that shield non-debtor third parties (including Zach Moseley or James McClenny) from direct individual liability.

4. **Rule 2004 Discovery Hook & Absolute Right to Amend:**
Pursuant to Fed. R. Bankr. P. 3001, 7015, and 9014, Claimant reserves the absolute, unassailable right to file further Amended Proofs of Claim to re-quantify damage figures, substitute true party names for all "John/Jane Doe" placeholders, and perfect specific counts upon the receipt of compelled Rule 2004 discovery productions regarding unredacted IOLTA ledgers, wire metadata, server logs, and litigation funding prospectuses. Furthermore, under the Civil Power of the 5th Amendment Adverse Inference, if the principals plead the Fifth Amendment during these examinations, the civil court is explicitly permitted to draw an adverse inference from their refusal to testify.

5. **Jurisdictional Reservation:**
No part of this filing waives Claimant's right to launch independent Adversary Proceedings, seek mandatory withdrawal of reference, enforce prior probate orders, or demand a trial by jury.

## SECTION VIII: CRIMINAL ENTERPRISE, MENS REA, AND DOJ/FBI CONVICTION NEXUS

1. **Association-in-Fact & Criminal Enterprise Architecture:**
The Debtor (MMA Law Firm, PLLC), its managing principals (James M. McClenny, John Zachary Moseley), affiliated co-counsel, and third-party actors did not merely commit professional negligence or isolated breaches of contract; they operated as an association-in-fact enterprise exhibiting clear mens rea, calculated malicious intent, and pervasive willful blindness. Under federal criminal jurisprudence, the enterprise intentionally weaponized the civil and bankruptcy court systems to conceal a multi-tiered asset-stripping operation.

2. **The Charles Carrier / C&C Residential DOJ Conviction Nexus:**
The illegal mechanics of the enterprise are directly validated by federal criminal proceedings. Charles Carrier and C&C Residential—the primary entities directly tied to the initial acquisition, handling, and subsequent forced transactions of the Strait Lane homestead property—were the subject of active federal criminal investigations culminating in Department of Justice (DOJ) guilty pleas and federal convictions for wire fraud and mortgage/property conspiracy. The fraudulent mechanisms utilized in the Strait Lane transactions (including the unauthorized October 30,

2018 HUD-1 disbursements and unremitted AMEX deductions) directly mirror the convicted criminal conduct of Carrier and C&C Residential. The Debtor and its principals possessed actual knowledge of, or exhibited deliberate willful blindness toward, these fraudulent operations while acting as Claimant's fiduciaries.

3. **Weaponizing Criminal Restitution & Non-Dischargeable Judgments:**
Under Bankruptcy Code Section 523(a)(2), (a)(4), and (a)(6), debts incurred through actual fraud, embezzlement, breach of fiduciary duty, or willful and malicious injury are completely non-dischargeable. The ongoing federal investigations and convictions establish that the Debtor's liabilities flow from non-dischargeable, criminal enterprise actions.

4. **Active FBI / DOJ Investigations into MMA Law Firm:**
The Debtor's current Chapter 11 posture is an explicit attempt to manufacture a legal shield against ongoing federal scrutiny. Federal law enforcement agencies, including the Federal Bureau of Investigation (FBI) and the Department of Justice, have maintained active investigations into the fraudulent practices, forged client documents, and systematic financial hoarding executed by MMA Law Firm, PLLC. Permitting this Chapter 11 Plan to achieve finality—or allowing the approval of a Rule 9019 compromise that grants non-consensual third-party releases and 18-month stays to Moseley and McClenny—directly obstructs ongoing criminal inquiries, acts as a de facto judicial amnesty for federal crimes, and subverts the public interest.

5. **Activating the Crime-Fraud Exception:**
The attorney-client privilege and Joint Defense Agreements (JDAs) are destroyed under the Crime-Fraud Exception if the communication was made to further an ongoing or planned crime or fraud. The existence of the FBI investigations and the DOJ convictions provide the prima facie evidence required to pierce these privileges.

6. **Willful Blindness and Constructive Knowledge of Enterprise Fraud:**
Under 18 U.S.C. § 1962 and related federal statutes, active concealment of digital forensic reports (digital recording, Dr. William C. Easttom II data breach findings, add'l evidence), the execution of unconsented case dismissals (the Rogers County DWOP), and the strategic refusal to prosecute valid insurance bad-faith claims and other matters constitute overt acts in furtherance of a criminal conspiracy. The Debtor cannot hide behind bankruptcy bar dates or professional indemnity shields when the underlying liabilities flow directly from criminal enterprise activities, intentional property conversion, and active obstruction of justice.

## SECTION IX: NON-EXHAUSTIVE SCOPE & AGGREGATE DESTRUCTION

This Master Omnibus Addendum does not include all actions, inactions, damages, or co-conspirators. The sheer scale of the enterprise's asset-stripping operation systematically targeted and destroyed over sixteen (16) distinct corporate entities, operating businesses, and trusts built over a decade of commercial operations. Claimant explicitly reserves the right to supplement this record as ongoing Rule 2004 discovery, FBI/DOJ investigations, and unredacted financial ledgers expose the full depth of the fraud. Because the enterprise operated as a unified, coordinated unit to orchestrate this total economic destruction, all listed defendants, law firms, litigation funders, title companies, and placeholder entities remain strictly bound under Joint and Several Liability for the aggregate $350,646,305.06+ claim.

Respectfully submitted,

____________________ Executed this 28th day of August, 2026.

Jeffrey Alan Vitt, Individually
12791 S. 4230 Road
Chelsea, OK 74016
539-292-9358
javit2004rule@gmail.com