8/24/2026 3:41 PM
Marilyn Burgess - District Clerk Harris County
Envelope No. 119019276
By: Sandra Castillo
Filed: 8/24/2026 3:41 PM

**CAUSE NO. 2023-44970**

| | | |
|---|---|---|
| **IN THE MATTER OF THE MARRIAGE OF** | § | **IN THE DISTRICT COURT** |
| **JAYNE ELIZABETH MOSELEY AND JOHN ZACHARY MOSELEY** | § § § | **245TH JUDICIAL DISTRICT** |
| **AND IN THE INTEREST OF CAMILLA QUINN MOSELEY AND MIA ELIZABETH MOSELEY, CHILDREN** | § § § | **HARRIS COUNTY, TEXAS** |

**INTERVENORS' FIRST AMENDED MOTION FOR SANCTIONS AND CONTEMPT AGAINST JAYNE MOSELEY AND ALL RESPONSIBLE PARTIES**

Intervenors Equal Access Justice Fund, LP and EAJF ESQ Fund, LP (collectively, "Intervenors" or "Judgment Creditors") file this First Amended Motion for Sanctions and Contempt against Jayne Moseley and all other responsible parties as follows:

## I. INTRODUCTION

1. Intervenors brought this fraudulent transfer action against Jayne Moseley, a sophisticated attorney who serves as Associate General Counsel at Buckeye Partners, graduated near the top of her law-school class, and has been licensed to practice law in Texas since 2013. The jury found that Ms. Moseley received and participated in a fraudulent transfer of approximately $1.9 million from John Zachary Moseley ("Zach Moseley"). The transfer occurred while Intervenors were substantial creditors of Zach Moseley and while litigation concerning his obligations to Intervenors was pending. The evidence further established that the transfer was made with the intent to hinder, delay, and defraud Intervenors and that Ms. Moseley subsequently dissipated the transferred funds rather than preserving them for satisfaction of Intervenors' claims.

EXHIBIT 2

Certified Document Number: 128417003 - Page 1 of 14

2. On June 3, 2024, approximately $1.9 million was transferred from a joint account into an account held solely in Ms. Moseley's name. (Ex. A, Deposition of Jayne Moseley, 102:5–9; 132:19–25; 133:1–11.) Ms. Moseley testified that approximately $600,000 of the transferred funds remained in her account at the time of her deposition and that she had already dissipated approximately $1.3 million. (*Id.* at 145:18–24; 146:1–24.)

3. The jury subsequently found that the $1.9 million transfer was fraudulent. Despite knowing that the funds were the subject of Intervenors' claims and despite this Court's orders governing the disposition of marital assets, Ms. Moseley continued to spend the transferred funds. She has now dissipated the overwhelming majority of the money that was fraudulently transferred to her. Much of that spending was discretionary and involved luxury purchases and other expenditures that were neither reasonable nor necessary living expenses.

4. Ms. Moseley's conduct is particularly egregious because she continued dissipating the funds even after this Court specifically addressed the potential consequences of doing so at the March 10, 2026 hearing. Her conduct therefore was not inadvertent, accidental, or the result of a misunderstanding of the Court's requirements. It was knowing, deliberate, and continuing.

## II. ARGUMENT AND AUTHORITIES

### A. Contempt

5. Texas courts possess inherent authority to enforce compliance with their orders through contempt. To establish civil contempt, the movant must prove that the alleged contemnor violated a clear, specific, and unequivocal order of the court. *Ex parte Slavin*, 412 S.W.2d 43, 44–45 (Tex. 1967). The order must be sufficiently specific that the party charged with contempt can readily ascertain what conduct is prohibited or required.

Certified Document Number: 128417003 - Page 2 of 14

6. Texas law distinguishes between civil and criminal contempt. Civil contempt is remedial and coercive and is designed to compel the contemnor's compliance with the court's order. *Ex parte Werblud*, 536 S.W.2d 542, 545 (Tex. 1976). Because civil contempt is coercive, the contemnor must have a means of purging the contempt through compliance with the court's order. Id. Criminal contempt, by contrast, is punitive and punishes completed conduct that affronts the dignity or authority of the court. Id. at 545–46. Thus, to the extent relief is punitive for completed violations, the proceeding is criminal in nature and the procedural protections applicable to criminal contempt must be observed.

