United States Bankruptcy Court
Southern District of Texas
**ENTERED**
August 05, 2026
Nathan Ochsner, Clerk

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| **IN RE:** | § | |
| | § | **CASE NO: 24-31596** |
| **MMA LAW FIRM, PLLC,** | § | |
| | § | |
| **Debtor.** | § | |
| | § | |
| | § | **CHAPTER 11** |

# ORDER
## CONFIRMING THIRD AMENDED JOINT PLAN OF LIQUIDATION AND PLAN SUPPLEMENT OF MMA LAW FIRM, PLLC
***Regarding ECF No. 1577 & 1615***

On June 24, 2026, the Court entered its Order [ECF No. 1562] requiring the filing of an amended disclosure statement and plan, authorizing the Debtor to solicit votes with respect to the plan, and scheduling a hearing on confirmation for August 4, 2026, at 10:30 a.m. (the "Confirmation Hearing"). On July 1, 2026, MMA Law Firm, PLLC (the "Debtor") filed its Third Amended Disclosure Statement [ECF No. 1576] (the "Disclosure Statement") and its Third Amended Joint Plan of Liquidation [ECF No. 1577] (as modified herein, the "Plan"). On July 6, 2026, the Debtor served the Solicitation Package upon all known creditors, interest holders, and parties-in-interest and filed a certificate of service [ECF No. 1586]. July 22, 2026 was fixed as the deadline to object to confirmation, and July 31, 2026 was fixed as the deadline to submit ballots. The Debtor filed its ballot summary on August 3, 2026 [ECF No. [1642].

On August 4, and 5th, 2026, the Debtor and its counsel appeared at the Confirmation Hearing, at which the Court heard testimony and arguments of counsel and considered the evidence, the ballots, and the record of this case. Capitalized terms used but not defined herein have the meanings given in the Plan.

**THE COURT HEREBY FINDS AND DETERMINES AS FOLLOWS:**

a. The Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code on April 9, 2024. The Debtor is authorized to be a debtor under 11 U.S.C. § 109.

b. This Court has jurisdiction over this case pursuant to 28 U.S.C. §§ 157(a) and 1334. Confirmation of the Plan is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(L), and this Court has constitutional authority to enter a final order confirming the Plan. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409. The statutory predicates for confirmation are 11 U.S.C. §§ 1121–1142.

c. Due, timely, sufficient, and adequate notice of the Plan, the Confirmation Hearing, and the deadlines for voting on and objecting to the Plan has been given to all known holders of Claims and Interests and parties-in-interest in accordance with the Court's orders, the Bankruptcy Code,

Case 24-33596 Document 1646 Filed in TXSB on 10/08/26 Page 2 of 64

the Bankruptcy Rules, and the Bankruptcy Local Rules. No other or further notice is necessary or required.

d. The Plan is a plan of liquidation. The filing of the Plan Supplement at Dkt. No. 1615 is accepted as a supplement to the Plan. The Plan provides for the appointment of a Plan Administrator to liquidate the assets of the Estate, prosecute and resolve the Causes of Action, and distribute proceeds to Holders of Allowed Claims in accordance with the Plan, attached herein.

e. The Plan complies with all applicable provisions of the Bankruptcy Code, including 11 U.S.C. §§ 1122 and 1123. 11 U.S.C. § 1129(a)(1). The classification scheme of Claims and Interests is reasonable; Claims or Interests in each particular Class are substantially similar to the other Claims or Interests in such Class.

f. The Debtor, as proponent of the Plan, has complied with all applicable provisions of the Bankruptcy Code, including the disclosure and solicitation requirements of 11 U.S.C. §§ 1125 and 1126. 11 U.S.C. § 1129(a)(2). Votes to accept and reject the Plan were solicited and tabulated fairly, in good faith, and in a manner consistent with the Bankruptcy Code, the Bankruptcy Rules, and the orders of this Court, and the Debtor and its agents and professionals are entitled to the protections of 11 U.S.C. § 1125(e).

g. The Plan has been proposed in good faith and not by any means forbidden by law. 11 U.S.C. § 1129(a)(3).

h. All payments made or to be made by the Debtor or the Plan Administrator for services or for costs and expenses in or in connection with this case, or in connection with the Plan and incident to this case, have been fully disclosed and are reasonable or, if to be fixed after confirmation, will be subject to the approval of the Court. 11 U.S.C. § 1129(a)(4).

i. The identity and compensation of the Plan Administrator and of each Consultant to be retained under the Plan have been fully disclosed. Allison Byman is appointed as Plan Administrator in accordance with Section 5.3 of the Plan and 11 U.S.C. § 1129(a)(5).

j. The Plan does not provide for any rate change subject to regulatory approval. 11 U.S.C. § 1129(a)(6).

k. With respect to each impaired Class of Claims or Interests, each holder of a Claim or Interest in such Class has accepted the Plan or will receive or retain under the Plan on account of such Claim or Interest property of a value, as of the Effective Date, that is not less than the amount such holder would receive or retain if the Debtor were liquidated under chapter 7 of the Bankruptcy Code on the Effective Date. 11 U.S.C. § 1129(a)(7).

l. Classes 1 and 3 are Unimpaired and are conclusively presumed to have accepted the Plan pursuant to 11 U.S.C. § 1126(f). Equal Access Justice Fund, LP and EAJF ESQ Fund, LP (collectively, "EAJF") on the record sought leave of this Court to change its votes in Class 2, and Class 4 from reject to accept. The Court granted such leave and the ballots are accepted by the Court as accepting the Plan.

Class 4, an impaired voting Class, has accepted the Plan by the requisite majorities under 11 U.S.C. § 1126(c) — more than one-half in number and at least two-thirds in amount of the ballots counted.

m. Except to the extent the holder of a particular Claim has agreed to different treatment, the Plan provides for treatment of Administrative Claims, Priority Claims, and Priority Tax Claims in accordance with 11 U.S.C. § 1129(a)(9).

n. The Plan is feasible. Confirmation of the Plan is not likely to be followed by the need for further financial reorganization of the Debtor, because the Plan provides for the orderly liquidation of the Debtor's assets and the wind-down of its affairs. 11 U.S.C. § 1129(a)(11).

o. All fees payable under 28 U.S.C. § 1930 have been paid or will be paid as provided in the Plan and this Order. 11 U.S.C. § 1129(a)(12).

p. The Debtor has no obligations for retiree benefits within the meaning of 11 U.S.C. § 1114, and 11 U.S.C. §§ 1129(a)(13)–(16) are inapplicable or satisfied.

q. With respect to Class 5, and any other impaired Class that has not accepted the Plan, the Plan does not discriminate unfairly and is fair and equitable within the meaning of 11 U.S.C. § 1129(b)(2)(C). Holders of Equity Interests receive no distribution unless and until all Allowed Claims in Classes 1 through 4 are paid in full, and no holder of an interest junior to Class 5 will receive or retain any property under the Plan. The Plan is therefore confirmable notwithstanding the deemed rejection by Class 5.

r. The compromises and settlements embodied in the Plan, including the EAJF Settlement incorporated pursuant to Sections 4.2 and 9.2 of the Plan, are fair, equitable, reasonable, and in the best interests of the Debtor, the Estate, and Holders of Claims and Interests, and satisfy Bankruptcy Rule 9019.

s. The primary purpose of the Plan is not the avoidance of taxes or the avoidance of the requirements of Section 5 of the Securities Act of 1933, as amended.

t. The modifications and clarifications, if any, made to the Plan herein do not adversely change the treatment of the Claim of any creditor or the Interest of any interest holder who has not accepted such modification, and no re-solicitation is required. Fed. R. Bankr. P. 3019.

u. All applicable requirements of 11 U.S.C. § 1129 have been met.

**THE COURT HEREBY ORDERS, ADJUDGES, AND DECREES THAT:**

1. The Disclosure Statement is approved on a final basis to the extent not previously approved.

2. The Plan, as modified by the Plan Modifications set forth in Paragraph 11 of this Order, and each of its provisions are confirmed in all respects in accordance with 11 U.S.C. §§ 1129(a) and (b), regardless of whether specific reference is made herein to any particular article, section, or provision of the Plan. The terms of the Plan are incorporated by reference into, and are an integral part of, this Order. The failure specifically to include or reference any particular provision

of the Plan in this Order shall not diminish or impair the effectiveness of such provision, it being the intent of the Court that the Plan be confirmed and approved in its entirety.

3. The provisions of the Plan and this Order shall be binding upon the Debtor, the Reorganized Debtor, the Plan Administrator, all creditors, all holders of Equity Interests, and all other parties-in-interest, whether or not such parties are impaired under the Plan, have accepted the Plan, have filed proofs of claim, or have had their claims scheduled or allowed. All objections to confirmation that have not been withdrawn or resolved by this Order are overruled and denied.

4. In accordance with 11 U.S.C. § 1127 and Bankruptcy Rule 3019, the Plan as modified by this Order is deemed accepted by each holder of a Claim that voted to accept the Plan, without the need to re-solicit votes, and is deemed accepted by each holder of an unimpaired Claim in accordance with 11 U.S.C. § 1126(f).

5. Allison Byman is appointed as Plan Administrator effective as of the Effective Date, with all rights, powers, and duties set forth in the Plan. On the Effective Date, the authority of all officers, managers, and members of the Debtor shall terminate as provided in Section 5.4 of the Plan, and all management authority shall vest exclusively in the Plan Administrator. Subject to further direction of the Court, the Plan Administrator, the Debtor, and their respective representatives and agents are authorized to enter into, execute, deliver, file, and implement any documents and instruments substantially consistent with or incidental to the Plan, and to take such other steps and perform such other acts as may be necessary, useful, or appropriate to implement and effectuate the Plan and this Order, including making distributions in accordance with the Plan. The Plan Administrator is further authorized pursuant to 11 U.S.C. § 1142(b) to take all actions necessary to consummate the Plan without further application to or order of this Court.

6. Any bank or financial institution holding funds of the Debtor or the Estate is directed to recognize the exclusive signature authority of the Plan Administrator from and after the Effective Date and to deliver control over such funds to the Plan Administrator or her designee upon request.

7. The Plan Modifications set forth in Paragraph 11 of this Order, are approved and shall be effective in accordance with their terms. For the avoidance of doubt, and as provided in Sections 9.3 and 9.9 of the Plan, the Debtor shall not receive a discharge pursuant to 11 U.S.C. § 1141(d)(3), and nothing in the Plan or this Order operates as a third-party discharge or affects the liability of any non-debtor party in contravention of 11 U.S.C. § 524(e).

8. Any holder of an Administrative Claim against the Debtor, other than a Professional, the U.S. Trustee with respect to quarterly fees, or claims arising in the ordinary course, that has not already filed such a claim shall file a proof of such claim or application for payment, with actual service upon counsel for the Debtor, within sixty (60) days after entry of this Order, failing which such claim shall be forever barred and extinguished and the holder thereof shall not be entitled to any distribution or further notices in this case.

9. All pre-confirmation fees owed to the United States Trustee pursuant to 28 U.S.C. § 1930 shall be paid in full on or before the Effective Date. The Plan Administrator shall timely pay post-confirmation quarterly fees assessed pursuant to 28 U.S.C. § 1930(a)(6) until such time as the Court enters a final decree closing this case or an order converting or dismissing this case, and shall file post-confirmation reports in the format prescribed by the United States Trustee.

Case 24-35596 Document 184 Filed in TXSB on 03/08/26 Page 5 of 64

10. **Texas Workforce Commission.** Notwithstanding anything to the contrary in the Plan or this Confirmation Order: (a) the claim of the Texas Workforce Commission ("TWC") for unemployment taxes in the amount of $7,605.39 shall be an Allowed Claim and shall be paid in full in accordance with sections 1129(a)(9)(C) and (D) of the Bankruptcy Code, with interest thereon from the Effective Date until paid at the rate of 7.75% per annum, as determined under 11 U.S.C. § 511, Texas Labor Code § 213.021, and Texas Tax Code § 111.060; (b) the Plan shall not release or discharge any entity, other than the Debtor or the Reorganized Debtor, from any liability owed to the TWC for a tax debt, including interest and penalties on such tax, and this provision is not an admission by any party that any such liability exists; provided, however, that nothing in this Paragraph shall modify, impair, or shorten the stay of actions set forth in Section 5.8 of the Plan, which by its terms is not a release or discharge of any claim and tolls all applicable limitations periods during the Stay Period; (c) the Plan shall not limit the TWC's setoff rights under 11 U.S.C. § 553, and this provision is not an admission by any party that any such setoff rights exist; and (d) a failure by the Reorganized Debtor to make a payment to the TWC pursuant to the terms of the Plan shall be an event of default as to the TWC. If the Reorganized Debtor fails to cure an event of default as to tax payments within ten (10) calendar days after service of written notice of default from the TWC, the TWC may (i) enforce the entire amount of its claim, (ii) exercise all rights and remedies under applicable nonbankruptcy law, and (iii) seek such relief as may be appropriate in this Court. Notice of default shall be served by first class mail upon the Plan Administrator, Allison Byman, at 7924 Broadway, Suite 104, Pearland, TX 77581, and upon counsel for the Reorganized Debtor, Walker & Patterson, P.C., P.O. Box 61301, Houston, TX 77208, Attn: Miriam Goott, Esq. (mgoott@walkerandpatterson.com). The Reorganized Debtor shall be allowed to cure up to two (2) defaults; upon a third default, the TWC, at its option, may declare the default non-curable and proceed to collect the remainder of the debt.

11. Plan Modifications. Pursuant to 11 U.S.C. § 1127(a) and Bankruptcy Rule 3019, and in resolution of the objections to confirmation, the Plan is modified as follows (collectively, the "Plan Modifications"):

> (a) Exculpated Parties (§ 1.1.33). Subsection (c) is deleted in its entirety, such that the Exculpated Parties are (a) the Debtor and (b) the Committee. The final sentence of Section 1.1.33 is unchanged.
>
> (b) Exculpation (§ 9.5). The phrase "any Holder of a Claim or Interest, the Debtor, the Reorganized Debtor, the Estate, or any other Entity" is replaced with "any Person," and the sentence "Each Entity may reasonably rely upon the opinions of its counsel, certified public accountants, and other experts or professionals." is deleted. In addition, the following is added at the end of Section 9.5: "Notwithstanding anything to the contrary in this § 9.5 or in § 9.6, nothing in this Plan limits, impairs, or adjudicates the right of any party to any pending adversary proceeding, civil action, or appeal to which the Debtor is a party to assert, maintain, and fully litigate any prepetition claim, counterclaim, or defense (that is, any claim, counterclaim, or defense arising from acts, omissions, events, or conduct occurring prior to the Petition Date) in such proceeding, solely as it relates to the issues being litigated therein, and all such prepetition claims, counterclaims, and defenses are preserved for adjudication by the court presiding over such proceeding. For the avoidance of doubt, this sentence does not preserve any claim, counterclaim, or defense based on acts

or omissions occurring from the Petition Date to the Effective Date, as to which the exculpation in this § 9.5 continues to apply in accordance with its terms."

(c) Gatekeeper (§ 9.7). The words "and injunction" are deleted in each place they appear, and the sentence "The Court reserves jurisdiction to adjudicate any such claims to the maximum extent provided by applicable law." is deleted.

(d) The provisions of Section 5.8 are further amended to provide that any party may seek relief from the Forbearance, for cause, at any time. The Forbearance shall terminate automatically as to any particular Consultant when and if such Consultant's employment terminates or such Consultant resigns.

(e) Retention of Jurisdiction (§ 11.1). The following proviso is added at the end of the introductory paragraph: "Provided, however, that notwithstanding anything in this Article 11 to the contrary, nothing in the Plan or the Confirmation Order shall (i) expand the jurisdiction of the Bankruptcy Court beyond that permitted by 28 U.S.C. §§ 157 and 1334, (ii) modify, alter, or restrict the jurisdiction of the United States District Court over any adversary proceeding, civil action, or other matter as to which the reference has been, or may hereafter be, withdrawn in whole or in part, or the terms of any order withdrawing the reference, or (iii) affect the jurisdiction of any appellate court over any pending appeal or matters subject to the divestiture rule."

(f) Class 5 Waterfall (§ 4.5). The duplicated second sentence is deleted.

(g) No Discharge (§ 9.1). The following is added: "For the avoidance of doubt, nothing in this Section 9.1 or any other provision of the Plan grants, or shall be construed to grant, a discharge to the Debtor or any other Entity; Section 9.3 of the Plan governs, and the Debtor shall not receive a discharge pursuant to Section 1141(d)(3) of the Code."

(h) Executory Contracts (§ 6.1). The second sentence is deleted and replaced with the assumption and cure provisions set forth in the Plan Supplement (Exhibit C), including the identification of assumed handling-firm contracts, proposed cure amounts of $0.00, an objection deadline at the commencement of the Confirmation Hearing, determination of any disputed cure by the Court, a rejection election, and mutual preservation of all claims and defenses.

(i) Conflicts (§ 13.9). The following is added: "Provided, however, that in the event of any conflict or inconsistency between the terms of the Plan and the terms of the Confirmation Order, the terms of the Confirmation Order shall govern and control."

(j) Governing Law (§ 13.2). The following is added: "Nothing in this Section 13.2 determines, or shall be construed to determine, the substantive law governing any Cause of Action, Claim, or defense asserted in any adversary proceeding, civil action, or other litigation, which shall be determined by the court presiding over such matter under applicable choice-of-law principles."

(k) Litigation Neutrality. Nothing in the Plan or this Confirmation Order determines any substantive issue in, or enlarges or diminishes any party's claims, rights, or defenses in, any pending adversary proceeding, civil action, or appeal.

(l) Rule 3019. The Court finds that the Plan Modifications do not adversely change the treatment of the Claim of any creditor or the Interest of any equity security holder who has accepted the Plan; pursuant to Bankruptcy Rule 3019, the Plan as modified is deemed accepted by all creditors and equity security holders who previously accepted the Plan, and no further disclosure or re-solicitation is required.

(m) McClenny Preservation. Notwithstanding anything to the contrary in this Confirmation Order, the Chapter 11 Plan, the Disclosure Statement, any order finally approving the Disclosure Statement, or any plan-related document whatsoever, including, for the removal of doubt, the EAJF/MMA settlement at ECF # 683 (collectively, "Any Plan Document") — nothing in Any Plan Document impairs, diminishes, or in any manner negatively impacts the rights, claims, and defenses of James Marshall McClenny ("McClenny") with respect to any claims pursued against McClenny by EAJF Justice Fund, LP (a/k/a Equal Access Justice Fund, LP) or EAJF ESQ Fund, LP. For the avoidance of doubt, and notwithstanding anything to the contrary in Any Plan Document, to the extent that Any Plan Document stays or otherwise delays McClenny's ability to pursue any claims or rights against John Zachary Moseley, such claims or rights are tolled as set forth in Section 5.8 of the Plan (if and as modified by this Order).

(n) Moseley Escrowed Funds and Reporting. Notwithstanding anything to the contrary in the Plan or this Order: (i) any funds awarded to John Zachary Moseley ("Moseley") from the funds currently held in escrow with Stout shall be deposited into the registry of the state family law court; (ii) Moseley shall provide monthly financial reporting in such form and content as determined by the Plan Administrator, Allison Byman; and (iii) such financial reporting shall be shared with the Oversight Committee, subject to a confidentiality agreement, and with any third party requesting disclosure of such reporting after such third party has executed a confidentiality order.

(o) Divorce Case. The Forbearance contemplated in this Order and in the Plan shall not apply to the pending divorce proceedings in Cause No. 2023-44970 in the Matter of the Marriage of Jayne Elizabeth Moseley and John Zachary Moseley (the "Divorce Case") to allow a division of the marital estate and the entry of a decree of divorce, and nothing in this Order prohibits Cause No. 2023-44970 from proceeding to a final resolution on the merits as between John Zachary Moseley and Jayne Elizabeth Moseley, and including EAJF Justice Fund, LP and EAJF Esq Fund, LP from proceeding to prosecute its claims, entry of judgment or other post-judgment remedies against Jayne Elizabeth Moseley until after the Divorce Court renders a final division of the marital estate.

(p) Injunction Redesignated as Forbearance (§ 5.8). By agreement of the Debtor, Equal Access Justice Fund, LP, EAJF ESQ Fund, LP, Access Restoration Services US, Inc., (collectively, the "Consenting Parties"), Section 5.8 of the Plan is amended to redesignate the injunction set forth therein as a forbearance, and the heading of Section 5.8 is amended from "Injunction" to "Forbearance." All references in the Plan, this Order, or any plan-related document to the "injunction" set forth in Section 5.8 shall be deemed to be, and shall be construed as, references to the Forbearance. As so redesignated, Section 5.8 operates as a plan-based obligation of all Persons and Entities bound by the Plan and this Order pursuant to 11 U.S.C. § 1141(a) to forbear from commencing or continuing the actions described therein, enforceable by this Court as a provision of the Plan and this

Order, and shall not constitute, and shall not be construed as, an injunction within the meaning of Bankruptcy Rule 7001(g) or Rule 65 of the Federal Rules of Civil Procedure, and no adversary proceeding is or was required with respect thereto. Except as expressly set forth in this subsection, the scope, duration, parties, and terms of Section 5.8 are unchanged, and nothing herein expands or diminishes the rights or obligations of any party thereunder.

(q) EAJF designation to the Oversight Board is David Childers.

12. Pursuant to 11 U.S.C. § 1146(a), the issuance, transfer, or exchange of any security under the Plan, or the making or delivery of any instrument of transfer of an asset pursuant to or under the Plan, shall not be taxed under any law imposing a stamp tax or other similar tax.

13. After entry of this Order, pleadings need only be served upon the United States Trustee, counsel for the Reorganized Debtor, any party directly affected by the pleading and its counsel, if known, and all persons on the Bankruptcy Rule 2002 service list maintained in accordance with Section 13.8 of the Plan.

14. Except as otherwise provided herein or in the Plan, distributions to creditors shall be made in accordance with the provisions of the Plan and Bankruptcy Rule 3003(c)(2).

15. In the event and to the extent any provision of this Order is determined to be inconsistent with any provision of the Plan or the Disclosure Statement, this Order shall control and take precedence.

16. The reversal or modification of this Order on appeal shall not affect the acts taken pursuant to the Plan or this Order as to the Debtor or any other person acting in good faith, whether or not such person knows of the appeal, unless this Order is stayed pending appeal. For good cause shown, any stay of this Order under Bankruptcy Rule 3020(e) is waived, and this Order shall be effective immediately upon its entry. The Effective Date of the Plan shall occur in accordance with the terms of the Plan, and the Reorganized Debtor shall file a notice of the occurrence of the Effective Date and serve notice of entry of this Order upon all known holders of Claims and Interests within seven (7) days of the Effective Date.

17. Pursuant to 11 U.S.C. § 1127(b), the Debtor may propose modifications to the Plan after entry of this Order and prior to substantial consummation, if circumstances warrant, upon notice and a hearing.

18. The Court shall retain jurisdiction over this chapter 11 case in accordance with Article 11 of the Plan and applicable law, including jurisdiction to interpret and enforce the provisions of the Plan and this Order.

**SIGNED Wednesday, August 5, 2026**

**Eduardo V. Rodriguez**
**Chief United States Bankruptcy Judge**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| **IN RE:** | § | |
| | § | |
| **MMA LAW FIRM, PLLC** | § | **CASE NO. 24-31596** |
| | § | |
| **DEBTOR** | § | **CHAPTER 11** |

# THIRD AMENDED JOINT PLAN OF LIQUIDATION

**MMA Law Firm, PLLC,** the debtor in this case ("Debtor") and the official committee of unsecured creditors appointed in this case (the "Committee")[1] jointly propose the following Amended Plan of Liquidation (the "Plan") pursuant to the provisions of Chapter 11 of the Bankruptcy Code, 11 U.S.C. §§ 1101 *et seq.*:

## INTRODUCTION

Pursuant to Section 1121(c) of the Code, the Debtor and the Committee respectfully propose this Plan for the resolution of the outstanding Claims against, and Interests in, the Debtor. Each of the Debtor and the Committee is a proponent of the Plan within the meaning of Section 1129 of the Code. Reference is made to the Disclosure Statement, distributed contemporaneously with this Plan, for a discussion of the Debtor's history, assets, and operations; a summary and analysis of this Plan; and certain related matters.

This is a Plan of Liquidation. Upon the Effective Date, MMA Law Firm, PLLC shall cease operations as an active law firm. The Plan does not contemplate and does not provide for the Debtor continuing as a going concern. The Debtor will not receive a discharge under this Plan. The Plan Administrator shall be vested with sole authority to liquidate all assets of the Estate, pursue and resolve all Causes of Action, make distributions to Holders of Allowed Claims in accordance with the priority scheme set forth herein, and take all steps necessary to wind down and dissolve the Debtor. The retention of certain former personnel as Consultants is solely to assist the Plan Administrator in the liquidation of prepetition assets and claims and shall not be construed as a continuation of the Debtor's law firm operations in any form.

Nothing contained herein shall constitute an offer, an acceptance, or a legally binding obligation of any party of interest. This Plan is subject to approval of the Court and other customary conditions. This Plan is not an offer with respect to any securities. This is not a solicitation of acceptances or rejections of the Plan. Acceptances or rejections with respect to this Plan may not be solicited until a disclosure statement has been approved by the Court in accordance with Section 1125 of the Code. Such a solicitation will only be made in compliance with applicable provisions of securities and bankruptcy laws. YOU SHOULD NOT RELY ON THE INFORMATION CONTAINED IN, OR THE TERMS OF, THIS PLAN FOR ANY PURPOSE PRIOR TO THE CONFIRMATION OF THIS PLAN BY THE COURT.

