Prepared for: Allison D. Byman, Plan Administrator for MMA Law Firm, PLLC
Date: October 8, 2026

quikdata

# Master Services & Hosting Agreement

# MASTER SERVICES & HOSTING AGREEMENT

**Effective Date:** ______________________

**Parties:**

1. **QuikData, LLC** (“**QuikData**”)
   - Address: P.O. Box 25372, Houston, TX 77265
2. **__Allison D. Byman, Plan Administrator for MMA Law Firm PLLC___** (“**Client**”)
   - Address: 7924 Broadway, Suite 104, Pearland, TX 77581

Together, QuikData and Client are referred to as the “**Parties**.”

1. **Purpose**
   a. This Agreement outlines the terms under which QuikData will provide certain hosting, data management, and related services to Client.
2. **Definitions**
   a. **“Services”**
   The data hosting, storage, analysis, encryption, transmission, collaboration, support, and other work described in **Exhibit A** (including “QuikData Data Room” and any Additional Services).
   b. **“Client Data”**
   Any materials, data, or files provided by or on behalf of Client in connection with the Services.
   c. **“QuikData Technology”**
   All software, hardware, and proprietary tools owned by or licensed to QuikData, including the QuikData Data Room.
   d. **“Users”**
   Client’s authorized employees, contractors, customers, or other individuals who have valid login credentials to access the Services.
   e. **“Fees”**
   The rates set forth in **Exhibit C**, payable by Client for the Services and any Additional Services.
3. **Grant of Rights; Restrictions**
   a. **Access Rights.** QuikData grants Client a non-exclusive, non-transferable right to use the Services during the Term.
   b. **Restrictions.** Client shall not:
      i. Resell, sublicense, or otherwise distribute the Services or QuikData Technology (except to authorized Users).

quikdata

   ii. Modify, reverse engineer, or create derivative works from the Services or QuikData Technology.
   iii. Use the Services in violation of any applicable law or regulation.

4. **Fees; Payment Terms**
   a. **Fees.** Client agrees to pay all Fees outlined in **Exhibit C**. Unless otherwise stated, Fees exclude any taxes, which Client is responsible for.
   b. **Invoicing & Payment.** Invoices are due within 30 days of the invoice date. Late payments accrue interest at 1.5% per month or the maximum rate allowed by law.
   c. **Non-Payment.** If Client's account is more than 30 days past due, QuikData may suspend Client's access to the Services until all overdue amounts are paid.
   d. **Payment Address:**
      QuikData, LLC
      PO Box 25372
      Houston, TX 77265
5. **Client Responsibilities**
   a. **Obtain Bankruptcy Court approval of this agreement**
   b. **Data & User Management.** Client is responsible for managing and monitoring its Users' access (e.g., creating/deleting User accounts) and the data uploaded to the platform.
   c. **Compliance.** Client must ensure use of the Services complies with all applicable laws and does not infringe third-party rights.
   d. **Accuracy of Client Data.** Client retains sole responsibility for the accuracy, quality, and legality of all Client Data.
6. **Confidentiality**
   a. **Definition.** "Confidential Information" means non-public information disclosed under this Agreement, including Client Data and QuikData Technology.
   b. **Obligations.** Each Party will:
      i. Use the other Party's Confidential Information only to fulfill obligations under this Agreement;
      ii. Not disclose it to any third party (other than employees or contractors who need to know it and are under similar confidentiality obligations); and
      iii. Promptly notify the other Party if disclosure is required by law, giving the disclosing Party an opportunity to seek a protective order.
7. **Survival.** These obligations continue for as long as the Confidential Information remains confidential.

quikdata

**8. Intellectual Property**

a. **QuikData Ownership.** QuikData and its licensors own all rights, title, and interest in and to the QuikData Technology, the Services, and related intellectual property. No ownership rights are transferred to Client.
b. **Client Ownership.** Client owns all Client Data. QuikData's use of Client Data is solely to provide the Services.
c. **Feedback.** QuikData may freely use and incorporate any suggestions or feedback from Client to improve its Services, with no obligation to Client.

