**718 S.W.3d 173 (2025)**

## Michael A. POHL, et al., Petitioners,
## v.
## Mark Kentrell CHEATHAM, Sr., et al., Respondents.

No. 23-0045.

**Supreme Court of Texas.**

Argued October 2, 2024.
OPINION DELIVERED: May 9, 2025.
Rehearing Denied September 5, 2025.

175 *175 On Petition for Review from the Court of Appeals for the First District of Texas.

Thomas Phillips, Baker Botts, LLP, Austin, Kelsi White, Daryl L. Moore, Ahmad, Zavitsanos & Mensing, PLLC, Houston, Cordt Akers, Brock C. Akers, The Akers Firm, PLLC, Houston, Bradley Bowen, Baker Botts L.L.P., Austin, for Petitioner The Ammons Law Firm and Robert Ammons.

Wolfgang P. Hirczy De Mino PhD, Pro Se.

Parth S. Gejji, Beck Redden LLP, Houston, Daryl L. Moore, Kelsi White, Ahmad, Zavitsanos & Mensing, PLLC, Houston, Brock C. Akers, Cordt Akers, The Akers Firm, PLLC, Houston, Stephen R. Bailey, Billy Shepherd, Shepherd Prewett Miller PLLC, Houston, Allison Miller, Steptoe LLP, Houston, for Petitioner Michael A. Pohl, et al.

Mark Wesley Collmer, Conrad B. Guthrie, Collmer Law Group, Houston, for Petitioner Donalda Pohl, Helping Hands Financing, LLC, Edgar Jaimes.

David E. Kassab, Lance C. Kassab, Nicholas Pierce, The Kassab Law Firm, Houston, Kevin H. Dubose, Alexander Dubose & Jefferson LLP, Houston, for Respondents.

Justice Huddle delivered the opinion of the Court, in which Chief Justice Blacklock, Justice Bland, Justice Young, and Justice Sullivan joined.

Texas Government Code Section 82.0651 creates, among other civil remedies, a private right of action allowing clients to void a contract for legal services that was procured through barratry. This case requires us to consider the extraterritorial reach of Section 82.0651(a)—that is, whether the Legislature intended Section 82.0651(a)'s private right of action to be available in cases in which an out-of-state client of a Texas lawyer seeks to void a legal-services contract when the core
176 conduct the statute *176 targets—solicitation of a legal-services contract through prohibited barratry—occurred outside Texas.

The primary defendants here are two Texas lawyers who represented out-of-state clients in personal-injury litigation filed in courts outside Texas after others, allegedly on the lawyers' behalf, approached those clients in Louisiana and Arkansas to encourage the lawyers' retention. After the underlying personal-injury cases settled, the clients sued the lawyers and their firms in Texas district court, contending Section 82.0651(a) entitles them to void the legal-services contracts governing the representation in the underlying personal-injury cases and to recover fees and penalties under Section 82.0651(b). The lawyers moved for summary judgment on various grounds, including that Section 82.0651 does not apply because the alleged solicitations and procurement of the legal-services contracts occurred outside Texas. The trial court dismissed all claims, but the court of appeals reversed, concluding that Section 82.0651 applies because at least part of the lawyers' alleged conduct occurred in Texas.

Applying Texas's presumption that its statutes do not apply extraterritorially, we conclude that Section 82.0651(a) does not extend to the nonresident clients' claims because the conduct that is the statute's focus—the solicitation of a legal-services contract through illegal barratry—occurred outside Texas. Accordingly, we reverse the court of appeals' judgment to the extent it allowed the clients to proceed with their claims under Section 82.0651(a) and render judgment that they take nothing on those claims. Nevertheless, we agree with the court of appeals that the lawyers were not entitled to summary

judgment on the claims for breach of fiduciary duty. We therefore affirm the court of appeals' judgment as to those claims and remand to the trial court for further proceedings.

## I. Background

Michael A. Pohl and Robert Ammons are attorneys licensed in Texas with their principal offices in Houston. Both were hired to represent plaintiffs in two separate lawsuits outside Texas that arose from automobile accidents. As we must when evaluating whether summary judgment is proper, we take as true the facts as alleged by the nonmovants.

The Louisiana case: LaDonna Cheatham was driving in Louisiana when the tread on her car's tire separated, causing her vehicle to cross the median and collide with a school bus. LaDonna and three of her passengers—two of her minor children and a nephew—died, while LaDonna's other child survived with severe injuries.

According to the Cheathams,[1] they were approached in their Louisiana home about four days after the accident by Kenneth Talley, who encouraged them to hire a company called Helping Hands Group to investigate a potential lawsuit. Allegedly, Talley also touted Pohl's and Ammons's legal services and encouraged the family to hire them. None of the Cheathams had requested this visit, nor did they have any previous relationship with Pohl or Ammons. Mark Cheatham, Sr., LaDonna's former husband and purported father of her three children, signed an agreement with Helping Hands Group to
177 investigate his claims, and in return, he was promised *177 $2,000 to offset funeral and living expenses. Those funds were to come from a separate company called Helping Hands Financing, LLC. According to plaintiffs, that company was run by Pohl's wife, Donalda, and it would pay out the funds only after the Cheathams agreed to hire Pohl.

A few days later, Pohl visited the Cheathams in person and encouraged them to sign contingency fee agreements. The Cheathams allege that Pohl told them that he would associate Ammons on the case and that Pohl promised to pay Mark Cheatham, Sr. an additional $18,000 if he agreed to the representation. He and Luella Miller, LaDonna's mother, signed contingency fee agreements in Louisiana with Pohl's law firm.[2]

A few weeks later, both Pohl and Ammons personally visited the Cheathams in Louisiana and asked them to sign new agreements consenting to Pohl's association with Ammons and the division of their fees. The Cheathams allege that Pohl and Ammons offered $500 to Mark Cheatham, Sr. if he signed. He and Miller agreed and signed the new agreements.

Ammons eventually filed a lawsuit in Louisiana against the car manufacturer, the tire manufacturer, and others. While most of the claims in the Louisiana lawsuit were still pending, the Cheathams received a letter advising them that Pohl's solicitation of them may have violated Texas law. After speaking with an attorney in Ammons's law firm about these allegations, the Cheathams signed new legal-services agreements directly with Ammons's firm. According to the Cheathams, they were advised that firing Ammons would cause lengthy delays in obtaining settlements with the remaining defendants. The personal-injury defendants ultimately settled, and both Pohl and Ammons received attorney's fees and reimbursed expenses from the settlement proceeds.

The Louisiana fee proceeding: Shortly after the Cheathams filed the underlying barratry lawsuit in Texas, Ammons filed a "petition for concursus"—a type of impleader proceeding[3]—in Louisiana and deposited the full amount of the Cheathams' settlement, including the portion Ammons claimed as his fee, into that court's registry. The Cheathams responded by filing a motion in the Texas trial court, asking that Ammons be ordered to turn over the "undisputed" portion of the settlement funds —the portion going to the Cheathams —and to deposit the "disputed" portion —Ammons's fee—with the Texas trial court. At a hearing on that motion, the parties confirmed that the Louisiana court "doesn't have the barratry claim." Specifically, Ammons's counsel informed the Texas court that "[t]he barratry issues are before you. All of the issues about the settlement are before the Louisiana court." The trial court therefore denied the Cheathams' motion as moot and noted that the transcript of this hearing "can be used in Louisiana to make sure that judge doesn't go contrary to the barratry claim that's pending in my court."

