**THE HUNTINGTON NATIONAL BANK**
PO BOX 1558 EA1W37
COLUMBUS OH 43216-1558

Huntington

MMA LAW FIRM, PLLC
1235 NORTH LOOP W STE 810
HOUSTON TX 77008-1764

*Have a Question or Concern?*

Stop by your nearest Huntington office or contact us at:

1-800-480-2001

www.huntington.com/businessresources

## *Huntington Business Analyzed Checking* — *Account: -------3908*

**Statement Activity From:**
**07/01/26 to 07/31/26**

| | |
|---|---|
| Days in Statement Period | 31 |
| Average Ledger Balance* | 2,800,107.84 |
| Average Collected Balance* | 2,795,849.07 |

* The above balances correspond to the service charge cycle for this account.

| | |
|---|---|
| **Beginning Balance** | **$2,624,513.02** |
| **Credits (+)** | **699,723.68** |
| Regular Deposits | 132,022.68 |
| Wire Transfer Credits | 567,000.00 |
| Other Credits | 701.00 |
| **Debits (-)** | **785,349.08** |
| Regular Checks Paid | 701.00 |
| Electronic Withdrawals | 29,955.56 |
| Wire Transfer Debits | 754,692.52 |
| **Ending Balance** | **$2,538,887.62** |

## *Deposits (+)* — *Account:-------3908*

| Date | Amount | Serial # | Type |
|---|---|---|---|
| 07/02 | 63,604.38 | | Remote |
| 07/20 | 68,353.42 | | Remote |
| 07/20 | 64.88 | | Remote |

## *Other Credits (+)* — *Account:-------3908*

| Date | Amount | Description |
|---|---|---|
| 07/01 | 557,031.03 | INCOMING FEDWIRE TRANSFER |
| 07/01 | 9,968.97 | INCOMING FEDWIRE TRANSFER |
| 07/28 | 701.00 | SUBSTITUTE CHECK REVERSAL |

## *Checks (-)* — *Account:-------3908*

| Date | Amount | Check # |
|---|---|---|
| 07/27 | 701.00 | 15269 |

(*) Indicates the prior sequentially numbered check(s) may have 1) been voided by you 2) not yet been presented 3) appeared on a previous statement or 4) been included in a list of checks.

## *Checks - Adjustments/Corrections/Returns* — *Account:-------3908*

| Date | Amount | Check # | Explanation |
|---|---|---|---|
| 07/27 | 701.00 | 15269 | Positive pay default return |

Investments are offered through the Huntington Investment Company, Registered Investment Advisor, member FINRA/SIPC, a wholly-owned subsidiary of Huntington Bancshares Inc.

The Huntington National Bank is Member FDIC. ®, Huntington ® and 24-Hour Grace ® are federally registered service marks of Huntington Bancshares Incorporated. The 24-Hour Grace® system and method is patented: US Pat. No. 8,364,581, 8,781,955, 10,475,118, and others pending. © 2026 Huntington Bancshares Incorporated.

Section provides detail from Adjustment / Corrections / Returns requests received via the Check / Reverse Positive Pay services.

