United States Bankruptcy Court
Southern District of Texas
**ENTERED**
November 10, 2026
Nathan Ochsner, Clerk

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| **IN RE:** | § | |
| | § | **CASE NO: 24-31596** |
| **MMA LAW FIRM, PLLC,** | § | |
| | § | **CHAPTER 11** |
| **Debtor.** | § | |
| | § | |
| **MMA LAW FIRM, PLLC,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **VS.** | § | **ADVERSARY NO. 26-3107** |
| | § | |
| **THE MONSON LAW FIRM, LLC, MATTHEW MONSON, KATHERINE MONSON, ALLIED TRUST INSURANCE COMPANY, JAMES J. DONELON III, and JAMES DAVID CALDWELL, JR.,** | § | |
| | § | |
| **Defendants.** | § | |

**ORDER**
**DENYING MOTION TO DISMISS**
***Resolving Dkt. No. 52***

Pending before the Court is the "Rule 12(b)(6) Motion to Dismiss Count Seven of the Second Amended Complaint" (the "*Motion*") filed by James J. Donelon III ("*Donelon*") and James David Caldwell, Jr. ("*Caldwell*," and together with Donelon, the "*Movants*") on September 2, 2026, at Dkt. No. 52.[1] On September 23, 2026, Allison D. Byman ("*Plan Administrator*"), as plan administrator for MMA Law Firm, PLLC ("*Plaintiff*" or "*Debtor*"), filed its "Response in Opposition to Defendants James J. Donelon III and James David Caldwell, Jr.'s Rule 12(b)(6) Motion to Dismiss Count Seven of the Second Amended Complaint" at Dkt. No. 99, and on September 24, 2026, Plaintiff filed its "Amended Response in Opposition to Defendants James J. Donelon III and James David Caldwell, Jr.'s Rule 12(b)(6) Motion to Dismiss Count Seven of the Second Amended Complaint" (the "*Response*") at Dkt. No. 100. On September 30, 2026, Movants filed their "Reply Memorandum in Support of Rule 12(b)(6) Motion to Dismiss Count Seven of the Second Amended Complaint" (the "*Reply*") at Dkt. No. 113. Having considered the Motion, Response, Reply, and record at this stage, and without the need of a hearing, for the reasons stated herein, the Motion is DENIED.

---

[1] References to docket entries in the instant adversary proceeding take the format of "Dkt. No. __." References to docket entries in the underlying bankruptcy case, No. 24-31596, take the format of "Bankr. Dkt. No. __."

## I. Background

On April 9, 2024, Debtor filed for bankruptcy protection under chapter 11 of the Bankruptcy Code. Bankr. Dkt. No. 1. On July 1, 2026, Debtor filed its "Third Amended Joint Plan of Liquidation" (the "*Third Amended Plan*"). Bankr. Dkt. No. 1577. The Third Amended Plan contemplated appointment of the Plan Administrator to, *inter alia*, "manage, prosecute, settle, or abandon all prepetition claims and [c]auses of [a]ction for the benefit of creditors." *Id.* at 13–14. On August 5, 2026, this Court entered its "Order Confirming Third Amended Joint Plan of Liquidation and Plan Supplement of MMA Law Firm, PLLC" at Bankr. Dkt. No. 1648, confirming the Third Amended Plan and appointing the Plan Administrator to administer the Third Amended Plan.

Plaintiff commenced the instant adversary proceeding by filing its Complaint (the "*Original Complaint*") on April 8, 2026. Dkt. No. 1. On July 4, 2026, Plaintiff filed its Second Amended Complaint, the operative complaint in this proceeding. Dkt. No. 28. The Second Amended Complaint asserts claims against various defendants, including Movants, arising from alleged interference with Plaintiff's Louisiana-based hurricane litigation practice in the wake of Hurricanes Laura, Delta, and Ida. *See generally id.*

