**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| **In re:** | § | |
| | § | |
| **MMA LAW FIRM, PLLC,** | § | **Case No. 24-31596** |
| | § | **Chapter 11** |
| **Debtor.** | § | |

**CRISTOBAL M. GALINDO, P.C.'S RESPONSE TO MMA'S MOTION TO COMPEL COMPLIANCE WITH 9019 ORDER**
**(relates Docket No. 1368)**

TO THE HONORABLE EDUARDO V. RODRIGUEZ
CHIEF UNITED STATES BANKRUPTCY JUDGE:

COMES NOW Cristobal M. Galindo, P.C. ("Galindo") and files this Response to MMA Law Firm, PLLC's ("MMA") Motion to Compel Compliance with 9019 Order (the "Motion"). Galindo acknowledges that there was initial delay in remitting the $31,379.97. As discussed below, that delay was unintentional, and Galindo has implemented procedures to avoid any recurrence. The present dispute arises not from any refusal by Galindo to perform, but from MMA's effort to obtain relief beyond the parties' agreement. Rather than allow Galindo's ongoing reconciliation process to continue, MMA filed the Motion seeking relief that was neither negotiated in the Settlement Agreement nor required by the Order approving it. Galindo respectfully requests that the Court deny the Motion and allow Galindo to continue reconciling receipts and remitting funds that properly fall within the Settlement Agreement. Galindo remains willing to confer regarding the identification of any additional 'Successor Firms' and an agreed reporting process, although MMA's filing of the Motion appears to have rejected Galindo's prior effort to do so. In support thereof, Galindo would respectfully show the Court as follows:

## I. RELEVANT BACKGROUND

1. On September 18, 2025, the Court enter an order approving the Settlement Agreement (the "9019 Order") (Docket No. 832). The 9019 Order only had four ordering provisions and no findings of fact or conclusions of law. It provided:

> It is
> ORDERED that the Debtor's Motion to Compromise Controversy with Cristobal M. Galindo, PC ("GLF") is granted in full, and it is further
>
> ORDERED that the Settlement Agreement attached hereto is approved, and it is further
>
> ORDERED that the Debtor and GLF are authorized to enter into and consummate the Settlement Agreement according to the terms and conditions contained in the attached Settlement Agreement, and it is further
>
> ORDERED that this Court retains jurisdiction over all disputes that may be related to the interpretation or enforcement of the Settlement Agreement.

2. Galindo paid $250,000 to MMA per the Settlement Agreement.

3. Further, on February 25, 2026, Galindo voluntarily remitted $31,379.97 after confirming those funds fell under the Settlement Agreement.

4. Without burdening the Court with the full correspondence, the parties have been communicating for weeks, and Galindo has consistently attempted to reach agreement regarding both reporting and the scope of 'Successor Firms' as that term is used in the Settlement Agreement.[1] At no point has Galindo stated that it would refuse to remit funds that are in fact subject to the Settlement Agreement.

---

[1] Although the Settlement Agreement uses the term 'Successor Firms,' it does not identify those firms by name. Instead, it refers generally to 'numerous third-party law firms' that assumed representation in the MMA/Galindo Cases. Settlement Agreement at ¶ 4. MMA's Motion likewise does not identify a definitive list of such firms. Motion at ¶ 4.

5. On March 11, 2026, Galindo's counsel provided MMA with the firms then being reviewed and asked MMA to identify any additional firms it contended should be included. Galindo also proactively offered to implement monthly reporting. MMA ignored this attempt at clarification and entreaty to work together and, instead opted not to forego waiting for the reconciliation and filed the instant Motion on March 12, 2026.

6. Galindo notes that the reconciliation process takes significant time because there are thousands of records to go through, especially when the specific firms subject to the definition of Successor Firms was unclear to both parties.

## II. ARGUMENT

### A. Processes Have Been Established to Prevent a Repeat of the First Unintentional Delay

7. Galindo acknowledges that there was initial delay in paying the $31,379.97. However, the delay in payment was unintentional and mechanism have bene put into place at the firm to avoid any repeat of the initial delay.

8. Since the implementation of the new processes, Galindo has identified additional monies that should be remitted to MMA pursuant to the Settlement Agreement and Galindo is making arrangements to remit those funds.

### B. The Motion Relies on Flawed and Inapplicable Legal Authority

9. MMA relies on two cases to support its position: *In re Cajun Elec. Power Coop., Inc.*, 191 F.3d 659, 663 (5th Cir. 1999); *F.D.I.C. v. LeGrand*, 43 F.3d 163, 170 (5th Cir. 1995). However, neither case supports MMA's position and *LeGrand* actually undermines it. First, MMA's citation to *Cajun Elec.* appears to be incorrect as the reporter citation points to a different case (*Jackson v. Quanex Corp.*, 191 F.3d 647, 659 (6th Cir. 1999)) and thus it is unclear what authority MMA intended to revoke.