7. Here, the Court's Standing Order is clear and unequivocal. Section 4.5 prohibits transferring or otherwise alienating property except as authorized by the Order. Section 4.7 prohibits withdrawals from checking or savings accounts except as authorized by the Order. Section 4.8 prohibits spending cash under either party's control except as authorized by the Order. (Ex. B.) The Court expressly confirmed on March 10, 2026 that the Standing Order remained "in full force and effect as to all parties in this matter."

8. Ms. Moseley therefore had actual and unequivocal notice of the restrictions governing the funds at issue. The bank records establish that she nevertheless repeatedly withdrew and spent those funds for purposes not authorized by the Standing Order.

**B. Sanctions**

9. Texas courts have broad authority to impose sanctions for abuses of the judicial process and violations of their orders. *See* Tex. R. Civ. P. 215.2; *Cire v. Cummings*, 134 S.W.3d 835, 839–40 (Tex. 2004). Sanctions may serve the purposes of securing compliance, deterring future violations, and punishing abuses of the judicial process. *Bodnow Corp. v. City of Hondo*, 721 S.W.2d 839, 840 (Tex. 1986); *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241–42 (Tex. 1985).

Certified Document Number: 128417003 - Page 3 of 14

10. Where sanctions are imposed for discovery abuse or violation of a discovery order, the sanction must be "just." *TransAmerican Natural Gas Corp. v. Powell*, 811 S.W.2d 913, 917–18 (Tex. 1991). A just sanction must bear a direct relationship to the offensive conduct and must not be excessive. *Id.*; *Cire*, 134 S.W.3d at 839–40.

11. The requested relief here is directly related to Ms. Moseley's misconduct. Her violations consist of repeatedly withdrawing and spending assets subject to the Court's Standing Order. The amount of monetary relief sought is tied directly to the funds she dissipated and the resulting prejudice to Intervenors. Moreover, lesser measures have plainly failed to secure compliance: Ms. Moseley continued dissipating the funds despite the Standing Order, the pending litigation, and the Court's warning concerning the consequences of dissipating assets.

**C. Ms. Moseley Has Continued to Dissipate the Fraudulently Transferred Funds**

12. On April 25, 2025, Ms. Moseley filed a sworn Inventory and Appraisement in which she characterized the approximately $1.9 million transferred from Zach Moseley as a "gift" and identified the balance in the account ending in x9302 as $1,551,321.36. (Ex. C.)

13. After Intervenors asserted their claims challenging the transfer, Ms. Moseley changed her position. On December 30, 2025, she filed a First Amended Sworn Inventory and Appraisement recharacterizing the same funds as community property rather than a gift. The amended inventory further reflected that the balance in the x9302 account had declined to $739,978.71.

14. Thus, in approximately eight months between the two sworn inventories, approximately $811,342.65 had been spent, dissipated, transferred, or otherwise removed from the account. Ms. Moseley's inconsistent sworn characterizations of the transfer, coupled with the substantial depletion of the account after she filed her

Certified Document Number: 128417003 - Page 4 of 14

original inventory, are significant evidence concerning both the nature of the transfer and her subsequent disposition of the transferred assets.

15. At trial on July 21, 2026, Ms. Moseley testified that approximately $400,000 remained in the account. At the Court's August 5, 2026 hearing, the Court ordered Ms. Moseley's counsel to provide the current balance in the account. On August 7, 2026, John Ben Blackburn confirmed that only approximately $170,000 remained. (Ex. D.) Thus, since trial alone, Ms. Moseley has dissipated another approximately $230,000.