ALL HOLDERS OF CLAIMS, TO THE EXTENT APPLICABLE, ARE ENCOURAGED TO READ THIS PLAN AND THE DISCLOSURE STATEMENT IN THEIR ENTIRETY.

[1] The Committee was appointed by the United States Trustee for the Southern District of Texas on April 30, 2024. *See* ECF No. 23.

# 1. DEFINITIONS

1.1. The following terms, when used in the Plan, shall unless the context otherwise requires, have the meanings set forth below. Any term used but not defined in this Plan that is defined in the Code or Bankruptcy Rules as the case may be, shall have the meaning ascribed in the Code or Bankruptcy Rules. Whenever the context requires, such terms shall include the plural as well as the singular. The masculine gender shall include the feminine and the feminine gender shall include the masculine.

1.1.1. **ADMINISTRATIVE EXPENSE or ADMINISTRATIVE CLAIM:** means an Allowed Claim for which a Creditor asserts and is determined to be entitled to priority pursuant to Sections 503(b), 365(d)(5), 507(a)(2) or 1114(e)(2) of the Bankruptcy Code, including: (a) the actual and necessary costs and expenses incurred after the Petition Date of preserving the Estates and operating the business of the Debtor (such as wages and salaries or commissions for services and payments for goods and other services and leased premises); (b) any indebtedness or obligations incurred or assumed by the Debtor after the Petition Date in the ordinary course of business in connection with the conduct of its business; (c) any Professional Fee Claims incurred before the Effective Date; and (d) obligations designated as Allowed Administrative Claims pursuant to an order of the Court.

1.1.2. **ADMINISTRATIVE CLAIMS BAR DATE:** means the first Business Day that is forty-five (45) days after the Effective Date.

1.1.3. **AFFILIATE:** has the meaning prescribed in Section 101(2) of the Code.

1.1.4. **ALLOWED AMOUNT:** means the Allowed amount of any Claim.

1.1.5. **ALLOWED CLAIM:** means, any Claim (or portion thereof):

- (a) that is evidenced by a proof of Claim that has been timely filed by the applicable Claims Bar Date; and (b) as to which the Debtor or any other party in interest has not timely filed an objection within the applicable period of time fixed by the Plan, the Code, the Bankruptcy Rules, or the Court, or such objection to the Claim has been overruled and the Claim allowed by a Final Order;

- (a) that has been scheduled by the Debtor in its Schedules as other than unknown, disputed, contingent, or unliquidated and for which no proof of Claim has been timely filed; and (b) as to which the Debtor or any other party in interest has not timely filed an objection within the applicable period of time fixed by the Plan, the Code, the Bankruptcy Rules, or the Court, or such objection to the Claim has been overruled and the Claim allowed by Final Order;

- that has been allowed by a Final Order;

- that is allowed (i) in any stipulation with the Debtor concerning the amount

and nature of such Claim executed prior to the Confirmation Date and approved by the Court upon proper notice to the Debtor and other parties in interest; (ii) in any stipulation with a Debtor concerning the amount and nature of such Claim executed on or after the Confirmation Date and, to the extent necessary, approved by the Court;

- relating to a rejected Executory Contract or Unexpired Lease that (i) is not a Disputed Claim or (ii) has been allowed by a Final Order, in either case only if a proof of Claim has been timely filed; or

- that is allowed pursuant to the terms of the Plan.

- For purposes of computing distributions under the Plan, the term "Allowed Claim" shall not include costs, fees, charges, interest, penalties, premiums, or other similar amounts in respect of Claims from and after the Petition Date, except as expressly provided in the Plan or in another Final Order of the Court.

1.1.6. **APPROVAL ORDER:** means the Final Order approving the Disclosure Statement.

1.1.7. **AVAILABLE FUNDS:** means, with respect to each category of Estate asset, the Estate's retained share of the proceeds of such asset after giving effect to the allocation of such proceeds between the Estate and EAJF under the EAJF Settlement. Available Funds shall be applied to pay Permitted Expenses and Allowed Claims in accordance with the priority and distribution provisions of the Plan and, after satisfaction of all senior Allowed Claims and Permitted Expenses, constitute GUC Funds available for distribution to Holders of Allowed Class 4 Claims.

1.1.8. **BALLOT:** means the applicable form or forms of ballot(s) to be distributed to Holders of Claims entitled to vote on the Plan and on which the acceptance or rejection of the Plan is to be indicated.

1.1.9. **BANKRUPTCY CODE:** means the United States Bankruptcy Code, as contained in Title 11 U.S.C. Section 101 *et seq*. and amendments thereto.

1.1.10. **BANKRUPTCY COURT:** the United States Bankruptcy Court for the Southern District of Texas, Houston Division.

1.1.11. **BANKRUPTCY RULES:** means the Federal Rules of Bankruptcy Procedure, as amended, and any local or successor rules.

1.1.12. **BAR DATE:** the deadline previously established by the court, after which any proof of claim filed will have no effect on this Plan and no right to participate with other creditors under the Plan. In the instant case, the Bar Date was August 13, 2024 for all creditors (except a governmental unit), and October 7, 2024 for a governmental unit.

1.1.13. **BUSINESS DAY:** means any day other than a Saturday, Sunday, or a "legal holiday" (as defined in Bankruptcy Rule 9006(a)).

1.1.14. **CAUSES OF ACTION:** means all of the Debtor's actions, causes of action, choses in action, liabilities, suits, debts, dues, sums of money, accounts, reckonings,

bonds, bills, covenants, contracts, controversies, agreements, promises, variances, trespasses, damages, judgments, third party claims, counterclaims, and crossclaims, whether known or unknown, reduced to judgment or not reduced to judgment, liquidated or unliquidated, contingent or non-contingent, matured or unmatured, disputed or undisputed, secured or unsecured, assertable directly or derivatively, existing or hereafter arising, in law, equity or otherwise, based in whole or in part upon any act or omission or other event occurring prior to the Petition Date or during the course of the Case, through and including the Effective Date, including, but not limited to, the Chapter 5 Causes of Action and all causes of action listed in the Schedule of Retained Causes of Action to be filed as part of the Plan Supplement.

1.1.15. **CHAPTER 5 CAUSES OF ACTION:** means (i) any and all actions that are filed or that may be filed pursuant to the provisions of Sections 502(d), 510(c), 542, 544, 545, 547, 548, 549, 550, 551, and 553 of the Code, or applicable non-bankruptcy law that may be incorporated or brought under the foregoing Sections of the Code or (ii) any other similar actions or proceedings filed to recover property for or on behalf of the Estates or to avoid a Lien, transfer or obligation.

1.1.16. **CLAIM:** means any obligation for which any Debtor or its property is liable and as defined in Sections 101(5) or 102(2) of the Code.

1.1.17. **CLAIMS BAR DATE:** means the deadlines previously established by the Court for filing certain proofs of Claim, which was August 13, 2024 for all creditors (except a governmental unit), and October 7, 2024 for a governmental unit.

1.1.18. **CLASS:** means a category of Claims or Interests as described in the Plan pursuant to Section 1122(a) of the Code.

1.1.19. **CONFIRMATION:** means the Court's entry of the Confirmation Order on the docket of the Case, subject to all conditions precedent thereto specified in Section 10.1 of the Plan having been (a) satisfied or (b) waived.

1.1.20. **CONSULTANTS:** means John Zachary Moseley, Katy Ohlsson, and Morgan Weaver-Gallacher, who have agreed to provide wind-down consulting services to the Plan Administrator and the Estate pursuant to Section 5.5 of this Plan.

1.1.21. **CONFIRMATION DATE:** means the first date on which Confirmation occurs.

1.1.22. **CONTINGENCY CASES:** means all cases, matters and proceedings for which the Debtor acted as counsel for clients that are not included in the Mass Tort Dockets or the Miscellaneous Cases, including without limitation those cases identified in Exhibit D to the EAJF Settlement (including for the avoidance of doubt all Chapter 5 Causes of Action), which generally includes cases, matters and proceedings for which the Debtor did anticipate (at the time of the EAJF Settlement) a need for the services of outside counsel in order to collect fees owed to the Debtor.

1.1.23. **CREDITOR:** has the meaning prescribed in Section 101(10) of the Code.

1.1.24. **DEBTOR:** MMA Law Firm, PLLC.

1.1.25. **DISCLOSURE STATEMENT:** means a Disclosure Statement as described in Section 1125 of the Code and contemporaneously filed with this Plan.

1.1.26. **DISPUTED CLAIM:** means a Claim, including an Administrative Expense, against the Debtor (a) as to which an objection has been filed on or before the deadline for objecting to a Claim by the Debtor or any party in interest and which objection has not been withdrawn or resolved by entry of a Final Order or the submission of a stipulation and agreed order, or (b) which is listed as contingent,

unliquidated or disputed in the Debtor's Schedules.

1.1.27. **EAJF**: means Equal Access Justice Fund, LP and EAJF ESQ, LP, collectively.

1.1.28. **EAJF FUNDS**: means net proceeds allocated to EAJF pursuant to the EAJF Settlement.

1.1.29. **EAJF SETTLEMENT:** means that certain Settlement Agreement by and among EAJF, the Debtor and the Committee filed at ECF No. 588, as approved by that certain 9019 Order at ECF No. 683.

1.1.30. **EFFECTIVE DATE:** means the first date on which all of the conditions of Section 10.2 of the Plan have been satisfied or have been waived in writing and the Debtor and the Committee declare the Plan effective by the filing of a notice on the docket in the case. For the avoidance of doubt, any action to be taken on the Effective Date may be taken on or as soon as reasonably practicable thereafter.

1.1.31. **ENTITY:** has the meaning set forth in Section 101(15) of the Code.

1.1.32. **ESTATE:** means the estate created by Section 541 of the Bankruptcy Code upon the commencement of this case under Chapter 11 of the Bankruptcy Code with respect to the Debtor.

1.1.33. **EXCULPATED PARTIES:** means, collectively, and in each case, in its capacity as such: (a) the Debtor, (b) the Committee; and (c) with respect to each of the foregoing, such Entity's and its current and former equity holders, subsidiaries, officers, directors, managers, principals, members, employees, agents, advisors, advisory board members, financial advisors, partners, attorneys, accountants, investment bankers, consultants, representatives, and other professionals, in each case acting in such capacity at any time on or after the Petition Date. Notwithstanding the foregoing, nothing in the Plan shall release, or impair any Cause of Action of the Estate against any insider (including John Zachary Moseley), all of which Causes of Action are expressly preserved.

1.1.34. **EXECUTORY CONTRACT:** means an executory contract or unexpired lease as such terms are used in Section 365 of the Code, including all leases and contracts to which the Debtor is a party or beneficiary.

1.1.35. **FINAL ORDER:** means an order which has not been reversed, modified or amended and not being stayed, and the time to appeal from which or to seek review or rehearing of which having expired, has become conclusive of all matters adjudicated thereby and is in full force and effect.

1.1.36. **GENERAL UNSECURED CLAIM:** means any Claim against the Debtor other than Priority Claims or Secured Claims.

1.1.37. **GUC FUNDS:** means all proceeds of Estate assets held or received at any time by the Plan Administrator, including those proceeds that are not EAJF Funds, after (i) satisfaction of all Allowed Administrative Claims, Allowed Priority Tax Claims, Allowed Other Priority Claims and Allowed Other Secured Claims in accordance with the Plan, and (ii) payment of Permitted Expenses (including any appropriate Reserves for anticipated Permitted Expenses).

1.1.38. **HOLDER:** means any Entity holding a Claim or an Interest.

1.1.39. **IMPAIRED:** means, with respect to any Class of Claims or Interests, a Class of Claims or Interests that is impaired within the meaning of Section 1124 of the

Code.

1.1.40. **INSIDER:** has the meaning set forth in Section 101(31) of the Code.

1.1.41. **INTERESTS:** means any membership, equity or similar interest in the Debtor.

1.1.42. **LIEN:** means a lien, security interest, or other interest or encumbrance as defined in Section 101(37) of the Code.

1.1.43. **MASS TORT DOCKETS:** means the Debtor's claims, rights and interests (including any right to referral fees or other fees) in respect of those certain "mass tort" cases identified in Exhibit A to the EAJF Settlement, which generally include cases on behalf of numerous individual clients in or related to the following: (i) In re: Roundup Products Liability Litigation (MDL No. 2741) (a/k/a "Roundup"); (ii) In Re: Zantac (Ranitidine) Products Liability Litigation (MDL No. 2924) (a/k/a "Zantac"); (iii) In re Acetaminophen – ASD-ADHD Products Liability Litigation (MDL No. 3043) (a/k/a "APAP" or "Tylenol"); and (iv) In Re: Abbott Laboratories, et al., Preterm Infant Nutrition Products Liability Litigation (MDL No. 3026) (a/k/a "NEC"). Notwithstanding the foregoing, the Debtor's position in the Zantac docket was sold during the Case; the net proceeds of that sale (approximately $1,250,000.00) are allocated twenty-five percent (25%) to the Estate and seventy-five percent (75%) to EAJF under the EAJF Settlement, and the Debtor's remaining Mass Tort Dockets consist of the Roundup, APAP/Tylenol, and NEC dockets.

1.1.44. **MISCELLANEOUS CASES:** means those cases identified in Exhibits B and C to the EAJF Settlement, which generally include various personal injury cases for which the Debtor did not anticipate (at the time of the EAJF Settlement) a need for the services of outside counsel in order to collect fees owed to the Debtor.

1.1.45. **NON-WP CASES:** means the cases identified on Exhibit B to the EAJF Settlement, generally the first-party property and storm-insurance contingency-fee matters that are not WP Cases. Proceeds of the Non-WP Cases are allocated ten percent (10%) to the Estate and ninety percent (90%) to EAJF under the EAJF Settlement.

1.1.46. **OTHER PRIORITY CLAIM:** means any Priority Claim that is not (a) an Administrative Claim, (b) a Professional Fee Claim, or (c) a Priority Tax Claim.

1.1.47. **OTHER SECURED CLAIM:** means any Secured Claim other than the Secured Claim of EAJF.

1.1.48. **OVERSIGHT COMMITTEE**: means the committee established pursuant to this Plan, comprising one (1) representative of Equal Access Justice Fund, LP and EAJF ESQ, LP (collectively, "EAJF"), and two (2) members designated by the Unsecured Creditors Committee, with the rights and duties set forth in this Plan, including the right to request information from the Plan Administrator and to bring objections to the Bankruptcy Court if the Oversight Committee disagrees with the business judgment of the Plan Administrator. The Oversight Committee's costs and expenses shall not be paid by the Estate or the Debtor.

1.1.49. **PERMITTED EXPENSES:** means the following categories of expenses which the Plan Administrator is authorized to pay from Estate funds from and after the Effective Date: (i) Plan Administrator compensation as provided in Section 5.19 of this Plan; (ii) Consultant compensation as set forth in Section 5.5 of this Plan; (iii) reasonable fees and expenses of Court-approved professionals retained by the Plan Administrator, including Walker & Patterson, P.C. in its capacity as special litigation counsel; (iv) insurance premiums for professional liability tail coverage,

malpractice coverage, and directors and officers coverage for the Plan Administrator; (v) document storage and records management costs necessary to satisfy the Debtor's ethical obligations with respect to client files under applicable Texas law and rules of professional conduct; (vi) costs of dissolution of MMA Law Firm, PLLC under Texas law, including registered agent fees and state filing fees; (vii) U.S. Trustee fees payable pursuant to 28 U.S.C. § 1930; (viii) litigation costs and expenses; and (ix) any other expense reasonably determined by the Plan Administrator to be necessary for the orderly liquidation of the Estate. No funds of the Estate shall be used for ongoing general firm overhead, office rent or lease payments, employee salaries or benefits, marketing or business development costs, or any expense associated with operating MMA Law Firm, PLLC as a going concern except as otherwise provided in this Plan or as may be temporarily necessary to wind down the Debtor in the judgment of the Plan Administrator.

1.1.50. **PERSON(S):** has the meaning set forth in Section 101(41) of the Code.

1.1.51. **PETITION DATE:** means the date on which the Debtor filed its Petition for relief under Chapter 11 of the Bankruptcy Code, which date is April 9, 2024.

1.1.52. **PLAN SUPPLEMENT**: means the ancillary documents necessary to the implementation and effectuation of the Plan, including the identity of the members of the Oversight Committee, which shall be Filed on or before the date that is fourteen (14) days prior to the hearing on Confirmation.

1.1.53. **PRIORITY CLAIM:** means a Claim for which a Creditor asserts and is determined to be entitled to priority under Section 507(a) and 503(b) of the Bankruptcy Code.

1.1.54. **PRIORITY TAX CLAIM:** means a Priority Claim of a Governmental Unit of the kind specified in Section 507(a)(8) of the Code.

1.1.55. **PROFESSIONAL:** means any Entity (a) employed in the case by the Estate or the Committee pursuant to a Final Order in accordance with sections 327, 328, 363 or 1103 of the Bankruptcy Code or (b) for which compensation or reimbursement has been Allowed by the Court in the case for services to the Estate, and expenses incurred in connection with such services, pursuant to section 503(b)(4) of the Bankruptcy Code.

1.1.56. **PRO RATA SHARE:** means the amount which is the result of multiplying the monies available for distribution to a named Class of Creditors by that fraction in which the numerator is the Allowed Amount of a particular Claim in the named Class and the denominator is the total of the Allowed Amounts of all the Claims in the named Class.

1.1.57. **REORGANIZED DEBTOR:** means the Debtor after the Effective Date.

1.1.58. **RESERVE CAP:** means the aggregate amount of Reserves that the Plan Administrator may establish and hold from Available Funds for anticipated or contingent Permitted Expenses (including Plan Administrator and professional compensation, insurance premiums, U.S. Trustee fees, and litigation costs) before making distributions to Holders of Allowed Claims, subject to review by the Oversight Committee and to adjustment by the Bankruptcy Court for cause. "Reserves" means the amounts so held.

1.1.59. **SECURED CLAIM:** means a Claim: (a) secured by a Lien on property in which the Estates have an interest, which Lien is valid, perfected, and

enforceable under applicable law or by reason of a Final Order, or that is subject to setoff under Section 553 of the Code, to the extent of the value of the Holder's interest in the Estate's interest in such property or to the extent of the amount subject to setoff, as applicable, as determined pursuant to Section 506(a) of the Code or (b) otherwise Allowed pursuant to the Plan as a Secured Claim.

1.1.60. **TWO CASES:** means the two cases identified on Exhibit C to the EAJF Settlement. Proceeds of the Two Cases are allocated ten percent (10%) to the Estate and ninety percent (90%) to EAJF under the EAJF Settlement; provided, however, that EAJF's ninety percent (90%) share is deferred for one (1) year following the Confirmation Date, during which one-year period one hundred percent (100%) of the Two Cases proceeds constitute Available Funds available for distribution to Holders of Allowed Class 4 Claims.

1.1.61. **UNIMPAIRED:** means a Claim or Interest that is unimpaired within the meaning of Section 1124 of the Code.

1.1.62. **WP CASES:** means the Contingency Cases and other fee-recovery matters prosecuted by Walker & Patterson, P.C. as special litigation counsel to the Estate. Proceeds of the WP Cases are allocated ninety-five percent (95%) to the Estate and five percent (5%) to EAJF under the EAJF Settlement, and special litigation counsel is compensated at forty percent (40%) of the amounts recovered, payable from the Estate's share.

1.2. Rules of Interpretation and Construction of Terms. For purposes of the Plan: (i) any reference in the Plan to an existing document or exhibit filed or to be filed means that document or exhibit as it may have been or may be amended, supplemented, or otherwise modified; (ii) unless otherwise specified, all references in the Plan to sections, articles, and exhibits are references to sections, articles, or exhibits of the Plan; (iii) the words "herein," "hereof," "hereto," "hereunder," and other words of similar import refer to the Plan in its entirety and not to any particular portion of the Plan; (iv) captions and headings contained in the Plan are inserted for convenience and reference only and are not intended to be part of or to affect the interpretation of the Plan; (v) wherever appropriate from the context, each term stated in either the singular or the plural includes the singular and the plural, and pronouns stated in the masculine, feminine, or neuter gender shall include the masculine, feminine, and neuter gender; (vi) unless otherwise specified, all references in the Plan to exhibits are references to the exhibits in the Plan Supplement; (vii) any reference to an Entity as a Holder of a Claim or Interest includes the Entity's successors and assigns; (viii) any reference to docket numbers of documents filed in the Case are references to docket numbers under the Court's CM/ECF system; and (ix) the rules of construction outlined in Section 102 of the Code and in the Bankruptcy Rules apply to the Plan.

1.3. Computation of Time. Unless otherwise specifically provided herein, in computing any period, date, or deadline prescribed or allowed in the Plan, the provisions of Bankruptcy Rule 9006(a) shall apply. If the date on which a transaction may or must occur pursuant to the Plan shall occur on a day that is not a Business Day, then such transaction shall instead occur on the next succeeding Business Day.

1.4. Governing Law. Subject to the provisions of any contract, certificate of incorporation, by-law, instrument, release, or other agreement or document entered into in connection with the Plan, the rights and obligations arising pursuant to the Plan shall be governed by, and construed and enforced in accordance with, applicable federal law, including the Code and Bankruptcy Rules.

1.5. Reference to Monetary Figures. All references in the Plan to monetary figures shall refer to currency of the United States of America, unless otherwise expressly provided.

## 2. ADMINISTRATIVE CLAIMS AND PRIORITY CLAIMS

In accordance with Section 1123(a)(1) of the Code, Administrative Claims, Professional Fee Claims, and Priority Tax Claims have not been classified and, thus, are excluded from the Classes of Claims and Interests set forth in Article 3 of the Plan.

2.1. Administrative Claims. Unless a holder agrees to less favorable treatment, each Holder of an Allowed Administrative Claim (including all Professional Fee Claims and Claims for fees and expenses pursuant to Section 1930 of Chapter 123 of Title 28 of the United States Code) shall be paid in full in cash on the later of (a) the Effective Date, or (b) the date on which such Administrative Expense Claim becomes an Allowed Administrative Claim, or as soon as reasonably practicable thereafter. Alternatively, all Allowed Administrative Claims (excluding Professional Fee Claims and Claims for fees and expenses pursuant to Section 1930 of Chapter 123 of Title 28 of the United States Code), may be assumed by the Reorganized Debtor and paid in the ordinary course.

Except for Professional Fee Claims, unless previously filed, requests for payment of Administrative Claims must be filed and served on the Debtor no later than forty-five (45) days after the Effective Date. Objections to such requests must be filed and served on the Debtor and the requesting party by the date that is seventy-five (75) days after the Effective Date. After notice and a hearing in accordance with the procedures established by the Code and prior Court orders, the Allowed Amounts, if any, of Administrative Claims shall be determined by, and satisfied in accordance with an order of the Court.

Holders of Administrative Claims that are required to file and serve a request for such payment of such Administrative Claims that do not file and serve such a request by the Administrative Claims Bar Date shall be forever barred, estopped, and enjoined from asserting such Administrative Claims against the Debtor or its property, and such Administrative Claims shall be deemed discharged as of the Effective Date without the need for any objection from the Debtor or any action by the Court.

2.2. Professional Fee Claims.

2.2.1. Final Fee Applications and Payment of Professional Fee Claims. All requests for payment of Professional Fee Claims for services rendered and reimbursement of expenses incurred prior to the Effective Date must be filed and served on the

Debtor, the U.S. Trustee and their counsel no later than forty-five (45) days after the Effective Date, unless otherwise ordered by the Court. Objections to applications of such Professionals or other entities for compensation or reimbursement of expenses must be filed and served on the U.S. Trustee, the Debtor, the Committee, and the requesting Professional or other entity no later than seventy-five (75) days after the Effective Date. The Court shall determine the Allowed Amounts of such Professional Fee Claims after notice and a hearing in accordance with the procedures established by the Court. The Debtor shall pay Professional Fee Claims in Cash in the amount the Court allows by Final Order as soon as reasonably practicable thereafter or at such time and upon such terms as may be agreed upon by such holder and the Debtor.

2.2.2. Post-Effective Date Fees and Expenses. Except as otherwise specifically provided in the Plan, from and after the Effective Date, the Reorganized Debtor shall, in the ordinary course of business, subject to the requirements of Section 5.11 of this Plan and the Permitted Expenses definition, pay only Permitted Expenses related to implementation of the Plan. From and after the Effective Date, the retention of any Professional by the Plan Administrator shall require Court approval as set forth in Section 5.11 of this Plan, and the Plan Administrator may pay any Court-approved Professional in accordance with the terms of the Court order authorizing such retention, subject to the Oversight Committee's rights as set forth in Section 5.11 of this Plan.

2.2.3. Treatment of Contingency Fee Arrangement of Debtor's Counsel and Broker. Bankruptcy counsel for the Debtor (Walker & Patterson P.C.) and Debtor's broker (David Middleman) each shall continue to be employed pursuant to the terms previously approved by the Court. Neither shall be required to file a Final Fee Application , but shall be required to file and serve applications for compensation and obtaining orders approving such compensation prior to receiving payment of fees and/or expenses throughout the term of this Plan.