**9. Term & Termination**

a. **Term.** This Agreement begins on the Effective Date and continues month-to-month unless terminated as described below.
b. **Termination.**
    i. By Either Party: Upon 30 days' written notice.
    ii. For Breach: If the other Party materially breaches this Agreement and does not cure within 15 days after receiving written notice.
    iii. For Non-Payment: QuikData may terminate if Client's invoice remains unpaid more than 30 days after notice of non-payment.

**10. Effect of Termination.**

a. Services immediately cease;
b. Any unpaid Fees become due; and
c. Upon Client's request (and at Client's expense), QuikData will return or destroy Client Data.
d. Client's data will not be destroyed without notice filed on the bankruptcy court docket giving Debtor and parties in interest 30 days to object.

**11. Warranties & Disclaimers**

a. **QuikData Warranties.** QuikData warrants it will provide the Services in a professional manner consistent with industry standards.
b. **Disclaimer.** Except for the express warranties stated in this Agreement, the Services and QuikData Technology are provided **"as is."** To the fullest extent allowed by law, QuikData disclaims all other warranties, including implied warranties of merchantability, fitness for a particular purpose, and non-infringement.
c. **Generative AI Features**.
    i. Client acknowledges that certain parts of the Services may include generative artificial intelligence ("AI") components or features ("AI Features"). QuikData does not warrant the accuracy, completeness, or reliability of any output produced by these AI Features. Client agrees to use the AI Features at its own risk and is solely responsible for verifying

quikdata

any information or data generated by the AI Features before relying on it for any purpose. QuikData disclaims liability for any loss, damage, or harm arising from Client's use of or reliance on the AI Features.

d. **Third-Party Products.** Any third-party products or services are subject to the terms and warranties provided by those third parties.

**12. Capacity; Authority; Indemnification**

a. **Capacity.** Allison D. Byman executes this Agreement solely in her capacity as Plan Administrator for MMA Law Firm, PLLC, and not individually. She shall have no personal liability under this Agreement. Any obligation of Client hereunder shall be satisfied solely from assets of the estate/plan and shall be treated as an allowed administrative expense.
b. **Authority.** Client represents that it has authority under the confirmed plan and applicable orders of the Bankruptcy Court to engage QuikData and to direct the collection, processing, and hosting of the Client Data.
c. **Client Indemnity.** Subject to Section 12(a), Client shall indemnify and hold QuikData harmless against claims arising from Client's lack of authority to direct the Services, Client's violation of law, or misuse of the Services.
d. **QuikData Indemnity.** QuikData shall indemnify and hold Client harmless against claims alleging that QuikData Technology (as provided by QuikData) infringes the U.S. intellectual property rights of a third party.
e. **Procedure.** The indemnified Party must promptly notify the indemnifying Party, cooperate in the defense, and allow the indemnifying Party sole control of settlement (subject to reasonable consent).
f. **Successors.** This Agreement binds any successor plan administrator, trustee, or other estate representative.

**13. Limitation of Liability**

a. **No Indirect Damages.** Neither Party is liable for indirect, special, incidental, or consequential damages (including loss of profits or data).
b. **Liability Cap.** Except for indemnification obligations or a Party's breach of confidentiality, each Party's total liability under this Agreement will not exceed the total Fees paid or payable by Client to QuikData in the 12 months preceding the event giving rise to the claim.

**14. Miscellaneous**

a. **Force Majeure.** Neither Party is liable for delays or failures caused by events beyond its reasonable control (e.g., natural disasters, internet outages, government acts).

b. **Assignment.** Neither Party may assign this Agreement without the other Party's consent, except to a successor in connection with a merger or sale of substantially all assets.
c. **Governing Law.** This Agreement is governed by Texas law, without regard to its conflict-of-law rules.
d. **Notices.** All notices must be in writing and delivered by certified mail or a recognized courier to the addresses set forth above (or any updated address given in writing).
e. **Entire Agreement.** This Agreement (including Exhibits) is the Parties' entire agreement on this subject and supersedes all prior agreements.
f. **Amendments.** No amendment or modification is valid unless in writing and signed by both Parties.
g. **Counterparts & Electronic Signatures.** This Agreement may be signed in counterparts and exchanged electronically, which is as valid as an original.