The Louisiana court eventually held an evidentiary hearing and ordered that Ammons was entitled to his full share of the agreed-upon fees and expenses from the Cheathams' settlement. In its findings of fact, the court noted that, before the
178 hearing, *178 Mark Cheatham, Sr. alleged that Ammons was not entitled to any fees because the fee agreement "was procured through illegal and unethical personal solicitation and it would violate public policy to enforce it." The court further noted, however, that Cheatham "withdrew his opposition" and "failed to support his allegations of impropriety." The

Louisiana court thus found that Ammons's legal-services contract with the Cheathams was "valid and enforceable" and "no impropriety was committed by Ammons."

The Arkansas case: David Reese, an Arkansas resident, was driving in north Texas when the tread on his SUV's tire separated, causing the vehicle to roll over. He was ejected and did not survive. Reese's wife, Lacy, alleges that the day after his funeral, she was personally visited in her Arkansas home by Kirk Ladner. As with the Cheathams, Reese alleges that Ladner encouraged her to sign an agreement with Helping Hands Group to investigate a potential lawsuit and offered her money, to be paid by Helping Hands Financing, if she would sign the agreement and ultimately hire Pohl. Like the Cheathams, Reese did not request this visit and did not have any previous relationship with Pohl or Ammons. She agreed to retain Pohl and signed the agreements at her home in Arkansas.

Pohl and Ammons associated with other Arkansas lawyers and filed a lawsuit in Arkansas. After it settled, both Pohl and Ammons received attorney's fees and expenses out of the settlement proceeds.

The Texas barratry lawsuit: According to the Cheathams and Reese, unbeknownst to them, Talley and Ladner were both part of a scheme orchestrated by Pohl and Ammons to encourage the clients to hire Pohl and Ammons to represent them in their respective lawsuits. The clients allege that Talley and Ladner worked for a company called Precision Marketing Group, LLC that provided illegal barratry services to attorneys, including Pohl, that were designated as "marketing services" but were actually "a pass-through for barratry money." The day after the Cheathams signed their agreement with Helping Hands, but before they had signed an agreement with Pohl, Pohl's law office entered into a "Retention of Services Agreement" with Precision Marketing. Under this agreement, Precision Marketing would provide "public relations, client liaison and evidence gathering services" pertaining to the Cheathams' case. In return, Precision Marketing would be compensated at an hourly fee, with the total fee not to exceed thirty percent of Pohl's net interest in the representation. The same day, Precision Marketing entered into an agreement with Talley under which Talley would provide "public relations services" pertaining to the Cheathams' case. In return, Talley was promised a share of any settlement received for the Cheathams. The Cheathams and Reese allege that the agreements with Precision Marketing were a sham and that Pohl and Ammons worked with these individuals beforehand to reach out to potential clients such as the Cheathams and Reese.

In 2017, the Cheathams sued Pohl, Ammons, and their respective law firms, as well as Donalda Pohl, alleging claims for civil barratry, civil conspiracy, aiding and abetting, and breach of fiduciary duty. The Cheathams' civil barratry claim is based on Texas Government Code Section 82.0651(a), which creates a statutory cause of action allowing a client to void a legal-services contract that was procured through conduct that violates either Texas Penal Code Section 38.12(a) or (b) or Texas Disciplinary Rule of Professional Conduct 7.03. The Cheathams' conspiracy and "aiding and abetting" claims are derivative *179 claims premised on the same allegations of barratry that give rise to the Cheathams' claim under Section 82.0651(a). The Cheathams' claim for breach of fiduciary duty, however, is premised on different conduct: the attorneys' failure to disclose certain information before asking the Cheathams to enter new agreements after the alleged barratry scheme was revealed.

179

The following year, Reese, represented by the same attorneys that represent the Cheathams, filed a "petition in intervention" in the Cheathams' Texas suit, asserting largely the same claims against the same defendants. The Cheathams and Reese eventually together filed an amended petition.[4] The defendants answered and later filed motions to strike Reese's intervention, which the trial court denied.

Pohl and Ammons (and their respective law firms) each sought partial summary judgment, arguing that the Section 82.0651(a) claim is a statutory tort claim governed by the two-year statute of limitations. *See* TEX. CIV. PRAC. & REM. CODE § 16.003(a). They argued that the Cheathams and Reese were allegedly solicited in 2014, which is more than two years before they sued in 2017 (the Cheathams) and 2018 (Reese). The trial court denied both motions, explaining in its order that the four-year statute of limitations applies to Section 82.0651(a) claims based on an existing legal-services contract.

Ammons later filed a second summary judgment motion. In addition to asserting that there was no evidence to support any of the clients' claims, Ammons argued (1) the Cheathams' barratry claims are barred by the doctrine of res judicata because they mirror those decided by the Louisiana court in the fee dispute; (2) Ammons had no affirmative duty to investigate Pohl's conduct in obtaining the original representations before accepting the referral; and (3) the presumption against extraterritorial application of statutes requires dismissal because Section 82.0651 does not clearly indicate that it applies to

barratry occurring in other states. Pohl and his wife, Donalda, also filed new motions for summary judgment arguing that Section 82.0651 does not reach extraterritorial conduct.

The trial court granted all defendants' summary judgment motions without stating the reasons, and the clients appealed. Pohl cross-appealed, arguing that the trial court erred by denying his motion to strike Reese's intervention. Pohl also argued, as a conditional cross-point to the clients' appeal, that the judgment in his favor should be affirmed based on limitations.

The court of appeals reversed in part and remanded. 690 S.W.3d 322, 340 (Tex. App.-Houston [1st Dist.] 2022). It concluded that Section 82.0651(a)'s application in this case would not be impermissibly extraterritorial. *Id.* at 332-34. The court then rejected Pohl's argument as to limitations, concluding that the trial court correctly applied a four-year limitations period. *Id.* at 334-36. It also rejected Ammons's res judicata argument, holding that Ammons was estopped from asserting that defense because of representations made to the trial court. *Id.* at 336-37. Finally, the court of appeals concluded Reese's joinder was proper under Rule 40(a). *Id.* at 339-40. Pohl and Ammons petitioned this Court for review, which we granted.[5]

180 *180 **II. Applicable law**

## A. Civil liability for barratry

Barratry—generally defined as "the solicitation of employment to prosecute or defend a claim with intent to obtain a personal benefit"[6]—has long been both a criminal offense in Texas[7] and a violation of the State Bar's disciplinary rules. In 2011, the Legislature created a civil cause of action available to those who have entered a legal-services agreement that was procured through prohibited barratry. The current version, Government Code Section 82.0651(a), provides:

> A client may bring an action to void a contract for legal services that was procured as a result of conduct violating Section 38.12(a) or (b), Penal Code, or Rule 7.03 of the Texas Disciplinary Rules of Professional Conduct of the State Bar of Texas, regarding barratry by attorneys or other persons, and to recover any amount that may be awarded under Subsection (b). A client who enters into a contract described by this subsection may bring an action to recover any amount that may be awarded under Subsection (b) even if the contract is voided voluntarily.

TEX. GOV'T CODE § 82.0651(a). Section 82.0651(b) provides for the following remedies that a "client" may recover against "any person who committed barratry":

> (1) all fees and expenses paid to that person under the contract;
>
> (2) the balance of any fees and expenses paid to any other person under the contract, after deducting fees and expenses awarded based on a quantum meruit theory as provided by Section 82.065(c);
>
> (3) actual damages caused by the prohibited conduct;
>
> (4) a penalty in the amount of $10,000; and
>
> (5) reasonable and necessary attorney's fees.