## *Other Debits (-)* — *Account:-------3908*

| Date | Amount | Description |
|---|---|---|
| 07/01 | 63,200.50 | OUTGOING FEDWIRE TRANSFER - MANUAL |
| 07/01 | 292,476.75 | OUTGOING FEDWIRE TRANSFER - MANUAL |
| 07/02 | 4,166.13 | OUTGOING FEDWIRE TRANSFER - MANUAL |
| 07/02 | 28,107.62 | OUTGOING FEDWIRE TRANSFER - MANUAL |
| 07/03 | 7,870.70 | MLCSV15 LLC NORT E-CHECK [redacted] |
| 07/06 | 11,633.96 | OUTGOING FEDWIRE TRANSFER - MANUAL |
| 07/07 | 43,077.16 | OUTGOING FEDWIRE TRANSFER - MANUAL |
| 07/07 | 3,700.00 | DEFINITI LLC CORP COLL |
| 07/14 | 1,153.00 | Deel, Inc.[redacted] |
| 07/14 | 3,134.88 | FIDELITY 6821R C FPRS [redacted] |
| 07/21 | 42,176.87 | OUTGOING FEDWIRE TRANSFER - MANUAL |
| 07/21 | 549.03 | COMCAST-XFINITY CABLE SVCS [redacted] |
| 07/22 | 166.37 | ACHMA VISB BILL PYMNT [redacted] |
| 07/24 | 4,732.00 | QUARTERLY FEE PAYMENT [redacted] |
| 07/27 | 2,450.00 | OUTGOING FEDWIRE TRANSFER - MANUAL |
| 07/28 | 559.70 | OBACKS SALE [redacted] |
| 07/28 | 675.00 | N8 SOLUTIONS LLC SALE [redacted] |
| 07/28 | 1,055.00 | Deel, Inc. PURCHASE D [redacted] |
| 07/28 | 3,134.88 | FIDELITY 6821R C FPRS [redacted] |
| 07/28 | 3,225.00 | N8 PROTECT SALE 2[redacted] |
| 07/30 | 267,403.53 | OUTGOING FEDWIRE TRANSFER - MANUAL |

## *Balance Activity* — *Account:-------3908*

| Date | Balance | Date | Balance | Date | Balance |
|---|---|---|---|---|---|
| 06/30 | 2,624,513.02 | 07/07 | 2,800,884.58 | 07/24 | 2,817,390.73 |
| 07/01 | 2,835,835.77 | 07/14 | 2,796,596.70 | 07/27 | 2,814,239.73 |
| 07/02 | 2,867,166.40 | 07/20 | 2,865,015.00 | 07/28 | 2,806,291.15 |
| 07/03 | 2,859,295.70 | 07/21 | 2,822,289.10 | 07/30 | 2,538,887.62 |
| 07/06 | 2,847,661.74 | 07/22 | 2,822,122.73 | | |

Huntington

**In the Event of Errors or Questions Concerning Electronic Fund Transfers** (electronic deposits, withdrawals, transfers, payments, or purchases), please call either 1-614-480-2001 or call toll free 1-800-480-2001, or write to The Huntington National Bank Research - EA4W61, P.O. Box 1558, Columbus, Ohio 43216 as soon as you can, if you think your statement or receipt is wrong or if you need more information about an electronic fund transfer on the statement or receipt. We must hear from you no later than 60 days after we sent you the FIRST statement on which the error or problem appeared.

1. Tell us your name, your business's name (if appropriate) and the Huntington account number (if any).
2. Describe the error or the transaction you are unsure about, and explain as clearly as you can why you believe there is an error or why you need more information.
3. Tell us the dollar amount of the suspected error. We will investigate your complaint or question and will correct any error promptly.

**Verification of Electronic Deposits** If you authorized someone to make regular electronic fund transfers of money to your account at least once every sixty days, you can find out whether or not the deposit has been received by us, call either 1-614-480-2001 or call toll free 1-800-480-2001.

**Balancing Your Statement** - For your convenience, a balancing page is available on our web site https://www.huntington.com/pdf/balancing.pdf and also available on Huntington Business Online.

Huntington

**IMPORTANT INFORMATION ABOUT YOUR TREASURY MANAGEMENT SERVICES AGREEMENT**

If you have Treasury Management Services through Business Online, (e.g., Account Reconcilement, Automated Clearing House ("ACH"), Automated Sweep, Business Security Suite, Cash Deposit and Fulfillment, Controlled Disbursement, eBill Present & Pay, Electronic Deposit, Information Reporting, Integrated Payables, Lockbox Services, Wire Transfer, Zero Balance Accounting, etc.) please know that unless otherwise agreed upon, changes have been made to the Treasury Management Services Agreement, effective August 1, 2026. A copy of the Treasury Management Services Agreement can be viewed at www.huntington.com/TMServiceAgreement.