The Original Complaint identified Movants and described conduct that Plaintiff attributed to them, including alleged coordination to impair Plaintiff's operations in Louisiana, but did not name Movants as defendants or assert a claim against them. *See generally* Dkt. No. 1. The Second Amended Complaint, filed nearly three months later, first named Movants as defendants and asserted a claim against them under "Cause of Action No. 7: Conspiracy to Violate Civil Rights Under 42 U.S.C. § 1983" ("*Count VII*"). *See generally* Dkt. No. 28, ¶¶ 642–67. Donelon is the former Louisiana Commissioner of Insurance, while Caldwell was executive counsel for the Louisiana Department of Insurance ("*LDI*") at the relevant time. *Id.* at 1–2. Count VII alleges under 42 U.S.C. § 1983 that Movants conspired with Matthew Monson ("*Monson*"), a codefendant and nonmovant here, to use Louisiana governmental power through the LDI to impair Plaintiff's contingent fee interests in the hurricane litigation and destroy its Louisiana law practice. *Id.* ¶¶ 642–67. Specifically, Plaintiff alleges that Movants and Monson undertook a coordinated scheme through private communications, investigations, administrative orders, and retention of a digital surveillance firm to drive Plaintiff out of business in Louisiana. *Id.* Thus, Plaintiff alleges that Movants conspired to deprive Plaintiff of property and liberty interests without due process by using state regulatory authority that the LDI allegedly lacked. *Id.*

By the Motion, Movants seek dismissal of Count VII with prejudice. Dkt. No. 52, at 19. Alternatively, Movants seek dismissal with prejudice of all portions of Count VII predicated on acts occurring before April 9, 2024, and any claim based on a communication on February 1, 2025, and further, a requirement that Plaintiff file a reply under Federal Rule of Civil Procedure ("*Rule*") 7(a), in addition to a stay of discovery directed to the Movants pending final resolution of the qualified immunity issues in this case. *Id.* The Motion raises five principal issues: whether (1) Count VII is untimely; (2) Count VII relates back to the Original Complaint; (3) Count VII

adequately alleges an underlying constitutional deprivation and an agreement to cause that deprivation; (4) qualified immunity requires dismissal; and (5) absolute immunity protects the challenged conduct. *Id.* at 5–18.

## II. JURISDICTION, VENUE & CONSTITUTIONAL AUTHORITY

This Court holds jurisdiction pursuant to 28 U.S.C. § 1334(a)–(b) and exercises its jurisdiction in accordance with Southern District of Texas General Order 2012-6. *Order of Reference to Bankruptcy Judges*, Gen. Order 2012-6 (S.D. Tex. May 24, 2012). Section 157(a) permits a district court to "refer" all bankruptcy and related cases to the bankruptcy court, wherein the latter court will preside over the matter. *See also* S.D. Tex. Gen. Order 2012-6. This Court determines that, pursuant to § 157(b)(2)(A) and (O), this proceeding contains core matters as it primarily involves proceedings concerning the administration of Debtor's bankruptcy estate and affecting liquidation of the assets of Debtor's bankruptcy estate. Further, Count VII is at least "related to" Debtor's underlying bankruptcy case because the claim seeks to recover for alleged injury to Debtor and its bankruptcy estate and is brought pursuant to administration of the Third Amended Plan, and has a conceivable effect on administration of the Debtor's bankruptcy estate. *Collins v. Sidharthan (In re KSRP, Ltd.)*, 809 F.3d 263, 266 (5th Cir. 2015) ("In analyzing jurisdiction over cases that are purportedly 'related to' a bankruptcy case, we apply a broad 'conceivable effect' test.") (citation omitted).

This Court may only hear a case in which venue is proper. *Seville v. Maersk Line, Ltd.*, 53 F.4th 890, 894 (5th Cir. 2022). Pursuant to § 1409(a), "a proceeding arising under title 11 or arising in or related to a case under title 11 may be commenced in the district court in which such case is pending." Debtor's underlying bankruptcy case is pending before this Court, and accordingly, venue of this proceeding is proper.