10. The second case, *LeGrand*, can be identified but is inapplicable to the instant matter for numerous reasons. First, the *LeGrand* court explicitly explained that for a court to hold a party in contempt (a remedy not sought in the instant action), the party seeking an order of contempt must establish: 1) that a court order was in effect; 2) that the order required certain conduct by the respondent; and 3) that the respondent failed to comply with the court's order. *LeGrand*, 43 F.3d at 170.

11. In the instant case, not only is contempt not being sought (thus undermining any reliance on *LeGrand*) but the 9019 Order, recited above, does not compel any action by Galindo. Even if one were to considered performance under the Settlement Agreement as having been "ordered", nothing under the Settlement Agreement requires "sworn statements," "monthly reporting," or "case lists". MMA could have negotiated for those things but apparently failed to do so and is now trying to use a motion to compel as a trojan motion to modify the Settlement Agreement.

12. Further, the *LeGrand* case involved absolute non-compliance. In *LeGrand*, the respondent was faced with a clear order compelling him to produce his tax returns (*id.* at 165), did not do so (*id.* at 171) failed to offer evidence demonstrating his inability to comply (*id.*).

13. In contrast, the case at bar involves a 9019 Order that authorizes the parties to enter into a settlement and does not compel any specific action that Galindo has failed to perform.

14. Further, Galindo has: a) remitted $31,379.97 voluntarily; b) proactively identified additional funds for payment; and affirmatively sought to clarify the vague list of Successor Firms to ensure accuracy.

15. Unlike the defiant party in *LeGrand*, Galindo is in active performance. MMA's attempt to use *LeGrand* should be rejected as both factually and legally misplaced.

C. **The 9019 Order Approves a Compromise; It Does Not Mandate MMA's Requested Actions**

16. Although touched on earlier, Galindo believes it is worth reiterating that the 9019 Order's legal function is the approval of a settlement under Bankruptcy Rule 9019. The Order authorizes the parties to "enter into and consummate the Settlement Agreement". It does not contain an affirmative directive for Galindo to produce sworn statements, itemized account lists, or monthly reports.

17. Galindo respectfully asserts that MMA is improperly attempting to interpret a standard 9019 approval as a mandatory injunction requiring extra-contractual reporting procedures never found in the Settlement Agreement. Thus, the Motion seeks relief that far exceeds the parties' negotiated bargain.

D. **Galindo Cannot Be Compelled to Do What It Is Already Voluntarily Doing**

18. A motion to compel is a remedy for a party that refuses to act. Galindo's March 11 email made it clear that a diligent review was underway to identify all funds subject to the Settlement Agreement. Ordering Galindo to perform actions it is already undertaking serves no judicial purpose. In fact, numerous courts, including the United States Supreme Court, have cautioned against courts enforcing settlement agreements unless the agreement is explicitly incorporated into a court order or judgment. As explained by the First Circuit Court of Appeals:

> Finally, we offer a note of caution concerning the parties' apparent presumption that a federal court should order compliance with settlement agreements. It is often helpful and most certainly proper for a judicial officer who is not adjudicating a case to conduct mediation. *See, e.g.*, P.R. Local R. 83J. In the normal successful event, the mediation may result in a private contract between the parties, followed by dismissal. Occasionally, there may be a reason for the court to retain jurisdiction to hear a later claim that a party has breached the contract. Sometimes, too, at least where a principal form of relief sought in the underlying action is injunctive, it may be appropriate to go further and turn the settlement agreement into a court order. *See, e.g., Hawkins v. Dep't of Health & Human Servs.*

> *for N.H., Comm'r*, 665 F.3d 25, 30-31 (1st Cir. 2012) (settlement resulted in consent decree that could be enforced by [**12] seeking a contempt citation for a violation). Taking such a step, though, calls for restraint and careful consideration by the court because it has duties and interests that may well differ from those of the parties. Here, for example, in a case that did not in any way center on a request for an injunctive remedy, the district court nevertheless found itself issuing what all involved treated as a prior restraint on speech aimed at preventing the public from knowing what public officials were doing in a matter of well-warranted public interest. And when the parties then claimed breach, the district court found itself with the more difficult task of defending the sanctity of its own order rather than deciding a breach of contract dispute.

*Rodriguez-Vazquez v. Solivan*, 844 F.3d 351, 357 (1st Cir. 2016).

19. As further explained by the United States Bankruptcy Court for the Southern District of New York:

> The mere fact that a court has reserved jurisdiction to enforce a settlement agreement is not enough to bring contempt powers into play. *See D. Patrick, Inc. v. Ford Motor Co.*, 8 F.3d 455, 461 (7th Cir. 1993). Nor is a court's approval of a stipulation or other contract sufficient. The breach of a monetary obligation that is created by contract (even a court-approved settlement agreement) is not enforceable by contempt unless a court order explicitly commands that the obligation be fulfilled. *H. K. Porter Co. v. National Friction Products Corp.*, 568 F.2d 24 (7th Cir. 1977) (holding that contempt is appropriate only for violation of a court order that sets forth "an unequivocal command" in specific detail). Furthermore, "the size of the award and the difficulties in enforcing the judgment due to . . . the uncooperativeness of the judgment debtor are not the types of extraordinary circumstances which warrant departure from the general rule" that money judgments are not enforced by an order of contempt. *NYKCool A.B. v. Pac. Fruit, Inc.*, 2012 U.S. Dist. LEXIS 52690, at *29-30 (S.D.N.Y. April 16, 2012) (quoting *Aetna Cas. & Sur. Co. v. Markarian*, 114 F.3d, 349 n.4 (1st Cir. 1997)).