**D. Ms. Moseley Has Knowingly and Repeatedly Violated the Court's Standing Order**

16. On March 17, 2026, the Court entered an Order determining that Intervenors' Motion for Temporary Injunction was moot because the Court's pre-existing Standing Order had been in effect since the inception of the divorce proceeding. The Court expressly confirmed that the "Court's Standing Order effective October 5, 2023" remained "in full force and effect as to all parties in this matter." (Ex. E.)

17. The Standing Order contains clear and unequivocal restrictions governing the transfer and expenditure of property. Specifically:

a. Section 4.5 prohibits "[s]elling, transferring, assigning, mortgaging, encumbering, or in any other manner alienating any of the property, whether personal property or real property, and whether separate or community, except as specifically authorized by this order."

b. Section 4.7 prohibits "[m]aking withdrawals from checking or savings account in any financial institution for any purpose, except as specifically authorized by this order."

c. Section 4.8 prohibits "[s]pending any sum of cash in either party's control for any purpose, except as specifically authorized by this order."



Certified Document Number: 128417003 - Page 5 of 14

18. These provisions are neither ambiguous nor difficult to understand. They prohibit withdrawals and expenditures except as specifically authorized by the Order. Ms. Moseley, a licensed Texas attorney and sophisticated legal professional, was plainly capable of understanding these requirements.

19. While the Standing Order arguably permits reasonable and necessary living expenses, the expenditures detailed below go far beyond that limited exception. Luxury travel, cosmetic procedures, high-end retail purchases, and large discretionary credit-card payments are not "reasonable and necessary living expenses." Ms. Moseley's decision to segregate her ongoing salary and bonuses into another separate account while continuing to deplete the account containing the fraudulent transferred funds further demonstrates that she was not relying on those funds for ordinary support. That conclusion is reinforced by the fact that she already owned a 2,349-square-foot luxury townhouse at 1214 W. Dallas Street, Houston, Texas 77019, yet simultaneously paid approximately $7,000 per month to rent another residence—an expenditure that cannot reasonably be characterized as necessary.

**E. Specific Violations of the Standing Order**

20. The bank records and attached schedules (Exs. F–N) establish that Ms. Moseley repeatedly withdrew and spent funds from the account containing the transferred proceeds in blatant violation of the Court's Standing Order §§ 4.5, 4.7, and 4.8. Representative violations include, without limitation:

a. On or about the dates reflected in the bank records, Ms. Moseley spent approximately $5,136.75 on a five-day trip to Boca Raton with friends. These expenditures were not reasonable and necessary living expenses and were not authorized by the Standing Order.



Certified Document Number: 128417003 - Page 6 of 14

b. On or about the dates reflected in the bank records, Ms. Moseley spent approximately $4,500 on cosmetic treatments. These expenditures were discretionary and were not authorized by the Standing Order.

c. On or about the dates reflected in the bank records, Ms. Moseley paid approximately $250,000 toward her personal credit-card balances using funds from the account containing the transferred proceeds. These payments were not authorized by the Standing Order.

d. On or about the dates reflected in the bank records, Ms. Moseley made numerous purchases at Saks Fifth Avenue and made nineteen separate purchases from Revolve totaling more than $12,000. These high-end retail purchases were discretionary and were not authorized by the Standing Order.

e. On or about the dates reflected in the bank records, Ms. Moseley made lease payments on her Infiniti totaling more than $100,000 and paid a mortgage exceeding $15,000 per month, while simultaneously paying approximately $7,000 per month in rent on another residence even though she already owned a 2,349-square-foot luxury townhouse at 1214 W. Dallas Street, Houston, Texas 77019. These housing and vehicle expenditures, particularly the dual housing costs, were not reasonable and necessary living expenses authorized by the Standing Order.

f. On or about the dates reflected in the bank records, Ms. Moseley paid approximately $11,000 toward student loans and paid her divorce attorneys using funds from the account containing the transferred proceeds. These payments were not authorized by the Standing Order.