2.3. Priority Tax Claims. Except to the extent that a Holder of an Allowed Priority Tax Claim and the Debtor, against which such Allowed Priority Tax Claim is asserted agree to less favorable treatment for such Holder, each Holder of an Allowed Priority Tax Claim shall receive, in full and final satisfaction, settlement, release, and discharge of, and in exchange for, such Allowed Priority Tax Claim, treatment in a manner consistent with Section 1129(a)(9)(C) of the Code.

## 3. CLASSIFICATION

3.1. All Claims and Interests against the Debtor of whatever nature, whether or not scheduled, liquidated or unliquidated, absolute or contingent, including all Claims arising from transactions of the Company or rejection of executory contracts and/or unexpired leases and all Interests arising from the ownership of the Company, whether resulting in an Allowed Claim or not, shall be bound by the provisions of this Plan. The Claims and Interests are hereby classified as follows:

| Class | Claims and Interests | Status | Voting Rights |
|---|---|---|---|
| Class 1 | Other Priority Claims | Unimpaired | Not Entitled To Vote (Deemed To Accept) |
| Class 2 | Secured Claim of EAJF | Impaired | Entitled To Vote |
| Class 3 | Other Secured Claims | Unimpaired | Not Entitled To Vote (Deemed To Accept) |
| Class 4 | General Unsecured Claims | Impaired | Entitled To Vote |
| Class 5 | Equity Interests | Impaired | Entitled To Vote (Deemed To Reject) |

## 4. TREATMENT

4.1. Class 1 (Other Priority Claims). Class 1 consists of any Allowed Other Priority Claims against the Debtor. Each Holder of a Class 1 Claim will be paid on the later of: (i) the Effective Date or as soon as practicable thereafter or (ii) if such Claim is not Allowed as of the Effective Date, no later than thirty (30) days after the date on which an order allowing such Claim becomes a Final Order, or as soon as reasonably practicable thereafter, or at such time and upon such terms as may be agreed upon by such holder and the Debtor. Except to the extent that a Holder of a Class 1 Claim and the Debtor agree to less favorable treatment for such Holder, each Holder of an Allowed Other Priority Claim shall receive, in full and final satisfaction, compromise, settlement, release, and discharge of and in exchange of such Claim, one of the following treatments, in the sole discretion of the Debtor: (i) full payment in cash of its Allowed Priority Claim or (ii) treatment of its Allowed Priority Claim in a manner that leaves such Claim Unimpaired. The Holders of Claims in Class 1 are **Unimpaired.** In accordance with Section 1126(f) of the Code, the Holders of these Claims are conclusively presumed to accept this Plan and are not entitled to vote to accept or reject this Plan, and the votes of such Holders will not be solicited.

4.2. Class 2 (Secured Claim of EAJF). Class 2 consists of the Secured Claim of EAJF, which is deemed Allowed in the amount of $25 million pursuant to the terms of the EAJF Settlement. Except to the extent that EAJF agrees otherwise in writing, EAJF shall, in full and final satisfaction, compromise, settlement, release, and discharge of and in exchange of such Allowed Secured Claim, be paid any EAJF Funds; provided, however, that (i) EAJF shall under no circumstances be entitled to receive in excess of $25 million on account of the Secured Claim of EAJF from any source and shall not be entitled to any postpetition interest, fees or costs related to the Secured Claim of EAJF regardless of whether the EAJF Funds exceed $25 million, (ii) EAJF's entitlement to distributions is subject to Section 3.c of the EAJF Settlement which provides that its right to receive 90% of the proceeds of the "Two Cases" (as defined in the EAJF Settlement and identified on Exhibit C thereto) shall be deferred for a period of one year following the Confirmation Date, and during such one-year deferral period the Estate's retained share of Two Cases proceeds shall constitute Available Funds and shall be available for distribution to Holders of Allowed Claims in Class 4 in accordance with this Plan, and (iii) EAJF shall under no circumstances be entitled to any Allowed Claim in Class 4 on

account of any deficiency in recovery on its Secured Claim regardless of whether such recovery is less than $25 million (other than the agreed Allowed General Unsecured Claim of EAJF in the amount of $17 million pursuant to the terms of the EAJF Settlement). The Secured Claim of EAJF is **Impaired** and EAJF as the Holder of such Claim is entitled to vote.

4.2.1. The treatment and payment of Class 2 provided herein shall be be consistent with the terms and conditions of that certain Settlement Agreement and 9019 Order entered by this Court, and the Settlement Agreement and the 9019 Order are incorporated herein as if fully set forth. Any inconsistencies shall be governed by the terms of the Settlement Agreement and the 9019 Order found at ECF No. 588 [Settlement Agreement] and ECF No. 683 [9019 Order].

4.3. Class 3 (Other Secured Claims). Class 3 consists of any Other Secured Claims against the Debtor. Except to the extent agreed otherwise in writing by such Holder, each Holder of an Allowed Other Secured Claim shall receive, in full and final satisfaction, compromise, settlement, release, and discharge of and in exchange of Holder's Claim, either (a) payment in full of the Allowed Amount of such Other Secured Claim (as determined in accordance with Section 506(a) of the Code) by the Debtor in cash on the Effective Date or in the ordinary course of business as and when due, or (b) return of the collateral securing such Allowed Other Secured Claim on the Effective Date or as soon as practicable thereafter. Notwithstanding any other provision in this § 4.3 of the Plan, any Holder of an Allowed Other Secured Claims may agree to any treatment of such Claim, which treatment may include preservation of such Holder's Lien on collateral securing such Allowed Other Secured Claim; provided that such treatment shall not provide a return to such Holder, by reason of such Allowed Other Secured Claim, having a present value in excess of the Allowed Amount of such Allowed Other Secured Claim. The Holders of Other Secured Claims are **Unimpaired.** In accordance with Section 1126(f) of the Code, the Holders of Other Secured Claims are conclusively presumed to accept this Plan and are not entitled to vote to accept or reject this Plan, and the votes of such Holders will not be solicited.

4.4. Class 4 (General Unsecured Claims). Class 4 consists of any General Unsecured Claims against the Debtor (including, for the avoidance of doubt, an Allowed General Unsecured Claim of EAJF in the amount of $17 million pursuant to the terms of the EAJF Settlement). Except to the extent agreed otherwise in writing by such Holder, each Holder of an Allowed General Unsecured Claim shall receive, in full and final satisfaction, compromise, settlement, release, and discharge of and in exchange of Holder's Claim, such Holder's Pro Rata Share of GUC Funds. The Holders of Claims in Class 4 are **Impaired**. The Holders of these Claims are entitled to vote to accept or reject this Plan, and the votes of such Holders will be solicited.

4.5. Class 5 (Equity Interest). Class 5 consists of any Interests in the Debtor. Class 5 consists of any Interests in the Debtor. Because this is a Plan of Liquidation, all Equity Interests shall be extinguished as of the Effective Date. Holders of Equity Interests shall receive no distribution on account of such Interests unless and until all Holders of Allowed

Claims in Classes 1 through 4 have been paid in full. Upon payment in full of all Allowed Claims and satisfaction of all wind-down expenses and obligations of the Estate, any remaining funds shall be distributed to Holders of Allowed Equity Interests in Class 5 in accordance with their respective membership interests. The Holders of Interests in Class 5 are **Impaired**. In accordance with Section 1126(g) of the Code, the Holders of these Interests are deemed to reject the Plan and are entitled to vote to accept or reject this Plan.

## 5. MEANS FOR EXECUTION OF THE PLAN

5.1. Continued Existence of Estate and the Automatic Stay. The Debtor shall remain a Debtor in Possession and the Estate shall continue in existence and property of the Estate shall not vest until the closing of this Bankruptcy Case. The automatic stay of section 362 of the Code shall continue in effect with respect to the Estate and its assets until the entry of a Final Order closing this Bankruptcy Case. The Reorganized Debtor shall be deemed to be substituted as the party-in-lieu of the Debtor in all matters, including (x) motions, contested matters, and adversary proceedings pending in the Court, and (y) all matters pending in any courts, tribunals, forum, or administrative proceedings outside of the Court, in each case without the requirement or need for the Reorganized Debtor to file motions or substitutions of parties or counsel in each such matter.

5.2. Limited Purpose of Plan Administrator. Upon the Effective Date, MMA Law Firm, PLLC shall cease active law firm operations. The Debtor shall not undertake any new client engagements, enter into any new fee agreements, or otherwise operate as an active law firm from and after the Effective Date. The Plan Administrator's sole mandate is to liquidate the prepetition assets, claims, and Causes of Action of the Estate, wind down the affairs of the Debtor, and make distributions to Holders of Allowed Claims in accordance with this Plan. Any actions taken after the Effective Date shall be limited to those reasonably necessary to preserve, liquidate, and monetize existing Estate assets and to wind down the Debtor's affairs.

5.3. Allison Byman is appointed as the Plan Administrator (PA) as of the Effective Date.

5.4. On the Effective Date, the authority of all current officers, managers, and members of the Debtor, including John Zachary Moseley, shall terminate, and no current officer, manager, or member shall serve as a director, officer, manager, member, or voting trustee of the Debtor or the Reorganized Debtor after the Effective Date. All management authority shall vest exclusively in the Plan Administrator, and signature authority over all bank accounts and assets of the Estate shall transfer exclusively to the Plan Administrator. The retention of Mr. Moseley and the other Consultants is solely as consultants for the limited, hourly wind-down services described in this Plan and confers no officer, director, or management authority. In the event any Consultant or other person fails to cooperate with the Plan Administrator or to turn over property or records of the Estate, the Plan Administrator may pursue all available remedies, including (i) turnover under Section 542 of the Code; (ii) enforcement of the Confirmation Order, including by motion for contempt; (iii) termination of the non-cooperating Consultant's engagement and compensation; and (iv) any other relief available under the Plan or

applicable law, with the Bankruptcy Court retaining jurisdiction to adjudicate any such matter.

5.5. As the Plan Administrator, Ms. Byman shall succeed to all rights and powers of the Debtor-in possession, and shall have the sole authority to:

5.5.1. Manage all overhead and administrative expenses of the Estate;

5.5.2. Manage, prosecute, settle, or abandon all prepetition claims and Causes of Action for the benefit of creditors, with the PA retaining final decision-making authority;

5.5.3. Make periodic distributions to Holders of Allowed Claims pursuant to the priority and waterfalls established in this Plan;

5.5.4. Make all staffing and employment decisions necessary to carry out the liquidation and wind-down of the Debtor, including the engagement and termination of Consultants and professionals approved pursuant to Section 5.11 of this Plan;

5.5.5. Hire and fire such personnel or professionals as necessary to effectuate the purposes of the Plan, including utilizing and/or terminating the Consultants and professionals approved pursuant to Section 5.11 of this Plan;

5.5.6. Sell assets of the Reorganized Debtor;

5.5.7. Object to Claims.

5.6. **Consulting Commitments.** To preserve institutional knowledge necessary to identify, liquidate, and maximize recovery on prepetition assets and Causes of Action, the following individuals have agreed to serve as Consultants to the PA solely in connection with such liquidation and wind-down activities, at the pleasure of the PA. Each Consultant shall be available to perform wind-down consulting services at the direction of the Plan Administrator for up to fifteen (15) hours per week. Compensation shall be earned only for hours actually worked at the specific request and direction of the Plan Administrator. In no event shall any Consultant's compensable hours exceed fifteen (15) hours in any calendar week without either (i) the prior written approval of the Oversight Committee or (ii) a Final Order of the Bankruptcy Court authorizing additional hours upon a showing of good cause, after notice and a hearing. In return for such wind-down consulting services, the Estate shall compensate each Consultant as follows:

5.6.1. Zach Moseley: $350.00 per hour (which rate may be modified by the Bankruptcy Court if warranted) and the Reorganized Debtor shall continue to provide Mr. Moseley with the same or comparable health insurance as is currently provided, and in addition Mr. Moseley shall receive the benefit of the eighteen (18)-month stay of actions set forth in this Plan;

5.6.2. Katy Ohlsson: $250.00 per hour (which rate may be modified by the Bankruptcy Court if warranted) and the Reorganized Debtor shall continue to provide Ms. Ohlsson with the same or comparable health care insurance as is currently provided, and in addition Ms. Ohlsson shall receive the benefit of the eighteen (18)-month stay of actions set forth in this Plan;

5.6.3. Morgan Weaver-Gallacher: $125.00 per hour (which rate may be modified by the Bankruptcy Court if warranted) and the Reorganized Debtor shall continue to provide Ms. Weaver-Gallacher with the same or comparable health care insurance as is currently provided, and Ms. Weaver-Gallacher shall also receive the benefit of the eighteen (18)-month stay of actions set forth in this Plan.

5.7. The continuation of the same or comparable health insurance for each Consultant is a negotiated and integral component of the Consultants' below-market compensation and is provided in consideration of the Consultants' agreement to remain available to assist the Plan Administrator during the wind-down. The hourly rates set forth above are materially below the rates that would be required to retain comparably knowledgeable professionals, and the continuation of existing health coverage was a condition of the Consultants' agreement to provide ongoing services. For the avoidance of doubt, the Plan Administrator shall pay the premiums for such health insurance coverage from Estate funds as a Permitted Expense, and such coverage shall continue only for so long as the applicable Consultant continues to provide services to the Plan Administrator.

**5.8. EIGHTEEN-MONTH STAY OF ACTIONS AGAINST THE STAY PARTIES. AS ADDITIONAL CONSIDERATION FOR THE AGREEMENT OF ZACH MOSELEY, KATY OHLSSON, AND MORGAN WEAVER-GALLACHER (COLLECTIVELY, THE "STAY PARTIES") TO PROVIDE ONGOING SERVICES TO THE PA AND THE DEBTOR FOR THE BENEFIT OF CREDITORS AND THE ESTATE AS SET FORTH ABOVE, AND THE INSTITUTIONAL KNOWLEDGE AND CONTINUED INVOLVEMENT OF THE STAY PARTIES BEING ESSENTIAL TO THE RECOVERY OF VALUE ON THE CAUSES OF ACTION AND THE MASS TORT DOCKETS, UPON ENTRY OF THE CONFIRMATION ORDER AND CONTINUING FOR A PERIOD OF EIGHTEEN (18) MONTHS THEREAFTER (THE "STAY PERIOD"), ALL PERSONS AND ENTITIES ARE STAYED AND ENJOINED FROM COMMENCING OR CONTINUING, IN ANY MANNER OR IN ANY PLACE, ANY JUDICIAL, ADMINISTRATIVE, ARBITRAL, OR OTHER ACTION OR PROCEEDING OF ANY KIND AGAINST ANY OF THE STAY PARTIES IN HIS OR HER INDIVIDUAL OR PERSONAL CAPACITY, WHETHER ON ACCOUNT OF ANY CLAIM, DEMAND, DEBT, LIABILITY, OBLIGATION, OR CAUSE OF ACTION ARISING PRIOR TO OR DURING THE STAY PERIOD, INCLUDING, WITHOUT LIMITATION, THE ENFORCEMENT, ATTACHMENT, COLLECTION, OR RECOVERY BY ANY MANNER OR MEANS OF ANY JUDGMENT, AWARD, DECREE, OR ORDER AGAINST ANY OF THE STAY PARTIES, THE CREATION, PERFECTION, OR ENFORCEMENT OF ANY LIEN OR ENCUMBRANCE AGAINST THE**

**PROPERTY OF ANY OF THE STAY PARTIES, AND THE ASSERTION OF ANY RIGHT OF SETOFF, RECOUPMENT, OR SUBROGATION AGAINST ANY OF THE STAY PARTIES. THE BANKRUPTCY COURT SHALL RETAIN EXCLUSIVE JURISDICTION TO ENFORCE, MODIFY, TERMINATE, OR EXTEND THE STAY FOR CAUSE SHOWN AFTER NOTICE AND A HEARING. FOR THE AVOIDANCE OF DOUBT, THIS STAY (I) IS A PLAN INJUNCTION ISSUED PURSUANT TO SECTIONS 105 AND 1123 OF THE BANKRUPTCY CODE IN FURTHERANCE OF CONSUMMATION OF THIS PLAN, (II) DOES NOT CONSTITUTE A DISCHARGE OF ANY CLAIM, DEMAND, DEBT, LIABILITY, OBLIGATION, OR CAUSE OF ACTION AGAINST ANY OF THE STAY PARTIES, (III) SHALL EXPIRE BY ITS OWN TERMS AT THE END OF THE STAY PERIOD UNLESS EXTENDED BY FINAL ORDER OF THE BANKRUPTCY COURT, AND (IV) MAY BE EXTENDED BEYOND THE STAY PERIOD BY FINAL ORDER OF THE BANKRUPTCY COURT UPON MOTION BY ANY STAY PARTY FOR CAUSE SHOWN, AFTER NOTICE AND A HEARING. NOTWITHSTANDING ANYTHING TO THE CONTRARY IN THIS SECTION, THIS STAY SHALL NOT RELEASE, DISCHARGE, SATISFY, OR OTHERWISE IMPAIR THE GUARANTY AND RELATED CLAIMS OF EQUAL ACCESS JUSTICE FUND, LP AND EAJF ESQ, LP (COLLECTIVELY, "EAJF") AGAINST JOHN ZACHARY MOSELEY THAT ARE EXPRESSLY PRESERVED UNDER THE EAJF SETTLEMENT (ECF NO. 588), AS APPROVED BY THE ORDER OF THE BANKRUPTCY COURT ENTERED THEREON (ECF NO. 683), ALL OF WHICH CLAIMS ARE EXPRESSLY RESERVED AND PRESERVED. TOLLING DURING THE STAY PERIOD. DURING THE STAY PERIOD, AND AS TO ANY CLAIM, DEMAND, DEBT, LIABILITY, OBLIGATION, OR CAUSE OF ACTION THAT IS STAYED OR ENJOINED UNDER THIS SECTION, ALL APPLICABLE STATUTES OF LIMITATION, STATUTES OF REPOSE, AND ANY DEFENSE OF LACHES OR OTHER EQUITABLE DOCTRINE PREMISED ON DELAY ARE TOLLED, SUSPENDED, AND SHALL NOT RUN FOR SO LONG AS THE STAY REMAINS IN EFFECT AS TO SUCH CLAIM. ANY PERSON OR ENTITY WHOSE CLAIM IS SO STAYED SHALL HAVE UNTIL THE LATER OF (I) THE DATE THE OTHERWISE-APPLICABLE LIMITATIONS OR REPOSE PERIOD WOULD HAVE EXPIRED ABSENT THE STAY, OR (II) SIXTY (60) DAYS AFTER THE STAY TERMINATES OR EXPIRES AS TO SUCH CLAIM, TO COMMENCE OR CONTINUE SUCH CLAIM. FOR THE AVOIDANCE OF DOUBT, THIS TOLLING PROVISION APPLIES TO, AND IS FOR THE BENEFIT OF, THE HOLDERS OF THE STAYED CLAIMS, INCLUDING THE GUARANTY AND RELATED CLAIMS OF EAJF AGAINST JOHN ZACHARY MOSELEY PRESERVED UNDER THE EAJF SETTLEMENT (ECF NO. 588), AS APPROVED BY THE ORDER OF THE BANKRUPTCY COURT ENTERED THEREON (ECF NO. 683), AND NOTHING IN THIS SECTION SHALL BE CONSTRUED TO SHORTEN OR IMPAIR ANY LIMITATIONS OR REPOSE PERIOD APPLICABLE TO SUCH PRESERVED CLAIMS.**

5.9. Dissolution of The Unsecured Creditors Committee and Formation of Oversight Committee. On the Effective Date, the Unsecured Creditors Committee ("UCC") shall cease to exist except for the limited purposes set forth in Section 5.18 of this Plan and shall be replaced by an Oversight Committee vested with authority to review, appear and be heard on material decisions and activities of the Reorganized Debtor, including compensation and staffing, litigation settlements that the Reorganized Debtor may enter into, and any decision to sell all or a portion of the Mass Tort Dockets. The Oversight Committee shall consist of three (3) members: (i) one (1) representative designated by Equal Access Justice Fund, LP and EAJF ESQ, LP (collectively, "EAJF"), and (ii) two (2) members designated by the Unsecured Creditors Committee. The members of the Oversight Committee shall be identified in a notice filed by the Debtor with the Court not less than seven (7) days prior to the Confirmation Hearing. The Oversight Committee shall have the right to: (a) request information from the Plan Administrator regarding the administration of the Estate and the prosecution and resolution of Causes of Action; and (b) bring objections to the Bankruptcy Court if the Oversight Committee disagrees with the business judgment of the Plan Administrator, with the Bankruptcy Court retaining jurisdiction to resolve any such dispute. For the avoidance of doubt, the Oversight Committee's rights to review, to appear and be heard, and to bring objections before the Bankruptcy Court extend to any act, decision, or proposed action (or failure to act) of the Plan Administrator, and are not limited to the "material" decisions and activities or other matters specifically enumerated in this Plan. The Bankruptcy Court retains jurisdiction to hear and resolve any such objection, and the good-faith exercise of these rights by the Oversight Committee shall not, by itself, be deemed to interfere with the Plan Administrator's administration of the Estate. These rights are in addition to, and do not limit, the specific notice, review, and objection rights otherwise provided in this Plan. The fees, costs, and expenses of the Oversight Committee, its members, and any professionals retained by the Oversight Committee shall **not** be paid by the Estate or the Plan Administrator. The Oversight Committee shall remain in existence until entry of a final decree closing the Case.

5.10. Continued Effect of Automatic Stay. The automatic stay under section 362 of the Code shall remain in effect with respect to the Estate and its assets until closing of this case.

5.11. Continued Reporting Obligations. After the Effective Date, the Plan Administrator shall file quarterly operating reports with the Court. Each quarterly report shall include, at minimum: (i) a summary of all material actions taken by the Plan Administrator during the prior quarter, including any settlements, asset sales, professional retentions, Cause of Action abandonments, and Consultant engagement changes; (ii) a complete accounting of all receipts and disbursements of the Estate during the prior quarter, itemized by category of Permitted Expense; (iii) the current balance of all Estate accounts; (iv) the current Reserve calculation showing each component of the Reserve Cap and the basis therefor; (v) the status of all pending Causes of Action; (vi) the amount of all distributions made to Holders of Allowed Claims during the prior quarter and the aggregate distributions made since the Effective Date; and (vii) any material developments affecting the value or collectability of Estate assets. The

Oversight Committee shall have fourteen (14) days after receipt of each quarterly report to submit written comments or objections to the Plan Administrator. If the Oversight Committee objects to any matter disclosed in a quarterly report, the Plan Administrator shall not take any further action with respect to such matter without first obtaining resolution from the Bankruptcy Court after notice and a hearing. Such reports shall be in sufficient detail to permit the calculation of any fees owing pursuant to United States Code title 28 section 1930.

5.12. Automatic Dissolution of Reorganized Debtor Upon Final Distribution and Closing of Case. Upon completion of the limited purposes set forth in Section 5.2 of the Plan, the Reorganized Debtor shall seek Court approval of a final distribution and closing of this case. Upon Court entry of a Final Order approving such final distribution and ordering closing of the case, the Reorganized Debtor shall be deemed dissolved without further order of the Court, and notwithstanding any otherwise applicable requirements for dissolution under state law.

5.13. No Other Approval Required for Retention of Professionals. The Reorganized Debtor/PA shall be authorized to retain the services of professionals constituting Permitted Expenses for purposes of carrying out the provisions of this Plan, subject to prior approval of the Bankruptcy Court after notice and a hearing. The Plan Administrator shall provide the Oversight Committee with at least fourteen (14) days' written notice of any proposed professional retention before filing an application with the Bankruptcy Court. If the Oversight Committee objects to a proposed retention within such fourteen (14) day period, the Plan Administrator shall include the Oversight Committee's objection in its application to the Bankruptcy Court, and the Bankruptcy Court shall resolve the dispute. The Plan Administrator shall not retain any professional without a Final Order of the Bankruptcy Court authorizing such retention.

5.14. Cancellation of Existing Agreements. On the Effective Date, all notes, instruments, and other documents evidencing Claims, including credit agreements and indentures, shall be cancelled and the obligations of the Debtor relating to such instruments shall be deemed satisfied in full, cancelled, discharged, and of no force or effect. Holders of or parties to such cancelled instruments and other documentation will have no rights arising from or relating to such instruments and other documentation, except the rights provided for pursuant to the Plan. This provision shall not apply to any compromise entered into during the course of the Bankruptcy Proceeding, and all such agreements shall remain in full force and effect.

5.15. Corporate Action. On the Effective Date, all actions contemplated under the Plan shall be deemed authorized and approved in all respects. All matters provided for in the Plan involving the corporate structure of the Debtor and any corporate action required by the Debtor in connection with the Plan shall be deemed to have occurred and shall be in effect, without any requirement of further action by the security holders, directors, or officers of the Debtor. As applicable, on or prior to the Effective Date, the appropriate officers of the Debtor shall be authorized and directed to issue, execute, and deliver the agreements, documents, and instruments contemplated under the Plan (or

necessary or desirable to give effect to the transactions contemplated under the Plan).