**Signatures**
By signing below, each Party agrees to the terms of this Agreement.

**QuikData, LLC**

By: ________________________________________
Name: Noah Berry
Title: Client Engagement Manager
Date: ______________________

**Client Name: Allison D. Byman, Plan Administrator for MMA Law Firm, PLLC**
By: ________________________________________
Name: _____________________________________
Title: ______________________________________
Date: ______________________

**Invoices to Client shall be addressed & directed to:**
**CONTACT INFO -**

Name: _____________________________

E-Mail Address: ______________________

quikdata

**EXHIBIT A**
**TO MASTER SERVICES & HOSTING AGREEMENT**
BETWEEN QuikData AND Client

**SCHEDULE OF QUIKDATA SERVICES**

The QuikData Services (as defined in the Agreement) shall include:

1. Creation of a secure, customized document repository site to be used by authorized Users for the review of data within the QuikData Data Room application; this includes setting up and maintaining hardware and software in a multi-tenant virtual environment.

2. Environmental and Operational Services:

    - Maintain Hardware used to run the QuikData Data Room application
    - QuikData Data Room installation and Upgrades
    - 24/7 response to IT related issues
    - 3rd party Software license management
    - Administrator user account creation
    - Decommission of environment as necessary

3. QuikData Data Room Maintenance and Support Services

    - Training

        - QuikData will provide up to 4 hours of administrator training for QuikData Data Room, which may consist of onsite or web-based training. Additional training will be billed hourly according to the hourly rates set forth in Exhibit C.

        - QuikData will provide 24/7 access to the QuikData Data Room, online support, training videos and knowledge base.

        - At Client's request, QuikData may provide administrator end-user review training for QuikData Data Room to Users. Such training will be billed daily at the rates set forth in Exhibit C.

    - Support

quikdata

- Standard Hours for QuikData Data Room specific support: Monday through Friday (holidays excepted): 7:00 a.m. –7:00 p.m. CST
  - Support Email Address: support@quikdata.com
  - Support Telephone Number: 1-888-477-8959
  - Support Website: https://support.quikdata.com

- Maintenance

  - QuikData will provide such error corrections, patches, updates and enhancements to Client's instance of QuikData Data Room as QuikData develops in its ordinary course of business and which QuikData makes generally available to its customers.

**EXHIBIT B**

**TO MASTER SERVICES & HOSTING AGREEMENT**
BETWEEN QuikData AND Client

**CLIENT RESPONSIBILITIES**

a. Room / Database Creation and Setup
   i. Creation and deletion of User administrator accounts
   ii. Monitoring active User accounts

b. Data Room Administration and Management

**EXHIBIT C**

SCHEDULE OF FEES

**Services to be provided:** E-Discovery processing, hosting, and support services.

| **Engagement** | **Forensic Collection & SaaS Hosting Engagement** |
|---|---|
| **Price** | **$10,000 Flat Fee (FORENSIC COLLECTION)**<br>• Forensic collection and extraction services<br>**$3/GB/Month (ACTIVE DATA)**<br>• Hosting of Client Active Data<br>**$1.5/GB/Month (COLD STORAGE DATA)**<br>Hosting of Client Nearline Data |
| **Users** | • Unlimited Administrator Accounts<br>• Unlimited Internal Accounts<br>• Unlimited External Accounts |
| **Project Management** | $175 / Hour, to be approved by client prior to any billable hourly work |
| **E-Discovery Consulting** | $250 / Hour, to be approved by client prior to any billable hourly work |

**Pricing Terms:** 30 Day Net

**Pricing Structure:** Client will initially be billed under the transactional pricing set forth in this Exhibit C. The Parties may mutually agree in writing to transition Client to a subscription or other pricing structure at any time.

**Data Hosting Calculation:** For billing purposes, the hosted size shall be calculated as the sum of the following data volumes:

- Extracted size of uploaded native data
- Size of produced images, native files and/or text
- Size of ingested load file images, native files and/or text.