181 *181 *Id.* § 82.0651(b).[8]

Finally, subsection (e) provides: "This section shall be liberally construed and applied to promote its underlying purposes, which are to protect those in need of legal services against unethical, unlawful solicitation and to provide efficient and economical procedures to secure that protection." *Id.* § 82.0651(e).

To recover under Section 82.0651(a), the client must show that the client's legal-services contract "was procured as a result of conduct violating" either Penal Code Section 38.12(a) or (b) or Disciplinary Rule 7.03. Penal Code Section 38.12(a) provides:

> A person commits an offense if, with intent to obtain an economic benefit the person:

(1) knowingly institutes a suit or claim that the person has not been authorized to pursue;

(2) solicits employment, either in person or by telephone, for himself or for another;

(3) pays, gives, or advances or offers to pay, give, or advance to a prospective client money or anything of value to obtain employment as a professional from the prospective client;

(4) pays or gives or offers to pay or give a person money or anything of value to solicit employment;

(5) pays or gives or offers to pay or give a family member of a prospective client money or anything of value to solicit employment; or

(6) accepts or agrees to accept money or anything of value to solicit employment.

TEX. PENAL CODE § 38.12(a). In contrast, subsection (b) creates an offense for conduct that, generally speaking, constitutes knowing facilitation or furtherance of the conduct described in subsection (a). Section 38.12(b) states:

A person commits an offense if the person:

(1) knowingly finances the commission of an offense under Subsection (a);

(2) invests funds the person knows or believes are intended to further the commission of an offense under Subsection (a); or

(3) is a professional who knowingly accepts employment within the scope of the person's license, registration, or certification that results from the solicitation of employment in violation of Subsection (a).

*Id.* § 38.12(b). Notably, any offense under subsection (b) requires a predicate finding of either "the commission of an offense under Subsection (a)" or conduct "in violation of Subsection (a)."

Finally, Disciplinary Rule 7.03, titled "Solicitation and Other Prohibited Communications," prohibits the following conduct:

(b) A lawyer shall not solicit through in-person contact, or through regulated telephone, social media, or other electronic contact, professional employment from a non-client, unless the target of the solicitation is:

(1) another lawyer;

182 *182 (2) a person who has a family, close personal, or prior business or professional relationship with the lawyer; or

(3) a person who is known by the lawyer to be an experienced user of the type of legal services involved for business matters.

(c) A lawyer shall not send, deliver, or transmit, or knowingly permit or cause another person to send, deliver, or transmit, a communication that involves coercion, duress, overreaching, intimidation, or undue influence.

....

(e) A lawyer shall not pay, give, or offer to pay or give anything of value to a person not licensed to practice law for soliciting or referring prospective clients for professional employment, except nominal gifts given as an expression of appreciation that are neither intended nor reasonably expected to be a form of compensation for recommending a lawyer's services....

(f) A lawyer shall not, for the purpose of securing employment, pay, give, advance, or offer to pay, give, or advance anything of value to a prospective client, other than actual litigation expenses and other financial assistance permitted by Rule 1.08(d), or ordinary social hospitality of nominal value.

TEX. DISCIPLINARY RULES PROF'L CONDUCT R. 7.03(b), (c), (e), (f).

## B. Presumption against extraterritoriality

This Court has long recognized that Texas statutes are presumed not to have extraterritorial effect. *See Marmon v. Mustang Aviation, Inc.,* 430 S.W.2d 182, 186-87 (Tex. 1968); *Willis v. Mo. Pac. Ry. Co.,* 61 Tex. 432, 434 (1884). Our precedents have not elaborated much on the presumption or its purpose, perhaps because its logic and animating principles are self-evident; unless a contrary intent appears, the Legislature generally legislates with Texas concerns in mind, and Texas legislation therefore is meant to apply only within Texas's borders. *See Abitron Austria GmbH v. Hetronic Int'l, Inc.,* 600 U.S. 412, 417, 143 S.Ct. 978, 215 L.Ed.2d 104 (2023) (describing the presumption against extraterritoriality as a "presumption against application [of a statute] to conduct in the territory of another sovereign" (quoting *Kiobel v. Royal Dutch Petroleum Co.,* 569 U.S. 108, 119, 133 S.Ct. 1659, 185 L.Ed.2d 671 (2013))). The presumption's real-world import is significant: it allows courts and litigants to avoid the uncertainty and discord that can result if, without prior notice, Texas law is determined to govern conduct in other states or, worse, the law of a foreign state is haphazardly determined to govern conduct that occurs in Texas. *See RJR Nabisco, Inc. v. European Community,* 579 U.S. 325, 335-36, 136 S.Ct. 2090, 195 L.Ed.2d 476 (2016) (explaining that the presumption against extraterritoriality "serves to avoid the international discord that can result when U.S. law is applied to conduct in foreign countries").

We have recognized the presumption against extraterritorial application of Texas civil statutes for well over a century. In *Willis v. Missouri Pacific Railway Co.,* we refused to apply Texas's wrongful death statute to a claim by a Texas resident against a railway company with an office and agent in Texas when the death occurred outside Texas. We held:

> [W]here the right of action does not exist except by reason of statute, it can be enforced only in the state
> 183 where the statute is in existence and where the *183 injury has occurred. That is to say, the cause of action
> must have arisen and the remedy must be pursued in the same state, and that must be the state where the
> law was enacted and has effect.

*Willis,* 61 Tex. at 434.

We affirmed this holding in *Marmon v. Mustang Aviation, Inc.,* though we clarified that the rule against extraterritorial application of statutes was not absolute. In *Marmon,* the Court rejected an argument that *Willis* was no longer good law based on the United States Supreme Court's holding in *Richards v. United States,* 369 U.S. 1, 82 S.Ct. 585, 7 L.Ed.2d 492 (1962), that states could constitutionally apply the laws of other states based on the other state's interest in the dispute. *Marmon,* 430 S.W.2d at 185-86. We explained a principle we reaffirm today—the Legislature often has the *authority* to give a statute extraterritorial effect, but courts cannot conclude that the Legislature *intended* a statute to have extraterritorial effect absent language that "can be construed as *expressly* giving extraterritorial effect" to the statute. *Id.* at 186; *see also id.* at 187 ("[N]o legislation is presumed to be intended to operate outside the territorial jurisdiction of the state ... enacting it." (quoting 50 AM. JUR. *Statutes* § 487 (1944))). We reiterated this principle less than two decades ago: "We start with the principle that a statute will not be given extraterritorial effect by implication but only when such intent is clear." *Coca-Cola Co. v. Harmar Bottling Co.,* 218 S.W.3d 671, 682 (Tex. 2006). This principle accords with the holdings of the United States Supreme Court. *See Abitron,* 600 U.S. at 417, 143 S.Ct. 978 ("It is a longstanding principle of American law that legislation of Congress, unless a contrary intent appears, is meant to apply only within the territorial jurisdiction of the United States." (cleaned up) (quoting *Morrison v. Nat'l Austl. Bank Ltd.,* 561 U.S. 247, 255, 130 S.Ct. 2869, 177 L.Ed.2d 535 (2010))); *Kiobel,* 569 U.S. at 115, 133 S.Ct. 1659 ("[W]hen a statute gives no clear indication of an extraterritorial application, it has none and reflects the presumption that United States law governs domestically but does not rule the world." (citations and internal quotation marks omitted)).