Changes to the Treasury Management Services Agreement (the "Agreement") are as follows:

1. PART VI: CASH VAULT DEPOSIT AND FULFILLMENT SERVICES

   The following sentence has been added to the end of Section 1.A.: "If you reduce the frequency of Armored Courier pick ups without our approval, or you no longer have Armored Courier services (for a period of time or permanently), we may reverse any provisional credits and cease providing provisional credit thereafter. We may also charge an additional fee."

   The following sentence has been added to the end of the first paragraph of Section 3: "If you reduce the frequency of Armored Courier pick ups without our approval, or you no longer have Armored Courier services (for a period of time or permanently), we may reverse any provisional credits and cease providing provisional credit thereafter. We may also charge an additional fee."

2. PART IX: ELECTRONIC DEPOSIT SERVICES

   In Part A, "Section 1" has been deleted.

   The following language has been added to the end of Section B (additional/modified language italicized):

   "*(ix) you shall at all times require employees accessing this Service to abide by your policies and procedures relating to the creation and management of Electronic Files created by RDC or ICL.*

   *In addition to the foregoing, you represent to us and agree that:*

   (i) We reserve the right, in our sole discretion, not to accept deposits for any reason; provided, however, that in refusing to accept any deposit, we shall act in good faith and use our reasonable business judgment. You agree not to deposit via RDC or ICL "ineligible items," as that term is used by the Board of Governors of the Federal Reserve. You further agree not to deposit Remotely Created Checks (RCC) without our agreement; and,

   (ii) *You shall be solely responsible for transmitting or delivering ICLs to us by the times and on the dates specified by us. We may reject any ICL as determined by us, in our sole discretion, to have been submitted after or before the time required by any applicable schedule or deadline. You agree to be solely liable for, and we shall not have any liability whatsoever to you for, any ICL or other information contained therein that is not received by us or for any ICL or other information contained therein that is intercepted or altered by an unauthorized third party. You agree that we have no obligation to accept an ICL and may reject any ICL or other information contained therein submitted by you. We have no obligation to notify you of the rejection of an ICL or other information contained therein or for the failure to notify you of such rejection. Upon receipt of an ICL submitted by you, we may examine such ICL and other information contained therein to verify that you have complied with this Agreement and followed any Implementation Documentation. If we determine that you have not complied with this Agreement or followed the Implementation Documentation or if errors exist in the ICL or other information contained therein, we may, in our sole discretion, reject the ICL. We also reserve the right to charge you for rejected images at the rates disclosed in the fee schedules or otherwise communicated to you from time to time as provided for in this Agreement. We may, at our option, also perform a risk management analysis of one or more ICLs submitted by you to detect potentially fraudulent checks, and, in our sole discretion, we may reject any such ICL or other information contained therein. If the ICL is balanced and the other information contained therein meets the requirements of these provisions, then we may accept the ICL for deposit. Upon*

Huntington

*acceptance of the ICL, we shall electronically notify you of receipt and acceptance of the ICL for deposit via email as provided by you to us (hereinafter the "Acknowledgment Notification"). The Acknowledgement Notification confirms the ICL has been received and confirms information contained in the ICL such as check volumes and total deposit amount. Information and data reported in the Acknowledgment Notification may be received prior to final posting and confirmation and is subject to correction and is for informational purposes only and may not be relied upon. You agree that we shall have no liability for the content of payment-related information. Notwithstanding the fact that we have accepted an ICL for deposit, any credit made to your account shall be provisional, and you shall remain liable to us for any errors, inaccuracies, breach of warranties and any other loss sustained by, or claim made, against us."*

3. A new PART XIV: INTEGRATED RECEIVABLES is added and the remaining parts re-numbered. Here is the new Part XIV:

"**Section 1. Description of Services.** Our Integrated Receivables Service (the "Service") receives multiple payment types, applies the payments to your customer accounts and invoices, and aggregates your treasury management receivables into one user interface.