While bankruptcy judges can issue final orders and judgments in core proceedings, absent consent, they can only issue reports and recommendations on non-core matters. *Stern v. Marshall*, 564 U.S. 462, 502–03 (2011). As discussed above, the matter pending before this Court is a core proceeding pursuant to § 157(b)(2)(A) and (O). Accordingly, the Court concludes that the narrow limitation imposed by *Stern* does not prohibit this Court from entering a final order here. *See Tanguy v. West (In re Davis)*, 538 F. App'x 440, 443 (5th Cir. 2013) ("[W]hile it is true that *Stern* invalidated 28 U.S.C. § 157(b)(2)(C) with respect to 'counterclaims by the estate against persons filing claims against the estate,' *Stern* expressly provides that its limited holding applies only in that 'one isolated respect.' . . . We decline to extend *Stern*'s limited holding herein."). In any event, because the instant order is interlocutory in nature, a definitive determination as to whether Count VII is core or non-core is unnecessary to resolve the Motion. *See, e.g.*, *Singh v. Price (In re Turkey Leg Hut & Co.)*, 659 B.R. 539, 542 (Bankr. S.D. Tex. 2024).

## III. Legal Standard

Pursuant to Rule 12(b)(6), "[a] court must dismiss a complaint as a matter of law when the plaintiff fails 'to state a claim upon which relief can be granted.'" *Hernandez v. Causey*, 124 F.4th 325, 331 (5th Cir. 2024) (quoting Fed. R. Civ. P. 12(b)(6)). To withstand a Rule 12(b)(6) motion, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks and quotation omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citation omitted). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (citation omitted). "Even so, however, a well-pleaded complaint may proceed even if it appears that a recovery is very remote and unlikely." *Walker v. Beaumont Indep. Sch. Dist.*, 938 F.3d 724, 735 (5th Cir. 2019) (internal quotation marks and quotation omitted).

"[T]he court must accept all well-pleaded facts as true and . . . view them in the light most favorable to the plaintiff." *Id.* (internal quotation marks and quotation omitted). However, courts "do not accept as true conclusory allegations, unwarranted factual inferences, or legal conclusions." *Plotkin v. IP Axess Inc.*, 407 F.3d 690, 696 (5th Cir. 2005) (citation omitted). "All questions of fact and any ambiguities in the current controlling substantive law must be resolved in the plaintiff's favor." *Lewis v. Fresne*, 252 F.3d 352, 357 (5th Cir. 2001). "[W]hile the complaint need not articulate detailed factual allegations, it must provide more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Richardson v. Axion Logistics, L.L.C.*, 780 F.3d 304, 306 (5th Cir. 2015). "[D]etermining whether a complaint states a plausible claim for relief is a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Walker*, 938 F.3d at 735 (internal quotation marks and quotation omitted).

Claims may be dismissed under Rule 12(b)(6) for being brought in the first instance beyond the applicable statute of limitation. *Petrobras Am., Inc. v. Samsung Heavy Indus. Co.*, 9 F.4th 247, 253 (5th Cir. 2021). "Rule 12(b)(6) dismissal under a statute of limitation is proper only when the complaint makes plain that the claim is time-barred and raises no basis for tolling." *Id.* (citation omitted).

## IV. Analysis

Count VII alleges that Movants conspired with Monson through private communications, investigations, administrative orders, and retention of a digital surveillance firm to undertake a coordinated scheme to drive Plaintiff out of business in Louisiana, all under the guise of government authority which Plaintiff alleges Movants lacked. Dkt. No. 28, ¶¶ 642–67. The Motion raises five principal issues with respect to Count VII: (1) timeliness; (2) relation back; (3) adequacy of pleading constitutional deprivation and agreement; (4) qualified immunity; and (5) absolute immunity. Dkt. No. 52, at 5–18. The Court examines each in turn.