*Milazzo v. Techakraisri* (*In re Old DDUS*), 659 B.R. 810, 839-40 (Bankr. S.D.N.Y. 2024).

20. For its part, the U.S. Supreme Court explained: "[t]he judge's mere awareness and approval of the terms of the settlement agreement do not suffice to make them part of his order." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 381, 114 S. Ct. 1673, 1677 (1994).

**E. MMA Improperly Relies on a Terminated Order to Claim "Bad Faith"**

21. MMA relies on an order this Court terminated seven months ago to assert "bad faith", apparently in attempt to stir this Court to anger. MMA refers to this Court's Order at Docket No. 106 in Adv. Proc. 25-03310 (the "July 17, 2025 Order") for numerous irrelevant propositions but fails to mention that the Court terminated the Show Cause Order in its *Order Granting Emergency Unopposed Motion of Cristóbal M. Galindo, P.C. d/b/a Galindo Law Firm to Terminate Show Cause Order and Cancel Related Hearing* at Docket No. 128 in the same adversary proceeding. Galindo notes that it is interesting that MMA cites to the July 17, 2025 Order considering MMA's Motion itself fails to contain an averment pursuant to LR7.1(D), which was one of the primary concerns this Court had with Galindo's motion leading to the issuance of the July 17, 2025 Order in the first instance. Although there had been numerous discussions, MMA had threatened *contempt* and undersigned counsel cannot identify that he received a draft of the Motion before it was filed and cannot locate any communication indicating that MMA was considering a motion to compel.

22. Regardless, because the July 17, 2025 Order contains no findings of bad faith against Galindo, it is unclear to what pattern of bad faith MMA is referring. Again, it appears to be a fairly bald attempt to rouse this Court's anger via an unrelated and already resolved matter.

**F. MMA Provides No Authority For Attorney's Fees and is Not Entitled to Them**

23. Finally, MMA is not entitled to attorney's fees for bringing its motion. First, MMA cites to no authority entitling it to attorney's fees. Second, as explained by numerous courts "[t]he American rule is that a prevailing party ordinarily is not entitled to recover attorney's fees unless a statute or contract so provides." *Payne v. Panama Canal Co.*, 607 F.2d 155, 163 (5th Cir. 1979); *Alyeska Pipeline Service Co. v. Wilderness Society*, 421 U.S. 240, 247-68, 95 S. Ct. 1612, 44 L.

Ed. 2d 141 (1975); *Fleischmann Distilling Corp. v. Maier Brewing Co.*, 386 U.S. 714, 717-18, 87 S. Ct. 1404, 18 L. Ed. 2d 475 (1967).

## III. CONCLUSION

WHEREFORE, Galindo respectfully requests this Court enter an order: 1) denying the Motion; and 2) granting such other relief as the Court deems just and proper.

Dated: April 2, 2026

Respectfully submitted,

**HAYWARD PLLC**

By: /s/ *Charlie Shelton*
Charlie Shelton
State Bar No. 24079317
CShelton@HaywardFirm.com
7600 Burnet Road, Suite 530
Austin, Texas 78757
(737) 881-7100 (telephone/fax)

**COUNSEL FOR Cristóbal M. GALINDO, P.C. D/B/A GALINDO LAW FIRM**

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on April 2, 2026, a true and correct copy of this Objection was filed with the Court and served via the Court's CM/ECF system upon all parties registered to receive such electronic service in this bankruptcy case, including the U.S. Trustee and Debtor's counsel.

*/s/ Charlie Shelton*
Charlie Shelton

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| **In re:** | § | |
| | § | |
| **MMA LAW FIRM, PLLC,** | § | **Case No. 24-31596** |
| | § | **Chapter 11** |
| **Debtor.** | § | |
| | § | |

---

**ORDER DENYING MMA'S MOTION TO COMPEL COMPLIANCE WITH 9019 ORDER**
*(Refers to Docket No. 1368)*

---

Upon consideration of MMA Law Firm, PLLC's Motion to Compel Compliance with 9019 Order (the "Motion"), the response filed by Cristobal M. Galindo, P.C. ("Galindo"), the arguments of counsel, and the record in this case, the Court finds that the Motion should be denied.

IT IS THEREFORE ORDERED that:

1. The Motion is DENIED.

**SIGNED:**___________________

_______________________________
Honorable Judge Eduardo V. Rodriguez
Chief United States Bankruptcy Judge