21. The foregoing are representative examples only. The attached schedules (Exs. F–N) contain a more complete itemization of the withdrawals, transfers, and expenditures from the account ending in x9302. Collectively, these transactions reduced the balance in that account from approximately $1,551,321.36 in April 2025 to approximately $170,000 as of August 7, 2026.

Certified Document Number: 128417003 - Page 7 of 14

22. None of the expenditures identified above were specifically authorized by the Standing Order. To the extent Ms. Moseley may claim that any of the expenditures constituted "reasonable and necessary living expenses," the nature, amount, and circumstances of the spending—particularly the luxury travel, cosmetic procedures, high-end retail purchases, dual housing costs, and the segregation of her salary into a separate account—demonstrate that the expenditures far exceeded any such limited exception.

23. Most importantly, Ms. Moseley continued spending the funds despite knowing that Intervenors claimed an interest in recovering them, despite the pending litigation, despite the Court's Standing Order, and despite the Court's warning concerning the consequences of dissipating the assets.

24. Ms. Moseley's conduct is particularly egregious because she took affirmative steps to segregate her income from the account containing the transferred funds. Approximately one week after being sued, Ms. Moseley stopped depositing her paycheck into the account containing the $1.9 million and established a separate account into which she deposited her salary and bonuses from Buckeye Partners. She then continued spending the transferred funds from the original account.

25. The significance of that conduct cannot be overstated. Rather than preserve the funds that were the subject of the litigation, Ms. Moseley separated her ongoing income from those funds and continued depleting the account containing the $1.9 million transfer.

26. Intervenors also repeatedly requested the bank records necessary to determine precisely how the transferred funds were dissipated. Despite those requests, Ms. Moseley's counsel refused even to respond to the requests. (Ex. O.) Emails from Brian W. Zimmerman to counsel for Ms. Moseley.) That refusal has compounded the harm caused by Ms. Moseley's continued dissipation of the funds and has unnecessarily obstructed Intervenors' ability to trace and recover the assets.

Certified Document Number: 128417003 - Page 8 of 14

**E. Ms. Moseley's Conduct Warrants Contempt and Meaningful Sanctions**

27. The elements of contempt are satisfied. The Court entered a clear and unequivocal Standing Order. The Court expressly confirmed that Order remained in full force and effect. Ms. Moseley had actual knowledge of the Order and, as a licensed attorney, understood its restrictions. And the bank records establish that she repeatedly withdrew and spent funds in direct violation of those restrictions.

28. Her conduct was knowing and willful. This is not a case involving a single inadvertent transaction or an arguable misunderstanding of an ambiguous order. Ms. Moseley engaged in a continuing course of conduct involving hundreds of thousands of dollars. She continued dissipating the funds even after the Court addressed the consequences of doing so.

29. The magnitude and persistence of the violations are demonstrated by the declining balance in the account. The account contained approximately $1.55 million in April 2025, approximately $740,000 in December 2025, approximately $400,000 at trial, and approximately $170,000 as of August 7, 2026. The funds have therefore been depleted in a manner that directly threatens Intervenors' ability to recover the assets the jury determined were fraudulently transferred.

30. The Court should therefore impose meaningful remedial and coercive relief sufficient to secure compliance with its Standing Order and prevent any further dissipation of the remaining assets.

31. Intervenors seek monetary sanctions and other remedial relief in an amount supported by the evidence for funds spent, transferred, or otherwise dissipated, in violation of the Court's Standing Order. The bank records and attached schedules show that the balance in the account ending in x9302 declined from approximately $1,551,321.36 in April 2025 to approximately $170,000 as of August

Certified Document Number: 128417003 - Page 9 of 14

7, 2026. Intervenors request that the Court determine the precise amount of unauthorized dissipation after a full accounting.

32. The requested relief bears a direct relationship to Ms. Moseley's misconduct. The misconduct consists of withdrawing and spending assets subject to the Court's Order; the requested relief is directed at the very assets she was prohibited from dissipating and the prejudice caused by her violations.