5.16. Retained Causes of Action. Except as otherwise provided in the Plan, or in any contract, instrument, release, or other agreement entered into in connection with the Plan, in accordance with Section 1123(b)(3) of the Code, the Reorganized Debtor shall have, subject to review of the Oversight Committee, the exclusive right, authority, and discretion to determine and to initiate, file, prosecute, enforce, withdraw, or litigate to judgment any and all Causes of Action that the Debtor or Estate may hold against any Entity, whether arising before or after the Petition Date; provided, however, that: (i) the Plan Administrator shall provide the Oversight Committee with at least fourteen (14) days' written notice before abandoning any Cause of Action or entering into any settlement or compromise of any Cause of Action with a value in excess of $50,000.00; (ii) if the Oversight Committee objects to a proposed abandonment or settlement within such fourteen (14) day period, the Plan Administrator shall not proceed with such action without first filing a motion with the Bankruptcy Court and obtaining a Final Order authorizing such action after notice and a hearing; and (iii) any settlement or compromise of a Cause of Action with a value in excess of $250,000.00 shall require a Final Order of the Bankruptcy Court regardless of whether the Oversight Committee objects, after notice and a hearing. The Plan Administrator reserves and shall retain the foregoing Causes of Action notwithstanding the rejection of any Executory Contract or Unexpired Lease during the Case. Unless a Cause of Action is expressly waived, relinquished, released, compromised or settled in the Plan or any Final Order of the Court, the Plan Administrator expressly reserves such Cause of Action (including any counterclaims) for later adjudication. Therefore, no preclusion doctrine, including the doctrines of *res judicata*, collateral estoppel, issue preclusion, claim preclusion, waiver, estoppel (judicial, equitable, or otherwise), or laches shall apply to such Causes of Action (including counterclaims) by virtue of Confirmation of the Plan.

5.17. The PA shall pursue all Causes of Action that the PA deems practical. Proceeds from the litigation shall be allocated pursuant to the provisions of this Plan.

5.18. The Estate shall retain possession of all assets and Causes of Action for recovery to fund distributions to Holders of Allowed Claims in accordance with this Plan. For the avoidance of doubt, the Causes of Action retained by the Estate include, without limitation, all claims and Causes of Action against insiders of the Debtor, if any, including John Zachary Moseley, for breach of fiduciary duty, fraudulent transfer, and the recovery of distributions or compensation; all avoidance actions and related recovery claims under Sections 544, 547, 548, 549, 550, and 553 of the Bankruptcy Code; and all claims against any successor law firms, including all pending claims and causes of action which have been or could be asserted in those proceedings. Such Causes of Action are expressly preserved and retained by the Estate and may be prosecuted by the Plan Administrator following the Effective Date.

5.19. The Plan Administrator shall continue to prosecute Causes of Action until all claims are either determined to be not cost effective or they have been resolved. Once all Causes of Action have been resolved or determined to be not cost effective, the Plan

Administrator shall distribute all remaining Available Funds in accordance with the priority and distribution provisions of this Plan, subject to the Reserve Cap.

5.20. Limited Continued Existence of Committee. From and after the Effective Date, the UCC shall exist for the sole purposes of: (a) matters relating to any appeals or other challenges or matters with respect to the Confirmation Order; (b) pursuing compensation of the Committee's Professionals pursuant to the terms of the Plan and reviewing and being heard in connection therewith; and (c) appearing before and being heard by the Court and other courts of competent jurisdiction in connection with the above duties. Upon the Effective Date, the UCC shall automatically dissolve and its members and Professionals shall be deemed released of all their duties, responsibilities and obligations in connection with the case or the Plan and its implementation, and the retention or employment of the Committee's Professionals shall terminate. The fees and expenses of the Committee's Professionals through the Effective Date shall be paid in accordance with the terms and conditions of the Plan and any order of the Court.

5.21. Compensation of the Plan Administrator. The Plan Administrator shall be compensated for services rendered after the Effective Date at the rate of $500.00 per hour, plus reimbursement of actual, reasonable, and necessary out-of-pocket expenses, payable from the Estate as a Permitted Expense. The Plan Administrator's compensation shall be subject to the standards of Section 330 of the Code. The Plan Administrator shall serve the Oversight Committee and the U.S. Trustee with a statement of fees and expenses incurred during each calendar month within twenty (20) days after the end of such month. The Oversight Committee and the U.S. Trustee shall have fourteen (14) days after service to object; absent a timely objection, the Plan Administrator may pay the stated amount from the Estate without further order of the Court. If a timely objection is made and not consensually resolved, the disputed portion shall be paid only upon a Final Order of the Bankruptcy Court. Nothing in this Section limits the Bankruptcy Court's continuing jurisdiction to review the reasonableness of the Plan Administrator's compensation.

## 6. EXECUTORY CONTRACTS

6.1. Assumption and Rejection of Executory Contracts and Unexpired Leases. On the Effective Date, except as otherwise provided in this Plan, all Executory Contracts or Unexpired Leases not previously assumed by the Debtor by Final Order of the Court, or not included in a motion to assume pending on the Confirmation Date, will be deemed rejected in accordance with the provisions and requirements of Sections 365 and 1123 of the Code. **To the extent necessary, all contracts with handling firms are assumed and shall remain in full force and effect, with assumption occurring with the Confirmation of the Plan. All Agreements approved by this Court during this Bankruptcy Proceeding, to the extent executory are specifically assumed.**

6.2. Such automatic rejection shall be effective without the need for any further notice to or action, order, or approval of the Court, in accordance with the provisions and requirements of Sections 365 and 1123 of the Code, other than any Executory Contracts

and/or Unexpired Leases that: (i) have been previously assumed, assumed and assigned, or rejected pursuant to a Court order; (ii) are the subject of a motion to assume, assume and assign, or reject such Executory Contract or Unexpired Leases (or of a filed objection with respect to the proposed assumption, assumption and assignment, or rejection of such Executory Contract or Unexpired Leases) that is pending on the Effective Date; or (iii) are a contract, release, or other agreement or document entered into in connection with the Plan or the sale of the Debtor's assets pursuant to a Sale Order. Entry of the Confirmation Order shall constitute an order of the Court approving the assumptions, assumptions and assignments, or rejections of the Executory Contracts and/or Unexpired Leases as set forth in this Plan, pursuant to Sections 365(a) and 1123 of the Bankruptcy Code. Except as otherwise specifically set forth in this Plan, assumptions or rejections of Executory Contracts and/or Unexpired Leases pursuant to this Plan are effective as of the Effective Date. Any motions to reject Executory Contracts or Unexpired Leases pending on the Effective Date shall be subject to approval by the Court on or after the Effective Date by a Final Order.

6.3. Claims Based on Rejection of Executory Contracts or Unexpired Leases. Unless otherwise provided by a Final Order of the Court, all proofs of Claim with respect to Claims arising from the rejection of Executory Contracts or Unexpired Leases, if any, must be filed with the Court by the date that is the later of (a) 30 days after the effective date of rejection of any Unexpired Lease or Executory Contract, and (b) 30 days after the Effective Date with respect to Executory Contracts or Unexpired Leases rejected pursuant to the Plan. Any Claims arising from the rejection of an Executory Contract or Unexpired Lease not Filed with the Court within such time will be automatically disallowed, forever barred from assertion, and shall not be enforceable against the Debtor, the Estates, or their property without the need for any objection by the Debtor or further notice to, or action, order, or approval of the Court or any other Entity, and any Claim arising out of the rejection of the Executory Contract or Unexpired Lease shall be deemed fully satisfied, released, and discharged, notwithstanding anything in the Schedules or a proof of Claim to the contrary. All Allowed Claims arising from the rejection of the Debtor's Executory Contracts or Unexpired Leases shall be classified as General Unsecured Claims and shall be treated in accordance with § 4.4 of the Plan.

6.4. Preexisting Obligations to the Debtor under Executory Contracts and Unexpired Leases. Rejection of any Executory Contract or Unexpired Lease pursuant to the Plan or otherwise shall not constitute a termination of preexisting obligations owed to the Debtor under such Executory Contracts or Unexpired Leases. In particular, notwithstanding any non-bankruptcy law to the contrary, the Debtor expressly reserves and does not waive any right to receive, or any continuing obligation of a counterparty to provide, warranties or continued maintenance obligations on goods previously purchased by the Debtor contracting from non-Debtor counterparties to rejected Executory Contracts or Unexpired Leases.

6.5. Reservation of Rights. Nothing contained in the Plan shall constitute an admission by the Debtor that any such contract or lease is in fact an Executory Contract or Unexpired Lease or that the Debtor has any liability under such Executory Contract. If there is a

dispute regarding whether a contract or lease is or was executory or unexpired at the time of assumption or rejection, the Reorganized Debtor shall have thirty (30) days following entry of a Final Order resolving such dispute to alter the treatment of such contract or lease under the Plan.

## 7. PROVISIONS GOVERNING DISTRIBUTIONS

7.1. Timing and Calculation of Amounts to Be Distributed. The Reorganized Debtor, subject to disclosure and review of the Oversight Committee, shall be authorized to establish and fund reserves (the "Reserves"). The Reserves and Distributions shall be proposed to the Oversight Committee each quarter by the PA. The Oversight Committee shall have fourteen (14) days to provide the PA their comments and recommendations if different from that proposed by the PA. If no agreement can reached, the PA shall file with the Bankruptcy Court a motion requesting authority to operate as recommended for the following period of time requested by the PA. The Plan Administrator shall make distributions on no less than a bi-annual basis. Distributions shall continue until full payment of all Allowed Claims and resolution or abandonment of all Causes of Action. Except as otherwise provided in the Plan, holders of Claims shall not be entitled to interest, dividends, or accruals on the distributions provided for in the Plan, regardless of whether such distributions are delivered on or at any time after the Effective Date.

7.2. Delivery of Distributions in General. Except as otherwise provided in this Plan, the Reorganized Debtor shall make distributions to Holders of Allowed Claims at the address for each such Holder as indicated on the Reorganized Debtor's records as of the date of any such distribution; provided, however, that the manner of such distributions shall be determined at the discretion of the Reorganized Debtor; provided further, however, that the address for each Holder of an Allowed Claim shall be deemed to be the address set forth in any proof of Claim filed by that Holder.

7.3. Undeliverable Distributions and Unclaimed Property. In the event that any distribution to any Holder of Allowed Claims is returned as undeliverable, no distribution to such Holder shall be made unless and until the Plan Administrator has determined the then-current address of such Holder, at which time such distribution shall be made to such Holder without interest; provided, however, that such distributions shall be deemed unclaimed property under Section 347(b) of the Code at the expiration of six months from the date of first attempted delivery. After such date, all unclaimed property or interests in property shall be redistributed pro rata to the remaining Holders of Allowed Claims in Class 4 in accordance with the distribution provisions of this Plan, automatically and without need for a further order by the Court (notwithstanding any applicable federal, provincial or state escheat, abandoned, or unclaimed property laws to the contrary), and the Claim of any Holder of Claims to such property shall be discharged and forever barred from recovery from the Estate.

7.4. *De Minimis* Distributions as to Allowed General Unsecured Claims. In order to avoid the disproportionate expense and inconvenience associated with making a *de minimis* distribution to the Holder of an Allowed General Unsecured Claim, the Reorganized

Debtor shall not be required to make, and shall be excused from making, any initial or interim distribution to such Holder that is in the amount of less than or equal to $15.00. At the time of any final distribution to the Holders of Allowed General Unsecured Claims, all such excused distributions to such Holder shall be aggregated and, if such aggregate amount is $15.01 or more, the Reorganized Debtor shall make a final distribution to such Holder equal to such aggregated amount.

7.5. Manner of Payment. All distributions to the Holders of Allowed Claims under the Plan shall be made by the Reorganized Debtor. At the option of the Debtor, any cash payment to be made under this Plan may be made by check or wire transfer or as otherwise required or provided in applicable agreements.

7.6. No Post-Petition Interest on Claims. Unless otherwise specifically provided for in the Plan or Confirmation Order, or required by applicable bankruptcy and non-bankruptcy law, post-petition interest shall not accrue or be paid on any pre-petition Claims against the Debtor, and no Holder of a prepetition Claim against the Debtor shall be entitled to interest accruing on or after the Petition Date on any such prepetition Claim.

7.7. Setoffs and Recoupment. Except as expressly provided in the Plan, the Reorganized Debtor may, pursuant to Section 553 of the Code, set off and/or recoup against any distributions to be made on account of any Allowed Claim, any and all claims, rights, and Causes of Action that the Debtor may hold against the holder of such Allowed Claim to the extent such setoff or recoupment is either (i) agreed in amount among the Debtor and holder of Allowed Claim or (ii) otherwise adjudicated by the Court or another court of competent jurisdiction; provided, however, that neither the failure to effectuate a setoff or recoupment nor the allowance of any Claim under the Plan shall constitute a waiver or release of any and all claims, rights, and Causes of Action that the Debtor or the Reorganized Debtor may possess against the applicable Holder. In no event shall any Holder of Claims against the Debtor be entitled to recoup any such Claim against any claim, right, or Cause of Action of the Debtor.

7.8. Claims Paid by Third Parties. The Reorganized Debtor shall reduce in full a Claim, and such Claim shall be disallowed without a Claims objection having to be filed and without any further notice to or action, order, or approval of the Court, to the extent that the holder of such Claim receives payment on account of such Claim from a party that is not the Debtor. Subject to the last sentence of this paragraph, to the extent a Holder of a Claim receives a distribution on account of such Claim prior to receiving payment from a party that is not the Debtor on account of such Claim, such Holder shall, within fourteen (14) days of receipt of such payment, repay or return the distribution to the Debtor to the extent the Holder's total recovery on account of such Claim from the third party and under the Plan exceeds the Allowed Amount of such Claim. The failure of such holder to timely repay or return such distribution shall result in the holder owing the Debtor annualized interest at the Federal Judgment Rate on such amount owed for each Business Day after the fourteen (14) day grace period specified above until the amount is repaid. For the avoidance of doubt, any payment or recovery received by Equal Access Justice Fund, LP and EAJF ESQ, LP (collectively, "EAJF") from John

Zachary Moseley or any other guarantor or third party on account of the guaranty and related claims preserved under the EAJF Settlement (ECF No. 588), as approved by the Order of the Bankruptcy Court entered thereon (ECF No. 683), shall reduce EAJF's Allowed Claims dollar-for-dollar, applied first to reduce the Allowed Secured Claim of EAJF in Class 2 (consistent with Section 4.2 of this Plan, under which EAJF shall in no event be entitled to receive in excess of $25 million on account of its Secured Claim from any source), and, only after the Allowed Secured Claim of EAJF has been satisfied or reduced to zero, to reduce the Allowed General Unsecured Claim of EAJF in Class 4 (in the amount of $17 million). Such third-party recoveries shall not reduce, or be credited against, the distributions otherwise payable to any other Holder of an Allowed Claim, and any EAJF Funds or GUC Funds freed as a result of such reduction shall be available for distribution in accordance with this Plan.

7.9. Claims Payable by Third Parties. No distributions under the Plan shall be made on account of an Allowed Claim that is payable pursuant to any of the Debtor's insurance policies until the holder of such Allowed Claim has exhausted all remedies with respect to such insurance policy. To the extent that one or more of the Debtor's insurers agrees to satisfy in full or in part a Claim, then immediately upon such insurer's agreement, the Claim may be expunged without a Claims objection having to be filed and without any further notice to or action, order, or approval of the Court. No distribution under this Plan shall be made on account of any Claim that is covered and paid by any applicable insurance policy. As determined by the District Court, the proceeds of the Allied World Policies are not property of the Estate. In addition, nothing in this Section VII shall prohibit or impair EAJF's preserved guaranty and related claims against Mr. Moseley; and any partial payment received by EAJF from a third party (of amounts received other than distributions under this Plan) shall reduce EAJF's Allowed Claims dollar-for-dollar, applied first to the Allowed Secured Claim of EAJF and then to the Allowed General Unsecured Claim of EAJF, as provided in Section 7.8 of this Plan.

7.10. **Insurance Neutrality.** Nothing in this Plan, the Confirmation Order, or any document related thereto shall in any way alter, modify, expand, or impair the rights, claims, defenses, or obligations of any party, including the Debtor, the Estate, any Holder of a Claim, or any insurer, under any of the Debtor's insurance policies or under applicable non-bankruptcy law. The rights and obligations of the insurers and all other parties under such insurance policies shall be determined under the applicable policies and applicable non-bankruptcy law, and nothing in this Plan shall expand or contract the jurisdiction of the Bankruptcy Court with respect to such matters.

## 8. PROCEDURES FOR RESOLVING CONTINGENT, UNLIQUIDATED, AND DISPUTED CLAIMS

8.1. Claims Administration Responsibilities. Except as otherwise specifically provided in the Plan, after the Effective Date, the Reorganized Debtor, with respect to all Claims shall

have the authority to: (i) file, withdraw, or litigate to judgment, objections to Claims; (ii) settle or compromise any Disputed Claim without any further notice to or action, order, or approval by the Court; and (iii) administer and adjust the Claims Register to reflect any such settlements or compromises without any further notice to or action, order, or approval by the Court. The Reorganized Debtor shall have and retain any and all rights and defenses the Debtor had with respect to any Claims immediately prior to the Effective Date.

8.2. <u>Estimation of Claims.</u> Before or after the Effective Date, the Reorganized Debtor may (but is not required to) at any time request that the Court estimate any Disputed Claim that is contingent or unliquidated pursuant to Section 502(c) of the Code for any reason, regardless of whether any party previously has objected to such Claim or whether the Court has ruled on any such objection, and the Court shall retain jurisdiction to estimate any such Claim, including during the litigation of any objection to any Claim or during the appeal relating to such objection. Notwithstanding any provision otherwise in the Plan, a Claim that has been disallowed or expunged from the Claims Register, but that either is subject to appeal or has not been the subject of a Final Order, shall be deemed to be estimated at $0.00 unless otherwise ordered by the Court. In the event that the Court estimates any contingent or unliquidated Claim, that estimated amount shall constitute a maximum limitation on such Claim for all purposes under the Plan (including for purposes of distributions), and the Reorganized Debtor may elect to pursue any supplemental proceedings to object to any ultimate distribution on such Claim.

8.3. <u>Adjustment to Claims without Objection.</u> Any Claim that has been paid or satisfied, or any Claim that has been amended or superseded, may be adjusted or expunged on the Claims Register by the Reorganized Debtor without any further notice to or action, order, or approval of the Court.

8.4. <u>Time to File Objections to Claims.</u> Except as otherwise specifically provided in the Plan, or as further ordered by the Court, any objections to Claims shall be filed on or before the later of (i) 365 days after the Effective Date or (ii) such other period of limitation as may be specifically fixed by a Final Order of the Court for objecting to such claims.

8.5. <u>Disallowance of Claims.</u> Except as otherwise specifically provided in the Plan, any Claims held by Entities from which property is recoverable under Sections 542, 543, 550, or 553 of the Code, or that is a transferee of a transfer avoidable under Sections 522(f), 522(h), 544, 545, 547, 548, 549, or 724(a) of the Code, shall be deemed disallowed pursuant to Section 502(d) of the Code, and Holders of such Claims may not receive any distributions on account of such Claims until such time as any objection to those Claims have been settled or a Court order with respect to such Claim has been entered. Except as provided in this Plan or otherwise agreed, any and all proofs of Claim filed after the applicable Claims Bar Date shall be deemed disallowed and expunged as of the Effective Date without any further notice to or action, order, or approval of the Court, and holders of such Claims may not receive any distributions on account of such Claims unless on or before the Court hearing to consider Confirmation such late Claim

has been deemed timely filed by a Final Order.

8.6. Amendments to Claims. On or after the Effective Date, a Claim may not be filed or amended without the prior authorization of the Court or Reorganized Debtor and any such new or amended Claim filed shall be deemed disallowed in full and expunged without any further action; provided, however, that Governmental Units shall not be required to obtain authorization of the Court or Debtor to file or amend a proof of Claim prior to the Claims Bar Date applicable to Governmental Units pursuant to Section 502(b)(9) of the Code.

8.7. No Distributions Pending Allowance. If an objection to a Claim or portion of a Claim is filed, no payment or distribution provided under the Plan shall be made on account of such Claim or portion of such Claim unless and until such Disputed Claim becomes an Allowed Claim.

8.8. Distributions After Allowance. To the extent that a Disputed Claim ultimately becomes an Allowed Claim, distributions shall be made to the holder of such Allowed Claim in accordance with the provisions of the Plan. On the next occurring distribution after the date on which an order or judgment of the Court allowing any Disputed Claim becomes a Final Order, the Reorganized Debtor shall provide to the Holder of such Claim the distribution (if any) to which such holder is entitled under the Plan as of the Effective Date, without any interest, dividends, or accruals to be paid on account of such Claim unless otherwise required under the Plan or applicable bankruptcy law. Any Claim that has been paid in whole or in part by any insurance carrier shall be deemed satisfied in full and shall be deemed disallowed in full and expunged without any further action.

## 9. SETTLEMENT, DISCHARGE, AND RELEASE

9.1. Compromise and Settlement. Pursuant to Section 1123 of the Code and Bankruptcy Rule 9019, and in consideration for the classification, distributions, and other benefits provided under the Plan, upon the Effective Date, the provisions of the Plan including the specific treatment of Claims shall constitute a good faith compromise and settlement of all Claims, Interests, Causes of Action, and controversies released, settled, compromised, satisfied, or otherwise resolved pursuant to the Plan. The Plan shall be deemed a motion to approve the good faith compromise and settlement of all such Claims, Interests, Causes of Action, and controversies pursuant to Bankruptcy Rule 9019, and the entry of the Confirmation Order shall constitute the Court's approval of such compromise and settlement under Section 1123 of the Bankruptcy Code and Bankruptcy Rule 9019, as well as a finding by the Court that such settlement and compromise is fair, equitable, reasonable, and in the best interests of the Debtor, their Estates, and Holders of Claims and Interests and are fair, equitable, and within the range of reasonableness. The provisions of the Plan are mutually dependent and non-severable.

9.2. The terms of the EAJF Settlement are incorporated as an integral part of this Plan, and the terms and conditions contained therein are fully enforceable as provisions of this Plan.

9.3. **NO DISCHARGE. PURSUANT TO SECTION 1141(D)(3) OF THE BANKRUPTCY CODE, THE DEBTOR SHALL NOT RECEIVE A DISCHARGE UNDER THIS PLAN. THIS IS A PLAN OF LIQUIDATION AND THE DEBTOR IS NOT ENTITLED TO A DISCHARGE BECAUSE: (i) THE PLAN PROVIDES FOR THE LIQUIDATION OF ALL OR SUBSTANTIALLY ALL OF THE PROPERTY OF THE ESTATE; (ii) THE DEBTOR DOES NOT ENGAGE IN BUSINESS AFTER CONSUMMATION OF THE PLAN; AND (iii) THE DEBTOR WOULD BE DENIED A DISCHARGE UNDER SECTION 727(a) OF THE BANKRUPTCY CODE IF THIS CASE WERE A CASE UNDER CHAPTER 7 OF THE BANKRUPTCY CODE. NOTHING IN THIS PLAN SHALL BE CONSTRUED AS PROVIDING A DISCHARGE TO THE DEBTOR OR ANY OTHER PARTY.**

**AS FURTHER CONSIDERATION FOR THE AGREEMENT OF JOHN ZACHARY MOSELEY, KATY OHLSSON, AND MORGAN WEAVER-GALLACHER (COLLECTIVELY, THE "STAY PARTIES") TO PROVIDE ONGOING SERVICES TO THE DEBTOR FOR THE BENEFIT OF CREDITORS AND THE ESTATE AS SET FORTH ABOVE, AND THE INSTITUTIONAL KNOWLEDGE AND CONTINUED INVOLVEMENT OF THE STAY PARTIES BEING ESSENTIAL TO THE RECOVERY OF VALUE ON THE CAUSES OF ACTION AND THE MASS TORT DOCKETS, UPON ENTRY OF THE CONFIRMATION ORDER AND CONTINUING FOR A PERIOD OF EIGHTEEN (18) MONTHS THEREAFTER (THE "STAY PERIOD"), ALL PERSONS AND ENTITIES ARE STAYED AND ENJOINED FROM COMMENCING OR CONTINUING, IN ANY MANNER OR IN ANY PLACE, ANY JUDICIAL, ADMINISTRATIVE, ARBITRAL, OR OTHER ACTION OR PROCEEDING OF ANY KIND AGAINST ANY OF THE STAY PARTIES IN HIS OR HER INDIVIDUAL OR PERSONAL CAPACITY, WHETHER ON ACCOUNT OF ANY CLAIM, DEMAND, DEBT, LIABILITY, OBLIGATION, OR CAUSE OF ACTION ARISING PRIOR TO OR DURING THE STAY PERIOD, INCLUDING, WITHOUT LIMITATION, THE ENFORCEMENT, ATTACHMENT, COLLECTION, OR RECOVERY BY ANY MANNER OR MEANS OF ANY JUDGMENT, AWARD, DECREE, OR ORDER AGAINST ANY OF THE STAY PARTIES, THE CREATION, PERFECTION, OR ENFORCEMENT OF ANY LIEN OR ENCUMBRANCE AGAINST THE PROPERTY OF ANY OF THE STAY PARTIES, AND THE ASSERTION OF ANY RIGHT OF SETOFF, RECOUPMENT, OR SUBROGATION AGAINST ANY OF THE STAY PARTIES. THE BANKRUPTCY COURT SHALL RETAIN EXCLUSIVE JURISDICTION TO ENFORCE, MODIFY, TERMINATE, OR EXTEND THE STAY FOR CAUSE SHOWN AFTER NOTICE AND A HEARING. FOR THE AVOIDANCE OF DOUBT, THIS STAY (I) IS A PLAN INJUNCTION ISSUED PURSUANT TO SECTIONS 105 AND 1123 OF THE BANKRUPTCY CODE IN FURTHERANCE OF CONSUMMATION OF THIS PLAN, (II) DOES NOT CONSTITUTE A DISCHARGE OF ANY CLAIM, DEMAND, DEBT, LIABILITY, OBLIGATION, OR CAUSE OF ACTION**