## III. Analysis

The Pohls and Ammons argue that the private right of action and remedies set forth in Section 82.0651 are not available to the clients because the conduct that forms the gravamen of their complaints took place outside Texas, in Louisiana and Arkansas. For the reasons discussed below, we agree and hold that the clients' allegations are not actionable under Section 82.0651(a).

To resolve the question, we first consider whether the text of Section 82.0651 expresses an intent that it apply extraterritorially. We begin with a strong presumption against extraterritorial application of a Texas statute, which cannot be overcome by implication "but only when such intent is clear." *Coca-Cola,* 218 S.W.3d at 682; *see Marmon,* 430 S.W.2d at 186; *see also Abitron,* 600 U.S. at 417-21, 143 S.Ct. 978 (examining whether Congress "affirmatively and unmistakably" indicated that a provision of the Lanham Act should apply to foreign conduct (quoting *RJR Nabisco,* 579 U.S. at 335, 136

S.Ct. 2090)). Our examination of Section 82.0651 uncovers no indication that the Legislature intended it should apply to conduct occurring outside Texas's borders.

The court of appeals seemingly agreed that Section 82.0651 itself does not express any intent that it apply extraterritorially. To find the extraterritorial hook, it looked outside Section 82.0651, to the Penal Code. It reasoned that, by incorporating
184 Penal *184 Code Section 38.12(a) and (b) in the definition of civil barratry in Section 82.0651, the Legislature expressed its intent that Penal Code Section 1.04 *also* be incorporated. 690 S.W.3d at 334. Section 1.04 authorizes prosecution in Texas of a criminal offense even if part of the defendant's conduct occurs outside Texas so long as "either the conduct or a result that is an element of the offense occurs inside this state." TEX. PENAL CODE § 1.04(a)(1). The court of appeals thus concluded that Section 82.0651(a)'s extraterritorial application is permissible because "any extraterritorial reach ... is occurring within the Penal Code." 690 S.W.3d at 334.

The court of appeals erred in reading the Legislature's express incorporation of Penal Code Section 38.12(a) and (b) as a sub silentio incorporation of Penal Code Section 1.04. *See TGS-NOPEC Geophysical Co. v. Combs,* 340 S.W.3d 432, 439 (Tex. 2011) ("We presume that the Legislature chooses a statute's language with care, including each word chosen for a purpose, while purposefully omitting words not chosen."). Section 82.0651(a) creates a cause of action for a client whose legal-services contract was "procured as a result of conduct violating [Penal Code] Section 38.12(a) or (b)" or Disciplinary Rule 7.03. TEX. GOV'T CODE § 82.0651(a). The Legislature took care to incorporate two specific subsections of the Penal Code and one Disciplinary Rule. But it made no mention of Penal Code Section 1.04.[9] We must regard this omission as intentional and meaningful, particularly in the face of the presumption against extraterritoriality. *See Coca-Cola,* 218 S.W.3d at 682 ("[A] statute will not be given extraterritorial effect by implication but only when such intent is clear.").

The clients contend that Section 82.0651(e) supports Section 82.0651(a)'s broader application. Subsection (e) describes the statute's purposes: "to protect those in need of legal services against unethical, unlawful solicitation and to provide efficient and economical procedures to secure that protection." TEX. GOV'T CODE § 82.0651(e). They argue this statement distinguishes Section 82.0651 from the statute the Court refused to apply extraterritorially in *Coca-Cola* because in that case, the relevant statute governing anticompetitive behavior stated that its purpose included "provid[ing] the benefits of... competition to consumers in the state." 218 S.W.3d at 682 (quoting TEX. BUS. & COM. CODE § 15.04). The clients contend that because Section 82.0651(e) does not limit the statute's scope to reach only those "in the state," the Legislature intended the statute to apply to all clients wherever situated. By suggesting that the *absence* of language *limiting* the statute's application can overcome the presumption against extraterritoriality, the clients flip the presumption on its head. The presumption requires us to conclude that the persons the Legislature sought to protect— "those in need of legal
185 services"—surely *185 cannot refer to every such person around the world or even every person in the United States. *See Abitron,* 600 U.S. at 420-21, 143 S.Ct. 978 (noting that even statutory references to "foreign commerce" and "all commerce" are insufficient to rebut the presumption that a statute is intended to apply only to domestic commerce). Were it otherwise, the presumption would have no force at all.

Citing the statute's legislative history, the clients urge that Section 82.0651(a) was intended to create a new civil cause of action to allow clients, including themselves, to combat barratry by Texas lawyers regardless of where it may occur. They argue that defendants' construction of the statute is flawed because it creates the incongruous result that the same conduct could expose the lawyers to criminal liability and professional discipline in Texas but not civil liability under Section 82.0651(a). Even if that were true, the fact of an incongruous result in a particular application cannot justify implying the Legislature intended the statute to apply extraterritorially when its text does not clearly state that intent. *See Coca-Cola,* 218 S.W.3d at 682.

Having determined that Section 82.0651's text does not demonstrate the Legislature's clear intent that it apply extraterritorially, we turn to whether the application of Section 82.0651(a) to these clients' claims would be an impermissible extraterritorial application. *See Abitron,* 600 U.S. at 418, 143 S.Ct. 978 (explaining that if the relevant statutory provision does not apply extraterritorially, the court's second inquiry resolves whether the suit seeks a permissible domestic application or an impermissible foreign application); *see also RJR Nabisco,* 579 U.S. at 337, 136 S.Ct. 2090 (noting the Supreme Court's cases "reflect a two-step framework for analyzing extraterritoriality issues" (citing *Kiobel,* 569 U.S. 108, 133 S.Ct. 1659, 185 L.Ed.2d 671, and *Morrison,* 561 U.S. 247, 130 S.Ct. 2869, 177 L.Ed.2d 535)).

To make this determination, courts identify the "focus" of the Legislature's concern underlying the provision at issue. *Abitron,* 600 U.S. at 418, 143 S.Ct. 978. "The focus of a statute is the object of its solicitude, which can include the conduct it seeks to regulate as well as the parties and interests it seeks to protect or vindicate." *Id.* (cleaned up) (quoting *WesternGeco LLC*

v. ION Geophysical Corp., 585 U.S. 407, 413-14, 138 S.Ct. 2129, 201 L.Ed.2d 584 (2018)). We then ask whether the conduct relevant to that focus occurred within or outside Texas. *See id.* (citing *Nestlé USA, Inc. v. Doe,* 593 U.S. 628, 633, 141 S.Ct. 1931, 210 L.Ed.2d 207 (2021)). The analysis presumes that claims involve both domestic and foreign activity and is designed to separate the activity that matters from the activity that does not. *Id.* at 419, 143 S.Ct. 978. Indeed, the presumption would be meaningless if any domestic conduct could defeat it. *Id.*

The court of appeals concluded Section 82.0651(a)'s application here would not be impermissibly extraterritorial because some of the defendants' alleged acts of barratry—knowingly financing the improper solicitation and knowingly accepting employment that resulted from that solicitation—occurred in Texas. 690 S.W.3d at 333-34. It held that liability under Section 82.0651(a) depends on this "criminal behavior," so Section 82.0651(a) is not doing extraterritorial work given that these acts occurred in Texas. *Id.* at 334. The court of appeals applied the wrong standard. Extraterritorial application of a civil statute that does not express it should apply extraterritorially is not permissible merely because *some* or *any* conduct related to the
186 violation occurs in Texas—this *186 will be true in nearly every case. Rather, the purpose of determining the "focus" of Section 82.0651 is to home in on the core conduct the Legislature sought to address —the object of the statute's solicitude —and determine where *that* conduct occurred.[10]