The Service includes the following:

(i) Importing payments made by check, credit card, electronic fund transfer (EFT), automated clearing house (ACH), and other payment methods;
(ii) Extracting key data elements from the payment information;
(iii) Auto-matches payments to open invoices and mark matched invoices as paid;
(iv) Processes remittance data provided in various formats such as image scans, lockbox files, emails, etc., and then matches this data with the appropriate invoice or invoices; and,
(v) Allows you to manually review, manage, and approve exceptions.

**Section 2. Our Obligations.** We will provide a Web Portal where you may access account information, resolve exceptions and manage digital payments. We may modify or terminate certain functionalities in our sole discretion; however, we shall not terminate a core functionality of the Service unless it is replaced by an equivalent functionality.

**Section 3. Your Obligations.** You shall review receivables and resolve exceptions on a regular basis using our Web Portal. You understand that the information available to you in connection with the Service is updated periodically and therefore, at any point in time may not reflect the most up to date information in our records. You acknowledge and agree that the Service does not include any recommendation, guaranty, representation or warranty whatsoever. We shall not be responsible for errors in, or delays regarding, information provided to us by other financial institutions, information provided to us by you or your customers, or other non-Bank sources."

4. A new PART XVI: MOBILE DEPOSITS is added and the remaining parts re-numbered. Here is the new Part XVI:

**Section 1. Mobile Deposit.** We allow you to scan your Checks with software provided by us using equipment you provide (typically a smartphone camera), to create image files that you will send to us and that we may accept for deposit into your Account(s) stated above. You will access Mobile Deposit and make deposits through an approved Communication Method in accordance with our Security Procedures. Deposits will be sent to us in the form of an electronic file containing images of Checks ("Electronic File"). Prior to using the Services, you represent and warrant that you have instituted policies and procedures regarding use of the Services and have trained your staff with access to the Services in accordance with such policies and procedures.

**Section 2. Electronic Files or IRDs.** You will create for deposit an Electronic File where you are the payee or the holder of the Checks. We may create Image Replacement Documents from such Electronic File. The terms "Substitute Check" and "Image Replacement Document" ("IRD") may be used interchangeably and have the same meaning as defined by 12 U.S.C. 5001 et seq. and corresponding regulations. We may refuse to process or return IRDs or the Electronic File for any reason at any time before accepting such IRDs or Electronic Files for deposit; provided, however, that in returning, or refusing to process any deposit, we shall act in good faith and use our reasonable business judgment. Your deposits are deemed made when we accept IRDs or Electronic Files for

Huntington

deposit. We, in our discretion, may notify you that we will or will not accept IRDs or Electronic Files for deposit. Until we accept the Electronic File or IRDs, any information contained in the Electronic Files or IRDs belongs to and is your sole responsibility. Any information from Checks or items contained in the software belongs to and is your sole responsibility. Any physical Check in your possession or your agent's belongs to and is your sole responsibility.

When you make deposits via Mobile Deposit with Electronic Files, you represent to us and agree that:

i. you are the payee or holder of the Checks;
ii. the Electronic Files contain exact images of the front and back of the Checks which you seek to deposit;
iii. the Electronic Files enable us to create IRDs that meet the definition of "Substitute Check" and conform to all standards prescribed by 12 U.S.C. 5001 et seq. and correcponding regulations;
iv. the Electronic Files do not contain any fraudulent items;
v. no depository bank, drawee, drawer, or endorser will receive presentment or return of an IRD, the original Check, or a copy or other paper or electronic version of an IRD or original Check such that we, a bank, drawer, drawee, or endorser will be asked to make payment based on a Check that bank, drawee or endorser has already paid;
vi. we are able to create IRDs from Electronic Files in such a manner that subsequent endorsements will not render previous endoresements illegible;
vii. Checks are drawn on a financial institution in the United States and are payable in United States currency; and,
viii. you have procedures that require your employees using Mobile Deposit to mark, frank, or otherwise indicate on the physical Check that it has been scanned for electronic deposit, and such marking or franking does not interfere with the MICR line, payee, date, amount (formal and informal), signature, or endorsement on the Check. A proper endorsement shall state, at a minimum, "For Mobile Deposit to The Huntington National Bank".
ix. We reserve the right, in our sole discretion, not to accept deposits for any reason; provided, however, that in refusing to accept any deposit, we shall act in good faith and use our reasonable business judgment. You agree not to deposit via Mobile Deposit "ineligible items," as that term is used by the Board of Governors of the Federal Reserve. You further agree not to deposit Remotely Created Checks (RCC) without our agreement.