**A. Timeliness, Accrual, Tolling, and Relation Back**

Movants and Plaintiff agree that Texas's two-year personal injury limitations period applies to Count VII, but they dispute when the claim accrued. *Id.* at 5–6; Dkt. No. 100, at 4. Movants contend that Count VII accrued in 2023, when the LDI issued a first cease and desist order on February 17, 2023, and a second cease and desist order along with $2,000,000 of fines against Plaintiff and three of its attorneys on May 1, 2023 (the "*LDI Order*"), or no later than April 9, 2024, when Plaintiff ceased operations in Louisiana and filed bankruptcy. Dkt. No. 52, at 6. Movants emphasize the Second Amended Complaint's allegation that Plaintiff's injury was apparent when the LDI Order was issued. *Id.*; Dkt. No. 28, ¶¶ 98–100. Plaintiff responds that knowledge of the injury itself did not establish knowledge of the alleged causal connection between that injury and the conspiracy. Dkt. No. 100, at 3–4. Plaintiff further alleges that private communications connecting Movants to Monson were not obtained until February 2026, following compelled production, and that the alleged engagement of 4Warn, Inc. ("*4Warn*"), a private digital intelligence firm, by Movants was not publicly revealed until November 10, 2025, in a podcast. *Id.* at 5–7. The podcast exhibit identifies November 10, 2025, as the episode's release date and identifies Monson and 4Warn principal Todd Kozikowski as participants. Dkt. No. 100-8; Dkt. No. 100-9, ¶¶ 3–6. Movants reply that Plaintiff conflates acquisition of evidence supporting an agreement with accrual of its completed injury, and that Plaintiff learned nothing new after May 1, 2023, that could have imparted knowledge of a claim for conspiracy to violate civil rights. Dkt. No. 113, at 3–6. Movants further reply that, at most, the communication sent on February 1, 2025, is evidence of a continuing agreement to impair Plaintiff's operations in Louisiana rather than a new injury to Plaintiff, and that Plaintiff failed to identify any affirmative concealment of the alleged agreement by Movants. *Id.* at 6–7.

The pleadings do not establish a statute of limitation bar. Movants' argument that Plaintiff's injury was apparent when the LDI Order was issued addresses awareness of injury; it does not necessarily resolve when Plaintiff knew or reasonably should have known of the alleged agreement and each Movant's causal role. The Second Amended Complaint alleges that the relevant coordination was concealed and that material communications were obtained only after compelled production. Dkt. No. 100, at 5–9; Dkt. No. 28, ¶¶ 103, 126, 656, 658–60. Movants may ultimately establish that Plaintiff possessed sufficient facts earlier, particularly because the Original Complaint identified both Movants and described several of the communications now invoked in Count VII. *E.g.*, Dkt. No. 1, ¶¶ 82, 89–91, 166–68. But the relevant inquiry on a motion to dismiss is whether untimeliness is evident from the pleadings and no basis for tolling appears. *Petrobras Am.*, 9 F.4th at 253. The disputed inferences concerning when Plaintiff knew or reasonably should have known of the alleged causal connection between Movants' conduct and its injury do not make untimeliness evident and provide a potential basis for tolling. Thus, the statute of limitation issue cannot be resolved against Plaintiff at this stage.

The fraudulent concealment allegations reinforce that conclusion. Plaintiff alleges more than the late discovery of additional proof: it alleges that the 4Warn engagement and private coordination were undisclosed and affirmatively concealed. Dkt. No. 100, at 8–9. Whether

Plaintiff exercised reasonable diligence and whether the alleged concealment actually prevented earlier discovery present factual questions not appropriate for resolution on a motion to dismiss.

Movants argue that 11 U.S.C. § 108(a) extended any unexpired prepetition limitation period only until April 9, 2026, and that the July 4, 2026, Second Amended Complaint was therefore untimely unless it related back. Dkt. No. 52, at 6–7. Movants further argue that Rule 15(c)(1)(C) does not apply here because Plaintiff knew Movants' identities when it filed the Original Complaint and made a deliberate choice not to sue them. *Id.* at 7–8. Those arguments depend on the premise that Count VII accrued no later than April 9, 2024. Section 108(a) supplies an extension of an otherwise applicable limitation period; it does not determine when the underlying claim accrued. Because the pleadings do not conclusively establish the asserted prepetition accrual date, the Court need not finally decide relation back at this juncture.

If the claim accrued in November 2025 or February 2026, as Plaintiff contends, the July 4, 2026, amendment was timely without reliance on Rule 15(c). Dkt. No. 100, at 9. The Court therefore does not decide whether Plaintiff's omission of Movants from the Original Complaint constituted a mistake concerning the proper party's identity under Rule 15(c)(1)(C)(ii). That issue becomes material only if Movants first establish an accrual date making relation back necessary, and they have not done so here.

**B. Constitutional Deprivation and Causation**

A private party may act under color of state law when the party "is a willful participant in joint action with [a s]tate or its agents." *Dennis v. Sparks*, 449 U.S. 24, 27 (1980). In the Fifth Circuit, a § 1983 conspiracy requires (1) allegations supporting an agreement between private and public defendants to commit an illegal act and (2) an actual deprivation of constitutional rights. *Cinel v. Connick*, 15 F.3d 1338, 1343 (5th Cir. 1994) (citations omitted). Count VII satisfies that threshold at the pleading stage.