32. Lesser measures have not worked. Ms. Moseley continued dissipating the funds despite the Standing Order, despite the pending litigation, and despite the Court's warning concerning the consequences of dissipating assets. The record therefore demonstrates that meaningful coercive relief is necessary to secure future compliance.

34. The Court should also order Ms. Moseley to account for the disposition of the transferred funds and to restore or disgorge amounts improperly dissipated in violation of the Court's Order, to the extent authorized by law.

35. Because Ms. Moseley's violations are ongoing and threaten further dissipation of the remaining assets, Intervenors further request appropriate coercive contempt relief, including confinement conditioned upon compliance with the Court's orders. If the Court determines that any requested confinement or monetary penalty is punitive for completed violations and therefore constitutes criminal contempt, Intervenors request that the Court impose such relief only after providing the procedural protections required by Texas law, including an order to show cause.

36. The need for meaningful relief is underscored by the fact that Ms. Moseley and Zach Moseley have already demonstrated a willingness to engage in transactions that hinder Intervenors' ability to collect amounts owed to them. Ms. Moseley's continued dissipation of the very funds the jury found were fraudulently transferred to her demonstrates that lesser measures have not been effective.

Certified Document Number: 128417003 - Page 10 of 14

37. Without meaningful sanctions and contempt relief, Ms. Moseley will have effectively succeeded in dissipating the assets that were the subject of this litigation before Intervenors can recover them. The Court should not permit its Standing Order—and the judicial process itself—to be rendered meaningless by that conduct.

## IV. CONCLUSION AND PRAYER

WHEREFORE, PREMISES CONSIDERED, Intervenors Equal Access Justice Fund, LP and EAJF ESQ Fund, LP respectfully request that the Court:

1. Issue an Order to Show Cause directing Jayne Moseley to appear and show cause why she should not be held in contempt of court for her knowing and willful violations of the Court's Standing Order;

2. Find Jayne Moseley in contempt of court for her knowing and willful violations of the Court's Standing Order;

3. Impose appropriate monetary sanctions and remedial relief against Ms. Moseley, in an amount supported by the evidence, for funds spent, transferred, or otherwise dissipated in violation of the Court's Standing Order;

4. Order Ms. Moseley to provide a complete accounting of all withdrawals, transfers, and expenditures from the account containing the fraudulently transferred funds;

5. Order Ms. Moseley (and all responsible parties) to restore, disgorge, or otherwise account for all amounts dissipated in violation of the Court's Standing Order, to the extent authorized by law;

6. Award Intervenors their reasonable and necessary attorneys' fees and expenses incurred in investigating, prosecuting, and obtaining relief for Ms. Moseley's violations, to the extent authorized by law;

7. Impose appropriate coercive contempt relief, including, without limitation, confinement in jail until such time as Ms. Moseley complies with the Court's orders,

Certified Document Number: 128417003 - Page 11 of 14

or such other period or conditions as the Court deems lawful and appropriate, to compel future compliance;

8. Order such additional coercive and remedial relief as necessary to secure compliance with the Court's orders, including, without limitation, a term of incarceration as a sanction for contempt, in addition to any monetary or remedial sanctions the Court determines appropriate and further appropriate restrictions on the transfer or expenditure of any remaining assets; and

9. Grant Intervenors all other relief, at law or in equity, to which they may be justly entitled.

Respectfully submitted,

SPENCER FANE LLP

By: */s/ Brian W. Zimmerman*
Brian W. Zimmerman
State Bar No. 00788746
Frederick Johnson
State Bar No. 00785429
Gary J. Zimmerman
State Bar No. 00795740
bzimmerman@spencerfane.com
3040 Post Oak Blvd., Suite 1400
Houston, Texas 77056
Telephone: (713) 552-1234
Facsimile: (713) 963-0859
ATTORNEYS FOR INTERVENORS
EQUAL ACCESS JUSTICE FUND, LP AND
EAJF ESQ FUND, LP