**AGAINST ANY OF THE STAY PARTIES, (III) SHALL EXPIRE BY ITS OWN TERMS AT THE END OF THE STAY PERIOD UNLESS EXTENDED BY FINAL ORDER OF THE BANKRUPTCY COURT, AND (IV) MAY BE EXTENDED BEYOND THE STAY PERIOD BY FINAL ORDER OF THE BANKRUPTCY COURT UPON MOTION BY THE PA, ANY STAY PARTY, OR ANY OTHER INTERESTED PARTY FOR CAUSE SHOWN, AFTER NOTICE AND A HEARING. NOTWITHSTANDING ANYTHING TO THE CONTRARY IN THIS SECTION, THIS STAY SHALL NOT RELEASE, DISCHARGE, SATISFY, OR OTHERWISE IMPAIR THE GUARANTY AND RELATED CLAIMS OF EQUAL ACCESS JUSTICE FUND, LP AND EAJF ESQ, LP (COLLECTIVELY, "EAJF") AGAINST JOHN ZACHARY MOSELEY THAT ARE EXPRESSLY PRESERVED UNDER THE EAJF SETTLEMENT (ECF NO. 588), AS APPROVED BY THE ORDER OF THE BANKRUPTCY COURT ENTERED THEREON (ECF NO. 683), ALL OF WHICH CLAIMS ARE EXPRESSLY RESERVED AND PRESERVED.**

**THE PLAN FURTHER PROVIDES THAT, DURING THE STAY PERIOD, ALL APPLICABLE STATUTES OF LIMITATION AND REPOSE, AND ANY LACHES OR DELAY-BASED DEFENSE, ARE TOLLED AS TO ANY CLAIM THAT IS STAYED UNDER THE PLAN, AND THAT THE HOLDER OF ANY SUCH STAYED CLAIM SHALL HAVE UNTIL THE LATER OF THE ORIGINAL LIMITATIONS OR REPOSE PERIOD OR SIXTY (60) DAYS AFTER THE STAY TERMINATES TO COMMENCE ITS CLAIM. THIS TOLLING IS FOR THE BENEFIT OF THE HOLDERS OF THE STAYED CLAIMS, INCLUDING EAJF'S PRESERVED GUARANTY AND RELATED CLAIMS AGAINST MR. MOSELEY.**

9.4. Release of Liens.

**EXCEPT AS OTHERWISE PROVIDED IN THE PLAN, OR ANY CONTRACT, INSTRUMENT, RELEASE, OR OTHER AGREEMENT OR DOCUMENT CREATED PURSUANT TO THE PLAN, ON THE EFFECTIVE DATE AND CONCURRENTLY WITH THE APPLICABLE DISTRIBUTIONS MADE PURSUANT TO THE PLAN AND, IN THE CASE OF A SECURED CLAIM, SATISFACTION IN FULL OF THE PORTION OF THE SECURED CLAIM THAT IS ALLOWED AS OF THE EFFECTIVE DATE, EXCEPT FOR OTHER SECURED CLAIMS THAT THE DEBTOR ELECTS TO REINSTATE IN ACCORDANCE WITH ARTICLE IV OF THIS PLAN, ALL MORTGAGES, DEEDS OF TRUST, LIENS, PLEDGES, OR OTHER SECURITY INTERESTS AGAINST ANY PROPERTY OF THE ESTATE SHALL BE FULLY RELEASED AND DISCHARGED, AND ALL OF THE RIGHT, TITLE, AND INTEREST OF ANY HOLDER OF SUCH MORTGAGES, DEEDS OF TRUST, LIENS, PLEDGES, OR OTHER SECURITY INTERESTS SHALL REVERT TO THE DEBTOR AND THEIR RESPECTIVE SUCCESSORS AND ASSIGNS. ON AND AFTER THE EFFECTIVE DATE, ANY HOLDER OF SUCH SECURED CLAIM (AND THE APPLICABLE AGENTS FOR SUCH HOLDER), AT THE EXPENSE OF THE DEBTOR SHALL BE AUTHORIZED AND DIRECTED TO RELEASE ANY COLLATERAL OR**

**OTHER PROPERTY OF THE DEBTOR HELD BY SUCH HOLDER (AND THE APPLICABLE AGENTS FOR SUCH HOLDER), AND TO TAKE SUCH ACTIONS AS MAY BE REASONABLY REQUESTED BY THE DEBTOR TO EVIDENCE THE RELEASE OF SUCH LIEN, INCLUDING THE EXECUTION, DELIVERY, AND FILING OR RECORDING OF SUCH RELEASES. THE PRESENTATION OR FILING OF THE CONFIRMATION ORDER TO OR WITH ANY FEDERAL, STATE, PROVINCIAL, LOCAL AGENCY OR DEPARTMENT SHALL CONSTITUTE GOOD AND SUFFICIENT EVIDENCE OF, BUT SHALL NOT BE REQUIRED TO EFFECT, THE TERMINATION OF SUCH LIENS.**

**WITHOUT LIMITING THE AUTOMATIC RELEASE PROVISIONS OF THE IMMEDIATELY PRECEDING PARAGRAPH: (i) EXCEPT AS OTHERWISE PROVIDED IN ARTICLE IV OF THE PLAN, NO OTHER DISTRIBUTION UNDER THIS PLAN SHALL BE MADE TO OR ON BEHALF OF ANY CLAIM HOLDER UNLESS AND UNTIL SUCH HOLDER EXECUTES AND DELIVERS TO THE DEBTOR SUCH RELEASE OF LIENS OR OTHERWISE TURNS OVER AND RELEASES SUCH CASH, PLEDGE, OR OTHER POSSESSORY LIENS; AND (ii) ANY SUCH HOLDER THAT FAILS TO EXECUTE AND DELIVER SUCH RELEASE OF LIENS WITHIN 180 DAYS OF THE EFFECTIVE DATE SHALL BE DEEMED TO HAVE NO CLAIM AGAINST THE DEBTOR OR THEIR ASSETS OR PROPERTY IN RESPECT OF SUCH CLAIM AND SHALL NOT PARTICIPATE IN ANY DISTRIBUTION UNDER THIS PLAN.**

9.5. Exculpation.

**THE EXCULPATED PARTIES SHALL NEITHER HAVE NOR INCUR ANY LIABILITY TO ANY HOLDER OF A CLAIM OR INTEREST, THE DEBTOR, THE REORGANIZED DEBTOR, THE ESTATE, OR ANY OTHER ENTITY FOR ANY ACT TAKEN OR OMITTED TO BE TAKEN FROM THE PETITION DATE TO THE EFFECTIVE DATE IN CONNECTION WITH OR ARISING OUT OF THE CASE, THE CONFIRMATION OF THE PLAN, THE CONSUMMATION OF THE PLAN, THE ADMINISTRATION OF THE PLAN OR THE ASSETS AND PROPERTY TO BE DISTRIBUTED PURSUANT TO THE PLAN (INCLUDING UNCLAIMED PROPERTY UNDER THE PLAN), UNLESS SUCH ENTITY'S ACTION IS DETERMINED AS (i) BAD FAITH; (ii) ACTUAL FRAUD; (iii) WILLFUL MISCONDUCT; OR (iv) GROSS NEGLIGENCE, IN EACH CASE BY A FINAL ORDER OF A COURT OF COMPETENT JURISDICTION. EACH ENTITY MAY REASONABLY RELY UPON THE OPINIONS OF ITS COUNSEL, CERTIFIED PUBLIC ACCOUNTANTS, AND OTHER EXPERTS OR PROFESSIONALS. FOR THE AVOIDANCE OF DOUBT, THE EXCULPATION IN THIS § 9.5 SHALL NOT APPLY TO ANY ACTIONS TAKEN PRIOR TO THE PETITION DATE. THIS EXCULPATION SHALL BE IN ADDITION TO, AND NOT IN LIMITATION OF, ALL OTHER RELEASES, INDEMNITIES, EXCULPATIONS, AND ANY OTHER APPLICABLE LAW OR RULES PROTECTING THE PARTIES EXCULPATED IN THIS PLAN FROM LIABILITY. FOR THE AVOIDANCE OF DOUBT, AND CONSISTENT WITH SECTIONS 524(e) AND 105 OF THE BANKRUPTCY CODE, THE EXCULPATION PROVIDED SHALL EXTEND**

**ONLY TO THE DEBTOR AND OTHER ESTATE FIDUCIARIES, AND SOLELY FOR CONDUCT WITHIN THE SCOPE OF THEIR DUTIES IN CONNECTION WITH THE CASE.**

9.6. Injunction.

**EXCEPT AS OTHERWISE EXPRESSLY PROVIDED IN THE PLAN OR ANY OTHER ORDER ENTERED PREVIOUSLY BY THE COURT WITH RESPECT TO A COMPROMISE, ALL PERSONS WHO HAVE HELD, HOLD, OR MAY HOLD CLAIMS AGAINST, OR INTERESTS IN, THE DEBTOR ARE ENJOINED, ON AND AFTER CONFIRMATION DATE, TO THE FULLEST EXTENT PERMISSIBLE UNDER APPLICABLE LAW, AS SUCH LAW MAY BE EXTENDED OR INTEGRATED AFTER THE EFFECTIVE DATE, FROM (i) COMMENCING OR CONTINUING IN ANY MANNER ANY ACTION OR OTHER PROCEEDING OF ANY KIND AGAINST THE DEBTOR OR THE REORGANIZED DEBTOR OR ITS ASSETS WITH RESPECT TO ANY SUCH CLAIM OR INTEREST; (ii) THE ENFORCEMENT, ATTACHMENT, COLLECTION, OR RECOVERY BY ANY MANNER OR MEANS OF JUDGMENT, AWARD, DECREE, OR ORDER AGAINST THE DEBTOR OR THE REORGANIZED DEBTOR OR ITS ASSETS ON ACCOUNT OF ANY SUCH CLAIM OR INTEREST; (iii) CREATING, PERFECTING, OR ENFORCING ANY ENCUMBRANCE OF ANY KIND AGAINST THE DEBTOR OR THE REORGANIZED DEBTOR OR ITS ASSETS ON ACCOUNT OF ANY SUCH CLAIM OR INTEREST; AND (iv) ASSERTING ANY RIGHT OF SETOFF, RECOUPMENT OR SUBROGATION OF ANY KIND AGAINST ANY OBLIGATION DUE FROM THE DEBTOR OR THE REORGANIZED DEBTOR OR ITS ASSETS ON ACCOUNT OF ANY SUCH CLAIM OR INTEREST.**

9.7. Gatekeeper Provision. No Person or Entity may commence, continue, amend, or otherwise pursue, join in, or otherwise support any other party commencing, continuing, amending, or pursuing, a Claim or Cause of Action of any kind that may be subject to the foregoing exculpation and injunction provisions, in each case without first (i) requesting a determination from the Court, after notice to all affected parties and a hearing, that such Claim or Cause of Action represents a colorable claim and is not subject to the foregoing exculpation and injunction provisions, which request must attach the complaint or petition proposed to be filed by the requesting party and (ii) obtaining from the Court specific authorization for such party to bring such Claim or Cause of Action. For the avoidance of doubt, any party that obtains such determination and authorization and subsequently wishes to amend the authorized complaint or petition to add any claims or causes of action not explicitly included in the authorized complaint or petition must obtain authorization from the Court before filing any such amendment in the court where such complaint or petition is pending. The Court reserves jurisdiction to adjudicate any such claims to the maximum extent provided by applicable law. For the avoidance of doubt, this gatekeeper provision is limited to the Exculpated Parties and to the exculpation provisions of this Plan, and does not extend to any party beyond the Exculpated Parties or to any Claim or Cause of Action merely relating to the Case.

9.8. Reimbursement or Contribution. If the Court disallows a Claim for reimbursement or contribution of an Entity pursuant to Section 502(e)(1)(B) of the Code, then to the extent that such Claim is contingent as of the time of allowance or disallowance, such Claim shall be forever disallowed and expunged notwithstanding Section 502(j) of the Code unless prior to the Confirmation Date: (i) such Claim has been adjudicated as non-contingent or (ii) the relevant holder of a Claim has filed a non-contingent proof of Claim on account of such Claim and a Final Order has been entered prior to the Confirmation Date determining such Claim as no longer contingent.

9.9. Section 524(e). Regardless of anything to the contrary in this Plan nothing in the release provisions in this Plan shall operate as a third-party discharge or affect the liability of any non-debtor party in contravention of 11 U.S.C. § 524(e).

## 10. CONDITIONS PRECEDENT TO CONFIRMATION AND CONSUMMATION OF THE PLAN

10.1. Conditions Precedent to Confirmation. The following are conditions precedent to confirmation of the Plan that shall be satisfied or waived in writing in accordance with § 10.3 of the Plan:

10.1.1. The Court shall have approved a Disclosure Statement with respect to the Plan in form and substance acceptable to the Debtor and the Committee; and

10.1.2. the Confirmation Order, Plan, and any Plan Documents shall be in form and substance acceptable to the Debtor and the Committee.

10.2. Conditions Precedent to Effectiveness. The following are conditions precedent to the occurrence of the "Effective Date," which shall be the date upon which each of the following shall be satisfied or waived in writing in accordance with § 10.3 of the Plan:

10.2.1. The Court shall have entered the Confirmation Order in form and substance acceptable to the Debtor and the Committee; and the Confirmation Order shall be a Final Order and shall not (i) have been reversed or vacated or (ii) be subject to a then-effective stay;

10.2.2. The Debtor shall have obtained all authorizations, consents, regulatory approvals, rulings, or documents that are necessary to implement and effectuate the Plan.

10.3. Waiver of Conditions. The conditions to Confirmation and the Effective Date set forth in this Article 10 may be waived only with the prior written consent of the Debtor and the Committee without notice, leave, or order of the Court or any formal action other than proceedings to confirm or consummate the Plan.

10.4. Effect of Failure of Conditions. If Consummation does not occur, the Plan shall be null and void in all respects, and nothing contained in the Plan or the Disclosure Statement shall: (i) constitute a waiver or release of any Claims by the Debtor, Claims,

or Interests; (ii) prejudice in any manner the rights of the Debtor, any holders of Claims or Interests, or any other Entity; or (iii) constitute an admission, acknowledgment, offer, or undertaking by the Debtor, any holders of Claims or Interests, or any other Entity.

## 11. RETENTION OF JURISDICTION

11.1. Retention of Court Jurisdiction. Notwithstanding the entry of the Confirmation Order and the occurrence of the Effective Date, the Court shall retain jurisdiction over all matters arising in, arising under, or related to, the Debtor's case including matters concerning and related to, among other things, the following purposes:

11.1.1. Allow, disallow, determine, liquidate, classify, estimate, or establish the priority, secured or unsecured status, or amount of any Claim or Interest, including the resolution of any request for payment of any Administrative Claim and the resolution of any and all objections to the secured or unsecured status, priority, amount, or allowance of Claims or Interests;

11.1.2. Decide and resolve all matters related to the granting and denying, in whole or in part, any applications for allowance of compensation or reimbursement of expenses to Professionals authorized pursuant to the Code or Plan;

11.1.3. Resolve any matters related to: (i) the assumption, assignment, or rejection of any executory contract or unexpired lease to which any Debtor is party or with respect to which any Debtor may be liable in any manner and to hear, determine, and, if necessary, liquidate, any Claims, including Claims related to the rejection of an Executory Contract or Unexpired Lease, cure obligations pursuant to Section 365 of the Code, or any other matter related to such Executory Contract or Unexpired Lease; (ii) any potential contractual obligation under any Executory Contract or Unexpired Lease that is assumed and/or assigned; and (iii) any dispute regarding whether a contract or lease is or was executory or expired;

11.1.4. Ensure that distributions to Holders of Allowed Claims are accomplished pursuant to the provisions of the Plan;

11.1.5. Adjudicate, decide, or resolve any motions, adversary proceedings, contested or litigated matters, and any other matters, and grant or deny any applications involving the Debtor prior to the closing of the case;

11.1.6. Adjudicate, decide, or resolve any and all matters related to Causes of Action;

11.1.7. Enter and implement such orders as may be necessary or appropriate to execute, implement, or consummate the provisions of the Plan and all agreements or documents created in connection with the Plan or Disclosure Statement;

11.1.8. Enter and enforce any order for the sale of property pursuant to Sections 363 or 1123 of the Code;

11.1.9. Resolve any cases, controversies, suits, disputes, or Causes of Action that may arise in connection with the Consummation, interpretation, or enforcement of the Plan or any entity's obligations incurred in connection with the Plan;

11.1.10. Issue injunctions, enter and implement other orders, or take such other actions as may be necessary or appropriate to restrain interference by any Entity with Consummation or enforcement of the Plan;

11.1.11. Resolve any cases, controversies, suits, disputes, or Causes of Action with

respect to the settlements, compromises, releases and injunctions, and enter such orders as may be necessary or appropriate to implement such releases, injunctions, and other provisions;

11.1.12. Resolve any cases, controversies, suits, disputes, or Causes of Action, if any;

11.1.13. Enter and implement such orders as are necessary or appropriate if the Confirmation Order is for any reason modified, stayed, reversed, revoked, or vacated;

11.1.14. Determine any other matters that may arise in connection with or relate to the Plan, Disclosure Statement, Confirmation Order or any contract, instrument, release, indenture, or other agreement or document created in connection with the Plan or Disclosure Statement;

11.1.15. Adjudicate any and all disputes arising from or relating to distributions under the Plan or any transactions contemplated in the Plan;

11.1.16. Consider any modifications of the Plan, to cure any defect or omission or to reconcile any inconsistency in any Court order, including the Confirmation Order;

11.1.17. Determine requests for the payment of Claims entitled to priority pursuant to Section 507 of the Code;

11.1.18. Hear and determine disputes arising in connection with the interpretation, implementation, or enforcement of the Plan or Confirmation Order, including disputes arising under agreements, documents, or instruments executed in connection with the Plan;

11.1.19. Hear and determine matters concerning state, local, and federal taxes in accordance with Sections 346, 505, and 1146 of the Code;

11.1.20. Enforce all orders previously entered by the Court;

11.1.21. Hear any other matter not inconsistent with the Code;

11.1.22. Enter an order concluding or closing the Cases; and

11.1.23. Enforce and/or extend the injunction provisions set forth in the Plan.

## 12. MODIFICATION AND REVOCATION OF THE PLAN

12.1. Immediate Binding Effect. Notwithstanding Bankruptcy Rules 3020(e), 6004(h), or 7062, or otherwise, upon the occurrence of the Effective Date, the terms of the Plan (as may be amended or modified), any supplement to the Plan, or the Confirmation Order shall be immediately effective and enforceable and deemed binding upon the Debtor and any and all Holders of Claims against or Interests in the Debtor (regardless of whether such Claims or Interests are deemed to have accepted or rejected the Plan) all entities that are parties to or are subject to the settlements, compromises, releases, and injunctions described in the Plan, each entity acquiring property under the Plan or Confirmation Order, and any and all non-Debtor parties to executory contracts and unexpired leases with the Debtor. All Claims and debts shall be fixed, adjusted, or compromised, as applicable, pursuant to the Plan regardless of whether any Holder of a Claim or debt has voted on the Plan.

12.2. Modification of the Plan. Subject to the limitations contained in this Plan, the Debtor reserves the right to modify the Plan as to material terms and seek Confirmation consistent with the Code and, as appropriate, not resolicit votes on such modified Plan.

Subject to certain restrictions and requirements set forth in Section 1127 of the Code and Bankruptcy Rule 3019 and those restrictions on modifications set forth in the Plan, the Debtor expressly reserves their rights to alter, amend, or modify materially the Plan one or more times after Confirmation and, to the extent necessary, may initiate proceedings in the Court to so alter, amend, or modify the Plan, or remedy any defect or omission, or reconcile any inconsistencies in the Plan, the Disclosure Statement, or the Confirmation Order, in such matters as may be necessary to carry out the purposes and intent of the Plan. Any such modification or supplement shall be considered a modification of the Plan and shall be made in accordance with this Article 12. Entry of a Confirmation Order shall mean that all modifications or amendments to the Plan occurring after the solicitation of the Plan and prior to the Confirmation Date are approved pursuant to Section 1127(a) of the Code and do not require additional disclosure or re-solicitation under Bankruptcy Rule 3019.

12.3. Revocation or Withdrawal of the Plan. The Debtor reserves the right to revoke or withdraw the Plan prior to the Confirmation Date or Effective Date and to file subsequent plans. If the Debtor revokes or withdraws the Plan, or if Confirmation or Consummation does not occur, then: (i) the Plan shall be null and void in all respects; (ii) any settlement or compromise embodied in the Plan (including the fixing or limiting to an amount certain of any Claim or Interest or Class of Claims or Interests), assumption and assignment or rejection of executory contracts or unexpired leases effected by the Plan, and any document or agreement executed pursuant to the Plan, shall be deemed null and void; and (iii) nothing contained in the Plan shall: (a) constitute a waiver or release of any Claims or Interests; (b) prejudice in any manner the rights of the Debtor or any other Entity; or (c) constitute an admission, acknowledgement, offer, or undertaking of any sort by the Debtor or any other Entity.

## 13. **MISCELLANEOUS PROVISIONS**

13.1. Payment of Statutory Fees. All fees payable pursuant to Section 1930 of title 28 of the United States Code, as determined by the Court at the Court hearing to consider Confirmation, shall be paid on or before the Effective Date. After the Effective Date, the Plan Administrator shall pay, including any outstanding U.S. Trustee fees, prior to the closing of the case, in accordance with the Code and Bankruptcy Rules, all fees payable pursuant to Section 1930 of title 28 of the United States Code, which accrue after the Effective Date through and including the closing of the case. The Plan Administrator shall file timely quarterly operating reports until this case is closed, dismissed, or converted.

13.2. Governing Law. Except to the extent that the Code, the Bankruptcy Rules or other federal law is applicable or to the extent a schedule or exhibit to this Plan or instrument agreement or other document executed under the Plan provides otherwise, this Plan, the rights, duties and obligations arising under this Plan, and any claim or controversy directly or indirectly based upon or arising out of this Plan or the transactions contemplated by this Plan (whether based on contract, tort, or any other theory), including all matters of construction, validity and performance, shall be

governed by and interpreted, construed, and determined in accordance with, the internal laws of the State of Texas (without regard to any conflicts of law provision that would require the application of the law of any other jurisdiction).

13.3. Corporate Action. Prior to, on, and after the Effective Date, all matters provided for under the Plan that otherwise would require approval of the equity holders, members, managers or other governing Persons of the Debtor shall be deemed to have occurred and shall be in effect prior to, on, and after the Effective Date pursuant to the applicable general corporation law of the jurisdiction in which the Debtor is organized without any requirement of further action by the Holders of any Interests in the Debtor.

13.4. Severability of Plan Provisions. If, prior to Confirmation, any term or provision of this Plan is held by the Court or other court of competent jurisdiction to be invalid, void, or unenforceable, the Court will have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void or unenforceable, and such term or provision then will be applicable as altered or interpreted. Notwithstanding any such holding, alteration or interpretation, the remainder of the terms and provisions of the Plan will remain in full force and effect and will in no way be affected, impaired, or invalidated by such holding, alteration or interpretation. The Confirmation Order will constitute a judicial determination and will provide that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is valid and enforceable pursuant to its terms.

13.5. Successors and Assigns. The Plan shall be binding on, and shall inure to the benefit of, the Debtor and the Reorganized Debtor. The rights, benefits, and obligations of any Person or Entity named or referred to in the Plan shall be binding upon, and shall inure to the benefit of, any heir, executor, administrator, successor or assign of such Person or Entity.

13.6. Reservation of Rights. Except as expressly set forth in this Plan, this Plan shall have no force or effect unless the Court shall enter the Confirmation Order and the Effective Date shall have occurred. Neither the filing of this Plan, nor any statement or provision contained in this Plan, nor the taking of any action by the Debtor with respect to this Plan shall be or shall be deemed to be an admission or waiver of any rights of the Debtor prior to the Effective Date. If the Plan is not confirmed by a Final Order, or if the Plan is confirmed and does not become effective, the rights of all parties in interest in the Debtor are and shall be reserved in full. Any concessions or settlements reflected in this Plan, if any, are made for purposes of the Plan only, and if the Plan does not become effective, no party in interest in the case shall be bound or deemed prejudiced by any such concession or settlement.

13.7. Further Assurances. The Reorganized Debtor is authorized to execute, deliver, file, or record such contracts, agreements, instruments, releases and other documents and take or cause to be taken such action as may be necessary or appropriate to effectuate,

implement and further evidence the terms, provisions and intent of this Plan and to consummate the transactions and transfers contemplated by the Plan.

13.8. Notice and Service of Documents. All parties having filed entries or notices of appearance or requests for service in the case shall continue to be provided with notice and shall be deemed to be included on the Bankruptcy Rule 2002 service list. Any Person desiring to be added to the Bankruptcy Rule 2002 service list shall be required to file a request for service and to serve such request upon counsel to the Reorganized Debtor. Post-Confirmation matters for which notice is required to be given shall be deemed sufficient if served upon counsel for the U.S. Trustee's Office, counsel to the Reorganized Debtor, and all persons on the Bankruptcy Rule 2002 service list.
All notices, requests, and demands required or permitted to be provided to the Reorganized Debtor under the Plan shall be in writing and shall be deemed to have been duly given or made (i) when actually delivered (a) by certified mail, return receipt requested, (b) by hand delivery or (c) by U.S. mail, postage prepaid or (ii) in the case of notice by facsimile transmission, when received and confirmed.