Applying these principles, we conclude that Section 82.0651(a)'s focus is to provide a remedy for clients seeking to void legal-services contracts that were solicited and procured through prohibited barratry. *See* TEX. GOV'T CODE § 82.0651(e) (stating the underlying purposes of Section 82.0651 are "to protect those in need of legal services against unethical, unlawful *solicitation* and to provide efficient and economical procedures to secure that protection" (emphasis added)). And the conduct relevant to that focus consists of the acts that procured the legal-services contracts —here, the in-person acts of solicitation. Those solicitations of the Cheathams and Reese occurred outside Texas, in Louisiana and Arkansas, respectively. When a client who is not a Texas resident enters into a legal-services contract that was procured outside Texas through solicitation that occurred outside Texas, affording the client a remedy that exists only by virtue of a Texas statute—Section 82.0651(a)— requires the statute's extraterritorial application.

The clients rely on *Citizens Insurance Co. of America v. Daccach,* 217 S.W.3d 430 (Tex. 2007), but to the extent that case applies, it supports our conclusion that Section 82.0651(a) should not be applied extraterritorially. The Court in *Daccach*
187 considered whether Texas law should apply to a class action against Texas defendants *187 who sold securities without registering them in Texas as required by the Texas Securities Act. *Id.* at 440-46. Although the Court did not expound on extraterritoriality, it noted that the sole violation of law alleged was that the Texas defendants failed to register in Texas before selling or offering securities. *Id.* at 443. Thus, unlike here, both the focus of the statutory provision in question in *Daccach* and the conduct relevant to that focus occurred in Texas.

We acknowledge that the defendants are alleged to have engaged in some conduct in Texas that could support liability under Section 82.0651(a). For example, funding the solicitation in Texas, as defendants are alleged to have done, could violate Penal Code Section 38.12(b) and thus give rise to civil liability under Section 82.0651(a). But for a defendant to violate Section 38.12(b), there must also be a violation of Section 38.12(a). In this case, the conduct violating Section 38.12(a) was the actual solicitation of the clients, which occurred outside Texas. And the clients conceded at oral argument that their allegations are limited to the "financing and the directing of the solicitation" and not "the unlawful solicitation." Because Section 82.0651's focus is on the solicitation of the legal-services contract, and the solicitation undisputedly occurred outside Texas, the fact that *some* unlawful conduct, such as the solicitation's financing, occurred in Texas does not make the application of Section 82.0651(a) in this case any less extraterritorial. *See* *Abitron,* 600 U.S. at 419, 143 S.Ct. 978 (noting the presumption would be meaningless if the mere existence of any domestic conduct could defeat it).

Our conclusion that Section 82.0651(a)'s application in this case would be impermissibly extraterritorial becomes apparent when one contrasts a hypothetical Texas-centric application. In the hypothetical, a client who is a Texas resident alleges that his contract with a Texas lawyer was solicited and executed in Texas, contemplating the provision of legal services in Texas for a legal dispute that arose in Texas. In no way could the application of Section 82.0651(a) to this set of facts be regarded as extraterritorial. The Texas court adjudicating the dispute could comfortably apply the statute with no concern for whether it was empowered to do so. It would have no qualms that it could be exporting Texas law to provide relief to residents of other states for alleged violations of Texas law, which may differ in important details from the law of the state in which they reside.[11]

Here, by contrast, the conduct that is relevant to Section 82.0651(a)'s focus—the solicitation of the clients that resulted in the allegedly unlawful procurement of legal-services contracts—occurred outside Texas. The Cheathams and Reese,

residents of Louisiana and Arkansas, respectively, signed the legal-services contracts they now seek to void in their home states, outside Texas. Perhaps most critically, they acknowledge that the allegedly improper solicitation of those contracts—the conduct that is the gravamen of the case— also occurred outside Texas. Adjudicating their claims under Section 82.0651(a) would require determining whether the solicitation outside Texas of non-Texans for legal representation that was to occur in courts outside Texas violated the laws of Texas. It is inescapable that applying Section 82.0651(a) to this set of facts would extend Texas law outside its borders.

188 Because we conclude that allowing the clients to proceed on their claims under *188 Section 82.0651(a) would constitute an impermissible extraterritorial application of the statute, we hold the trial court was correct in granting all defendants' motions for summary judgment with respect to that claim. And because the clients' claims for civil conspiracy and "aiding and abetting" depend on defendants' alleged violations of Section 82.0651(a), those claims fail as well. *See* *Agar Corp. v. Electro Cirs. Int'l, LLC,* 580 S.W.3d 136, 140-41 (Tex. 2019) (describing civil conspiracy as a "derivative tort" that is "connected to the underlying tort and survives or fails alongside it").

The clients also allege that Pohl and Ammons breached fiduciary duties, primarily through their alleged failure to disclose certain facts about the legal representation. In addition to alleging that Pohl and Ammons concealed their alleged barratry scheme, the clients allege that the lawyers had the Cheathams sign new agreements without fully disclosing material facts and the advantages and disadvantages of those agreements. They also contend the lawyers refused to turn over undisputed client funds. These claims are not dependent on the success or failure of the Section 82.0651(a) claim, and the lawyers' arguments regarding the extraterritorial reach of the statute are not a valid ground for summary judgment on the fiduciary duty claims. We therefore examine their other arguments to see if any supports summary judgment on the clients' claims for breach of fiduciary duty.

As an alternative ground for affirming summary judgment as to the Cheathams, Ammons argues that their claims are barred by res judicata. Ammons bases this argument on the Louisiana court's rejection, in connection with the fee dispute, of the Cheathams' allegations of "invalidity and/or unethical conduct" and its findings that the Cheathams' legal-services contract was "valid and enforceable" and that "no impropriety was committed" by Ammons. But as Ammons's briefing concedes, it was only "the barratry action" in the underlying lawsuit that he asserts was based on the same claims decided in the Louisiana court. Ammons does not contend, nor is there any basis in the record to conclude, that the Cheathams' claims for breach of fiduciary duty were decided or could have been decided in the Louisiana fee proceeding. Therefore, Ammons's res judicata argument does not support summary judgment on the clients' fiduciary duty claims.

Pohl's alternative arguments fare no better. Pohl argues first that the court of appeals erred in concluding that the clients' claim under Section 82.0651(a) was governed by a four-year statute of limitations. Given our disposition of the clients' statutory claims, we need not decide that precise question. But a claim for breach of fiduciary duty is expressly governed by the four-year statute. TEX. CIV. PRAC. & REM. CODE § 16.004(a)(5). Pohl does not challenge the trial court's conclusion that the clients' claims, including their claims for breach of fiduciary duty, were brought within four years of when they accrued. Pohl has thus failed to demonstrate his entitlement to summary judgment on the clients' fiduciary duty claim based on limitations.

Finally, Pohl argues that the Court should dismiss Reese's claims in their entirety because the trial court erred by denying his motion to strike Reese's "petition in intervention." Pohl argues that a party seeking to intervene in a lawsuit must have a justiciable interest in the pending suit and Reese did not have such an interest in the Cheathams' pending claims. *See* *In re Union Carbide Corp.,* 273 S.W.3d 152, 154-55 (Tex. 2008) (discussing TEX. R. CIV. P. 60). But as the court of
189 *189 appeals noted, Reese's pleading, while labeled an "intervention," also sought permissive joinder under Rule 40. 690 S.W.3d at 339-40. Parties are free to plead and rely on multiple rules when attempting to join a lawsuit. *See* *Union Carbide,* 273 S.W.3d at 156.