**Section 3. Availability of Mobile Deposit.** You must initiate deposits before the applicable cut-off time (as it applies to mobile deposits) on a Business Day in order for us to process such deposits on that Business Day. If you initiate deposits after the applicable cut-off time on a Business Day, we will begin to process such deposits on the next Business Day. Processing of deposits by us does not mean that we have accepted deposits.

**Section 4. Additional Company Responsibilities.** In addition to instituting policies and procedures regarding use of the Services and training its staff with access to the Services in accordance with such policies and procedures, Company also agrees as follows:

(i) Company has implemented and continually maintains a cybersecurity program that includes administrative, technical, and physical safeguards designed to protect the confidentiality and the integrity of Electronic Files and IRDs;
(ii) Company has shared previous three (3) years of Cybersecurity Events and remediation plans, if applicable;
(iii) Company will report to us any successful Cybersecurity Event within three (3) business days of discovery by contacting your primary banking contact;
(iv) Company has procedures in place to limit employee access to the history of deposits sent to Huntington via the Services;
(v) Company retains records of Checks for the length of time required by your applicable state record retention laws;
(vi) Company must shred any original Check after verification of deposit. Original Checks that have been deposited and verified must be destroyed within ninety (90) calendar days. Until you destroy any Check or image of the same, you must, at a minimum, keep such document in a secure locked area or in a password protected environment. If you create an image of the Check, you must create a read-only image that cannot be copied or reproduced; and,
(vii) Company understands that appropriate training and education materials can be accessed through the Web Portal.

Huntington

**Section 5. Audit.** In order to ensure that you are in compliance with the terms of these Services and Applicable Law, we may conduct periodic onsite visits during reasonable business hours and upon at least twenty-four (24) hours advance notice. Further, you agree to cooperate with us and provide to us any documents or information we request, including, but not limited to, your files, records, and Checks (or images of the same if the originals have been destroyed). You agree to institute reasonable internal controls at our request. Failure to comply with this Section shall be a material breach of this Agreement.

**Section 6. Reserve Account.** If, upon our review of your Account activity, we determine that abuse or unauthorized activity is or may be occurring with respect to these Services, we may require that you maintain a reserve account ("Reserve Account") with a minimum balance equal to the previous month's total deposits or an amount as otherwise requested by us, subject to quarterly adjustment on the first day of each quarter. You grant to us a security interest in, and lien on, the funds in the Reserve Account, to secure the prompt and full payment of all your obligations to us. We will make withdrawals from the Reserve Account for reimbursement in connection with returned deposited items (including those which are the subject of UCC warranty claims). The Reserve Account will be under our sole dominion and control, and you will have no right of withdrawal of any of the funds in the Reserve Account will be under our sole dominion and control, and you will have no right of withdrawal of any of the funds in the Reserve Account, notwithstanding any Account Rules for that account. After you or we terminate these Services, we will turn over the remaining funds in the Reserve Account to you no later than one hundred eighty (180) days after such termination. In the event that the balance in the Reserve Account goes below the required amount for any reason, you shall immediately send us sufficient funds to bring the Reserve Account balance up to the minimum required level and we shall be permitted to debit another Account of yours to fulfill such request."

5. Re-numbered Part XIX: Glossary has a new section (i) as follows:

"Cybersecurity Event" means any observable occurrence within an information system or network that indicates a potential change in security posture, such as a user login, firewall block, or system alert. A successful Cybersecurity Event is an event resulting in unauthorized access to, disruption, or misuse of an information system.

The remaining definitions have been re-lettered.

6. Pages have been re-numbered and typos corrected.