As to Donelon, Plaintiff alleges that Donelon acknowledged that the LDI did not regulate law firms, yet the LDI retained 4Warn to investigate Plaintiff and later issued the LDI Order. Dkt. No. 28, ¶¶ 75–76, 96, 101, 103, 125. Plaintiff further alleges that Monson possessed the LDI Order before it became public, forwarded it to an FBI agent, and received a message from Donelon stating: "[w]ell done and more to come." *Id.* ¶¶ 102, 106–07; Dkt. No. 100-4.

As to Caldwell, Plaintiff alleges that Caldwell asked Monson how to contact the magistrate judge presiding over Plaintiff's hurricane litigation, communicated with Monson concerning sanctions, and stated after vacatur of the LDI Order that Caldwell was still trying to build a case. Dkt. No. 100, at 12–14; Dkt. No. 100-5; Dkt. No. 28, ¶¶ 112–13, 119, 121–23. Plaintiff alleges that the resulting order impaired its practice, client relationships, contingent fee interests, reputation, and going concern value, and required it to incur fees and costs defending the administrative proceeding. Dkt. No. 100, at 9–11; Dkt. No. 28, ¶¶ 648, 650, 654, 664. Movants dispute whether these interests constitute protected property and emphasize other judicial,

disciplinary, client, and counsel decisions that contributed to Plaintiff's losses. Dkt. No. 52, at 11–13.

Those competing causation accounts cannot be resolved on a motion to dismiss. Count VII need not establish that Movants were the sole cause of every alleged loss. It must plausibly allege an actual constitutional deprivation resulting from the asserted agreement. The detailed communications, alleged advance possession of the LDI Order, asserted coordination, and alleged use of governmental authority satisfy that requirement for purposes of Rule 12(b)(6). Whether independent events broke the causal chain or reduced the recoverable damages requires a factual record and are inappropriate issues for resolution on a motion to dismiss.

**1. Procedural and Substantive Due Process**

Movants argue that Plaintiff received constitutionally meaningful due process because the LDI Order advised Plaintiff of its right to demand an administrative hearing and seek a stay, and Plaintiff ultimately obtained vacatur. *Id.* at 13–14. Plaintiff responds that the alleged deprivation was foreseeable and planned, occurred while the LDI Order remained operative, and could not be remedied fully by vacatur nearly two years later. Dkt. No. 100, at 10–11; Dkt. No. 28, ¶¶ 125, 650, 654. Movants reply that Plaintiff's allegations of collateral economic consequences in the time between issuance and vacatur of the LDI Order are insufficient to state a procedural due process violation, and that Plaintiff failed to avail itself of all the procedural due process protections available to it under the law. Dkt. No. 113, at 11–13. Movants further reply that the LDI took no action that actually implicated Plaintiff's ability to legally operate in Louisiana; the LDI merely made it more practically difficult for Plaintiff to operate in Louisiana. *Id.* at 13–14.

At this stage, the Court cannot conclude that the availability of administrative review necessarily defeats Count VII. Count VII alleges not merely an erroneous initial decision, but a coordinated and allegedly unauthorized use of state power that caused injury before corrective proceedings concluded. The adequacy and timing of the available process therefore cannot be determined solely from the fact that Plaintiff eventually obtained vacatur. The procedural due process theory thus cannot be disposed on a motion to dismiss.

The substantive due process theory also survives a motion to dismiss. Plaintiff alleges that Donelon acknowledged the LDI lacked authority over law firms but nevertheless participated in covert investigation and formal enforcement against Plaintiff, while Caldwell allegedly coordinated with Monson before and after the LDI Order. Dkt. No. 100, at 12–13; Dkt. No. 28, ¶¶ 75–77, 82, 96, 101–03, 112–13, 119–23. Movants reply that the conduct alleged against them does not meet the high burden required for finding a substantive due process violation. Dkt. No. 113, at 14. Whether those allegations are true, and whether the officials instead acted in good faith pursuit of legitimate regulatory concerns, cannot be decided by selecting Movants' characterization of the facts on a motion to dismiss.