Certified Document Number: 128417003 - Page 12 of 14

## Certificate of Service

I certify that on August 24, 2026, a true and correct copy of the foregoing was forwarded to all counsel of record pursuant to Rule 21a of the Texas Rules of Civil Procedure as follows:

***VIA E-SERVICE***
Andrew Bayley andrew@bayleylawfirm.com
THE BAYLEY LAW FIRM
1225 North Loop West, Suite 900
HOUSTON, TX 77008
ATTORNEY FOR RESPONDENT

***VIA E-SERVICE***
J. Patrick Cohoon pcohoon@lkclawfirm.com
John Ben Blackburn jbblackburn@lkclawfirm.com
Jason Curd jcurd@lkclawfirm.com
LEGER KETCHUM & COHOON, PLLC.
179 S. Main Street, Suite 102
Boerne, Texas 78006
ATTORNEY FOR JAYNE ELIZABETH MOSELEY

***VIA E-SERVICE***
Douglas Ray York service@douglasyork.com
LAW OFFICES OF DOUGLAS RAY YORK, P.C.
1824 Heights Blvd.,
Houston, Texas 77008
ATTORNEY FOR JAYNE ELIZABETH MOSELEY

***VIA E-SERVICE***
Lisa Bowlin Hobbs Lisa@HobbsTexasAppeals.com
LBH LAW PLLC
5501 Balcones, Suite A215
Austin, Texas 78731
ATTORNEY FOR JAYNE ELIZABETH MOSELEY

***/s/ Brian W. Zimmerman***
Brian W. Zimmerman

Certified Document Number: 128417003 - Page 13 of 14

## Automated Certificate of eService

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Julia Woods on behalf of Brian Zimmerman
Bar No. 788746
jwoods@spencerfane.com
Envelope ID: 119019276
Filing Code Description: No Fee Documents
Filing Description: INTERVENORS??? FIRST AMENDED MOTION FOR SANCTIONS AND CONTEMPT AGAINST JAYNE MOSELEY AND ALL RESPONSIBLE PARTIES
Status as of 8/24/2026 4:32 PM CST

Case Contacts

| **Name** | **BarNumber** | **Email** | **TimestampSubmitted** | **Status** |
|---|---|---|---|---|
| J. PatrickCohoon | | pcohoon@lkclawfirm.com | 8/24/2026 3:41:13 PM | SENT |
| Stephanie Proffitt | 24006775 | notice@proffittfamilylaw.com | 8/24/2026 3:41:13 PM | SENT |
| Lisa Hobbs | 24026905 | lisa@hobbstexasappeals.com | 8/24/2026 3:41:13 PM | SENT |
| Katie LFlynn | | service@thestoutlawfirm.com | 8/24/2026 3:41:13 PM | SENT |
| Andrew Bayley | 24071501 | Andrew@bayleylawfirm.com | 8/24/2026 3:41:13 PM | SENT |
| Doug York | | service@douglasyork.com | 8/24/2026 3:41:13 PM | SENT |
| Jason Curd | | jcurd@lkclawfirm.com | 8/24/2026 3:41:13 PM | SENT |
| John Ben Blackburn | | jbblackburn@lkclawfirm.com | 8/24/2026 3:41:13 PM | SENT |
| Jessica Stacy | | jstacy@lkclawfirm.com | 8/24/2026 3:41:13 PM | SENT |

Certified Document Number: 128417003 - Page 14 of 14

DISTRICT COURT OF HARRIS COUNTY TEXAS

I, Marilyn Burgess, District Clerk of Harris County, Texas certify that this is a true and correct copy of the original record filed and or recorded in my office, electronically or hard copy, as it appears on this date.
Witness my official hand and seal of office this September 1, 2026

Certified Document Number: 128417003 Total Pages: 14

Marilyn Burgess

Marilyn Burgess, DISTRICT CLERK
HARRIS COUNTY, TEXAS

**In accordance with Texas Government Code 51.301 and 406.013 electronically transmitted authenticated documents are valid. If there is a question regarding the validity of this document and or seal please e-mail support@hcdistrictclerk.com**