Unless otherwise indicated in any subsequent pleadings filed in the case, any such notices, requests, and demands required or permitted to be provided to the Reorganized Debtor under the Plan may be directed to the following:

Johnie Patterson or Miriam T. Goott
4815 Dacoma
Houston, TX 77092
713.956.5577
713.956.5570 f
jjp@walkerandpatterson.com
mgoott@walkerandpatterson.com

13.9. Conflicts. To the extent any provision of the Disclosure Statement or any instrument, document, or agreement executed in connection with the Plan or Confirmation Order (or any exhibits, schedules, appendices, supplements, or amendments to the foregoing) conflicts with or is in any way inconsistent with the terms of the Plan, the terms and provisions of the Plan shall govern and control.

13.10. Determination of Tax Liability. The Reorganized Debtor is authorized, but not required, to request an expedited determination under Section 505(b) of the Code of the tax liability of the Debtor for all taxable periods ending after the Petition Date.

13.11. Entire Agreement. This Plan supersedes all previous and contemporaneous negotiations, promises, covenants, agreements, understandings, and representations on such subjects, which have all become merged and integrated into this Plan.

13.12. Closing of the Case. At such time as it selects, the Reorganized Debtor shall seek a final decree pursuant to Section 350 of the Code formally closing the Case.

13.13. Votes Solicited in Good Faith. Upon entry of the Confirmation Order, the Debtor and the Committee will be deemed to have solicited votes on the Plan in good faith and in compliance with the Code, and pursuant to Section 1125(e) of the Code, the Debtor, the Committee and their respective members, affiliates, agents, representatives, members, principals, shareholders, officers, directors, employees, advisors, and attorneys will be deemed to have participated in good faith and in compliance with the Code in the offer, issuance, sale, and purchase of any securities offered and sold under the Plan and any previous plan, and, therefore, neither any of such parties or individuals or the Debtor or the Committee will have any liability for the violation of any applicable law, rule, or regulation governing the solicitation of votes on the Plan or the offer, issuance, sale, or purchase of any securities offered and sold under the Plan and any previous plan.

13.14. Substantial Consummation. On the Effective Date, the Plan shall be deemed to be substantially consummated under Sections 1101 and 1127(b) of the Code.

13.15. No Admission Against Interest. Neither the filing of this Plan, the Disclosure Statement, nor any statement contained in the Plan or Disclosure Statement, is or shall be deemed an admission against interest. In the event that this Plan is not consummated, neither this Plan, the Disclosure Statement nor any statement contained in the Plan or Disclosure Statement may be used or relied upon in any manner in any suit, action, proceeding or controversy within or outside the Court involving the Debtor or any of its former or present Interest Holders, partners, members, employees or other personnel.

DATED: July 1, 2026

| | |
|---|---|
| MMA Law Firm, PLLC<br>By: */s/ Zach Moseley*<br>Zach Moseley,<br>Managing Member | The Committee<br>By: */s/ Avi Moshenberg*<br>Avi Moshenberg |
| **WALKER & PATTERSON, P.C.**<br>P.O. Box 61301<br>Houston, TX 77208<br>Johnie Patterson SBN 15601700<br>Miriam Goott SBN 24048846<br>jjp@walkerandpatterson.com<br>mgoott@walkerandpatterson.com<br>713.956.5577 (telephone)<br>713.956.5570 (fax)<br>Counsel for the Debtor | **LAWSON & MOSHENBERG PLLC**<br>Nicholas R. Lawson (Texas Bar No. 24083367)<br>Avi Moshenberg (Texas Bar No. 24083532)<br>2301 Commerce Street, Suite 200<br>Houston, TX 77002<br>Tel: 832-280-5670<br>Nick.Lawson@lmbusinesslaw.com<br>Avi.Moshenberg@lmbusinesslaw.com |

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| IN RE: | § | |
| | § | CASE NO: 24-31596 |
| MMA LAW FIRM, PLLC, | § | |
| | § | |
| Debtor. | § | CHAPTER 11 |
| | § | |

**PLAN SUPPLEMENT TO THIRD AMENDED JOINT PLAN OF LIQUIDATION OF MMA LAW FIRM, PLLC**
*[Relates to ECF Nos. 1562, 1577]*

MMA Law Firm, PLLC (the "Debtor") files this Plan Supplement pursuant to Section 1.1.52 of the Third Amended Joint Plan of Liquidation [ECF No. 1577] (the "Plan"). Capitalized terms used but not defined herein have the meanings given in the Plan. This Plan Supplement contains: (i) Exhibit A — the Schedule of Retained Causes of Action and Related Litigation; (ii) Exhibit B — the identity of the members of the Oversight Committee; and (iii) Exhibit C — the Schedule of Assumed Handling-Firm Contracts and Proposed Cure Amounts.

**Reservation of Rights.** The Schedule of Retained Causes of Action is not, and shall not be construed as, an exhaustive list. Pursuant to Sections 5.16 and 5.2 of the Plan and 11 U.S.C. § 1123(b)(3)(B), all claims, rights, and Causes of Action of the Debtor and the Estate, whether or not listed, known or unknown, asserted or unasserted, matured or unmatured, accrued or contingent, are expressly preserved and retained for prosecution, enforcement, settlement, or abandonment by the Reorganized Debtor, acting through the Plan Administrator, subject to the Oversight Committee's rights under the Plan. The failure to list, describe, or identify any claim or Cause of Action shall not constitute, and shall not be deemed to constitute, a waiver, release, abandonment, or estoppel of such claim or Cause of Action, and no party may rely on the omission of any claim or Cause of Action from this Plan Supplement as a defense, release, or bar. Claims listed and disclosed in the Debtor's Schedules are incorporated in full. The Debtor reserves the right to amend or supplement this Plan Supplement at or before the Confirmation Hearing.

**EXHIBIT A**

**SCHEDULE OF RETAINED CAUSES OF ACTION AND RELATED LITIGATION**

## I. Pending Adversary Proceedings (U.S. Bankruptcy Court, Southern District of Texas)

All claims and Causes of Action asserted, or that could be asserted, in pending adversary proceedings, including all fee-recovery, turnover, quantum meruit, unjust enrichment, contract, and related claims against successor and handling law firms, are retained:

| Case | Adv. No. | Filed | Status |
|---|---|---|---|
| MMA Law Firm, PLLC, et al. v. Morris Bart, LLC | 24-03127 | 06/24/2024 | Pending (reference withdrawn; see Exhibit A, Parts II–III) |
| MMA Law Firm, PLLC v. Laborde Earles Law Firm LLC | 24-03130 | 06/28/2024 | Pending |
| MMA Law Firm, PLLC v. Hair & Shunnarah Trial Attorneys, LLC | 24-03269 | 12/17/2024 | Pending |
| MMA Law Firm, PLLC v. Barcus Arenas, PLLC | 25-03018 | 01/28/2025 | Pending |
| MMA Law Firm, PLLC v. New Orleans Legal, LLC (and Gulf Coast Attorneys, LLC, per amended complaint) | 25-03027 | 02/05/2025 | Pending |
| MMA Law Firm, PLLC v. The Chopin Law Firm LLC | 25-03029 | 02/06/2025 | Pending |
| MMA Law Firm, PLLC v. Morris Bart, LLC | 25-03799 | 10/31/2025 | Pending |
| MMA Law Firm, PLLC v. Hair Shunnarah Trial Attorneys, LLC | 26-03028 | 02/03/2026 | Pending |
| MMA Law Firm, PLLC v. The Morgan Law Group of Louisiana, LLC | 26-03097 | 04/07/2026 | Pending |
| MMA Law Firm, PLLC v. Ben Baker, Attorney At Law, PLLC | 26-03099 | 04/07/2026 | Pending |
| MMA Law Firm, PLLC v. Montiel Hodge, LLC | 26-03102 | 04/07/2026 | Pending |
| MMA Law Firm, PLLC v. Godbey Giardina Law Group, LLC | 26-03103 | 04/08/2026 | Pending |
| MMA Law Firm, PLLC v. Merlin Law Group, P.A. | 26-03104 | 04/08/2026 | Pending |
| MMA Law Firm, PLLC v. AMO Trial Lawyers, LLC | 26-03106 | 04/08/2026 | Pending |
| MMA Law Firm, PLLC v. The Monson Law Firm, LLC | 26-03107 | 04/08/2026 | Pending |
| MMA Law Firm, PLLC v. Chauvin Law Firm, LLC | 26-03109 | 04/08/2026 | Pending |
| MMA Law Firm, PLLC v. Loftin Law Group, LLC | 26-03110 | 04/08/2026 | Pending |
| MMA Law Firm, PLLC v. LaHatte Law Firm, LLC | 26-03112 | 04/08/2026 | Pending |
| MMA Law Firm, PLLC v. Jim S. Hall & Assoc., LLC | 26-03113 | 04/08/2026 | Pending |
| MMA Law Firm, PLLC v. Vilar & Green, LLC | 26-03114 | 04/08/2026 | Pending |
| MMA Law Firm, PLLC v. Huber Thomas, LLP | 26-03115 | 04/08/2026 | Pending |
| MMA Law Firm, PLLC v. Heath Law Group, LLC | 26-03116 | 04/08/2026 | Pending |
| MMA Law Firm, PLLC v. Equal Access Justice Fund, LP, et al. | 26-03135 | 04/24/2026 | Pending |

## II. Civil Actions Pending in the U.S. District Court for the Southern District of Texas (Including Withdrawn-Reference Matters)

The following civil actions arise from or relate to the adversary proceedings above, including matters in which the District Court has withdrawn the reference in whole or in part. All Estate claims and Causes of Action asserted or assertable therein are retained. Nothing herein expands or contracts the jurisdiction of any court:

| Case | Civil Action No. |
|---|---|
| In re MMA Law Firm, PLLC (withdrawal of the reference and related matters) | 4:24-cv-02793 |
| MMA Law Firm, PLLC v. Morris Bart, LLC | 4:24-cv-04446 |
| Related Morris Bart withdrawal-of-reference matter identified in the District Court's December 12, 2024 order | 4:24-cv-03443 |
| Related Morris Bart withdrawal-of-reference matter identified in the District Court's December 12, 2024 order | 4:24-cv-04343 |
| MMA Law Firm, PLLC v. Laborde Earles Law Firm, LLC | 4:25-cv-00097 |
| MMA Law Firm, PLLC v. The Voorhies Law Firm | 4:25-cv-00291 |
| MMA Law Firm, PLLC v. Hair & Shunnarah Trial Attorneys, LLC | 4:25-cv-00990 |
| MMA Law Firm, PLLC v. Allied World Insurance Company | 4:25-cv-00991 |
| MMA Law Firm, PLLC v. Barcus Arenas, PLLC | 4:25-cv-01493 |
| In re MMA Law Firm, PLLC | 4:25-cv-02687 |
| MMA Law Firm, PLLC v. Cox, Cox, Filo, Camel, Wilson & Brown, LLC | 4:25-cv-03179 |
| Morris Bart, LLC v. MMA Law Firm, PLLC | 4:25-cv-04917 |
| Morris Bart-related civil action referenced in the parties' filings | 4:25-cv-04059 |
| Morris Bart-related civil action referenced in the parties' filings | 4:25-cv-05013 |
| Morris Bart-related civil action referenced in the parties' filings | 4:25-cv-05576 |
| MMA Law Firm, PLLC v. New Orleans Legal, LLC, et al. | 4:25-cv-05459 |
| MMA Law Firm, PLLC v. Morris Bart, LLC | 4:26-cv-00642 |
| MMA Law Firm, PLLC v. Hair Shunnarah Trial Attorneys, LLC | 4:26-cv-04226 |

## III. Appellate Proceedings

| Proceeding | No. |
|---|---|
| MMA Law Firm, PLLC v. Morris Bart, LLC (U.S. Court of Appeals for the Fifth Circuit) | 26-20046 |

## IV. Tolled Claims Against John Zachary Moseley

Pursuant to the Stipulation and Tolling Agreement between the Debtor and John Zachary Moseley dated April 2, 2026 [ECF No. [__]], all statutes of limitations, statutes of repose, laches, and other time-based bars applicable to any claim of the Estate against Mr. Moseley are tolled until one (1) year following entry of an order confirming a chapter 11 plan. The Estate expressly retains all such tolled claims, whether arising before or after the Petition Date, known or unknown, matured or unmatured, accrued or contingent, including without limitation: (i) avoidance actions under chapter 5 of the Bankruptcy Code, including preference claims under 11 U.S.C. § 547 and fraudulent transfer claims under 11 U.S.C. §§ 544 and 548 and applicable state law; (ii) claims for breach of fiduciary duty; (iii) claims for turnover of property or records under 11 U.S.C. § 542; and (iv) any other claims or Causes of Action arising under applicable federal or state law, together with all remedies thereon. Consistent with the Disclosure Statement, the Estate holds no chapter 5 or avoidance Causes of Action against Katy Ohlsson or Morgan Weaver-Gallacher, and nothing herein asserts any such claim.

## V. Settled and Resolved Adversary Proceedings — Retained Enforcement Rights

The Estate retains all rights to enforce, and to collect all amounts due under, each settlement agreement and agreed order in the following resolved matters, including all rights upon default and all rights under any order approving such settlement:

| Case | Adv. No. | Status |
|---|---|---|
| MMA v. The Voorhies Law Firm | 24-03134 | Settled (ECF 877) |
| MMA v. Equal Access Justice Fund, LP, et al. | 24-03208 | Settled (9019 Order, ECF 683) |
| MMA, et al. v. Allied World Insurance Company, et al. | 24-03212 | Dismissed |
| MMA v. Daly & Black, PC | 24-03223 | Settled (ECF 1409) |
| MMA v. The Sangisetty Law Firm | 24-03230 | Settled (ECF 1509) |
| MMA v. Broussard Injury Lawyers, LLC | 25-03017 | Settled (ECF 1564) |
| MMA v. Broussard & Dove, APLC | 25-03021 | Settled (ECF 1280) |
| MMA v. Chehardy, Sherman, Williams, Recile & Hayes, L.L.P. | 25-03026 | Settled (ECF 1279) |
| MMA Law Firm, PLLC v. Pandit Law Firm, LLC | 25-3028 | Settled (ECF 1565) |
| MMA v. Cox, Cox, Filo, Camel, Wilson & Brown, LLC | 25-03032 | Settled (ECF 1508) |
| LIGA v. MMA[1] | 25-03429 | Settled (ECF 834) |
| MMA v. Cristobal M. Galindo P.C. | 25-03633 | Settled (ECF 832) |
| MMA Law Firm, PLLC v. Robichaux, Mize, Wadsack, Richardson & Watson, L.L.C. | 26-03001 | Settled (ECF 1565) |
| MMA v. Houghtaling Law Firm, LLC | 26-03065 | Settled (ECF 1510) |
| MMA Law Firm, PLLC v. Dunlap & Shipman, P.A. | 26-03098 | Dismissed |
| MMA v. Houghton Bradford Whitted PC, LLO | 26-03100 | Dismissed |
| MMA v. Scandurro & Layrisson, LLC | 26-03105 | Dismissed |
| MMA v. Cueria Law Firm, LLC | 26-03111 | Settled (ECF 1563) |

The Estate further retains all rights under the settlements with the following parties resolved without the filing of an adversary proceeding:

| Settling Party | Approval Order (ECF No.) |
|---|---|
| Joubert Law Firm | 1155 |
| Bolen, Parker, Brenner, Lee and Miller, Ltd. | 1092 |
| Irpino Law Firm, LLC | 838 |
| Alvendia, Kelly & Demarest, LLC | 837 |
| Craven Perry, LLC | 836 |
| Becnel Law | 835 |
| Bagget McCall, LLC | 833 |

[1] Entitlement to funds deposited by LIGA have been resolved except for "funds deposited by the Louisiana Insurance Guaranty Association relating to Hair & Shunnarah Trial Attorneys, LLC, in the total amount of $26,627.85" which remain in the Court's registry pending further order of the Court. See ECF No. 1216 and ECF No. 1220. All other funds related to LIGA deposits have been disbursed.

### VI. Pending Rule 9019 Motions Not Yet Approved

The following compromises remain subject to Court approval under Bankruptcy Rule 9019. To the extent any such compromise is not approved or consummated, all underlying claims and Causes of Action are expressly retained and may be prosecuted by the Plan Administrator:

| Settling Party | Adv. No. | Pending 9019 Motion (ECF No.) |
|---|---|---|
| MMA Law Firm, PLLC v. Glago Williams, LLC | 26-03101 | 1587 |

The foregoing includes any other motion to compromise pending as of the Effective Date.

### VII. Claims Objections and Proof-of-Claim Litigation (Catch-All)

The Estate retains, and the Plan Administrator may prosecute, all rights, claims, defenses, and Causes of Action relating to Claims asserted against the Estate, including without limitation: (i) all objections to any proof of Claim or Interest filed or deemed filed in this case, whether or not an objection is pending as of the Effective Date; (ii) all rights to assert counterclaims, setoff, and recoupment against any claimant; (iii) all rights under 11 U.S.C. §§ 502 (including § 502(d)), 503, 506, 507, and 510, including claim disallowance, reclassification, and equitable or contractual subordination; (iv) all rights with respect to scheduled-versus-filed variances, late-filed Claims, amended Claims, and transferred Claims; and (v) all rights to seek estimation of any Claim under 11 U.S.C. § 502(c). The following Claims have been resolved, with all rights and claims retained:

| Claimant | Claim No. | Dismissed At (ECF No.) |
|---|---|---|
| Katherine Monson, Individually and for all Similarly Situated in Plaintiff Case | 43 | 739 |

### VIII. Other Retained Rights and Potential Claims

The Estate further retains: (i) all fee-recovery and related claims against any successor or handling law firm not listed above, whether or not suit has been filed; (ii) all contractual rights to attorneys' fees and expenses arising from the Mass Tort Dockets (Roundup, Tylenol/APAP, and NEC) and the Non-WP Cases, including claims against co-counsel and affiliated counsel; (iii) all rights under the Secondment Agreement and other handling-firm agreements, including fees held in trust thereunder; (iv) all rights of the Estate, if any, with respect to insurance policies and proceeds, subject to the District Court's ruling regarding the Allied World Policies and the insurance-neutrality provisions of the Plan; (v) all turnover claims under 11 U.S.C. § 542; and (vi) all avoidance and other chapter 5 Causes of Action against any Entity (subject to Part IV above), whether or not identified herein.

In addition, claims asserted in the Debtor's Motion to Compel Compliance with 9019 Order and Settlement Agreement Against Cristobal M. Galindo, P.C. filed by the Debtor are specifically retained. See ECF No. 1368.

### IX. Related Litigation Involving the Debtor or Non-Debtors (Informational)

The following related matters are identified for completeness and disclosure only; their listing does not assert an Estate interest and does not alter the treatment of any Claim or the rights of any party under the Plan:

| Matter | Court / Case No. | Notes |
|---|---|---|
| EAJF Guaranty Litigation against John Zachary Moseley | District Court of Harris County, Texas | Preserved to EAJF under the EAJF Settlement [ECF Nos. 588, 683]; expressly unaffected by the Plan |
| Equal Access Justice Fund, LP, et al. litigation | U.S. District Court, S.D. Tex., No. 4:23-cv-00928 | Non-debtor guaranty litigation |
| Access Restoration Services US, Inc. v. MMA Law Firm, PLLC, et al. | 270th Judicial District Court, Harris County, Texas, Cause No. 2023-25422 | Pending against Mr. Moseley |
| Apex Roofing and Restoration, L.L.C. v. Richard William Huye, III, et al. | Civil District Court, Orleans Parish, Louisiana, No. 2023-2475 | Malpractice claims against former MMA attorneys |
| Malpractice and related claims against the Debtor and its former attorneys | Various | Payable, if at all, from the Allied World Policies per prior orders [ECF Nos. 815, 1281, 1410, 1411] |

**EXHIBIT B**

**IDENTITY OF OVERSIGHT COMMITTEE MEMBERS**

Pursuant to Section 1.1.52 of the Plan and Section IV.C of the Disclosure Statement, the members of the Oversight Committee are: (i) **[NO DESIGNATION]**, designated by Equal Access Justice Fund, LP and EAJF ESQ Fund, LP; (ii) **Scott Jamison**, designated by the Official Committee of Unsecured Creditors; and (iii) **Jimmy Doles**, designated by the Official Committee of Unsecured Creditors.

# EXHIBIT C

## SCHEDULE OF ASSUMED HANDLING-FIRM CONTRACTS AND PROPOSED CURE AMOUNTS

Pursuant to Section 6.1 of the Plan and 11 U.S.C. § 365, the Debtor identifies the following executory contracts with handling firms and co-counsel[2] that will be assumed effective as of the Effective Date, together with the proposed amount necessary to cure any default under 11 U.S.C. § 365(b)(1):

| Counterparty | Agreement | Proposed Cure Amount |
|---|---|---|
| Webster Law | Co-counsel / fee-sharing arrangements relating to the Non-WP Cases (approx. 263 cases) | $0.00 |
| VG Law Group | Co-counsel / fee-sharing arrangements relating to the Non-WP Cases (approx. 213 cases) | $0.00 |
| Baily & Glasser, LLP — Roundup docket | Handling / fee-sharing agreement(s) relating to the Roundup docket (approx. 720 cases) | $0.00 |
| Keller Postman — Tylenol/APAP docket | Handling / fee-sharing agreement(s) relating to the Tylenol/APAP docket (approx. 2,100 cases) | $0.00 |
| Keller Postman— NEC docket | Handling / fee-sharing agreement(s) relating to the NEC docket (approx. 135 cases) | $0.00 |
| All counterparties to Agreements approved by the Court in this case | All Court-approved agreements, to the extent executory (Plan § 6.1) | $0.00 |

**Cure Procedure.** The Debtor proposes a cure amount of $0.00 for each assumed contract, on the basis that all undisputed amounts owed thereunder have been or will be paid in the ordinary course. Any counterparty that disputes a proposed cure amount, the assumption of its contract, or adequate assurance of future performance must file an objection with the Court no later than the commencement of the Confirmation Hearing on August 4, 2026 at 10:30 a.m. (prevailing Central Time). If no timely objection is filed, the counterparty shall be deemed to have consented to assumption and to a cure amount of $0.00, and shall be forever barred from asserting any cure amount or other default arising on or before the Effective Date against the Debtor, the Reorganized Debtor, or the Plan Administrator. If a timely objection is filed, the disputed cure amount shall be determined by the Court, and the Reorganized Debtor may, with the consent of the Oversight Committee, elect to reject the applicable contract in lieu of paying the cure amount determined by the Court, with any resulting rejection damages claim to be filed within thirty (30) days of such rejection and treated as a Class 4 General Unsecured Claim.

**Reservation.** Assumption of a contract listed above shall not constitute a waiver, release, or adjudication of (i) any claim, right, or Cause of Action of the Estate against the counterparty, including with respect to fees held in trust or fee-allocation disputes, all of which are expressly retained under Exhibit A, or (ii) any claim or defense of any counterparty with respect to such disputes, all of which are expressly preserved. The listing of a contract is not an admission that such contract is executory, and the Debtor reserves the right to amend this Exhibit C, including to add or remove contracts, at or before the Confirmation Hearing.

Dated: July 30, 2026

[2] Debtor does not assert that the contracts identified are executory, however they are listed and treated in the event the Court, in the future, may make a determination that the contracts are executory.

Respectfully submitted,

WALKER & PATTERSON, P.C.

By: *<u>/s/ Johnie Patterson</u>*
Johnie Patterson
SBN 15601700
Miriam T. Goott
SBN 24048846
P.O. Box 61301
Houston, TX 77208
(713) 956-5577
jjp@walkerandpatterson.com

COUNSEL FOR THE DEBTOR

**Certificate of Service**

I hereby certify that on July 30, 2026, a true and correct copy of the foregoing Plan Supplement was served via the Court's CM/ECF system on all parties registered to receive electronic notice in this case.