Rule 40(a) permits the joinder of plaintiffs who (1) assert the same right to relief that (2) arises out of the same transaction, occurrence, or series of transactions or occurrences and (3) any common question of law or fact will arise. TEX. R. CIV. P. 40(a). The trial court's order expressly permitted Reese to join the suit under Rule 40(a). "[I]n matters of joinder and misjoinder of parties, the trial courts have a broad discretion." *Royal Petroleum Corp. v. Dennis,* 160 Tex. 392, 332 S.W.2d 313, 317 (1960). Pohl failed to demonstrate any abuse of that discretion by the trial court in permitting Reese to join the suit.

## IV. Conclusion

We reaffirm our longstanding presumption that a civil statute does not have extraterritorial effect unless the Legislature makes clear that such effect is intended. The Cheathams and Reese, none of whom are Texas residents, seek to apply Texas's civil barratry statute to void contracts for legal services that were procured outside Texas as the result of alleged acts of solicitation that occurred outside Texas. In other words, they seek to give Section 82.0651(a) extraterritorial effect. Because the Legislature has not clearly indicated its intent that this statute apply extraterritorially, the trial court correctly granted summary judgment and dismissed the clients' claims based on the statute. But Pohl and Ammons have not shown they are entitled to summary judgment on the clients' separate claims for breach of fiduciary duty. We therefore reverse the court of appeals' judgment in part, affirm the judgment in part, and remand to the trial court for further proceedings.

Justice Busby filed a dissenting opinion, in which Justice Lehrmann and Justice Boyd joined.

Justice Devine did not participate in the decision.

Justice Busby, joined by Justice Lehrmann and Justice Boyd, dissenting.

Clients who hired Texas attorneys to represent them in other states have sued those attorneys in Texas, seeking to void their fee agreements because the attorneys —while located in their Texas offices —allegedly contracted with and paid case runners to solicit the clients' business in those states. The attorneys' alleged conduct, if proven, is a criminal offense that can be prosecuted in Texas. Section 38.12 of the Penal Code makes it a third-degree felony for a Texas attorney to "offer[] to pay or give a person money or anything of value to solicit employment" with "intent to obtain an economic benefit," or to "knowingly finance[] the commission of [such] an offense." TEX. PENAL CODE § 38.12(a)(4), (b)(1). And Section 1.04 gives Texas jurisdiction to prosecute when "conduct... that is an element of the offense" —here, the alleged financing and offers to pay—"occurs inside this state." *Id.* § 1.04(a)(1). Independently, such professional misconduct can result in disbarment.[1]

190 Yet today, the Court holds that Texas law has nothing to say about whether these Texas attorneys can still profit from *190 their allegedly criminal and unprofessional conduct—even though the Legislature unanimously passed a civil barratry statute in 2011 creating "an action to void a contract for legal services that was procured as a result of conduct violating [Penal Code] Section 38.12(a) or (b)." TEX. GOV'T CODE § 82.0651(a). Why? The attorneys' alleged victims were located in other states, the Court reasons, so the solicitors completed their work there. And because the sole "focus" of the statute is on the "acts of solicitation" themselves, applying it to the conduct here would violate the presumption against applying Texas laws extraterritorially. *Ante* at 186.

In reaching this conclusion, the Court rewrites the statute. The Legislature has expressly told us to focus on "conduct violating" Section 38.12(a) or (b), and the many distinct parts of those subsections demonstrate the Legislature's intent to regulate a wide variety of conduct. Here, the alleged violating conduct—the financing and offers to pay the solicitors—occurred in Texas, not in other states. Accordingly, this suit is a permissible domestic application of the statute. Because I can find no basis for the Court's decision in the text of the statutes just quoted, I respectfully dissent.

*** * ***

At first glance, there is a tidy appeal to the two-step analytical framework the Court borrows from U.S. Supreme Court cases addressing whether a federal statute applies abroad. A legislative body is presumed to act with domestic applications in mind, so we first consider whether it has expressed a clear intent that its laws apply to conduct in the territory of other sovereigns. *Ante* at 183-84; *Abitron Austr. GmbH v. Hetronic Int'l, Inc.,* 600 U.S. 412, 417-18, 143 S.Ct. 978, 215 L.Ed.2d 104 (2023). The Court concludes that the Legislature expressed no such intent here.[2]

If the law is not extraterritorial, then the second step is to "identify the *focus* of the [legislative] concern underlying the provision at issue" and "ask whether the *conduct relevant to that focus* occurred within [domestic territory]." *Ante* at 185 (emphases added); *see also* *Abitron,* 600 U.S. at 418, 143 S.Ct. 978. If so, the case "involves a permissible domestic application of the statute, even if other conduct occurred abroad." *Abitron,* 600 U.S. at 419, 143 S.Ct. 978 (cleaned up). I part ways with the Court on the application of this focus test.

A statute's focuses "are the objects of [its] solicitude," *Morrison v. Nat'l Austr. Bank Ltd.,* 561 U.S. 247, 267, 130 S.Ct. 2869, 177 L.Ed.2d 535 (2010), which "can include the conduct it seeks to regulate, as well as the parties and interests it seeks to
191 protect or vindicate," *Abitron,* 600 U.S. at 418, 143 S.Ct. 978 (cleaned up). In other *191 words, a statute may have more than one focus, and different parts of a statute may have different focuses. "When determining the focus of a statute," if it

"works in tandem with other provisions, it must be assessed *in concert* with those other provisions." *WesternGeco LLC v. ION Geophysical Corp.,* 585 U.S. 407, 414, 138 S.Ct. 2129, 201 L.Ed.2d 584 (2018) (emphasis added). Thus, in *RJR Nabisco, Inc. v. European Community,* the Supreme Court looked to various criminal-law predicate offenses incorporated into the civil RICO statute to determine whether that statute reached at least some foreign conduct. 579 U.S. 325, 338, 136 S.Ct. 2090, 195 L.Ed.2d 476 (2016).

This "focus of legislative concern" test has been criticized as indeterminate, difficult to apply consistently (as shown by the splits of authority it has produced), and subject to manipulation by courts that choose their own preferred focus over other alternatives without tying that choice to the statutory language.[3] Interestingly, these are similar to the criticisms the Supreme Court leveled at the location-of-conduct test and effects test, which preceded the focus test. *See Morrison,* 561 U.S. at 258-261, 130 S.Ct. 2869.

There need be no such confusion regarding this statute, however, because the Legislature expressly states its focus in the text. The statute specifies that its purpose is "to protect those in need of legal services from unethical, unlawful solicitation and to provide efficient and economical procedures to secure that protection." TEX. GOV'T CODE § 82.0651(e). So what unethical, unlawful solicitation is the focus of the procedures it provides? The statute tells us earlier in the same section, where it creates a cause of action to void a contract "that was procured as a result of *conduct violating* [Penal Code] Section 38.12(a) or (b)." *Id.* § 82.0651(a) (emphasis added). Here, the procuring "conduct relevant to that focus"[4] is that the attorneys (among other things) allegedly "offer[ed] to pay or give a person money or anything of value to solicit employment" in violation of Section 38.12(a)(4) and "knowingly finance[d] the commission of [such] an offense" in violation of Section 38.12(b)(1). This alleged conduct that the statute seeks to regulate occurred at the attorneys' Texas offices. Accordingly, the court of appeals correctly held that this case involves a permissible domestic application of Section 82.0651(a).