### 2. Plausibility of the Alleged Agreement and Personal Involvement

The alleged agreement is supported by more than parallel conduct or official titles. The Second Amended Complaint identifies communications, participants, timing, and conduct from which coordination may reasonably be inferred, including Monson's request that Donelon "bust" Plaintiff, Monson's advance possession of the LDI Order, Donelon's "[w]ell done and more to come" message, Caldwell's communications about contacting the presiding magistrate judge, and Caldwell's later statement that he was still trying to build a case. Dkt. No. 100, at 13–15; Dkt. No. 28, ¶¶ 96, 102–07, 112–13, 119, 121–23. The Court does not determine at this stage whether those communications prove an unlawful agreement; it is sufficient that they plausibly allege one.

To state a claim for conspiracy to deprive civil rights, Plaintiff must plausibly allege an agreement between private and public defendants to commit an illegal act. *Cinel*, 15 F.3d at 1343. Count VII is distinguishable from the deficient allegations in *Cinel*, where the complaint did not suggest that the public and private defendants agreed to deprive the plaintiff of a constitutional right. *Cinel*, 15 F.3d at 1343–44. The Second Amended Complaint also specifically identifies each Movant's participation in the alleged agreement. Donelon allegedly caused the retention of 4Warn, issued the LDI Order in his official capacity, and communicated with Monson when the order was issued. Dkt. No. 100, at 15; Dkt. No. 28, ¶¶ 75–77, 96, 98, 101–03, 125. Caldwell allegedly sought information and assistance from Monson, communicated concerning sanctions and prosecution, and was identified as the LDI's contact. Dkt. No. 100, at 15; Dkt. No. 28, ¶¶ 112–13, 121–23, 125. These are defendant-specific allegations, not an attempt to impose liability solely through office or supervisory status. Thus, the Second Amended Complaint plausibly alleges an unlawful agreement and personal involvement by each Movant.

## C. Qualified Immunity

Movants invoke qualified immunity on the grounds that the challenged conduct fell within their discretionary authority, the Second Amended Complaint does not establish a constitutional violation, and no controlling precedent clearly established that the specific conduct alleged was unconstitutional. Dkt. No. 52, at 10–11, 16–17. Plaintiff disputes the threshold assertion that Movants acted within their discretionary authority. Dkt. No. 100, at 16–17. Plaintiff alleges that Donelon acknowledged the LDI did not regulate law firms and that the LDI Order was ultimately vacated for lack of jurisdiction. *Id.*; Dkt. No. 28, ¶¶ 96, 98, 101, 103, 119. Movants reply that the LDI was assigned a duty to investigate persons suspected of violating Louisiana insurance law, which Movants furthered through LDI's actions against Plaintiff. Dkt. No. 113, at 8–11. Movants characterize their conduct as investigation, administrative enforcement, legal advice, regulated industry guidance, and possible criminal referral—functions generally associated with their respective offices. Dkt. No. 52, at 10–11. The Court cannot resolve this dispute in Movants' favor on a motion to dismiss.

The qualified immunity analysis is functional and turns on the nature of the conduct rather than the official's title or status. *Harlow v. Fitzgerald*, 457 U.S. 800, 810–11 (1982). The same

functional approach under Fifth Circuit authority examines the official's "role in the context of the case." *Mays v. Sudderth*, 97 F.3d 107, 110 (5th Cir. 1996).

Accepting the allegations as true, as the Court must at this stage, Count VII describes intentional use of state regulatory power against an entity that the responsible official allegedly acknowledged the agency did not regulate, undertaken in coordination with a private adverse party. Dkt. No. 100, at 17–18; Dkt. No. 28, ¶¶ 648, 653. Whether the evidence will ultimately support that characterization is an issue beyond the scope of a motion to dismiss. At this stage, the Court cannot recast the allegations as nothing more than a mistaken interpretation of state regulatory authority. Nor does the Court decide whether each alleged right was clearly established. The Motion seeks dismissal of Count VII in its entirety, but the Second Amended Complaint alleges conduct extending beyond solely the issuance of the LDI Order, including investigation, undisclosed coordination, communications with a private adversary, and attempts to develop additional proceedings. Dkt. No. 28, ¶¶ 75–77, 96, 98, 101–03, 112–13, 121–23, 125. Because the scope, purpose, and context of those acts remain fact-dependent, qualified immunity does not establish a complete defense for Movants on the face of the Second Amended Complaint, nor does it mandate dismissal of Count VII.