By: *<u>/s/ Johnie Patterson</u>*
Johnie Patterson

United States Bankruptcy Court
Southern District of Texas

In re: Case No. 24-31596-evr
MMA Law Firm, PLLC Chapter 11
Official Committee of Unsecured Creditor
Debtors

# CERTIFICATE OF NOTICE

| | | |
|---|---|---|
| District/off: 0541-4 | User: ADIuser | Page 1 of 9 |
| Date Rcvd: Aug 06, 2026 | Form ID: pdf001 | Total Noticed: 299 |

The following symbols are used throughout this certificate:

| Symbol | Definition |
|---|---|
| + | Addresses marked '+' were corrected by inserting the ZIP, adding the last four digits to complete the zip +4, or replacing an incorrect ZIP. USPS regulations require that automation-compatible mail display the correct ZIP. |
| ++ | Addresses marked '++' were redirected to the recipient's preferred mailing address pursuant to 11 U.S.C. § 342(f)/Fed. R. Bank. P. 2002(g)(4). |
| ^ | Addresses marked '^' were sent via mandatory electronic bankruptcy noticing pursuant to Fed. R. Bank. P. 9036. |
| # | Addresses marked '#' were identified by the USPS National Change of Address system as requiring an update. While the notice was still deliverable, the notice recipient was advised to update its address with the court immediately. |
| ## | Addresses marked '##' were identified by the USPS National Change of Address system as undeliverable. Notices will no longer be delivered by the USPS to these addresses; therefore, they have been bypassed. The debtor's attorney or pro se debtor was advised that the specified notice was undeliverable. |

**Notice by first class mail was sent to the following persons/entities by the Bankruptcy Noticing Center on Aug 08, 2026:**

| Recip ID | | Recipient Name and Address |
|---|---|---|
| db | + | MMA Law Firm, PLLC, Suite 810, 1235 North Loop West, Houston, TX 77008-1764 |
| aty | + | Misty Segura, 7601 FM 1960 Rd E, # 349, Atascocita, TX 77346-2209 |
| aty | + | The Lausten Group, 650 Poydras Street, Suite 1400, PB#3924, New Orleans, LA 70130-6116 |
| intp | + | AMO Trial Lawyers, LLC, 3045 Ridgelake Dr., Suite 100, Metairie, LA 70002-4937 |
| cr | + | Access Restoration Services US, Inc., Attn: Lisa M. Norman, 1885 Saint James Place, 15th Fl, Houston, TX 77056 UNITED STATES 77056-4175 |
| intp | + | Allied World Insurance Company, 1690 New Britain Ave.,, Suite 101, Farmington, CT 06032-3361 |
| intp | + | Barbara Gaunichaux, 260 Dale ave, Gretna, LA 70056-7852 |
| intp | + | Barcus Arenas, PLLC, c/o CTO Corporation System, 1999 Bryan Street, Suite 900, Dallas, TX 75201-3140 |
| intp | + | Bensalah Hameurlaine, 57 Emile ave, Kenner, LA 70065-3769 |
| cr | + | Betty Johnson, 417 Belle Chasse Dr., Laplace, LA 70068-3401 |
| cr | + | Charles William Nicolas Tapp, 4614 Quarter Charge Dr, Annandale, VA 22003, UNITED STATES 22003-4622 |
| cr | + | Cristobal M. Galindo, PC d/b/a Galindo Law, c/o Hayward PLLC, 10501 N. Central Expy., Ste. 106, Dallas, TX 75231-2203 |
| intp | + | Douglas Freeman, 22108 W McKinney Rd, Springfield, LA 70462-8903 |
| cr | + | EAJF ESQ Fund, LP, c/o Misty A. Segura, Spencer Fane LLP, 3040 Post Oak Blvd., Ste. 1400, Houston, TX 77056 UNITED STATES 77056-6584 |
| cr | + | Equal Access Justice Fund, LP, c/o Misty A. Segura, Spencer Fane LLP, 3040 Post Oak Blvd., Ste. 1400, Houston, TX 77056 UNITED STATES 77056-6584 |
| intp | + | Frank Martin, 42587 Highway 10, Franklinton, LA 70438-5645 |
| cr | + | Glago Williams, LLC, 909 Poydras St., Suite 2950, New Orleans, LA 70112-4006 |
| intp | + | Gulf Coast Attorneys, LLC, c/o Albert J. Derbes IV, 3027 Ridgelake Drive, Metairie, LA 70002-4924 |
| intp | + | James Jochum, 709 Codifer Blvd., Metairie, LA 70005-3750 |
| cr | + | James Marshall McClenny, 380 Ridge Lake Scenic Drive, Montgomery, TX 77316-6933 |
| intp | + | Jennifer Jason Joy & Associates, PLLC, Suite 1801, 909 Texas St., Suite 1801, Houston, TX 77002-3192 |
| cr | + | Katrena Leigh Henderson, 4614 Quarter Charge Dr, Annandale, VA 22003, UNITED STATES 22003-4622 |
| cr | + | Kirsten Young, 5341 Brownfields Dr, Baton Rouge, LA 70811-1070 |
| dft | + | LaHatte Law Firm, LLC, 2000 Clearview Parkway, Suite 203, Metairie, LA 70001-2441 |
| cr | + | Latosha Barrow, 1058 Balsam Ave., Baton Rouge, LA 70807-2964 |
| intp | + | Pandit Law Firm, LLC, c/o Raj Pandit, 701 Poydras Street, Suite 3950, New Orleans, LA 70139-7731 |
| cr | + | Patricia Briscoe, 7801 Warsaw St, Metairie, LA 70003-6429 |
| cr | + | Paul Brown, 19380 Old Covington HWY, Hammond, LA 70403-0755 |
| cr | | Starlight Studios, LLC, c/o Leo D. Congeni, Suite 2750, New Orleans, LA 70130, UNITED STATES |
| cr | #+ | Stephen Landreneau, 104 Piney Cv, West Monroe, LA 71291-7461 |
| wit | + | Tessa Vorhaben, c/o Stephen P. Strohschein, Hinshaw & Culbertson LLP, 400 Convention Street, Suite 1001 Baton Rouge, LA 70802-5616 |
| intp | + | The Monson Law Firm, LLC, 5 Sanctuary Boulevard, Suite 101, Mandeville, LA 70471-5304 |
| cr | + | Trung Nguyen, 3531 W Esplanade Ave N, Metairie, LA 70002-3343 |
| intp | + | Voorhies Law Firm, LLC, c/o The Derbes Law Firm, 3027 Ridgelake Dr, Metairie, LA 70002-4924 |
| cr | + | Wayne Galjour, Jr, 732 Oakwood Dr, Gretna, LA 70056-3008 |

intp + Yulonda Alexander, P.O Box 125, Wilson, LA 70789-0125
12671190 + ADP Run, 7924 West Sahara Avenue, Las Vegas, NV 89117-1990
12671201 + AT&T - old account (TX), P.O. Box 5019, Carol Stream, IL 60197-5019
12749291 + Abdul Muhammad, 58025 Geroge St., Plaquemine, LA 70764-2207
12750011 + Access Restoration Services US, Inc., Attn: Scott Jacobi, 27657 Commerce Oaks Drive, Conroe, Tx 77385-4405
12749351 + Addison Houston, 521 Sykes St., Shreveport, LA 71104-3639
12671192 + Alexandria Rahn, Suite 800, 10440 N. Central Expressway, Dallas, TX 75231-2264
12671193 + Alexandria Twiss, Suite 4200, 1717 Main St., Dallas, TX 75201-4876
12671194 + Alexis A. Taylor, LLC, P.O. Box 1060, Independence, LA 70443-1060
12671195 + Alixe Duplechain, Suite 3300, 201 St. Charles Ave., New Orleans, LA 70170-3400
12671196 + All Peril Adjusting, LLC, 594 Sawdust Rd., Suite 354, The Woodlands, TX 77380-2215
12749613 + Allied World Insurance Company, c/o Werner Ahari Mangel LLP, 8117 Preston Road, Suite 300, Dallas, TX 75225-6347
12671197 + Alvendia, Kelly, Demarest Law, LLC, 909 Poydras Street, Suite 1625, New Orleans, LA 70112-4067
12671199 + Andrea Miller, Suite 1600, 909 Poydras, New Orleans, LA 70112-4013
12671200 + Andres Holmgren, Suite 3300, 201 St. Charles Ave., New Orleans, LA 70170-3400
12746687 + Apex Roofing and Restoration, LLC, c/o Scott R. Bickford, Esq, 338 Lafayette Street, New Orleans, LA 70130-3244
12671202 + Baggett McCall LLC, 3006 Country Club Road, Suite 100, Lake Charles, LA 70605-5920
12671203 + Barcus Arenas PLLC, 2200 N Loop West, Ste. 108, Houston, TX 77018-1753
12671204 + Bayou Adjusting, P.O. Box 837, Walker, LA 70785-0837
12912777 + Bayou Adjusting LLC, c/o Matthew R. Addison, 29675 Christopher Blvd, Walker, LA 70785-5908
12671205 + Becker & Hebert, 201 Rue Beauregard, Lafayette, LA 70508-3251
12671206 + Beverly DeLaune, 755 Magazine St., New Orleans, LA 70130-3629
12671207 #+ Bisig Law Firm, LLC, 206 N. Church Street, Jennings, LA 70546-5810
12671208 + Bolen, Parker, Brenner, Lee & Miller, Lt, 709 Versailles Blvd., Alexandria, LA 71303-2352
12671209 #+ Boling Law Firm, LLC, 541 Julia St., Ste. 300, New Orleans, LA 70130-3695
12770754 + Bonnie J. Brown, c/o The Kassab Law Firm, 1214 Elgin Street, Houston, Texas 77004, eserve@kassab.law 77004-2829
12671211 + Brian Craig Johnson, P.E., 7600 Chicago Ave. S, Richfield, MN 55423-4450
12671212 + Brian F Guillot Attorney at Law, 1716 Apple St, Metairie, LA 70001-2349
12671213 + Broussard & Dove, APLC, 7605 Park Avenue, Houma, LA 70364-3642
12671214 + Broussard Injury Lawyers, 321 Veterans Memorial Blvd, Suite 205, Metairie, LA 70005-3060
12671215 + Burgos & Associates, LLC, 3535 Canal Street, Suite 200, New Orleans, LA 70119-6170
12765667 + CURTRECHIA NUNN, 5015 B PLACE, MERIDIAN, MS 39305-2258
12671216 + Cameron Snowden, Suite 2900, 2933 Myrtle Ave., Baton Rouge, LA 70806-6847
12770759 + Carey D. Yazeed, c/o The Kassab Law Firm, 1214 Elgin Street, Houston, Texas 77004, eserve@kassab.law 77004-2829
12671218 + Carl J. Selenberg, Attorney at Law, 3713 Airline Drive, Metairie, LA 70001-5836
12671219 + Catherine Patriarca, Suite 2400, 601 Poydras St., New Orleans, LA 70130-6036
12671220 + Chad T. Wilson Law Firm, PLLC, 455 East Medical Center Blvd., Ste. 555, Webster, TX 77598-4405
12671221 + Charbonnet Law Firm, LLC, 501 Clearview Parkway, Metairie, LA 70001-4626
12671222 + Chehardy Sherman Williams Law Firm, 1 Galleria Boulevard, Suite 1100, Metairie, LA 70001-2033
12671223 + Chelsea Dazet Attorney at Law, 221 E Kirkland Street, Covington, LA 70433-2701
12746580 + Christine Mockosher Griffin, 8483 Nick Rd., Greenwood, LA 71033-2615
12749408 + Christovich & Kearney, LLP, 601 Poydras St. Suite 2300, New Orleans, LA 70130-6078
12671224 + Civil Legal Services, LLC, 2221 Saint Claude Ave, New Orleans, LA 70117-8455
12671225 + Claire Easterling Pontier, Suite 3250, 1100 Poydras Street, New Orleans, LA 70163-3201
12770752 + Claude Britton, III, c/o The Kassab Law Firm, 1214 Elgin Street, Houston, Texas 77004, eserve@kassab.law 77004-2829
12671227 + Clay Cosse, Suite 4200, 1717 Main St., Dallas, TX 75201-4876
12671228 + Clerk of Court - Beauregard Parish, P.O. Box 100, DeRidder, LA 70634-0016
12671229 + Clerk of Court - Caddo Parish, 501 Texas St., Room 103, Shreveport, LA 71101-5402
12671230 + Clerk of Court - Calcasieu Parish, P.O. Box 1030, Lake Charles, LA 70602-1030
12671231 + Coastal Claims, 2650 N Dixie Fwy, New Smyrna Beach, FL 32168-5774
12671233 + Comcast - Old account (TX), P.O. Box 8587, Philadelphia, PA 19101-8587
12671232 + Comcast - old account (FL), 444 Highway 96 East, St. Paul, MN 55127-2557
12671234 Concur, SAP Philippines, Inc., Topaz Rd. & Ruby Rd., 1600 Manila, Philippines
12671235 + Cornerstone Consulting Group, 243 La Costa Circle, Weatherford, TX 76088-2208
12671236 + Coss Law Firm, LLC, 1515 Poydras Street, Suite 900, New Orleans, LA 70112-4505
12671237 + Cox Cox Filo Camel Wilson & Brown, LLC, 723 Broad Street, Lake Charles, LA 70601-4338
12749871 + Cristobal M. Galindo, P.C., c/o Charlie Shelton, Hayward PLLC, 7600 Burnet Road, Suite 530, Austin, Texas 78757-1269
12671238 + Cueria Law Firm, LLC, 650 Poydras Street, Suite 2740, New Orleans, LA 70130-6123
12770757 + Curtis R. Davis, c/o The Kassab Law Firm, 1214 Elgin Street, Houston, Texas 77004, eserve@kassab.law 77004-2829
12687954 + Curtis and Ardene Tassin, Health Law Group LLC, 201 St.Charles Avenue, Suite 2500, New Orleans, LA 70170-2500
12749293 + Cynthia Johnson, 1318 Bank Avenue, New Iberia, LA 70560-6149
12734040 + Cynthia Troxclair, PO Box 1731, Kinder, LA 70648-1731
12671239 + Dale Jefferson, Suite 1100, 808 Travis St., Houston, TX 77002-5831

| | | |
|---|---|---|
| 12671240 | + | Daly & Black, P.C., 2211 Norfolk St., #800, Houston, TX 77098-4030 |
| 12671241 | + | Daly & Black, PC, 2211 Norfolk Street, Suite 800, Houston, TX 77098-4030 |
| 12749292 | + | Darrell Broussard, 420 Tommys Rd., Sunset, LA 70584-5330 |
| 12671242 | + | David Schenck, Suite 4200, 1717 Main St., Dallas, TX 75201-4876 |
| 12749353 | + | Deborah Hollie, 390 Burks Rd., Starks, LA 70661-5042 |
| 12671243 | + | Definiti, P.O. Box 95357, Grapevine, TX 76099-9733 |
| 12671244 | + | Delphin Law Offices, 626 Broad St, Lake Charles, LA 70601-4337 |
| 12671245 | + | Delsa Law Firm, 3260 Range Court, Mandeville, LA 70448-8494 |
| 12804987 | + | Destiney Griffin, 3841 Accacia Lane, Harvey, LA 70058-2169 |
| 12671246 | + | Deutsch Kerrigan LLP, 755 Magazine Street, New Orleans, LA 70130-3629 |
| 12671247 | + | Didriksen, Saucier & Woods, PLC, 3114 Canal Street, New Orleans, LA 70119-6202 |
| 12750816 | + | Disaster Solutions, 192 Solhelm Lane, Raleigh, NC 27603-5555 |
| 12671249 | + | Don A Rouzan & Associates LLA Counsellor, 1010 Common St, Suite 2410, New Orleans, LA 70112-2462 |
| 13153241 | + | Donald Blais, 1318 Harmony Church Road, Dawsonsville, GA 30534-6303 |
| 12671250 | + | Dupont Claim Services, 1721 Hwy 22W, Madisonville, LA 70447-9446 |
| 12770751 | + | Dwane Borel, c/o The Kassab Law Firm, 1214 Elgin Street, Houston, Texas 77004-2829 |
| 12750175 | + | EAJF ESQ Fund, LP, c/o Misty A. Segura, Spencer Fane, LLP, 3040 Post Oak Blvd., Ste. 1400, Houston, TX 77056-6584 |
| 12671251 | + | Egenberg Trial Lawyers, 650 Poydras Street, Suite 2000, New Orleans, LA 70130-7206 |
| 12671252 | + | Elsbet Smith, Suite 200, 111 N. Oak St., Hammond, LA 70401-3240 |
| 12671253 | + | Equal Access Justice Fund, LP, c/o Fred Johnson, Spencer Fane, LLP, 3040 Post Oak Blvd, Suite 1400, Houston, TX 77056-6584 |
| 12749305 | + | Ernest Willaims, 110 Hansel St., New Iberia, LA 70560-5040 |
| 12749304 | + | Eunice Pillette, 503 East Valcourt St., Abbeville, LA 70510-2329 |
| 12671255 | + | Exact Building Consultants, 18702 69th Ave E, Bradenton, FL 34211-7096 |
| 12671256 | + | Favret Carriere Cronvich, 650 Poydras Street, Suite 2300, New Orleans, LA 70130-6162 |
| 12671257 | + | Fitz-Gerald Hebert & DeLouche, 2306 Sampson St, Westlake, LA 70669-2712 |
| 12671258 | + | Frank J D'Amico Jr, APLC, 4608 Rye Street, Metairie, LA 70006-5314 |
| 12671259 | + | Frederick M Lupfer, 1824 County Road 3113, Jacksonville, TX 75766-6185 |
| 12671260 | + | Frischhertz Impastato Person Injury Law, 1140 St. Charles Ave., New Orleans, LA 70130-4332 |
| 12671261 | #+ | Galindo Law, 4151 Southwest Fwy, #602, Houston, TX 77027-7320 |
| 12671262 | + | Galindo Law Trial Attorneys, 4151 Southwest Fwy, Suite 602, Houston, TX 77027-7320 |
| 12749560 | + | Ginger Beebe, 21 Virgil Beebe Rd, Lena, LA 71447-9676 |
| 12671263 | + | Glabal Estimating Services, Inc., 25000 Pitkin Rd., Suite 201/202, Spring, TX 77386-2467 |
| 12671264 | + | Glago Williams Attorney at Law, 909 Poydras Street, 29th Floor, New Orleans, LA 70112-4006 |
| 12671266 | + | Godbey Giardina Law Group, 1381 Fremaux Avenue, Slidell, LA 70458-8316 |
| 12671267 | + | Gordon McKernan Injury Attorneys, 5656 Hilton Avenue, Baton Rouge, LA 70808-2524 |
| 12671268 | + | Gordon, Arata, Montgomery, Barnett, McCo, 201 St. Charles Ave, 40th Floor, New Orleans, LA 70170-1006 |
| 12671269 | + | Grant Gardiner, 3129 Bore St., Metairie, LA 70001-5333 |
| 12671270 | + | Guest Law Firm, 1900 32nd Street, Kenner, LA 70065-3675 |
| 12671271 | + | Gwyneth O'Neill, Suite 1600, 909 Poydras, New Orleans, LA 70112-4013 |
| 12671272 | + | HAAG, P.O. Box 660625, Dallas, TX 75266-0625 |
| 12749309 | + | Harold Boudreaux, 105 Crestmont Blvd, Youngsville, LA 70592-5653 |
| 12671274 | + | Harris Wells, Suite 3500, 1100 Louisiana St., Houston, TX 77002-5212 |
| 12671275 | + | Heath Law Group, LLC, 201 St. Charles Ave, Suite 2500, New Orleans, LA 70170-2500 |
| 12671276 | + | Herman, Herman & Katz, LLC, 909 Poydras Street, Suite 1860, New Orleans, LA 70112-4060 |
| 12671278 | + | Houghtaling Law Firm, LLC, 3850 Causeway Blvd, Suite 1090, Metairie, LA 70002-8141 |
| 12671279 | + | Howard Marshall, Suite 2300, 601 Poydras St., New Orleans, LA 70130-6078 |
| 12671280 | + | Huber Thomas Law, LLP, 1100 Poydras Street, Suite 2200, New Orleans, LA 70163-1123 |
| 12671281 | + | InQuest General Contracting LLC, P.O. Box 1827, Quinlan, TX 75474-0031 |
| 12671282 | + | Insurance Claim Solutions - Umpire, 1458 Old Fort Road, Farview, NC 28730-7616 |
| 12671285 | + | Iron Mountain, 3502 Bissonnet St., Houston, TX 77005-2118 |
| 12671286 | + | Irpino, Avin & Hawkins Law Firm, 2216 Magazine Street, New Orleans, LA 70130-5637 |
| 12671287 | + | J.A. Consulting, 7948 Davis Boulevard, Suite 100, North Richland Hills, TX 76182-6953 |
| 12671299 | + | JT Law Firm, 111 North Orange Ave, Ste. 800, Orlando, FL 32801-2381 |
| 12671288 | + | James McClenny, 380 Ridge Lake Scenic Dr., Montgomery, TX 77316-6933 |
| 12770756 | + | James S. Dartez, c/o The Kassab Law Firm, 1214 Elgin Street, Houston, Texas 77004, eserve@kassab.law 77004-2829 |
| 12671289 | + | Jason J. Joy & Associates, 909 Texas Ave., Suite 1801, Houston, TX 77002-3192 |
| 12671290 | + | Jean Frizzell, Suite 3500, 1100 Louisiana St., Houston, TX 77002-5212 |
| 13404715 | + | Jeffrey Alan Vitt Irrevocable Trust, 12791 S. 4230 Road, Chelsea, OK 74016-2114 |
| 13404789 | + | Jeffrey Alan Vitt, Individually & Rep. Doe / XYZ E, 12791 S. 4230 Road, Chelsea, OK 74016-2114 |
| 12767135 | + | Jesse P Barnett III, 2587 Bayou Rd, Port Barre, LA 70577-5457 |
| 12671292 | #+ | John G Toerner Attorney At Law, 19335 N 9th Street, Covington, LA 70433-8801 |
| 12671293 | + | John Jordan, P.O. Box 2828, Hammond, LA 70404-2828 |
| 12671294 | + | John M Welborn III Attorney At Law, 508 N Pine St, DeRidder, LA 70634-3908 |

| | | |
|---|---|---|
| 12750769 | + | John Zachary Moseley, 1235 N. Loop West, Suite 810, Houston, TX 77008-1764 |
| 12671295 | + | Jonathan Lemann, Suite 3250, 1100 Poydras Street, New Orleans, LA 70163-3201 |
| 12671296 | | Jones & Hill Personal Injury Attorneys, 215 West 6th Ave, Oberlin, LA 70655 |
| 12671297 | + | Joubert Law Firm APLC, 2171 Quail Run Drive, Baton Rouge, LA 70808-4287 |
| 12671298 | + | Joyner Law Firm, 2236 St Charles Ave, Suite A, New Orleans, LA 70130-5822 |
| 12671300 | + | Kaleb Blake Company Umpire Services, 1709 Gornto Road, A-308, Valdosta, GA 31601-8406 |
| 12671301 | + | Kandell, Kandell & Petrie, P.A., 2665 S Bayshore Dr, Suite 500, Miami, FL 33133-5462 |
| 12749742 | + | Katherine Monson, et al, 1100 Poydras Street, Suite 3250, New Orleans, LA 70163-3201 |
| 12735650 | + | Kevin Kelly, 1120 Wyndham South, Gretna, LA 70056-8370 |
| 12671302 | + | Kevin Tully, Suite 2300, 601 Poydras St., New Orleans, LA 70130-6078 |
| 12671303 | + | Klotz & Early Law Firm, 909 Poydras Street, Suite 2950, New Orleans, LA 70112-4006 |
| 12749564 | + | Krause & Kinsman Trial Lawyers, LLP, Saul Ewing LLP c/o Turner Falk, Esq., 1500 Market Street, 38th Floor, Philadelphia, PA 19102-2100 |
| 12671305 | + | Krause and Kinsman Trial Lawyers, 4717 Grand Ave, #300, Kansas City, MO 64112-2206 |
| 12671307 | + | LaHatte Law LLC, 2000 Clearview Pkwy, Suite 203, Metairie, LA 70001-2441 |
| 12671306 | + | Laborde Earles Injury Lawyers, 1901 Kaliste Saloom Rd, Lafayette, LA 70508-6115 |
| 12671308 | + | Law Office of Carolyn O Hines, 1330 Jackson St, Suite C, Alexandria, LA 71301-6929 |
| 12671309 | + | Law Office of Deborah E. Lonker, 3636 S I 10 Service Rd W, Suite 100, Metairie, LA 70001-6418 |
| 12671310 | + | Law Office of Laura Jean Todaro, 909 W Esplanade Ave, Suite 203, Kenner, LA 70065-2700 |
| 12671311 | + | Law Office of Phillip T. Hager, 3500 North Hullen Street, Metairie, LA 70002-3420 |
| 12671312 | + | Law Office of Stephen M Smith Attorney, 1425 N Broad St, Suite 201, New Orleans, LA 70119-2397 |
| 12671313 | + | Law Office of Steven J Rando LLC, 3530 Canal St, New Orleans, LA 70119-6109 |
| 12671314 | | Law Offices of Jeremy Moody LLC, 327 Nora Broussard Rd, Youngsville, LA 70592-5661 |
| 12671315 | + | Lawrence R. Anderson, Jr. Attorney at La, 11953 Coursey Boulevard, Baton Rouge, LA 70816-4406 |
| 12750266 | + | LeeRoy Jefferson, 2667 Sligo Road, Haughton, LA 71037-7671 |
| 12746578 | + | Linda Luz Rodriguez Wilhelm, 316 Beverly Loop, Pineville, LA 71360-5594 |
| 12749295 | + | Linda Thomas, 4224 Worthy Dr., Lake Charles, LA 70607-4810 |
| 12770755 | + | Lloyd Cox, c/o The Kassab Law Firm, 1214 Elgin Street, Houston, Texas 77004, eserve@kassab.law 77004-2829 |
| 12749736 | + | Locklin Consulting, LLC, 17319 Fountainbluff Drive, San Antonio, Texas 78248-1931 |
| 12671317 | + | Locklin Consulting, LLC, 2478 S 3rd Ave, Walla Walla, WA 99362-4478 |
| 12671318 | + | Long & Long Law Firm, 3600 Springhill Memorial Drive N., Mobile, AL 36608-1162 |
| 12749307 | + | Lorenzo Garner, 1201 Butter Street, Leesville, LA 71446-2705 |
| 12717372 | + | Louisiana Farm Bureau, P.O. Box 95008, Baton Rouge, LA 70895-9008 |
| 12671319 | + | Louisiana TWC, P.O. Box 94050, Baton Rouge, LA 70804-9050 |
| 12671320 | + | Lundy, Lundy, Soileau & South, LLP, 501 Broad Street, Lake Charles, LA 70601-4334 |
| 12770758 | + | Lynda L. Jenkins, c/o The Kassab Law Firm, 1214 Elgin Street, Houston, Texas 77004, eserve@kassab.law 77004-2829 |
| 12671321 | + | Mahfouz Law Firm, LLC, 1201 Brashear Avenue, Suite 201, Morgan City, LA 70380-1380 |
| 12671322 | + | Manning General Contractors, 402 SW Market St., Lees Summit, MO 64063-3940 |
| 12671324 | + | Marcelle Robertson Mestayer LLC, 650 Poydras St, Suite 2720, New Orleans, LA 70130-6183 |
| 12749347 | + | Marino Guillory, 101 Weaver Street, Eunice, LA 70535-2863 |
| 12671325 | + | Mark W Smith & Associates PLLC Attorneys, 500 N Causeway Blvd, Metairie, LA 70001-5340 |
| 12755723 | + | Mary C. Augustine, 210 Addie Drive, Crowley, LA 70526-7212 |
| 12671326 | + | McKee Law Firm LLC, 1100 Poydras St, Suite 1475, New Orleans, LA 70163-1409 |
| 12671327 | + | Melissa Lessel, 755 Magazine St., New Orleans, LA 70130-3629 |
| 12671328 | #+ | Mike Brandner Law Firm, 3621 Veterans Memorial Boulevard, Metairie, LA 70002-5839 |
| 12671329 | + | Mixon Carroll & Frazier LLC, P O Drawer 1619, Columbia, LA 71418-1619 |
| 12671330 | + | Montiel Hodge, 400 Poydras St, Suite 2325, New Orleans, LA 70130-3230 |
| 12671331 | + | Morris Bart LLC, 601 Poydras St, Floor 24, New Orleans, LA 70130-6036 |
| 12671332 | + | National Public Adjusting, LLC, 25015 Spring Creek Drive, Spring, TX 77380-2441 |
| 12671333 | + | New Orleans Legal LLC, 643 Magazine St, Suite 202, New Orleans, LA 70130-3436 |
| 12671334 | + | Nicaud & Sunseri Law Firm, 3000 18th St, Metairie, LA 70002-4903 |
| 12671335 | + | Noble Public Adjusting, 107 Amar Place, #103, Panama City Beach, FL 32413-5014 |
| 12671337 | + | Norris Law Firm Personal Injury, 8 North Oak St, Vidalia, LA 71373-3332 |
| 12671338 | + | Oakwoood Bank, 8411 Preston Rd, Suite 600, LB 35, Dallas, TX 75225-5545 |
| 12729369 | + | Opal Prejean, 1709 Seventh St., Lake Charles, LA 70601-5572 |
| 12671341 | + | PCG - Property Loss Consultants, 2000 Mallory Lane, Suite 130, #239, Franklin, TN 37067-8231 |
| 12671339 | + | Pandit Law, 701 Poydras Street, Suite 3950, New Orleans, LA 70139-7731 |
| 12671340 | + | Patout & Shaw, PLLC, 1235 N Loop W, 8th Floor, Houston, TX 77008-1764 |
| 12749299 | + | Paul Adams, 340 Scenic Drive, Ville Platte, LA 70586-2975 |
| 12749611 | + | Phelps Dunbar LLP, 365 Canal Street, Suite 2000, New Orleans, LA 70130-6534 |
| 12671342 | + | Philip C Hoffman Attorney at Law, 643 Magazine St, Suite 300 A, New Orleans, LA 70130-3433 |
| 12671343 | + | Pierce & Shows Attorneys, 601 St Joseph St, Baton Rouge, LA 70802-6053 |
| 12671344 | + | Principal Financial, P.O. Box 249, Itasca, IL 60143-0249 |