This Court reaches a contrary conclusion by treating Section 82.0651(a) as if its sole focus were "the in-person acts of solicitation" that "procured the legal-services contracts." *Ante* at 186; *see also id.* at 187 ("Section 82.0651's focus is on the solicitation of the legal-services contract."). This interpretive move ignores the whole text of Penal Code Section 38.12(a) and (b), which must be read "in concert" with Section 82.0651(a) to determine that statute's focus. *WesternGeco,* 585 U.S. at 414, 138 S.Ct. 2129; *see RJR Nabisco,* 579 U.S. at 338, 136 S.Ct. 2090.

Specifically, the acts of solicitation that the Court cherry-picks as "the *core* conduct the Legislature sought to address"[5] are merely the focus of Penal Code Section 38.12*(a)(2),* which criminalizes "solicit[ing] employment." By incorporating *all* of
192 Penal Code Section 38.12(a) and (b), Section *192 82.0651(a) "seeks to regulate"[6] a much wider range of different types of conduct, all of which the Legislature has told us it finds necessary to "protect those in need of legal services against unethical, unlawful solicitation." TEX. GOV'T CODE § 82.0651(e). That is the Legislature's call to make, not ours.[7] Here is the full text of subsections (a) and (b), which shows their breadth:

> (a) A person commits an offense if, with intent to obtain an economic benefit the person:
>
> (1) knowingly institutes a suit or claim that the person has not been authorized to pursue;
>
> (2) solicits employment, either in person or by telephone, for himself or for another;
>
> (3) pays, gives, or advances or offers to pay, give, or advance to a prospective client money or anything of value to obtain employment as a professional from the prospective client;
>
> (4) pays or gives or offers to pay or give a person money or anything of value to solicit employment;
>
> (5) pays or gives or offers to pay or give a family member of a prospective client money or anything of value to solicit employment; or
>
> (6) accepts or agrees to accept money or anything of value to solicit employment.
>
> (b) A person commits an offense if the person:
>
> (1) knowingly finances the commission of an offense under Subsection (a);
>
> (2) invests funds the person knows or believes are intended to further the commission of an offense under Subsection (a); or

(3) is a professional who knowingly accepts employment within the scope of the person's license, registration, or certification that results from the solicitation of employment in violation of Subsection (a).

TEX. PENAL CODE § 38.12(a)-(b).

It is neither this Court's role nor a feasible task to read a collective legislative mind and select only one type of conduct from this statutory list, elevating it as "core"[8]—and therefore the sole touchstone of whether the statute is being applied domestically or extraterritorially—while discarding the other eight types of conduct the Legislature chose to regulate. "[W]hen we stray from the plain language of a statute, we risk encroaching on the Legislature's function to decide what the law should be." *Fitzgerald v. Advanced Spine Fixation Sys., Inc.,* 996 S.W.2d 864, 866 (Tex. 1999). Rather than making value judgments about a statute's core focus, we should stick to using traditional tools of statutory construction to determine that focus, as we have done for decades in deciding disputes about statutes' territorial scope. *See, e.g., Citizens Ins. Co. v. Daccach,* 217 S.W.3d 430, 442, 444-46 (Tex. 2007); *Coca-Cola Co. v. Harmar Bottling Co.,* 218 S.W.3d 671, 682 (Tex. 2006); *Marmon v. Mustang Aviation, Inc.,* 430 S.W.2d 182, 185 (Tex. 1968).

193 The Court attempts to avoid this problem by disregarding the clients' allegation that the attorneys violated Section 38.12(a)(4) when they offered in Texas to *193 pay the solicitors.[9] In the Court's view, the only "conduct violating Section 38.12(a) was the actual solicitation of the clients" under Section 38.12(a)(2), "which occurred outside Texas." *Ante* at 187. An examination of the clients' live pleading shows this is simply incorrect, and there is no issue before us at this stage disputing that offers to pay in fact occurred in Texas. I did not understand the clients to abandon these allegations at oral argument by also mentioning the alleged violation of Section 38.12(b)(1), as the Court appears to suggest. *See id.*[10]

Perhaps the result of today's decision will be that the Legislature amends the civil barratry statute to make even more explicit what the "core focus" of that statute is under the Court's new gloss on our extraterritoriality jurisprudence. Indeed, many of the U.S. Supreme Court's extraterritoriality decisions have been followed by congressional enactments expanding the statutes' scope.[11] This sort of dialogue between the legislative and judicial branches is often salutary and clarifying. *See In re Doe,* 19 S.W.3d 346, 354 (Tex. 2000). But here, where the focus of the statute is already apparent from its text, I regard it as wasteful. Because the Legislature spoke clearly and should not have to expend its limited time and resources to act again, I respectfully dissent.

[1] The plaintiffs below (and respondents here) include LaDonna's former husband, Mark Cheatham, Sr.; her mother, Luella Miller; and her son (and surviving passenger), Mark Cheatham, Jr. For convenience, we will refer to all three family members collectively as "the Cheathams."

[2] Mark Cheatham, Jr., who was seventeen at the time of the accident, later affirmed the agreement his father signed.

[3] *See* LA. CODE CIV. PROC. art. 4651 ("A concursus proceeding is one in which two or more persons having competing or conflicting claims to money ... are impleaded and required to assert their respective claims contradictorily against all other parties to the proceeding.").

[4] The lawsuit did not name Talley, Ladner, Helping Hands Group, or Precision Marketing as defendants.

[5] The court of appeals affirmed summary judgment for two additional defendants: Helping Hands Financing (Donalda's company) and one of its employees. 690 S.W.3d at 340. The Cheathams and Reese did not seek review of that portion of the judgment, so those claims are not before us.

[6] *State Bar of Tex. v. Kilpatrick,* 874 S.W.2d 656, 658 n.2 (Tex. 1994).

[7] As early as 1769, Blackstone characterized barratry as the offense of "exciting and stirring up suits and quarrels between his majesty's subjects." 4 WILLIAM BLACKSTONE, COMMENTARIES *133. Some version of the prohibition on barratry has been part of the Texas Penal Code since at least 1879, though the offense originally required an intent to "distress or [harass]" the party being sued. *See* TEX. PENAL CODE art. 271 (1879) ("If any person shall willfully instigate, maintain, excite, prosecute or encourage the bringing of any suit or suits at law, or equity, in any court in this state, in which such person has no interest, with the intent to distress or [harass] the defendant therein, or shall willfully bring or prosecute any false suit or suits at law or equity, of his own, with the intent to distress or [harass] the defendant therein, he shall be deemed guilty of barratry...."). Since 1901, however, the criminal barratry statute has more generally prohibited "the fomenting of litigation by attorneys at law by soliciting employment." *State v. Mays,* 967 S.W.2d 404, 408-09 (Tex. Crim. App. 1998) (quoting *McCloskey v. San Antonio Traction Co.,* 192 S.W. 1116, 1119 (Tex. App.-San Antonio 1917, writ ref'd)); *see* TEX. PENAL CODE art. 421 (1911) ("[I]f any attorney at law shall seek or obtain employment in any suit or case at law, or in equity, to prosecute or defend the same by means of personal solicitation of such employment, or by procuring another to solicit for him employment in such cause, or who shall, by himself or another, seek or obtain such employment by giving to the person from whom the employment is sought money or other thing of value, or who shall, directly or indirectly, pay the debts or liabilities of the person from whom such employment is

sought, or who shall loan or promise to give, loan or otherwise grant money or other valuable thing to the person from whom such employment is sought, before such employment, in order to induce such employment, whether the same shall be done directly by him or through another, shall be deemed guilty of barratry....").