### D. Absolute Immunity

Absolute immunity likewise depends on function rather than title. Agency officials may receive absolute immunity when "perform[ing] functions comparable to those of judges or prosecutors" in an adjudicative process. *Beck v. Tex. State Bd. of Dental Exam'rs*, 204 F.3d 629, 634 (5th Cir. 2000) (citing *Butz v. Economou*, 438 U.S. 478, 512–13 (1978)). Relevant considerations include: (1) the need to assure the official can perform their functions without harassment or intimidation; (2) safeguards against unconstitutional conduct; (3) insulation from political influence; (4) reliance on precedent; (5) the adversarial nature of the process; and (6) the availability of appellate correction. *Id.* (citing *Butz*, 438 U.S. at 512). No single consideration controls. *Id.* The Fifth Circuit has distinguished protected adjudicative acts from administrative or rulemaking conduct. *Walter v. Torres*, 917 F.2d 1379, 1383–84 (5th Cir. 1990). The Supreme Court's functional approach similarly limits absolute immunity to the particular functions that justify it rather than extending immunity based merely on position. *Harlow*, 457 U.S. at 811.

Movants seek absolute immunity for formal adjudicative and prosecutorial functions, including Donelon's issuance of administrative orders and Caldwell's advice or presentation of the LDI's enforcement position. Dkt. No. 52, at 18. But Count VII also challenges alleged investigative activity, the retention of 4Warn, private coordination with Monson, inquiries about contacting a federal magistrate judge, and communications after the LDI Order was vacated. Dkt. No. 100, at 18–19; Dkt. No. 28, ¶¶ 75–77, 108–13, 121. Those allegations do not describe exclusively adjudicative or prosecutorial functions. Movants themselves limit their absolute immunity argument to their formal enforcement decisions rather than every challenged communication. Dkt. No. 52, at 18. Absolute immunity therefore does not mandate dismissal of

Count VII in its entirety. Whether particular acts are protected may be addressed on a developed record and, as appropriate, on an act-by-act basis.

**E. Alternative Requests**

Movants alternatively request (1) dismissal of all portions of Count VII predicated on acts before April 9, 2024; (2) dismissal of any theory based on Caldwell's February 1, 2025, communication; (3) a Rule 7(a) reply; and (4) a stay of discovery. *Id.* at 19. The request to dismiss pre-April 9, 2024 conduct depends on the unresolved accrual issue and therefore will be denied at this stage. The February 1, 2025 communication is pleaded as evidence of the alleged continuing agreement; the Court need not decide at this stage whether that communication independently caused a separate deprivation. Dkt. No. 100, at 13–14; Dkt. No. 28, ¶ 121. Because Count VII contains specific, defendant-focused allegations sufficient to permit a responsive pleading, the Court declines to order a Rule 7(a) reply. Finally, the request to stay discovery is not necessary to resolution of the Motion and is denied.

## V. CONCLUSION

Taking Plaintiff's factual allegations in the Second Amended Complaint as true and viewing them in the light most favorable to Plaintiff, as the Court must at this stage, Plaintiff has plausibly alleged a conspiracy by Movants and Monson to deprive Plaintiff of its civil rights in violation of 42 U.S.C. § 1983. Plaintiff's claim is not evidently untimely on the face of the Second Amended Complaint, and neither qualified nor absolute immunity mandate dismissal of Count VII at this stage. Accordingly, it is therefore:

**ORDERED:** that

1. The "Rule 12(b)(6) Motion to Dismiss Count Seven of the Second Amended Complaint" filed by James J. Donelon III and James David Caldwell, Jr. on September 2, 2026, at Dkt. No. 52 is DENIED.

2. The instant adversary proceeding will proceed to discovery with respect to Count VII as pleaded against James J. Donelon III and James David Caldwell, Jr.

3. This Court retains exclusive jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Order.

**SIGNED Tuesday, November 10, 2026**

**Eduardo V. Rodriguez**
**Chief United States Bankruptcy Judge**