| | | |
|---|---|---|
| 12671345 | + | R. William Huye, III, 2106 Key West Cove, Austin, TX 78746-7256 |
| 12671346 | + | Raspanti Law Firm, 3900 North Causeway Blvd, Suite 1470 (Lakeway 1), Metairie, LA 70002-1746 |
| 12725016 | + | Regina A. Ceaser, 4200 CoCo Miguel Rd., New Iberia, LA 70560-9524 |
| 12671347 | + | Richardson Law Group, 422 E Lockwood St, Covington, LA 70433-2977 |
| 12671348 | + | Riess LeMieux LLC, 1100 Poydras St, Suite 110, New Orleans, LA 70163-1101 |
| 12671349 | | Robert Angelle, APLC, 3231 N Interstate 10 Service Rd W, Metairie, LA 70002 |
| 12671350 | + | Robert Emmet Couhig , Jr, Suite 3250, 1100 Poydras Street, New Orleans, LA 70163-3201 |
| 12671351 | + | Ron Anthony Austin, 400 Manhattan Boulevard, Harvey, LA 70058-4442 |
| 12671352 | + | Roper Ligh Attorneys, 10935 Perkins Rd, Suite B, Baton Rouge, LA 70810-3005 |
| 12671353 | + | Roy & Scott, P O Box 544, Marksville, LA 71351-0544 |
| 12671364 | + | SWLA Injury Attorneys, LLC, 949 Ryan Street, Suite 130, Lake Charles, LA 70601-5595 |
| 12671354 | + | ScanStat, P.O. Box 791522, Baltimore, MD 21279-1522 |
| 12671355 | + | Scope Pros, LLC, 8060 East Girard Avenue, Unit 619, Denver, CO 80231-4417 |
| 12671356 | + | Scott Galante, 816 Cadiz St., New Orleans, LA 70115-1512 |
| 12671357 | + | Scott Huete, 400 Manhattan Boulevard, Harvey, LA 70058-4442 |
| 12749343 | + | Shavaun Miller, 215 Ralph Street, Midland, LA 70559-1920 |
| 12671358 | + | Simien & Simien, LLC, 7908 Wrenwood Blvd., Baton Rouge, LA 70809-1796 |
| 12923286 | + | Sorted Lake Charles, Elizabeth Alexander, 4309 Essex St, Lake Charles, LA 70605-3905 |
| 12671361 | + | Spencer Fane, LP, Fred Johnson, 3040 Post Oak Blvd, Suite 1400, Houston, TX 77056-6584 |
| 12749610 | + | Starlight Studios, LLC, c/o Congeni Law Firm, LLC, 650 Poydras Street, Ste. 2750, New Orleans, LA 70130-6152 |
| 12671362 | + | Stephenson, Chavarri & Dawson LLC, 400 Poydras St, Suite 1990, New Orleans, LA 70130-3273 |
| 12671363 | + | Stolk Lab, 1711 Analog Dr., Richardson, TX 75081-1944 |
| 12671365 | + | The Chopin Law Firm, 650 Poydras Street, Suite 1550, New Orleans, LA 70130-7213 |
| 12671367 | + | The Johnson Firm Lawyers, 1419 Ryan St, Lake Charles, LA 70601-5918 |
| 12740087 | + | The Kidwell Group, LLC, d/b/a Air Quality Assessors of Florida, c/o Latham Luna Eden & Beaudine, LLP, 201 S. Orange Ave., Suite 1400 Orlando, Florida 32801-3483 |
| 12671368 | + | The King Firm, 2912 Canal St, New Orleans, LA 70119-6304 |
| 12671369 | + | The Law Firm of Hesni & Rossetti, PLC, 407 Huey P. Long Avenue, Gretna, LA 70053-5917 |
| 12671370 | + | The Law Office of Richard J Fernandez LL, 3000 W Esplanade Ave N, Suite 200, Metairie, LA 70002-1877 |
| 12671371 | + | The Mahome Firm, 5190 Canal Boulevard, Suite 102, New Orleans, LA 70124-1710 |
| 12671373 | + | The Pellegrin Firm LLC, 3500 N Hullen St, Suite 17D, Metairie, LA 70002-3420 |
| 12671374 | + | The Townsley Law Firm, 3102 Enterprise Blvd., Lake Charles, LA 70601-8722 |
| 12671375 | + | The Voorhies Law Firm, 1100 Poydras Street, Suite 2810, New Orleans, LA 70163-2810 |
| 12671377 | + | Thomas Flanagan, Suite 3300, 201 St. Charles Ave., New Orleans, LA 70170-3400 |
| 12671378 | + | Thomson Reuters, 610 Opperman Drive, Eagan, MN 55123-1340 |
| 12671379 | + | Timothy B Moore Law Office LLC, 10001 Lake Forest Blvd, Suite 870, New Orleans, LA 70127-6200 |
| 12671380 | + | Tollefson Bradley Mitchell & Melendi, LL, 2811 McKinney Ave., Suite 250, Dallas, TX 75204-8545 |
| 12671384 | + | VG Law Group, L.L.P., 8751 W. Broward Blvd., Suite 200, Plantation, FL 33324-2630 |
| 12671385 | + | VG Vilar & Green Attorneys, 1450 Dorchester Dr, Alexandria, LA 71301-3408 |
| 12671383 | + | Veron Bice Attorneys At Law, 721 Kirby St, Lake Charles, LA 70601-5333 |
| 12671386 | + | Vidal Law & CPA Firm LLC, 135 Woodlake Blvd, Kenner, LA 70065-1058 |
| 12770750 | + | Wayne J. Adams, c/o The Kassab Law Firm, 1214 Elgin Street, Houston, Texas 77004-2829 |
| 12671388 | + | Welborn & Hargett Injury Attorneys, 1540 W Pinhook Rd, Lafayette, LA 70503-3159 |
| 12671389 | + | Whitworth Law Firm, LLC, 900 France Street, Baton Rouge, LA 70802-6023 |
| 12671391 | + | William Gibbens, Suite 1600, 909 Poydras, New Orleans, LA 70112-4013 |
| 12671392 | + | William Macaluso, Suite 200, 111 N. Oak St., Hammond, LA 70401-3240 |
| 12671393 | + | William Ross, 816 Cadiz St., New Orleans, LA 70115-1512 |
| 12671394 | + | Woody Falgoust, A Law Corporation, 1050 Canal Blvd., Thibodaux, LA 70301-4508 |
| 12671395 | + | Zach Mosely, 1235 N. Loop West, Suite 810, Houston, TX 77008-1764 |
| 12671396 | + | Zeringue Law Group, 311 Patriot Street, Thibodaux, LA 70301-3023 |

TOTAL: 272

**Notice by electronic transmission was sent to the following persons/entities by the Bankruptcy Noticing Center.**
Electronic transmission includes sending notices via email (Email/text and Email/PDF), and electronic data interchange (EDI). Electronic transmission is in Eastern Standard Time.

| Recip ID | | Notice Type: Email Address | Date/Time | Recipient Name and Address |
|---|---|---|---|---|
| aty | ^ | MEBN | Aug 06 2026 21:31:53 | Walker & Patterson, P.C., P.O. Box 61301, Houston, TX 77208-1301 |
| cr | + | Email/Text: GMFINANCIAL@EBN.PHINSOLUTIONS.COM | Aug 06 2026 21:21:00 | ACAR Leasing Ltd. d/b/a GM Financial Leasing, P O Box 183853, Arlington, TX 76096-3853 |
| cr | + | Email/Text: bnkatty@aldineisd.org | Aug 06 2026 21:23:00 | BANKRUPTCY ATTY. ALDINE |

Case 24-35596 Document 1864 Filed in TXSB on 08/08/26 Page 6 of 64



| | | | |
|---|---|---|---|
| | | | INDEPENDENT SCHOOL DISTRIC, 2520 W.W. THORNE BLVD., LEGAL DEPARTMENT, HOUSTON, TX 77073, UNITED STATES 77073-3406 |
| cr | Email/Text: houston_bankruptcy@LGBS.com | Aug 06 2026 21:22:00 | City of Houston, Linebarger Goggan Blair & Sampson LLP, Jeannie Lee Andresen, PO Box 3064, Houston, TX 77253-3064 |
| ex | + Email/Text: eengelhart@rossbanks.com | Aug 06 2026 21:23:00 | Eva S Engelhart, Ross Banks May Cron & Cavin P.C., 7700 San Felipe, Suite 550, Houston, TX 77063, UNITED STATES 77063-1618 |
| cr | + Email/Text: info@ts-llp.com | Aug 06 2026 21:21:00 | Jayne Moseley, c/o Tran Singh LLP, 2502 La Branch Street, Houston, TX 77004-1028 |
| cr | Email/Text: houston_bankruptcy@LGBS.com | Aug 06 2026 21:22:00 | Lone Star College System, Linebarger Goggan Blair & Sampson LLP, c/o Jeannie Lee Andresen, PO Box 3064, Houston, TX 77253-3064 |
| cr | ^ MEBN | Aug 06 2026 21:14:32 | Texas Comptroller of Public Accounts, c/o Office of the Attorney General, Bankruptcy - Collections Division MC-008, PO Box 12548, Austin, tx 78711-2548 |
| cr | + Email/Text: bcd@oag.texas.gov | Aug 06 2026 21:20:00 | Texas Workforce Commission, Jamie Kirk, c/o Sherri K. Simpson, Paralegal, P.O. Box 12548, Austin, TX 78711-2548 |
| 12750012 | + Email/Text: BKNotice@andrewsmyers.com | Aug 06 2026 21:21:00 | Access Restoration Services US, Inc., c/o Andrews Myers, PC, Attn: Lisa M. Norman, 1885 Saint James Place, 15th Fl, Houston, Texas 77056-4176 |
| 12671191 | + Email/Text: bnkatty@aldineisd.org | Aug 06 2026 21:23:00 | Aldine ISD Tax Office, 14909 Aldine Westfield Rd, Houston, TX 77032-3027 |
| 12706401 | Email/PDF: bncnotices@becket-lee.com | Aug 06 2026 21:25:49 | American Express National Bank, c/o Becket and Lee LLP, PO Box 3001, Malvern PA 19355-0701 |
| 12748603 | + Email/Text: dbray@hawleytroxell.com | Aug 06 2026 21:22:00 | Aramark Refreshments Services, LLC, c/o Devin G. Bray, Hawley Troxell Ennis & Hawley LLP, P.O. Box 1617, Boise, ID 83701-1617 |
| 12675368 | Email/PDF: AIS.cocard.ebn@aisinfo.com | Aug 06 2026 21:25:39 | Capital One N.A., by American InfoSource as agent, PO Box 71083, Charlotte, NC 28272-1083 |
| 12671217 | + Email/PDF: AIS.cocard.ebn@aisinfo.com | Aug 06 2026 21:25:39 | CapitalOne Spark, P.O. Box 30285, Salt Lake City, UT 84130-0285 |
| 12673480 | Email/Text: houston_bankruptcy@LGBS.com | Aug 06 2026 21:22:00 | City of Houston, c/o Jeannie L. Andresen, Linebarger Goggan Blair & Sampson LLP, PO Box 3064, Houston, TX 77253-3064 |
| 12745862 | ^ MEBN | Aug 06 2026 21:14:32 | Comptroller of Public Accounts, C/O Office of the Attorney General, Bankruptcy - Collections Division MC-008, PO Box 12548, Austin TX 78711-2548 |
| 12671254 | + Email/Text: collections@esquiresolutions.com | Aug 06 2026 21:22:09 | Esquire Deposition Solutions, 1500 Centre Pkwy, Suite 100, East Point, GA 30344-8152 |
| 12750010 | + Email/Text: BKNotice@andrewsmyers.com | Aug 06 2026 21:21:00 | Global Estimating Services, Inc., c/o Andrews Myers, PC, Attn: Lisa M. Norman, 1885 Saint James Place, 15th Fl, Houston, Texas 77056-4176 |
| 12671277 | Email/Text: thogan4800@gmail.com | Aug 06 2026 21:21:00 | Hogan Attorneys, 310 North Cherry St., No. 1, Hammond, LA 70401 |
| 12671284 | Email/Text: sbse.cio.bnc.mail@irs.gov | Aug 06 2026 21:21:00 | Internal Revenue Service, P.O. Box 7346, Philadelphia, PA 19101-7346 |
| 12692839 | + Email/Text: RASEBN@raslg.com | Aug 06 2026 21:20:00 | JPMorgan Chase Bank, N.A., s/b/m/t Chase Bank USA, N.A., c/o Robertson, Anschutz, Schneid,, Crane & Partners, PLLC, 6409 Congress Avenue, Suite 100, Boca Raton, FL 33487-2853 |
| 12749673 | + Email/Text: info@ts-llp.com | Aug 06 2026 21:21:00 | Jayne Moseley, c/o Tran Singh LLP, 2502 La |

| | | | | |
|---|---|---|---|---|
| | | | | Branch Street, Houston, Texas 77004-1028 |
| 12673482 | | Email/Text: houston_bankruptcy@LGBS.com | Aug 06 2026 21:22:00 | Lone Star College System, c/o Jeannie L. Andresen, Linebarger Goggan Blair & Sampson LLP, PO Box 3064, Houston, TX 77253-3064 |
| 12671381 | ^ | MEBN | Aug 06 2026 21:15:40 | TX Tag, P.O. Box 650749, Dallas, TX 75265-0749 |
| 12672475 | | Email/Text: bcd@oag.texas.gov | Aug 06 2026 21:20:00 | Texas Workforce Commission, Office of Attorney General, BK/Collections, P.O. BOX 12548, MC008, Austin, TX 787112548 |
| 12671382 | + | Email/Text: ustpregion07.hu.ecf@usdoj.gov | Aug 06 2026 21:22:00 | United States Trustee, Suite 3516, 515 Rusk, Houston, TX 77002-2604 |

TOTAL: 27

# BYPASSED RECIPIENTS

**The following addresses were not sent this bankruptcy notice due to an undeliverable address, *duplicate of an address listed above, *P duplicate of a preferred address, or ## out of date forwarding orders with USPS.**

| Recip ID | Bypass Reason | Name and Address |
|---|---|---|
| aty | | Megan Clontz |
| aty | | Spencer Fane LLP, 3040 Post Oak Blvd., Suite 1400, Houston |
| intp | | Alvin Coleman, Jr |
| cr | | Anna Barefield |
| cr | | Apex Roofing and Restoration, LLC |
| intp | | Austin Haydel |
| intp | | Betty Jarrell |
| intp | | Broussard & Dove PLLC |
| intp | | Broussard Injury Lawyers, LLC, Daly & Black, P.C., |
| cr | | Christine Griffin |
| cr | | Colby Haas |
| intp | | Daly & Black, P.C. |
| intp | | Danny Neal |
| cr | | Donald Blais |
| intp | | Donald Henderson |
| intp | | Edwin Hessler |
| intp | | Eric Starks |
| cr | | Faye Larkins-Hewitt |
| intp | | Gayle Heard, et al. |
| cr | | Global Estimating Services, LLC |
| intp | | Hair & Shunnarah Trial Attorneys, LLC |
| intp | | Hancock Whitney Bank |
| intp | | James Junkin |
| intp | | Jason J. Joy & Associates, PLLC |
| intp | | Jessica Martin Scott |
| cr | | Jim Dennis, Jr |
| intp | | Kane Russell Coleman Logan PC |
| intp | | Katherine Monson |
| intp | | Katherine Salvant |
| cr | | Keisha Simpson |
| cr | | Kenneth Davis |
| cr | | Kerry Martin |
| intp | | Krause & Kinsman Trial Lawyers, LLC |
| intp | | Laborde Earles |
| cr | | Linda L.R. Wilhelm |
| intp | | Lindsay Cantrelle |
| cr | | Locklin Consulting, LLC |
| intp | | Louisiana Louisiana Insurance Guaranty Association |
| cr | | Luciana Garcia |
| cr | | Mack Perkins |
| cr | | Makkah Corporation |
| cr | | Nedra Williams |

| | | |
|---|---|---|
| cr | | Noble Public Adjusting Group, LLC |
| intp | | Norman Bonck |
| cr | | Oakwood Bank |
| crcm | | Official Committee of Unsecured Creditors |
| cr | | PCG Claims, LLC d/b/a PCG Consulting, LLC |
| intp | | Paul Rahfield |
| intp | | Porsche Financial Services, Inc. |
| cr | | Rachael Apken |
| intp | | Rachelle Cope |
| cr | | Reginald Mack |
| intp | | Sandra Plough |
| intp | | Sara Ardoin |
| cr | | Schilacy Hall |
| intp | | State Farm Fire & Casualty Company |
| intp | | Tasha Venson |
| intp | | Thaddeus Thompson |
| intp | | The Sangisetty Law Firm, PLLC |
| cr | | Todd Charters |
| intp | | Tort Network, LLC d/b/a Velawcity |
| intp | | Troy Scott |
| cr | | William Dunn |
| 13404695 | | Jeffrey Alan Vitt, Individually, as Beneficiary & |
| 12749741 | | Katherine Monson, individually, & for all similarly situated, in Plaintiff Class |
| 12671304 | | Kovar Law Group |
| 12671359 | | SJP Law Firm |
| 13404698 | | Vitt 121, Ltd., and affiliated Entities |
| cr | * | American Express National Bank, c/o Becket and Lee LLP, PO Box 3001, Malvern, PA 19355-0701 |
| cr | *+ | Louisiana Farm Bureau, P.O. Box 95008, Baton Rouge, LA 70895-9008 |
| 12707590 | * | American Express National Bank, c/o Becket and Lee LLP, PO Box 3001, Malvern PA 19355-0701 |
| 12761417 | * | American Express National Bank, c/o Becket and Lee LLP, PO Box 3001, Malvern PA 19355-0701 |
| 12796484 | * | American Express National Bank, c/o Becket and Lee LLP, PO Box 3001, Malvern PA 19355-0701 |
| 12671283 | *P++ | INTERNAL REVENUE SERVICE, CENTRALIZED INSOLVENCY OPERATIONS, PO BOX 7346, PHILADELPHIA PA 19101-7346, address filed with court:, Internal Revenue Service, Special Procedures, Stop 5022 HOU, 1919 Smith St., Houston, TX 77002 |
| 12671397 | *+ | Zeringue Law Group, 311 Patriot St., Thibodaux, LA 70301-3023 |
| intp | ##+ | New Orleans Legal, LLC, c/o Peter Diiorio, 825 Baronne Street, New Orleans, LA 70113-1102 |
| 12671198 | ##+ | AMO Trial Lawyers, 3850 N. Causeway Boulevard, Suite 590, Metairie, LA 70002-8120 |
| 12671189 | ##+ | Abel Law Firm, LLC, 405 W 2nd St., Thibodaux, LA 70301-3009 |
| 12671210 | ##+ | Brasher Law Firm, PLLC, 1555 Poydras Street, Suite 1600, New Orleans, LA 70112-3769 |
| 12671226 | ##+ | Claude Reynaud, III, 9 Killdeer St., New Orleans, LA 70124-4512 |
| 12671248 | ##+ | Disaster Solutions, 1301 Seminole Blvd, Suite 140, Largo, FL 33770-8102 |
| 12671265 | ##+ | GM Financial, P.O. Box 180682, Arlington, TX 76096-0682 |
| 12671273 | ##+ | Hair Shunnarah Trial Attorneys, 3540 S. I-10 Service Road W., Suite 300, Metairie, LA 70001-1976 |
| 12671291 | ##+ | JJC Law LLC, 3914 Canal Street, New Orleans, LA 70119-6003 |
| 12791728 | ##+ | Katrena Henderson & Charles Tapp, 4614 Quarter Charge Dr, Annandale, VA 22003-4622 |
| 12671316 | ##+ | Lee Hoffoss Injury Lawyers, 517 W College St, Lake Charles, LA 70605-1529 |
| 12671323 | ##+ | Mansfield Melancon Cranmer & Dick Injury, 318 Harrison Ave, New Orleans, LA 70124-3126 |
| 12751344 | ##+ | Morgan Law Group, P.A., 1331 Ochsner Blvd., Ste. 101, Covington, LA 70433-8177 |
| 12671336 | ##+ | Noland Law Office, 533 Europe St, Baton Rouge, LA 70802-6408 |
| 12671360 | ##+ | Smith Jadin Johnson PLLC, 7900 Xerxes Avenue South, Suite 2020, Bloomington, MN 55431-1132 |
| 12671366 | ##+ | The Devereaux Law Firm, 2113 Lakeshore Drive, Mandeville, LA 70448-5832 |
| 12671372 | ##+ | The Morgan Law Group, 1331 Ochsner Blvd, Ste. 101, Covington, LA 70433-8177 |
| 12671376 | ##+ | The Webster Law Firm, P.C., 6200 Savoy Drive, Suite 150, Houston, TX 77036-3320 |
| 12671387 | ##+ | Webster Vicknair Macleod, 6200 Savoy Drive, Suite 150, Houston, TX 77036-3320 |
| 12671390 | ##+ | Wilkofsky, Friedman, Karel & Cummins, 299 Broadway, Ste. 1700, New York, NY 10007-1914 |

TOTAL: 68 Undeliverable, 7 Duplicate, 20 Out of date forwarding address

# NOTICE CERTIFICATION

**I, Gustava Winters, declare under the penalty of perjury that I have sent the attached document to the above listed entities in the manner shown, and prepared the Certificate of Notice and that it is true and correct to the best of my information and**

**belief.**

**Meeting of Creditor Notices only (Official Form 309): Pursuant to Fed .R. Bank. P.2002(a)(1), a notice containing the complete Social Security Number (SSN) of the debtor(s) was furnished to all parties listed. This official court copy contains the redacted SSN as required by the bankruptcy rules and the Judiciary's privacy policies.**

Date: Aug 08, 2026 Signature: /s/Gustava Winters