[8] Section 82.0651(c) also creates a cause of action for a person who was improperly solicited but did not enter into a legal-services contract. *Id.* § 82.0651(c). Under that subsection, a prevailing plaintiff's recovery is limited to the $10,000 statutory penalty, actual damages caused by the prohibited conduct, and attorney's fees. *Id.* § 82.0651(d). Because all the plaintiffs here entered into legal-services contracts, they brought their claims under Section 82.0651(a).

[9] The clients argue that it was unnecessary for Section 82.0651 to mention Penal Code Section 1.04 because that provision "automatically applies" to the criminal offense of barratry under Penal Code Section 38.12. *See* TEX. PENAL CODE § 1.03(b) ("The provisions of Title[] 1 ... apply to offenses defined by other laws...."). But Penal Code Section 1.03 also states that the Penal Code does not affect "a right or liability to damages, penalty, forfeiture, or other remedy authorized by law to be recovered or enforced in a civil suit for conduct this code defines as an offense." *Id.* § 1.03(c). Consistent with Section 1.03's plain text, we recently held it was error to "import[] this distinctly criminal jurisdictional component" into "undisputedly civil matters." *Goldstein v. Sabatino,* 690 S.W.3d 287, 291 (Tex. 2024). Our dissenting colleagues tellingly ignore both the text of Section 1.03 and our recent opinion in *Goldstein.*

[10] Our dissenting colleagues decry the focus test as indeterminate and subject to manipulation by courts choosing "their own preferred focus over other alternatives without tying that choice to the statutory language." *Post* at 191 (Busby, J., dissenting). Yet they reason there is no such risk here because the Legislature expressly stated the statute's focus in the text. So far, so good—we agree the Legislature did so, in Section 82.0651(e). *See* TEX. GOV'T CODE § 82.0651(e) (identifying Section 82.0651's "underlying purposes, which are to protect those in need of legal services against unethical, unlawful solicitation and to provide efficient and economical procedures to secure that protection"); *see also* *Gabriel Inv. Grp., Inc. v. Tex. Alcoholic Beverage Comm'n,* 646 S.W.3d 790, 798 (Tex. 2022) (observing that when a statute states its purpose as "part of the text enacted into law, we do not disregard it as we would a statement of purpose plucked from legislative history"); *Cadena Comercial USA Corp. v. Tex. Alcoholic Beverage Comm'n,* 518 S.W.3d 318, 355 (Tex. 2017) (Willett, J., dissenting) ("When legislators articulate an explicit purpose in the very words of the statute, the Court need not—and should not—speculate.").

Rather than grapple with this express statutory statement, our dissenting colleagues wave it off with only passing references. Though they refer to the Court's straightforward statutory analysis as an "interpretive move," *post* at 191 (Busby, J., dissenting), it is they who pluck two words from Section 82.0651(a) to support the broader statutory focus they would prefer the Legislature to have declared. Whether our dissenting colleagues wish Section 82.0651(a) created more expansive civil liability for Texas attorneys representing out-of-state clients is beside the point. *See id.* at 189-90 (suggesting that a result of the Court's holding will be that "Texas attorneys can still profit from their allegedly criminal and unprofessional conduct"). What matters here is that ignoring a plainly relevant statutory provision and cherry-picking from another is not persuasive statutory construction. It is a wholesale judicial revision of the statute. *See* *Phila. Indem. Ins. Co. v. White,* 490 S.W.3d 468, 484 (Tex. 2016) ("We discern legislative intent from the statute as a whole, not from isolated portions."); *Tex. Mut. Ins. Co. v. Garcia,* 583 S.W.3d 779, 783 (Tex. App.-El Paso 2019, pet. denied) ("We read statutes as cohesive texts; we do not cherry-pick words and phrases, read them in isolation, and then decide they alone represent the Legislature's intent while ignoring the proper context of those words and phrase[s]." (citation omitted)).

[11] While we do not ascribe forum-shopping motives to anyone involved, we note that Ammons deposited all the settlement funds into the Louisiana court's registry, only to have the Cheathams decide they preferred to seek relief in Texas.

[1] *See* TEX. GOV'T CODE § 82.062; TEX. DISCIPLINARY RULES PROF'L CONDUCT R. 7.03, 8.04(a)(9), 8.05(a), *reprinted in* TEX. GOV'T CODE, tit. 2, subtit. G, app. A; *State Bar of Tex. v. Kilpatrick,* 874 S.W.2d 656, 659 (Tex. 1994).

[2] *Ante* at 183-85. Because I conclude at step two that no extraterritorial application of Section 82.0651(a) is involved here, it is unnecessary for me to reach the step-one question whether that statute applies extraterritorially. *See* *Abitron,* 600 U.S. at 418 n.2, 143 S.Ct. 978 ("[C]ourts may take these steps in any order."). But I note that a thorough case for extraterritoriality was recently made by a federal district court addressing a different Texas statute that incorporates the Penal Code. *See* *A.S. v. Salesforce, Inc.,* 747 F. Supp. 3d 970, 977-981 (N.D. Tex. 2024). And the Supreme Court has interpreted a civil statute incorporating federal criminal laws to have partial extraterritorial reach based on the text of the latter laws. *See* *RJR Nabisco, Inc. v. European Community,* 579 U.S. 325, 338, 136 S.Ct. 2090, 195 L.Ed.2d 476 (2016). The Court claims that I "tellingly ignore" authorities it says point the other way in this particular context. *Ante* at 184 n.9. I assure the Court that I have read its opinion and considered those authorities. But again, I find it unnecessary to reach a decision regarding step one given my conclusion at step two.

[3] *See, e.g.,* Franklin A. Gevurtz, *Extraterritorial Application of Statutes and Regulations,* 70 AM. J. COMP. L. i347, i365-i371 (2022); Aaron D. Simowitz, *The Extraterritoriality Formalisms,* 51 CONN. L. REV. 375, 388-404 (2019).

[4] *Abitron,* 600 U.S. at 418, 143 S.Ct. 978 (quoting *WesternGeco,* 585 U.S. at 413, 138 S.Ct. 2129).

[5] *Ante* at 186 (emphasis added).

[6] *Abitron,* 600 U.S. at 418, 143 S.Ct. 978 (cleaned up).

[7] *In re Dep't of Fam. & Protective Servs.*, 273 S.W.3d 637, 645 (Tex. 2009) ("[I]t is not for courts to decide if legislative enactments are wise or if particular provisions of statutes could be more effectively worded to reach what courts or litigants might believe to be better or more equitable results.").

[8] *Ante* at 185-86.

[9] Plaintiffs' and Intervenor's Sixth Amended Petition at 3, 21, No. 2017-41110 (55th Dist. Ct., Harris County, Tex. Apr. 24, 2019).

[10] As the statutory language quoted above shows, a violation of subsection (b)(1) can be based on a violation of subsection (a)(4). The clients have alleged that both violations occurred in Texas.

[11] *See* Simowitz, *supra* note 3, at 396.

Save trees - read court opinions online on Google Scholar.